# EXHIBIT

# 9

**U.S. District Court**
**Eastern District of TEXAS [LIVE] (Sherman)**
**CIVIL DOCKET FOR CASE #: 4:23-cv-01104-SDJ**

Martin, et al., v. Texas Association of Realtors, Inc., et al.
Assigned to: District Judge Sean D. Jordan
Demand: $50,000,000

   Related Case:    4:23-cv-01013-SDJ

Cause: 15:1 Antitrust Litigation

Date Filed: 12/14/2023
Jury Demand: Plaintiff
Nature of Suit: 410 Anti-Trust
Jurisdiction: Federal Question

**Plaintiff**

**Julie Martin**

represented by    **Christopher John Schwegmann**
Lynn Pinker Cox & Hurst LLP - Dallas
2100 Ross Avenue
Suite 2700
Dallas, TX 75201
214/981-3800
Fax: 214/9813839
Email: cschwegmann@lynnllp.com
*ATTORNEY TO BE NOTICED*

**David Blake Urteago**
The Pettit Law Firm
3710 Rawlins
Suite 1050
Dallas, TX 75219
214-329-0151
Fax: 214-329-4076
Email: durteago@urteago.com
*ATTORNEY TO BE NOTICED*

**Frederic S Fox**
Kaplan Fox & Kilsheimer, LLP
850 Third Avenue
14th Floor
New York, NY 10022
212/687-1980
Fax: 212/687-7714
Email: ffox@kaplanfox.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jessica Cox**
Lynn Pinker Cox & Hurst, LLP
2100 Ross Ave.
Suite 2700
Dallas, TX 75201
214-981-3800
Email: jcox@lynnllp.com
*ATTORNEY TO BE NOTICED*

**Michael Kevin Hurst**
Lynn Pinker Cox & Hurst, LLP
2100 Ross Avenue, Suite 2700
Dallas, TX 75201
214-981-3800
Fax: 214-981-3839
Email: mhurst@lynnllp.com
*ATTORNEY TO BE NOTICED*

**Yaman Desai**
Lynn Pinker Cox & Hurst, LLP
2100 Ross Avenue
Suite 2700
Dallas
Dallas, TX 75201
214-981-3800
Email: ydesai@lynnllp.com
*ATTORNEY TO BE NOTICED*

**Julie Pettit**
The Pettit Law Firm - Dallas
2101 Cedar Springs, Suite 1540
Dallas, TX 75201
214-329-0151
Fax: 214-329-4076
Email: jpettit@pettitfirm.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **Mark Adams** | represented by | **Christopher John Schwegmann**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **David Blake Urteago**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Frederic S Fox**<br>(See above for address)<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Jessica Cox**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Matthew Powers McCahill**<br>Kaplan Fox & Kilsheimer, LLP<br>850 Third Avenue<br>14th Floor<br>New York, NY 10022<br>212.687.1980<br>Fax: 212.687.7714<br>Email: mmccahill@kaplanfox.com<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Michael Kevin Hurst**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Julie Pettit**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Plaintiff**

| | | |
|---|---|---|
| **Adelaida Matta** | represented by | **Christopher John Schwegmann**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **David Blake Urteago**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Frederic S Fox**<br>(See above for address)<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Jessica Cox**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Michael Kevin Hurst**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Julie Pettit**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

V.

**Defendant**

**Texas Association of Realtors, Inc.**

**Defendant**

**Austin Board of Realtors**

**Defendant**

**San Antonio Board of Realtors, Inc.**

**Defendant**

**Metrotex Association of Realtors, Inc.**

**Defendant**

**Houston Association of Realtors, Inc.**

**Defendant**

**Greater El Paso Association of Realtors**

**Defendant**

**Greater Fort Worth Association of Realtors, Inc.**

**Defendant**

**Fort Hood Area Association of Realtors, Inc.**

**Defendant**

**Four Rivers Association of Realtors, Inc.**

**Defendant**

**Temple-Belton Board of Realtors, Inc.**

**Defendant**

**Victoria Area Association of Realtors, Inc.**

**Defendant**

**Williamson County Association of Realtors, Inc.**

**Defendant**

**Austin/Central Texas Realty Information Service**

**Defendant**

**Central Texas Multiple Listing Service, Inc.**

**Defendant**

**Houston Realtors Information Service, Inc.**

**Defendant**

**North Texas Real Estate Information Systems, Inc.**

**Defendant**

**ABA Management, L.L.C.**

**Defendant**

Penfed Realty, LLC

**Defendant**

**Ebby Halliday Real Estate, LLC**

**Defendant**

**The Dave Perry-Miller Company**

**Defendant**

**Keller Williams Realty, Inc.**

**Defendant**

**Heyl Group Holdings LLC**

**Defendant**

**The Loken Group, Inc.**

**Defendant**

**Hexagon Group, LLC**

**Defendant**

**DMTX, LLC**

**Defendant**

**Keller Willis San Antonio, Inc.**

**Defendant**

**San Antonio Legacy Group, LLC**

**Defendant**

**DSJMM, LLC**

**Defendant**

**Fathom Realty, LLC**

**Defendant**

**Grace Realty Group LLC**

**Defendant**

**Side, Inc.**

**Defendant**

**Citiquest Properties, Inc.**

**Defendant**

**Homeservices of America, Inc.**

**Defendant**

**JP PICCININI REAL ESTATE SERVICES, LLC**

**Defendant**

Team Burns, LLC

**Defendant**

ABRE Capital LLC

**Defendant**

Realty Austin, LLC

**Defendant**

ATX Wir LLC

**Defendant**

The Michael Group LLC

**Defendant**

Square MB, LLC

**Defendant**

Mark Anthony Dimas

**Defendant**

Greenwood King Properties II, Inc.

**Defendant**

Turner Mangum LLC

**Defendant**

Moreland Properties, Inc.

**Defendant**

Real Agent LLC

**Defendant**

RFT Enterprises, Inc.

**Defendant**

ATC Metro Properties, Inc.

**Defendant**

MJHM LLC

| # | Docket Text | Date Filed |
|---|---|---|
| 1 | COMPLAINT Plaintiffs Original Class Action Complaint against All Defendants ( Filing fee $ 405 receipt number ATXEDC-9871419.), filed by Mark Adams, Julie Martin, Adelaida Matta. (Attachments: # 1 Civil Cover Sheet, # 2 Additional Attachment(s))(Pettit, Julie) (Attachment 1 replaced on 12/14/2023) (jmb, ). (Entered: 12/14/2023) | 12/14/2023 |
| | Case assigned to District Judge Sean D. Jordan. (jmb, ) (Entered: 12/14/2023) | 12/14/2023 |

| # | Docket Text | Date Filed |
|---|---|---|
| | In accordance with the provisions of 28 USC Section 636(c), you are hereby notified that a U.S. Magistrate Judge of this district court is available to conduct any or all proceedings in this case including a jury or non-jury trial and to order the entry of a final judgment. The form Consent to Proceed Before Magistrate Judge is available on our website. All signed consent forms, excluding pro se parties, should be filed electronically using the event Notice Regarding Consent to Proceed Before Magistrate Judge. (jmb, ) (Entered: 12/14/2023) | 12/14/2023 |
| 2 | Additional Attachments to Main Document: 1 Complaint,. Amended Civil Cover Sheet. (Attachments: # 1 Additional Attachment(s)) (Pettit, Julie) (Main Document 2 replaced on 12/15/2023) (jmb, ). (Entered: 12/14/2023) | 12/14/2023 |
| 3 | SUMMONS Issued as to ABA Management, L.L.C. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 4 | SUMMONS Issued as to ABRE Capital LLC. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 5 | SUMMONS Issued as to ATC Metro Properties, Inc. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 6 | SUMMONS Issued as to ATX Wir LLC. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 7 | SUMMONS Issued as to Austin Board of Realtors. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 8 | SUMMONS Issued as to Austin/Central Texas Realty Information Service. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 9 | SUMMONS Issued as to Central Texas Multiple Listing Service, Inc. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 10 | SUMMONS Issued as to Citiquest Properties, Inc. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 11 | SUMMONS Issued as to DMTX, LLC. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 12 | SUMMONS Issued as to Ebby Halliday Real Estate, LLC. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 13 | SUMMONS Issued as to Fathom Realty, LLC. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 14 | SUMMONS Issued as to Fort Hood Area Association of Realtors, Inc. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 15 | SUMMONS Issued as to Four Rivers Association of Realtors, Inc. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 16 | SUMMONS Issued as to Grace Realty Group LLC. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 17 | SUMMONS Issued as to Greater El Paso Association of Realtors. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 18 | SUMMONS Issued as to Greater Fort Worth Association of Realtors, Inc. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 19 | SUMMONS Issued as to Greenwood King Properties II, Inc. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 20 | SUMMONS Issued as to Hexagon Group, LLC. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 21 | SUMMONS Issued as to Heyl Group Holdings LLC. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 22 | SUMMONS Issued as to Homeservices of America, Inc. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 23 | SUMMONS Issued as to Houston Association of Realtors, Inc. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 24 | SUMMONS Issued as to Houston Realtors Information Service, Inc. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 25 | SUMMONS Issued as to JP PICCININI REAL ESTATE SERVICES, LLC. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 26 | SUMMONS Issued as to Keller Williams Realty, Inc. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 27 | SUMMONS Issued as to Keller Willis San Antonio, Inc. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 28 | SUMMONS Issued as to Mark Anthony Dimas. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 29 | SUMMONS Issued as to Metrotex Association of Realtors, Inc. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 30 | SUMMONS Issued as to MJHM LLC. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 31 | SUMMONS Issued as to Moreland Properties, Inc. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 32 | SUMMONS Issued as to North Texas Real Estate Information Systems, Inc. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 33 | SUMMONS Issued as to Penfed Realty, LLC. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 34 | SUMMONS Issued as to Real Agent LLC. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 35 | SUMMONS Issued as to Realty Austin, LLC. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |

| # | Docket Text | Date Filed |
|---|---|---|
| 36 | SUMMONS Issued as to RFT Enterprises, Inc. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 37 | SUMMONS Issued as to San Antonio Board of Realtors, Inc. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 38 | SUMMONS Issued as to San Antonio Legacy Group, LLC. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 39 | SUMMONS Issued as to Side, Inc. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 40 | SUMMONS Issued as to Square MB, LLC. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 41 | SUMMONS Issued as to Team Burns, LLC. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 42 | SUMMONS Issued as to Temple-Belton Board of Realtors, Inc. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 43 | SUMMONS Issued as to Texas Association of Realtors, Inc.(jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 44 | SUMMONS Issued as to The Dave Perry-Miller Company. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 45 | SUMMONS Issued as to The Loken Group, Inc. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 46 | SUMMONS Issued as to The Michael Group LLC. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 47 | SUMMONS Issued as to Turner Mangum LLC. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 48 | SUMMONS Issued as to Victoria Area Association of Realtors, Inc. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 49 | SUMMONS Issued as to Williamson County Association of Realtors, Inc. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 50 | SUMMONS Issued as to DSJMM, LLC. (jmb, ) (Entered: 12/18/2023) | 12/18/2023 |
| 51 | NOTICE of Attorney Appearance by Yaman Desai on behalf of Julie Martin (Desai, Yaman) (Entered: 12/19/2023) | 12/19/2023 |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| **JULIE MARTIN, MARK ADAMS, AND ADELAIDA MATTA,** individually and on behalf of all other persons similarly situated, | § § § § § | |
| *Plaintiffs,* | § § | |
| V. | § § § | Case No. _____ |
| **TEXAS ASSOCIATION OF REALTORS, INC., AUSTIN BOARD OF REALTORS, SAN ANTONIO BOARD OF REALTORS, INC., METROTEX ASSOCIATION OF REALTORS, INC., HOUSTON ASSOCIATION OF REALTORS, GREATER EL PASO ASSOCIATION OF REALTORS, GREATER FORT WORTH ASSOCIATION OF REALTORS, INC., FORT HOOD AREA ASSOCIATION OF REALTORS, INC., FOUR RIVERS ASSOCIATION OF REALTORS, INC., TEMPLE-BELTON BOARD OF REALTORS, INC., VICTORIA AREA ASSOCIATION OF REALTORS, INC., WILLIAMSON COUNTY ASSOCIATION OF REALTORS, INC., AUSTIN/CENTRAL TEXAS REALTY INFORMATION SERVICE, CENTRAL TEXAS MULTIPLE LISTING SERVICE, INC., HOUSTON REALTORS INFORMATION SERVICE, INC., NORTH TEXAS REAL ESTATE INFORMATION SYSTEMS, INC., ABA MANAGEMENT, L.L.C., PENFED REALTY, LLC, EBBY HALLIDAY REAL ESTATE, LLC, THE DAVE PERRY-MILLER COMPANY, KELLER** | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | |

---

WILLIAMS REALTY, INC., HEYL          §
GROUP HOLDINGS LLC, THE              §
LOKEN GROUP, INC., HEXAGON           §
GROUP, LLC, DMTX, LLC, KELLER        §
WILLIS SAN ANTONIO, INC., SAN        §
ANTONIO LEGACY GROUP, LLC,           §
DSJMM, LLC, FATHOM REALTY,           §
LLC, SIDE, INC., CITIQUEST           §
PROPERTIES, INC.,                    §
HOMESERVICES OF AMERICA,             §
INC., JP PICCININI REAL ESTATE       §
SERVICES, LLC, TEAM BURNS, LLC,      §
ABRE CAPITAL LLC, REALTY             §
AUSTIN, LLC, ATX WIR LLC, THE        §
MICHAEL GROUP, LLC, SQUARE           §
MB, LLC, MARK ANTHONY DIMAS,         §
GREENWOOD KING PROPERTIES            §
II, INC., TURNER MANGUM LLC,         §
MORELAND PROPERTIES, INC.,           §
REAL AGENT LLC, RFT                  §
ENTERPRISES, INC., ATC METRO         §
PROPERTIES, INC., AND MJHM           §
LLC,                                 §
                                     §
  *Defendants*.            §

## PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT

Comes Now Julie Martin, Mark Adams, and Adelaida Matta, Plaintiffs herein, and bring this action on behalf of themselves and on behalf of the Class consisting of all persons who listed properties on a Multiple Listing Service in Texas ("the MLS") using a listing agent or broker affiliated with one of the Defendants named herein and paid a buyer broker commission from November 13, 2019, until the present ("the Class Period"). In support thereof, Plaintiffs respectfully allege as follows:

## I. INTRODUCTION TO THE CONSPIRATORIAL SCHEME

1.  In the realm of Texas real estate lies a concealed conspiracy that has

adversely impacted countless home buyers and sellers. Plaintiffs, who have listed their homes on Multiple Listing Services (MLS) in Texas, stand as the voice of those who have borne the brunt of the Defendants' unlawful collaboration and anticompetitive practices. This conspiracy centers around the enforcement of an anticompetitive restraint that compels home sellers to provide an inflated fee to the broker representing the buyer of their properties, thus violating federal antitrust regulations. Notably, the United States Department of Justice's Antitrust Division is currently conducting a thorough investigation into the residential real estate brokerage sector, with a specific focus on broker compensation and related practices.

2.      The creator of the conspiracy is the National Association of Realtors ("NAR"), a trade association for real estate brokers with over 1.5 million individual members. NAR conspired with its largest affiliated associations in Texas and some of the largest real estate brokerages that worked in Texas during the Class Period.

**A. NAR's Regulatory Dominion**

3.      At the core of this alleged conspiracy lies NAR, an organization with considerable influence in shaping the real estate landscape.

4.      NAR wields its regulatory authority to impose a rule known as the "Mandatory Offer of Compensation Rule." This rule dictates that every property seller, when listing their home on an MLS affiliated with a local NAR association, must make a sweeping, non-negotiable offer of compensation to buyer brokers. The Defendants, acting in concert with NAR, pressurize or incentivize their franchisees, brokers, and agents to become NAR members and adhere to its regulatory regime. Through this concerted

effort, they ensure the implementation and enforcement of the Mandatory Offer of Compensation Rule.

**B. MLS Control and Competition Suppression**

5.      MLSs acting as reservoirs of property listings available for sale in defined geographic regions, play a pivotal role in the real estate ecosystem. Most homes in the United States are traded through MLS platforms, where brokers are often obligated to include all properties. These MLSs are primarily governed by local NAR associations, and access is granted contingent upon broker compliance with NAR's mandatory regulations outlined in the Handbook on Multiple Listing Policy. This handbook explicitly incorporates the Mandatory Offer of Compensation Rule.

6.      The Defendants and NAR, along with their alleged collaborators, wield significant control over local real estate markets due to their influence in MLSs.

**C. Stifling Competitive Markets**

7.      In many MLSs, NAR compels broker compliance with rules that curtail competition. Furthermore, each Defendant mandates or encourages their franchisees, brokerages, and individual realtors to join NAR and implement its anticompetitive regulations, including the Mandatory Offer of Compensation Rule, as a prerequisite for enjoying the benefits of Defendants' branding, brokerage support, and other resources.

8.      As prominent brokers in Texas, their involvement in the alleged conspiracy, manifested through the implementation and enforcement of its rules and policies, is indispensable to the conspiracy's prosperity.

9.      These anticompetitive measures favor the Defendants by enabling brokers

to impose charges on home sellers beyond competitive thresholds and thwarting competition from innovative or lower-cost alternatives.

### D. Home Seller Burden

10.     The alleged conspiracy compels home sellers to bear a cost that, in a competitive market and in the absence of the Defendants' anticompetitive restraint, would typically be borne by the homebuyer.

11.     Further, this has led to an industry-recognized practice called "steering," where homeowners are pressured into accepting inflated or stabilized rates out of fear that buyer brokers will not show their home to prospective buyers.

### E. Competitive Imbalance

12.     In the absence of NAR's Mandatory Offer of Compensation Rule, the expense of buyer broker commissions would be incurred by the clients (homebuyers). This would lead to competition among buyer brokers to offer lower commission rates.

13.     Consequently, the Mandatory Offer of Compensation Rule stifles price competition among buyer brokers because the actual party retaining the buyer broker — the homebuyer — doesn't negotiate or pay the commission for their broker.

### F. Anticompetitive Effects

14.     Adding to the anticompetitive implications of the Mandatory Offer of Compensation Rule, NAR's rules also forbid buyer brokers from making home purchase offers that hinge on reducing the buyer broker's commission.

15.     The conspiracy has led to various illogical, harmful, and anticompetitive effects, including: (a) requiring sellers to pay overcharges for services provided by buyer

brokers to the buyer; (b) maintaining, fixing, and stabilizing buyer broker compensation at levels that would not exist in a competitive market; and (c) promoting steering and actions that hinder innovation and entry by new, lower-cost real estate brokerage service providers.

16.     In competitive overseas markets, when homebuyers opt to use a broker, they personally cover the cost, which is less than half of what American buyer brokers receive.

17.     As a result, Defendants' conspiracy has inflated and stabilized buyer broker commissions, resulting in higher total commissions paid by home sellers like Plaintiffs and Class members. Plaintiffs and Class members have each incurred, on average, thousands of dollars in overcharges and damages due to Defendants' alleged conspiracy.

### G. Defendants' Alleged Roles

18.     Defendants leverage their control over MLSs, their agreements with local franchisees and agents, their employee policies, and their active roles within NAR and local realtor associations to compel local residential real estate brokers to comply with NAR's regulations, including the Mandatory Offer of Compensation Rule.

19.     Defendants also play a part in implementing the conspiracy by reviewing NAR's Rules and consenting to them at annual meetings, and NAR perpetuates the conspiracy by periodically reissuing its Rules, which include the Mandatory Offer of Compensation Rule. Additionally, Defendants are involved in the conspiracy by serving on boards and committees that oversee compliance with NAR Rules.

20.     Plaintiffs, on behalf of themselves and the Class, bring this lawsuit against

Defendants for alleged violations of federal antitrust laws, seeking treble damages, injunctive relief, and the costs of this lawsuit, including reasonable attorneys' fees.

## II. JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction under 28 U.S.C. §1332(d)(2), because the Class defined herein contains more than 100 persons, the aggregate amount in controversy exceeds $5,000,000, and at least one member of the Class is a citizen of a State different from Defendants. Subject matter jurisdiction over this action also exists under 15 U.S.C. § 4 and under 28 U.S.C. §§ 1331, 1337.

22.     This Court has personal jurisdiction over Defendants. They have: (1) transacted substantial business in the United States, including in this District; (2) transacted business with members of the Class throughout the United States, including in this District; (3) had substantial contacts with the United States, including in this District; and (4) committed substantial acts in furtherance of their unlawful scheme in the United States, including in this District.

23.     Each Defendant has received revenue attributable to business transacted in Texas and in this District from the brokerage operations of their respective subsidiaries, franchisees, affiliates, and/or transaction counterparts that transact business in Texas and in this District.

24.     Venue is proper in this District under 15 U.S.C. § 22 and under 28 U.S.C. §1391(b), (c), and (d). Each Defendant transacted business, was found, had agents and/or resided in this District; a substantial part of the events giving rise to Plaintiffs' claims arose in this District; and a substantial portion of the affected interstate trade and

commerce described herein has been carried out in this District.

25.     The Mandatory Offer of Compensation Rule and other anticompetitive rules promulgated by NAR have been extended and enforced by Defendants and their co-conspirators in interstate commerce, including this District. These rules govern local NAR associations, local brokers, and local sales agents across the entire nation. Defendants' conduct, as alleged, has led to the inflation of buyer broker commissions nationwide, causing harm to home sellers in numerous regions. Through Defendants, other NAR members, and additional co-conspirators, NAR conducts business in interstate commerce, engaging in activities that substantially impact interstate trade within the United States.

### III. <u>PARTIES</u>

#### A. **Plaintiffs.**

26.     Plaintiff Julie Martin ("<u>Martin</u>") is an individual and citizen of the state of New Mexico. On April 28, 2023, Martin sold real property commonly described as 267 Chrisholm Trail, Bastrop, TX 78602. Martin used Moreland Properties, Inc. as her listing broker. The buyers' broker, whom Martin paid a 3% commission to, was Real Agent, LLC.

27.     Plaintiff Mark Adams ("<u>Adams</u>") is an individual and citizen of Texas. Plaintiff Adelaida Matta ("<u>Matta</u>") is an individual and citizen of Texas. In the prior four (4) years, plaintiffs have sold a number of properties:

   a.     On June 17, 2020, Adams and Matta sold real property commonly described as 15144 Dory Dr., Corpus Christi, TX 78418. They used ATC Metro Properties Inc. as their listing broker. The buyers' broker, whom

Adams and Matta paid a 3% commission to, was South Coastal Realty, LLC d/b/a Keller Williams Coastal Bend.

b.     On November 10, 2020, Adams and Matta sold real property commonly described as 18753 Kelly Meadows Ln, New Caney, TX 77357. They used DSJMM, LLC d/b/a Keller Williams Realty Professionals as their listing broker. The buyers' broker, whom Adams and Matta paid a 3% commission to, was Texas Diamond Realty.

c.     On November 22, 2021, Adams and Matta sold real property commonly described as 13946 Jibstay St., Corpus Christi, TX 78418. They used ATC Metro Properties Inc. as their listing broker. The buyers' broker, whom Adams and Matta paid a 3% commission to, was Coastline Properties.

d.     On April 7, 2022, Adams and Matta sold real property commonly described as 110 Del Monte Dr., Cibolo, TX 78108. They used MJHM, LLC d/b/a Texas Edge Realty and their listing broker. The buyers' broker, whom Adams and Matta paid a 3% commission to, was Premier Realty Group.

e.     On June 7, 2023, Adams and Matta sold real property commonly described as 4814 Heathers Cross, Saint Hedwig, TX 78152. They used MJHM, LLC d/b/a Texas Edge Realty as their listing broker. The buyers' broker, whom Adams and Matta paid a 3% commission to, was Vortex Realty LLC.

**B. Defendants.**

28.     Defendant Texas Association of Realtors, Inc. ("<u>TAR</u>") is a non-profit corporation organized under the laws of the state of Texas. TAR was founded in 1920 and is composed of over 153,000 realtors and has over 160,000 total members.[1] Over 85% of licensed real estate agents in Texas are members of TAR.[2] TAR may be served by serving its registered agent, Travis Kessler, at 11115 San Jacinto Boulevard, Suite 200, Austin, TX 78701, or wherever he may be found.

29.     Defendant Austin Board of Realtors ("<u>ABOR</u>") is a non-profit corporation organized under the laws of the state of Texas. ABOR was established in 1926 and has over 14,000 members.[3] Defendant may be served by serving its registered agent, Emily Chenevert, at 4800 Spicewood Springs Rd., Austin, TX 78759, or wherever she may be found.

30.     Defendant San Antonio Board of Realtors, Inc. ("<u>SABOR</u>") is a non-profit corporation organized under the laws of the state of Texas. Defendant may be served by serving its registered agent, Gilbert S. Gonzales, at 9110 IH 10 West, San Antonio, TX 78230, or wherever he may be found.

31.     Defendant MetroTex Association of Realtors, Inc. ("<u>MetroTex</u>") is a non-profit corporation organized under the laws of the state of Texas. MetroTex was established in 1917 and has over 26,000 members.[4] Defendant may be served by serving

---

[1] *See* https://www.texasrealestate.com/wp-content/uploads/2023_TR_Fact_Sheet.pdf.
[2] *See id*.
[3] *See* www.aceableagent.com/blog/what-is-austin-board-of-realtors.
[4] *See* https://www.mymetrotex.com/are-you-ready-to-be-a-metrotex-leader/.

its registered agent, Janet L. Kane, at 1701 Kinwest Parkway, Irving, TX 75063, or wherever she may be found.

32. Defendant Houston Association of Realtors, Inc. ("HAR") is a non-profit corporation organized under the laws of the state of Texas. HAR is the largest individual dues-paying membership trade association in Houston, and the second largest local association/board of realtors in the United States.[5] Defendant may be served by serving its registered agent, Grant P. Harpold, at 2229 San Felipe, Suite 1000, Houston, TX 77019, or wherever he may be found.

33. Defendant Greater El Paso Association of Realtors ("GEPAR") is a non-profit corporation organized under the laws of the state of Texas. GEPAR is the largest professional trade association in El Paso with over 3,000 members. Defendant may be served by serving its registered agent, Richard Anthony Delgado, at 6400 Gateway Blvd E, El Paso, TX 79905, or wherever he may be found.

34. Defendant Greater Fort Worth Association of Realtors, Inc. ("GFWAR") is a non-profit corporation organized under the laws of the state of Texas. Defendant can be served by serving its registered agent, Mary R. Chilton, at 2650 Parkview Dr., Fort Worth, TX 76102, or wherever she may be found.

35. Defendant Fort Hood Area Association of Realtors, Inc. ("FHAAR") is a non-profit corporation organized under the laws of the state of Texas. Defendant can be served by serving its registered agent, Michael DeHart, at 306 W. Mary Jane Dr., Killeen,

---

[5] *See* https://cms.har.com/association_facts/.

TX 76541, or wherever he may be found.

36.      Defendant Four Rivers Association of Realtors, Inc. ("FRAR") is a non-profit corporation organized under the laws of the state of Texas. Defendant can be served by serving its registered agent, Amy DuBose, at 936 Gruene Rd, New Braunfels, TX 78130, or wherever she may be found.

37.      Defendant Temple-Belton Board of Realtors, Inc. ("TBBR") is a non-profit corporation organized under the laws of the state of Texas. Defendant can be served by serving its registered agent, Wendy R. Nichols, at 2703 Exchange Place, Temple, TX 76504, or wherever she may be found.

38.      Defendant Victoria Area Association of Realtors, Inc. ("VAAR") is a non-profit corporation organized under the laws of the state of Texas. Defendant can be served by serving its registered agent, Tiena Marie Bock, at 2906 E. Airline, Victoria, TX 77901, or wherever she may be found.

39.      Defendant Williamson County Association of Realtors, Inc. ("WCAR") is a non-profit corporation organized under the laws of the state of Texas. Defendant can be served by serving its registered agent, Majorie L. Phillips, at 123 E. Old Settler's Blvd, Round Rock, TX 78664, or wherever she may be found.

40.      Defendant Austin/Central Texas Realty Information Service ("ACTRIS") is a non-profit corporation organized under the laws of the state of Texas. ACTRIS is the MLS serving eighteen (18) central Texas counties including Travis County and is overseen by ABOR. Defendant may be served by serving its registered agent, Emily Chenevert, at 4800 Spicewood Springs Rd., Austin, TX 78759, or wherever she may be

heard.

41. Defendant Central Texas Multiple Listing Service, Inc. ("CTXMLS") is a non-profit corporation organized under the laws of the state of Texas. CTXMLS is the MLS that covers several central Texas counties. It has over 7,700 members and is jointly administered by the Fort Hood Area Association of Realtors, the Four Rivers Association of Realtors, the Williamson County Association of Realtors, the Temple-Belton Association of Realtors, and the Victoria Area Association of Realtors. Defendant may be served by serving its registered agent, Lea Phelps, at 936 Gruene Rd., New Braunfels, TX 78130, or wherever she may be found.

42. Defendant Houston Realtors Information Service, Inc., ("HRIS") is a corporation organized under the laws of the state of Texas. HRIS is the MSL covering Harris County and administered by HAR. Defendant may be served by serving its registered agent, Grant P Harpold, at 2229 San Felipe, Suite 1000, Houston, TX 77019, or wherever he may be found.

43. Defendant North Texas Real Estate Information Systems, Inc. ("NTREIS") is a corporation organized under the laws of the state of Texas. NTREIS is the MLS covering counties in North Texas, including Dallas and Tarrant counties. It has approximately 40,000 subscribers and fourteen (14) shareholder realtor associations. Defendant may be served by serving its registered agent, Jerome L. Prager, at 14911 Quorum Drive, Ste 320, Dallas, Texas 75254, or wherever he may be found.

44. Defendant ABA Management, L.L.C. ("ABA") is a limited liability company organized under the laws of the state of Texas. ABA does business as Allie Beth

Allman & Associates. ABA is considered one of North Texas' top real estate firms, with over 425 agents.[6] Defendant may be served by serving its registered agent, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, TX 75201.

45.     Defendant PenFed Realty, LLC ('PenFed") is a limited liability company organized under the laws of the state of Virgina, with its principal place of business in Alexandria, Virgina. It is a wholly owned subsidiary of PendFed Credit Union and it is the largest independently owned brokerage in the Berkshire Hathaway HomesServices network, placing it in the top 1% of all real estate brokerages in the country. It has almost 70 offices, over 2000 professionals, and provides services in Texas.[7] Defendant may be served by serving its registered agent, Corporation Service Company dba CSC – Lawyers Incorporating Service Company, at 211 E. 7th Street, Suite 620, Austin, TX 78701.

46.     Defendant Ebby Halliday Real Estate, LLC ("Ebby"), is a limited liability company organized under the laws of the state of Texas. Ebby Halliday Real Estate, LLC is the largest private residential real estate company in Texas by sales volume and has been in operation since 1945.[8] Defendant may be served by serving its registered agent, CT Corporation System, at 1999 Bryan St., Suite 900, Dallas, TX 75201.

47.     Defendant The Dave Perry-Miller Company ("DPMC"), is a corporation organized under the laws of the state of Texas. Defendant may be served by serving its registered agent, Davidson A. Perry-Miller, at 5956 Sherry Lane, Ste 510, Dallas, TX 75225.

---

[6] *See* https://www.texasmonthly.com/news-politics/allie-beth-allman-queen-of-highland-park-homes/.
[7] *See* https://www.penfedrealty.com/real-estate-about-us.
[8] https://www.housingwire.com/articles/43579-warren-buffetts-berkshire-hathaway-affiliate-buys-ebby-halliday/

48.     Defendant Keller Williams Realty, Inc. ("<u>Keller Williams</u>") is a corporation organized under the laws of the state of Texas. Keller Williams is a prominent real estate franchise and brokerage firm. It was founded in Austin, Texas in 1983.[9] By 2015, Keller Williams became the largest real estate franchise in the world by agent count.[10] Keller Williams Realty is headquartered in Austin, Texas.[11] Defendant may be served by serving its registered agent, Cogency Global, Inc., at 1601 Elm Street, Suite 4360, Dallas, TX 75201.

49.     Defendant Heyl Group Holdings LLC is a limited liability company organized under the laws of the state of Texas. Defendant may be served by serving its registered agent, Tim M. Heyl, at 1801 S Mopac Expy., Ste 100, Austin, TX 78746.

50.     Defendant The Loken Group, Inc. is a corporation organized under the laws of the state of Texas. Defendant may be served by serving its registered agent, Lance Loken, at 8726 Ridgebury Circle, Houston, TX 77095, or wherever he may be found.

51.     Defendant Hexagon Group, LLC is a limited liability company organized under the laws of the state of Texas. Defendant may be served by serving its registered agent, William E. Webb, at 3401 Lantz Circle, Plano, TX 75025, or wherever he may be found.

52.     Defendant DMTX, LLC is a limited liability company organized under the laws of the state of Texas. Defendant may be served by serving its registered agent, Dave Murray, at 1904 Georgia Landing Cove, Austin, TX 78746, or wherever he may be found.

---

[9] https://thrive.kw.com/our-story/
[10] https://thrive.kw.com/our-story/
[11] https://headquarters.kw.com/contact-us/

53.     Defendant Keller Willis San Antonio, Inc. is a corporation organized under the laws of the state of Texas with its principal place of business in San Antonio, Texas. Defendant may be served by serving its registered agent, Amy Clifton, at 10999 I-10 W, Suite 175, San Antonio, TX 78230, or wherever she may be found.

54.     Defendant San Antonio Legacy Group, LLC is a limited liability company organized under the laws of the state of Texas. Defendant may be served by serving its registered agent, Jerri Smallwood, at 1102 E. Sonterra Blvd., Ste. 106, San Antonio, TX 78258, or wherever she may be found.

55.     Defendant DSJMM, LLC (d/b/a Keller Williams Realty Professionals) is a limited liability company organized under the laws of the state of Texas. Defendant may be served serving its registered agent, Jason M. Medley, at 909 Fannin St., Suite 2300, Houston, TX 77010, or wherever he may be found.

56.     Defendant Fathom Realty, LLC ("Fathom") is a limited liability company organized under the laws of the state of Texas. Defendant may be served by serving its registered agent, Joshua Harley, at 2150 S. Central Expressway, Ste 200, McKinney, TX 75070, or wherever he may be found.

57.     Defendant Grace Realty Group LLC is a limited liability company formed under the laws of the state of Texas. Defendant may be served by serving its registered agent, Steven Richards, at 5113 Trinity Landing Dr. W. Fort Worth, TX 76132, or wherever he may be found.

58.     Defendant Side, Inc. is a corporation organized under the laws of the state of Delaware with its principal place of business in San Francisco, California. Defendant

may be served by serving its registered agent, InCorp Services, Inc., at 815 Brazos St., Suite 500, Austin, TX 78701.

59.     Defendant Citiquest Properties, Inc. is a corporation organized under the laws of the state of Texas with its principal place of business in Houston, Texas. Defendant may be served by serving its registered agent, Steven P. Burbidge, at 6807 Wynwood LN., Houston, TX 77008, or wherever he may be found.

60.     Defendant HomeServices of America, Inc. is a corporation organized under the laws of the state of Delaware with its principal place of business in Edina, Minnesota. Defendant may be served by serving its registered agent, C T Corporation System, at 1999 Bryan Street, Suite 900, Dallas, TX 75201.

61.     Defendant JP Piccinini Real Estate Services, LLC ("JPP") is a limited liability company organized under the laws of the state of Texas. JPP is a Texas real estate firm that was founded by Giuseppe 'JP' Piccinini in 2011. It is a full-service real estate brand and franchise platform. The company has approximately 4,000 agents operating in 60 offices across 25 states and closes $8 Billion annually in sales volumes.[12] It is headquartered in Plano, Texas.[13] It is considered one of America's fastest growing 100% commission brokerages and top 2023 franchises.[14] Defendant may be served by serving its registered agent, Cogency Global Inc., at 1601 Elm St., Suite 4360, Dallas, TX 75201.

62.     Defendant Team Burns, LLC d/b/a Monument Realty ("Burns") is a

---

[12] *See* https://www.jpar.com/about-jpar/.
[13] *See* https://www.jpar.com/about-jpar/
[14] *See* https://www.jpar.com/about-jpar/.

limited liability company organized under the laws of the state of Texas. Burns is a licensed real estate service provider in Frisco, Texas.[15] It has 1,076 active agents. It has closed approximately 4,167 transactions and closed about $2.2 Billing in sales.[16] Defendant may be served by serving its registered agent, United States Corporation Agents, Inc., at 9900 Spectrum Drive, Austin, TX 78717.

63.     Defendant ABRE Capital LLC d/b/a Real Broker, LLC ("ABRE") is a limited liability company organized under the laws of the state of Texas. ABRE has over 12,000 agents and has sold 18.7 billion in home sales in 12 months as of June 30, 2023. Defendant may be served by serving its registered agent, Legal Inc Corporate Services Inc., at 10601 Clarence Dr., Ste. 250, Frisco, TX 75033.

64.     Defendant Realty Austin, LLC is a limited liability company organized under the laws of the state of Texas. Defendant may be served by serving its registered agent, Maggie Simoneaux-Cuaso, at 3355 Bee Caves Road, #505, Austin, TX 78746, or wherever she may be found.

65.     Defendant ATX WIR LLC is a limited liability company organized under the laws of the state of Texas. Defendant may be served by serving its registered agent, Christopher Watters, at 6850 Austin Center Blvd., #320, Austin, TX 78731, or wherever he may be found.

66.     Defendant The Michael Group LLC is a limited liability company organized under the laws of the state of Texas. Defendant may be served by serving its registered

---

[15] *See* https://licensee.io/real-estate/9006556-team-burns-llc-tx/.
[16] *See* https://www.monumentrealtytx.com/.

agent, Corporation Service Company, at 211 E. 7th Street, Suite 620, Austin, TX 78701.

67.    Defendant Square MB, LLC is a limited liability company organized under the laws of the state of Texas. Defendant may be served by serving its registered agent, Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, at 211 E. 7th Street, Suite 620, Austin, TX 78701.

68.    Defendant Mark Anthony Dimas is an individual who is a citizen of Texas. Defendant may be served at his usual place of business located at 16700 Huffmeister Rd, Cypress, TX 77429, or wherever he may be found.

69.    Defendant Greenwood King Properties II, Inc. is a corporation organized under the laws of the state of Texas with its principal place of business in Houston, Texas. Defendant may be served by serving its registered agent, Shannon J. Skurner, at 3201 Kirby, Houston, TX 77098, or wherever she may be found.

70.    Defendant Turner Mangum LLC is a limited liability company organized under the laws of the state of Texas. Defendant may be served by serving its registered agent, Jared S. Turner, at 2310 Peters Rd., Crosby, TX 77532, or wherever he may be found.

71.    Defendant Moreland Properties, Inc. ("Moreland") is a corporation organized under the laws of the state of Texas with its principal place of business in Austin, Texas. Defendant may be served by serving its registered agent, Emily Moreland, at 3825 Lake Austin Blvd., #501, Austin, TX 78703, or wherever she may be found.

72.    Defendant Real Agent LLC ("RA") is a limited liability company organized under the laws of the state of Texas. Defendant may be served by serving its registered agent, Robert Baylor, at 13785 Research Blvd., Suite 125, Austin, TX 78750, or wherever

he may be found.

73.     Defendant RFT Enterprises, Inc. ("RFT") is a corporation organized under the laws of the state of Texas. Defendant may be served by serving its registered agent, Roxann F Taylor, at 640 N. Carroll Ave, Ste. 100, Southlake, TX 76092, or wherever she may be found.

74.     Defendant ATC Metro Properties, Inc. is a corporation organized under the laws of the state of Texas with a principal place of business in Corpus Christi, TX. Defendant may be served by serving its registered agent, Timothy Bryant Teas, at 14725 S. Padre Island Drive, Corpus Christi, TX 78418, or wherever he may be found.

75.     Defendant MJHM LLC (d/b/a Texas Edge Realty) is a limited liability company organized under the laws of the state of Texas. Defendant may be served by serving its registered agent, Hurlbert Matthew, at 9002 Wurzbach Rd, San Antonio, TX 78240, or wherever he may be found.

**C. Co-Conspirators.**

76.     Defendants' co-conspirators not named as defendants include two of the four[17] largest real estate brokers in the country: Anywhere Real Estate Inc. (f/k/a Realogy Holdings Corp.) and RE/MAX Holdings, Inc. along with the National Association of Realtors ("NAR").

77.     Franchisees and brokers of Defendants also participated as co-conspirators in the violations alleged herein and performed acts and made statements in furtherance

---

[17] Keller Williams is one of the four largest real estate brokers in the country, but it is a named defendant herein.

thereof. Specifically, each complied with and implemented the Buyer-Agent Commission Rule in the geographic areas where the NAR MLSs operate. In addition, other brokers in these areas have participated as co-conspirators in the violations alleged herein and performed acts and made statements in furtherance thereof. These other brokers complied with and implemented the Buyer-Agent Commission Rule in Texas.

78.    Defendants are jointly and severally liable for the acts of their co-conspirators, whether named or not named as Defendants herein.

## IV. <u>FACTS</u>

### A. **Real Estate Market in Texas.**

79.    The state of Texas governs the real estate industry through its licensing regulations. In 2022, approximately 86% of home sellers and buyers in the United States utilized the services of real estate brokers.[18] These regulations classify real estate professionals into two primary categories: (1) real estate brokers, often referred to as "brokerage firms," and (2) individual real estate licensees or agents. These brokers license and assume legal responsibility for the actions of individual real estate realtors or agents

80.    According to Texas law, only licensed brokers are authorized to receive compensation for representing home buyers or sellers in real estate transactions. Consequently, all real estate brokerage contracts must be established with brokers, not agents, and payments to individual agents or realtors are routed through brokers. Many brokers, along with their respective agents, often operate in dual roles, acting as seller

---

[18] https://www.nar.realtor/research-and-statistics/quick-real-estate-statistics

brokers for some property sales and as buyer brokers for others.

81.     In standard residential real estate transactions, brokers and agents receive compensation in the form of commissions, calculated as a percentage of the property's sale price, with the payment being realized upon the sale's completion.

82.     Compensation for seller brokers is stipulated in a listing agreement, a contract signed between the seller and the seller broker. This agreement outlines the listing terms and often grants the seller broker exclusive marketing rights to the property. The listing agreement also specifies the total commission to be paid by the seller.

83.     When a buyer engages a broker's services, they typically enter into a contract with that broker. If a buyer retains a broker, the seller remits the buyer broker's compensation. Historically, NAR's Code of Ethics espoused a conduct standard that falsely suggested to buyers that their agent's services are provided at no cost.

84.     The net effect of these agreements and the Mandatory Offer of Compensation Rule is that buyer brokers, who are tasked with representing the buyers' interests against the sellers, receive their compensation from the overall commission paid by the seller, not from the buyers they represent. This has led to significant confusion regarding the functioning of commissions within the real estate market such that many sellers do not understand how and why they are paying the buyer's agent a 3% commission.

85.     Without the Mandatory Offer of Compensation Rule and in a competitive market context (where sellers have no incentive to compensate a buyer broker who works against their interests), buyers would directly pay their brokers. Sellers, in turn, would

exclusively pay a commission to their seller broker. Consequently, the seller's total broker commission would amount to approximately half or less of the customary commission paid to remunerate both their seller broker and the buyer's broker, who is advocating for the buyer's interests.

**B. Role of Multiple Listing Services (MLSs) and the Mandatory Offer of Compensation Rule**

86.     MLSs serve as central repositories for available properties within specific geographic areas, offering access to real estate brokers and their affiliated realtors or agents who adhere to MLS regulations. Many MLSs are owned and managed by local realtor associations, which are members of NAR.

87.     NAR regulations mandate that seller brokers must list their clients' properties on an MLS. Notably, the failure to list a client's property on an MLS results in diminished visibility for that property, as it is less likely to be presented to potential buyers by buyer brokers.

88.     The Mandatory Offer of Compensation Rule imposes an obligation on seller brokers, acting on behalf of their clients, to make a comprehensive, non-negotiable offer of compensation to buyer brokers whenever they list a property on an MLS affiliated with a local NAR association. In the event that a buyer, who is represented by a broker, ultimately purchases the property, the buyer broker is entitled to the offered compensation.

**C. Anticompetitive NAR Rules**

89.     NAR introduced the Mandatory Offer of Compensation Rule in 1996,

incorporating it into the Handbook on Multiple Listing Policy. This rule has remained in effect since its inception.

90. Before the adoption of the Mandatory Offer of Compensation Rule in 1996, upon information and belief, NAR played a central role in structuring, implementing, and enforcing a similar and equally flawed market structure. Under this system of sub-agency, brokers representing buyers were legally obligated to act in the interest of sellers, even when primarily working with buyers. As a result, the practice of sellers compensating both their selling broker and the buyer's broker persisted.

91. The inefficiency and confusion inherent in this sub-agency system ultimately led to its collapse when widely exposed in the media.

92. Following the collapse of the sub-agency system, NAR and its co-conspirators devised and enforced an anticompetitive scheme aimed at perpetuating supra-competitive commissions, impeding innovation, and hindering lower-priced competition. This was accomplished through the Mandatory Offer of Compensation Rule, officially adopted in November 1996.

93. NAR's Board of Directors and associated committees periodically evaluate and revise the policies in the Handbook. The Mandatory Offer of Compensation Rule has been retained despite criticism from economists and industry experts, who argue that the rule contributes to anticompetitive market conditions and inflated commission rates.

94. Defendants have actively participated in this anticompetitive scheme by agreeing to follow, promote, and implement the Mandatory Offer of Compensation Rule. These actions have established an environment that perpetuates high commissions and

restricts market competition. Indeed, in the Inman Survey (2014), 56% of agents reported that their brokerages require a minimum total commission level to list homes for sellers and brokerages specify a minimum commission rate that must be offered to buyer agents when the brokerages represents the seller.

95.    Furthermore, NAR has invited Defendants and other co-conspirators to join an agreement, whereby participation in the MLS system is contingent upon compliance with anticompetitive restraints set forth in the Handbook. Regardless of their initial involvement in drafting or adopting the Mandatory Offer of Compensation Rule, Defendants have since joined the conspiracy and committed to upholding and enforcing the rule.

96.    The Handbook explicitly states the Mandatory Offer of Compensation Rule, requiring participants to make unilateral compensation offers when filing properties with an MLS. The Handbook also stipulates that MLSs should not publish listings that do not include compensation offers or invitations for participants to discuss cooperative relationships.

97.    The Mandatory Offer of Compensation Rule transfers a cost that would ordinarily be paid by the buyer, in a competitive market, to the seller. Home sellers effectively become obligated to hire a buyer broker if they want to list their property on an MLS. The system violates antitrust laws by keeping buying agents compensated despite offering limited services. Indeed, in the age of the internet where a buyer is able to search and locate their next house on their computer or smartphone without the assistance of a real estate agent—and they often do just that—a competitive market

should have forced lower buyer broker commissions as a reflection of the decreasing need for their services.

98.    In their efforts to steer clients towards homes offering higher commissions, buyer brokers utilize the offered compensation amounts. This steering practice is confirmed by economic literature and has clear anticompetitive effects, making it difficult for brokers to compete based solely on the services they provide to clients.

99.    Defendants and other co-conspirators also employ technology to facilitate steering based on MLS commission information.

### D. Defendants' Participation in the Conspiracy

100.    Defendants, in collaboration with NAR, have actively supported, implemented, and enforced the Mandatory Offer of Compensation Rule. They have required their franchisees, brokers, agents, and employees to comply with NAR rules, including the Mandatory Offer of Compensation Rule.

101.    Therefore, Defendants and their franchisees, along with their agents, have furthered the conspiracy by agreeing to implement, follow, and enforce NAR's rules, including the Mandatory Offer of Compensation Rule.

### E. Effects of the Conspiracy

102.    The conspiracy led by Defendants and NAR have had several anticompetitive effects in Texas, including:

- Inflated Costs and Compelled High Commissions for Home Sellers: The Defendants' conspiracy in Texas has resulted in inflated costs for home sellers. They are compelled to pay commissions to buyer brokers who, paradoxically, represent their adversaries in property negotiations. This practice also compels home sellers to set high buyer broker commissions, which in turn diminishes their

control over expenses and market competitiveness.

- Payment of Inflated Commissions and Price Competition Restraint: The conspiracy perpetuates the payment of inflated buyer broker commissions and total commissions by home sellers, reducing the financial benefit sellers derive from property transactions. This anticompetitive conduct significantly restrains price competition among brokers in Texas. Both buyers seeking to retain broker services and sellers seeking to list their properties find their choices constrained by this manipulative environment.

- Separation of Buyer Broker Retention and Commission Setting: The conspiracy has effectively separated the retention of buyer brokers from the setting of broker commissions. In this distorted system, the home buyer now directly retains the services of a buyer broker, while the seller's agent determines the compensation for the buyer broker, exacerbating inefficiencies within the market.

103.    There are no pro-competitive effects stemming from the conspiracy, which is unequivocally anticompetitive and detrimental to the competitive landscape. And any alleged pro-competitive benefits within the MLS system do not justify the Mandatory Offer of Compensation Rule, as they are substantially outweighed by its anticompetitive effects.

104.    Comprehensive economic evidence supports the notion that the conspiracy has resulted in inflated total commissions and buyer broker commissions paid by home sellers, far exceeding what a competitive market would dictate.

105.    In comparison to other countries with competitive real estate markets, commission rates in the United States are significantly higher, including in Texas where in 2022 the average commission was 5.59%. In fact, only 0.5% or less of sellers offer a buyer's agent commission below 2% in Austin, Houston, Dallas, and San Antonio. This high commission rate prevails in the face of the realities of modern home buying where 51% of buyers find by themselves the homes they ultimately purchase on the internet, a

fact that should have radically driven down the cost of a buyer's agent's fee. Nonetheless, a large majority (73%) of agents say they will not negotiate their commissions, a stance that would be untenable in a competitive market.

106.    Other economists have reached similar conclusions, highlighting the Mandatory Offer of Compensation Rule's role in restraining price competition and encouraging steering.

### F. Defendants' Market Power in Texas

107.    The relevant market for the claims herein is the bundle of services provided to home buyers and sellers by residential real estate brokers with access to MLSs. Defendants' control of MLSs allows them to impose anticompetitive NAR rules on Class members and other market participants.

108.    The relevant geographic market for the claims is Texas. The vast majority of homes sold in Texas were listed on MLSs by brokers subject to MLS and NAR regulations.

109.    Defendants and their co-conspirators collectively possess significant market power within each relevant market. Their influence is achieved through their participation and control over the local MLS and their substantial share of the local market.

110.    Non-conspiring brokers who aim to compete outside the conspiracy face insurmountable barriers:

- Access to MLS is essential for brokers to effectively serve buyers and sellers in the market.

- An alternative listing service aiming to compete with an MLS would require listings that are as comprehensive as an MLS, but brokers within the conspiracy lack the incentive to participate in such a service.
- Home buyers and sellers would be reluctant to utilize a new alternative listing service without a proven track record.
- NAR advises MLSs to enter into non-compete agreements with third-party websites.

**G. Continuous Accrual.**

111.    Over the course of the last four years leading up to the filing of this Complaint, Defendants, in collaboration with brokers operating within MLS-covered regions, systematically applied and received buyer broker commissions and total commissions at inflated rates, all due to their ongoing conspiracy. During this timeframe, Plaintiffs and other members of the Class were obliged to remit these inflated commissions in conjunction with the sale of residential real estate listed on MLSs. Each such payment over the past four years resulted in harm to Plaintiffs and their fellow Class members, giving rise to new causes of action stemming from these injuries.

112.    Throughout the preceding four years, Defendants, alongside their co-conspirators, have consistently upheld, executed, and enforced the Mandatory Offer of Compensation Rule and various other anticompetitive NAR directives on a nationwide scale.

V. **CLASS ACTION ALLEGATIONS**

113.    Plaintiffs bring this action on behalf of themselves, and as a class action under Federal Rule of Civil Procedure 23(a) and (b)(3), on behalf of the members of the Class defined as:

> All persons in Texas who, from December 13, 2019, through the present, used any Defendant or their affiliates (with the exception of Keller Williams Realty, Inc.) as the listing broker in the sale of a home listed on an MLS, and who paid a commission to the buyer's broker in connection with the sale of the home.

114.   For Defendant Keller Williams Realty, Inc. and HomeServices of America, Inc., those Defendants were already included in a class certified in the matter styled *Christopher Moehrl*, et al. v. The National Association of Realtors, et al., Case No. 19-cv-01610, pending in the United States District Court for the Northern District of Illinois, Eastern Division. However, that prior class did not include sales during the entirety of the proposed class period. Hence, a subclass for Keller Williams an HomeServices of America, Inc. should be certified as follows:

> All persons in Texas who, from January 1, 2021, through March 29, 2023, used a listing broker affiliated with Keller Williams Realty, Inc. or HomeServices of America, Inc. in the sale of a home listed on an MLS, and who paid a commission to the buyer's broker in connection with the sale of the home.

115.   Excluded from the Class are Defendants, their officers, directors and employees; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from the Class are any judicial officer(s) presiding over this action and the members of his/her/their immediate family and judicial staff, jurors, and Plaintiffs' counsel and employees of their law firms.

116.   The Class is readily ascertainable because records of the relevant transactions exist.

117.   Class members are so numerous that individual joinder of all its members

is impracticable. Due to the nature of the trade and commerce involved, Plaintiffs believe that the Class has many thousands of members, the exact number and their identities being known to Defendants and their co-conspirators.

118.    Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs' interests are aligned with, and not antagonistic to, those of the other members of the Class.

119.    Common questions of law and fact exist as to all members of the Class and predominate over any question affecting only individual Class members. These common legal and factual questions, each of which also may be certified under Rule 23(c)(4), include but are not limited to the following:

a.    Whether Defendants engaged in the alleged conspiracy;

b.    Whether the conduct of Defendants' and their co-conspirators caused injury to the business or property of Plaintiffs and the other members of the Class;

c.    Whether the effect of Defendants' conspiracy was to inflate both  total commissions and buyer broker commissions;

d.    Whether the competitive harm from the conspiracy substantially outweighs any competitive benefits;

e.    Whether Defendants' conduct is unlawful; and

f.    The appropriate class-wide measures of damages.

120.    Plaintiffs' claims are typical of the claims of the members of the Class because their claims arise from the same course of conduct by Defendants and the relief sought

within the Class is common to each member.

121.     Plaintiffs have retained counsel competent and experienced in the prosecution of antitrust class action litigation to represent themselves and the Class. Together Plaintiffs and their counsel intend to prosecute this action vigorously for the benefit of the Class. The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

122.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The prosecution of separate actions by individual members of the Class would impose heavy burdens on the Court and Defendants, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action, on the other hand, would achieve substantial economies of time, effort, and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results. Absent a class action, it would not be feasible for the members of the Class to seek redress for the violations of law alleged herein.

123.     Additionally, the Class may be certified under Rule 23(b)(1) and/or (b)(2) because:

     a.     The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants;

     b.     The prosecution of separate actions by individual Class members

would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudication, or substantially impair or impede their ability to protect their interests; and/or

c. Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the Class members as a whole.

## VI. **ANTITRUST INJURY**

124. Defendants' anticompetitive agreements and conduct have had the following effects, among others:

a. Sellers of residential property have been forced to pay inflated costs to sell their homes through forced payments of commissions to buyer brokers;

b. Home sellers have been faced with the fear of steering, such that they set buyer broker commissions to induce buyer brokers to show the sellers' homes to prospective buyers;

c. Price competition has been restrained among brokers seeking to be retained by home buyers, and by brokers seeking to represent home sellers; and

d. Defendants and their franchisees and subsidiaries have inflated their profits by a significant margin by the increased total commissions and increased buyer broker commissions.

125.    By reason of the alleged violations of the antitrust laws, Plaintiffs and the Class have sustained injury to their businesses or property, having paid higher total commissions than they would have paid in the absence of Defendants' anticompetitive conspiracy, and as a result have suffered damages.

126.    There are no pro-competitive effects of Defendants' conspiracy that are not substantially outweighed by the conspiracy's anticompetitive effects.

127.    Significant economic evidence supports concluding that Defendants' conspiracy has resulted in Class members paying buyer broker commissions and total commissions that have been inflated to a supra-competitive level.

128.    This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

## VII.    CAUSES OF ACTION

### A. Count 1: Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 – Against all Defendants (brought on behalf of Plaintiffs and the Class).

129.    Plaintiffs repeat and incorporate by reference each paragraph above and in any other count of this Complaint.

130.    Beginning more than four years before the filing of this Complaint, and continuing into the present, Defendants engaged in a continuing contract, combination, or conspiracy to unreasonably restrain interstate trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C § 1.

131.    The conspiracy alleged herein consists of a continuing agreement among Defendants and Defendants' co-conspirators to require sellers of residential property

to make inflated payments to the buyer broker.

132.    In furtherance of the contract, combination, or conspiracy, Defendants and their co- conspirators have committed one or more of the following overt acts:

        a.    Participated in the creation, maintenance, re-publication, and implementation of the Mandatory Offer of Compensation Rule and other anticompetitive NAR rules;

        b.    Participated in the establishment, maintenance, and implementation of rules by local NAR associations and MLSs that implemented the Mandatory Offer of Compensation Rule and other anticompetitive NAR rules; and

        c.    Requiring franchisees of Defendants and others to implement the Mandatory Offer of Compensation Rule and other anticompetitive NAR rules, which each Defendant does through its franchise agreements, policy manuals, and other contracts with its franchisees, affiliates, subsidiaries, and realtors.

133.    Defendants' conspiracy has required sellers to pay buyer brokers, to pay an inflated buyer broker commission and an inflated total commission, and it has restrained price competition among buyer brokers. This harm to competition substantially outweighs any competitive benefits arising from the conspiracy.

134.    Defendants' conspiracy has caused buyer broker commissions and total commissions to be inflated. Plaintiffs and the other members of the Class paid these inflated commissions during (and before) the last four years in connection with the sale

of residential real estate. Absent Defendants' conspiracy, Plaintiffs and the other Class members would have paid substantially lower commissions because the broker representing the buyer of their homes would have been paid by the buyer.

135.    Defendants' conspiracy is a *per se* violation under the federal antitrust laws, specifically 15 U.S.C. § 1.

136.    In the alternative, Defendants' conspiracy is illegal under the federal antitrust laws and violates 15 U.S.C. § 1 under a rule-of-reason analysis.

137.    As a direct and proximate result of Defendants' past and continuing violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, Plaintiffs and the other Class members have been injured in their business and property and suffered damages in an amount to be proven at trial.

**B. Count 2: Violations of the Texas Deceptive Trade Practices Act – Against Moreland Properties, MJHM LLC, and ATC Metro Properties, Inc.**

138.    Plaintiffs repeat and incorporate by reference each paragraph above and in any other count of this Complaint.

139.    Defendants acts and omissions violated the following provisions of the DTPA:

> a.    Tex. Bus. & Com. Code § 17.46(b)(12), which prohibits representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; and
>
> b.    Tex. Bus. & Com. Code § 17.50(a)(3) which makes a defendant

liable for any unconscionable action or course of action.

140.   Defendants' acts and omissions giving rise to the above violations cannot be characterized as advice, judgment, or opinion.

141.   Defendants' acts and omission giving rise to the above violations did not arise from a transaction involving total consideration by Plaintiffs of more than $500,000.

142.   Defendants' violations were knowing.

143.   Plaintiffs seek recovery of their economic damages, additional damages in an amount up to three times their economic damages, reasonable attorneys' fees, and costs of court.

## VIII.   <u>JURY DEMAND</u>

144.   Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand a jury trial of all issues so triable.

## IX. <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, request relief and pray for judgment against Defendants as follows:

a.   An Order certifying the Class under the appropriate provisions of Rule 23 of the Federal Rule of Civil Procedure, and appointing Plaintiffs and their counsel to represent the Class;

b.   Declarations that the actions of Defendants, as set forth above, are unlawful;

c.   A permanent injunction under Section 16 of the Clayton Act enjoining Defendants from (1) requiring that sellers pay the buyer broker, (2) continuing to restrict competition among buyer brokers and seller brokers,

and (3) engaging in any conduct determined to be unlawful;

d.      Appropriate injunctive and equitable relief;

e.      An award to Plaintiffs and the other members of the Class for damages and/or restitution in an amount to be determined at trial;

f.      An award of pre- and post-judgment interest to Plaintiffs;

g.      An award to Plaintiffs for their costs of suit, including reasonable attorneys' fees and expenses;

h.      An award of such other relief as the Court may deem just and proper.

Respectfully submitted,


/s/ Julie Pettit
Julie Pettit
State Bar No. 24065971
jpettit@pettitfirm.com
David B. Urteago
State Bar No. 24079493
durteago@pettitfirm.com
**THE PETTIT LAW FIRM**
2101 Cedar Springs, Suite 1540
Dallas, Texas 75201
Telephone: (214) 329-0151
Facsimile: (214) 329-4076

Michael K. Hurst
State Bar No. 10316310
mhurst@lynnllp.com
Chris Schwegmann
State Bar No. 24051315
cschwegmann@lynnllp.com
Yaman Dasai
State Bar No. 24101695
ydesai@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

Laurence D. King
**KAPLAN FOX & KILSHEIMER LLP**
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: (415) 772-4700
Facsimile: (415) 772-4707
lking@kaplanfox.com

Frederic S. Fox
Jeffrey P. Campisi
Matthew P. McCahill
**KAPLAN FOX & KILSHEIMER LLP**
800 Third Avenue, 38th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714
ffox@kaplanfox.com
jcampisi@kaplanfox.com
mmccahill@kaplanfox.com

*Attorneys for Plaintiffs and the Proposed Class*