**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

|  |  |  |
|---|---|---|
| In re: Real Estate Commission Litigation | ) ) ) ) ) ) ) | MDL No. 3100 |

**RESPONSE OF DEFENDANT NATIONAL ASSOCIATION OF REALTORS®**
**IN SUPPORT OF TRANSFER OF ACTIONS TO**
**THE NORTHERN DISTRICT OF ILLINOIS**
**FOR COORDINATED OR CONSOLIDATED**
**PRETRIAL PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407**

---

**WHITE & CASE** LLP
701 Thirteenth Street, Northwest
Washington, D.C., 20005-3807
Tel: (202) 626 3600

*Counsel for Defendant National Association*
*of REALTORS®*

January 22, 2024

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

INTRODUCTION.............................................................................................................2

BACKGROUND .............................................................................................................4

    A.    The Northern District of Illinois Has Longstanding Experience with NAR Rules ...............................................................................................................4

    B.    The First Related Action, a Home-Seller Action, Was Filed in the Northern District of Illinois..............................................................................................4

    C.    The First Home-Buyer Action Was Also Filed in the Northern District of Illinois ...............................................................................................................6

    D.    The Second Home-Seller Action, in the Western District of Missouri, Is Post-Trial and No Longer Eligible for Centralization Under the MDL Process..............7

    E.    The Third Home-Seller Action Was Filed in the District of Massachusetts ..........7

    F.    An Additional Sixteen Federal Actions Have Been Filed Nationwide, Including Two Additional Home-Buyer Actions in the Northern District of Illinois ...............................................................................................................7

ARGUMENT ..................................................................................................................9

    I.    The Panel Should Reject Movants' Proposal to Omit the Northern District of Illinois and District of Massachusetts Actions.........................................................9

        A.    The Omitted Actions Involve the Same Common Questions of Fact as the Other Cases Movants Seek to Centralize ............................................ 9

        B.    The Actions Movants Seek to Omit Should Not Be Omitted, And Indeed Are Essential to Efficient Resolution of the Dispute .................... 10

            1.    The Panel Should Not Exclude *Moehrl*, the First-Filed Action Covering Twenty-Five Major Metropolitan Areas ...................... 11

            2.    The Panel Should Not Exclude the Home-Buyer Actions........... 13

    II.    The Northern District of Illinois Is the Most Appropriate Transferee Court........13

        A.    The Four Pending Related Actions in the Northern District of Illinois Are Essential to an Efficient MDL Proceeding ....................................... 14

        B.    The Northern District of Illinois Is Also NAR's Headquarters, a Frequent Location for MDL Proceedings, and Geographically Accessible ........................................................................................... 15

        C.    Even If Judge Wood Is Unavailable, Other Judges in the Northern District of Illinois Would Offer Strong Options for Overseeing the MDL Proceeding........................................................................................... 17

    III.    The Eastern District of Texas Could Also Be Appropriate ...................................18

    IV.    The Western District of Missouri Would Not Be an Appropriate Venue as the Primary Case in That District Is No Longer Eligible for MDL Treatment ..........18

CONCLUSION ...............................................................................................................20

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**CASES**

*In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig.*,
201 F. Supp. 3d 1375 (J.P.M.L. 2016)................................................................11

*In re Acetaminophen - Asd/Adhd Prods. Liab. Litig.*,
637 F. Supp. 3d 1372 (J.P.M.L. 2022)................................................................17

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
435 F. Supp. 2d 1342 (J.P.M.L. 2006)................................................................16

*In re Air Fare Litig.*,
322 F. Supp. 1013 (J.P.M.L. 1971)......................................................................17

*In re Butterfield Pat. Infringement*,
328 F. Supp. 513 (J.P.M.L. 1970)........................................................................16

*In re Dep't of Veteran Affs. (VA) Data Theft Litig.*,
461 F. Supp. 2d 1367 (J.P.M.L. 2006)................................................................16

*In re Factor VIII or IX Concentrate Blood Prods. Litig.*,
169 F.R.D. 632 (N.D. Ill. 1996)............................................................................19

*In re Future Motion, Inc. Prods. Liab. Litig.*,
2023 U.S. Dist. LEXIS 219568 (J.P.M.L. Dec. 8, 2023).......................................12

*In re Household Goods Movers Antitrust Litig.*,
502 F. Supp. 2d 1356 (J.P.M.L. 2007)................................................................14

*Illinois Brick Co. v. Illinois*,
431 U.S. 720 (1977)...................................................................................6, 15

*In re Inclusive Access Course Materials Antitrust Litig.*,
482 F. Supp. 3d 1358 (J.P.M.L. 2020)................................................................12

*In re Insulin Pricing Litig.*,
2023 U.S. Dist. LEXIS 136037 (J.P.M.L. Aug. 4, 2023) .......................................12

*Leeder v. Nat'l Ass'n of Realtors*,
601 F. Supp. 3d 301 (N.D. Ill. 2022) ....................................................6, 13, 15, 19

*In re Live Concert Antitrust Litig.*,
429 F. Supp. 3d 1363 (J.P.M.L. 2006).................................................................16

*In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*,
   469 F. Supp. 2d 1348 (J.P.M.L. 2006)....................................................................16

*In re Managed Care Litig.*,
   246 F. Supp. 2d 1363 (J.P.M.L. 2003)....................................................................20

*Moehrl v. Nat'l Ass'n of Realtors*,
   2023 U.S. Dist. LEXIS 53299 (N.D. Ill. Mar. 29, 2023) ........................................5

*In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*,
   988 F. Supp. 2d 1364 (J.P.M.L. 2013)....................................................................14

*In re Moveit Customer Data Sec. Breach Litig.*,
   2023 U.S. Dist. LEXIS 178596 (J.P.M.L. Oct. 4, 2023) ...................................15, 16

*In re Nine W. LBO Sec. Litig.*,
   464 F. Supp. 3d 1383 (J.P.M.L. 2020)....................................................................17

*In re Ocean Fin. Corp. Prescreening Litig.*,
   435 F. Supp. 2d 1350 (J.P.M.L. 2006)....................................................................15

*In re Oral Phenylephrine Mktg.*,
   2023 U.S. Dist. LEXIS 219566 (J.P.M.L. Dec. 6, 2023).........................................17

*In re Pork Direct & Indirect Purchaser Antitrust Litig.*,
   544 F. Supp. 3d 1379 (J.P.M.L. 2021)....................................................................13

*In re Refined Petrol. Prods. Antitrust Litig.*,
   528 F. Supp. 2d 1365 (J.P.M.L. 2007)....................................................................14

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
   856 F. Supp. 2d 1350 (J.P.M.L. 2012)....................................................................13

*In re TR Labs Pat. Litig.*,
   896 F. Supp. 2d 1337 (J.P.M.L. 2012)....................................................................12

*In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*,
   471 F. Supp. 2d 1354 (J.P.M.L. 2007)....................................................................15

*In re Walgreens Herbal Supplements Mktg & Sales Pracs. Litig.*,
   109 F. Supp. 3d 1373 (J.P.M.L. 2015)....................................................................11

## STATUTES AND RULES

28 U.S.C. § 1407.................................................................................................................1

**MISCELLANEOUS**

Lida R. Weinstock, Cong. Rsch. Serv., IF11327, *Introduction to the U.S. Economy: Housing Market 1* (2023) ..................................................................................................................13

*MDL Statistics Reports – Distribution of Pending MDL Dockets by District*, Jud. Panel on Multidistrict Litig. (November 16, 2023), https://www.jpml.uscourts.gov/sites/jpml/files/ Pending_MDL_Dockets_By_District-November-16-2023.pdf...............................................15

*Quick Real Estate Statistics*, Nat'l Ass'n of REALTORS® (Oct. 31, 2023), https://www.nar.realtor/research-and-statistics/quick-real-estate-statistics...........................13

Defendant National Association of REALTORS® ("NAR") supports the centralization of related actions here under 28 U.S.C. § 1407.  That said, the pending Motion for Transfer and Centralization (ECF 1-1), filed by certain plaintiffs, omits several key actions and obscures that the most appropriate venue for centralization is the Northern District of Illinois.

First, the Motion would consolidate only *a limited subset* of the pending actions that involve common questions of fact.  Nineteen currently pending pretrial actions challenge either certain of NAR's rules relating to buyer-broker commissions or allegedly similar rules adopted by local REALTOR® associations or multiple listing services ("MLSs").  *See* Exhibit 1.  Movants, however, exclude from their Motion all actions filed in the Northern District of Illinois, as well as an action pending in the District of Massachusetts—thus excluding not only the first-filed home-seller action but also *all* pending home-buyer actions.  Rather than a partial MDL, with multiple parallel proceedings, the Panel should centralize all pending Related Actions.

Second, the most appropriate venue is the Northern District of Illinois—particularly once all the Related Actions are included.  The Northern District of Illinois is not only the district in which the original actions were filed and remain pending, and the only district with both a home-seller action and home-buyer actions, but also the district with the largest number of actions.  Moreover, NAR's headquarters, and thus of much of the discovery related to these actions, is in the Northern District of Illinois.  In the alternative, NAR would not oppose transfer to the Eastern District of Texas, which is the location of the largest number of defendants.

While Movants might prefer the Western District of Missouri, the only MDL-eligible Related Actions in that district are in nascent stages, and it would not be practical to transfer to that district the key Related Actions that are currently pending in the Northern District of Illinois—a fact the Motion makes clear by omitting them.

## <u>INTRODUCTION</u>

The Northern District of Illinois is the most appropriate venue for centralization.  Four of the nineteen pending actions are pending there—more than in any other district—including the first-filed action overall, filed in 2019 by home sellers in twenty-five major metropolitan areas (*Moehrl*), the first-filed action involving home buyers (rather than home sellers) (*Batton v. Nat'l Ass'n of Realtors* ("*Batton I*")), which was also filed on behalf of a nationwide class, and two recently filed actions likewise involving nationwide classes of home buyers (*Batton v. Compass, Inc.* ("*Batton II*") and *Tuccori*).  A judge in the district—United States District Court Judge Andrea Wood—has ably overseen the *Moehrl* case through the discovery process and class certification. Judge Wood is also the only judge in the nation to have overseen home-seller *and* home-buyer actions.  And although Judge Wood has not had the opportunity to oversee an MDL proceeding to date, the Northern District of Illinois has often been recognized as an appropriate court for MDL proceedings, including in light of its central location.  Finally, NAR is headquartered in the Northern District of Illinois.  The Panel should therefore transfer the actions identified in the Motion, along with the additional actions identified by NAR (collectively the "Related Actions"), to the Northern District of Illinois for assignment to Judge Wood—or, in the alternative, to another district judge in that district, such as Judge Chang (*Batton II*) or Judge Jenkins (*Tuccori*).

Movants recently filed two actions in the Western District of Missouri to support their request for transfer to that venue, including one (*Umpa*) the same day they filed their Motion. Movants, however, appear to recognize that it would make little sense to transfer *Moehrl* or *Batton I* to Missouri given the experience Judge Wood has with those cases.  So, rather than propose any solution to that problem, Movants simply omit every case pending in the Northern District of Illinois from their schedule of Related Actions.  Movants' approach, if adopted, would thus create three parallel groups of proceedings involving overlapping factual issues: (1) An MDL proceeding

in the Western District of Missouri, (2) the four Northern District of Illinois actions (*Moehrl*, *Batton I*, *Batton II*, and *Tucorri*), involving the claims of home sellers in twenty-five major metropolitan areas and home buyers nationwide, and (3) a District of Massachusetts action (*Nosalek*), also ignored in the Motion. Indeed, under Movants' approach the named plaintiff in *Umpa*, filed in Missouri the same day Movants filed their Motion, would also simultaneously serve as a named plaintiff in *Batton I*, currently pending in Chicago.

Movants' fragmented approach offers few if any benefits to judicial or party efficiency. The only case in the Western District of Missouri that has proceeded beyond its initial stages is *Burnett*, which is now post-trial and therefore not eligible for consolidation at this time. The other two actions pending in the Western District of Missouri are the actions Movants recently filed in that district, *Gibson* and *Umpa*. And while Movants argue that coordination in the Western District of Missouri would assist Judge Bough in overseeing the two settlements entered in *Burnett*, the same settlements were filed in *Moehrl* and (as the settlement papers reveal) counsel for the plaintiffs in *Moehrl* participated in negotiating the settlements. Rather than the Western District of Missouri, the Northern District of Illinois is therefore the most appropriate venue here.

In the alternative, NAR does not oppose centralization in the Eastern District of Texas. Of the approximately 210 defendants named in the various Related Actions, 46 are named only in *Martin* and/or *QJ Team*, the actions currently pending in the Eastern District of Texas. Thus, while the Eastern District of Texas does not offer all the advantages of the Northern District of Illinois in terms of efficiency, if the Panel prefers not to consolidate these actions in the Northern District of Illinois, NAR does not oppose centralization in the Eastern District of Texas.

The Panel should therefore centralize the Related Actions in the Northern District of Illinois or, in the alternative, in the Eastern District of Texas.

# BACKGROUND

## A.   The Northern District of Illinois Has Longstanding Experience with NAR Rules

The Northern District of Illinois has longstanding experience with NAR rules.  In 2005, the Department of Justice filed an action in the Northern District of Illinois, challenging the NAR's policies regarding access to listings for internet-based brokers.  Compl., *United States v. Nat'l Ass'n of Realtors*, 05-cv-5140-MFK (N.D. Ill. Sept. 8, 2005), ECF 1.  After three years of litigation, NAR and the DOJ reached a settlement.  Final Judgment, *United States v. Nat'l Ass'n of Realtors*, 05-cv-5140-MFK (N.D. Ill. Nov. 18, 2008), ECF 248.  Among the terms of the settlement agreement was a recognition that MLS listings would include "cooperative compensation offered by listing broker"—precisely the conduct at issue in the Related Actions. *See id.* at 5, ¶ 5(h) ("A [Virtual Office Website offering real estate listings] may exclude listings from display based only on objective criteria, including, but not limited to, factors such as . . . cooperative compensation offered by listing broker.").  Under the terms of the Final Judgment in that action, the settlement was enforceable in the Northern District of Illinois for ten years.  *See id.* at 11.  The settlement expired by its terms on November 18, 2018.  *See id.*

## B.   The First Related Action, a Home-Seller Action, Was Filed in the Northern District of Illinois

In March 2019, an alleged class of home sellers in major metropolitan areas across the country brought suit against NAR and several real-estate brokerage firms in the Northern District of Illinois.  Compl., *Moehrl v. Nat'l Ass'n of Realtors*, 19-cv-1610 (N.D. Ill. Mar. 6, 2019), ECF 1. The class alleged in *Moehrl* included home sellers in twenty-five major metropolitan areas: Baltimore, Philadelphia, Richmond, Washington, D.C., Tampa, Orlando, Sarasota, Cleveland, Columbus, Detroit, Milwaukee, Minneapolis, Austin, Dallas, Houston, Las Vegas, Phoenix, San Antonio, Colorado Springs, Denver, Salt Lake City, Fort Myers, Miami, Charlotte, and Raleigh.

4

Consol. Compl. ¶ 18, *Moehrl v. Nat'l Ass'n of Realtors*, 19-cv-1610 (N.D. Ill. June 14, 2019), ECF 84. Along with NAR, the complaint names as defendants Realogy Holdings Corp. (now known as Anywhere Realty) ("Anywhere Realty"), HomeServices of America, Inc. and related entities, RE/MAX LLC ("Re/Max"), and Keller Williams Realty, Inc. ("Keller Williams"), and as co-conspirators local REALTOR® associations and NAR-affiliated MLSs. *See id*. at ¶¶ 32-39.

The plaintiffs in *Moehrl* allege that REALTORS® are required to comply with certain rules established by NAR, and that these rules have caused home sellers to pay supracompetitive broker fees when selling homes. Among other things, the plaintiffs in *Moehrl* allege that the so-called "Buyer-Broker Commission Rule" requires that, when listing a home for sale on an MLS, the listing seller-broker must disclose the commission that the seller is willing to offer a buyer broker. *Moehrl v. Nat'l Ass'n of Realtors*, 2023 U.S. Dist. LEXIS 53299, at *10 (N.D. Ill. Mar. 29, 2023). The plaintiffs allege that this rule has the effect of allowing the seller rather than the buyer to pay the buyer-broker's commission, which they allege is less favorable to consumers than a model under which buyers paid buyer-broker commissions directly. *Id.*

The *Moehrl* action was assigned to Judge Andrea Wood, before whom it remains pending. The parties have completed fact and expert discovery (including numerous disputes overseen by Judge Wood), and a class has been certified, but summary judgment motions are not due to be fully briefed and resolved until sometime after April 2024. *See Moehrl*, 2023 U.S. Dist. LEXIS 53299 (certifying a class of home sellers); Minute Entry, *Moehrl v. Nat'l Ass'n of Realtors*, 19-cv-1610 (N.D. Ill. Sept. 12, 2023), ECF 438 (establishing briefing schedule for summary judgment motions). Finally, two of the defendants—Anywhere Realty and Re/Max—have entered nationwide settlements. *See* Notice of Pending Settlement as to Realogy, *Moehrl v. Nat'l Ass'n of*

*Realtors*, 19-cv-1610 (N.D. Ill. Sept. 5, 2023), ECF 436; Notice of Pending Settlement as to RE/MAX LLC, *Moehrl v. Nat'l Ass'n of Realtors*, 19-cv-1610 (N.D. Ill. Sept. 18, 2023), ECF 440.

**C.      The First Home-Buyer Action Was Also Filed in the Northern District of Illinois**

Additionally, an alleged nationwide class of home *buyers* brought suit against NAR and other defendants in the Northern District of Illinois in January 2021, again challenging the Buyer-Broker Commission Rule and other NAR rules.  Compl., *Batton v. Nat'l Ass'n of Realtors*, 21-cv-430 (N.D. Ill. Jan 25, 2021), ECF 1.  The plaintiffs in *Batton I* seek to represent all home buyers nationwide who purchased residential real estate listed on an NAR-affiliated MLS—the first of the Related Actions to allege a nationwide class, and the first to challenge buyer-broker commissions on behalf of home buyers rather than home sellers.  *See* Am. Compl. ¶¶ 136-37, *Batton v. Nat'l Ass'n of Realtors*, 21-cv-430 (N.D. Ill. July 6, 2022), ECF 84.  As with *Moehrl*, the defendants in *Batton I* include not only NAR but also Anywhere Realty, HomeServices, Re/Max, and Keller Williams.  *See id.* at ¶¶ 28-32.  And as with *Moehrl*, the plaintiffs in *Batton I* allege that local REALTOR® associations and NAR-affiliated MLSs served as co-conspirators in the alleged antitrust violations.  *See id.* at ¶¶ 33-35.  Finally, *Batton I*, like *Moehrl*, is before Judge Wood.

Judge Wood initially dismissed the *Batton I* claims without prejudice under *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).  *Leeder v. Nat'l Ass'n of Realtors* (hereinafter "*Batton I*"), 601 F. Supp. 3d 301, 311 (N.D. Ill. 2022).  Plaintiffs amended their complaints in response, and no decision has yet been issued on the defendants' motion to dismiss the amended complaints.  However, the court in *Batton I* has recently ordered that within 14 days of a decision on that motion to dismiss the parties must meet and confer on a post-ruling case schedule.  *See* Minute Entry, *Batton v. Nat'l Ass'n of Realtors*, 21-cv-430 (N.D. Ill. Nov. 17, 2023), ECF 116.

**D.      The Second Home-Seller Action, in the Western District of Missouri, Is Post-Trial and No Longer Eligible for Centralization Under the MDL Process**

Approximately two months after the complaint in *Moehrl*, a follow-on action limited to a smaller class of home sellers in parts of Missouri, Illinois, and Kansas was filed in the Western District of Missouri and assigned to Judge Stephen Bough.  Compl. ¶¶ 22, 91-92, *Burnett v. Nat'l Ass'n of Realtors*, 19-cv-332 (W.D. Mo. Apr. 29, 2019), ECF 1 (defining the class to include only four MLSs).  The court in *Burnett* has already proceeded through trial, with the jury rendering a verdict for the plaintiffs.  Jury Verdict, *Burnett v. Nat'l Ass'n of Realtors*, 19-cv-332 (W.D. Mo. Oct. 31, 2023), ECF 1294.  As that action is now at the post-trial and appeal phase, it is not before this Panel for consolidation or coordination for pretrial proceedings.

**E.      The Third Home-Seller Action Was Filed in the District of Massachusetts**

A third home-seller action was filed by home sellers in New England and New York in December 2020 against an MLS that had adopted a rule the plaintiffs there allege to have been similar to the Buyer-Broker Commission Rule at issue in *Moehrl* and *Burnett*—along with other rules adopted by the MLS that the plaintiffs there allege to have furthered the alleged competitive harm.  Compl., *Nosalek v. MLS Prop. Info. Network, Inc.*, 20-cv-12244 (D. Mass. Dec. 17, 2020), ECF 1.  That is the first-filed action to challenge buyer-broker commission rules other than those promulgated by NAR itself.  The plaintiffs there also named as defendants Anywhere Realty (including various of its subsidiaries), HomeServices, Re/Max, and Keller Williams.  That action remains in discovery, with summary judgment motions not due until June 2025.  *See* Endorsed Order, *Nosalek v. MLS Prop. Info. Network, Inc.*, 20-cv-12244 (D. Mass. Aug. 9, 2023), ECF 215.

**F.      An Additional Sixteen Federal Actions Have Been Filed Nationwide, Including Two Additional Home-Buyer Actions in the Northern District of Illinois**

After the October 2023 verdict in *Burnett*, the second-filed action in connection with the rules at issue, a series of sixteen follow-on cases have been filed across the country challenging

the same type of rule related to buyer-broker commissions, whether rules issued by NAR or by other entities.  While some of these actions name NAR and the real-estate brokerage defendants that were named in the above actions (e.g., Anywhere Realty, HomeServices, Re/Max, and Keller Williams) as defendants, others name local real-estate associations and/or new real-estate brokerage defendants such as Compass, Inc.  These new Related Actions to date include at least the following (*see also* Ex. 1):

- *Gibson v. Nat'l Ass'n of Realtors*, 23-cv-788 (W.D. Mo. Oct. 31, 2023)
- *Batton v. Compass, Inc.*, 23-cv-15618 (N.D. Ill. Nov. 2, 2023)
- *Burton v. Nat'l Ass'n of Realtors*, 23-cv- 5666 (D.S.C. Nov. 6, 2023)
- *March v. Real Estate Bd. of N.Y.*, 23-cv-9995 (S.D.N.Y. Nov. 13, 2023)
- *QJ Team, LLC v. Tex. Ass'n of Realtors*, 23-cv-1013 (E.D. Tex. Nov. 13, 2023)
- *1925 Hooper LLC v. Nat'l Ass'n of Realtors*, 23-cv-5392 (N.D. Ga. Nov. 22, 2023) (originally known as *Phillips v. Nat'l Ass'n of Realtors*)
- *Spring Way Ctr, LLC v. W. Penn Multi-List, Inc.*, 23-cv-2061 (W.D. Pa. Dec. 4, 2023)
- *Grace v. Nat'l Ass'n of Realtors*, 23-cv-6352 (N.D. Cal. Dec. 8, 2023)
- *Martin v. Tex. Ass'n of Realtors*, 23-cv-1104 (E.D. Tex. Dec. 14, 2023)
- *Umpa v. Nat'l Ass'n of Realtors*, 23-cv-945 (W.D. Mo. Dec. 27, 2023)
- *Tuccori v. At World Props.*, 24-cv-150 (N.D. Ill. Jan. 5, 2024)
- *Masiello v. Arizona Ass'n of Realtors*, 24-cv-45 (D. Ariz. Jan. 5, 2024)
- *Whaley v. Nat'l Ass'n of Realtors*, 24-cv-105 (D. Nev. Jan. 15, 2024)
- *Fierro v. Nat'l Ass'n of Realtors*, 24-cv-449 (C.D. Cal. Jan. 17, 2024)
- *Willsim Latham, LLC v. Metrolist Servs., Inc.*, 24-cv-244 (E.D. Cal. Jan. 18, 2024)
- *Friedman v. Real Estate Bd. of N.Y.*, 24-cv-405 (S.D.N.Y. Jan. 18, 2024) (originally filed in the E.D.N.Y. as 23-cv-9601 (E.D.N.Y. Dec. 29, 2023))

Although filed after the Motion, *Friedman*, *Masiello*, *Whaley*, and *Fierro* are home-seller actions that involve common questions of fact as the Related Actions identified in the Motion, and would therefore be subject to centralization on the same basis as the actions identified in the Motion. Finally, one state-law action is also pending: *Parker Holding Group, Inc. v. Florida Ass'n of Realtors*, 2023-027749-CA-01 (Fla. Miami-Dade County Ct., Dec. 4, 2023).

\* \* \*

There are thus nineteen pending federal actions at the pretrial phase, with the first-filed action, and four actions in total, in the Northern District of Illinois.  Two of the Northern District

of Illinois actions (*Moehrl* and *Batton I*) are before Judge Wood, with the other two currently

assigned to Judge Edmond E. Chang (*Batton II*) and Judge Lindsay C. Jenkins (*Tuccori*)—

although both are in their early stages and subject to potential reassignment to Judge Wood.  *See,*

*e.g.*, Unopposed Motion to Relate and Reassign Case, *Batton v. Nat'l Ass'n of Realtors*, 21-cv-430

(N.D. Ill. Jan. 10, 2024), ECF 118.  Two of the Related Actions are pending in the Eastern District

of Texas; both cases have been assigned to Judge Sean Jordan.

## ARGUMENT

**I.**     **The Panel Should Reject Movants' Proposal to Omit the Northern District of Illinois and District of Massachusetts Actions**

The Panel should reject Movants' implicit suggestion to carve out of the proposed MDL

the actions pending in the Northern District of Illinois and District of Massachusetts.

### A.     **The Omitted Actions Involve the Same Common Questions of Fact as the Other Cases Movants Seek to Centralize**

Movants assert that centralization would be appropriate for the nine cases they seek to

include in the MDL, citing the overlap among those nine cases.  But Movants' arguments for

centralization also apply to the Northern District of Illinois actions (*Moehrl*, *Batton I*, *Batton II*,

and *Tuccori*) and District of Massachusetts action (*Nosalek*) that Movants would leave out:

- **There is an overlap in the class definitions.**  Motion at 6.  While Movants point out the overlap between some of the class definitions, they ignore that *Moehrl*, *Nosalek*, and *Tuccori* also have class definitions that are likely to overlap.  *See* Ex. 2 (detailing class definitions in the Related Actions at issue here).  And, as discussed below, the class definitions in *Batton I* and *Batton II* differ only in that they involve home buyers.

- **There is an overlap in defendants.**  Motion at 6.  While Movants note that the actions they wish to consolidate name one or more of (a) NAR, (b) Compass, (c) Keller Williams, and (d) HomeServices of America, the *Moehrl*, *Batton I*, *Batton II*, and *Nosalek* cases *also* name NAR, Compass, Keller Williams, and/or HomeServices of America—among many other defendants that overlap with the other cases.  *See* Ex. 1.

- **Each action involves Sherman Act claims based on buyer-broker commissions.**  Motion at 6.  While movants cite the fact that the cases they wish to centralize rely on the same basic Sherman Act allegations, those are exactly the same allegations made in

9

*Moehrl*, *Batton I*, *Batton II*, *Tuccori*, and *Nosalek*.  *See Moehrl* Am. Compl. ¶¶ 151-60; *Batton I* Am. Compl. ¶¶ 146-55; *Batton II* Compl. ¶¶ 149-58; *Tuccori* Compl. ¶¶ 115-25; *Nosalek* Sec. Am. Compl. ¶¶ 178-187.

The common questions of fact Movants identify in support of centralization are likewise common to the Northern District of Illinois and District of Massachusetts actions:

- "Whether defendants entered into an agreement or conspiracy based on the Buyer Broker Commission Rules."  Motion at 7; *Moehrl* Am. Compl. ¶ 147; *Batton I* Am. Compl. ¶ 141; *Batton II* Compl. ¶ 144; *Nosalek* Second Am. Compl. ¶ 172; *Tuccori* Compl. ¶ 112.

- "Whether defendants possess market power in the relevant markets."  Motion at 8; *Moehrl* Am. Compl. ¶¶ 133-139; *Batton I* Am. Compl. ¶¶ 52-57; *Batton II* Compl. ¶¶ 55-60; *Nosalek* Sec. Am. Compl. ¶¶ 132-139; *Tuccori* Compl. ¶¶ 20, 42.

- "Whether defendants engage in or promote steering."  Motion at 8; *Moehrl* Am. Compl. ¶¶ 4, 9, 64, 67-78; *Batton I* Am. Compl. ¶¶ 12, 71-85; *Batton II* Compl. ¶¶ 12, 74-85; *Nosalek* Sec. Am. Compl. ¶¶ 78-93; *Tuccori* Compl. ¶¶ 69, 76-82.

- "Whether the effect of the agreement was to inflate total commissions and buyer broker commissions." Motion at 8; *Moehrl* Am. Compl. ¶ 147; *Batton I* Am. Compl. ¶ 141; *Batton II* Compl. ¶ 144; *Nosalek* Sec. Am. Compl. ¶ 172; *Tuccori* Compl. ¶ 142.

- "Whether the competitive harm from the conspiracy substantially outweighs any competitive benefits."  Motion at 8; *Moehrl* Am. Compl. ¶ 147; *Batton I* Am. Compl. ¶ 141; *Batton II* Compl. ¶ 144; *Nosalek* Sec. Am. Compl. ¶ 172; *Tuccori* Compl. ¶ 112.

### B.    The Actions Movants Seek to Omit Should Not Be Omitted, And Indeed Are Essential to Efficient Resolution of the Dispute

There is no colorable basis to omit any of the actions Movants seek to omit.  On the contrary, the Northern District of Illinois actions in particular are essential to the efficient resolution of any MDL as (a) *Moehrl* is a wide-ranging action covering twenty-five major metropolitan areas that, under Movants' proposal, would be forced to proceed in parallel to the MDL, thereby undermining the value of the MDL process, and (b) *Batton I*, *Batton II*, and *Tuccori* are the only home-buyer actions, and thus should be included in any consolidated proceeding to avoid any potential complications that might otherwise arise by proceeding with these claims separately from those of home sellers.  Additionally, the Panel should also centralize the *Nosalek*

case that remains pending in the District of Massachusetts, which is a home-seller action that raises all of the same issues as those Movants would seek to include.

### 1.   The Panel Should Not Exclude *Moehrl*, the First-Filed Action Covering Twenty-Five Major Metropolitan Areas

Movants argue that *Moehrl*, the first-filed action here, should be excluded from the MDL because it is somewhat more advanced than the later-filed actions. Mot. at 4 n.3. But doing so would undermine the value of the MDL process—and is not necessary.

Movants' proposal would create substantial inefficiencies, including because the class certified in *Moehrl* covers home sellers in twenty-five major metropolitan areas and thus creates issues of overlap in any class definition in an MDL. *See supra* Background Section B; *Moehrl* Am. Compl. ¶ 18. Not only do *Moehrl* and *Batton I* make Judge Wood the only judge with experience overseeing discovery involving wide-ranging geographical areas, overlapping class definitions are a key reason to centralize cases, as Movants point out. *See* Motion at 5-6; *see also In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig.*, 201 F. Supp. 3d 1375, 1378 (J.P.M.L. 2016) (noting that MDL allowed "management of the competing putative classes" where "nearly all parties agree that the actions at issue should be centralized before the same transferee judge, even if there are separate MDLs, because the proposed statewide and nationwide classes overlap substantially and present competing class definitions."); *In re Walgreens Herbal Supplements Mktg. & Sales Pracs. Litig.*, 109 F. Supp. 3d 1373, 1375-76 (J.P.M.L. 2015) (same). For example, because Phoenix is one of the twenty-five metropolitan areas in *Moehrl*, a home seller in Phoenix in February 2020 would be a class member in both *Moehrl* and *Masiello*—and, under Movant's proposal, would be both a part of the MDL proceeding and excluded from that proceeding. *See* Ex. 2. Indeed, to try to avoid this problem in *Umpa*, Movants define a class gerrymandered to exclude members of the *Moehrl* class so as to attempt to avoid obvious conflicts

—notwithstanding that Daniel Umpa, the first-named plaintiff in the *Umpa* action, is also a named plaintiff in *Moehrl*. *See Moehrl* Am. Compl. ¶ 30; Ex. 2 at 5 (*Umpa* class defined to exclude "sales in which the listing broker was affiliated with Keller Williams or the HomeServices Defendants" if made before December 31, 2020, and if in one of 19 MLSs that appear to overlap with *Moehrl*).

But there is no need for the inefficient approach Movants advocate; "[i]t is frequently the case . . . that actions transferred to an MDL are in somewhat varying procedural postures." *In re Inclusive Access Course Materials Antitrust Litig.*, 482 F. Supp. 3d 1358, 1359 (J.P.M.L. 2020) (quoting *In re TR Labs Pat. Litig.*, 896 F. Supp. 2d 1337, 1338 (J.P.M.L. 2012)). Indeed, the Panel recently noted that the most efficient approach, when one potential transferee court has an advanced case, is to transfer the other actions to that same district to allow the court to decide for itself how to handle the overlap in proceedings. *In re Insulin Pricing Litig.*, 2023 U.S. Dist. LEXIS 136037, at *8 & n.9 (J.P.M.L. Aug. 4, 2023) ("Selection of this district enables us to assign this litigation to the Honorable Brian R. Martinotti, who presides over the three most advanced actions concerning the alleged insulin pricing scheme." However, "[w]e take no position on whether the New Jersey Insulin Pricing Actions should be formally included in the MDL given the advanced posture of those actions. We leave this decision, and all matters related to the conduct of pretrial proceedings, to the discretion of the transferee court."). And the Panel has recently observed that the more advanced case may likewise benefit from centralization. *In re Future Motion, Inc. Prods. Liab. Litig.*, 2023 U.S. Dist. LEXIS 219568, at *3 (J.P.M.L. Dec. 8, 2023) (ordering centralization of three actions even after the close of discovery and the filing of dispositive motions). The Panel should therefore include *Moehrl* in the MDL, and accordingly should transfer the other pending cases to the Northern District of Illinois. *See infra* Section II.

### 2.        The Panel Should Not Exclude the Home-Buyer Actions

That *Batton I*, *Batton II*, and *Tuccori* are brought on behalf of home buyers, rather than home sellers, is no reason to exclude them from a centralized proceeding.  This Panel routinely rejects attempts by movants to consolidate the claims of one type of plaintiff while excluding the claims of another type of purchaser.  *See, e.g.*, *In re Skelaxin (Metaxalone) Antitrust Litig.*, 856 F. Supp. 2d 1350, 1351 (J.P.M.L. 2012) ("The Panel has frequently centralized antitrust cases involving direct and indirect purchaser claims that arise from common factual allegations, particularly where multiple related actions are pending."); *In re Pork Direct & Indirect Purchaser Antitrust Litig.*, 544 F. Supp. 3d 1379, 1380 (J.P.M.L. 2021) (consolidating all related actions, including indirect purchaser actions, notwithstanding that movants sought "an MDL consisting of only individual direct purchaser actions").  Indeed, that the Northern District of Illinois has before it both home-seller and home-buyer cases is one key reason centralization should occur in that district, as Judge Wood is the judge best equipped to reconcile claims by home sellers and home buyers.  *See, e.g.*, *Batton I*, 601 F. Supp. 3d at 309-14 (Judge Wood tackling these issues on a motion to dismiss).  Movants' proposal to exclude the Northern District of Illinois actions from the MDL here should therefore be rejected.

## II.     The Northern District of Illinois Is the Most Appropriate Transferee Court

Particularly once all the Related Actions are considered, the Northern District of Illinois is the most appropriate choice for the transferee district.  The Related Actions involve an industry that employs 1.5 million Americans, with more than five million home sales per year, and represents approximately 17% of America's gross domestic product.  *See Quick Real Estate Statistics*, Nat'l Ass'n of REALTORS® (Oct. 31, 2023), https://www.nar.realtor/research-and-statistics/quick-real-estate-statistics; Lida R. Weinstock, Cong. Rsch. Serv., IF11327*, Introduction to the U.S. Economy: Housing Market* 1 (2023).  The Related Actions filed thus far have named

state and local REALTOR® associations and brokerages of all sizes and financial means throughout the country.  This is therefore a case that requires consolidation in a court with the experience to carefully consider the issues, including issues as to these new parties that were not present in *Burnett*, and make reasoned decisions reflecting the seismic importance of the matter.

      A.      **The Four Pending Related Actions in the Northern District of Illinois Are Essential to an Efficient MDL Proceeding**

The Northern District of Illinois is the most appropriate venue here, because it is the location of both first-filed Related Actions (for sellers and buyers), and the only district with four pending actions related to the subject matter at issue here.

First, the Northern District of Illinois is the location of the first-filed home-seller case, and the first-filed case overall to address the real-estate commission issues at issue in this proceeding, *Moehrl*.  The Panel has previously looked to the first-filed case in determining where to transfer an MDL.  *See In re Household Goods Movers Antitrust Litig.*, 502 F. Supp. 2d 1356, 1357 (J.P.M.L. 2007) (considering the "first-filed" action in determining the venue for transfer); *In re Refined Petrol. Prods. Antitrust Litig.*, 528 F. Supp. 2d 1365, 1367 (J.P.M.L. 2007) (assigning MDL proceeding to the court in which the "most advanced" action was pending).

As noted above, *Moehrl* is an essential part of any MDL proceeding, but also would be difficult to transfer to a new judge at this stage in the case—as the parties have conducted discovery and are currently briefing summary judgment.  Consolidating the Related Actions in the Northern District of Illinois avoids this dilemma, and—because of Judge Wood's experience in overseeing this action—also offers substantial efficiencies.  *See In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, 988 F. Supp. 2d 1364, 1367 (J.P.M.L. 2013) (noting that the judge currently presiding over the most advanced action "is in a particularly favorable position to structure this litigation so as to minimize delay and avoid unnecessary duplication of discovery and motion

practice"); *In re Ocean Fin. Corp. Prescreening Litig.*, 435 F. Supp. 2d 1350, 1352 (J.P.M.L. 2006) (noting that the transferee judge had "already developed familiarity with the issues present in [the] docket as a result of presiding over motion practice and other pretrial proceedings in the action pending before her for the past year").

Second, Judge Wood also has before her the first-filed home-*buyer* action—*Batton I*. Judge Wood has devoted substantial attention to this case at the motion-to-dismiss stage, including dismissing the claims once without prejudice on antitrust-standing grounds. *Batton I*, 601 F. Supp. 3d at 312, 314 (dismissing claims under *Illinois Brick*, 431 U.S. at 720). While other judges might also claim some degree of experience with buyer-broker commission issues generally—including Judge Stephen Bough in the Western District of Missouri and Judge Patti Saris in the District of Massachusetts—only Judge Wood can claim to have overseen both an action involving home sellers and an action involving home buyers.

Third, with four pending actions, the Northern District of Illinois is the district with the largest number of Related Actions currently pending in the pretrial stages. *See In re Moveit Customer Data Sec. Breach Litig.*, 2023 U.S. Dist. LEXIS 178596, at *10 (J.P.M.L. Oct. 4, 2023) (choosing district in part because it had most of the relevant cases pending); *In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*, 471 F. Supp. 2d 1354, 1356 (J.P.M.L. 2007) (assigning the MDL to the venue where most of the cases had been filed).

### B.      The Northern District of Illinois Is Also NAR's Headquarters, a Frequent Location for MDL Proceedings, and Geographically Accessible

The Northern District of Illinois is also well suited to handle the Related Actions in a timely manner, as that court has handled numerous multidistrict litigations in the past and is now handling seventeen such matters. *See MDL Statistics Reports – Distribution of Pending MDL Dockets by District*, Jud. Panel on Multidistrict Litig. (November 16, 2023), https://www.jpml.uscourts.gov/

sites/jpml/files/Pending_MDL_Dockets_By_District-November-16-2023.pdf.  Judge Wood is an exceptionally well-qualified jurist who does not appear to have yet had the opportunity to oversee a multidistrict litigation, and would therefore be an ideal choice to oversee the Related Actions as an MDL proceeding.  (As discussed below, in the event that Judge Wood is unavailable for any reasons, it may also be possible to assign the Related Actions to another judge in the district, including Judge Edmond E. Chang (*Batton II*), Judge Lindsay C. Jenkins (*Tuccori*), or Judge Martha Pacold, who initially oversaw *Batton I*.)

Additionally, perhaps the most common theme in the Related Actions is NAR's rules—and NAR is headquartered in the Northern District of Illinois.  *See Moehrl* Am. Compl. ¶ 32; *In re Moveit*, 2023 U.S. Dist. LEXIS 178596, at *10 (choosing district because the owner of the software that was at the center of the litigations was headquartered there); *In re Live Concert Antitrust Litig.*, 429 F. Supp. 2d 1363, 1364 (J.P.M.L. 2006) (noting that location of defendant's headquarters a relevant factor in selecting transferee district); *In re Dep't of Veteran Affs. (VA) Data Theft Litig.*, 461 F. Supp. 2d 1367, 1369 (J.P.M.L. 2006) (selecting district where the events at issue occurred). Although discovery here may be nationwide, much of the most relevant discovery will come from NAR in the Northern District of Illinois.  *See In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*, 469 F. Supp. 2d 1348, 1350 (J.P.M.L. 2006) (choosing transferee district where most of the discovery will come from).

Chicago is also an easily accessible location in the center of the country, with two convenient airports and frequent flights throughout the United States, and is therefore convenient to all parties.  *See In re Air Cargo Shipping Servs. Antitrust Litig.*, 435 F. Supp. 2d 1342, 1344 (J.P.M.L. 2006) (considering the ease of access in determining the appropriate transferee court); *In re Butterfield Pat. Infringement*, 328 F. Supp. 513, 515 (J.P.M.L. 1970) ("Since Chicago is

geographically central, we think the convenience of the parties will best be served by transfer to . . . the Northern District of Illinois."); *In re Air Fare Litig.*, 322 F. Supp. 1013, 1015-16 (J.P.M.L. 1971) ("The geographical location of the transferee court is especially relevant when counsel must travel from distant parts of the country.  We think that the Northern District of Illinois will be more convenient for counsel, and thus less expensive for their clients, than [N.D. Cal. and D.D.C.].").  The Northern District of Illinois is therefore a convenient venue for the parties.

      C.      **Even If Judge Wood Is Unavailable, Other Judges in the Northern District of Illinois Would Offer Strong Options for Overseeing the MDL Proceeding**

Finally, while the arguments for centralization in the Northern District of Illinois assume that Judge Wood would be able and willing to take on an MDL, centralization in that district does not depend on Judge Wood's availability.  If Judge Wood cannot take on the MDL, the next best option is not, as Movants propose, to fragment this matter into three parts, of which Judge Wood would have one part.  Rather, this Panel should consider transferring the Related Actions to Judge Edmond Chang in the Northern District of Illinois, currently overseeing *Batton II*, Judge Lindsay Jenkins, a recent appointee to the Northern District of Illinois currently overseeing *Tuccori*, Judge Martha Pacold, who initially oversaw *Batton I*—or, indeed, transferring it to another Northern District of Illinois judge entirely.  The Panel recently took a similar approach in *In re Oral Phenylephrine Mktg.*, 2023 U.S. Dist. LEXIS 219566 (J.P.M.L. Dec. 6, 2023), when the Panel assigned the consolidated actions to Judge Brian Cogan notwithstanding that he was not the judge in any of the underlying actions.  *See id.* at *5; *cf. In re Nine W. LBO Sec. Litig.*, 464 F. Supp. 3d 1383, 1386 (J.P.M.L. 2020) (noting that the lack of a related action in a district was no impediment to centralizing the actions in that district); *In re Acetaminophen - Asd/Adhd Prods. Liab. Litig.*, 637 F. Supp. 3d 1372, 1376 n.6 (J.P.M.L. 2022) ("The absence of a related action in the transferee district is no obstacle to assignment of the actions there.").

17

This approach would allow another judge in the Northern District of Illinois to leverage Judge Wood's experience with the *Moehrl* and *Batton I* actions to some extent, even if Judge Wood is not available to directly oversee the MDL.  Indeed, even if that transfer did not ultimately include *Moehrl* and *Batton I*, another judge in the Northern District of Illinois handling the MDL proceeding could more easily coordinate with Judge Wood on those matters.  Thus, if the Panel agrees that the Northern District of Illinois is the ideal venue, but Judge Wood is unavailable, Judge Chang, Judge Jenkins, or another judge such as Judge Pacold offer alternative options.

## III.   The Eastern District of Texas Could Also Be Appropriate

As an alternative to the Northern District of Illinois, the Eastern District of Texas would also be an appropriate venue, as the actions pending in that district each contain a particularly large number of defendants—most of whom are unrelated to one another, and thus will require separate counsel who would need to travel to any hearings if they are in another district.  A full 46 unique parties appear in the Texas actions—dozens more than in any other case.  Indeed, nearly one fifth of the approximately 240 defendants in the Related Actions are named ***only*** in the Texas actions.  Thus, the Eastern District of Texas is the most convenient district for the largest number of parties.  Finally, the Eastern District of Texas has only one pending MDL proceeding at present, which is not assigned to Judge Jordan (the judge overseeing both Related Actions in that district).

## IV.   The Western District of Missouri Would Not Be an Appropriate Venue as the Primary Case in That District Is No Longer Eligible for MDL Treatment

While Movants might prefer the Western District of Missouri for strategic reasons, the argument for centralization in that district is thin under the standards this Panel typically considers. Movants have requested transfer to the Western District of Missouri on the theory that because the court there allowed a case to proceed through a jury verdict, it would be most efficient to allow that same court to oversee subsequent cases.  But the Panel's mandate is to consolidate actions for

pretrial proceedings; it cannot consolidate an action that has already been tried to a verdict, and need not consolidate in the venue where the verdict occurred.  *See In re Factor VIII or IX Concentrate Blood Prods. Litig.*, 169 F.R.D. 632, 634 (N.D. Ill. 1996) (noting that the MDL was consolidated in the Northern District of Illinois after thirteen cases had been tried to a verdict in different districts, including one verdict for plaintiffs that was then reversed on appeal).

And while the Western District of Missouri can claim some experience with the issues presented here, that matter was more limited than the matters pending in the Northern District of Illinois.  Judge Bough's only experience with these issues is *Burnett*, which is limited to Missouri and Kansas, and *Gibson* and *Umpa*, cases that have been filed for a little over two months (in the case of *Gibson*) or on the same day as the MDL filing (for *Umpa*).  Moreover, Judge Bough already has an MDL before him.  On the other hand, Judge Wood has overseen *Moehrl* for over four years and *Batton I* for over two years, both of which involve MLSs from across the country.  And unlike Judge Wood in the Northern District of Illinois, Judge Bough in the Western District of Missouri has no experience untangling the knotty question of how the claims of home *sellers* and home *buyers* should interact—a question Judge Wood has had to consider with *Moehrl* and *Batton I*.  *See Batton I*, 601 F. Supp. 3d at 312-14 (addressing these issues).

Finally, Movants' argument that only Judge Bough can oversee and enforce the two settlements here is incorrect.  First, as the briefing on the settlements make clear, those settlements were negotiated in part by counsel for the plaintiffs in the Northern District of Illinois actions, who submitted a declaration supporting the settlement.  *See* Decl. of Steve W. Berman in Supp. of Pls.' Mot. for Prelim. Approval of Settlements, *Burnett v. Nat'l Ass'n of Realtors*, 19-cv-332 (W.D. Mo. Oct. 5, 2023), ECF 1192.  Second, Judge Bough is hardly the only judge that has been asked to enforce and oversee that settlement; Judge Saris in the District of Massachusetts is currently

19

overseeing a dispute regarding the settlement in the *Nosalek* case and Judge Wood in the Northern District of Illinois is likewise considering issues regarding that settlement in the *Moehrl* and *Batton I* actions.  *See* Notice of Prelim. Approval of Settlement as to the Anywhere and RE/MAX Defs., *Nosalek v. MLS Prop. Info. Network, Inc.*, 20-cv-12244 (D. Mass. Dec. 19, 2023), ECF 262; Notice of Pending Settlement as to Realogy Holdings Corp., *Moehrl v. Nat'l Ass'n of Realtors*, 19-cv-1610 (N.D. Ill. Sept. 5, 2023), ECF 436; Notice of Pending Settlement as to RE/MAX LLC, *Moehrl v. Nat'l Ass'n of Realtors*, 19-cv-1610 (N.D. Ill. Sept. 18, 2023), ECF 440.  In short, while Movants try to portray that settlement as somehow exclusive to the Western District of Missouri, it was not.  And in any event, while the Panel can, as Movants argue, consider the fact that a transferee court is overseeing an existing settlement, the Panel has transferred cases from a court in which a settlement is pending.  *See, e.g.*, *In re Managed Care Litig.*, 246 F. Supp. 2d 1363, 1366 (J.P.M.L. 2003) (noting that there was "no reason that Judge Murphy in Southern District of Illinois—who had jurisdiction of *Kaiser* for a brief time before the settlement was preliminarily approved—rather than Judge Moreno—who has presided over MDL-1334 for nearly three years—should review the *Kaiser* settlement").

The Western District of Missouri therefore presents an inferior alternative to either the Northern District of Illinois (the location of the first-filed home-seller *and* first-filed home-buyer cases, and the most cases overall) or the Eastern District of Texas (the location of the largest number of defendants and the second-most cases).  The Panel should therefore transfer the Related Actions to the Northern District of Illinois, or, if the Panel is not inclined to do so, should instead transfer the Related Actions to the Eastern District of Texas.

<u>**CONCLUSION**</u>

The Panel should centralize the Related Actions in the Northern District of Illinois or, in the alternative, the Eastern District of Texas.

Dated:  January 22, 2024

Respectfully submitted,

*/s/ Christopher M. Curran*
Christopher M. Curran
J. Mark Gidley
Jaclyn Phillips
**WHITE & CASE** LLP
701 Thirteenth Street, Northwest
Washington, D.C., 20005-3807
Tel: (202) 626 3600
ccurran@whitecase.com
mgidley@whitecase.com
jaclyn.phillips@whitecase.com

Joel Cohen
Bryan D. Gant
**WHITE & CASE** LLP
1221 Avenue of the Americas
New York, NY 10020-1095
Tel: (212) 819 8200
joel.cohen@whitecase.com
bgant@whitecase.com

*Counsel for Defendant National Association
of REALTORS®*