MIDP,PROTO,WEISMAN

# United States District Court
# Northern District of Illinois – CM/ECF NextGen 1.7.1.1 (Chicago)
# CIVIL DOCKET FOR CASE #: 1:19–cv–01610

Moehrl v. The National Association of Realtors
Assigned to: Honorable Andrea R. Wood
 related Cases:   1:19–cv–02544
                  1:21–cv–00430
Cause: 15:1 Antitrust Litigation

Date Filed: 03/06/2019
Jury Demand: Both
Nature of Suit: 410 Anti–Trust
Jurisdiction: Federal Question

**Plaintiff**

**Christopher Moehrl**
*on behalf of himself and all others
similarly situated*

represented by **Floyd Grady Short**
Susman Godfrey L.L.P.
401 Union Street
Ste 3000
Seattle, WA 98101–3000
206–516–3880
Email: fshort@susmangodfrey.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeannie Y Evans**
Hagens Berman Sobol Shapiro LLP
455 North Cityfront Plaza Drive
Suite 2410
Chicago, IL 60611
708 628 4966
Fax: Not a member
Email: jeannie@hbsslaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephen Pearson , III**
Handley Farah & Anderson PLLC
200 Massachusetts Avenue NW
7th Floor
Washington, DC 20001
(202) 921–4567
Fax: Pro Hac Vice
Email: spearson@hfajustice.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Steve W. Berman**
Hagens Berman Sobol Shapiro LLP
1301 2nd Ave.
Suite 2000
Seattle, WA 98101
(206) 623–7292
Fax: Active
Email: steve@hbsslaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander Aiken**
Susman Godfrey L.L.P.
401 Union Street
Suite 3000
Seattle, WA 98101
206–516–3880

Email: aaiken@susmangodfrey.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Alison Deich**
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave. NW
Washington DC, DC 20005
(202) 408–4600
Fax: Pro Hac Vice
Email: adeich@cohenmilstein.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Beatrice Franklin**
Susman Godfrey LLP
32nd Floor
1301 Avenue of the Americas
New York, NY 10019
(212) 336–8330
Fax: Pro Hac Vice
Email: bfranklin@susmangodfrey.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Benjamin D. Brown**
Cohen Milstein Sellers & Toll Pllc
1100 New York Ave, N.w.
Suite 500 West
Washington, DC 20005
(202) 408–4600
Fax: Pro Hac Vice
Email: bbrown@cohenmilstein.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Benjamin D Elga**
Justice Catalyst Law
123 William Street
16th Floor
New York, NY 10038
(518) 732–6703
Fax: Pro Hac Vice
Email: belga@justicecatalyst.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brian James Shearer**
Justice Catalyst Law
81 Prospect St.
Brooklyn, NY 11201
(503) 313–1770
Fax: Pro Hac Vice
Email: brianshearer@justicecatalyst.org
*TERMINATED: 05/03/2021*
*PRO HAC VICE*

**Courtney Elgart**
Cohen Milstein Sellers & Toll PLLC
1100 New York Avenue NW
Suite 500
Washington, DC 20005
(202) 408–4600
Fax: Not a member
Email: celgart@cohenmilstein.com

*TERMINATED: 05/10/2019*
*PRO HAC VICE*

**Daniel J. Kurowski**
Hagens Berman Sobol Shapiro LLP
455 North Cityfront Plaza Drive
Suite 2410
Chicago, IL 60611
708–628–4960
Fax: Not a member
Email: dank@hbsslaw.com
*ATTORNEY TO BE NOTICED*

**Daniel H. Silverman**
Cohen Milstein Sellers & Toll, PLLC
1100 New York Ave.
Suite 500
Washington, DC 20005
(202) 408–4600
Fax: Pro Hac Vice
Email: dsilverman@cohenmilstein.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel A. Small**
Cohen, Milstein, Sellers & Toll PLLC.
1100 New York Avenue, NW
Suite 500 West Tower
Washington, DC 20005
(202) 408–4600
Fax: Pro Hac Vice
Email: dsmall@cmht.com
*TERMINATED: 01/17/2023*
*PRO HAC VICE*

**Elizabeth A. Fegan**
Fegan Scott, LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
312–741–1019
Fax: Not a member
Email: beth@feganscott.com
*TERMINATED: 06/07/2019*

**George Farah**
Handley Farah & Anderson PLLC
33 Irving Place
New York, NY 10003
(212) 477–8090
Fax: Not a member
Email: gfarah@hfajustice.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kit A. Pierson**
Cohen Milstein Sellers & Toll Pllc
1100 New York Ave, N.w.
Suite 500 West
Washington, DC 20005
(202) 408–4600
Fax: Pro Hac Vice
Email: kpierson@cohenmilstein.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leonardo Chingcuanco**
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave. NW
Ste. 500
Washington, DC 20005
(202) 408–4600
Fax: Pro Hac Vice
Email: lchingcuanco@ftc.gov
*TERMINATED: 08/29/2023*
*PRO HAC VICE*

**Marc M. Seltzer**
Susman Godfrey L.L.P.
1900 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
(310)789–3100
Fax: Pro Hac Vice
Email: mseltzer@susmangodfrey.com
*ATTORNEY TO BE NOTICED*

**Marisa Katz**
Teske Katz, PLLP
222 South Ninth Street
Suite 1600
Minneapolis, MN 55402
(612) 746–1558
Fax: Pro Hac Vice
Email: katz@teskekatz.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Matthew Robert Berry**
Susman Godfrey LLP
401 Union Street
Suite 3000
Seattle, WA 98101
206–373–7394
Email: mberry@susmangodfrey.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicholas James Jackson**
Handley Farah & Anderson PLLC
33 Irving Place
New York, NY 10003
(347) 826–1308
Fax: Pro Hac Vice
Email: njackson@hfajustice.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Rebecca Chang**
Handley Farah & Anderson PLLC
33 Irving Place
New York, NY 10003
(347) 480–1030
Fax: Pro Hac Vice
Email: rchang@hfajustice.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Rio Shaye Pierce**
Hagens Berman Sobol Shapiro LLP
715 Hearst Ave., Suite 202

Berkeley, CA 94710
(510) 725–3000
Fax: Pro Hac Vice
Email: rjop@hbsslaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert Abraham Braun**
Cohen Milstein Sellers & Toll, PLLC
1100 New York Ave Suite 500
Washington, DC 20002
(504) 258–9894
Fax: Pro Hac Vice
Email: rbraun@cohenmilstein.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Shelby Smith**
Hagens Berman Sobol Shapiro LLP
1301 Second Avenue
Suite 2000
Seattle, WA 98101
(206) 623–7292
Fax: Pro Hac Vice
Email: shelby@hbsslaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Steven Gerald Sklaver**
Susman Godfrey LLP
1900 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
(310)789–3100
Fax: Not a member
Email: ssklaver@susmangodfrey.com
*ATTORNEY TO BE NOTICED*

**Theodore Wojcik**
Hagens Berman Sobol Shapiro LLP
1301 Second Ave
Suite 2410
Seattle, WA 98101
(206) 623–7292
Fax: Pro Hac Vice
Email: tedw@hbsslaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Vildan Teske**
Teske Law Pllc
222 S. 9th St., Suite 1600
Suite 1600
Minneapolis, MN 55402
612–767–0521
Email: teske@teskelaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Whitney Kendall Siehl**
Hagens Berman Sobol Shapiro LLP
455 N. Cityfront Plaza Drive
Suite 2410
Chicago, IL 60611
(708) 628–4949

Fax: Not a member
Email: WhitneyS@hbsslaw.com
*ATTORNEY TO BE NOTICED*

**William Harold Anderson**
Handley Farah & Anderson PLLC
4730 Table Mesa Drive
Suite G–200
Boulder, CO 80305
303–800–9109
Fax: Pro Hac Vice
Email: wanderson@hfajustice.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Carol V Gilden**
Cohen Milstein Sellers & Toll PLLC
190 S. LaSalle Street
Suite 1705
Chicago, IL 60603
(312) 357–0370
Fax: Not a member
Email: cgilden@cohenmilstein.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Michael Cole**                    represented by    **Jeannie Y Evans**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel H. Silverman**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leonardo Chingcuanco**
(See above for address)
*TERMINATED: 08/29/2023*
*PRO HAC VICE*

**Shelby Smith**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Theodore Wojcik**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kit A. Pierson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jack Ramey**                    represented by    **Jeannie Y Evans**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel H. Silverman**
(See above for address)
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Leonardo Chingcuanco**
(See above for address)
*TERMINATED: 08/29/2023*
*PRO HAC VICE*

**Shelby Smith**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Theodore Wojcik**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kit A. Pierson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Daniel Umpa**                           represented by   **Jeannie Y Evans**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel H. Silverman**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leonardo Chingcuanco**
(See above for address)
*TERMINATED: 08/29/2023*
*PRO HAC VICE*

**Shelby Smith**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Theodore Wojcik**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kit A. Pierson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Steve Darnell**                         represented by   **Jeannie Y Evans**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel H. Silverman**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leonardo Chingcuanco**
(See above for address)

*TERMINATED: 08/29/2023*
*PRO HAC VICE*

**Shelby Smith**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Theodore Wojcik**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kit A. Pierson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

Valerie Nager                    represented by   **Jeannie Y Evans**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Shelby Smith**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Theodore Wojcik**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kit A. Pierson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

Jane Ruh                    represented by   **Jeannie Y Evans**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel H. Silverman**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leonardo Chingcuanco**
(See above for address)
*TERMINATED: 08/29/2023*
*PRO HAC VICE*

**Shelby Smith**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Theodore Wojcik**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kit A. Pierson**

(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**The National Association of Realtors**                 represented by   **Beatriz Mejia**
Cooley LLP
3 Embarcadero Center, 20th Fl.
San Francisco, CA 94111–4004
(415) 693–2000
Fax: Pro Hac Vice
Email: mejiab@cooley.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Deepti Bansal**
Cooley LLP
1299 Pennsylvania Avenue, NW
700
Washington, DC 20004
(202) 728–7027
Fax: Pro Hac Vice
Email: dbansal@cooley.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Elizabeth Wright**
Cooley LLP
500 Boylston Street
Boston, MA 02116
(617) 937–2300
Fax: Pro Hac Vice
Email: ewright@cooley.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ethan Charles Glass**
Cooley LLP
1299 Pennsylvania Ave NW
Suite 700
Washington, DC 20004
202–776–2244
Email: eglass@cooley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jack R. Bierig**
ArentFox Schiff LLP
233 S Wacker Drive
Ste 7100
Chicago, IL 60606
312–258–5511
Fax: Active
Email: jack.bierig@afslaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam J. Diederich**
Schiff Hardin LLP
233 South Wacker Dr

Suite 6600
Chicago, IL 60606
(312) 258–5500
Fax: Not a member
Email: adiederich@schiffhardin.com
*ATTORNEY TO BE NOTICED*

**Jacob K Danziger**
Schiff Hardin LLP
350 South Main Street
Suite 210
Ann Arbor, MI 48104
(734) 222–1516
Fax: Not a member
Email: jdanziger@schiffhardin.com
*ATTORNEY TO BE NOTICED*

**John Sherman Purcell**
ArentFox Schiff LLP
555 West Fifth Street
48th Floor
Los Angeles, CA 90013–1065
(213) 629–7400
Fax: Pro Hac Vice
Email: john.purcell@afslaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Molly Lauren Wiltshire**
ARENTFOX SCHIFF LLP
233 South Wacker Drive, Suite 6600
Suite 7100
Chicago
Chicago, IL 60606
312–258–5500
Email: molly.wiltshire@afslaw.com
*ATTORNEY TO BE NOTICED*

**Robert J Wierenga**
Schiff Hardin Llp
350 South Main Street
Suite 210
Ann Arbor, MI 48104
(734) 222–1507
Fax: Active
Email: rwierenga@schiffhardin.com
*ATTORNEY TO BE NOTICED*

**Samantha Amata Strauss**
Cooley LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
(202) 842–7800
Fax: Pro Hac Vice
Email: sastrauss@cooley.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Suzanne L Wahl**
ArentFox Schiff LLP
350 S. Main Street
Suite 210
Ann Arbor, MI 48104
734–222–1517

Fax: 734–222–1501
Email: suzanne.wahl@afslaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Realogy Holdings Corp.**                    represented by   **Kenneth Michael Kliebard**
Morgan Lewis & Bockius LLP
110 N. Wacker Drive
Suite 2800
Chicago, IL 60606
312–324–1000
Fax: Active
Email: kenneth.kliebard@morganlewis.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William T. McEnroe**
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963–5000
Fax: Pro Hac Vice
Email: william.mcenroe@morganlewis.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Heather Jean Nelson**
Morgan, Lewis & Bockius Llp
110 N. Wacker Dr., Suite 2800
Chicago, IL 60606
(313) 324–1469
Fax: Not a member
Email: heather.nelson@morganlewis.com
*ATTORNEY TO BE NOTICED*

**Stacey Anne Mahoney**
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178
(212) 309–6000
Fax: Pro Hac Vice
Email: stacey.mahoney@morganlewis.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William S.D. Cravens**
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004–2541
202–373–6083
Email: william.cravens@morganlewis.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**HomeServices of America, Inc.**             represented by   **Denise A. Lazar**
Barnes & Thornburg LLP
One North Wacker Drive
Suite 4400
Chicago, IL 60606
(312) 214–4816
Fax: Active
Email: denise.lazar@btlaw.com

*TERMINATED: 07/28/2020*

**Erik Kennelly**
Foley & Lardner Llp
321 N. Clark St.
Suite 2800
Chicago, IL 60654
(312) 832–4588
Fax: Not a member
Email: ekennelly@foley.com
*ATTORNEY TO BE NOTICED*

**James Daniel Dasso**
Foley & Lardner
321 North Clark Street
Suite 2800
Chicago, IL 60654
(312)832–4500
Fax: Active
Email: jdasso@foley.com
*ATTORNEY TO BE NOTICED*

**Jay N Varon**
Foley & Lardner
3000 K Street NW
Washington, DC 20007
(202)672–5380
Fax: Not a member
Email: jvaron@foley.com
*ATTORNEY TO BE NOTICED*

**Jennifer M Keas**
Foley and Lardner LLP
3000 K St NW Ste 600
Washington, DC 20007
12026725436
Fax: Not a member
Email: jkeas@foley.com
*ATTORNEY TO BE NOTICED*

**Karoline Elizabeth Jackson**
Barnes & Thornburg
1313 Merchants Bank Building
11 South Meridian Street
Suite 1313
Indianapolis, IN 46204
(312) 231–7239
Fax: Not a member
Email: kjackson@btlaw.com
*TERMINATED: 07/28/2020*

**Matthew B. Barr**
Barnes & Thornburg LLP
11 South Meridian Street
Indianapolis, IN 46204
(317) 231–6498
Fax: Not a member
Email: matthew.barr@btlaw.com
*TERMINATED: 07/28/2020*

**Matthew Thomas Ciulla**
MacGill PC
156 E. Market St.
Suite 1200
Indianapolis, IN 46204

317−961−5086
Fax: Pro Hac Vice
Email: matthew.ciulla@macgilllaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Patrick Joseph Sanders**
MacGill PC
156 E. Market St.
Suite 1200
Indianapolis, IN 46204
(317) 721−1253
Fax: Pro Hac Vice
Email: patrick.sanders@macgilllaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert Dean Macgill**
MacGill PC
156 E. Market St.
Suite 1200
Indianapolis, IN 46204
317−961−5085
Fax: Pro Hac Vice
Email: robert.macgill@macgilllaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott E. Murray**
MacGill PC
156 E. Market St.
Suite 1200
Indianapolis, IN 46204
(317) 961−5408
Fax: Not a member
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Re/Max Holdings, Inc.**                    represented by   **Eddie Hasdoo**
Jones Day
110 North Wacker Drive
Suite 4800
Chicago, IL 60606
312−269−4214
Email: ehasdoo@jonesday.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Erin Lind Shencopp**
Jones Day (CH)
77 West Wacker Drive
Chicago, IL 60601
312−782−3939
Fax: Not a member
Email: eshencopp@jonesday.com
*TERMINATED: 02/04/2020*

**Paula W. Render**
Jones Day (CH)
77 West Wacker Drive
Chicago, IL 60601
(312) 782−3939
Fax: Active

Email: prender@jonesday.com
*TERMINATED: 02/24/2021*

**Defendant**

**Keller Williams Realty, Inc.**                 represented by  **Timothy Ray**
Holland & Knight LLP
150 N. Riverside Plaza
Suite 2700
Chicago, IL 60606
(312) 928–6042
Fax: Active
Email: timothy.ray@hklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anna Pendleton Hayes**
Holland & Knight, LLP
Suite 1100
800 17th St NW
Washington, DC 20003
(202) 469–5441
Fax: Pro Hac Vice
Email: anna.hayes@hklaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David C. Kully**
Holland & Knight LLP
800 17th ST NW
Suite 1100
Washington, DC 20530
2024695415
Fax: US Govt Attorney
Email: david.kully@hklaw.com
*ATTORNEY TO BE NOTICED*

**Dina W. McKenney**
HOLLAND & KNIGHT LLP
1722 Routh Street
Suite 1500
DALLAS, TX 75201
(214) 969–1700
Fax: Pro Hac Vice
Email: dina.mckenney@hklaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer Lada**
Holland & Knight LLP
31 West 52nd Street
12th Floor
NY, NY 10019
(212) 513–3200
Fax: Pro Hac Vice
Email: jennifer.lada@hklaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Martin G. Durkin**
Holland & Knight LLC
150 N. Riverside Plaza
Suite 2700
Chicago, IL 60606
(312) 578–6574

Fax: Active
Email: martin.durkin@hklaw.com
*ATTORNEY TO BE NOTICED*

**William Foster Farley**
Holland & Knight Llp
150 N. Riverside Plaza
Suite 2700
Chicago, IL 60606
(312)578–6698
Fax: Not a member
Email: william.farley@hklaw.com
*ATTORNEY TO BE NOTICED*

**William A. Ringhofer**
Holland & Knight LLP
150 N Riverside Plaza
#2700
Chicago, IL 60606
(312) 715–5797
Fax: Pro Hac Vice
Email: william.ringhofer@hklaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Re/Max LLC**                    represented by   **Eddie Hasdoo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eric Patrick Enson**
Jones Day
555 S. Flower Street, 50th Floor
Los Angeles, CA 90071
(213) 243–2304
Fax: Pro Hac Vice
Email: epenson@jonesday.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeffrey A. LeVee**
Jones Day
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071
213.243.2572
Fax: Not a member
Email: jlevee@jonesday.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Erin Lind Shencopp**
(See above for address)
*TERMINATED: 02/04/2020*

**Jeremy John Gray**
Jones Day (CH)
77 West Wacker Drive
Chicago, IL 60601
3142657267
Fax: Voluntary Withdrawal
Email: grayjeremyj@gmail.com

*TERMINATED: 02/10/2022*

**Megan Elizabeth Ryan**
Jones Day
77 W. Wacker Dr.
Suite 3500
Chicago, IL 60601
(312) 269–1560
Fax: Not a member
Email: mryan@jonesday.com
*TERMINATED: 06/22/2021*

**Paula W. Render**
(See above for address)
*TERMINATED: 02/24/2021*

**Defendant**

**BHH Affiliates, LLC**                    represented by   **Jay N Varon**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Denise A. Lazar**
(See above for address)
*TERMINATED: 07/28/2020*

**James Daniel Dasso**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jennifer M Keas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Karoline Elizabeth Jackson**
(See above for address)
*TERMINATED: 07/28/2020*

**Patrick Joseph Sanders**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert Dean Macgill**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Scott E. Murray**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**HSF Affiliates, LLC**                    represented by   **Jay N Varon**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Denise A. Lazar**
(See above for address)
*TERMINATED: 07/28/2020*

**James Daniel Dasso**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Jennifer M Keas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Karoline Elizabeth Jackson**
(See above for address)
*TERMINATED: 07/28/2020*

**Patrick Joseph Sanders**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert Dean Macgill**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Scott E. Murray**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**The Long & Foster Companies, Inc.**　　represented by　**Jay N Varon**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Denise A. Lazar**
(See above for address)
*TERMINATED: 07/28/2020*

**James Daniel Dasso**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jennifer M Keas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Karoline Elizabeth Jackson**
(See above for address)
*TERMINATED: 07/28/2020*

**Patrick Joseph Sanders**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert Dean Macgill**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Scott E. Murray**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**United States of America**　　represented by　**Steven J. Mintz**
U.S. Department of Justice, Antitrust
Division

950 Pennsylvania Ave, N.W.
Suite 3224
Washington, DC 20530
(202) 353–0256
Fax: US Govt Attorney
Email: steven.mintz@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Movant**

**Sawbill Strategic Inc.**                    represented by  **Daniel E Gustafson**
Gustafson Gluek PLLC
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
(612)333–8844
Fax: Pro Hac Vice
Email: dgustafson@gustafsongluek.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel C Hedlund**
Gustafson Gluek PLLC
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
612 333–8844
Fax: Pro Hac Vice
Email: dhedlund@gustafsongluek.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel J. Nordin**
Gustafson Gluek Pllc
120 South Sixth Street
Suite 2600
Minneapolis, MN 55402
(612) 333–8844
Fax: Pro Hac Vice
Email: dnordin@gustafsongluek.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas Arthur Doyle**
Chicago Board of Education
1 N Dearborn Street
9th Floor
Chicago, IL 60602
(773) 553–1720
Fax: Active
Email: tadoyle2@cps.edu
*TERMINATED: 09/06/2019*

**Kit A. Pierson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Movant**

**Judah Leeder**                    represented by  **Randall P. Ewing , Jr.**
Korein Tillery, Llc
205 No. Michigan Ave., Ste. 1950

Chicago, IL 60601
(312) 641–9750
Fax: Not a member
Email: rewing@koreintillery.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/06/2019 | 1 | COMPLAINT filed by Christopher Moehrl; Jury Demand. Filing fee $ 400, receipt number 0752–15561521.(Gilden, Carol) (Entered: 03/06/2019) |
| 03/06/2019 | 2 | CIVIL Cover Sheet (Gilden, Carol) (Entered: 03/06/2019) |
| 03/06/2019 | 3 | ATTORNEY Appearance for Plaintiff Christopher Moehrl by Carol V Gilden (Gilden, Carol) (Entered: 03/06/2019) |
| 03/06/2019 | | CASE ASSIGNED to the Honorable Andrea R. Wood. Designated as Magistrate Judge the Honorable M. David Weisman. Case assignment: Random assignment. (pj, ) (Entered: 03/06/2019) |
| 03/06/2019 | 4 | ATTORNEY Appearance for Plaintiff Christopher Moehrl by Steve W. Berman (Berman, Steve) (Entered: 03/06/2019) |
| 03/07/2019 | 5 | MINUTE entry before the Honorable Andrea R. Wood: Initial status hearing set for 5/8/2019 at 9:00 AM. The parties are directed to meet and conduct a planning conference pursuant to Federal Rule of Civil Procedure 26(f). At least seven days before the initial status hearing, the parties shall file a joint written status report, not to exceed five pages in length. The initial status report shall provide the information described on the Court's website at www.ilnd.uscourts.gov under District Judges, Judge Andrea R. Wood, Initial Status Conference. Mailed notice (ef, ) (Entered: 03/07/2019) |
| 03/07/2019 | 6 | NOTICE TO THE PARTIES – The Court is participating in the Mandatory Initial Discovery Pilot (MIDP). The key features and deadlines are set forth in this Notice which includes a link to the (MIDP) Standing Order and a Checklist for use by the parties. In cases subject to the pilot, all parties must respond to the mandatory initial discovery requests set forth in the Standing Order before initiating any further discovery in this case. Please note: The discovery obligations in the Standing Order supersede the disclosures required by Rule 26(a)(1). Any party seeking affirmative relief must serve a copy of the following documents (Notice of Mandatory Initial Discovery and the Standing Order) on each new party when the Complaint, Counterclaim, Crossclaim, or Third–Party Complaint is served. (aee, ) (Entered: 03/07/2019) |
| 03/12/2019 | | SUMMONS Issued as to Defendants HomeServices of America, Inc., Keller Williams Realty, Inc., Re/Max Holdings, Inc., Realogy Holdings Corp., and The National Association of Realtors. (acm) (Entered: 03/12/2019) |
| 03/12/2019 | 7 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752–15581883. (Small, Daniel) (Entered: 03/12/2019) |
| 03/13/2019 | 8 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752–15587987. (Farah, George) (Entered: 03/13/2019) |
| 03/13/2019 | 9 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752–15588020. (Anderson, William) (Entered: 03/13/2019) |
| 03/14/2019 | 10 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752–15592995. (Elga, Benjamin) (Entered: 03/14/2019) |
| 03/14/2019 | 11 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752–15593115. (Shearer, Brian) (Entered: 03/14/2019) |
| 03/18/2019 | 12 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752–15602149. (Elgart, Courtney) (Entered: 03/18/2019) |

| | | |
|---|---|---|
| 03/19/2019 | 13 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752–15608013. (Katz, Marisa) (Entered: 03/19/2019) |
| 03/19/2019 | 14 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752–15612010. (Teske, Vildan) (Entered: 03/19/2019) |
| 03/20/2019 | 15 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752–15613736. (Pierson, Kit) (Entered: 03/20/2019) |
| 03/21/2019 | 16 | ATTORNEY Appearance for Defendant Re/Max Holdings, Inc. by Paula W. Render (Render, Paula) (Entered: 03/21/2019) |
| 03/21/2019 | 17 | ATTORNEY Appearance for Defendant Re/Max Holdings, Inc. by Odeshoo Hasdoo (Hasdoo, Odeshoo) (Entered: 03/21/2019) |
| 03/21/2019 | 18 | ATTORNEY Appearance for Defendant Re/Max Holdings, Inc. by Erin Lind Shencopp (Shencopp, Erin) (Entered: 03/21/2019) |
| 03/29/2019 | 19 | ATTORNEY Appearance for Defendant The National Association of Realtors by Jack R. Bierig (Bierig, Jack) (Entered: 03/29/2019) |
| 03/29/2019 | 20 | MOTION by Defendant The National Association of Realtors for extension of time (Attachments: # 1 Notification As To Affiliates)(Bierig, Jack) (Entered: 03/29/2019) |
| 03/29/2019 | 21 | ATTORNEY Appearance for Defendant The National Association of Realtors by Adam J. Diederich (Diederich, Adam) (Entered: 03/29/2019) |
| 03/29/2019 | 22 | NOTICE of Motion by Jack R. Bierig for presentment of extension of time 20 before Honorable Andrea R. Wood on 4/3/2019 at 09:00 AM. (Bierig, Jack) (Entered: 03/29/2019) |
| 04/02/2019 | 23 | MINUTE entry before the Honorable Andrea R. Wood: Attorney applications to appear pro hac vice 7 , 8 , 9 , 10 , 11 , 12 , 13 , 14 and 15 are granted. Defendants' Unopposed Motion for extension of time to answer 20 is granted Defendants shall answer or otherwise plead by 5/17/2019. The motion presentment date of 4/3/2019 is stricken; parties need not appear. Initial Status hearing set for 5/8/2019 is stricken and reset for 5/29/2019 at 09:00 AM. At least seven days before the initial status hearing, the parties shall file a joint written status report, not to exceed five pages in length. Mailed notice (ef, ) (Entered: 04/02/2019) |
| 04/02/2019 | 24 | ATTORNEY Appearance for Defendant Keller Williams Realty, Inc. by Timothy Ray (Ray, Timothy) (Entered: 04/02/2019) |
| 04/02/2019 | 25 | ATTORNEY Appearance for Defendant Keller Williams Realty, Inc. by Martin G. Durkin (Durkin, Martin) (Entered: 04/02/2019) |
| 04/02/2019 | 26 | ATTORNEY Appearance for Defendant Keller Williams Realty, Inc. by William Foster Farley (Farley, William) (Entered: 04/02/2019) |
| 04/02/2019 | 27 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752–15665870. (Seltzer, Marc) (Entered: 04/02/2019) |
| 04/03/2019 | 28 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752–15667861. (Hayes, Anna) (Entered: 04/03/2019) |
| 04/03/2019 | 29 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752–15667917. (Kully, David) (Entered: 04/03/2019) |
| 04/03/2019 | 30 | ATTORNEY Appearance for Plaintiff Christopher Moehrl by Elizabeth A. Fegan (Fegan, Elizabeth) (Entered: 04/03/2019) |
| 04/09/2019 | 31 | SUMMONS Returned Executed by Christopher Moehrl as to HomeServices of America, Inc. on 3/22/2019, answer due 4/12/2019. (Elgart, Courtney) (Entered: 04/09/2019) |
| 04/09/2019 | 32 | SUMMONS Returned Executed by Christopher Moehrl as to Keller Williams Realty, Inc. on 3/28/2019, answer due 4/18/2019. (Elgart, Courtney) (Entered: 04/09/2019) |
| 04/09/2019 | 33 | SUMMONS Returned Executed by Christopher Moehrl as to The National Association of Realtors on 3/14/2019, answer due 4/4/2019. (Elgart, Courtney) |

| | | (Entered: 04/09/2019) |
|---|---|---|
| 04/09/2019 | 34 | SUMMONS Returned Executed by Christopher Moehrl as to Realogy Holdings Corp. on 4/2/2019, answer due 4/23/2019. (Elgart, Courtney) (Entered: 04/09/2019) |
| 04/09/2019 | 35 | SUMMONS Returned Executed by Christopher Moehrl as to Re/Max Holdings, Inc. on 3/19/2019, answer due 4/9/2019. (Elgart, Courtney) (Entered: 04/09/2019) |
| 04/09/2019 | 36 | ATTORNEY Appearance for Defendant Realogy Holdings Corp. by Kenneth Michael Kliebard (Kliebard, Kenneth) (Entered: 04/09/2019) |
| 04/10/2019 | 37 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752−15697109. (Attachments: # 1 Attachment)(Mahoney, Stacey Anne) (Entered: 04/10/2019) |
| 04/11/2019 | 38 | ATTORNEY Appearance for Defendant HomeServices of America, Inc. by Denise A. Lazar (Lazar, Denise) (Entered: 04/11/2019) |
| 04/11/2019 | 39 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752−15702885. (Macgill, Robert) (Entered: 04/11/2019) |
| 04/11/2019 | 40 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752−15702912. (Ciulla, Matthew) (Entered: 04/11/2019) |
| 04/15/2019 | 41 | MINUTE entry before the Honorable Andrea R. Wood: Attorney applications to appear pro hac vice 27 , 28 , 29 , 37 , 39 , and 40 are granted. Mailed notice (ef, ) (Entered: 04/15/2019) |
| 04/16/2019 | 42 | MOTION by Movant Sawbill Strategic Inc. to reassign case *and Motion for Reassignment of a Related Case* (Attachments: # 1 Exhibit A: Complaint from Sawbill Case 19−cv−2544, # 2 Certificate of Service)(Doyle, Thomas) (Entered: 04/16/2019) |
| 04/16/2019 | 43 | NOTICE of Motion by Thomas Arthur Doyle for presentment of motion to reassign case 42 before Honorable Andrea R. Wood on 4/23/2019 at 09:00 AM. (Doyle, Thomas) (Entered: 04/16/2019) |
| 04/17/2019 | 44 | PAYMENT by Christopher Moehrl of Pro Hac Fee $ 150, receipt number 0752−15727441. (Franklin, Beatrice) (Entered: 04/17/2019) |
| 04/17/2019 | 45 | MOTION by Plaintiff Christopher Moehrl for Leave to Appear Pro Hac Vice (Payment Receipt No. 0752−15727441) (Franklin, Beatrice) (Entered: 04/17/2019) |
| 04/17/2019 | 46 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752−15728308. (Barr, Matthew) (Entered: 04/17/2019) |
| 04/17/2019 | 47 | ATTORNEY Appearance for Movant Sawbill Strategic Inc. by Thomas Arthur Doyle (Doyle, Thomas) (Entered: 04/17/2019) |
| 04/17/2019 | 48 | ATTORNEY Appearance for Plaintiff Christopher Moehrl by Steven Gerald Sklaver (Sklaver, Steven) (Entered: 04/17/2019) |
| 04/18/2019 | 49 | ATTORNEY Appearance for Defendant HomeServices of America, Inc. by Erik Kennelly (Kennelly, Erik) (Entered: 04/18/2019) |
| 04/18/2019 | 50 | MOTION by Plaintiff Christopher MoehrlAppointment of Interim Co−Lead Counsel (Attachments: # 1 Memorandum of Law in Support, # 2 Declaration of Steve W. Berman, # 3 Exhibit A to the Berman Declaration, # 4 Exhibit B to the Berman Declaration, # 5 Exhibit C to the Berman Declaration, # 6 Exhibit D to the Berman Declaration, # 7 Declaration of Marc M. Seltzer, # 8 Exhibit A to the Seltzer Declaration, # 9 Exhibit B to the Seltzer Declaration, # 10 Exhibit C to the Seltzer Declaration, # 11 Exhibit D to the Seltzer Declaration, # 12 Exhibit E to the Seltzer Declaration, # 13 Declaration of Daniel A. Small, # 14 Exhibit A to the Small Declaration)(Berman, Steve) (Entered: 04/18/2019) |
| 04/18/2019 | 51 | NOTICE of Motion by Steve W. Berman for presentment of (Berman, Steve) (Entered: 04/18/2019) |
| 04/22/2019 | 52 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752−15744968. (Keas, Jennifer) (Entered: 04/22/2019) |

| | | |
|---|---|---|
| 04/23/2019 | 53 | ATTORNEY Appearance for Defendant HomeServices of America, Inc. by Karoline Elizabeth Jackson (Jackson, Karoline) (Entered: 04/23/2019) |
| 04/23/2019 | 54 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752–15747165. (Attachments: # 1 Attached Court List)(Berry, Matthew) (Entered: 04/23/2019) |
| 04/23/2019 | 56 | MINUTE entry before the Honorable Andrea R. Wood: Motion hearing held. Attorney applications to appear pro hac vice 45 , 46 , 52 are granted. As stated on the record, any responses to Movant's motion for reassignment of a related case 42 shall be filed by 5/17/2019. Motion hearing set for 4/25/2019 51 remains firm. Mailed notice (ef, ) (Entered: 04/25/2019) |
| 04/24/2019 | 55 | ATTORNEY Appearance for Plaintiff Christopher Moehrl by Daniel J. Kurowski (Kurowski, Daniel) (Entered: 04/24/2019) |
| 04/25/2019 | 57 | MINUTE entry before the Honorable Andrea R. Wood: Motion hearing held. Attorney application to appear pro hac vice 54 is granted. Pursuant to the discussions held in open court, Plaintiff's motion to appoint interim co–lead counsel 50 is entered and continued. Responses to Movant's motion for reassignment of a related case 42 are due by 5/17/2019 56 . As stated on the record, any motion for leave to file excess pages shall be filed by 5/13/2019. The parties obligation to file a joint written status report is stayed until further order of Court. Status hearing set for 5/29/2019 23 remains firm. Mailed notice (ef, ) (Entered: 04/29/2019) |
| 05/03/2019 | 58 | MOTION by Attorney Courtney Elgart to withdraw as attorney for Christopher Moehrl. No party information provided (Elgart, Courtney) (Entered: 05/03/2019) |
| 05/08/2019 | 59 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752–15803790. (Pierce, Rio) (Entered: 05/08/2019) |
| 05/10/2019 | 60 | MINUTE entry before the Honorable Andrea R. Wood: Motion by counsel to withdraw as attorney 58 is granted. Attorney Courtney Elgart is withdrawn as counsel of record. Attorney application to appear pro hac vice 59 is granted. Mailed notice (ef, ) (Entered: 05/10/2019) |
| 05/13/2019 | 61 | MOTION by Defendant Re/Max Holdings, Inc. for leave to file excess pages *and for entry of briefing schedule* (Attachments: # 1 Notification as to Affiliates)(Hasdoo, Odeshoo) (Entered: 05/13/2019) |
| 05/13/2019 | 62 | NOTICE of Motion by Odeshoo Hasdoo for presentment of motion for leave to file excess pages 61 before Honorable Andrea R. Wood on 5/16/2019 at 09:00 AM. (Hasdoo, Odeshoo) (Entered: 05/13/2019) |
| 05/15/2019 | 63 | MINUTE entry before the Honorable Andrea R. Wood: The parties' joint motion for leave to file briefs in excess of 15 pages and for entry of briefing schedule 61 is granted as follows: (1) Defendant National Association of Realtors will be permitted to file a brief of no more than 20 pages in support of its motion to dismiss, and Defendants Realty Holdings Corp., HomeServices of America, Inc., RE/MAX Holdings, Inc., and Keller Williams Realty, Inc. will be permitted to file a joint brief of no more than 28 pages in support of their motions to dismiss; (2) Plaintiff will be permitted to file a single response to Defendants' motions of no more than 48 pages, by no later than 6/21/2019; and (3) Defendant National Association of Realtors shall be permitted to file a reply brief of no more than 15 pages by 7/26/2019, and Defendants Realogy Holdings Corp., HomeServices of America, Inc., RE/MAX Holdings, Inc., and Keller Williams Realty, Inc. will be permitted to file a joint reply brief of no more than 15 pages by 7/26/2019. Motion hearing set for 5/16/2019 is stricken; parties need not appear. Mailed notice (ef, ) (Entered: 05/15/2019) |
| 05/16/2019 | 64 | Notice of No Objection by HomeServices of America, Inc. *on behalf of all Defendants to Motion to Reassign [Docket 42]* (Lazar, Denise) (Entered: 05/16/2019) |
| 05/17/2019 | 65 | ATTORNEY Appearance for Defendant The National Association of Realtors by Robert J Wierenga (Wierenga, Robert) (Entered: 05/17/2019) |
| 05/17/2019 | 66 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant The National Association of Realtors (Bierig, Jack) (Entered: 05/17/2019) |

| 05/17/2019 | 67 | MEMORANDUM by The National Association of Realtors in support of Motion to Dismiss for Failure to State a Claim 66 (Attachments: # 1 Declaration Declaration of Katie Johnson and Exhibits)(Bierig, Jack) (Entered: 05/17/2019) |
|---|---|---|
| 05/17/2019 | 68 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendants HomeServices of America, Inc., Keller Williams Realty, Inc., Re/Max Holdings, Inc., Realogy Holdings Corp. (Kliebard, Kenneth) (Entered: 05/17/2019) |
| 05/17/2019 | 69 | MEMORANDUM by HomeServices of America, Inc., Keller Williams Realty, Inc., Re/Max Holdings, Inc., Realogy Holdings Corp. in support of Motion to Dismiss for Failure to State a Claim 68 (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Kliebard, Kenneth) (Entered: 05/17/2019) |
| 05/17/2019 | 70 | NOTICE of Motion by Kenneth Michael Kliebard for presentment of Motion to Dismiss for Failure to State a Claim 68 before Honorable Andrea R. Wood on 5/29/2019 at 09:00 AM. (Kliebard, Kenneth) (Entered: 05/17/2019) |
| 05/17/2019 | 71 | MOTION by Defendant Keller Williams Realty, Inc.Motion to Stay Discovery and Defer Compliance with MIDP Requirements Pending Resolution of Motions to Dismiss (Durkin, Martin) (Entered: 05/17/2019) |
| 05/17/2019 | 72 | NOTICE of Motion by Martin G. Durkin for presentment of motion for miscellaneous relief 71 before Honorable Andrea R. Wood on 5/29/2019 at 09:00 AM. (Durkin, Martin) (Entered: 05/17/2019) |
| 05/28/2019 | 73 | RESPONSE by Christopher Moehrlin Opposition to MOTION by Defendant Keller Williams Realty, Inc.Motion to Stay Discovery and Defer Compliance with MIDP Requirements Pending Resolution of Motions to Dismiss 71 (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Pierson, Kit) (Entered: 05/28/2019) |
| 05/28/2019 | 74 | MEMORANDUM by Realogy Holdings Corp. in Opposition to motion for miscellaneous relief,, 50 to Appoint Interim Co−Lead Class Counsel (Kliebard, Kenneth) (Entered: 05/28/2019) |
| 05/29/2019 | 80 | MINUTE entry before the Honorable Andrea R. Wood: Motion and Status hearing held. For the reasons stated on the record, Movant Sawbill Strategic Inc's motion for reassignment of a related case 42 is granted. Case number 1:19−cv−02544 currently assigned to Judge Chang and captioned Sawbill Strategies Inc. v. National Association of Realtors, et al., shall be reassigned to the calendar of this Court. Plaintiff's reply to motion for appointment of interim co−lead class counsel 50 shall be filed by 6/5/2019. Plaintiff granted leave to file amended and/or consolidated complaint by 6/14/2019. Pursuant to the discussion held in open court, Defendants' motion to stay discovery and defer compliance with MIDP 71 is granted. Discovery in this matter and the parties' MIDP obligations are stayed until further order of the Court, with the exception that the parties may take appropriate actions to ensure preservation of evidence. Status hearing set for 6/24/2019 at 9:00 AM. Mailed notice (ef, ) (Entered: 06/07/2019) |
| 05/31/2019 | 75 | MOTION by Attorney Elizabeth A. Fegan to withdraw as attorney for Christopher Moehrl. No party information provided (Fegan, Elizabeth) (Entered: 05/31/2019) |
| 05/31/2019 | 76 | NOTICE of Motion by Elizabeth A. Fegan for presentment of motion to withdraw as attorney 75 before Honorable Andrea R. Wood on 6/18/2019 at 09:00 AM. (Fegan, Elizabeth) (Entered: 05/31/2019) |
| 06/03/2019 | 77 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752−15886574. (Deich, Alison) (Entered: 06/03/2019) |
| 06/04/2019 | 78 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752−15893613. (Brown, Benjamin) (Entered: 06/04/2019) |
| 06/05/2019 | 79 | REPLY by Christopher Moehrl to MOTION by Plaintiff Christopher MoehrlAppointment of Interim Co−Lead Counsel 50 (Attachments: # 1 Declaration of Matthew Berry)(Seltzer, Marc) (Entered: 06/05/2019) |
| 06/07/2019 | 81 | MINUTE entry before the Honorable Andrea R. Wood: Motion by counsel to withdraw as attorney 75 is granted. Attorney Elizabeth A. Fegan is withdrawn as counsel of record for Plaintiff. Attorney applications to appear pro hac vice 77 and 78 are granted. The motion presentment date of 6/18/2019 is stricken; parties need not |

| | | appear. Mailed notice (ef, ) (Entered: 06/07/2019) |
|---|---|---|
| 06/14/2019 | 82 | STIPULATION of Dismissal *Without Prejudice As To Defendant Re/Max Holdings, Inc.* (Attachments: # 1 Text of Proposed Order)(Seltzer, Marc) (Entered: 06/14/2019) |
| 06/14/2019 | 83 | MOTION by Plaintiff Christopher Moehrl for order *of dismissal without prejudice of Re/Max Holdings, Inc.* (Seltzer, Marc)(Incorrect pdf document linked – Docket Text Modified by Clerks Office.). Modified on 6/17/2019 (aee, ). (Entered: 06/14/2019) |
| 06/14/2019 | 84 | *CONSOLIDATED CLASS ACTION* AMENDED complaint by Sawbill Strategic Inc., Christopher Moehrl, Michael Cole, Jack Ramey, Daniel Umpa, Steve Darnell, Valerie Nager, Jane Ruh against HomeServices of America, Inc., Keller Williams Realty, Inc., Realogy Holdings Corp., The National Association of Realtors, Re/Max LLC, BHH Affiliates, LLC, HSF Affiliates, LLC, The Long & Foster Companies, Inc. (Pierson, Kit) (Entered: 06/14/2019) |
| 06/19/2019 | 85 | *NOTICE OF PLAINTIFFS' MOTION IN SUPPORT OF (A) DISCOVERY OF CIVIL INVESTIGATIVE DEMAND MATERIALS; AND (B) PRODUCTION OF MANDATORY INITIAL DISCOVERY PROGRAM INITIAL DISCOVERY RESPONSES* NOTICE of Motion by Kit A. Pierson for presentment of before Honorable Andrea R. Wood on 6/24/2019 at 09:00 AM. (Pierson, Kit) (Entered: 06/19/2019) |
| 06/19/2019 | 86 | MOTION by Plaintiffs Michael Cole, Steve Darnell, Christopher Moehrl, Valerie Nager, Jack Ramey, Jane Ruh, Daniel Umpa, Movant Sawbill Strategic Inc. for discovery *PLAINTIFFS' MOTION IN SUPPORT OF (A) DISCOVERY OF CIVIL INVESTIGATIVE DEMAND MATERIALS; AND (B) PRODUCTION OF MANDATORY INITIAL DISCOVERY PROGRAM INITIAL DISCOVERY RESPONSES* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Pierson, Kit) (Entered: 06/19/2019) |
| 06/19/2019 | 87 | *[CORRECTED] NOTICE OF PLAINTIFFS' MOTION IN SUPPORT OF (A) DISCOVERY OF CIVIL INVESTIGATIVE DEMAND MATERIALS; AND (B) PRODUCTION OF MANDATORY INITIAL DISCOVERY PROGRAM INITIAL DISCOVERY RESPONSES* NOTICE of Motion by Kit A. Pierson for presentment of before Honorable Andrea R. Wood on 6/24/2019 at 09:00 AM. (Pierson, Kit) (Entered: 06/19/2019) |
| 06/20/2019 | 88 | ATTORNEY Appearance for Plaintiff Christopher Moehrl by Whitney Kendall Siehl (Siehl, Whitney) (Entered: 06/20/2019) |
| 06/21/2019 | 89 | ATTORNEY Appearance for Defendant HomeServices of America, Inc. by Jay N Varon (Varon, Jay) (Entered: 06/21/2019) |
| 06/21/2019 | 90 | RESPONSE by HomeServices of America, Inc., Keller Williams Realty, Inc., Re/Max Holdings, Inc., Realogy Holdings Corp., The National Association of Realtors to MOTION by Plaintiffs Michael Cole, Steve Darnell, Christopher Moehrl, Valerie Nager, Jack Ramey, Jane Ruh, Daniel Umpa, Movant Sawbill Strategic Inc. for discovery *PLAINTIFFS' MOTION IN SUPPORT OF (A) DISCOVERY OF CIVIL INVESTIGATIVE DEMAND MATE* 86 (Hayes, Anna) *(Entered: 06/21/2019)* |
| 06/23/2019 | 91 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752–15957289. (Braun, Robert) (Entered: 06/23/2019) |
| 06/24/2019 | | SUMMONS Issued as to Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, Re/Max LLC, The Long & Foster Companies, Inc. (rc, ) (Entered: 06/24/2019) |
| 06/24/2019 | 92 | MINUTE entry before the Honorable Andrea R. Wood: Motion and status hearing held. Pursuant to the discussion held in open court and for the reasons stated on the record, Plaintiffs have filed a Consolidated Amended Class Action Complaint and Plaintiff's oral motion to administratively close the related case is granted. Case number 1:19–cv–2544 is administratively closed. Pending Motions of the National Association of Realtors to dismiss 66 and Defendants Realogy Holdings Corp., HomeServices of America, Inc., RE/MAX Holdings, Inc., and Keller Williams Realty, Inc. 68 are moot as a result of the filing of the Consolidated Amended Class Action Complaint. All Defendants' responsive pleadings to the Consolidated Amended Class Action Complaint due by 8/09/2019. Discovery remains stayed until further order of court. The parties are to submit a proposed Protective Order and ESI Protocol Order to the Court by 8/16/2019. Plaintiffs' motion in support of (A) discovery of civil |

| | | |
|---|---|---|
| | | investigative demand materials; and (B) production of mandatory initial discovery program initial discovery responses 86 is denied without prejudice. Attorney application to appear *pro hac vice* 91 is granted. Plaintiff Christopher Moehrl's motion for appointment of interim Co–lead counsel 50 is taken under advisement. Status hearing set for 8/20/2019 at 9:00 a.m. Mailed notice (cn). (Entered: 06/24/2019) |
| 06/25/2019 | 93 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752–15963917. (Gustafson, Daniel) (Entered: 06/25/2019) |
| 06/25/2019 | 94 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752–15964004. (Hedlund, Daniel) (Entered: 06/25/2019) |
| 06/25/2019 | 95 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752–15964035. (Nordin, Daniel) (Entered: 06/25/2019) |
| 06/26/2019 | 96 | NOTICE by Martin G. Durkin of Change of Address (Durkin, Martin) (Entered: 06/26/2019) |
| 06/26/2019 | 97 | NOTICE by Timothy Ray of Change of Address (Ray, Timothy) (Entered: 06/26/2019) |
| 06/26/2019 | 98 | NOTICE by William Foster Farley of Change of Address (Farley, William) (Entered: 06/26/2019) |
| 07/08/2019 | 99 | MINUTE entry before the Honorable Andrea R. Wood: Attorney applications to appear pro hac vice 93 , 94 , and 95 are granted. Mailed notice (ef, ) (Entered: 07/08/2019) |
| 07/11/2019 | 100 | ATTORNEY Appearance for Defendant Re/Max LLC by Paula W. Render (Render, Paula) (Entered: 07/11/2019) |
| 07/11/2019 | 101 | ATTORNEY Appearance for Defendant Re/Max LLC by Erin Lind Shencopp (Shencopp, Erin) (Entered: 07/11/2019) |
| 07/11/2019 | 102 | ATTORNEY Appearance for Defendant Re/Max LLC by Odeshoo Hasdoo (Hasdoo, Odeshoo) (Entered: 07/11/2019) |
| 07/11/2019 | 103 | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by Re/Max LLC (Hasdoo, Odeshoo) (Entered: 07/11/2019) |
| 07/15/2019 | 104 | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by Realogy Holdings Corp. (Kliebard, Kenneth) (Entered: 07/15/2019) |
| 07/15/2019 | 105 | SUMMONS Returned Executed by Sawbill Strategic Inc., Michael Cole, Steve Darnell, Christopher Moehrl, Jane Ruh, Valerie Nager, Daniel Umpa, Jack Ramey as to The Long & Foster Companies, Inc. on 6/25/2019, answer due 7/16/2019. (Braun, Robert) (Entered: 07/15/2019) |
| 07/15/2019 | 106 | SUMMONS Returned Executed by Sawbill Strategic Inc., Michael Cole, Steve Darnell, Christopher Moehrl, Jane Ruh, Valerie Nager, Daniel Umpa, Jack Ramey as to BHH Affiliates, LLC on 6/25/2019, answer due 7/16/2019; HSF Affiliates, LLC on 6/25/2019, answer due 7/16/2019; Re/Max LLC on 6/25/2019, answer due 7/16/2019. (Braun, Robert) (Entered: 07/15/2019) |
| 08/05/2019 | 107 | NOTICE of Voluntary Dismissal by Sawbill Strategic Inc. (Gilden, Carol) (Entered: 08/05/2019) |
| 08/06/2019 | 108 | NOTICE by Benjamin David Elga of Change of Address (Elga, Benjamin) (Entered: 08/06/2019) |
| 08/08/2019 | 109 | ATTORNEY Appearance for Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, The Long & Foster Companies, Inc. by Denise A. Lazar (Lazar, Denise) (Entered: 08/08/2019) |
| 08/09/2019 | 110 | ATTORNEY Appearance for Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, The Long & Foster Companies, Inc. by Karoline Elizabeth Jackson (Jackson, Karoline) (Entered: 08/09/2019) |
| 08/09/2019 | 111 | NOTICE by Brian James Shearer of Change of Address (Shearer, Brian) (Entered: 08/09/2019) |

| | | |
|---|---|---|
| 08/09/2019 | 112 | MOTION by Defendant The National Association of Realtors for leave to file excess pages (Bierig, Jack) (Entered: 08/09/2019) |
| 08/09/2019 | 113 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant The National Association of Realtors (Bierig, Jack) (Entered: 08/09/2019) |
| 08/09/2019 | 114 | MEMORANDUM by The National Association of Realtors in support of Motion to Dismiss for Failure to State a Claim 113 (Attachments: # 1 Declaration of Katie Johnson)(Bierig, Jack) (Entered: 08/09/2019) |
| 08/09/2019 | 115 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., Keller Williams Realty, Inc., Re/Max Holdings, Inc., Re/Max LLC, Realogy Holdings Corp., The Long & Foster Companies, Inc. (Jackson, Karoline) (Entered: 08/09/2019) |
| 08/09/2019 | 116 | MEMORANDUM by BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., Keller Williams Realty, Inc., Re/Max Holdings, Inc., Re/Max LLC, Realogy Holdings Corp., The Long & Foster Companies, Inc. in support of Motion to Dismiss for Failure to State a Claim, 115 (Attachments: # 1 Exhibit 1 – Allen Declaration, # 2 Exhibit 2 – Article)(Jackson, Karoline) (Entered: 08/09/2019) |
| 08/09/2019 | 117 | NOTICE of Motion by Karoline Elizabeth Jackson for presentment of Motion to Dismiss for Failure to State a Claim, 115 before Honorable Andrea R. Wood on 8/20/2019 at 09:00 AM. (Jackson, Karoline) (Entered: 08/09/2019) |
| 08/12/2019 | 118 | NOTICE of Motion by Jack R. Bierig for presentment of motion for leave to file excess pages 112 before Honorable Andrea R. Wood on 8/20/2019 at 09:00 AM. (Bierig, Jack) (Entered: 08/12/2019) |
| 08/12/2019 | 119 | NOTICE of Motion by Jack R. Bierig for presentment of Motion to Dismiss for Failure to State a Claim 113 before Honorable Andrea R. Wood on 8/20/2019 at 09:00 AM. (Bierig, Jack) (Entered: 08/12/2019) |
| 08/15/2019 | 120 | ATTORNEY Appearance for Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., The Long & Foster Companies, Inc. by Jennifer M Keas (Keas, Jennifer) (Entered: 08/15/2019) |
| 08/16/2019 | 121 | MOTION by Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., Keller Williams Realty, Inc., Re/Max Holdings, Inc., Re/Max LLC, Realogy Holdings Corp., The Long & Foster Companies, Inc., The National Association of Realtors Joint Motion for Entry of Agreed Confidentiality Order and Agreed Order Regarding Production of Electronically Stored Information and Paper Documents (Attachments: # 1 Exhibit A, # 2 Errata B, # 3 Exhibit C)(Hayes, Anna) (Entered: 08/16/2019) |
| 08/16/2019 | 122 | CERTIFICATE of Service by Anna Pendleton Hayes on behalf of Keller Williams Realty, Inc. (Hayes, Anna) (Entered: 08/16/2019) |
| 08/16/2019 | 123 | NOTICE of Motion by Anna Pendleton Hayes for presentment of motion for miscellaneous relief, 121 before Honorable Andrea R. Wood on 8/20/2019 at 09:00 AM. (Hayes, Anna) (Entered: 08/16/2019) |
| 08/20/2019 | 124 | MINUTE entry before the Honorable Andrea R. Wood: Motion and Status hearing held. Agreed motion for leave to file excess pages 112 is granted. The Court sets the following briefing schedule on Defendants' motions to dismiss 113 115 : Plaintiffs shall respond by 9/13/2019 and Defendants shall reply by 10/14/2019. Plaintiffs are granted leave to file a single response brief up to 53 pages in length. Replies are limited to 15 pages. Joint motion for entry of agreed confidentiality order and agreed ESI order 121 is granted. Enter orders. Discovery remains stayed until further order of Court. Any party may move to lift the stay at any time. The parties shall notify the Court of any ruling by the Western District of Missouri on the pending motion to transfer within 3 business days of such ruling. The parties may do so by filing a notice of decision or status report. Status hearing set for 12/12/2019 at 9:00 AM. 'Mailed notice (ef, ) (Entered: 08/21/2019) |
| 08/20/2019 | 125 | AGREED CONFIDENTIALITY ORDER signed by the Honorable Andrea R. Wood on 8/20/2019. Mailed notice(ef, ) (Entered: 08/21/2019) |

| | | |
|---|---|---|
| 08/20/2019 | 126 | AGREED ORDER REGARDING PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS signed by the Honorable Andrea R. Wood on 8/20/2019.Mailed notice(ef, ) (Entered: 08/21/2019) |
| 08/27/2019 | 127 | STATUS Report *Joint Status Report Regarding the Sitzer Motions to Transfer pursuant to [Dkt. 124]* by Michael Cole, Steve Darnell, Christopher Moehrl, Valerie Nager, Jack Ramey, Jane Ruh, Daniel Umpa (Attachments: # 1 Exhibit A – 8/22/2019 Order Denying Transfer)(Franklin, Beatrice) (Entered: 08/27/2019) |
| 09/05/2019 | 128 | MOTION by Attorney Thomas A Doyle to withdraw as attorney for Sawbill Strategic Inc.. No party information provided (Doyle, Thomas) (Entered: 09/05/2019) |
| 09/05/2019 | 129 | NOTICE of Motion by Thomas Arthur Doyle for presentment of motion to withdraw as attorney 128 before Honorable Andrea R. Wood on 9/10/2019 at 09:00 AM. (Doyle, Thomas) (Entered: 09/05/2019) |
| 09/06/2019 | 130 | MINUTE entry before the Honorable Andrea R. Wood: Motion by counsel to withdraw as attorney 128 is granted. Attorney Thomas Arthur Doyle is withdrawn as counsel of record. The motion presentment date of 9/10/2019 is stricken; parties need not appear. Mailed notice (ef, ) (Entered: 09/06/2019) |
| 09/13/2019 | 131 | TRANSCRIPT OF PROCEEDINGS held on 08/20/19 before the Honorable Andrea R. Wood. Order Number: 35840. Court Reporter Contact Information: Patrick Mullen, (312) 435–5565, patrick_mullen@ilnd.uscourts.gov.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 10/4/2019. Redacted Transcript Deadline set for 10/15/2019. Release of Transcript Restriction set for 12/12/2019. (Mullen, Patrick) (Entered: 09/13/2019) |
| 09/13/2019 | 132 | MEMORANDUM by Michael Cole, Steve Darnell, Christopher Moehrl, Valerie Nager, Jack Ramey, Jane Ruh, Daniel Umpa in Opposition to Motion to Dismiss for Failure to State a Claim 113 , Motion to Dismiss for Failure to State a Claim, 115 (Pierson, Kit) (Entered: 09/13/2019) |
| 10/07/2019 | 133 | ATTORNEY Appearance for Amicus United States of America by Steven J. Mintz (Mintz, Steven) Modified on 10/8/2019 (smm, ). (Entered: 10/07/2019) |
| 10/07/2019 | 134 | NOTICE of Motion by Steven J. Mintz for presentment of before Honorable Andrea R. Wood on 10/10/2019 at 09:30 AM. (Mintz, Steven) (Entered: 10/07/2019) |
| 10/07/2019 | 135 | ENTERED in Error. (Mintz, Steven) Modified on 10/8/2019 (smm, ). (Entered: 10/07/2019) |
| 10/08/2019 | 136 | MOTION by Amicus United States of America to amend/correct MOTION by Amicus United States of America for leave to file *Statement of Interest* 135 (Attachments: # 1 Statement of Interest, # 2 Exhibit Amended Complaint, # 3 Exhibit Realtor Magazine)(Mintz, Steven) (Entered: 10/08/2019) |
| 10/08/2019 | 137 | ATTORNEY Appearance for Defendant Realogy Holdings Corp. by Heather Jean Nelson (Nelson, Heather) (Entered: 10/08/2019) |
| 10/09/2019 | 138 | MINUTE entry before the Honorable Andrea R. Wood: Amicus motion for leave to file 136 was not properly noticed for presentment. This is improper both because Judge Wood does not hear motions at 9:30 AM. Amicus counsel is advised that future failure to notice a motion properly may result in the motion being stricken or summarily denied. Motion Hearing set for 10/10/2019 at 9:30 a.m. 134 is stricken and reset for 10/10/2019 at 09:00 AM. TIME CHANGE ONLY. Mailed notice (ef, ) (Entered: 10/09/2019) |
| 10/10/2019 | 141 | MINUTE entry before the Honorable Andrea R. Wood: Motion hearing held. Pursuant to the discussion held in open court and for the reasons stated on the record, Amicus |

| | | |
|---|---|---|
| | | motion for leave to file statement of interest 136 is granted. Defendants' deadline to reply to motions to dismiss 113 and 115 is extended to 10/18/2019. Defendants' reply briefs should also include any response to the statement of interest. Replies are limited to 20 pages. Status hearing set for 12/12/2019 124 remains firm. Mailed notice (ef, ) (Entered: 10/11/2019) |
| 10/11/2019 | 139 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752−16328946. (Chang, Rebecca) (Entered: 10/11/2019) |
| 10/11/2019 | 140 | Statement of Interest by United States of America (Attachments: # 1 Exhibit Amended Complaint, # 2 Exhibit Realtor Magazine)(Mintz, Steven) (Entered: 10/11/2019) |
| 10/18/2019 | 142 | REPLY by Defendant The National Association of Realtors to Motion to Dismiss for Failure to State a Claim 113 , memorandum in support of motion 114 (Attachments: # 1 Exhibit Attachments)(Bierig, Jack) (Entered: 10/18/2019) |
| 10/18/2019 | 143 | REPLY by BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., Keller Williams Realty, Inc., Re/Max Holdings, Inc., Realogy Holdings Corp., The Long & Foster Companies, Inc. to MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., Keller Williams Realty, Inc., Re/Max Holdings, Inc., Re/Max LLC, Realogy Holdings Corp., The Long & Foster Companies, 115 , memorandum in support of motion, 116 (Lazar, Denise) (Entered: 10/18/2019) |
| 10/21/2019 | 144 | MINUTE entry before the Honorable Andrea R. Wood: Motion by counsel for leave to appear pro hac vice 139 is granted. Mailed notice (ef, ) (Entered: 10/21/2019) |
| 10/29/2019 | 145 | MOTION by Plaintiffs Michael Cole, Steve Darnell, Christopher Moehrl, Valerie Nager, Jack Ramey, Jane Ruh, Daniel Umpa for leave to file *Plaintiffs' Supplemental Memorandum in Opposition to Defendants' Motions to Dismiss* (Attachments: # 1 Plaintiffs' Supplemental Memorandum in Opposition to Defendants' Motions to Dismiss)(Pierson, Kit) (Entered: 10/29/2019) |
| 10/29/2019 | 146 | NOTICE of Motion by Kit A. Pierson for presentment of motion for leave to file, 145 before Honorable Andrea R. Wood on 11/6/2019 at 09:00 AM. (Pierson, Kit) (Entered: 10/29/2019) |
| 11/05/2019 | 147 | MINUTE entry before the Honorable Andrea R. Wood: Plaintiffs' Motion for leave to file Supplemental Memorandum 145 is granted. The motion presentment date of 11/6/2019 is stricken; parties need not appear. Mailed notice (ef, ) (Entered: 11/05/2019) |
| 11/19/2019 | 148 | MOTION by Plaintiffs Michael Cole, Steve Darnell, Christopher Moehrl, Valerie Nager, Jack Ramey, Jane Ruh, Daniel Umpa for discovery *Plaintiffs' Motion to Lift the Discovery Stay* (Siehl, Whitney) (Entered: 11/19/2019) |
| 11/19/2019 | 149 | NOTICE of Motion by Whitney Kendall Siehl for presentment of motion for discovery 148 before Honorable Andrea R. Wood on 12/12/2019 at 09:00 AM. (Siehl, Whitney) (Entered: 11/19/2019) |
| 11/20/2019 | 150 | TRANSCRIPT OF PROCEEDINGS held on 04/25/2019 before the Honorable Andrea R. Wood. Order Number: 36533. Court Reporter Contact Information: Colette M. Kuemmeth (312) 554−8931 colette_kuemmeth@ilnd.uscourts.gov.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 12/11/2019. Redacted Transcript Deadline set for 12/23/2019. Release of Transcript Restriction set for 2/18/2020. (Kuemmeth, Colette) (Entered: 11/20/2019) |
| 11/20/2019 | 151 | TRANSCRIPT OF PROCEEDINGS held on 05/29/2019 before the Honorable Andrea R. Wood. Order Number: 36533. Court Reporter Contact Information: Colette M. Kuemmeth (312) 554−8931 colette_kuemmeth@ilnd.uscourts.gov. |

| | | |
|---|---|---|
| | | IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 12/11/2019. Redacted Transcript Deadline set for 12/23/2019. Release of Transcript Restriction set for 2/18/2020. (Kuemmeth, Colette) (Entered: 11/20/2019) |
| 11/20/2019 | 152 | TRANSCRIPT OF PROCEEDINGS held on 10/10/2019 before the Honorable Andrea R. Wood. Order Number: 36533. Court Reporter Contact Information: Colette M. Kuemmeth (312) 554–8931 colette_kuemmeth@ilnd.uscourts.gov.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 12/11/2019. Redacted Transcript Deadline set for 12/23/2019. Release of Transcript Restriction set for 2/18/2020. (Kuemmeth, Colette) (Entered: 11/20/2019) |
| 11/20/2019 | 153 | TRANSCRIPT OF PROCEEDINGS held on 04/23/2019 before the Honorable Andrea R. Wood. Court Reporter Contact Information: Colette M. Kuemmeth (312) 554–8931 colette_kuemmeth@ilnd.uscourts.gov.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 12/11/2019. Redacted Transcript Deadline set for 12/23/2019. Release of Transcript Restriction set for 2/18/2020. (Kuemmeth, Colette) (Entered: 11/20/2019) |
| 11/20/2019 | 154 | TRANSCRIPT OF PROCEEDINGS held on 06/24/2019 before the Honorable Andrea R. Wood. Court Reporter Contact Information: Colette M. Kuemmeth (312) 554–8931 colette_kuemmeth@ilnd.uscourts.gov.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 12/11/2019. Redacted Transcript Deadline set for 12/23/2019. Release of Transcript Restriction set for 2/18/2020. (Kuemmeth, Colette) (Entered: 11/20/2019) |
| 11/27/2019 | 155 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752–16482884. (Aiken, Alexander) (Entered: 11/27/2019) |
| 12/05/2019 | 156 | MINUTE entry before the Honorable Andrea R. Wood: Motion by counsel to appear pro hac vice 155 is granted. Mailed notice (ef, ) (Entered: 12/05/2019) |
| 12/09/2019 | 157 | RESPONSE by Realogy Holdings Corp.in Opposition to MOTION by Plaintiffs Michael Cole, Steve Darnell, Christopher Moehrl, Valerie Nager, Jack Ramey, Jane Ruh, Daniel Umpa for discovery *Plaintiffs' Motion to Lift the Discovery Stay* 148 *Defendants' Opposition to Plaintiffs' Motion to Lift the Discovery Stay* (Kliebard, |

| | | |
|---|---|---|
| | | Kenneth) (Entered: 12/09/2019) |
| 12/10/2019 | 158 | REPLY by Michael Cole, Steve Darnell, Christopher Moehrl, Valerie Nager, Jack Ramey, Jane Ruh, Daniel Umpa to response in opposition to motion, 157 *PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO LIFT THE DISCOVERY STAY (DKT # 148)* (Seltzer, Marc) (Entered: 12/10/2019) |
| 12/12/2019 | 159 | MINUTE entry before the Honorable Andrea R. Wood: Motion and Status hearing held. Pursuant to the discussion held in open court and for the reasons stated on the record, Plaintiffs' motion to lift the discovery stay 148 is granted in part and denied in part as stated on the record. While the Court declines to lift the stay generally to allow full discovery coordination with the action pending in Missouri, Plaintiff will be permitted to serve document requests and Defendants will be required to provided written responses. Defendants will not be required to produce responsive documents. Plaintiff's counsel may participate in global discussions with the parties in the Missouri action regarding ESI discovery, including search terms and appropriate document custodians. In addition, as agreed, Defendants shall provide Plaintiff with documents produced in the Missouri action and transcripts from the depositions in the Missouri action of any witness identified as a potential witness in this case. Status hearing set for 2/19/2020 at 12:15 PM. Mailed notice (ef, ) (Entered: 12/20/2019) |
| 01/31/2020 | 160 | ATTORNEY Appearance for Defendant Re/Max LLC by Jeremy John Gray (Gray, Jeremy) (Entered: 01/31/2020) |
| 01/31/2020 | 161 | MOTION by Attorney Erin L. Shencopp to withdraw as attorney for Re/Max LLC. No party information provided (Shencopp, Erin) (Entered: 01/31/2020) |
| 02/04/2020 | 162 | MINUTE entry before the Honorable Andrea R. Wood: Motion by counsel to withdraw as attorney 161 is granted. Attorney Erin Lind Shencopp is withdrawn as counsel of record. Mailed notice (ef, ) (Entered: 02/04/2020) |
| 02/19/2020 | 163 | MINUTE entry before the Honorable Andrea R. Wood: Status hearing held. Pursuant to the discussions held in open court, the discovery stay is lifted as to Defendant Keller Williams Realty, Inc., *only*. Status hearing continued to 4/16/2020 at 11:00 AM. Mailed notice (ef, ) (Entered: 02/20/2020) |
| 02/28/2020 | 164 | ATTORNEY Appearance for Defendant Re/Max LLC by Megan Elizabeth Ryan (Ryan, Megan) (Entered: 02/28/2020) |
| 03/13/2020 | 165 | TRANSCRIPT OF PROCEEDINGS held on 02/19/20 before the Honorable Andrea R. Wood. Order Number: 37925. Court Reporter Contact Information: Patrick Mullen, (312) 435−5565, patrick_mullen@ilnd.uscourts.gov. IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings. Redaction Request due 4/3/2020. Redacted Transcript Deadline set for 4/13/2020. Release of Transcript Restriction set for 6/11/2020. (Mullen, Patrick) (Entered: 03/13/2020) |
| 03/16/2020 | 166 | ORDER Amended General Order 20−0012 IN RE: CORONAVIRUS COVID−19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on March 16, 2020. All open cases are impacted by this Amended General Order. See attached Order for guidance.Signed by the Honorable Rebecca R. Pallmeyer on 3/16/2020: Mailed notice. (td, ) (Entered: 03/17/2020) |
| 03/30/2020 | 167 | ORDER Seconded Amended General Order 20−0012 IN RE: CORONAVIRUS COVID−19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on March 30, 2020. All open cases are impacted by this Second Amended General Order. Amended General Order 20−0012, entered on March 17, 2020, and General Order 20−0014, entered on March 20, 2020, are vacated and superseded by this Second Amended General. See attached Order for guidance.Signed by the Honorable Rebecca R. Pallmeyer on 3/30/2020: Mailed notice. (docket12, ) (Entered: |

| | | |
|---|---|---|
| | | 03/31/2020) |
| 04/15/2020 | 168 | MINUTE entry before the Honorable Andrea R. Wood: Consistent with Second Amended General Order 20–0012, the status hearing set for 4/16/2020 is stricken and reset for 5/21/2020 at 10:00 AM. Mailed notice. (dal, ) (Entered: 04/15/2020) |
| 04/24/2020 | 169 | ORDER Third Amended General Order 20–0012 IN RE: CORONAVIRUS COVID–19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on April 24, 2020. All open cases are impacted by this Third Amended General Order. Parties are must carefully review all obligations under this Order, including the requirement listed in paragraph number 5 to file a joint written status report in most civil cases. See attached Order. Signed by the Honorable Rebecca R. Pallmeyer on 4/24/2020: Mailed notice. (docket4, ) (Entered: 04/27/2020) |
| 05/26/2020 | 170 | ORDER ORDER Fourth Amended General Order 20–0012 IN RE: CORONAVIRUS COVID–19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on May 26, 2020. This Order does not extend or modify any deadlines set in civil cases. For non–emergency motions, no motion may be noticed for presentment on a date earlier than July 15, 2020. See attached Order. Signed by the Honorable Rebecca R. Pallmeyer on 5/26/2020: Mailed notice. (docket5, ) (Entered: 05/26/2020) |
| 05/30/2020 | 171 | ORDER Signed by the Honorable Andrea R. Wood on 5/30/2020: Plaintiff Christopher Moehrl's motion for appointment of interim co–lead class counsel 50 is granted. Pursuant to Federal Rule of Civil Procedure 23(g)(3), the Court appoints as Plaintiffs' interim co–lead class counsel Cohen Milstein Sellers & Toll PLLC, Hagens Berman Sobol Shapiro LLP, and Susman Godfrey LLP, to carry out the duties listed in the separate Order Appointing Interim Co–Lead Counsel. See the accompanying Statement for details. Mailed notice. (dal, ) (Entered: 05/30/2020) |
| 05/30/2020 | 172 | ORDER APPOINTING INTERIM CO–LEAD CLASS COUNSEL Signed by the Honorable Andrea R. Wood on 5/30/2020. Mailed notice. (dal, ) (Entered: 05/30/2020) |
| 06/18/2020 | 173 | STATUS Report *Joint Status Report* by Michael Cole, Steve Darnell, Christopher Moehrl, Valerie Nager, Jack Ramey, Jane Ruh, Daniel Umpa (Seltzer, Marc) (Entered: 06/18/2020) |
| 07/10/2020 | 174 | ORDER Fifth Amended General Order 20–0012 IN RE: CORONAVIRUS COVID–19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on July 10, 2020. This Order does not extend or modify any deadlines set in civil cases. No motions may be noticed for in–person presentment; the presiding judge will notify parties of the need, if any, for a hearing by electronic means or in–court proceeding. See attached Order. Signed by the Honorable Rebecca R. Pallmeyer on 7/10/2020: Mailed notice. (Clerk4, Docket) (Entered: 07/10/2020) |
| 07/15/2020 | 175 | NOTICE by Robert Dean Macgill of Change of Address *for Robert MacGill and Matthew Ciulla* (Macgill, Robert) (Entered: 07/15/2020) |
| 07/20/2020 | 176 | ATTORNEY Appearance for Defendant HomeServices of America, Inc. by James Daniel Dasso (Dasso, James) (Entered: 07/20/2020) |
| 07/21/2020 | 177 | MOTION by Attorney Denise A. Lazar, Karoline Elizabeth Jackson, Matthew B. Barr to withdraw as attorney for BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., The Long & Foster Companies, Inc.. No party information provided (Lazar, Denise) (Entered: 07/21/2020) |
| 07/22/2020 | 178 | ATTORNEY Appearance for Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, The Long & Foster Companies, Inc. by James Daniel Dasso (Dasso, James) (Entered: 07/22/2020) |
| 07/28/2020 | 179 | MINUTE entry before the Honorable Andrea R. Wood: Motion by counsel to withdraw appearances 177 is granted. Attorneys Denise A. Lazar, Matthew B. Barr, and Karoline Elizabeth Jackson are withdrawn as counsel of record for Defendants. Mailed notice (dal, ) (Entered: 07/28/2020) |
| 08/26/2020 | 180 | NOTICE by Vildan Teske of Change of Address (Teske, Vildan) (Entered: 08/26/2020) |

| 08/26/2020 | 181 | NOTICE by Marisa Katz of Change of Address (Katz, Marisa) (Entered: 08/26/2020) |
|---|---|---|
| 09/08/2020 | 182 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing set for 10/2/2020 9:30 AM. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call–in number is (888) 557–8511 and the access code is 3547847. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court–issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (dal, ) (Entered: 09/08/2020) |
| 10/02/2020 | 183 | MINUTE entry before the Honorable Andrea R. Wood: For the reasons stated in the accompanying Memorandum Opinion and Order, Defendants' motions to dismiss 113 , 115 are denied. Mailed notice (dal, ) (Entered: 10/02/2020) |
| 10/02/2020 | 184 | MEMORANDUM Opinion and Order Signed by the Honorable Andrea R. Wood on 10/2/2020. Mailed notice (dal, ) (Entered: 10/02/2020) |
| 10/02/2020 | 185 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing held on 10/2/2020. By 10/26/2020 the parties shall file an updated joint status report setting forth (1) a proposed case schedule for the completion of discovery, class certification, and dispositive motions, and (2) any other matters the parties would like to discuss at the next status hearing. Telephonic status hearing set for 11/2/2020 at 1:30 PM. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call–in number is (888) 557–8511 and the access code is 3547847. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court–issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (dal, ) (Entered: 10/02/2020) |
| 10/06/2020 | 186 | TRANSCRIPT OF PROCEEDINGS held on October 2, 2020 before the Honorable Andrea R. Wood. Order Number: 39309. Court Reporter Contact Information: Brenda S. Tannehill, CSR, RPR, CRR, Official Court Reporter, brenda_tannehill@ilnd.uscourts.gov. <P>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.</P> Redaction Request due 10/27/2020. Redacted Transcript Deadline set for 11/6/2020. Release of Transcript Restriction set for 1/4/2021. (Tannehill, Brenda) (Entered: 10/06/2020) |
| 10/07/2020 | 187 | MOTION by Plaintiffs Michael Cole, Steve Darnell, Christopher Moehrl, Valerie Nager, Jack Ramey, Jane Ruh, Daniel Umpa for protective order *Joint Motion for Entry of Stipulation and Protective Order Regarding Expert Discovery* (Berman, Steve) (Entered: 10/07/2020) |
| 10/08/2020 | 188 | MINUTE entry before the Honorable Andrea R. Wood: The parties' joint motion for entry of stipulation and protective order regarding expert discovery 187 is granted. ENTER ORDER. Mailed notice (dal, ) (Entered: 10/08/2020) |
| 10/08/2020 | 189 | STIPULATION AND PROTECTIVE ORDER REGARDING EXPERT DISCOVERY Signed by the Honorable Andrea R. Wood on 10/8/2020. Mailed notice (dal, ) (Entered: 10/08/2020) |
| 10/12/2020 | 190 | STIPULATION *to Extend Time to Answer Plaintiffs' Consolidated Amended Class Action Complaint* (Kliebard, Kenneth) (Entered: 10/12/2020) |

| 10/26/2020 | 191 | STATUS Report *Joint Status Report* by Michael Cole, Steve Darnell, Christopher Moehrl, Valerie Nager, Jack Ramey, Jane Ruh, Daniel Umpa (Attachments: # 1 Exhibit A)(Seltzer, Marc) (Entered: 10/26/2020) |
|---|---|---|
| 11/02/2020 | 192 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing held on 11/2/2020. The Court sets the following case deadlines: Defendants shall answer the complaint by 11/16/2020. Rule 26(a) disclosures shall be served by 11/16/2020. The parties shall agree to ESI search terms and custodians and/or submit any disputes to the Court by 1/8/2021. The Court will set further discovery deadlines by separate order. By 1/8/2021, the parties shall file a joint status report setting forth the current status of discovery, including whether the parties are aware of any discovery disputes that will require the Court's involvement, whether the parties are aware of any reason why they will not be able to comply with the discovery schedule, and a status on the parties' discussions regarding a deposition protocol. Telephonic status hearing set for 1/19/2021 at 11:00 AM. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call–in number is (888) 557–8511 and the access code is 3547847. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court–issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (dal, ) (Entered: 11/02/2020) |
| 11/03/2020 | 193 | TRANSCRIPT OF PROCEEDINGS held on November 2, 2020 before the Honorable Andrea R. Wood. Order Number: 39505. Court Reporter Contact Information: Brenda S. Tannehill, CSR, RPR, CRR, Official Court Reporter, brenda_tannehill@ilnd.uscourts.gov. <P>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.</P> Redaction Request due 11/24/2020. Redacted Transcript Deadline set for 12/4/2020. Release of Transcript Restriction set for 2/1/2021. (Tannehill, Brenda) (Entered: 11/03/2020) |
| 11/03/2020 | 194 | Attorney Appearance Form by Re/Max LLC (LeVee, Jeffrey) (Entered: 11/03/2020) |
| 11/05/2020 | 195 | ATTORNEY Appearance for Defendant Re/Max LLC by Jeffrey A. LeVee (LeVee, Jeffrey) (Entered: 11/05/2020) |
| 11/07/2020 | 196 | CASE SCHEDULING ORDER signed by the Honorable Andrea R. Wood on 11/6/2020. Mailed notice (aw,) (Entered: 11/07/2020) |
| 11/12/2020 | 197 | ATTORNEY Appearance for Defendant The National Association of Realtors by Suzanne L Wahl (Wahl, Suzanne) (Entered: 11/12/2020) |
| 11/16/2020 | 198 | ANSWER to amended complaint by Keller Williams Realty, Inc.(Hayes, Anna) (Entered: 11/16/2020) |
| 11/16/2020 | 199 | ANSWER to amended complaint by Re/Max LLC(Gray, Jeremy) (Entered: 11/16/2020) |
| 11/16/2020 | 200 | ANSWER to amended complaint by BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., The Long & Foster Companies, Inc.(Varon, Jay) (Entered: 11/16/2020) |
| 11/16/2020 | 201 | ANSWER to amended complaint by Realogy Holdings Corp.(Kliebard, Kenneth) (Entered: 11/16/2020) |
| 11/16/2020 | 202 | ANSWER to amended complaint by The National Association of Realtors(Bierig, Jack) (Entered: 11/16/2020) |
| 11/19/2020 | 203 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752–17662170. (Attachments: # 1 Attachment)(McEnroe, William) (Entered: 11/19/2020) |

| | | |
|---|---|---|
| 11/23/2020 | 204 | MINUTE entry before the Honorable Andrea R. Wood: Motion by counsel for leave to appear pro hac vice 203 is granted. Mailed notice (dal, ) (Entered: 11/23/2020) |
| 12/07/2020 | 205 | MOTION by Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., The Long & Foster Companies, Inc. to strike *the class definition and require its amendment to excise arbitrating plaintiffs* (Macgill, Robert) (Entered: 12/07/2020) |
| 12/07/2020 | 206 | MEMORANDUM by BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., The Long & Foster Companies, Inc. in support of motion to strike 205 *the class definition and require its amendment to excise arbitrating plaintiffs* (Attachments: # 1 Exhibit 1 – Corporate Structure, # 2 Exhibit 2 – Fox & Roach, # 3 Exhibit 3 – Ebby, # 4 Exhibit 4 – Lovejoy, # 5 Exhibit 5 – Midwest Preferred, # 6 Exhibit 6 – Edina, # 7 Exhibit 7 – EWM, # 8 Exhibit 8 – Florida, # 9 Exhibit 9 – Long, # 10 Exhibit 10 – Preferred Carolinas, # 11 Exhibit 11 – First Weber, # 12 Exhibit 12 – Long & Foster)(Macgill, Robert) (Entered: 12/07/2020) |
| 12/17/2020 | 207 | MOTION by Attorney Paula W. Render to withdraw as attorney for Re/Max LLC. No party information provided (Ryan, Megan) (Entered: 12/17/2020) |
| 01/05/2021 | 208 | RESPONSE by Michael Cole, Steve Darnell, Christopher Moehrl, Valerie Nager, Jack Ramey, Jane Ruh, Daniel Umpain Opposition to MOTION by Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., The Long & Foster Companies, Inc. to strike *the class definition and require its amendment to excise arbitrating plaintiffs* 205 (Attachments: # 1 Exhibit A)(Seltzer, Marc) (Entered: 01/05/2021) |
| 01/08/2021 | 209 | STATUS Report *Joint Status Report* by Michael Cole, Steve Darnell, Christopher Moehrl, Valerie Nager, Jack Ramey, Jane Ruh, Daniel Umpa (Attachments: # 1 Appendix A (Plaintiffs' Exhibits), # 2 Appendix B (Defendants' Redline of Proposed Deposition Stipulation), # 3 Appendix C (Defendants' Exhibits))(Braun, Robert) (Entered: 01/08/2021) |
| 01/12/2021 | 210 | REPLY by Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., The Long & Foster Companies, Inc. to response in opposition to motion, 208 , motion to strike 205 (Macgill, Robert) (Entered: 01/12/2021) |
| 01/15/2021 | 211 | Notice of Supplemental Authority Related to the Deposition Protocol Dispute in the Parties' Joint Status Report (Dkt. No. 209) by BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., Keller Williams Realty, Inc., Re/Max Holdings, Inc., Re/Max LLC, Realogy Holdings Corp., The National Association of Realtors (Attachments: # 1 Exhibit A)(Kliebard, Kenneth) (Entered: 01/15/2021) |
| 01/19/2021 | 212 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing held on 1/19/2021. As discussed on the record, the Court accepts Defendants' recommended protocol for delivery of paper exhibits prior to remote depositions with the following caveats to be implemented in good–faith by counsel and witnesses: (1) Although hard–copy exhibits will be available, examinations shall proceed with electronic presentation of exhibits. Paper exhibits shall be used only upon request by the witness, on the record, with respect to particular exhibits; and (2) Counsel who noticed the deposition shall provide in advance any exhibits that may be used in a deposition based on his or her best good–faith belief. Nonetheless, absent bad faith, counsel will not be precluded from using additional documents during the deposition that were not provided in advance. The Court will impose appropriate sanctions against counsel who fail to act in good faith in compliance with the protocol. By 1/26/2021, the parties shall provide a final TAR protocol and remote deposition protocol (consistent with the discussion on the record) to the Court's proposed order inbox with a copy to Courtroom Deputy David Lynn (david_lynn@ilnd.uscourts.gov). The Court adopts Plaintiff's position that Anthony Hall shall be designated as a document custodian. At the request of the parties, the Court enters the following briefing schedule on Defendants' anticipated motion for a protective order: Defendants shall file their motion for protective order and brief in support, not to exceed 20 pages, by 1/27/2020. Plaintiffs shall file their response brief, not to exceed 20 pages, by 2/10/2021. Telephonic motion and status hearing set for 2/24/2021 at 11:00 AM. The parties shall file an updated discovery status report by 2/19/2021. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call–in number is (888) 557–8511 and the access code is 3547847. |

| | | |
|---|---|---|
| | | Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court–issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (dal, ) (Entered: 01/19/2021) |
| 01/20/2021 | 213 | TRANSCRIPT OF PROCEEDINGS held on January 19, 2021 before the Honorable Andrea R. Wood. Order Number: 39962. Court Reporter Contact Information: Brenda S. Tannehill, CSR, RPR, CRR, Official Court Reporter, brenda_tannehill@ilnd.uscourts.gov. <P>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.</P> Redaction Request due 2/10/2021. Redacted Transcript Deadline set for 2/22/2021. Release of Transcript Restriction set for 4/20/2021. (Tannehill, Brenda) (Entered: 01/20/2021) |
| 01/22/2021 | 214 | MOTION by Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., The Long & Foster Companies, Inc.Entry of Stipulated TAR Protocol (Attachments: # 1 Exhibit Stipulated TAR Protocol)(Varon, Jay) (Entered: 01/22/2021) |
| 01/22/2021 | 215 | NOTICE by Keller Williams Realty, Inc. *to Issue Subpoena to Federal National Mortgage Association* (Attachments: # 1 Subpoena)(Kully, David) (Entered: 01/22/2021) |
| 01/27/2021 | 216 | MOTION by Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., Keller Williams Realty, Inc., Re/Max LLC, Realogy Holdings Corp., The Long & Foster Companies, Inc. for protective order (Kliebard, Kenneth) (Entered: 01/27/2021) |
| 01/27/2021 | 217 | MEMORANDUM by BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., Keller Williams Realty, Inc., Re/Max LLC, Realogy Holdings Corp., The Long & Foster Companies, Inc. in support of motion for protective order 216 (Attachments: # 1 Index of Exhibits, # 2 Exhibit 1, # 3 Exhibit 2 [Yannaccone Declaration], # 4 Exhibit 3 [Warner Declaration], # 5 Exhibit 4 [Bailey Declaration], # 6 Exhibit 5 [King Declaration], # 7 Exhibit 6 [Gartner Declaration])(Kliebard, Kenneth) (Entered: 01/27/2021) |
| 01/27/2021 | 218 | SEALED DOCUMENT by Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., Keller Williams Realty, Inc., Re/Max LLC, Realogy Holdings Corp., The Long & Foster Companies, Inc. (Attachments: # 1 Exhibit 2 – Yannaccone Decl. Ex. 2 [sealed], # 2 Exhibit 3 – Warner Decl. Exs. C, D [sealed], # 3 Exhibit 4 – Bailey Decl. Exs. A–E [sealed])(Kliebard, Kenneth) (Entered: 01/27/2021) |
| 01/27/2021 | 219 | MOTION by Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., Keller Williams Realty, Inc., Re/Max LLC, Realogy Holdings Corp., The Long & Foster Companies, Inc. to seal document sealed document, 218 (Kliebard, Kenneth) (Entered: 01/27/2021) |
| 01/28/2021 | 220 | MINUTE entry before the Honorable Andrea R. Wood: Motion of the Corporate Defendants for leave to file certain exhibits in support of their joint motion for a protective order under seal 219 is granted. The Court grants the Corporate Defendants leave to file exhibits referenced in their Memorandum in Support of Corporate Defendants' Joint Motion for Protective Order that have been previously designated by the Corporate Defendants as "Confidential" or "Highly Confidential–Outside Counsel Eyes Only" under seal. Mailed notice (dal, ) (Entered: 01/28/2021) |
| 02/10/2021 | 221 | MEMORANDUM by Michael Cole, Steve Darnell, Christopher Moehrl, Valerie Nager, Jack Ramey, Jane Ruh, Daniel Umpa in Opposition to motion for protective order 216 (Attachments: # 1 Exhibit A – 7/28/2020 Ltr. from David Kully)(Seltzer, Marc) (Entered: 02/10/2021) |

| 02/10/2021 | 222 | SEALED RESPONSE by Michael Cole, Steve Darnell, Christopher Moehrl, Valerie Nager, Jack Ramey, Jane Ruh, Daniel Umpa to MOTION to Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., Keller Williams Realty, Inc., Re/Max LLC, Realogy Holdings Corp., The Long & Foster Companies, Inc. for protective order 216 (Seltzer, Marc) (Entered: 02/10/2021) |
| 02/10/2021 | 223 | MOTION by Plaintiffs Michael Cole, Steve Darnell, Christopher Moehrl, Valerie Nager, Jack Ramey, Jane Ruh, Daniel Umpa to seal document sealed response, 222 (Seltzer, Marc) (Entered: 02/10/2021) |
| 02/11/2021 | 224 | MINUTE entry before the Honorable Andrea R. Wood: Plaintiff's motion for leave to file memorandum of law with redactions 223 is granted. The Court grants Plaintiffs leave to file their memorandum of law in opposition to the Corporate Defendants' joint motion for protective order in redacted form, with an unredacted copy filed under seal. Mailed notice (dal, ) (Entered: 02/11/2021) |
| 02/19/2021 | 225 | STATUS Report *Joint Status Report* by Michael Cole, Steve Darnell, Christopher Moehrl, Valerie Nager, Jack Ramey, Jane Ruh, Daniel Umpa (Braun, Robert) (Entered: 02/19/2021) |
| 02/23/2021 | 226 | MINUTE entry before the Honorable Andrea R. Wood: The motion and status hearing set for 2/24/2021 will proceed by video conference. To ensure public access to court proceedings, members of the public and media may call in to listen to remote hearings. The call–in number is (650)–479–3207 and the meeting ID is 180 813 1170##. Counsel of record will receive an email prior to the start of the hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court–issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (dal, ) (Entered: 02/23/2021) |
| 02/24/2021 | 227 | MINUTE entry before the Honorable Andrea R. Wood: Motion and status hearing held on 2/24/2021 by video conference. The parties' joint motion for entry of stipulated TAR protocol 214 is granted. Enter order. Attorney Paula W. Render's notice of withdrawal of appearance and request for removal from ECF service 207 is granted. The Clerk is directed to withdraw the appearance of Paula W. Render as counsel of record. The Corporate Defendants' joint motion for protective order 216 is taken under advisement for ruling. By 4/26/2021, the parties shall file a joint status report setting forth: (1) the current status of discovery, including whether the parties are aware of any discovery disputes that will require the Court's involvement, any pending discovery motions, and whether the parties are aware of any reason why they will not be able to meet the current case schedule, and (2) whether the parties require a telephonic status hearing and, if so, what matters the parties feel it would be helpful to discuss with the Court. Mailed notice (dal, ) (Entered: 02/24/2021) |
| 02/24/2021 | 228 | MINUTE entry (CORRECTED) before the Honorable Andrea R. Wood: Motion and status hearing held on 2/24/2021 by video conference. The parties' joint motion for entry of stipulated TAR protocol 214 is granted. Enter order. Attorney Paula W. Render's notice of withdrawal of appearance and request for removal from ECF service 207 is granted. The Clerk is directed to withdraw the appearance of Paula W. Render as counsel of record. The Corporate Defendants' joint motion for protective order 216 is taken under advisement for ruling. By 4/26/2021, the parties shall file a joint status report setting forth: (1) the current status of discovery, including whether the parties are aware of any discovery disputes that will require the Court's involvement, any pending discovery motions, and whether the parties are aware of any reason why they will not be able to meet the current case schedule, and (2) whether the parties require a telephonic status hearing and, if so, what matters the parties feel it would be helpful to discuss with the Court. The status report shall also specifically state the parties' resolution of their disagreement regarding the status of Plaintiff Valerie Nager. Mailed notice (dal, ) (Entered: 02/24/2021) |
| 02/24/2021 | 229 | ORDER REGARDING STIPULATED TECHNOLOGY ASSISTED REVIEW PROTOCOL Signed by the Honorable Andrea R. Wood on 2/24/2021. Mailed notice (dal, ) (Entered: 02/24/2021) |

| | | |
|---|---|---|
| 02/26/2021 | 230 | TRANSCRIPT OF PROCEEDINGS held on February 24, 2021 before the Honorable Andrea R. Wood. Order Number: 40215. Court Reporter Contact Information: Brenda S. Tannehill, CSR, RPR, CRR, Official Court Reporter, brenda_tannehill@ilnd.uscourts.gov. <P>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.</P> Redaction Request due 3/19/2021. Redacted Transcript Deadline set for 3/29/2021. Release of Transcript Restriction set for 5/27/2021. (Tannehill, Brenda) (Entered: 02/26/2021) |
| 03/11/2021 | 231 | STATUS Report *Parties' Positions on Plaintiffs' Motion for a Protective Order Regarding National Association of Realtors' Notice of Deposition of Named Plaintiff Valerie Nager* by Michael Cole, Steve Darnell, Christopher Moehrl, Valerie Nager, Jack Ramey, Jane Ruh, Daniel Umpa (Attachments: # 1 Declaration of Rio Pierce, # 2 Exhibit A, # 3 Exhibit B)(Pierce, Rio) (Entered: 03/11/2021) |
| 03/16/2021 | 232 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752–18024498. (Smith, Shelby) (Entered: 03/16/2021) |
| 03/17/2021 | 233 | NOTICE by Rebecca Chang of Change of Address (Chang, Rebecca) (Entered: 03/17/2021) |
| 03/17/2021 | 234 | NOTICE by George Farah of Change of Address (Farah, George) (Entered: 03/17/2021) |
| 03/22/2021 | 235 | MINUTE entry before the Honorable Andrea R. Wood: Motion by counsel for leave to appear pro hac vice 232 is granted. Mailed notice (dal, ) (Entered: 03/22/2021) |
| 04/26/2021 | 236 | STATUS Report *Joint Status Report* by Michael Cole, Steve Darnell, Christopher Moehrl, Valerie Nager, Jack Ramey, Jane Ruh, Daniel Umpa (Seltzer, Marc) (Entered: 04/26/2021) |
| 04/28/2021 | 237 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752–18183779. (Murray, Scott) (Entered: 04/28/2021) |
| 04/30/2021 | 238 | MOTION by Attorney Brian J. Shearer to withdraw as attorney for Christopher Moehrl. No party information provided (Shearer, Brian) (Entered: 04/30/2021) |
| 05/03/2021 | 239 | MINUTE entry before the Honorable Andrea R. Wood: Motion to withdraw appearance under Local Rule 83.17 238 is granted. The Clerk shall terminate the appearance of Attorney Brian James Shearer. Mailed notice (dal, ) (Entered: 05/03/2021) |
| 05/03/2021 | 240 | MINUTE entry before the Honorable Andrea R. Wood: Motion for leave to appear pro hac vice 237 is granted. Mailed notice (dal, ) (Entered: 05/03/2021) |
| 05/13/2021 | 241 | NOTICE by Benjamin D Elga of Change of Address (Elga, Benjamin) (Entered: 05/13/2021) |
| 05/27/2021 | 242 | MOTION by Plaintiffs Michael Cole, Steve Darnell, Christopher Moehrl, Valerie Nager, Jack Ramey, Jane Ruh, Daniel Umpa to compel *Production of Expert Materials from Sitzer v. Nar* (Seltzer, Marc) (Entered: 05/27/2021) |
| 05/27/2021 | 243 | MEMORANDUM by Michael Cole, Steve Darnell, Christopher Moehrl, Valerie Nager, Jack Ramey, Jane Ruh, Daniel Umpa in support of motion to compel 242 (Seltzer, Marc) (Entered: 05/27/2021) |
| 06/01/2021 | 244 | MINUTE entry before the Honorable Andrea R. Wood: At the emailed request of the parties, the Court enters the following briefing schedule for Plaintiffs' motion to compel production of expert materials from *Sitzer v. Nar* 242 : Defendants shall file a response by 6/10/2021 and Plaintiffs shall file a reply by 6/17/2021. Telephonic motion and status hearing set for 6/29/2021 at 10:00 AM. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call–in number is (888) 557–8511 and the access code is 3547847. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings |

| | | |
|---|---|---|
| | | are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court–issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (dal, ) (Entered: 06/01/2021) |
| 06/07/2021 | 245 | NOTICE by Heather Jean Nelson of Change of Address (Nelson, Heather) (Entered: 06/07/2021) |
| 06/08/2021 | 246 | MINUTE entry before the Honorable Andrea R. Wood: At the emailed request of the parties, the telephonic motion and status hearing set for 6/29/2021 is stricken and reset for 7/8/2021 at 11:00 AM. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call–in number is (888) 557–8511 and the access code is 3547847. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court–issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (dal, ) (Entered: 06/08/2021) |
| 06/10/2021 | 247 | RESPONSE by all Defendants in Opposition to MOTION by Plaintiffs Michael Cole, Steve Darnell, Christopher Moehrl, Valerie Nager, Jack Ramey, Jane Ruh, Daniel Umpa to compel *Production of Expert Materials from Sitzer v. Nar* 242 (Kully, David) (Entered: 06/10/2021) |
| 06/15/2021 | 248 | ATTORNEY Appearance for Movant Judah Leeder by Randall P. Ewing, Jr (Ewing, Randall) (Docket text modified on 6/16/2021 by Clerk's Office ). (Entered: 06/15/2021) |
| 06/15/2021 | 249 | UNOPPOSED MOTION to Relate and Reassign Case by Judah Leeder *the Movant* (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B)(Ewing, Randall) (Docket text modified on 6/16/2021 by Clerk's Office). Modified on 6/16/2021 (aee, ). (Entered: 06/15/2021) |
| 06/17/2021 | 250 | REPLY by Plaintiffs Michael Cole, Steve Darnell, Christopher Moehrl, Valerie Nager, Jack Ramey, Jane Ruh, Daniel Umpa to motion to compel 242 (Seltzer, Marc) (Entered: 06/17/2021) |
| 06/21/2021 | 251 | NOTICE by Kenneth Michael Kliebard of Change of Address (Kliebard, Kenneth) (Entered: 06/21/2021) |
| 06/21/2021 | 252 | MOTION by Attorney Megan E. Ryan to withdraw as attorney for Re/Max LLC. No party information provided (Gray, Jeremy) (Entered: 06/21/2021) |
| 06/22/2021 | 253 | MINUTE entry before the Honorable Andrea R. Wood: Notice of withdrawal of appearance of Megan E. Ryan and request for removal from ECF Service 252 is granted. The Clerk shall terminate the appearance of Attorney Megan Elizabeth Ryan. Mailed notice (dal, ) (Entered: 06/22/2021) |
| 07/01/2021 | 254 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752–18411621. (Pearson, Stephen) (Entered: 07/01/2021) |
| 07/02/2021 | 255 | MINUTE entry before the Honorable Andrea R. Wood: Motion by counsel for leave to appear pro hac vice 254 is granted. Mailed notice (dal, ) (Entered: 07/02/2021) |
| 07/05/2021 | 256 | ORDER signed by the Honorable Andrea R. Wood on 7/5/2021: Defendants HomeServices of America, Inc., HSF Affiliates, LLC, The Long & Foster Companies, Inc., and BHH Affiliates, LLC's motion to strike the class definition and require its amendment to excise arbitrating plaintiffs 205 is denied. See the accompanying Statement for details. Mailed notice (aw,) (Entered: 07/05/2021) |
| 07/08/2021 | 258 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing held on 7/8/2021. Plaintiff's unopposed motion to relate and reassign case pursuant to Local Rule 40.4 249 is taken under advisement. For the reasons stated on the record, Corporate Defendants' joint motion for protective order 216 is denied. The parties shall meet and confer and, by 8/5/2021, file a joint status report identifying any remaining |

| | | |
|---|---|---|
| | | areas of dispute, providing a proposed schedule for completing the remaining document production, and identifying any other issues that the parties desire to discuss with the Court at the status hearing. Telephonic status hearing set for 8/12/2021 at 11:00 AM. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call–in number is (888) 557–8811 and the access code is 3547847. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court–issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (dal, ) (Entered: 07/09/2021) |
| 07/09/2021 | 257 | TRANSCRIPT OF PROCEEDINGS held on July 8, 2021 before the Honorable Andrea R. Wood. Order Number: 41157. Court Reporter Contact Information: Brenda S. Tannehill, CSR, RPR, CRR, Official Court Reporter, brenda_tannehill@ilnd.uscourts.gov. <P>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.</P> Redaction Request due 7/30/2021. Redacted Transcript Deadline set for 8/9/2021. Release of Transcript Restriction set for 10/7/2021. (Tannehill, Brenda) (Entered: 07/09/2021) |
| 07/29/2021 | 259 | ORDER Signed by the Honorable Andrea R. Wood on 7/29/2021: The parties have filed a joint status report 231 setting forth their positions on Defendant National Association of Realtors's request to depose Plaintiff Valerie Nager as a condition of her voluntary withdrawal as a class representative. The Court treats the status report as Plaintiffs' motion for a protective order regarding Defendant National Association of Realtors's requested discovery and that motion is granted. Plaintiffs' motion to compel the production of expert materials from Sitzer v. NAR 242 is denied. See the accompanying Statement for details. Mailed notice (dal, ) (Entered: 07/29/2021) |
| 08/05/2021 | 260 | STATUS Report *Joint Status Report* by Michael Cole, Steve Darnell, Christopher Moehrl, Valerie Nager, Jack Ramey, Jane Ruh, Daniel Umpa (Seltzer, Marc) (Entered: 08/05/2021) |
| 08/06/2021 | 261 | ATTORNEY Appearance for Plaintiffs Michael Cole, Steve Darnell, Christopher Moehrl, Valerie Nager, Jack Ramey, Jane Ruh, Daniel Umpa by Jeannie Y Evans (Evans, Jeannie) (Entered: 08/06/2021) |
| 08/09/2021 | 262 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing set for 8/12/2021 is stricken and reset for 8/12/2021 at 10:30 AM. **TIME CHANGE ONLY.** Mailed notice (dal, ) (Entered: 08/09/2021) |
| 08/12/2021 | 263 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing held on 8/12/2021. Unopposed motion to relate and reassign case pursuant to Local Rule 40.4 249 has been taken under advisement. As discussed on the record, the Court clarified its 7/8/2021 ruling on Corporate Defendants' joint motion for protective order. Defendant Keller Williams is directed to seek to obtain the documents responsive to Plaintiff's discovery requests from its franchisee/market centers pursuant to its rights under the franchisee agreements. Defendants shall produce the documents required to be produced pursuant to the Court's 7/8/2021 ruling by 11/1/2021. By 9/15/2021, the parties shall file a joint status report setting forth: (1) the current status of discovery, including whether the parties are aware of any discovery disputes that will require the Court's involvement, the status of the production of the franchisee documents, and whether the parties are aware of any reason why they will not be able to meet the current case schedule; and (2) any other matters that the parties would like to discuss at a telephonic status hearing. Telephonic status hearing set for 9/22/2021. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call–in number is (888) 557–8811 and the access code is 3547847. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote |

| | | |
|---|---|---|
| | | access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court–issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (dal, ) (Entered: 08/12/2021) |
| 08/13/2021 | 264 | TRANSCRIPT OF PROCEEDINGS held on August 12, 2021 before the Honorable Andrea R. Wood. Order Number: 41399. Court Reporter Contact Information: Brenda S. Tannehill, CSR, RPR, CRR, Official Court Reporter, brenda_tannehill@ilnd.uscourts.gov. <P>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.</P> Redaction Request due 9/3/2021. Redacted Transcript Deadline set for 9/13/2021. Release of Transcript Restriction set for 11/11/2021. (Tannehill, Brenda) (Entered: 08/13/2021) |
| 08/26/2021 | 265 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752–18607869. (Lada, Jennifer) (Entered: 08/26/2021) |
| 08/27/2021 | 266 | MINUTE entry before the Honorable Andrea R. Wood:Motion by counsel for leave to appear pro hac vice 265 is granted. Mailed notice (dal, ) (Entered: 08/27/2021) |
| 09/15/2021 | 267 | STATUS Report *Joint Status Report* by Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa (Braun, Robert) (Entered: 09/15/2021) |
| 09/21/2021 | 268 | MINUTE entry before the Honorable Andrea R. Wood: For docket clarification purposes, the telephonic status hearing set for 9/22/2021 263 will proceed at 11:00 AM. Mailed notice (dal, ) (Entered: 09/21/2021) |
| 09/22/2021 | 269 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing held on 9/22/2021. Movant's unopposed motion to relate and reassign case pursuant to Local Rule 40.4 249 is under advisement for ruling. The Court resolves the deposition discovery disputes raised in the parties' joint status report 267 as follows. Plaintiffs' depositions are limited to 10 per Defendant family and Plaintiffs shall coordinate at least 4 of those depositions with those in the *Sitzer* case unless they show good cause not to do so. Within five business days from when the *Moehrl* Plaintiffs receive notice that the *Sitzer* Plaintiffs have asked for a deposition (or five business days from today for those witnesses already known to the *Moerhl* Plaintiffs), Plaintiffs' counsel shall inform the relevant defense counsel whether the *Moehrl* Plaintiffs are going to participate in the deposition or not. If defense counsel believes a deposition should be coordinated despite Plaintiffs' objection, defense counsel may raise the issue with this Court. Telephonic status hearing set for 12/1/2021 at 11:00 AM. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call–in number is (888) 557–8511 and the access code is 3547847. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court–issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (dal, ) (Entered: 09/22/2021) |
| 09/23/2021 | 270 | TRANSCRIPT OF PROCEEDINGS held on September 22, 2021 before the Honorable Andrea R. Wood. Order Number: 41703. Court Reporter Contact Information: Brenda S. Tannehill, CSR, RPR, CRR, Official Court Reporter, brenda_tannehill@ilnd.uscourts.gov. <P>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.</P> Redaction Request due 10/14/2021. Redacted Transcript Deadline set for 10/25/2021. Release of Transcript Restriction set for |

| | | |
|---|---|---|
| | | 12/22/2021. (Tannehill, Brenda) (Entered: 09/23/2021) |
| 10/19/2021 | 271 | MOTION by Plaintiffs Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa to compel *Targeted Discovery from Defendant National Association of Realtors* (Braun, Robert) (Entered: 10/19/2021) |
| 10/19/2021 | 272 | MEMORANDUM by Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa in support of motion to compel 271 (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Braun, Robert) (Entered: 10/19/2021) |
| 10/28/2021 | 273 | MOTION by Plaintiffs Michael Cole, Steve Darnell, Christopher Moehrl, Valerie Nager, Jack Ramey, Jane Ruh, Daniel Umpa for extension of time *Joint Motion to Extend Case Schedule* (Attachments: # 1 Text of Proposed Order)(Seltzer, Marc) (Entered: 10/28/2021) |
| 10/29/2021 | 274 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752–18821663. (Chingcuanco, Leonardo) (Entered: 10/29/2021) |
| 11/02/2021 | 275 | MINUTE entry before the Honorable Andrea R. Wood: Briefing of Plaintiffs' motion to compel targeted discovery from Defendant National Association of Realtors 271 shall proceed as follows: Defendant National Association of Realtors shall respond to Plaintiffs' motion by 11/16/2021 and Plaintiff shall reply by 11/23/2021. The parties' joint motion to extend case schedule 273 is granted in part. The deadline for the production of Corporate Defendant franchisee documents is extended to 12/30/2021. The Court will address the remainder of the proposed modified case schedule at the telephonic status hearing on 12/1/2021. Mailed notice (dal, ) (Entered: 11/02/2021) |
| 11/16/2021 | 276 | RESPONSE by The National Association of Realtorsin Opposition to MOTION by Plaintiffs Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa to compel *Targeted Discovery from Defendant National Association of Realtors* 271 (Attachments: # 1 Index of Exhibits, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6)(Bierig, Jack) (Entered: 11/16/2021) |
| 11/22/2021 | 277 | MINUTE entry before the Honorable Andrea R. Wood: The remainder of the parties' agreed motion to extend case schedule is granted. Enter Scheduling Order. Telephonic status hearing set for 12/1/2021 remains firm. Mailed notice (aw,) (Entered: 11/22/2021) |
| 11/22/2021 | 278 | SCHEDULING ORDER signed by the Honorable Andrea R. Wood on 11/22/2021. Mailed notice (aw,) (Entered: 11/22/2021) |
| 11/22/2021 | 279 | STATUS Report *Joint* by Michael Cole, Steve Darnell, Christopher Moehrl, Valerie Nager, Jack Ramey, Jane Ruh, Daniel Umpa (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C, # 4 Exhibit Exhibit D, # 5 Exhibit Exhibit E, # 6 Exhibit Exhibit F)(Seltzer, Marc) (Entered: 11/22/2021) |
| 11/23/2021 | 280 | REPLY by Plaintiffs Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa to motion to compel 271 *REDACTED* (Attachments: # 1 Exhibit A, # 2 Exhibit B (FILED UNDER SEAL), # 3 Exhibit C (FILED UNDER SEAL), # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F (FILED UNDER SEAL))(Braun, Robert) (Entered: 11/23/2021) |
| 11/23/2021 | 281 | SEALED REPLY by Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa to MOTION by Plaintiffs Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa to compel *Targeted Discovery from Defendant National Association of Realtors* 271 (Attachments: # 1 Exhibit B, # 2 Exhibit C, # 3 Exhibit F)(Braun, Robert) (Entered: 11/23/2021) |
| 11/23/2021 | 282 | MOTION by Plaintiffs Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa to seal document reply, 281 (Braun, Robert) (Entered: 11/23/2021) |
| 11/30/2021 | 283 | MINUTE entry before the Honorable Andrea R. Wood: Motion by counsel for leave to appear pro hac vice 274 is granted. Mailed notice (dal, ) (Entered: 11/30/2021) |

| | | |
|---|---|---|
| 11/30/2021 | 284 | MINUTE entry before the Honorable Andrea R. Wood: Plaintiffs' motion for leave to file memorandum of law with redactions 282 is granted. Plaintiffs are granted leave to file their reply memorandum in support of their motion to compel in redacted form with an unredacted copy to be filed under seal. Mailed notice (dal, ) (Entered: 11/30/2021) |
| 12/01/2021 | 286 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing held on 12/1/2021. Plaintiffs' counsel and counsel for Defendant NAR are directed to meet and confer regarding Plaintiffs' motion to compel 271 and, by 12/15/2021, file a joint status report setting forth (1) any remaining issues from the motion to compel that have not been resolved and require ruling, and (2) whether the parties believe that further opportunities to meet and confer could narrow the issues further. The Court confirms that a Rule 30(b)(6) deposition of a party entity counts as a single deposition towards the 10–deposition per Defendant family limit imposed by the Court's 9/22/2021 order 269 . By 2/1/2022, the parties shall file an updated joint status report setting forth: (1) the current status of discovery, including what progress has been made and whether the parties are aware of any discovery disputes that will require the Court's involvement; and (2) any other matters the parties feel it would be helpful to discuss with the Court at the telephonic status hearing. Telephonic status hearing set for 2/10/2022 at 9:00 AM. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call–in number is (888) 557–8511 and the access code is 3547847. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court–issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (dal, ) (Entered: 12/02/2021) |
| 12/02/2021 | 285 | TRANSCRIPT OF PROCEEDINGS held on December 1, 2021 before the Honorable Andrea R. Wood. Order Number: 42145. Court Reporter Contact Information: Brenda S. Tannehill, CSR, RPR, CRR, Official Court Reporter, brenda_tannehill@ilnd.uscourts.gov. <P>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.</P> Redaction Request due 12/23/2021. Redacted Transcript Deadline set for 1/3/2022. Release of Transcript Restriction set for 3/2/2022. (Tannehill, Brenda) (Entered: 12/02/2021) |
| 12/15/2021 | 287 | STATUS Report *on Behalf of Plaintiffs and NAR* by Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa (Braun, Robert) (Entered: 12/15/2021) |
| 01/26/2022 | 288 | ATTORNEY Appearance for Defendant The National Association of Realtors by Molly Lauren Wiltshire (Wiltshire, Molly) (Entered: 01/26/2022) |
| 01/26/2022 | 289 | ATTORNEY Appearance for Defendant The National Association of Realtors by Jacob K Danziger (Danziger, Jacob) (Entered: 01/26/2022) |
| 02/01/2022 | 290 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752–19111601. (Attachments: # 1 Exhibit)(Short, Floyd) (Entered: 02/01/2022) |
| 02/01/2022 | 291 | SEALED DOCUMENT by Plaintiffs Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa *Joint Status Report* (Attachments: # 1 Exhibit 1)(Braun, Robert) Docket text modified by the Clerk's Office on 2/2/2022 (dal, ). (Entered: 02/01/2022) |
| 02/01/2022 | 292 | STATUS Report *Joint Status Report* by Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa (Attachments: # 1 Exhibit 1)(Braun, Robert) (Entered: 02/01/2022) |
| 02/01/2022 | 293 | MOTION by Plaintiffs Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa to seal *Joint Status Report* (Braun, Robert) (Entered: |

| | | 02/01/2022) |
|---|---|---|
| 02/02/2022 | 294 | MINUTE entry before the Honorable Andrea R. Wood: Motion by counsel for leave to appear pro hac vice 290 is granted. Mailed notice (dal, ) (Entered: 02/02/2022) |
| 02/04/2022 | 295 | MOTION by Attorney Jeremy J. Gray to withdraw as attorney for Re/Max LLC. No party information provided (Hasdoo, Odeshoo) (Entered: 02/04/2022) |
| 02/08/2022 | 296 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752–19136928. (Enson, Eric) (Entered: 02/08/2022) |
| 02/10/2022 | 297 | MINUTE entry before the Honorable Andrea R. Wood: Defendant's request for removal from ECF service 295 is granted. The Clerk shall terminate the appearance of Attorney Jeremy John Gray. Motion by counsel for leave to appear pro hac vice 296 is granted. Mailed notice (dal, ) (Entered: 02/10/2022) |
| 02/10/2022 | 299 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing held on 2/10/2022. For the reasons stated on the record, in light of the parties' progress toward resolving the remaining issues without further Court involvement, Plaintiffs' motion to compel targeted discovery from Defendant National Association of Realtors 271 is terminated as pending. The Court sets the following page limits for briefing for Plaintiffs' motion for class certification. Plaintiffs' opening brief shall not exceed 45 pages. Defendants' response shall not exceed 75 pages. Plaintiffs' reply shall not exceed 40 pages. The parties are advised that any requests to modify the page limits or to file a surreply must be made in advance of the filing. The Court provided further guidance on speaking objections at depositions and the parties' effort to coordinate depositions with the related litigation. By 4/8/2022, the parties shall file a joint status report setting forth: (1) the current status of discovery, including what progress has been made since the previous report, whether the parties are aware of any discovery disputes that will require the Court's involvement, and whether the parties are aware of any reason why they will not be able to meet the current case schedule; (2) the parties' views regarding prospects for settlement and whether they request a referral to the magistrate judge for a settlement conference; and (3) what matters the parties feel it would be helpful to discuss with the Court at the telephonic status hearing. Telephonic status hearing set for 4/13/2022 at 10:30 AM. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call–in number is (888) 557–8511 and the access code is 3547847. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court–issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (dal, ) (Entered: 02/11/2022) |
| 02/11/2022 | 298 | TRANSCRIPT OF PROCEEDINGS held on February 10, 2022 before the Honorable Andrea R. Wood. Order Number: 42621. Court Reporter Contact Information: Brenda S. Tannehill, CSR, RPR, CRR, Official Court Reporter, brenda_tannehill@ilnd.uscourts.gov. <P>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.</P> Redaction Request due 3/4/2022. Redacted Transcript Deadline set for 3/14/2022. Release of Transcript Restriction set for 5/12/2022. (Tannehill, Brenda) (Entered: 02/11/2022) |
| 02/18/2022 | 300 | Joint Notice by Michael Cole, Steve Darnell, Christopher Moehrl, Valerie Nager, Jack Ramey, Jane Ruh, Daniel Umpa *re Third–Party Discovery* (Seltzer, Marc) (Entered: 02/18/2022) |
| 02/23/2022 | 301 | MOTION by Plaintiffs Michael Cole, Steve Darnell, Christopher Moehrl, Valerie Nager, Jack Ramey, Jane Ruh, Daniel Umpa to certify class *and appointment of class counsel* (Seltzer, Marc) (Entered: 02/23/2022) |

| | | |
|---|---|---|
| 02/24/2022 | 302 | SEALED DOCUMENT by Plaintiffs Michael Cole, Steve Darnell, Christopher Moehrl, Valerie Nager, Jack Ramey, Jane Ruh, Daniel Umpa *Memorandum of Law in Support of Plaintiffs' Motion for Class Certification and Appointment of Class Counsel* (Attachments: # 1 Declaration of Alexander W. Aiken, # 2 Exhibits 1–34, # 3 Exhibits 35–132, # 4 Class Representatives Declarations, # 5 REX Declarations, # 6 Economides Class Report, # 7 Elhauge Class Report)(Seltzer, Marc) (Entered: 02/24/2022) |
| 02/24/2022 | 303 | MOTION by Plaintiffs Michael Cole, Steve Darnell, Christopher Moehrl, Valerie Nager, Jack Ramey, Jane Ruh, Daniel Umpa to seal document sealed document, 302 (Seltzer, Marc) (Entered: 02/24/2022) |
| 02/28/2022 | 304 | MINUTE entry before the Honorable Andrea R. Wood: Plaintiff's unopposed motion to relate and reassign case Pursuant to Local Rule 40.4 249 is granted. Case number 1:21–cv–00430, *Leeder v. National Association of Realtors, et al*, will be forwarded to the Executive Committee for reassignment to Judge Wood. Mailed notice (dal, ) (Entered: 02/28/2022) |
| 03/02/2022 | 305 | SEALED EXHIBIT by Plaintiffs (Attachments: # 1 Document not imaged form) (bg, ) (Entered: 03/02/2022) |
| 03/09/2022 | 306 | SEALED DOCUMENT by Plaintiffs Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa *Corrected Memorandum of Law in Support of Plaintiffs' Motion for Class Certification and Appointment of Class Counsel* (Attachments: # 1 Corrected Memorandum of Law in Support (REDLINE), # 2 Declaration of Alexander W. Aiken, # 3 Exhibits 1–34, # 4 Exhibits 35–132, # 5 Class Representative Declarations, # 6 REX Declarations, # 7 Corrected Economides Class Report, # 8 Corrected Economides Class Report (Redline), # 9 Corrected Elhauge Class Report, # 10 Corrected Elhauge Class Report (Redline))(Seltzer, Marc) (Entered: 03/09/2022) |
| 03/09/2022 | 307 | MOTION by Plaintiffs Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa to seal document sealed document,, 306 (Seltzer, Marc) (Entered: 03/09/2022) |
| 03/18/2022 | 308 | NOTICE by Molly Lauren Wiltshire of Change of Address (Wiltshire, Molly) (Entered: 03/18/2022) |
| 04/08/2022 | 309 | STATUS Report *Joint Status Report* by Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa (Braun, Robert) (Entered: 04/08/2022) |
| 04/13/2022 | 310 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing held on 4/13/2022. The Court extends the dates in the scheduling order dated 11/22/2022 278 as follows: Defendants' response to Plaintiffs' class certification motion and Daubert motions directed to Plaintiffs' class certification experts shall be filed by 5/31/2022. Plaintiffs' replies in support of class certification and supporting rebuttal expert reports, responses to Defendants' Daubert motions regarding Plaintiffs' class certification experts, and Daubert motions regarding Defendants' class certification experts shall be filed by 8/22/2022. Defendants' replies in support of Daubert motions regarding Plaintiffs' class certification experts and responses to Plaintiffs' Daubert motions regarding Defendants' class certification experts shall be filed by 9/22/2022. Plaintiffs' replies in support of their Daubert motions regarding Defendants' class certification experts shall be filed by 10/24/2022. All other dates remain unchanged. By 4/20/2022, the parties shall file a short status report to advise the Court of any anticipated conflicts with the updated schedule; as stated at the hearing, the Court will not make any further adjustments to the schedule based on foreseeable conflicts. The Court extends the time permitted for expert depositions from seven to nine hours. The Court takes Plaintiffs' request for production of the class certification and Daubert filings in the Burnett litigation and the issue regarding third party deposition limits under advisement for ruling by written order. The parties shall file an updated joint status report by 6/16/2022. Telephonic status hearing set for 6/23/2022 at 10:30 AM. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call–in number is (888) 557–8511 and the access code is 3547847. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these |

| | | |
|---|---|---|
| | | prohibitions may result in sanctions, including removal of court–issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (dal, ) (Entered: 04/14/2022) |
| 04/21/2022 | 311 | TRANSCRIPT OF PROCEEDINGS held on April 13, 2022 before the Honorable Andrea R. Wood. Order Number: 43027. Court Reporter Contact Information: Brenda S. Tannehill, CSR, RMR, CRR, Official Court Reporter, brenda_tannehill@ilnd.uscourts.gov. <P>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.</P> Redaction Request due 5/12/2022. Redacted Transcript Deadline set for 5/23/2022. Release of Transcript Restriction set for 7/20/2022. (Tannehill, Brenda) (Entered: 04/21/2022) |
| 04/26/2022 | 312 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752–19377614. *1:19–cv–01610* (Purcell, John) (Entered: 04/26/2022) |
| 04/27/2022 | 313 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752–19383972. (Silverman, Daniel) (Entered: 04/27/2022) |
| 05/04/2022 | 314 | ATTORNEY Appearance for Defendant The National Association of Realtors by Ethan Charles Glass (Glass, Ethan) (Entered: 05/04/2022) |
| 05/10/2022 | 315 | NOTICE by Eddie Hasdoo of Change of Address (Hasdoo, Eddie) (Entered: 05/10/2022) |
| 05/11/2022 | 316 | ORDER Signed by the Honorable Andrea R. Wood on 5/11/2022: The parties have filed a joint status report 309 that, among other things, sets forth their positions on the maximum number of third–party depositions permitted to each side and the disclosure to Plaintiffs of briefs and exhibits filed in connection with the motion for class certification and Daubert motions in Burnett v. National Association of Realtors, 4:19–cv–00332 (W.D. Mo.). The Court will allow a maximum of 25 third–party depositions per side. Plaintiffs' 25 third–party deposition limit will include the opportunity to take Federal Rule of Civil Procedure 30(b)(6) depositions of 5 covered Multiple Listing Services. If, after completing their initial 5 depositions, Plaintiffs have a good faith argument regarding their need for additional Multiple Listing Service depositions, Plaintiffs will be permitted to seek leave to take additional depositions notwithstanding the 25 deposition limit. Further, the Court directs Defendants to submit by 5/18/2022 a supplemental submission explaining why the confidentiality order in Burnett does not allow disclosure of the requested briefs and exhibits to Plaintiffs' counsel. If Defendants decline to make such a submission, Defendants shall disclose to Plaintiffs the requested briefs and exhibits from Burnett by 5/25/2022. See the accompanying Statement for details. Mailed notice (aw,) (Entered: 05/11/2022) |
| 05/17/2022 | 317 | MINUTE entry before the Honorable Andrea R. Wood: Motions by counsel for leave to appear pro hac vice 312 and 313 are granted. Mailed notice (dal, ) (Entered: 05/17/2022) |
| 05/31/2022 | 318 | MOTION by Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., Keller Williams Realty, Inc., Re/Max LLC, Realogy Holdings Corp., The Long & Foster Companies, Inc., The National Association of Realtors for order *EXCLUDING EXPERTS ELHAUGE AND ECONOMIDES* (Macgill, Robert) (Entered: 05/31/2022) |
| 05/31/2022 | 319 | SEALED DOCUMENT by Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., Keller Williams Realty, Inc., Re/Max LLC, Realogy Holdings Corp., The Long & Foster Companies, Inc., The National Association of Realtors *MEMO IN SUPPORT OF MOTION TO EXCLUDE ELHAUGE AND ECONOMIDES* (Attachments: # 1 Declaration of Murray, # 2 Exhibit A – Article 16 Code Comp., # 3 Exhibit B – FTC Residential Real Estate Industry, # 4 Exhibit C – Excerpt from Elhauge 5/18, # 5 Exhibit D – Excerpt from Elhauge 5/19, # 6 Exhibit E – Elhauge Report, # 7 Exhibit F – Economides Report, # 8 Exhibit G – Excerpt from |

| | | |
|---|---|---|
| | | Ruh, # 9 Exhibit H – Excerpt from Moehrl, # 10 Exhibit I – Excerpt from Economides 5/20, # 11 Exhibit J – Excerpt from Economides 5/21, # 12 Exhibit K – Buying Agent, # 13 Exhibit L – Defendants' Expert Report, # 14 Exhibit M – Chawla Dec)(Macgill, Robert) (Entered: 05/31/2022) |
| 05/31/2022 | 320 | MOTION by Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., Keller Williams Realty, Inc., Re/Max LLC, Realogy Holdings Corp., The Long & Foster Companies, Inc., The National Association of Realtors to seal document sealed document,,, 319 *AND FOR PAGE LIMIT ENLARGEMENT, UNOPPOSED* (Attachments: # 1 Text of Proposed Order)(Macgill, Robert) (Entered: 05/31/2022) |
| 05/31/2022 | 321 | MOTION by Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., Keller Williams Realty, Inc., Re/Max Holdings, Inc., Re/Max LLC, Realogy Holdings Corp., The Long & Foster Companies, Inc., The National Association of Realtors for leave to file *Opposition to Class Certification Under Seal* (Bierig, Jack) (Entered: 05/31/2022) |
| 05/31/2022 | 322 | SEALED RESPONSE by BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., Keller Williams Realty, Inc., Re/Max Holdings, Inc., Re/Max LLC, Realogy Holdings Corp., The Long & Foster Companies, Inc., The National Association of Realtors to sealed document,, 306 *Opposition to Class Certification* (Attachments: # 1 Declaration Declaration of Counsel, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit, # 17 Exhibit, # 18 Exhibit, # 19 Exhibit, # 20 Exhibit, # 21 Exhibit, # 22 Exhibit, # 23 Exhibit, # 24 Exhibit, # 25 Exhibit, # 26 Exhibit, # 27 Exhibit, # 28 Exhibit, # 29 Exhibit, # 30 Exhibit, # 31 Exhibit, # 32 Exhibit, # 33 Exhibit, # 34 Exhibit, # 35 Exhibit, # 36 Exhibit, # 37 Exhibit, # 38 Exhibit, # 39 Exhibit, # 40 Exhibit, # 41 Exhibit, # 42 Exhibit, # 43 Exhibit, # 44 Exhibit, # 45 Exhibit, # 46 Exhibit, # 47 Exhibit, # 48 Exhibit, # 49 Exhibit, # 50 Exhibit, # 51 Exhibit, # 52 Exhibit, # 53 Exhibit)(Bierig, Jack) (Entered: 05/31/2022) |
| 06/01/2022 | 323 | SEALED DOCUMENT by Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., Keller Williams Realty, Inc., Re/Max Holdings, Inc., Re/Max LLC, Realogy Holdings Corp., The Long & Foster Companies, Inc., The National Association of Realtors *Corrected Dkt 322–50 (Exhibit 49)* (Bierig, Jack) (Entered: 06/01/2022) |
| 06/07/2022 | 324 | REDACTED CORRECTED MEMORANDUM in support of Plaintiffs' Motion for Class Certification and Appointment of Class Counsel 301 by Michael Cole, Steve Darnell, Christopher Moehrl, Valerie Nager, Jack Ramey, Jane Ruh, Daniel Umpa (Attachments: # 1 Declaration of A. Aiken, # 2 Exhibit 1–132, # 3 Declaration of Class Representatives, # 4 Declaration of REX, # 5 Redacted Corrected Economides Class Report, # 6 Redacted Corrected Elhauge Class Report)(Seltzer, Marc) (Entered: 06/07/2022) |
| 06/14/2022 | 325 | RESPONSE by BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., Keller Williams Realty, Inc., Re/Max Holdings, Inc., Re/Max LLC, Realogy Holdings Corp., The Long & Foster Companies, Inc., The National Association of Realtorsin Opposition to MOTION by Plaintiffs Michael Cole, Steve Darnell, Christopher Moehrl, Valerie Nager, Jack Ramey, Jane Ruh, Daniel Umpa to certify class *and appointment of class counsel* 301 (Attachments: # 1 Declaration Declaration of Counsel, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16, # 18 Exhibit 17, # 19 Exhibit 18, # 20 Exhibit 19, # 21 Exhibit 20, # 22 Exhibit 21, # 23 Exhibit 22, # 24 Exhibit 23, # 25 Exhibit 24, # 26 Exhibit 25, # 27 Exhibit 26, # 28 Exhibit 27, # 29 Exhibit 28, # 30 Exhibit 29, # 31 Exhibit 30, # 32 Exhibit 31, # 33 Exhibit 32, # 34 Exhibit 33, # 35 Exhibit 34, # 36 Exhibit 35, # 37 Exhibit 36, # 38 Exhibit 37, # 39 Exhibit 38, # 40 Exhibit 39, # 41 Exhibit 40, # 42 Exhibit 41, # 43 Exhibit 42, # 44 Exhibit 43, # 45 Exhibit 44, # 46 Exhibit 45, # 47 Exhibit 46, # 48 Exhibit 47, # 49 Exhibit 48, # 50 Exhibit 49, # 51 Exhibit 50, # 52 Exhibit 51, # 53 Exhibit 52)(Bierig, Jack) (Entered: 06/14/2022) |

| 06/14/2022 | 326 | MEMORANDUM by BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., Keller Williams Realty, Inc., Re/Max Holdings, Inc., Re/Max LLC, Realogy Holdings Corp., The Long & Foster Companies, Inc., The National Association of Realtors in support of motion for order, 318 (Attachments: # 1 Declaration of Counsel, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M)(Bierig, Jack) (Entered: 06/14/2022) |
|---|---|---|
| 06/16/2022 | 327 | STATUS Report *Joint Status Report* by Michael Cole, Steve Darnell, Christopher Moehrl, Valerie Nager, Jack Ramey, Daniel Umpa (Aiken, Alexander) (Entered: 06/16/2022) |
| 06/22/2022 | 328 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC−19583745. (Strauss, Samantha) (Entered: 06/22/2022) |
| 06/23/2022 | 329 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing held on 6/23/2022. The Court resolved the following discovery disputes set forth in the parties' joint status report for the reasons stated on the record. Defendants shall substantially complete their supplemental and refreshed document productions by 8/15/2022. By 6/30/2022, the parties shall meet and confer in an attempt to narrow the remaining disputes regarding the parameters of the supplemental and refreshed document production. Defendants shall produce their interrogatory responses and deposition transcripts and exhibits from the *Burnett* case. The production shall not count towards the limitations on interrogatories or depositions for Plaintiff as established by the Court's prior orders. Defendant National Association of Realtors shall produce the calendars of the five custodians who have been deposed. Plaintiff and NAR shall meet and confer with respect to any other disputes regarding the scope of the calendar production for those five custodians and the calendar production for the remaining fourteen custodians. By 7/7/2022, the parties shall file a joint status report setting forth: (1) the result of Plaintiff and NAR's meet and confer regarding the remaining calendar productions; (2) which, if any, issues remain unresolved regarding Defendants' supplemental and refreshed document production, including the parties' then−current understanding of the volume of documents to be produced; (3) any other issues the parties desire to discuss with the Court at a status hearing. Telephonic status hearing set for 7/28/2022 at 10:30 AM. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call−in number is (888) 557−8511 and the access code is 3547847. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court−issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (dal, ) (Entered: 06/24/2022) |
| 06/27/2022 | 330 | TRANSCRIPT OF PROCEEDINGS held on June 23, 2022 before the Honorable Andrea R. Wood. Order Number: 43545, 43542. Court Reporter Contact Information: Brenda S. Tannehill, CSR, RMR, CRR, brenda_tannehill@ilnd.uscourts.gov.

IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.

Redaction Request due 7/18/2022. Redacted Transcript Deadline set for 7/28/2022. Release of Transcript Restriction set for 9/26/2022. (Tannehill, Brenda) (Entered: 06/27/2022) |
| 06/29/2022 | 331 | MINUTE entry before the Honorable Andrea R. Wood: Motion by counsel for leave to appear pro hac vice 328 is granted. Mailed notice (dal, ) (Entered: 06/29/2022) |
| 07/07/2022 | 332 | NOTICE by Matthew Robert Berry of Change of Address (Berry, Matthew) (Entered: 07/07/2022) |

| | | |
|---|---|---|
| 07/07/2022 | 333 | NOTICE by Alexander Aiken of Change of Address (Aiken, Alexander) (Entered: 07/07/2022) |
| 07/07/2022 | 334 | NOTICE by Floyd Grady Short of Change of Address (Short, Floyd) (Entered: 07/07/2022) |
| 07/07/2022 | 335 | STATUS Report *on behalf of all Parties (Joint)* by Re/Max LLC (Hasdoo, Eddie) (Entered: 07/07/2022) |
| 07/18/2022 | 336 | MINUTE entry before the Honorable Andrea R. Wood: At the emailed request of the parties, the Court extends the time for Plaintiffs and Defendant National Association of Relators to submit a joint status report to 7/21/2022 setting forth the status of Plaintiffs and NAR's meet an confer regarding discovery disputes over certain NAR calendars. Mailed notice (dal, ) (Entered: 07/18/2022) |
| 07/21/2022 | 337 | STATUS Report *of Plaintiffs and NAR* by Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa (Braun, Robert) (Entered: 07/21/2022) |
| 07/26/2022 | 338 | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by Realogy Holdings Corp. *(Amended)* (Kliebard, Kenneth) (Entered: 07/26/2022) |
| 07/28/2022 | 339 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing held on 7/28/2022 and continued to 9/15/2022 at 10:30 AM. By 9/8/2022, the parties shall file a joint status report setting forth: (1) the current status of discovery, including what progress has been made, whether there are any disputes that may require the Court's involvement, and whether the parties anticipate meeting the current case schedule, and (2) any matters the parties wish to discuss with the Court at the next status hearing. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call–in number is (888) 557–8511 and the access code is 3547847. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court–issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (lma, ) (Entered: 08/01/2022) |
| 08/02/2022 | 340 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC–19705422. (Wright, Elizabeth) (Entered: 08/02/2022) |
| 08/03/2022 | 341 | MINUTE entry before the Honorable Andrea R. Wood: Motion by counsel for leave to appear pro hac vice 340 is granted. Mailed notice (dal, ) (Entered: 08/03/2022) |
| 08/03/2022 | 342 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC–19707693. (Mejia, Beatriz) (Entered: 08/03/2022) |
| 08/03/2022 | 343 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC–19707762. (Bansal, Deepti) (Entered: 08/03/2022) |
| 08/03/2022 | 344 | MINUTE entry before the Honorable Andrea R. Wood: Motions by counsel for leave to appear pro hac vice 342 and 343 are granted. Plaintiff's motion for leave to file joint status report with redactions 293 is granted. The Clerk shall maintain the document at docket entry 291 under seal until further order of the Court. Plaintiffs' motion for leave to file documents under seal and to file documents in native format 303 and Plaintiff's motion for leave to file documents under seal 307 are granted. The Clerk shall maintain the documents at docket entries 303 and 306 under seal until further order of the Court. The Clerk is directed to accept the USB Drives containing spreadsheets in native format for filing and shall maintain the drive under seal until further order of the Court (see docket entry 305 ). Mailed notice (dal, ) (Entered: 08/03/2022) |
| 08/22/2022 | 345 | SEALED REPLY by Michael Cole, Steve Darnell, Christopher Moehrl, Valerie Nager, Jack Ramey, Jane Ruh, Daniel Umpa to sealed response,,,, 322 (Attachments: # 1 Declaration of A. Aiken, # 2 Exhibits 133142, # 3 Elhauge Reply Class Report, # 4 Economides Reply Class Report)(Seltzer, Marc) (Entered: 08/22/2022) |
| 08/22/2022 | 346 | SEALED RESPONSE by Michael Cole, Steve Darnell, Christopher Moehrl, Valerie Nager, Jack Ramey, Jane Ruh, Daniel Umpa to sealed document,,, 319 (Attachments: |

| | | |
|---|---|---|
| | | # 1 Declaration of Steve W. Berman, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8)(Berman, Steve) (Entered: 08/22/2022) |
| 08/22/2022 | 347 | MOTION by Plaintiffs Michael Cole, Steve Darnell, Christopher Moehrl, Valerie Nager, Jack Ramey, Jane Ruh, Daniel Umpa to seal document sealed response, 346 (Berman, Steve) (Entered: 08/22/2022) |
| 08/22/2022 | 348 | MOTION by Plaintiffs Michael Cole, Steve Darnell, Christopher Moehrl, Valerie Nager, Jack Ramey, Jane Ruh, Daniel Umpa to seal document reply, 345 (Seltzer, Marc) (Entered: 08/22/2022) |
| 08/24/2022 | 349 | MINUTE entry before the Honorable Andrea R. Wood: Plaintiffs' motions for leave to file documents under seal 347 and 348 are granted. The Clerk shall maintain the documents at docket entries 345 and 346 under seal until further order of the Court. Plaintiffs shall file public, redacted versions of the sealed documents by 9/9/2022. Mailed notice (lma, ) (Entered: 08/24/2022) |
| 09/08/2022 | 350 | STATUS Report *Joint Status Report* by The National Association of Realtors (Glass, Ethan) (Entered: 09/08/2022) |
| 09/09/2022 | 351 | RESPONSE by Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpain Opposition to MOTION by Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., Keller Williams Realty, Inc., Re/Max LLC, Realogy Holdings Corp., The Long & Foster Companies, Inc., The National Association of Realtors for order *EXCLUDI 318 Plaintiffs' Opposition to Defendants' Motion to Exclude Expert Testimony of Professors Elhauge and Economides (Berman, Steve) (Entered: 09/09/2022)* |
| 09/09/2022 | 352 | REPLY by Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa to MOTION by Plaintiffs Michael Cole, Steve Darnell, Christopher Moehrl, Valerie Nager, Jack Ramey, Jane Ruh, Daniel Umpa to certify class *and appointment of class counsel 301 (REDACTED)* (Attachments: # 1 Declaration of A. Aiken, # 2 Exhibits 133 to 142, # 3 Elhauge Rebuttal Class Report Remains Under Seal, # 4 Economides Rebuttal Class Report Remains Under Seal)(Seltzer, Marc) (Entered: 09/09/2022) |
| 09/13/2022 | 353 | MOTION by Plaintiffs Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel UmpaCONSENT MOTION FOR ENTRY OF STIPULATION AND ORDER RE: DISCOVERY LIMITS PURSUANT TO FED. R. CIV. P. 26(f) (Attachments: # 1 Text of Proposed Order STIPULATION AND [PROPOSED] ORDER RE: DISCOVERY LIMITS PURSUANT TO FED. R. CIV. P. 26(f))(Braun, Robert) (Entered: 09/13/2022) |
| 09/15/2022 | 354 | MINUTE entry before the Honorable Andrea R. Wood: Status hearing held on 9/15/2022. Parties' motion for entry of stipulation and order re: discovery limits pursuant to Fed. R. Civ. P. 26(f) 353 is granted. Enter Order. The issues raised in the parties' joint status report concerning Defendants' request for supplemental depositions of Plaintiffs' experts are taken under advisement for ruling. Status report, including a schedule for competition of outstanding discovery and filing dispositive motions, shall be filed by 10/17/2022. Telephonic status hearing set for 10/24/2022 at 11:00 AM. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call–in number is (888) 557–8511 and the access code is 3547847. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court–issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (lxk, ) (Entered: 09/15/2022) |
| 09/19/2022 | 355 | TRANSCRIPT OF PROCEEDINGS held on September 15, 2022 before the Honorable Andrea R. Wood. Order Number: 44156. Court Reporter Contact Information: Brenda S. Tannehill, CSR, RMR, CRR, brenda_tannehill@ilnd.uscourts.gov. |

| | | |
|---|---|---|
| | | IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 10/10/2022. Redacted Transcript Deadline set for 10/20/2022. Release of Transcript Restriction set for 12/19/2022. (Tannehill, Brenda) (Entered: 09/19/2022) |
| 09/20/2022 | 356 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC−19858892. (Wojcik, Theodore) (Entered: 09/20/2022) |
| 09/22/2022 | 357 | MINUTE entry before the Honorable Andrea R. Wood: In light of Defendants' pending request for supplemental depositions of Plaintiffs' experts, Defendants' 9/22/2022 deadline to file their reply brief in support of their Daubert motion is stricken. The Court will reset the reply due date when it issues its order on Defendants' request for supplemental depositions. Mailed notice (lma, ) (Entered: 09/22/2022) |
| 09/26/2022 | 358 | MINUTE entry before the Honorable Andrea R. Wood: Motion to appear pro hac vice 356 is granted. Mailed notice (lma, ) (Entered: 09/26/2022) |
| 09/26/2022 | 359 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC−19877571. (Attachments: # 1 Attachment)(Cravens, William) (Entered: 09/26/2022) |
| 09/27/2022 | 360 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC−19879639. (McKenney, Dina) (Entered: 09/27/2022) |
| 09/27/2022 | 361 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC−19880187. (Ringhofer, William) (Entered: 09/27/2022) |
| 09/27/2022 | 362 | ORDER: As requested in the parties' 9/8/2022 joint status report 350 and discussed at the most recent status hearing on 9/15/2022, Defendants seek leave to conduct supplemental depositions of Plaintiffs' class certification experts regarding their rebuttal reports. That request is denied. As an initial matter, the Court notes that the current class certification schedule, which includes time for expert depositions after initial reports, does not contemplate an additional round of depositions after rebuttal reports. The Court finds that neither of Plaintiffs' experts' rebuttal reports contain arguments, analyses, or materials that are outside the realm of proper rebuttal such that they warrant a deviation from the existing class certification discovery plan. To the extent Defendants contend that either expert's rebuttal report is inconsistent with their initial report, Defendants may raise such inconsistencies in their Daubert reply brief. Moreover, the Court cannot discern how further deposition testimony from Plaintiffs' experts is necessary at this stage of the proceedingseither to allow Defendants to explore further Plaintiff's arguments for class certification or to support their own Daubert motions. Additional deposition testimony is particularly inappropriate given that Defendants have already had nine hours to depose each of Plaintiffs' experts, after requesting and receiving a two−hour extension of Federal Rule of Civil Procedure 30(d)(1)'s seven−hour limit. Defendants will have another opportunity to depose Plaintiffs' experts during merits expert discovery. If class certification is granted yet information subsequently comes to light during merits expert discovery that undermines the grounds for certification, Defendants have the option to move to decertify, or otherwise alter or amend, the class pursuant to Fed. R. Civ. 23(c)(1)(C). But at this stage, no further expert depositions will be permitted. Defendants' reply in support of Daubert motion shall be filed by 10/4/2022. Signed by the Honorable Andrea R. Wood on 9/27/2022. Mailed notice (aee, ) (Entered: 09/27/2022) |
| 09/28/2022 | 363 | MINUTE entry before the Honorable Andrea R. Wood: Motions to appear pro hac vice 359 , 360 , and 361 are granted. Mailed notice (lma, ) (Entered: 09/28/2022) |
| 09/30/2022 | 364 | MOTION by Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., The Long & Foster Companies, Inc. for extension of time to complete discovery (Macgill, Robert) (Entered: 09/30/2022) |

| 10/04/2022 | 365 | REPLY by Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., The Long & Foster Companies, Inc. to motion for order, 318 *TO EXCLUDE ELHAUGE AND ECONOMIDES* (Attachments: # 1 Murray Decl, # 2 Exhibit N – FTC, # 3 Exhibit O – Elhauge, # 4 Exhibit P – Tampa Bay, # 5 Exhibit Q – Chicago Trib, # 6 Exhibit R – St Petersberg)(Macgill, Robert) (Entered: 10/04/2022) |
|---|---|---|
| 10/04/2022 | 366 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC–19910527. (Jackson, Nicholas) (Entered: 10/04/2022) |
| 10/04/2022 | 367 | MOTION by Plaintiffs Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa for protective order *FORBIDDING DEFENDANTS' UNTIMELY THIRD–PARTY DOCUMENT REQUESTS AND OPPOSITION TO DEFENDANTS' MOTION TO EXCUSE THEIR VIOLATIONS OF THIS COURT'S DISCOVERY ORDERS (ECF 364)* (Attachments: # 1 Exhibit A (Bierig 9.8 Email), # 2 Exhibit B (REX Subpoena), # 3 Exhibit C (West Penn Multi–List Subpoena), # 4 Exhibit D (REBNY Subpoena), # 5 Exhibit E (ONEKEY Subpoena), # 6 Exhibit F (Brooklyn BoR Subpoena), # 7 Exhibit G (Brooklyn MLS Subpoena))(Braun, Robert) (Entered: 10/04/2022) |
| 10/06/2022 | 368 | MINUTE entry before the Honorable Andrea R. Wood: Motion to appear pro hac vice 366 is granted. Mailed notice (lma, ) (Entered: 10/06/2022) |
| 10/07/2022 | 369 | MINUTE entry before the Honorable Andrea R. Wood: Defendants have filed a motion for limited extension of fact discovery deadline to accommodate already–served subpoenas 364 , to which Plaintiffs have responded with their own motion for a protective order forbidding Defendants' untimely third–party document requests and opposition to Defendants' motion to excuse their violations of this Court's discovery orders 367 . The Court will permit Defendants to file a combined reply in further support of their motion for a limited extension of the fact discovery deadline and response to Plaintiff's motion for a protective order by 10/12/2022. That will be the extent of the briefing permitted for these motions. Plaintiffs shall not file a reply in further support of their motion unless the Court requests that they do so. The Court has set a compact briefing schedule so that this issue may be resolved with minimal disruption to the current schedule. With respect to Plaintiffs' request for "interim relief," the Court declines to prohibit Defendants from obtaining the documents sought through the document requests at issue; instead, Defendant shall segregate and maintain, without reviewing or using, any documents received in response to the document requests attached to the contested subpoenas prior to a ruling on the disputed issues. The disputed third–party depositions shall be held in abeyance and shall not proceed until directed by the Court. Mailed notice (aw,) (Entered: 10/07/2022) |
| 10/12/2022 | 370 | REPLY by Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., The Long & Foster Companies, Inc. to motion for extension of time to complete discovery 364 , motion for protective order,, 367 , text entry,,,,,, 369 (Attachments: # 1 Declaration of Murray)(Macgill, Robert) (Entered: 10/12/2022) |
| 10/18/2022 | 371 | Redacted Expert Class Certification Rebuttal Report of Professor Einer Elhauge dated August 22, 2022 by Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa (Pierce, Rio) (Entered: 10/18/2022) |
| 10/18/2022 | 372 | Redacted Expert Class Certification Rebuttal Report of Professor Einer Elhauge dated August 22, 2022 by Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa (Pierce, Rio) (Entered: 10/18/2022) |
| 10/19/2022 | 373 | STATUS Report *Joint Status Report* by Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa (Berman, Steve) (Entered: 10/19/2022) |
| 10/21/2022 | 374 | MOTION by Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., Keller Williams Realty, Inc., Re/Max LLC, Realogy Holdings Corp., The Long & Foster Companies, Inc., The National Association of Realtors for Evidentiary Hearing on Defendants' Motion to Exclude Expert Testimony of Elhauge and Economides (Kliebard, Kenneth) (Entered: 10/21/2022) |
| 10/21/2022 | 375 | MEMORANDUM by BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., Keller Williams Realty, Inc., Re/Max LLC, Realogy Holdings Corp., The Long & Foster Companies, Inc., The National Association of Realtors in support of motion for miscellaneous relief, 374 (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Kliebard, Kenneth) (Entered: 10/21/2022) |

| | | |
|---|---|---|
| 10/25/2022 | 376 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing held on 10/24/2022. For the reasons stated on the record, Defendants' motion for limited extension of fact discovery deadline to accommodate already–served subpoenas 364 is granted. Plaintiffs' motion for a protective order forbidding Defendants' untimely Third–Party document requests and opposition to Defendants motion to excuse their violations of this Court's discovery orders 367 is granted in part and denied in part. The Court extends the fact discovery deadline until 12/9/2022 to complete the outstanding depositions subject to the parties' agreement as well as to obtain discovery from the six third parties subject to Defendants' Rule 45 subpoenas. By 11/7/2022, Plaintiffs shall file a response to Defendants' joint motion for evidentiary hearing on Defendants' motion to exclude expert testimony of Elhauge and Economides 374 . No reply will be considered unless specifically requested by the Court. By 12/14/2022, the parties shall file a joint status report confirming all fact discovery has been completed. The Court sets the following expert discovery schedule: Plaintiffs shall serve their expert reports by 3/23/2023. Defendants shall serve their expert reports and rebuttal expert reports by 5/25/2023. Plaintiffs shall serve their rebuttal expert reports by 7/27/2023. All expert discovery shall be completed by 8/24/2023. Dispositive motions and any Daubert motions shall be due by 10/19/2023. The Court will issue a separate order detailing the dispositive motion and Daubert motion briefing schedule. Telephonic status hearing set for 12/21/2022 at 11:00 AM. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call–in number is (888) 557–8511 and the access code is 3547847. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court–issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (lma, ) (Entered: 10/25/2022) |
| 10/27/2022 | 377 | TRANSCRIPT OF PROCEEDINGS held on October 24, 2022 before the Honorable Andrea R. Wood. Order Number: 44419, 44422, 44427. Court Reporter Contact Information: Brenda S. Tannehill, CSR, RMR, CRR, brenda_tannehill@ilnd.uscourts.gov.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 11/17/2022. Redacted Transcript Deadline set for 11/28/2022. Release of Transcript Restriction set for 1/25/2023. (Tannehill, Brenda) (Entered: 10/27/2022) |
| 11/03/2022 | 378 | MOTION by Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., The Long & Foster Companies, Inc. for discovery *FOR LEAVE TO SERVE ONE DEPOSITION CROSS–SUBPOENA TO SECURE COMPLIANCE WITH DECEMBER 9, 2022 COURT DEADLINE* (Attachments: # 1 Exhibit A – 9/29 Email, # 2 Exhibit B – 10/5 Email, # 3 Exhibit C – 10/26 Email A, # 4 Exhibit D – 10/26 Email B, # 5 Exhibit E – 10/28 Email, # 6 Exhibit F – 10/30 Email A, # 7 Exhibit G – Intentionally Omitted, # 8 Exhibit H – 10/30 Email B, # 9 Exhibit I – 10/30 Email C, # 10 Exhibit J – 11/2 Email, # 11 Exhibit K – 11/3 Email A, # 12 Exhibit L – 11/3 Email B, # 13 Exhibit M – 10/30 Email D, # 14 Exhibit N – 10/24 Hearing Transcript Excerpts, # 15 Exhibit O – 9/15 Hearing Transcript Excerpts)(Macgill, Robert) (Entered: 11/03/2022) |
| 11/07/2022 | 379 | RESPONSE by Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpain Opposition to MOTION by Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., Keller Williams Realty, Inc., Re/Max LLC, Realogy Holdings Corp., The Long & Foster Companies, Inc., The National Association of Realtors for Evidentiary Heari 374 (Seltzer, Marc) (Entered: 11/07/2022) |

| | | |
|---|---|---|
| 11/11/2022 | 380 | MEMORANDUM by Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa in Opposition to motion for discovery,,, 378 (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F)(Braun, Robert) (Entered: 11/11/2022) |
| 11/23/2022 | 381 | MOTION by Plaintiffs Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa to seal *Plaintiffs' Motion to Compel and the accompanying exhibits and other materials filed in support* (Franklin, Beatrice) (Entered: 11/23/2022) |
| 11/23/2022 | 382 | SEALED MOTION by Plaintiffs Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa *Plaintiffs' Motion to Compel* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M)(Franklin, Beatrice) (Entered: 11/23/2022) |
| 11/23/2022 | 383 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC–20077025. (Sanders, Patrick) (Entered: 11/23/2022) |
| 11/29/2022 | 384 | MINUTE entry before the Honorable Andrea R. Wood: Motion to appear pro hac vice 383 is granted. Mailed notice (lma, ) (Entered: 11/29/2022) |
| 12/02/2022 | 385 | Redacted Motion to Compel by Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa (Attachments: # 1 Exhibit D, # 2 Exhibit E, # 3 Exhibit F, # 4 Exhibit G, # 5 Exhibit H, # 6 Exhibit I, # 7 Exhibit J, # 8 Exhibit K, # 9 Exhibit M)(Franklin, Beatrice) (Entered: 12/02/2022) |
| 12/05/2022 | 386 | SEALED RESPONSE by BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., The Long & Foster Companies, Inc. to SEALED MOTION by Plaintiffs Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa *Plaintiffs' Motion to Compel* 382 (Macgill, Robert) (Entered: 12/05/2022) |
| 12/05/2022 | 387 | MOTION by Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., The Long & Foster Companies, Inc. to seal document sealed response, 386 (Macgill, Robert) (Entered: 12/05/2022) |
| 12/09/2022 | 388 | MOTION by Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., The Long & Foster Companies, Inc. for extension of time to complete discovery (Macgill, Robert) (Entered: 12/09/2022) |
| 12/12/2022 | 389 | NOTICE by BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., The Long & Foster Companies, Inc. re sealed response, 386 *FILING OF REDACTED VERSION OF DOC. 386* (Macgill, Robert) (Entered: 12/12/2022) |
| 12/14/2022 | 390 | STATUS Report *Joint Status Report* by Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Berman, Steve) (Entered: 12/14/2022) |
| 12/20/2022 | 391 | MINUTE entry before the Honorable Andrea R. Wood: Defendants' motion for evidentiary hearing on Defendants' motion to exclude expert testimony of Elhauge and Economides 374 is denied. The Court concludes that it can resolve Defendants' Daubert motion based on the current record and the parties' briefs, and that an evidentiary hearing is unnecessary. Defendants' suggestion that this Court is required to conduct an evidentiary hearing as part of its Daubert analysis relies on a mischaracterization of the Seventh Circuit's holding in American Honda Motor Co. v. Allen, 600 F.3d 813 (7th Cir. 2010). American Honda simply holds that "when an expert's report or testimony is critical to class certification.... the district court must perform a full Daubert analysis before certifying the class." Id. at 815–16. However, it does not hold that an evidentiary hearing is required as part of the full Daubert analysis. Indeed, the Seventh Circuit has previously explained that it does "not require[] that the Daubert inquiry take any specific form" and recognized that Daubert motions can be decided without an evidentiary hearing. Kirstein v. Parks Corp., 159 F.3d 1065, 1067 (7th Cir. 1998). That is the case here. Accordingly, the Court has taken Defendants' Motion to Exclude Testimony of Elhauge and Economides 318 under advisement for ruling based on the briefing. Mailed notice (lma, ) (Entered: 12/20/2022) |

| | | |
|---|---|---|
| 12/21/2022 | 394 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing held on 12/21/2022. As discussed on the record, motions 320 , 321 , 381 , 387 and 388 are granted. Plaintiff's motion to compel 382 and the issues involving Plaintiffs' interrogatories to Defendants addressed in the parties' joint status report 390 are taken under advisement for separate ruling. The Court grants the HomeServices Defendants' motion for leave to serve one deposition cross–subpoena on Mr. Swanepoel 378 is granted. By 2/17/2023, the parties shall file a joint status report confirming all fact discovery has been completed and setting forth any other issues to be discussed at the status hearing. Telephonic status hearing is set for 2/28/2023 at 11:00 AM. Additionally, consistent with the discussions held on the record, the Court received a call from Mr. Swanepoel's counsel, Betty Levine, requesting a hearing on the deposition matter. Accordingly, a telephonic status hearing is set for 12/22/2022 at 2:00 PM. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call–in number is (888) 557–8511 and the access code is 3547847. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court–issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (lma, ) (Entered: 12/23/2022) |
| 12/22/2022 | 395 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing held on 12/22/2022. Attorney Betty Levine appeared as counsel for Third Party Deponent Swanepoel. For the reasons stated on the record, the deposition of Third Party Swanepoel shall proceed in person on 1/4/2023 in California. The Court declines to order the parties to coordinate Mr. Swanepoel's deposition in this case with his deposition in the similar action pending in the Western District of Missouri. Mailed notice (lma, ) (Entered: 12/23/2022) |
| 12/23/2022 | 392 | TRANSCRIPT OF PROCEEDINGS held on December 21, 2022 before the Honorable Andrea R. Wood. Order Number: 44864. Court Reporter Contact Information: Brenda S. Tannehill, CSR, RMR, CRR, brenda_tannehill@ilnd.uscourts.gov.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 1/13/2023. Redacted Transcript Deadline set for 1/23/2023. Release of Transcript Restriction set for 3/23/2023. (Tannehill, Brenda) (Entered: 12/23/2022) |
| 12/23/2022 | 393 | TRANSCRIPT OF PROCEEDINGS held on December 22, 2022 before the Honorable Andrea R. Wood. Order Number: 44875. Court Reporter Contact Information: Brenda S. Tannehill, CSR, RMR, CRR, brenda_tannehill@ilnd.uscourts.gov.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 1/13/2023. Redacted Transcript Deadline set for 1/23/2023. Release of Transcript Restriction set for 3/23/2023. (Tannehill, Brenda) (Entered: 12/23/2022) |
| 12/29/2022 | 396 | ANNUAL REMINDER: Pursuant to Local Rule 3.2 (Notification of Affiliates), any nongovernmental party, other than an individual or sole proprietorship, must file a statement identifying all its affiliates known to the party after diligent review or, if the party has identified no affiliates, then a statement reflecting that fact must be filed. An affiliate is defined as follows: any entity or individual owning, directly or indirectly |

| | | |
|---|---|---|
| | | (through ownership of one or more other entities), 5% or more of a party. The statement is to be electronically filed as a PDF in conjunction with entering the affiliates in CM/ECF as prompted. As a reminder to counsel, parties must supplement their statements of affiliates within thirty (30) days of any change in the information previously reported. This minute order is being issued to all counsel of record to remind counsel of their obligation to provide updated information as to additional affiliates if such updating is necessary. If counsel has any questions regarding this process, this LINK will provide additional information. Signed by the Executive Committee on 12/29/2022: Mailed notice. (tg, ) (Entered: 12/30/2022) |
| 01/13/2023 | 397 | MOTION by Attorney Daniel A. Small to withdraw as attorney for Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa. No party information provided (Small, Daniel) (Entered: 01/13/2023) |
| 01/17/2023 | 398 | MINUTE entry before the Honorable Andrea R. Wood: Motion by counsel to withdraw as attorney 397 is granted. Attorney Daniel A. Small is terminated as counsel of record. Mailed notice (lma, ) (Entered: 01/17/2023) |
| 02/17/2023 | 399 | STATUS Report *Joint Status Report on Behalf of All Parties* by The National Association of Realtors (Glass, Ethan) (Entered: 02/17/2023) |
| 02/28/2023 | 400 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing held on 2/28/2023 and continued to 5/2/2023 at 11:00 AM. By 4/25/2023, the parties shall file a joint status report confirming that expert discovery is on track and setting forth any matters to be discussed at the status hearing. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call–in number is (888) 557–8511 and the access code is 3547847. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court–issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (lma, ) (Entered: 03/02/2023) |
| 03/06/2023 | 401 | TRANSCRIPT OF PROCEEDINGS held on February 28, 2023 before the Honorable Andrea R. Wood. Order Number: 45325. Court Reporter Contact Information: Brenda S. Tannehill, CSR, RMR, CRR, brenda_tannehill@ilnd.uscourts.gov.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 3/27/2023. Redacted Transcript Deadline set for 4/6/2023. Release of Transcript Restriction set for 6/5/2023. (Tannehill, Brenda) (Entered: 03/06/2023) |
| 03/29/2023 | 402 | MINUTE entry before the Honorable Andrea R. Wood: For the reasons stated in the accompanying Memorandum Opinion and Order, Defendants' motion to exclude expert testimony of Elhauge and Economides 318 is denied, and Plaintiffs' motion for class certification and appointment of class counsel 301 is granted. The Court certifies the following class under Fed. R. Civ. P. 23(b)(3): "Home sellers who paid a commission between March 6, 2015, and December 31, 2020, to a brokerage affiliated with a Corporate Defendant in connection with the sale of residential real estate listed on a Covered MLS and in a covered jurisdiction. Excluded from the class are (i) sales of residential real estate for a price below $56,500, (ii) sales of residential real estate at auction, and (iii) employees, officers, and directors of defendants, the presiding Judge in this case, and the Judge's staff." In addition, the Court certifies the following class under Fed. R. Civ. P. 23(b)(2): "Current and future owners of residential real estate in the covered jurisdictions who are presently listing or will in the future list their home for sale on a Covered MLS. Excluded from the class are (i) sales of residential real estate for a price below $56,500, (ii) sales of residential real estate at auction, and (iii) employees, officers, and directors of defendants, the presiding Judge in this case, and |

| | | |
|---|---|---|
| | | the Judge's staff." The Court appoints Plaintiffs Christopher Moehrl, Michael Cole, Steve Darnell, Jack Ramey, Daniel Umpa, and Jane Ruh as class representatives and appoints Cohen Milstein Sellers & Toll PLLC, Hagens Berman Sobol Shapiro LLP, and Susman Godfrey LLP as co–lead class counsel. Mailed notice (lma, ) (Entered: 03/29/2023) |
| 03/29/2023 | 403 | MEMORANDUM Opinion and Order. Signed by the Honorable Andrea R. Wood on 3/29/2023. Mailed notice (lma, ) (Entered: 03/29/2023) |
| 04/07/2023 | 404 | DECLARATION of INDEX OF DECLARATIONS TO ARBITRATION (Attachments: # 1 Exhibit 2023–01 Omitted, # 2 Exhibit 2023–02 Fox and Roach, # 3 Exhibit 2023–03 Ebby, # 4 Exhibit 2023–04 Lovejoy, # 5 Exhibit 2023–05 Midwest, # 6 Exhibit 2023–06 Edina, # 7 Exhibit 2023–07 EWM, # 8 Exhibit 2023–08 Florida, # 9 Exhibit 2023–09 Long Realty, # 10 Exhibit 2023–10 Preferred Carolinas, # 11 Exhibit 2023–11 Omitted, # 12 Exhibit 2023–12 Long and Foster)(Ciulla, Matthew) (Entered: 04/07/2023) |
| 04/07/2023 | 405 | MOTION by Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., The Long & Foster Companies, Inc. to compel *ARBITRATION (AGREEMENTS WITH GATEWAY DELEGATION)* (Attachments: # 1 Appendix A – Gateway Agreements)(Macgill, Robert) (Entered: 04/07/2023) |
| 04/07/2023 | 406 | MOTION by Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., The Long & Foster Companies, Inc. to compel *ARBITRATION (LONG AND FOSTER)* (Macgill, Robert) (Entered: 04/07/2023) |
| 04/07/2023 | 407 | MOTION by Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., The Long & Foster Companies, Inc. to compel *ARBITRATION (NON–GATEWAY)* (Attachments: # 1 SCHEDULE A – NON–GATEWAY AGREEMENTS)(Macgill, Robert) (Entered: 04/07/2023) |
| 04/10/2023 | 408 | MINUTE entry before the Honorable Andrea R. Wood: The Court sets the following briefing schedule on Defendants HomeServices of America, Inc., BHH Affiliates, LLC, HSF Affiliates, LLC, and The Long & Foster Companies, Inc.'s motions to compel arbitration 405 , 406 and 407 . Plaintiffs shall file their responses to the motions to compel by 5/1/2023. Defendants HomeServices of America, Inc., BHH Affiliates, LLC, HSF Affiliates, LLC, and The Long & Foster Companies, Inc. shall file their replies by 5/15/2023. Mailed notice (lma, ) (Entered: 04/10/2023) |
| 04/14/2023 | 409 | MOTION by Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., Keller Williams Realty, Inc., Re/Max LLC, Realogy Holdings Corp., The Long & Foster Companies, Inc., The National Association of Realtors to compel *arbitration or, in the alternative, to stay proceedings pending arbitration* (LeVee, Jeffrey) (Entered: 04/14/2023) |
| 04/24/2023 | 410 | MOTION by Plaintiffs Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa for extension of time to file response/reply as to motion to compel 406 , motion to compel, 409 , motion to compel 407 , motion to compel, 405 (Attachments: # 1 Exhibit A– Email, # 2 Text of Proposed Order)(Franklin, Beatrice) (Entered: 04/24/2023) |
| 04/25/2023 | 411 | STATUS Report *(Joint)* by Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa (Braun, Robert) (Entered: 04/25/2023) |
| 04/25/2023 | 412 | MOTION by Plaintiffs Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa for protective order *REQUIRING CERTAIN HEALTH PRECAUTIONS FOR THE APRIL 27, 2023 DEPOSITION OF PROF. EINER ELHAUGE* (Attachments: # 1 Text of Proposed Order)(Braun, Robert) (Entered: 04/25/2023) |
| 04/26/2023 | 413 | MINUTE entry before the Honorable Andrea R. Wood: Plaintiffs' motion for protective order requiring certain health precautions for the April 27, 2023 deposition of Prof. Einer Elhauge 412 is set for a telephonic motion hearing on 4/26/2023 at 4:45 PM. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call–in number is (888) 557–8511 and the access code is 3547847. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted |

| | | |
|---|---|---|
| | | remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court–issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (lma, ) (Entered: 04/26/2023) |
| 04/26/2023 | 414 | MINUTE entry before the Honorable Andrea R. Wood: At the emailed request of the parties, motion hearing set for 4/26/2023 is stricken. Parties need not appear. Mailed notice (lma, ) (Entered: 04/26/2023) |
| 04/28/2023 | 415 | MINUTE entry before the Honorable Andrea R. Wood: Plaintiffs' partially opposed motion for extension of time to respond to Defendants' motions to compel 410 is granted. Plaintiffs shall file their responses to the motions to compel 405 , 406 , 407 , 409 by 5/8/2023. Defendants shall file their replies by 5/22/2023. Plaintiffs' motion for protective order requiring certain health precautions for the April 27, 2023 deposition of Prof. Einer Elhauge 412 is voluntarily withdrawn and terminated in light of the parties having resolved their dispute. Telephonic status hearing set for 5/2/2023 is stricken and reset to 5/30/2023 at 11:00 AM. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call–in number is (888) 557–8511 and the access code is 3547847. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court–issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (lma, ) (Entered: 04/28/2023) |
| 05/08/2023 | 416 | MEMORANDUM by Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa in Opposition to motion to compel 406 , motion to compel 407 , motion to compel, 405 (Attachments: # 1 Appendix A– Summary of Arbitration Clauses)(Franklin, Beatrice) (Entered: 05/08/2023) |
| 05/08/2023 | 417 | MEMORANDUM by Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa in Opposition to motion to compel, 409 (Franklin, Beatrice) (Entered: 05/08/2023) |
| 05/22/2023 | 418 | REPLY by Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., The Long & Foster Companies, Inc. to motion to compel, 405 *(GATEWAY AGREEMENTS)* (Attachments: # 1 Exhibit A – Part 1, # 2 Exhibit A – Part 2)(Macgill, Robert) (Entered: 05/22/2023) |
| 05/22/2023 | 419 | REPLY by Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., The Long & Foster Companies, Inc. to motion to compel 407 *(NON GATEWAY)* (Macgill, Robert) (Entered: 05/22/2023) |
| 05/22/2023 | 420 | REPLY by Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., The Long & Foster Companies, Inc. to motion to compel 406 *(LONG AND FOSTER)* (Macgill, Robert) (Entered: 05/22/2023) |
| 05/22/2023 | 421 | REPLY by Re/Max LLC to MOTION by Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., Keller Williams Realty, Inc., Re/Max LLC, Realogy Holdings Corp., The Long & Foster Companies, Inc., The National Association of Realtors to compel *arbitra 409 (LeVee, Jeffrey) (Entered: 05/22/2023)* |
| 05/24/2023 | 422 | ORDER dated 05/24/2023 from the 7th Circuit regarding notice of appeal ; Appellate case no. : 23–8010: The following are before the court: 1. CORRECTED PETITION FOR PERMISSION TO APPEAL CLASS CERTIFICATION DECISION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(F), April 14, 2023, by counsel for the petitioners. 2. PLAINTIFFS–RESPONDENTS' ANSWER TO DEFENDANTS–PETITIONERS' CORRECTED PETITION FOR PERMISSION TO APPEAL CLASS CERTIFICATION DECISION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(F), filed on April 24, 2023, by counsel for the respondents. 3. MOTION FOR LEAVE TO FILE REPLY IN SUPPORT OF PETITION FOR PERMISSION TO APPEAL CLASS CERTIFICATION DECISION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(f), filed on April 28, |

| | | |
|---|---|---|
| | | 2023, by counsel for the petitioners. IT IS ORDERED that the petition for permission to appeal is DENIED. (aee, ) (Entered: 05/25/2023) |
| 05/30/2023 | 423 | MOTION by Plaintiffs Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa for leave to file *a Sur–Reply in Further Opposition to the Homeservices Defendants' Motions to Compel Arbitration* <br><br> (Attachments: # 1 Exhibit A)(Franklin, Beatrice) (Entered: 05/30/2023) |
| 05/30/2023 | 424 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing held on 5/30/2023. As discussed on the record, the motions to compel arbitration 405 , 406 , 407 , and 409 have been taken under advisement for written ruling. Plaintiffs' motion for leave to file a sur–reply in further opposition to the HomeServices Defendants' motions to compel arbitration 423 is taken under advisement. By 6/9/2023, the parties shall meet, confer, and file a status report regarding the disputed interrogatory responses from the 12/14/2022 status report 390 discussed on the record. The parties' oral request to modify the current expert discovery schedule is granted. The Court modifies the following expert discovery schedule as follows: Defendants shall serve their expert reports and rebuttal expert reports by 6/1/2023. Plaintiffs shall serve their rebuttal expert reports by 8/10/2023. All expert discovery shall be completed by 9/1/2023. Dispositive motions and any Daubert motions are still due by 10/19/2023. Telephonic status hearing set for 8/2/2023 at 11:00 AM. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call–in number is (888) 557–8511 and the access code is 3547847. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court–issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (lma, ) (Entered: 05/30/2023) |
| 06/02/2023 | 425 | TRANSCRIPT OF PROCEEDINGS held on May 30, 2023 before the Honorable Andrea R. Wood. Order Number: 45988, 46000. Court Reporter Contact Information: Brenda S. Tannehill, CSR, RMR, brenda_tanehill@ilnd.uscourts.gov. <br><br> IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings. <br><br> Redaction Request due 6/23/2023. Redacted Transcript Deadline set for 7/3/2023. Release of Transcript Restriction set for 8/31/2023. (Tannehill, Brenda) (Entered: 06/02/2023) |
| 06/09/2023 | 426 | STATUS Report *JOINT STATUS REPORT* by Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa <br><br> (Attachments: # 1 Exhibit A)(Braun, Robert) (Entered: 06/09/2023) |
| 07/26/2023 | 427 | STATUS Report *Joint Status Report* by Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa <br><br> (Berman, Steve) (Entered: 07/26/2023) |
| 08/02/2023 | 429 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing held on 8/2/2023. Plaintiffs' motion to compel 382 is granted in part and denied in part. As stated on the record, Plaintiffs are granted leave to issue a targeted subpoena to third–party Alan Taylor for the purpose of determining the nature of the ethics complaint by Mr. Taylor discussed at his deposition. With respect to the Rule 30(b)(6) deposition of HomeServices of America, Inc., the Court denies the motion to compel additional deposition testimony as the requested testimony falls beyond the scope of the Rule 30(b)(6) notice and does not appear relevant to the claims and defenses in this litigation. The Court will, however, consider sanctions and/or remedial action in |

| | | |
|---|---|---|
| | | response to the instruction by counsel to the witness not to answer questions and takes that matter under advisement. As further stated on the record, the Court sets the following dispositive motion and Daubert motion briefing schedule. Defendants shall file their dispositive motions and any Daubert motions regarding Plaintiffs' experts by 10/19/2023. Plaintiffs shall file their dispositive motions, opposition to Defendants' dispositive motions, Daubert motions regarding Defendants experts; and oppositions to Defendants' Daubert motions on Plaintiffs' experts by 12/7/2023. Defendants shall file their replies in support of their dispositive motions, oppositions to Plaintiffs' dispositive motions, oppositions to Plaintiffs' Daubert motions regarding Defendants' experts, and replies in support their Daubert motions regarding Plaintiff's experts by 1/25/2024. Plaintiffs shall file their replies in support of their dispositive motions and replies in support of their Daubert motions regarding Defendants' experts by 2/22/2024. Plaintiffs' oral request to extend their deadline to serve their rebuttal expert reports is granted as unopposed. Plaintiffs shall serve their rebuttal expert reports by 8/17/2023. The expert discovery deadline of 9/1/2023 remains firm. By 8/18/2023, the parties shall file a joint status report setting forth: (1) a summary of the 8/4/2023 hearing in the related matter pending in the Western District of Missouri; and (2) whether the parties require any modifications to the briefing schedule for dispositive motions and Daubert motions as a result. Telephonic status hearing set for 9/12/2023 at 11:00 AM. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call−in number is (888) 557−8511 and the access code is 3547847. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to court proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court−issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (lma, ) (Entered: 08/03/2023) |
| 08/03/2023 | 428 | TRANSCRIPT OF PROCEEDINGS held on August 2, 2023 before the Honorable Andrea R. Wood. Order Number: 46487, 46490. Court Reporter Contact Information: Brenda S. Tannehill, CSR, RMR, CRR, brenda_tannehill@ilnd.uscourts.gov.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 8/24/2023. Redacted Transcript Deadline set for 9/4/2023. Release of Transcript Restriction set for 11/1/2023. (Tannehill, Brenda) (Entered: 08/03/2023) |
| 08/18/2023 | 430 | STATUS Report *on Behalf of All Parties (Joint Status Report)* by Re/Max LLC<br><br>(Hasdoo, Eddie) (Entered: 08/18/2023) |
| 08/25/2023 | 431 | MOTION by Attorney Leonardo Chingcuanco to withdraw as attorney for Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa. No party information provided<br><br>(Chingcuanco, Leonardo) (Entered: 08/25/2023) |
| 08/29/2023 | 432 | MINUTE entry before the Honorable Andrea R. Wood: Motion to withdraw as attorney 431 is granted. Attorney Leonardo Chingcuanco is terminated as counsel of record. Mailed notice (lma, ) (Entered: 08/29/2023) |
| 08/31/2023 | 433 | MOTION by Defendants BHH Affiliates, LLC, HomeServices of America, Inc., Keller Williams Realty, Inc., Re/Max LLC, Realogy Holdings Corp., The Long & Foster Companies, Inc., The National Association of Realtors for extension of time *[Joint Motion for Extension of Time to Complete Expert Discovery]*<br><br>(Kliebard, Kenneth) (Entered: 08/31/2023) |

| | | |
|---|---|---|
| 09/01/2023 | 434 | MEMORANDUM motion to compel 406 , motion to compel 407 , motion to compel, 405 by BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., The Long & Foster Companies, Inc. *BRIEF RE RECENT CA8 DECISION* (Attachments: # 1 Exhibit A – Pet for Reh'g En Banc)(Macgill, Robert) (Entered: 09/01/2023) |
| 09/01/2023 | 435 | SUPPLEMENT to motion to compel 406 , motion to compel, 409 , motion to compel 407 , motion to compel, 405 *PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL ARBITRATION REGARDING THE EIGHTH CIRCUIT'S DECISION IN BURNETT V. NATIONAL ASSOCIATION OF REALTORS* (Attachments: # 1 Declaration Floyd Short, # 2 Exhibit 1)(Braun, Robert) (Entered: 09/01/2023) |
| 09/05/2023 | 436 | Notice of Pending Settlement and Joint Motion to Stay Case as to Realogy Holdings Corp. by Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa (Berman, Steve) (Entered: 09/05/2023) |
| 09/11/2023 | 437 | STATUS Report *PLAINTIFFS' SUPPLEMENT TO THE PARTIES' AUGUST 18, 2023 JOINT STATUS REPORT* by Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa<br><br>(Braun, Robert) (Entered: 09/11/2023) |
| 09/12/2023 | 438 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing held on 9/12/2023. For the reasons stated on the record, the Court modifies the dispositive motion and Daubert motion briefing schedule as follows. Defendants shall file their dispositive motions and any Daubert motions regarding Plaintiffs' experts by 12/19/2023. Plaintiffs shall file their dispositive motions, opposition to Defendants' dispositive motions, Daubert motions regarding Defendants experts, and oppositions to Defendants' Daubert motions on Plaintiffs' experts by 2/14/2023. Defendants shall file their replies in support of their dispositive motions, oppositions to Plaintiffs' dispositive motions, oppositions to Plaintiffs' Daubert motions regarding Defendants' experts, and replies in support their Daubert motions regarding Plaintiff's experts by 4/1/2024. Plaintiffs shall file their replies in support of their dispositive motions and replies in support of their Daubert motions regarding Defendants' experts by 4/29/2024. Additionally, the parties' joint motion for extension of time to complete expert discovery 433 is granted; the expert discovery deadline is extended until 9/29/2023. In light of the notice of settlement 436 , the joint motion to stay case as to Realogy Holdings Corp. is granted. By 11/20/2023, the parties shall file a joint status report that includes a status update on the proposed class settlement involving Realogy Holdings Corp. Telephonic status hearing set for 11/29/2023 at 11:00 AM. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call–in number is (888) 557–8511 and the access code is 3547847. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court–issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (lma, ) (Entered: 09/13/2023) |
| 09/18/2023 | 439 | TRANSCRIPT OF PROCEEDINGS held on September 12, 2023 before the Honorable Andrea R. Wood. Order Number: 46880. Court Reporter Contact Information: Brenda S. Tannehill, CSR, RMR, CRR, brenda_tannehill@ilnd.uscourts.gov.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 10/9/2023. Redacted Transcript Deadline set for 10/19/2023. Release of Transcript Restriction set for 12/18/2023. (Tannehill, Brenda) (Entered: 09/18/2023) |

| | | |
|---|---|---|
| 09/18/2023 | <u>440</u> | Notice of Pending Settlement and Joint Motion to Stay Case as to RE/MAX LLC by Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa (Berman, Steve) (Entered: 09/18/2023) |
| 11/20/2023 | <u>441</u> | STATUS Report *Joint Status Report* by Michael Cole, Steve Darnell, Christopher Moehrl, Jack Ramey, Jane Ruh, Daniel Umpa<br><br>(Attachments: # <u>1</u> Exhibit 1, # <u>2</u> Exhibit 2, # <u>3</u> Exhibit 3)(Braun, Robert) (Entered: 11/20/2023) |
| 11/29/2023 | <u>443</u> | MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing held on 11/29/2023. As discussed on the record, the Court confirms that the current dispositive motion and Daubert motion briefing schedule will not apply to those defendants who have pending settlements. Otherwise, the previously set schedule stands. By 1/22/2024, the parties shall file a joint status report setting forth: (1) confirmation that the parties are on track with the current dispositive motion and Daubert motion briefing schedule; (2) the parties' best estimate for the length of the jury trial in this matter, including the number of trial days needed for testimony (assuming 5 hours per regular weekday); and (3) any other matters the parties would like to discuss with the Court at a status hearing. Telephonic status hearing set for 1/31/2024 at 11:00 AM. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call−in number is (888) 557−8511 and the access code is 3547847. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court−issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (lma, ) (Entered: 12/06/2023) |
| 12/01/2023 | <u>442</u> | TRANSCRIPT OF PROCEEDINGS held on November 29, 2023 before the Honorable Andrea R. Wood. Order Number: 47447, 47454. Court Reporter Contact Information: Brenda S. Tannehill, CSR, RMR, CRR, brenda_tannehill@ilnd.uscourts.gov.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 12/22/2023. Redacted Transcript Deadline set for 1/1/2024. Release of Transcript Restriction set for 2/29/2024. (Tannehill, Brenda) (Entered: 12/01/2023) |
| 12/18/2023 | <u>444</u> | MOTION by Defendant The National Association of Realtors for leave to file excess pages *[Joint Motion For Leave To File Briefs In Excess of 15 Pages Relating to Dispositive and Daubert Motions]*<br><br>(Glass, Ethan) (Entered: 12/18/2023) |
| 12/19/2023 | <u>445</u> | MINUTE entry before the Honorable Andrea R. Wood: The parties' joint motion for leave to file briefs in excess of 15 pages relating to dispositive and Daubert motions <u>444</u> is granted. Mailed notice (lma, ) (Entered: 12/19/2023) |
| 12/19/2023 | <u>446</u> | MOTION by Defendant Keller Williams Realty, Inc. to seal document *For Leave to File Certain Exhibits In Support of Their Motion for Summary Judgment Under Seal*<br><br>(Ray, Timothy) (Entered: 12/19/2023) |
| 12/19/2023 | <u>447</u> | MOTION by Defendant Keller Williams Realty, Inc. for summary judgment<br><br>(Ray, Timothy) (Entered: 12/19/2023) |

| 12/19/2023 | 448 | MEMORANDUM *Keller Williams' Memorandum Of Law In Support Of Motion For Summary Judgment* (Ray, Timothy) (Entered: 12/19/2023) |
|---|---|---|
| 12/19/2023 | 449 | STATEMENT by Defendant Keller Williams Realty, Inc.in Support of MOTION by Defendant Keller Williams Realty, Inc. for summary judgment<br><br>447 *Keller Willaims' Statement of Material Facts In Support of Motion For Summary Judgment* (Attachments: # 1 Declaration Of Timothy Ray, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit O, # 17 Exhibit P, # 18 Exhibit Q, # 19 Exhibit R, # 20 Exhibit S, # 21 Exhibit T, # 22 Exhibit U, # 23 Exhibit V, # 24 Exhibit W, # 25 Exhibit X–Public, # 26 Exhibit Y–Public)(Ray, Timothy) (Entered: 12/19/2023) |
| 12/19/2023 | 450 | SEALED EXHIBIT by Defendant Keller Williams Realty, Inc. *Exhibit X – Under Seal* regarding statement in support,,, 449 (Ray, Timothy) (Entered: 12/19/2023) |
| 12/19/2023 | 451 | SEALED EXHIBIT by Defendant Keller Williams Realty, Inc. *Exhibit Y – Under Seal* regarding statement in support,,, 449 (Ray, Timothy) (Entered: 12/19/2023) |
| 12/19/2023 | 452 | MOTION by Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., Keller Williams Realty, Inc., The Long & Foster Companies, Inc., The National Association of Realtors for order *EXCLUDING EXPERT TESTIMONY OF ELHAUGE AND ECONOMIDES*<br><br>(Macgill, Robert) (Entered: 12/19/2023) |
| 12/19/2023 | 453 | MOTION by Defendant The National Association of Realtors for leave to file *under seal*<br><br>(Glass, Ethan) (Entered: 12/19/2023) |
| 12/19/2023 | 454 | SEALED DOCUMENT by Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., Keller Williams Realty, Inc., The Long & Foster Companies, Inc., The National Association of Realtors (Attachments: # 1 Exhibit Murray Declaration, # 2 Exhibit Exhibit A – Elhauge Merits Rep., # 3 Exhibit Exhibit B – Elhauge Dep. Excerpt (4/27), # 4 Exhibit Exhibit C – Elhauge Dep. Excerpt (8/25), # 5 Exhibit Exhibit D – Economides Merits Rep., # 6 Exhibit E – Economides Dep. Excerpts (5/5), # 7 Exhibit Exhibit F – Economides Dep. Excerpts (8/25), # 8 Exhibit Exhibit G – Stiroh Rep., # 9 Exhibit Exhibit H – Stevens Rep., # 10 Exhibit Exhibit I – Wu Rep., # 11 Exhibit Exhibit J – Economides Merits Rebuttal Rep., # 12 Exhibit Exhibit K – REBNY RLS Data, # 13 Exhibit Exhibit L – Stiroh Errata Exhibit, # 14 Exhibit Exhibit M – Schulhoff Dep. Excerpts, # 15 Exhibit Exhibit N – Green Dep. Excerpts, # 16 Exhibit Exhibit O – Moehrl Listing Agreement, # 17 Exhibit Exhibit P – Cole Listing Agreement, # 18 Exhibit Exhibit Q – Constitution and Bylaws of Brooklyn MLS, # 19 Exhibit Exhibit R – James Dep. Excerpts, # 20 Exhibit Exhibit S – Economides Class Cert. Rebuttal Rep.) 452 (Macgill, Robert) Modified on 12/20/2023 (aee, ). (Entered: 12/19/2023) |
| 12/19/2023 | 455 | MOTION by Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., Keller Williams Realty, Inc., The Long & Foster Companies, Inc., The National Association of Realtors to seal *Document 454*<br><br>(Macgill, Robert) Modified on 12/20/2023 (aee, ). (Entered: 12/19/2023) |
| 12/19/2023 | 456 | MOTION by Defendant The National Association of Realtors for summary judgment<br><br>(Glass, Ethan) (Entered: 12/19/2023) |
| 12/19/2023 | 457 | MEMORANDUM by The National Association of Realtors in support of motion for summary judgment 456 (Glass, Ethan) (Entered: 12/19/2023) |
| 12/19/2023 | 458 | MOTION by Defendants BHH Affiliates, LLC, The Long & Foster Companies, Inc., HSF Affiliates, LLC, HomeServices of America, Inc. for summary judgment<br><br>(Macgill, Robert) (Entered: 12/19/2023) |

| | | |
|---|---|---|
| 12/19/2023 | 459 | MEMORANDUM by BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., The Long & Foster Companies, Inc. in support of motion for summary judgment 458 (Macgill, Robert) (Entered: 12/19/2023) |
| 12/19/2023 | 460 | RULE 56 a Statement by BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., The Long & Foster Companies, Inc. regarding motion for summary judgment 458 (Macgill, Robert) (Entered: 12/19/2023) |
| 12/19/2023 | 461 | RULE 56 (c)(1) Statement by The National Association of Realtors regarding motion for summary judgment 456 (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20 (File Under Seal Cover Sheet), # 21 Exhibit 21 (File Under Seal Cover Sheet), # 22 Exhibit 22 (File Under Seal Cover Sheet), # 23 Exhibit 23 (File Under Seal Cover Sheet), # 24 Exhibit 24 (File Under Seal Cover Sheet), # 25 Exhibit 25 (File Under Seal Cover Sheet), # 26 Exhibit 26 (File Under Seal Cover Sheet), # 27 Exhibit 27 (File Under Seal Cover Sheet), # 28 Exhibit 28 (File Under Seal Cover Sheet), # 29 Exhibit 29 (File Under Seal Cover Sheet), # 30 Exhibit 30 (File Under Seal Cover Sheet), # 31 Exhibit 31 (File Under Seal Cover Sheet), # 32 Exhibit 32 (File Under Seal Cover Sheet), # 33 Exhibit 33 (File Under Seal Cover Sheet), # 34 Exhibit 34 (File Under Seal Cover Sheet), # 35 Exhibit 35, # 36 Exhibit 36, # 37 Exhibit 37, # 38 Exhibit 38, # 39 Exhibit 39)(Glass, Ethan) (Entered: 12/19/2023) |
| 12/19/2023 | 462 | SEALED DOCUMENT by Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., The Long & Foster Companies, Inc. *SEALED STATEMENT OF FACTS re Document 458 , 460* (Macgill, Robert) Modified on 12/20/2023 (aee, ). (Entered: 12/19/2023) |
| 12/19/2023 | 463 | SEALED DOCUMENT by Defendant The National Association of Realtors *MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT* (Glass, Ethan) (Entered: 12/19/2023) |
| 12/19/2023 | 464 | AFFIDAVIT by Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., The Long & Foster Companies, Inc. in Support of MOTION by Defendants BHH Affiliates, LLC, The Long & Foster Companies, Inc., HSF Affiliates, LLC, HomeServices of America, Inc. for summary judgment 458 (Attachments: # 1 A, # 2 B, # 3 C, # 4 D, # 5 E, # 6 F, # 7 G, # 8 H, # 9 I, # 10 J, # 11 K, # 12 L, # 13 M, # 14 N, # 15 O, # 16 P, # 17 Q, # 18 R, # 19 S, # 20 T, # 21 U, # 22 V, # 23 W, # 24 X, # 25 Y, # 26 Z, # 27 AA, # 28 BB, # 29 CC, # 30 DD, # 31 EE, # 32 FF, # 33 GG, # 34 HH, # 35 II)(Macgill, Robert) (Entered: 12/19/2023) |
| 12/19/2023 | 465 | SEALED DOCUMENT by Defendant The National Association of Realtors *LOCAL RULE 56.1(a)(2) STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT* (Attachments: # 1 Exhibits 20–34)(Glass, Ethan) (Entered: 12/19/2023) |
| 12/19/2023 | 466 | SEALED DOCUMENT by Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., The Long & Foster Companies, Inc. *SEALED VERSIONS OF CERTAIN EXHIBITS TO KEAS DECLARATION IN SUPPORT OF HSDS MSJ, RE DOCUMENTS 458 , 464* (Attachments: # 1 Exhibit 2, # 2 J, # 3 N, # 4 Q, # 5 R, # 6 T Part 1, # 7 T Part 2, # 8 T Part 3, # 9 U, # 10 V, # 11 BB, # 12 CC, # 13 DD, # 14 EE, # 15 FF)(Macgill, Robert) Modified on 12/20/2023 (aee, ). (Entered: 12/19/2023) |
| 12/19/2023 | 467 | MOTION by Defendants BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., The Long & Foster Companies, Inc. to seal 462 , 466 (Macgill, Robert) Modified on 12/20/2023 (aee, ). (Entered: 12/19/2023) |
| 12/28/2023 | 468 | ANNUAL REMINDER: Pursuant to Local Rule 3.2 (Notification of Affiliates), any nongovernmental party, other than an individual or sole proprietorship, must file a statement identifying all its affiliates known to the party after diligent review or, if the party has identified no affiliates, then a statement reflecting that fact must be filed. An affiliate is defined as follows: any entity or individual owning, directly or indirectly (through ownership of one or more other entities), 5% or more of a party. The |

statement is to be electronically filed as a PDF in conjunction with entering the affiliates in CM/ECF as prompted. As a reminder to counsel, parties must supplement their statements of affiliates within thirty (30) days of any change in the information previously reported. This minute order is being issued to all counsel of record to remind counsel of their obligation to provide updated information as to additional affiliates if such updating is necessary. If counsel has any questions regarding this process, this LINK will provide additional information. Signed by the Executive Committee on 12/28/2023: Mailed notice. (tg, ) (Entered: 12/28/2023)

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CHRISTOPHER MOEHRL, MICHAEL                  )
COLE, STEVE DARNELL, VALERIE                 )
NAGER, JACK RAMEY, SAWBILL                   )     Civil Action No.: 1:19-cv-01610 and
STRATEGIC, INC., DANIEL UMPA, and            )     Civil Action No.: 1:19-cv--2544
JANE RUH, on behalf of themselves and        )
all others similarly situated,               )     **CLASS ACTION**
                                             )
                                             )     JURY TRIAL DEMANDED
             Plaintiffs,                      )
                                                   HON. ANDREA R. WOOD
       v.

THE NATIONAL ASSOCIATION OF
REALTORS, REALOGY HOLDINGS CORP.,
HOMESERVICES OF AMERICA, INC., BHH
AFFILIATES, LLC, HSF AFFILIATES, LLC,
THE LONG & FOSTER COMPANIES, INC.,
RE/MAX LLC, and KELLER WILLIAMS
REALTY, INC.

             Defendants.


THIS DOCUMENT RELATES TO ALL
ACTIONS


## CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    JURISDICTION AND VENUE ...........................................................................12

III.   TRADE AND COMMERCE...............................................................................12

IV.   THE PARTIES ....................................................................................................13
     A.    Plaintiff .....................................................................................................13
     B.    Defendants ...............................................................................................15
     C.    Co-Conspirators.......................................................................................16

V.    BACKGROUND ON THE REAL ESTATE INDUSTRY .....................................17

VI.   THE ANTI-COMPETITIVE AGREEMENT WITH NAR. .....................................20

VII.  NAR HAS REQUIRED LOCAL ASSOCIATIONS TO AGREE TO THESE ANTI-
     COMPETITIVE RESTRAINTS............................................................................41

VIII. CORPORATE DEFENDANTS PARTICIPATE IN, FACILITATE, AND
     IMPLEMENT THE CONSPIRACY .....................................................................43

IX.   EFFECTS OF THE CONSPIRACY......................................................................53

X.    MARKET POWER...............................................................................................59

XI.   CONTINUOUS ACCRUAL ................................................................................62

XII.  CLASS ACTION ALLEGATIONS .......................................................................62

XIII. CLAIM FOR RELIEF ..........................................................................................64

XIV. REQUESTED RELIEF..........................................................................................66

## I.    INTRODUCTION

1.    Plaintiffs, home sellers who listed their homes on one of twenty Multiple Listing Services (identified below), bring this action against the National Association of Realtors ("NAR") and the four largest national real estate brokers in the United States (collectively, "Corporate Defendants") for agreeing, combining and conspiring to impose, implement and enforce anticompetitive restraints that cause home sellers to pay inflated commissions on the sale of their homes, in violation of federal antitrust law.  Defendants' unlawful conduct is also the subject of an active investigation by the Antitrust Division of the United States Department of Justice, which is examining practices in the residential real estate brokerage business, with a focus on compensation paid to brokers, as well as other conduct.

2.    NAR, the Corporate Defendants and their co-conspirators collectively possess market power in local markets for real estate brokerage services through their control of the local Multiple Listing Services ("MLSs").  An MLS is a database of properties listed for sale in a particular geographic region and the marketplace on which the vast majority of homes in the United States are sold.  Brokers must list a property for sale to effectively market that property to prospective buyers, and in any event, are required to list all properties on the MLS if they are members of the MLS.  All MLSs at issue in this case are controlled by local NAR associations, and access to such MLSs is conditioned on brokers' agreement to follow all mandatory rules set forth in NAR's Handbook on Multiple Listing Policy, including the rules at issue here.

3.    Pursuant to Defendants' conspiracy, NAR allows brokers representing home sellers and home buyers to use NAR's MLSs only if those brokers agree to adhere

1

to and help implement terms that significantly restrain competition.  Specifically, NAR and its co-conspirators require *every* seller's broker (the "seller-broker"), when listing a property on a Multiple Listing Service, to make a "*blanket unilateral offer[] of compensation*" to any broker who may find a buyer for the home (the "buyer-broker").  This requirement, and related terms implementing the requirement, are set forth at pages 34-35 of NAR's Handbook on Multiple Listing Policy and is hereafter referred to as the Buyer Broker Commission Rule or "the Rule".

4.      Defendants' implementation of and adherence to this agreement is manifestly anticompetitive:

- The Rule compels the seller to make an offer of payment to compensate the buyer-broker even though the buyer-broker is working on behalf of the buyer, not the seller.

- It requires that this be a blanket offer – i.e., the exact same compensation terms must be simultaneously offered to every buyer-broker without regard to their experience, the services they are providing to the buyer, or the financial arrangement they have made with the buyer.

- Because this blanket offer must be made available to every buyer-broker using the MLS (i.e., virtually all buyer-brokers) and can be compared by the buyer-broker with the blanket offers that every other seller must post on the MLS, *the Rule creates tremendous pressure on sellers to offer a high commission that has long been*

2

*maintained in this industry* so that buyer-brokers will not "steer"

buyers to properties offering higher buyer-broker commissions.

- The Rule *encourages and facilitates anticompetitive "steering"* by

  buyer-brokers because it allows them to compare the terms offered

  for buyer-broker compensation and steer their clients to properties

  where the seller-broker is offering higher commissions. (The

  prevalence of such steering, including its anticompetitive impact

  on consumers and exclusionary impact on brokers trying to

  compete with alternative, lower-cost models, is widely recognized

  in the economic literature).

- These effects are magnified by the Rule's requirement that the

  offer of compensation be expressed as a percentage of the gross

  selling price of the home or a definite dollar amount and the

  Rule's prohibition on "general invitations by listing [i.e., seller]

  brokers to other participants to discuss terms and conditions of

  possible cooperative relationships."

- The anticompetitive effects are further magnified by NAR's rules

  providing that after the seller has received purchase offers, the

  seller-broker is prohibited from attempting to unilaterally modify

  the buyer-broker commission that was offered on the MLS. NAR

  Standard of Practice 3-2 states: "Any change in compensation

  offered for cooperative services must be communicated to the

  other REALTOR® prior to the time that REALTOR® submits an

3

offer to purchase/lease the property. After a REALTOR® has submitted an offer to purchase or lease property, the listing broker may not attempt to unilaterally modify the offered compensation with respect to that cooperative transaction." As a result, a seller cannot respond to a purchase offer with a counteroffer that is conditional on reducing the buyer-broker commission. Nor can the seller, after receiving purchase offers, decide to unilaterally reduce or eliminate the buyer broker commission offered on the MLS.

- The anticompetitive effects are compounded by the fact that buyer-brokers and their clients have access to very different information from the MLS: The Buyer-brokers are able to learn the amount of the commission buyer-brokers can receive for every available property, but this information is not available to their clients. Thus, homebuyers are unlikely to know whether their brokers are only showing them properties where they will be paid the highest commission amounts. (The obfuscation of this reality for buyers is made even worse by NAR's ethical rule expressly permitting buyer-brokers to represent to buyers that their services are "free" for the buyer).

5.     There is no pro-competitive justification for this agreement and, to the contrary, the agreement's purpose and effect is to restrain competition. As one industry participant has acknowledged, "[i]t does not make sense for listing brokers to pay

4

buyers' brokers for the services the latter provide to buyers. This is a bit like the lawyers working for one side in a transaction paying the lawyers working for the other side."[1] Stephen Brobeck, the Executive Director of the Consumer Federation of America has testified that "[i]n a rational price system, home sellers and buyers would each pay for real estate brokerage services they receive."[2] "The simple fact is that, for decades, the dominant real estate firms and their trade association have tried, with much success, to maintain high, uniform prices within different geographic areas."[3]

6.   Each of the Corporate Defendants plays an active role in NAR and has *required* franchisees, brokerages and individual realtors to join and implement this anticompetitive agreement in order to secure the benefit of each Corporate Defendant's brand, brokerage infrastructure and other support. Indeed, because these are the leading brokers in the United States, their participation in the conspiracy and implementation and enforcement of its terms is essential to the success of the conspiracy. The unlawful restraints implemented and enforced by the conspirators benefit NAR and the Corporate Defendants and further their common goals by allowing brokers to impose supra-competitive charges on home sellers and restrain competition by forestalling competition from lower-priced alternatives.

---

[1] Brian N. Larson, *The End of MLS as We Know It*, INMAN (Aug. 15, 2006), https://www.inman.com/2006/08/15/end-mls-we-know-it/.

[2] Stephen Brobeck, *Residential Real Estate Brokerage Services: A Cockamamie System That Restricts Competition and Consumer Choice*, CONSUMER FEDERATION OF AMERICA, 4 (2006), http://archives-financialservices.house.gov/media/pdf/072506sb.pdf.

[3] *Id.*

7.      Defendants use their control of the MLSs, and Corporate Defendants their franchise agreements, employee policy and procedures manuals, and leadership roles in NAR and local realtor associations, to require brokers in local residential real estate markets to adhere to NAR's rules, including the Buyer Broker Commission Rule, and thereby help implement and enforce the conspiracy.  The Corporate Defendants further implement the conspiracy alleged herein by reviewing and reissuing NAR's rules, including the Buyer Broker Commission Rule, at yearly NAR meetings, and by serving on the boards and committees that enforce compliance with NAR's rules.

8.      By participating in an association that prevents member institutions from allowing its employees and realtors to compete with each other to offer lower commissions, requiring franchisees, groups and individuals to join and adhere to the anticompetitive agreement alleged herein, and taking numerous steps in furtherance of the conspiracy, the Corporate Defendants have agreed to participate in, facilitate, and implement the conspiracy.

9.      The conspiracy has saddled home sellers with costs that would be borne by buyers in a competitive market.  Moreover, because most buyer-brokers will not show homes to their clients where the seller is offering a lower buyer-broker commission, or will show homes with higher commission offers first, sellers are incentivized when making required blanket offers to procure the buyer-brokers' cooperation by offering high commissions.  Thus, the conspiracy: (a) requires sellers to pay overcharges for services provided by buyer-brokers; (b) raises, fixes and maintains buyer-broker compensation at levels that would not exist in a competitive marketplace; and (c) encourages and facilitates steering and other actions that impede entry and

market success by lower-cost real estate brokerage services.

10.     This method of setting buyer-broker commissions is wholly different from the practices that would exist absent the Buyer Broker Commission Rule. Absent the Rule, buyer-brokers would be paid by their clients, not the sellers, and would compete to be retained by offering lower commissions to their prospective clients for their services. The Buyer Broker Commission Rule causes price competition among buyer-brokers is restrained because the client retaining the buyer-broker, i.e., home buyers have little incentive or ability to reduce their broker's commission because they are not paying the commissions.

11.     In more competitive foreign markets, homebuyers pay their brokers if they choose to use one, and they pay less than half the rate paid to buyer-brokers in the United States. In comparable international markets without a rule like the Buyer Broker Commission Rule, such as the United Kingdom, Germany, Israel, Australia, and New Zealand, buyer-brokers, when they are used, are paid directly by home buyers, rather than by home sellers. As an article in the *Wall Street Journal* recently explained, real estate brokers have "shielded themselves with a skein of anticompetitive 'practices" that "have kept the high fees they charge unchanged since 1991."[4] The total broker fees that have been imposed are "significantly higher than those paid elsewhere in the developed world," and, if they were instead paid at a competitive level, American consumers would save tens of billions of dollars annually.[5]

---

[4] Jack Ryan & Jonathan Friedland, *When You Buy or Sell a Home, Realty Bites*, WALL ST. J. (Mar. 3, 2019), https://www.wsj.com/articles/when-you-buy-or-sell-a-home-realty-bites-11551649734.

[5] *Id.*

12.     Defendants' conspiracy has maintained broker commission levels at remarkably stable and inflated levels for the past two decades, despite the advent of the Internet and the diminishing role of buyer-brokers.  Between 2000 and 2017, the average commission nationally has been stable at a supra-competitive rate of between 5 and 5.4 percent with little or no regard to changing market conditions.  Approximately one half or more of this amount is the commission for the buyer-broker.  At an industry event in 2016, the Chief Executive Officer of Defendant Keller Williams reported to other industry participants that Keller Williams' buyer-brokers were charging an average commission of 2.71% in 2015, an amount virtually unchanged from the 2.8% it reported that it had charged in 2002.

13.     Moreover, because housing prices have increased substantially during this period (at a rate significantly exceeding inflation), and commissions are charged on a percentage of a home's sale price, the actual dollar commissions imposed on home sellers "increased substantially because housing prices were much higher. . . .  For example, between 2001 and 2017, the average price of new homes in current dollars sold rose from $213,200 to $384,900, according to U.S. Census Bureau Statistics."[6]  As the Consumer Federation of America has observed, "[b]ecause the industry functions as a cartel, it is able to overcharge consumers tens of billions of dollars a year. . . .

---

[6] Brobeck, Comments of Stephen Brobeck, Executive Director Consumer Federation of America Before the Department of Justice-Federal Trade Commission Public Workshop on Competition Issues, CONSUMER FEDERATION OF AMERICA, 2 n.4 (2018), https://consumerfed.org/wp-content/uploads/2018/06/CFA-comments-DOJ-FTC-public-workshop-on-competition-issues.pdf.

Consumers are increasingly wondering why they are often charged more to sell a home than to purchase a new car."[7]

14.    Indeed, Defendants have successfully stabilized buyer-broker commissions (and significantly increased the dollar cost) charged despite the diminishing role of buyer-brokers.  According to data from NAR, many homebuyers no longer locate prospective homes with the assistance of a broker, but rather independently through online services.  Buyer-brokers increasingly have been retained after their client has already found the home the client wishes to buy.  Despite their diminishing role, buyer-brokers continue to receive the same artificially elevated percentage of the sales price due to Defendants' conspiracy.  Defendants' success in maintaining (and, in inflation-adjusted dollar terms, substantially increasing) the charge imposed by buyer-brokers despite the advent of new technologies stands in stark contrast to other industries.  "[I]n almost every other consumer industry -- booksellers, retailers, home appliances, insurance, banking, stock brokers -- the introduction of Internet and discount sellers has been a phenomenal financial benefit to customers.  Discount airlines have cut airfares by 60% or more, to the economic benefit of everyone with the exception of the incumbent competitors. . . . Economists call this process of squeezing out transaction costs 'disintermediation.'  If any industry is ripe for this, it is the $70 billion-a-year real estate brokerage market."[8]  Instead, "[e]ven as housing prices have changed over time and technological advances have arguably made the broker's

---

[7] Glen Justice, *Lobbying to Sell Your House*, N.Y. TIMES (Jan. 12, 2006), https://www.nytimes.com/2006/01/12/business/lobbying-to-sell-your-house.html.

[8] *The Realtor Racket*, WALL ST. J. (Aug. 12, 2005), https://www.wsj.com/articles/SB112381069428011613 .

job *easier*, commission rates in the industry have remained remarkably steady at around five to six percent."[9]

15.    The conspiracy's effect can also be seen in the disconnect between buyer-broker costs and commissions. Buyer-broker costs are similar regardless of the price of the home, yet buyer-brokers are paid, for example, four times more when their client buys a million-dollar home rather than a $250,000 home. As the *Wall Street Journal* has explained, "many, if not most, of the services that Realtors provide don't vary with the sales price, so the percentage fee should fall as home price rises."[10] Instead, the commissions imposed on home sellers are "unrelated to either the quantity or quality of the service rendered or even to the value provided."[11]

16.    The conspiracy has inflated buyer-broker commissions, which, in turn, have inflated the total commissions paid by home sellers such as Plaintiffs and the other class members. Plaintiffs and the other class members have each incurred, on average, thousands of dollars in overcharges as a result of Defendants' conspiracy. In a competitive market, sellers would pay nothing to buyer-brokers, who would be paid instead by their clients, and the commissions paid by sellers would be set at a level to compensate seller-brokers only.

17.    Plaintiffs, on behalf of themselves and the class, sue for Defendants'

---

[9] Beth Nagalski, *Ending the Uniformity of Residential Real Estate Brokerage Services: Analyzing the National Association of Realtors' Multiple Listing Service Under the Sherman Act*, 73 BROOKLYN L. REV. 771, 781-82 (2008).

[10] The Realtor Racket, *supra* note 8.

[11] Mark S. Nadel, *A Critical Assessment of the Traditional Residential Real Estate Broker Commission Rate Structure*, 5 CORNELL REAL ESTATE R. 1, 1 (2007).

violations of the federal antitrust laws as alleged herein, and seek treble damages, injunctive relief, and the costs of this lawsuit, including reasonable attorneys' fees.

18.     Plaintiffs bring this lawsuit as a class action on behalf of home sellers who paid a broker commission during the four-year period prior to the filing of this action in connection with the sale of residential real estate listed on one of the following MLSs (the "Covered MLSs"):

- The Bright MLS (including the metropolitan areas of Baltimore, Maryland; Philadelphia, Pennsylvania; Richmond, Virginia; Washington, D.C.);

- My Florida Regional MLS (including the metropolitan areas of Tampa, Orlando, and Sarasota);

- The five MLSs in the Mid-West that cover the following metropolitan areas: Cleveland, Ohio; Columbus, Ohio; Detroit, Michigan; Milwaukee, Wisconsin; Minneapolis, Minnesota;

- The six MLSs in the Southwest that cover the following metropolitan areas: Austin, Texas; Dallas, Texas; Houston, Texas; Las Vegas, Nevada; Phoenix, Arizona; San Antonio Texas;

- The three MLSs in the Mountain West that cover the following metropolitan areas: Colorado Springs, Colorado; Denver, Colorado; Salt Lake City, Utah;

- The four MLSs in the Southeast that cover the following metropolitan areas: Fort Myers, Florida; Miami, Florida; Charlotte, North Carolina; and Raleigh, North Carolina.

## II. JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction under 28 U.S.C. §1332(d)(2), because the classes contain more than 100 persons, the aggregate amount in controversy exceeds $5,000,000, and at least one member of each class is a citizen of a State different from Defendants.  The Court also has subject matter jurisdiction over this action pursuant to 15 U.S.C. §§ 4, 16 and 28 U.S.C. §§ 1331, 1337.

20.     This Court has personal jurisdiction over Defendants. Defendant NAR resides in this District and used its headquarters in Chicago to implement and coordinate the restraints of trade described below.  In addition, Defendants:  (1) have been properly served; (2) transact substantial business in the United States, including in this District; (3) transacted with members of the Class throughout the United States, including in this District; and (4) committed substantial acts in furtherance of the unlawful scheme in the United States, including in this District.

21.     Venue is proper in this District under 15 U.S.C. § 22 and 28 U.S.C. §1391(b), (c), and (d).   Each Defendant transacted business, was found, and/or resided in this District; a substantial part of the events giving rise to Plaintiffs' claims arose in this District; and a substantial portion of the affected interstate trade and commerce described herein has been carried out in this District.

## III. TRADE AND COMMERCE

22.     The Buyer Broker Commission Rule and other anticompetitive NAR rules apply and have been implemented and enforced by Defendants and co-conspirators nationwide.  These rules govern the conduct of local NAR associations, local brokers, and local realtors nationwide. Defendants' conduct alleged herein has

inflated buyer-broker commissions nationwide including in the areas in which the Covered MLSs operate, and has injured home sellers in those areas and nationwide. Defendant NAR, through its members and other coconspirators, and Defendant Corporations, through their franchisees, brokers and other coconspirators, are engaged in interstate commerce, and are engaged in activities affecting interstate commerce, in the United States.

## IV.    THE PARTIES

### A.    Plaintiffs

23.    Michael Cole is a resident of Parker, Colorado. On May 18, 2017, he sold a home located in the Denver metropolitan area. The home was listed on the REColorado MLS. In that sales transaction, Mr. Cole was represented by RE/MAX and the buyer was represented by All Pro Realty of Denver. As part of the sales transaction, Mr. Cole paid a substantial buyer-broker commission.

24.    Steve Darnell is a resident of Park, Texas. On June 1, 2016, he sold a home located in the Austin metropolitan area. The home was listed on the Central Texas Realty Information Services MLS. In that sales transaction, Mr. Darnell was represented by a Coldwell Banker United realtor. As part of the sales transaction, Mr. Darnell paid a substantial buyer-broker commission.

25.    Christopher Moehrl is a resident of Shorewood, Minnesota. On November 15, 2017, he sold a home located in the Minneapolis metropolitan area. The home was listed on the Northstar MLS. In that sales transaction, Mr. Moehrl was represented by a RE/MAX franchisee, and the buyer was represented by a Keller Williams franchisee. As part of the sales transaction, Mr. Moehrl paid a substantial

13

buyer-broker commission.

26. Valerie Nager is a resident of Dublin, California. On September 26, 2017, she sold a home located in the Tampa metropolitan area. The home was listed on the My Florida Regional MLS. In that sales transaction, Ms. Nager was represented by a RE/MAX franchisee, and the buyer was represented by a different broker. As part of the sales transaction, Ms. Nager paid a substantial buyer-broker commission.

27. Jack Ramey is a resident of Martinsburg, West Virginia. On May 8, 2015, he sold a home located in the Baltimore metropolitan area. The home was listed on the Bright MLS. In that sales transaction, Mr. Ramey was represented by a Century 21 franchisee, and the buyer was represented by a different agent. As part of the sales transaction, Mr. Ramey paid a substantial buyer-broker commission.

28. Jane Ruh is a resident of Caledonia, Wisconsin. On September 26, 2018, she sold a home located in the Milwaukee metropolitan area. The home was listed on Metro MLS. In that sales transaction, Ms. Rus was represented by a RE/MAX franchisee, and the buyer was represented by a different broker. As part of the sales transaction, Ms. Ruh paid a substantial buyer-broker commission.

29. Sawbill Strategic, Inc. ("SSI") is a Minnesota corporation with its principal and registered offices at 200 Chestnut St. E, Suite 203, Stillwater, Minnesota. On July 18, 2016, SSI sold a home located at 7148 Jorgenson Lane S, Cottage Grove, Minnesota, which is in the Minneapolis/St. Paul metropolitan area. This home was listed on Northstar MLS. In the transaction, SSI was represented by Collopy Real Estate, Inc. d/b/a Re/Max Results, a RE/MAX International, Inc. (d/b/a RE/MAX) franchisee. The buyer was represented by Edina Realty, Inc. As part of the sales

transaction, SSI paid a substantial buyer-broker commission.

30.     Daniel Umpa is a resident of Rockville, Maryland.  On October 30, 2017, he sold a home located in the Washington, D.C. metropolitan area.  The home was listed on the Bright MLS.   In that sales transaction, Mr. Umpa was represented by Long and Fosters, and the buyer was represented by a different agent.  As part of the sales transaction, Mr. Umpa paid a substantial buyer-broker commission.

31.     As set forth below, the Defendants' unlawful conduct and conspiracy has caused home sellers, including each of the Plaintiffs in this action, to pay a buyer-broker-commission and has also increased the amount of the buyer-broker commission over the amount that would be charged to the buyer in a competitive marketplace absent the conspiracy.

### B.     **Defendants**

32.     Defendant National Association of Realtors ("NAR") has over 1.2 million individual members and is one of the largest lobbying groups in the country, advocating for the interests of real estate brokers.   Its fifty-four state and territorial realtor associations and over 1,200 local realtor associations are members of, and overseen by, NAR. NAR is headquartered in Chicago, Illinois.

33.     Defendant Realogy Holdings Corp. ("Realogy") is the nation's largest real estate brokerage company.  It is headquartered in Madison, NJ.  It is a publicly-traded corporation with a market value in excess of $4 billion.  It owns, operates, and franchises many real estate brokerage firms, including Century 21, Coldwell Banker, Sotheby's International Realty, The Corcoran Group, Better Homes and Garden Real Estate, ZipRealty, ERA Real Estate, Citi Habitats, and Climb Real Estate.

15

34.    Defendant HomeServices of America, Inc. ("HSA") is "the second-largest residential real estate brokerage firm in the United States."[12]  HSA is a majority owner of Defendant HSF Affiliates, LLC ("HSF Affiliates").  HSF Affiliates operates many real estate franchise networks, including HomeServices, Prudential Real Estate, and Real Living.  Additionally, in 2017, HSA acquired Defendant The Long & Foster Companies, Inc. ("L&F"), a large private residential real estate company in the United States.  BHH Affiliates, LLC is a subsidiary of HSF Affiliates LLC and offers real estate brokerage services.  This Complaint will refer to HSA, HSF Affiliates, L&F, their predecessors, BHH Affiliates, LLC and their wholly-owned or controlled subsidiaries or affiliates as "HomeServices."

35.    Defendant RE/MAX, LLC franchises local RE/MAX brokers around the country, which have approximately 6,800 offices and more than 100,000 sales associates.  This Complaint will refer to RE/MAX, LLC, its predecessors, and its wholly-owned or controlled subsidiaries or affiliates as "RE/MAX."

36.    Defendant Keller Williams Realty, Inc. ("Keller Williams") is one of the nation's largest real estate brokerages.  It is headquartered in Austin, Texas.  It is a privately-held company.  It franchises local Keller Williams brokers around the country, which have approximately 700 offices and more than 120,000 sales associates.

### C.    <u>Co-Conspirators.</u>

37.    Multiple local realtor associations not named as Defendants participated as co-conspirators in the violations alleged herein and performed acts and

---

[12] BHE Form 10-K filed on February 25, 2019

made statements in furtherance thereof. Specifically, each of the local realtor associations that own and operate the twenty Covered MLSs (among other realtor associations in other areas of the country) agreed to, complied with, and implemented the Buyer Broker Commission Rule.

38. The Covered MLSs, among others, have participated as co-conspirators in the violations alleged herein and performed acts and made statements in furtherance thereof, including by adopting the Buyer Broker Commission Rule in their own respective rules and regulations.

39. Multiple franchisees and brokers of Defendant Corporations participated as co-conspirators in the violations alleged herein and performed acts and made statements in furtherance thereof. Specifically, each complied with and implemented the Buyer Broker Commission Rule in the geographic areas in which the Covered MLSs operate. In addition, other brokers in these areas have participated as co-conspirators in the violations alleged herein and performed acts and made statements in furtherance thereof. These other brokers complied with and implemented the Buyer Broker Commission Rule in these geographic areas.

40. Defendants are jointly and severally liable for the acts of their co-conspirators whether named or not named as defendants in this Complaint.

## V.      BACKGROUND OF THE REAL ESTATE INDUSTRY

41. State licensing laws regulate who can represent sellers and buyers in the real estate market. There are two licensee categories: (1) the real estate broker (also known as a "brokerage firm"); and (2) the individual real estate licensee or agent. Real estate brokers license individual realtors and are legally responsible for the activities of

17

the realtors they license.

42.     Licensed brokers are the only entities permitted by state law to be paid to represent buyers or sellers in a real estate transaction.  For that reason, all real estate brokerage contracts with sellers and buyers are required to be with brokers, not agents, and all payments to individual realtors must pass through brokers.

43.     According to NAR, 92% of sellers sold their home with the assistance of a real estate broker in 2017, and 87% of buyers purchased their home with the assistance of a real estate broker in 2017.

44.     The standard practice in the residential real estate industry is to compensate brokers and agents with commissions that are calculated as a percentage of a home's sale price.  Commissions are paid when the home sells.

45.     Most brokers and their individual realtors occupy dual roles: they operate as seller-brokers for some home sales and as buyer-brokers for other home sales.

46.     A seller-broker's compensation is specified in a listing agreement, a contract between the seller and the seller-broker that details the terms of the listing.  A listing agreement typically states that the seller-broker has the exclusive right to market the seller's home.  The listing agreement specifies the total commission that a home seller will pay to the seller-broker, often with a portion of that amount earmarked to be paid to the buyer-broker in the event the buyer has a broker (and the seller may retain that overcharge even if a buyer-broker is not used or the buyers-broker attempts to negotiate a different fee for the buyer-broker's services).

47.     If the buyer has a broker, the seller or the seller-broker pays the buyer-broker a commission out of the total commission paid by the seller.  In other words,

buyer-brokers—who assist their clients in negotiating against the seller—receive their compensation from the total commission paid by the seller, not from the buyer they represent.   In fact, a standard of conduct in NAR's Code of Ethics permits and encourages buyer-brokers to tell their clients that their services are free.

48.      In the listing agreement, the seller sets the total commission to be paid to the seller-broker with the expectation that a portion of the commission will be paid to a buyer-broker.  If, as would happen in the absence of the Buyer Broker Commission Rule, buyers paid their brokers, (i) sellers would agree to pay a commission solely to compensate the seller-broker because sellers have no incentive to compensate a buyer-broker negotiating against their interests, and (ii) the seller-broker commission would be about half or less of the amount that sellers have paid as a total commission to compensate both the buyer-broker and the seller-broker.

49.      When a buyer retains a broker, the buyer enters into a contract with that broker.  The contract typically discloses that the buyer-broker will be compensated by receiving a commission from the seller-broker.

50.      An MLS is a database of properties listed for sale in a defined region that is accessible to real estate brokers and their individual realtors that comply with the rules of the MLS.    The Covered MLSs are owned and operated by local realtor associations that are members of, and governed by, NAR.  Seller-brokers list their client's property on an MLS as required by a NAR rule, and to ensure that buyer-brokers and prospective buyers are aware of the property.  If a seller-broker does not list a client's property on an MLS, most buyer-brokers will not show that property to prospective buyers.  MLSs also act as the main source of listings for online websites,

such as Zillow, through which many prospective homebuyers find homes.  A home that is not listed on an MLS is very hard to find for prospective homebuyers.

51.     The Buyer Broker Commission Rule obligates a seller-broker, on behalf of the seller, to make blanket, unilateral offers of compensation to buyer-brokers when listing a home on an MLS owned by a local NAR association.  If a buyer represented by a broker purchases the home, the buyer-broker receives the offered compensation.

52.     The following example illustrates how this process typically works:

- A homeowner enters into a contract with a seller-broker, in which the seller agrees to pay the seller-broker six percent in total commissions in exchange for marketing and facilitating the sale of the home.

- The seller-broker then makes a blanket, unilateral offer of a three percent commission to every buyer-broker when it lists the home on the local MLS.

- A buyer-broker shows the property to a buyer client, who buys the home for $500,000.

- The seller-broker receives six percent of the sales price ($30,000) from the seller.  The seller-broker then pays three percent of the sales price ($15,000) to the buyer-broker.

## VI.     THE ANTICOMPETITIVE AGREEMENT WITH NAR

53.     Prior to adoption of the Buyer Broker Commission Rule in November 1996, NAR played the central role in implementing and enforcing, through the MLS

20

system, a market structure in which *all* brokers involved in residential home sales represented the seller either as the seller's broker or the "sub-agent" of the seller's broker. Under this "almost universal sub agency system . . . brokers, even those working solely with buyers, were legally obligated to represent the interests of sellers."[13] Because "nearly all brokers involved in transactions represented the seller either as the seller's agent or as the subagent of the listing [i.e., seller's] broker," the seller's broker got paid by the seller and would then compensate the subagent working with the buyer.[14] In fact, "[a]s a rule, MLS's required that offers of compensation be contingent on the cooperating broker acting as a subagent of the listing broker, rather than an agent of the buyer. Subagency allowed cooperating brokers who worked with buyers to collect a share of the commissions paid by sellers without actually representing buyers in an agency capacity."[15]

54. Under the sub-agency system, homebuyers commonly proceeded on the mistaken understanding that the subagent broker was working on the buyer's behalf (even though the broker, instead owed a fiduciary obligation to *the seller*). "When this sub agency system, in which brokers working with buyers were legally obligated to

---

[13] Stephen Brobeck & Patrick Woodall, *How the Real Estate Cartel Harms Consumers and How Consumers Can Protect Themselves*, CONSUMER FED'N OF AM., 3 (2006), https://consumerfed.org/pdfs/Real_Estate_Cartel_Study061906.pdf.

[14] Larson, *supra* note 1

[15] Matt Carter, *From Subagency to Non-Agency: A History*, INMAN (Feb. 17, 2012), https://www.inman.com/2012/02/17/from-subagency-non-agency-a-history/; *See* Ann Morales Olazabal*, Redefining Realtor Relationships and Responsibilities: The Failure of State Regulatory Responses*, 40 Harv. J. on Legis. 65, 71 (2003) (explaining that for years, the "dominant real estate exchanges" – i.e., the MLS's – permitted cooperating or selling agents (those working with buyers) to split the commission to be paid by the seller only if the cooperating agent agreed to be a subagent of the seller").

pass on information disadvantageous to their clients to sellers, was exposed through
press coverage, it collapsed almost overnight."[16]

55.    With the emergence of brokers who were no longer sub-agents of the
seller's broker, but were instead working for the buyer, there was no justification for
requiring the seller to pay this cost.  As one industry participant acknowledged, "[w]ith
the demise of subagency, there is little reason to keep interbroker compensation. . . . It
does not make sense for listing brokers to pay buyers' brokers for the services the latter
provides to buyers."[17]

56.    Instead of adjusting to this fundamental change in the market – and, in
particular, the fact that the buyer's broker was now working for the buyer – the
Defendants have implemented and enforced a scheme designed to maintain supra-
competitive commissions and impede lower-priced competition.[18]  In November 1996,

---

[16] Brobeck & Woodall, *supra* note 13.

[17] Larson, *supra* note 1

[18] The NAR, Local Realtor Boards, and MLSs have a long history of
anticompetitive actions designed to maintain broker commissions and impede entry by
lower-cost alternatives.  NAR's predecessor, the National Association of Real Estate
Exchanges "institutionalized a commission rate norm when it adopted its first Code of
Ethics in 1913.  It stated that `an agent should always exact the regular real estate
commission prescribed by the board or exchange of which he is a member.'"  P. Barwick,
P. Parag, A. Pathak & M. Wong, *Conflicts of Interest and the Realtor Commission
Puzzle*, NAT'L BUREAU OF ECON. RESEARCH, 4 (2015),
https://www.nber.org/papers/w21489.pdf.  In 1950, NAR's code of ethics stated that
"every Realtor . . . should maintain the standard rates of commission adopted by the
board and no business should be solicited at lower rates."  After a 1950 Supreme Court
decision found brokers guilty of price-fixing in violation of the Sherman Act, *United
States v. Nat'l Assn. of Realtors*, 339 U.S. 485, 488, 494-95 (1950), local realtor
associations continued to fix prices "for the next twenty-eight years" by recommending
or suggesting commission rate schedules or establishing minimum prices.  David Barry,
*Nine Pillars of the Citadel*, Report Submitted to the FTC/DOJ Workshop on Competition
Policy and the Real Estate Industry, 26-27 (2005),
https://www.justice.gov/sites/default/files/atr/legacy/2005/12/05/213351.pdf.  Since that

NAR adopted the Buyer Broker Commission Rule as part of its Handbook on Multiple Listing Policies.

57.    The NAR Board of Directors, and the Multiple Listing Issues and Policies Committee reporting to it, periodically determines whether to modify any policies in the Handbook on Multiple Listing Policies (for example, certain changes to MLS policies were approved by the Board of Directors and made in 2017 and 2018). The policies that are retained (and any modifications thereto) are set forth in new editions of the Handbook on Multiple Listing Policies that are issued on or about an annual basis. The Board of Directors, and the Handbook on Multiple Listing Policy, have consistently and repeatedly retained the Buyer Broker Commission Rule.

58.    In setting forth the MLS terms, NAR has successfully invited the Defendants and other coconspirators to participate in the following agreement,

---

time, NAR, its affiliates, and other MLSs have continued to implement illegal policies designed to restrain competition. *See, e.g.*, *United States v. Realty Multi-List, Inc.*, 629 F.2d 1351 (5th Cir. 1980) (holding that MLS was enforcing unreasonable membership criteria restricting access to MLS); *Thompson v. Metropolitan Multi-List, Inc.*, 934 F.2d 1566 (11th Cir. 1991) (finding MLS requirement restricting access anticompetitive and unlawful); *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133 (9th Cir. 2003) (finding MLS fee for access anticompetitive and unlawful); *In the Matter of MiRealSource, Inc.*, No. 9321 (F.T.C. 2007) (Consent Order regarding MLS rules limiting alternative business models); *United States v. Nat'l Ass'n of Realtors*, No. 05 C 5140, 2006 WL 3434263 (N.D. Ill. Nov. 27, 2006) (Consent Decree forbidding policies adopted by NAR imposing restraints on Virtual Office Websites).

The Wall Street Journal has reported that "[i]n its own internal documents," NAR "acknowledges that the purpose of state lobbying is to keep competition out and fees high. In an April 22 memo to its state affiliates, the national office urged members to keep agitating for `state laws that are designed to replace competition with regulation.' The memo added that `Realtors have the right to lobby for legislative and regulatory action – even if the effect of such action would be anti-competitive." *The Realtor Racket*, *supra* note 8. As set forth in this complaint, NAR has acted with the same animus outside the lobbying context, through imposition and enforcement of the Buyer Broker Commission Rule and its agreement that the MLS will be made available to brokers who adhere to and enforce these anti-competitive restraints.

combination and conspiracy: They can participate in the MLS, and gain the benefits provided by NAR and the MLS, but only if they agree to adhere to and enforce the anticompetitive restraints set forth in the Handbook on Multiple Listing Policy.

59.     NAR's Handbook on Multiple Listing Policy provides that "Association and Association-owned MLSs must conform their governing documents to the mandatory MLS policies established by the National Association's Board of Directors to ensure continued status as members boards and to ensure coverage under the master professional liability insurance program."

60.     The Handbook states the Buyer Broker Commission Rule as follows: "In filing a property with the multiple listing service of an association of REALTORS®, the participant of the service is making blanket unilateral offers of compensation to the other MLS participants, and shall therefore specify on each listing filed with the service, the compensation being offered to the other MLS participants." The Handbook further states that "multiple listing services shall not publish listings that do not include an offer of compensation expressed as a percentage of the gross selling price or as a definite dollar amount, nor shall they include general invitations by listing brokers to other participants to discuss terms and conditions of possible cooperative relationships."

61.     The Buyer Broker Commission Rule shifts a cost to the seller that would be paid by the buyer in a competitive market. As the Consumer Federation of America has explained, "[i]n a rational pricing system, home sellers and buyer would each pay for real estate brokerage services they receive."[19] The Rule, however, imposes

---

[19] Brobeck, *supra* note 2, at 4.

a financial overcharge on home sellers by requiring them to make a "blanket unilateral offer of compensation" to the buyer-broker as a condition of participating on the MLS.[20] As a result of the Rule, seller-brokers must make "blanket, unilateral, unconditional offers of compensation to their adversarial buyer brokers. Every MLS in the U.S. requires that listing brokers offer compensation to buyer brokers."[21] As the *Wall Street Journal* recently reported, "[h]omeowners are required to hire a buying agent if they employ a selling agent through a multiple listing service – a potentially illegal tying arrangement under the Sherman Anti-Trust Act that keeps buying agents paid though they offer almost no useful services."[22]

62. With the demise of the sub-agency system, there is no pro-competitive justification for imposing this overcharge on home sellers. As one commentator has written: the practice of "sellers' brokers specifying the fees that buyers' brokers charge to the latter's own clients, should be recognized" as "at least an attempt to fix market prices. . . . There is no longer any reason to permit listing brokers [i.e., seller-brokers] to set the default prices that these competing buyers' brokers charge to serve their own customers. . . . The elimination of interbroker compensation would diminish the ability of traditional brokers to frustrate vigorous price competition, and thus likely lead to a

---

[20] *Id.* at 3

[21] Douglas R. Miller, *Letter to DOJ/FTC*, Consumer Advocates in American Real Estate (CAARE), 5 (2018),
https://www.ftc.gov/system/files/documents/public_comments/2018/07/00052-147606.pdf.

[22] Ryan & Friedland, *supra* note 4.

dramatic fall in broker revenues."[23]

63.    Further, by requiring that this be a "blanket" offer, the Rule compels home sellers to make this financial offer without regard to the experience of the buyer-broker or the services or value they are providing.  The same fee must be offered to a new buyer-broker with little or no experience, as that offered to a buyer-broker with many years of experience.  As a result, there is a significant level of uniformity in the payments that sellers must pay to buyer-brokers.  "One implication of fairly uniform rates is that there is little or no relationship between commission level and service quality.  Skilled, experienced agents and brokers charge about the same price as agents with little experience and limited knowledge of how to best serve the consumer clients. In a price-competitive market, less experienced and less skilled agents would be offering consumers lower commission rates, but we know of no compelling evidence that they are doing so."[24]

64.    Because the blanket offer must be made available to every buyer-broker using the MLS (i.e., virtually all buyer-brokers), and can be compared to the blanket offers that every other seller-broker must post to participate on the MLS, the Rule is designed to create tremendous pressure on sellers to offer the high, standard commission that has long been maintained in this industry.  Seller-brokers know that if the published, blanket offer is less than the standard commission, many buyer-brokers

---

[23] Nadel, *supra* note 11, at 64-65.  *See also* B. Kaufman, *Why the Class Action Lawsuit Against NAR and the Big Brokers Makes Sense* (June 3, 2019), https://www.inman.com/2019/06/03/why-the-class-action-lawsuit-against-nar -and-the-big-brokers-makes sense/ (recent article by real estate broker explaining that the buyer-broker commission has been "locked in" at 2.5 – 3 percent).

[24] Brobeck, *supra* note 6, at 3.

26

will "steer" home-buyers to the residential properties that provide the higher standard commission. As discussed in more detail below, the prevalence of such steering has been widely reported in government reports, economic research and the trade press and is well understood by NAR, the Corporate Defendants, and their co-conspirators. Indeed, according to course materials provided at Keller Williams University, offering less than three percent in buyer-broker commission on an MLS "will reduce the number of willing and qualified buyers that will see your home."

65.    The entirely foreseeable result of the Buyer Broker Commission Rule is that the "blanket" offers of compensation to buyer-brokers are overwhelmingly made at or near the high level that prevails in the industry and Defendants are acting to sustain. The Consumer Federation of America has explained, "Typically, on either a 5% or 6% commission, 3% will be offered to brokers with buyer clients, and that commission split is disclosed to brokers on real estate firm and multiple listing service databases." The listing of the 3% split "then acts as a powerful force to discourage lower splits of 2% or even 1% because listing brokers, and their sellers, fear that properties carrying these lower splits will not be shown. As a result, "a listing broker lists a split below" the standard industry level "at their, and their clients', peril because of the risk that traditional brokers working with buyers will avoid this property. . . . This informal discrimination against price competitors is the most important factor that allows dominant brokers to maintain high and uniform prices."[25]

66.    Defendant Keller Williams, for example, instructs seller-brokers to tell

---

[25] Brobeck, *supra* note 2, at 3-4.

27

home sellers that "[t]he standard real estate commission has stabilized, over the years, at right around 6 percent" and that "[y]ou're putting yourself at a disadvantage competitively when you reduce your commission." This is a message that Keller Williams has also broadcast to the entire industry, including its purported competitor brokerages. At a major industry event in 2016, the CEO of Keller Williams disclosed the actual commissions it was charging (5.37% the year before, including a buyer-broker commission of 2.71%), and reported a statement by a discounter that offering a lower rate was giving away money.

67. The Buyer Broker Commission Rule facilitates anticompetitive steering away from brokers who deviate significantly from "the standard real estate commission" by enabling buyer-brokers to identify and compare the buyer-broker compensation offered by every seller in the MLS and then steer clients to homes offering higher commissions. As one commentator has explained: "[t]he effects of steering, and its efficiency in curtailing price competition because of the importance of cooperating in the residential real estate industry, have been widely discussed. Brokers are able to engage in steering because 'an MLS listing gives brokers information on the commission that will be paid to the broker who brings the buyer to that property.'"[26]

68. By encouraging and facilitating steering, the Buyer Broker Commission

---

[26] Bradford W. Muller, *Encouraging Price Competition Among New Jersey's Residential Real Estate Brokers*, 39 SETON HALL L. REV. 665, 682-683, 683 n.100 (2009). *See also* Barwick, Pathak & Wong, *supra* note 18, at 1 ("In the conventional compensation arrangement where sellers pay for the commissions of their listing agents and potential buyers' agents, the latter have an incentive to prioritize properties that offer higher commissions. This kind of steering is thought to lead to uniformly high commissions.")

Rule deters downward departures from the standard commission and enables brokers to avoid doing business with or otherwise retaliate against buyer-brokers who try to compete by offering significant discounts. One discounter recently explained in an FTC/DOJ workshop that after it offered a lower commission on the MLS, "[w]e've had bricks thrown through car windows. We've had our cars egged. We've had hate mail sent to our sellers." The discounter estimated that "40% of agents will go out of their way, above and beyond, and push hard not to show or sell your home if you don't offer a 2.8% or 3% commission."[27] As another commentator has explained: "Essentially, the MLS listing acts *as a tool which competing brokers can use to help enforce a near-uniform commission rate and drive out discounters.*"[28]

69.     Thus, in his 2016 presentation to competing brokerages and other participants at a major industry event, Defendant Keller William's CEO reported that his firm's research had found that "[l]imited service, discount broker, market share in the United States, is at an all-time low," and he enthusiastically reported that efforts to gain business by offering discounted commissions had become "irrelevant."

70.     The Defendant Corporations' franchisees and brokers, and other co-conspirators, have also utilized software technology to help facilitate steering based on

---

[27] Statement of Joshua Hunt, *What's New in Residential Real Estate Brokerage Competition – An FTC-DOJ Workshop (Segment 2)*, FTC, 7 (2018), https://www.ftc.gov/system/files/documents/videos/whats-new-residential-real-estate-brokerage-competition-part-2/ftc-doj_residential_re_brokerage_competition_workshop_transcript_segment_2.pdf.

[28] Muller, *supra* note 28, n.100 (emphasis added). *See also* Barwick, Pathak & Wong, *supra* note 18, at 1 ("In the conventional compensation arrangement where sellers pay for the commissions of their listing agents and potential buyers' agents, the latter have an incentive to prioritize properties that offer higher commissions. This kind of steering is thought to lead to uniformly high commissions.")

MLS commission data and to impede buyers from learning about properties that offer discount buyer-broker commissions. For example, NAR's affiliate, the Greater Las Vegas Association of Realtors ("GLVAR") uses for its MLS a software program called Matrix, which was designed and sold by CoreLogic. CoreLogic provides software and data services to most, if not all, of the Covered MLSs. Matrix allows brokers to provide tailored electronic listings to their buyer clients. Matrix automatically generates and regularly sends emails to buyer clients that describe properties for sale that match their search criteria. When brokers set up the Matrix program for their buyer clients, one of the fields in the software allows the brokers to filter listings according to the value of the buyer-broker commission being offered. In other words, brokers can program the software to only send property listings to buyers that promise buyer-broker commissions above a specified value.

71.     GLVAR elected to adopt a version of the Matrix software that permitted brokers to *exclude* properties offering discount buyer-broker commissions from Matrix-generated emails to buyer clients. A not insignificant number of franchisees and brokers of the Corporate Defendants in Greater Las Vegas (and potentially other markets) have trained their realtors to insert 2.5 percent or higher as the minimum permissible buyer-broker commission when using the Matrix system to send property listings to buyer clients. As a consequence, unbeknownst to them, buyer clients of those realtors often do not receive Matrix-generated emails that include properties offering a buyer-broker commission of less than 2.5 percent or higher, even if that property perfectly matches the buyers' search criteria.

72.     The United States Department of Justice's Antitrust Division is now

actively "investigating potentially anti-competitive practices in the residential real estate brokerage business, with a focus on compensation to brokers and restrictions on their access to listings."[29]  The Antitrust Division has recently served Civil Investigative Demands ("CIDs") pursuant to its investigation into "[p]ractices that may unreasonably restrain competition in the provision of residential real-estate brokerage services."[30]  For example, a CID served on CoreLogic directs it to produce "all documents relating to any MLS member's search of, or ability to search, MLS listings on any of the Company's multiple listing platforms, based on (i) the amount of compensation offered by listing brokers to buyer brokers; or (ii) the type of compensation, such as a flat fee, offered by listing brokers to buyer brokers."[31]

73.     The Buyer Broker Commission Rule's facilitation of steering is also magnified by the Rule's requirement that the compensation that home sellers offer to buyer-brokers on MLSs *must* be offered as a percentage of the gross selling price or a definite dollar amount and by the Rule's prohibition on "general invitations by listing [i.e., seller] brokers to other participants to discuss terms and conditions of possible cooperative relationships."  By requiring that offers of compensation be expressed in specific dollar or percentage terms, the Rule ensures that buyer-brokers can easily compare the financial compensation offered to them by home sellers and steer buyers

---

[29] David McLaughlin & Patrick Clark, *U.S. Opens Antitrust Probe of Real Estate Brokerage Industry*, BLOOMBERG (May 22, 2019), https://www.bloomberg.com/news/articles/2019-05-22/u-s-opens-antitrust-probe-of-real-estate-brokerage-industry.

[30] Civil Investigative Demand to CoreLogic, U.S. Dep. of Just., No. 29938 (dated May 16, 2019).

[31] *Id.*

31

away from properties offering materially less than the "standard real estate commission."[32]

74.     By encouraging and facilitating steering, and adherence to the "standard real estate commission," the Buyer Broker Commission Rule deters downward departures from the standard commission and enables brokers to avoid doing business with or otherwise retaliate against buyer-brokers who try to compete by offering significant discounts.

75.     The anticompetitive effects of the Buyer Broker Commission Rule are further magnified by the fact that neither the buyer nor the seller is even permitted to view the universe of buyer-broker commission terms and thus is unlikely to know whether the buyer-broker is engaged in steering to higher commission properties. The MLSs utilize hidden fields that only *realtors* (i.e., brokers) subscribed to the MLS can see. Two of these hidden fields address compensation to buyer-brokers. The first field consists of the unilateral offer of buyer-broker commission that must be supplied as a condition of listing a home on the MLS. The second field is called "private remarks," and seller-brokers often include additional financial incentives for buyer-brokers in the "private remarks" field. For example, one "private remark" offered buyer-brokers a

---

[32] Lawrence White, from the Stern School of Business at New York University, has explained that "a fixed percentage fee announced by most or all brokers in a metropolitan area prevents the inherent quality differences that surely exist among brokers from being rewarded. It has frequently been noted that sellers that are attempting to coordinate their pricing behavior at above-competitive levels will usually favor simple pricing schedules over more complex ones, even if this simplicity means that quality differences go unrewarded." Laurence J. White, *The Residential Real Estate Brokerage Industry: What Would More Vigorous Competition Look Like*, Stern School of Business, 8 (2006) (Revised Draft).

vacation in Mexico if the buyer-broker purchased three homes from the seller-broker.

76. Sellers and buyers (and the general public) are precluded from accessing the hidden fields and seeing the universe of buyer-broker commissions and other financial incentives being offered on the MLS. NAR's Handbook on Multiple Listing Policy states: "Any information provided by the Multiple Listing Service to the Participants shall be considered official information of the service. Such information shall be considered confidential and exclusively for the use of Participants and real estate licensees affiliated with such Participants and those Participants who are licensed or certified by an appropriate state regulatory agency to engage in the appraisal of real property and licensed or certified appraisers affiliated with such Participants."

77. NAR has also instituted a series of rules which ensure that commission offers and private remarks are not disclosed through data sharing agreements with third-party websites or other MLS syndication services.

78. Simultaneously, the NAR rules *mandate* price information sharing among brokers through its MLS rules. This type of one-way information exchange agreement prevents price competition that benefits consumers while allowing brokers to put upward pressure on pricing and to punish brokers who deviate downwards. Moreover, because home sellers and homebuyers, unlike brokers, do *not* have access to the universe of "blanket unilateral offers of compensation" being made to buyer-brokers, their ability to detect steering by buyer-brokers is significantly impeded. As one commentator has explained, "Buyers are never aware they are being steered. The buyer agent makes a selection of homes to show, and since the public sources of homes never shows the commission offered, buyers are never aware when their agents select

33

out the homes with lower priced commission offerings."[33]

79. This obfuscation is compounded by NAR's ethical rule expressly permitting buyer-brokers to tell buyers that their services are free. NAR's Code of Ethics Standard 12-2 states that "REALTORS may represent their services as `free' or without cost if they expect to receive compensation from a source other than their client provided that the potential for the REALTOR to obtain a benefit from a third party is clearly disclosed at the same time." Because buyer-brokers governed by NAR rules technically receive their compensation from listing brokers, those buyer-brokers can always tell their buyer clients that their services are free. As a result, "most buyers . . . don't really think that they're paying anything for their brokerage services."[34]

80. By disingenuously marketing their services as free, buyer-brokers are able to discourage home buyers from (1) engaging in any negotiations over buyer-broker commissions and (2) searching for alternative buyer-brokers who might offer discounts or rebates from the commissions they receive.

81. The Defendants' anticompetitive restraints have had their intended

---

[33] Magura, *supra* note 27, at n.21. *See also* Peng Liu & Richard Weidel III, *Compensation Structure of Buyer Brokers and Residential Real Estate Transactions*, 7 CORNELL REAL ESTATE REV. 74, 79 (2009) ("The ability to `steer' clients is aided by the practice of never publicly showing the commission rate offered. Only licensed real estate agents have access to the commission rate information, such that a consumer would never know that a broker screened listings based on commission rates.").

[34] Statement of Stephen Brobeck, *What's New in Residential Real Estate Brokerage Competition – And FTC-DOJ Workshop (Segment 3)*, FTC, 9 (2018), https://www.ftc.gov/system/files/documents/videos/whats-new-residential-real-estate-brokerage-competition-part-3/ftc-doj_residential_re_brokerage_competition_workshop_transcript_segment_3.pdf. *See also* Nadel, *supra* note 11, at 22 (explaining that most home buyers "have accepted the pervasive myth that their brokers' services cost them nothing, thus reducing the incentive to negotiate over fees").

effect of diminishing price competition and stabilizing and fixing the buyer-broker charges imposed on home sellers at or near the "standard real state commission" level and—because the actual dollar charge is calculated as a percentage of rising home prices—*substantially elevating* the actual overcharge. In 2006, the Consumer Federation of America warned that "for decades, the dominant real estate firms and their trade association have tried, with much success, to maintain high, uniform prices within different geographic areas."[35] That conclusion remains true today, as these overcharges have varied within a limited range and are typically imposed with little or no regard to the quality of the buyer-broker, the work involved, the value of the house being sold, or prevailing market conditions.

82. Although NAR has widely claimed that real estate commissions are "negotiable," this claim disregards the adverse market impact of the conspiracy's anticompetitive restraints that impede effective negotiation. For the home seller, this is the case for many reasons including, but not limited to, the following.

83. First, the conspiracy's actions have the purpose and effect of elevating the baseline for any negotiations that could follow. Thus, just as an unlawful agreement to fix list prices (or an agreement to increase price announcement terms) is potentially subject to negotiation by some purchasers, the conspiracy's actions are anticompetitive and unlawful because they elevate the base-line for negotiations.

84. Second, by requiring sellers to make unilateral blanket offers of buyer-broker compensation as a precondition for listing properties on MLSs, the Buyer Broker

---

[35] Brobeck, *supra* note 2, at 2.

Commission Rule compels sellers to offer high buyer-broker commissions to attract potential buyers. Sellers who attempt to negotiate down the amount of buyer-broker commission to be offered on an MLS are customarily informed by seller-brokers that reducing that amount will result in materially fewer potential buyers learning about or viewing the property for sale.

85.     In fact, seller-brokers are trained to dissuade home sellers from reducing the buyer-broker commission. For example, Defendant Keller Williams operates Keller Williams University to train its realtors, and some courses at Keller Williams are mandatory. One of the course materials provided to enrollees is a "Script Catalog" for "Working with Sellers," which consists of a collection of recommended scripts for listing brokers to use when communicating with sellers. The "Script Catalog" includes the following recommended script:

## Explaining How Commission Is Used: Script #4

| | |
|---|---|
| SELLER: | *Can you reduce your commission?* |
| AGENT: | Of course. As you know, commissions are negotiable. But let me ask you—what are you trying to accomplish by getting me to reduce the commission? |
| SELLER: | *I'm trying to save money.* |
| AGENT: | I understand. Do you know how a commission structure works? |
| SELLER: | *Not really. I just know that I have to pay you a certain amount of what I receive for my house, and that means I get to keep less.* |
| AGENT: | Let me explain what happens when you reduce a commission. First of all, half of the commission usually goes to a cooperating agent. When you reduce the commission, you reduce the incentive for that agent to bring a buyer to your house. If an agent has ten different houses, nine of which come with a 3 percent commission, one of which comes with 2.5 percent commission, which houses do you think they're going to show? |
| SELLER: | *The ones with the larger commission.* |
| AGENT: | Absolutely. You're putting yourself at a disadvantage competitively when you reduce your commission, wouldn't you agree? |
| SELLER: | *I guess that's true.* |

86.     Third, because NAR requires the seller-broker to make a financial offer to the buyer-broker, sellers will build this cost into the total commission they charge the seller.  Because the total commission is then a term of contract between the home seller and the seller-broker, NAR has created a "Catch 22" and warns MLS participants that actions by the buyer-broker to reduce the total commission could constitute unlawful interference with contract.  As a result, if the buyer negotiates a lower commission with a buyer-broker, the seller's agent is still permitted to charge and receive the full amount of the originally negotiated commission from the seller.

87.     Fourth, as explained above, the NAR Code of Ethics permits buyer-

brokers to tell buyers that their services are free to the homebuyer. As a result, homebuyers are effectively told they have no reason to seek a reduction in the buyer-broker commission.

88. Fifth, NAR has taken additional actions to restrain such negotiations even further. NAR's ethical rules (and subsequent interpretations) expressly prohibit buyer-brokers from attempting to reduce buyer-broker commissions offered on MLSs through the submission of purchase offers. NAR's Standard of Practice 16-16 states: "REALTORS, acting as subagents or buyer/tenant representatives or brokers, shall not use the terms of an offer to purchase/lease to attempt to modify the listing broker's offer of compensation to subagents or buyer/tenant representatives or brokers nor make the submission of an executed offer to purchase/lease contingent on the listing broker's agreement to modify the offer of compensation." In other words, it is an unequivocal violation of NAR's ethics rules for a buyer-broker to even present an offer to a seller that is conditional on the seller reducing the buyer-broker commission.

89. NAR's Case Interpretations not only underscore the prohibition on purchase offers that reduce buyer-broker commissions, but also illogically instruct buyer-brokers who seek to modify buyer-broker commissions to attempt those modifications *before even showing* the property to any potential buyers. NAR's Case Interpretation #16-15 states: "The Hearing Panel's decision noted that REALTOR® B was indeed entitled to negotiate with REALTOR® A concerning cooperating broker compensation *but that such negotiation should be completed prior to the showing of the property* by Realtor® B. The decision indicated that REALTOR® B was entitled to show property listed by REALTOR® A on the terms offered by the listing broker in the

MLS." (Emphasis added). By requiring buyer-brokers seeking to reduce buyer-broker commissions to request those reductions prior to even showing the property to a potential buyer, NAR forecloses virtually all negotiation over the buyer-broker commission. That requirement implausibly contemplates that a buyer-broker will unilaterally contact a selling-broker to request a reduction to the buyer-broker commission before a potential buyer has even seen, let alone expressed an interest in purchasing, the property. Furthermore, even in such highly unusual circumstances, the seller-broker is permitted by NAR rules to respond to the request by reducing the buyer-broker commission but simultaneously *increasing* the seller-broker's commission by the amount of the reduction, thereby boosting the potential compensation to the seller-broker without altering the total commission that the seller has already contractually agreed to pay.

90.    NAR's rules also restrain negotiation of the buyer-broker commission by providing that after the seller has received purchase offers, the seller-broker is prohibited from attempting to unilaterally modify the buyer-broker commission that was offered on the MLS. NAR Standard of Practice 3-2 states: "Any change in compensation offered for cooperative services must be communicated to the other REALTOR® prior to the time that REALTOR® submits an offer to purchase/lease the property. After a REALTOR® has submitted an offer to purchase or lease property, the listing broker may not attempt to unilaterally modify the offered compensation with respect to that cooperative transaction." As a result, a seller cannot respond to a purchase offer with a counteroffer that is conditional on reducing the buyer-broker commission. Nor can the seller, after receiving purchase offers, decide to unilaterally

reduce the buyer-broker commission offered on the MLS. Indeed, MLSListings Inc., one of the largest MLSs in Northern California, states the following on its website to help explain the governing NAR rules:

> **Can I change my offer of compensation that I had offered to the cooperating agent in the MLS after the agent produces an offer signed by the buyer?**
>
> No. In no event shall the listing broker revoke or modify the offer of compensation later than the time the cooperating broker produces a prospective buyer who has signed an offer to purchase the property for which the compensation has been offered through the MLS (9.8).

91.     NAR has imposed yet another restraint on negotiation by interpreting its rules to make it unethical for a buyer-broker to urge the buyer to negotiate directly with the seller to reduce commissions. As the vast majority of homebuyers have limited or no familiarity with this market (and, as noted above, are told that the buyer-broker's services to them are "free"), imposing such a restriction on the ability of their fiduciary to take any action encouraging such negotiation, further restrains such negotiations.

92.     In light of the foregoing restraints, it is not surprising that downward negotiation of the buyer-broker commission is extremely limited and the buyer-broker commission has been maintained at a supra-competitive level (and substantially increased in actual dollars charged) for many years. Indeed, seller-brokers who initially list property with a buyer-broker commission at 2.5% or above almost always stay at a high commission rate (and, if a seller-broker who initially offers a lower buyer-broker commission decides to change the amount, the change ordinarily involves imposition of an *increased* buyer-broker commission).

93.     In short, the Buyer Broker Commission Rule adopted, implemented and enforced by the conspiracy has achieved exactly what it is designed to do: it has

imposed significant overcharges on home sellers, it has maintained (and even increased) those overcharges over time notwithstanding technology changes that should have substantially reduced commissions, and it has significantly impeded the ability of lower-cost alternatives to create a more competitive marketplace.

## VII. NAR HAS REQUIRED LOCAL ASSOCIATIONS TO AGREE TO THESE ANTICOMPETITIVE RESTRAINTS

94.     NAR successfully requires its members, including state and local realtor associations, as well as non-member brokers and individual realtors operating in areas with MLSs owned by local realtor associations, to fully comply with the above anticompetitive rules, and with other rules contained in the NAR Handbook on Multiple Listing Policy and the NAR Code of Ethics.

95.     NAR requires its members that own an MLS to comply with the mandatory provisions in NAR's Handbook on Multiple Listing Policy and with NAR's Code of Ethics. The Handbook states that an agreement by an association for the establishment of an MLS must include "roles and responsibilities of each association for enforcement of the Code of Ethics" and the "intent of the multiple listing service(s) to operate in compliance with the multiple listing policies of the National Association."

96.     NAR threatens its individual and associational members with expulsion for failing to comply with the Code of Ethics. NAR's Code of Ethics states that "[a]ny Member Board which shall neglect or refuse to maintain and enforce the Code of Ethics with respect to the business activities of its members may, after due notice and opportunity for hearing, be expelled by the Board of Directors from membership in the National Association."

41

97.     A local realtor association owns each of the Covered MLSs, and those realtor associations are required by NAR to ensure that its MLS and the MLS's participants adhere to the mandatory provisions in NAR's Handbook on Multiple Listing Policy.   Thus, each local realtor association and MLS agrees to the anticompetitive restraints challenged herein, and plays a central role in implementation and enforcement of those restraints.

98.     Because access to the Covered MLSs, and other MLSs, is a commercial necessity for all brokers and individual realtors, all brokers and individual realtors must comply with the mandatory provisions in NAR's Handbook. Without access to a local MLS, including the Covered MLSs, a broker or agent would be unable to list properties for sale in the centralized database or receive offers of compensation for finding a buyer for a listed property.

99.     NAR has established and disseminated model rules for local realtor associations, and for the MLSs that these local associations own and operate, and those model rules require adherence to both NAR's Code of Ethics and the Handbook on Multiple Listing Policy.

100.     One of the many benefits NAR provides to its realtor associations and the MLSs owned by those associations is professional liability insurance.   To be eligible for this insurance, realtor associations and their MLSs must comply with the mandatory provisions in the Handbook on Multiple Listing Policy.   NAR threatens to withhold these valuable insurance benefits from realtor associations and MLSs that fail to comply with these mandatory provisions.   NAR's Handbook states that "[t]hose associations or multiple listing services found by the National Association to be operating under bylaws

42

or rules and regulations not approved by the National Association are not entitled to errors and omissions insurance coverage and their charters are subject to review and revocation."

101.     NAR reviews the governing documents of its local realtor associations to ensure compliance with its rules.  NAR requires its local realtor associations to demonstrate their compliance with these rules by periodically sending their governing documents to NAR for review.

## VIII.   CORPORATE DEFENDANTS PARTICIPATE IN, FACILITATE, AND IMPLEMENT THE CONSPIRACY

102.     The Corporate Defendants have agreed to adopt, promote, implement, and enforce the Buyer Broker Commission Rule through their intimate involvement in NAR governance and imposition of NAR rules on local real estate associations and the Corporate Defendants' affiliated franchisees, brokers and employees.  By participating in an association which prevents member institutions from allowing their associates to compete with each other for commissions—and agreeing to follow and enforce its anticompetitive rules—the Corporate Defendants have joined the conspiracy and have played a central role in its implementation and enforcement.

103.     The Corporate Defendants participate in, implement, and facilitate the conspiracy in at least four ways: (1) Defendants' executives and franchisee representatives attend NAR meetings, supervise NAR's operations, and review and vote on NAR rules; (2) Defendants and their franchisees assist in NAR's enforcement of the rules; (3) Defendants and/or their franchisees participate in local realtor associations that have adopted and enforced NAR's rules, including the Buyer Broker Commission Rule; and (4) Defendant require their franchisees and realtors to join NAR and the

MLSs and comply with NAR rules, including the Buyer Broker Commission Rule.

104.    First, representatives from each of the Corporate Defendants and their franchisees regularly attend biannual NAR meetings and hold leadership positions in the organization.  Senior executives of the Corporate Defendants have served on NAR's governing board of directors.  For example, both Ronald J. Peltier, the Executive Chairman of HomeServices of America, and Nancy Nagy, CEO of Berkshire Hathaway HomeServices KoenigRubloff Realty Group, currently serve as directors of NAR, and Bruce Aydt, Senior Vice President and General Counsel of Berkshire Hathaway HomeServices Alliance Real Estate, is the former Chair of NAR's Professional Standards Committee. Executives of franchisees and other affiliates of the Corporate Defendants also dominated the 2018 eight-person Leadership Team that managed NAR's day-to-day operations. For example, the immediate past President of NAR, Elizabeth Mendenhall, is the CEO of RE/MAX Boone Realty in Columbia, Missouri. The President of NAR is John Smaby, a sales agent at Edina Realty, which is a HomeServices of America company. NAR's Vice President of Association Affairs, Colleen Badagliacco, is an agent for Legacy Real Estate & Associates, which is a franchisee of a Realogy firm. The 2019 leadership team includes John Smaby and Elizabeth Mendenhall, as well as Charlie Oppler, First Vice President and COO of a Sotheby's International Realty franchisee, and Tracy Kasper, Vice President of Advocacy and a broker/owner of a Berkshire Hathaway franchisee.  The 2017 and 2016 NAR Leadership Teams also had representatives from the Corporate Defendants' brands, including Mr. Smaby, Ms. Mendenhall, and Sherri Meadows, a Keller Williams agent who served as NAR Vice President and President of the Florida Realtors.

105.     Defendant HomeServices, for example, has explained its own role as follows:  "As an industry leader, we have a responsibility to actively participate in shaping our industry and its current and future business model.  The HomeServices executive leadership and CEOs of our operating companies drive these important discussions as leaders within the National Association of Realtors … and at the regional and local levels of the MLS organizations."

106.     The following representatives from the Corporate Defendants or their franchisees participated specifically in the NAR Multiple Listing Issues and Policies Committee, responsible for reviewing and reissuing the Handbook, in the past four years: Mike Nugent, Berkshire Hathaway; Laurie Weston Davis, Better Homes and Gardens Real Estate; Kenneth Walker, RE/MAX Paradigm Realty Group; Sue Cartun, Keller Williams; Mark Trenka, Century 21; and Sam DeBord, Coldwell Banker.

107.     By virtue of their leadership positions in NAR, these and other representatives from the Corporate Defendants are responsible for formulating, reviewing, and approving rules like the Buyer Broker Commission Rule. NAR approves and issues a new MLS Handbook each year; changes to NAR's MLS policy and Professional Standards are discussed and approved at NAR's yearly meetings by NAR committees on which representatives from each Corporate Defendant serve.  The NAR Board of Directors has final approval on additions and amendments to MLS rules and regulations.  Although the Board has modified *other* MLS rules in connection with each reissuance (for example, in 2017 and 2018), the Board has consistently and repeatedly reissued the Buyer Broker Commission Rule and anticompetitive restraints challenged herein.

108.     Second, each Corporate Defendant assists NAR with ensuring compliance with the NAR rules.  Local realtor associations and the NAR Board of Directors are responsible for the enforcement of NAR's MLS rules and regulations. As noted above, representatives from the Corporate Defendants serve on NAR's Board of Directors, which considers all written complaints involving alleged violations of NAR's rules and regulations.  Representatives from the Corporate Defendants also serve on the compliance committees of local realtor organizations. For example, the Rules and Regulations Committee for the Colorado Realtors Association, which reviews compliance issues brought to the attention of the local association and reviews recommendations for NAR policy changes, includes representatives from all four Corporate Defendants or their franchisees—Berkshire Hathaway, RE/MAX, Keller Williams, and Sotheby's:

- Wendy Atkinson - Berkshire Hathaway HomeServices Innovative RE

- Beth Ann Mott - Berkshire Hathaway HomeServices Innovative RE

- Jan Reinhardt - RE/MAX Alliance

- Lauren Gardiner - Keller Williams Realty, LLC

- Kathleen Stump - Berkshire Hathaway Home Service Elevated Living Real Estate

- Steve Konecny - RE/MAX Masters Millennium

- Alan Smith - RE/MAX Professionals

- Jill Limberg - Steamboat Sotheby's International Realty

- Clay Garner - RE/MAX Partners

46

109. Third, in each of the areas in which the Covered MLSs operate (and elsewhere), the Corporate Defendants collaborate with local realtor associations to implement and enforce NAR's rules, including the Buyer Broker Commission Rule, in furtherance of the combination and conspiracy alleged herein. Executives of franchisees of each Corporate Defendant have participated in the governance of the local realtor associations that own and operate the Covered MLSs (and participate in the governance of other local realtor associations), and they implement the conspiracy by requiring compliance with the NAR rules, including the Buyer Broker Commission Rule, and adoption of standard form contracts implementing the NAR rules.

110. For example, half of the Bright MLS Executive Committee consists of representatives from the Corporate Defendants' franchisees and other operations. Fifteen of the twenty-four members of the Bright MLS Board of Directors are representatives from the Corporate Defendants' franchisees and other operations. These individuals include:

- Cindy Ariosa, Long & Foster Real Estate Inc., EC
- Jack Fry, RE/MAX, EC
- Frank Serio, RE/MAX, EC
- William Lublin, Century 21, EC
- Boyd Campbell, Century 21, BOD
- Charles Martin, ERA Harrington, BOD
- David Ashe, Keller Williams, BOD
- Ellen Renish, ERA Continental, BOD
- Jeff Peters, RE/MAX, BOD

47

- Jim Spagnolo, Berkshire Hathaway HomeServices, BOD

- Mark Lowham, TTR Sotheby's International Realty, BOD

- Melanie Thompson, Century 21 Redwood Realty, BOD

- Rosalie Daniels, RE/MAX Tri-County, BOD

- Scott Lederer, Berkshire Hathaway Homesale Realty, BOD

- Scott McDonald, RE/MAX Gateway, BOD

111.	Like the other MLSs encompassed herein, the Bright MLS has agreed to, implemented, and enforced the anticompetitive restraints. Consistent with the terms and objectives of the conspiracy, Bright MLS has adopted Rules and Regulations providing that "In submitting a property to Bright MLS, the Participant is making a blanket unilateral offer of compensation to other Bright MLS Participants and shall, therefore, specify on each listing submitted to Bright MLS the compensation being offered to other Bright MLS Participants." The Rules and Regulations further require that "The compensation specified on listings published by Bright MLS shall be expressed in one of the following forms: 1) As a percentage of the gross selling/leasing price; 2) As a percentage of the `base sales price' for new construction, with the base sales price defined as the sales price before buyer upgrades. (New construction is defined as properties to be built or properties that have not previously been occupied.). The listing Participant must clearly disclose this cooperative compensation arrangement in the agent remarks section of the Bright MLS Database; 3) As a definite dollar amount; [or] 4) As a combination of one (1) and three (3), OR two (2) and three (3) above, as applicable."

112.	The Bright MLS specifically provides that every person subscribing to

48

the MLS "agrees to be subject to the Rules and Regulations and any other Bright MLS governance provision." If a participant violates the terms of this agreement, they are potentially subject to fines of as much as $15,000, suspension of their MLS rights for as much as one year, or termination of their MLS rights with no right to reapply for a period up to three years.

113. As a further illustration, in the greater Las Vegas area, four officers and directors of GLVAR are employees of the Defendants Corporations' franchisees or operations: Aldo Martinez (Berkshire Hathaway HomeServices Nevada Properties), Stephanie Grant and Christopher Bishop (Coldwell Banker Premier – Las Vegas), and Tim Kelly Kiernan (RE/MAX Excellence Las Vegas).

114. GLVAR has agreed to, and helped implement and enforce, the conspiracy's anticompetitive restraints. For example, as agreed to by the conspiracy, GLVAR has adopted the following requirement to govern the Las Vegas MLS: "In filing a property with the Multiple Listing Service of an Association of REALTORS® the Participant of the Service is making blanket unilateral offers of compensate to the other MLS Participants, and shall therefore specify, on each listing filed with the Service, the compensation being offered to the other MLS Participants. . . . Multiple Listing Services shall not publish listings that do not include an offer of compensation expressed as a percentage of the gross selling price or as a definite dollar amount, nor shall they include general invitations by listing brokers to other Participants to discuss terms and conditions of possible cooperative relationships."

115. In furtherance of the conspiracy, GLVAR has also required that brokers conceal 'detail sheets' containing information about commissions from buyers. The

detail sheet is a document that contains all the information that any broker—listing or buyer—has entered into the Las Vegas MLS about a particular property.  The detail sheet specifically contains detailed information about the commissions being offered to buyer-brokers.  GLVAR has fined buyer-brokers who disclose detail sheets to their buyer clients.

116.    Finally, each Corporate Defendant has also agreed to participate in, implement, and/or facilitate the conspiracy by imposing NAR's rules, including the Buyer Broker Commission Rule, on its franchisees, affiliates, and realtors. Each Corporate Defendant requires its franchisees, affiliates, and realtors to join NAR and follow NAR's Code of Ethics, and join a local realtor association and/or MLS, which requires compliance with the Buyer Broker Commission Rule and the other anticompetitive NAR Standards of Practice.  Each Corporate Defendant requires its realtors and franchisees to abide by NAR rules as a condition of doing business with the Corporate Defendants, and to secure the benefits of the Corporate Defendants' brands, infrastructure, and other resources that support their brokerage operations.

117.    Defendant Realogy requires its franchisees and realtors to comply with NAR rules and regulations, including the Buyer Broker Commission Rule.  For example, the Century 21 Alton Clark and Coldwell Banker Traditions Policies and Procedures Manuals formally require MLS membership and compliance with MLS rules.  Policy and Procedures Manuals for Sotheby's, Coldwell Banker Traditions, Century 21 Alton Clark, and Better Homes and Gardens all require realtors and sales associates to become members of NAR, which entails compliance with all NAR rules. Franchise Disclosure Documents for Corcoran, Century 21, and Better Homes and

Gardens incorporate the NAR Code of Ethics. Realogy requires strict compliance with these policies: Realogy's 2015 Form 10-K states "[t]he franchise agreements impose restrictions on the business and operations of the franchisees and require them to comply with the operating and identity standards set forth in each brand's policy and procedures manuals. A franchisee's failure to comply with these restrictions and standards could result in a termination of the franchise agreement."

118.    Defendant HomeServices requires its franchisees and realtors to comply with NAR rules and regulations, including the Buyer Broker Commission Rule. For example, the Real Living Franchise Disclosure Document makes clear that MLS membership and access is required for franchisees, and the agreement requires the franchisee to provide Real Living with access to the franchisee's MLS data. A Long & Foster Policy manual states that sales associates must agree to adhere to NAR's Code of Ethics and Standards of Practice, and incorporates these NAR rules into the policy manual. A Berkshire Hathaway HomeServices Texas Realty Policy and Procedures Manual states that the company "support[s] the Realtor Code of Ethics [and] the Multiple Listing Rules," requires all associates to belong to a local realtor association and MLS, and states that the company's commission expectation will be calculated based on 3% for the listing broker and 3% on the selling side; a Berkshire Hathaway HomeServices Northwest Real Estate Policy Manual also requires associates to agree to maintain membership in the local realtor association and MLS. Similarly, the Real Living and Berkshire Hathaway HomeServices Franchise Disclosure Documents say that franchisees shall at all times comply with the NAR Code of Ethics.

119.    Defendant Keller Williams requires its franchisees and realtors to

comply with NAR rules and regulations, including the Buyer Broker Commission Rule. The Keller Williams Policies and Guidelines Manual requires all associates to "become members of their local Board/Association of REALTORS and MLS" unless granted an exemption by their team leader, to adhere to the NAR Code of Ethics and Standards of Practice, and directs associates to consult with NAR materials. A 2018 Keller Williams Franchise Disclosure Document shows that MLS and NAR membership is expected by franchisees, because it includes the MLS and NAR membership fees as part of the estimated initial investment for a Keller Williams market center. And the Keller Williams training manual, which provides sample broker scenarios for realtors, shows that listing brokers are taught to tell home sellers that the sellers have to pay the buyer-broker's fee and that fee is non-negotiable.

120. Defendant RE/MAX requires its franchisees and realtors to comply with NAR rules and regulations, including the Buyer Broker Commission Rule. For example, the franchise agreement between Defendant RE/MAX and a RE/MAX franchisee in Las Vegas states: "You agree that you and each of your Sales Associates will join and remain a member in good standing and comply with the by-laws and rules and regulations of a local Board of REALTORS© (or comparable organization) and, where available, you will become and remain a participant in a board owned multiple listing service. You also agree that you and your Sales Associates will abide by the Code of Ethics of the National Association of REALTORS©." Similarly, the RE/MAX 2019 Precision Policies and Procedures manual incorporates the NAR Code of Ethics, and a 2016 RE/MAX Independent Contractor Agreement prescribes that the contractor shall join the local realtor's association and "shall abide by the Code of Ethics

promulgated by NAR and all of the rules and regulations of each local or regional [MLS]."

121. Thus, by developing and reissuing the Buyer Broker Commission Rule and related Standards of Practice, enforcing the rule through NAR and local realtor association leadership, imposing the rule on local realtor associations and MLSs, and requiring franchisees, realtors, and other affiliates to join NAR, local realtor associations and MLSs, and comply with their rules, each Corporate Defendant has agreed to participate in and implemented and/or facilitated the conspiracy.

## IX. EFFECTS OF THE CONSPIRACY

122. Defendants' conspiracy has had the following anticompetitive effects, among others, in each area in which a Covered MLS operates, and nationwide:

- Home sellers have been forced to pay commissions to buyer-brokers—their adversaries in negotiations to sell their homes—thereby substantially inflating the cost of selling their homes.

- Home sellers have been compelled to set a high buyer-broker commission to induce buyer-brokers to show their homes to home buyers.

- Home sellers have paid inflated buyer-broker commissions and inflated total commissions.

- The retention of a buyer-broker has been severed from the setting of the broker's commission; the home buyer retains the buyer-broker, while the home seller sets the buyer-broker's compensation.

- Price competition among brokers to be retained by home buyers
  has been restrained.

- Competition among home buyers has been restrained by their
  inability to compete for the purchase of a home by lowering the
  buyer-broker commission.

- Corporate Defendants and their franchisees have increased their
  profits substantially by receiving inflated buyer-broker
  commissions and inflated total commissions.

123.    Plaintiffs are not aware of any pro-competitive effects of Defendants'
conspiracy.  Even assuming *arguendo*, that there was any justification for requiring
such payments during the sub-agency period much earlier, "[t]here is no longer any
reason to permit listing brokers to set the default prices that these competing buyers'
brokers charge to serve their own customers."[36]  Indeed, none of the purposes of the
MLS "has anything to do with interbroker compensation.  In fact, MLS's could continue
providing every service of significance they provide without addressing compensation
at all."[37]  Moreover, even if there were any plausible pro-competitive effects, they
would be substantially outweighed by the conspiracy's anticompetitive effects.

---

[36] Nadel, *supra* note 11, at 64-65.

[37] Brian N. Larson, *The End of MLS as We Know It, Redux*, LARSON SKINNER
(2010), http://larsonskinner.com/2010/12/15/the-end-of-mls-as-we-know-it-redux-part-i/.
*See also* B. Kaufman, *Why the Class Action Lawsuit Against NAR and the Big Brokers
Makes Sense* (June 3, 2019), https://www.inman.com/2019/06/03/why-the-class-action-
lawsuit-against-nar -and-the-big-brokers-makes sense/ (explaining that the idea that if
buyers pay their agent's commission "this could be the end of the MLS does not make
sense.  The MLS's value is giving buyers and sellers a centralized place to go for listings.
Its value is not in artificially keeping buyer's agents' commissions high.  So, changing
the way buyer's agents are paid does not reduce the value of the MLS at all.").

54

124. There is substantial economic evidence that Defendants' conspiracy has resulted in buyer-broker commissions and total commissions paid by home sellers that are inflated well above a competitive level nationwide, including in the areas in which the Covered MLSs operate.

125. Total broker commissions (*i.e.*, the aggregate commission paid to the seller-broker and buyer-broker) in the areas in which the Covered MLSs operate average between five and six percent. This figure is substantially higher than in countries with competitive markets for residential real estate brokerage services. In a 2002 study titled "International Residential Real Estate Brokerage Fees and Implications for the US," economists Natalya Delcoure and Norm Miller compared real estate commissions around the world with those in the United States. They concluded: "Globally, we see much lower residential commission rates in most of the other highly industrialized nations, including the United Kingdom (UK), Hong Kong, Ireland, Singapore, Australia, and New Zealand. . . . In the UK, the [total] commission rates average less than 2%. . . . In New Zealand and South Africa, [total] commission rates average 3.14%. In Singapore, the [total] commission rates also tend to run around 3%." They also found variation within countries; in the United Kingdom, for example, Delcoure and Miller found that "1%-2% is typical; in very competitive areas 0.5-0.75%; in low priced areas [for homes] as high as 3.5%." Ultimately, the economists concluded that, "based on global data, the [total] US residential brokerage fees should run closer to 3.0%."[38]

---

[38] Natalya Delcoure & Norm G. Miller, *International Residential Real Estate Brokerage Fees and Implications for the US Brokerage Industry*, 5 INT'L REAL ESTATE REV. 12, 13-14, 17 (2002),

126.     For years, buyer-broker commissions have remained steady in the areas in which the Covered MLSs operate despite both an increase in home prices (increasing the dollar amount of the commission) and the diminishing role of buyer-brokers described above.     The United States General Accounting Office review of the residential real estate market reported that "commission rates have remained relatively uniform – regardless of market conditions, home prices, or the efforts required to sell a home."[39] This remains true today.  In fact, over the past two decades the average total commission on an annual basis has always been maintained between 5.02 percent and 5.4 percent.  It was at virtually the same level in 2017, as it was at the time of the GAO's analysis.  Similarly, in Defendant Keller Williams' presentation to competitors and other industry participants in 2016, Keller Williams reported that its average buyer-broker commission in 2015 (2.71%) was virtually the same level that was charged in 2002 (2.8%).

127.     As explained above, the stability of the commission rate significantly understates the actual charges that have been imposed on home sellers.  The actual dollar commission is determined by applying the rate to the sale price of a home.  Since 2000, home prices have approximately doubled, while the total rate of inflation has been below 50%.  As Dr. Barwick, an economist at Cornell University, recently stated at the DOJ/FTC workshop on competition in the residential real estate brokerage industry, "if

---

https://pdfs.semanticscholar.org/7f0d/e19b8729c83ce5dd1be93f1fa8ce0deaa6d9.pdf?_ga =2.121729544.265578023.1560289574-2128001628.1560289574.

[39] U.S. Gov't Accountability Office, GAO-05-947, *Real Estate Brokerage: Factors That May Affect Price Competition*, REPORT TO THE COMMITTEE ON FINANCIAL SERVICES, HOUSE OF REPRESENTATIVES 1, 1 (2005)

you look at the commission the consumers are paying today relative to 20 years ago, they're nearly paying twice as much."[40]

128.    Moreover, while "competitive pressures in an industry ordinarily force competitors to adopt fee structures that reflect their costs, this has not occurred for real estate broker fees."  Instead, "broker fees are usually set without regard to either the quantity or quality of service rendered."[41]

129.    The stability and maintenance of high broker commissions (and the substantial increase in actual dollar charges for their services) stands in stark contrast to the experience in other industries since the advent of the Internet.  "One would have expected that an information and communication-based industry like real estate brokerage, would enjoy tremendous cost efficiencies from the development of the Internet, Databases, and other communication technologies.  Yet it appears that traditional brokers generally have not passed on their cost savings to consumers in the form of lower fees." [42]

130.    The adverse economic impact of the conspiracy's restraints on price competition have been severe.  The Consumer Federation of America, which has reviewed and criticized the brokerage industry's practices for many years, has indicated that "[i]f sellers and buyers each separately negotiated compensation with their brokers, uniform 5-6% commissions would quickly disappear."[43]

---

[40] Barwick, *supra* note 35, at 10.

[41] Nadel, *supra* note 11*,* at 4.

[42] Nadel, *supra* note 11, at 7.

[43] Brobeck & Woodall, *supra* note 13, at 4.

131.    Brian Larson, an attorney who has represented many MLSs, has observed that "[w]ith the demise of subagency, there is little reason to keep interbroker compensation."  According to Larson, "[g]etting rid of interbroker compensation" [i.e., payments from seller-brokers to buyer-brokers] would improve the market in several areas, including:

- Buyer-broker fees can be commensurate with the skill and experience of the broker and with the buyer's needs."

- "The market benefits from price competition for buyer broker services."

- "The dangers of price fixing, and the claims by industry watchdogs that it exists now, will largely be addressed.  Brokers will really be unable to tell what their competitors are charging for services, and there will be no incentive for commissions to be 'standard.'"[44]

132.    Because of the scope and magnitude of the overcharges at issue here, the economic cost to the plaintiff class and other consumers is enormous.  Estimates of the amount of "annual broker fees consumers might save if there was effective price

---

[44] Larson, *supra* note 38 (Larson has written about the "Danger of price fixing" and explained that because of the publication of buyer-broker compensation on an MLS, "a few market-leading brokers can establish the market-rate cooperating compensation [i.e., buyer-broker commission] without ever speaking directly to each other.  They can just watch what happens on MLS.  Thanks to the MLS offer of compensation, listing brokers effectively are able to fix service prices of buyers' brokers; many buyers' brokers are loathe to collect more than what is offered in MLS, even if the broker has a written agreement with the buyer providing for a higher payment."  Although Larson recognizes that the system facilitates price-fixing, the reality – as described above – has been that it has stabilized commission levels at the "industry standard" (and elevated actual dollar commissions substantially), notwithstanding declining costs).

58

competition suggests as much as $30 billion or more annually."[45] Economists Hsieh and Moretti have suggested that "more than half of current commissions might be eliminated by competition."[46] Natalya Delcourse and Norm Miller "found that U.S. broker fees should equal something closer to three percent."[47]

## X. MARKET POWER

133. The relevant service market for the claims asserted herein is the bundle of services provided to homebuyers and sellers by residential real estate brokers with MLS access. Defendants' control of the Covered MLSs gives Defendants the ability to impose the Buyer Broker Commission Rule and other anticompetitive NAR rules on class members and other market participants. Access to the Covered MLSs is critical for brokers to compete and to assist home buyers and sellers in the areas in which those MLSs operate.

134. The relevant geographic markets for the claims asserted herein are no

---

[45] Nadel, *supra* note 11, at 8.

[46] *Id.* at 8 n.28 (citing C. Hsieh & E. Moretti, Can Free Entry be Inefficient? Fixed Commissions and Social Waste in the Real Estate Industry, 111 J. Pol. Econ. 1076 (2003)).

[47] *Id.* at 9 n.28. *See also* Brobeck & Woodall, *supra* note 13, at 4 (if sellers and buyers separately negotiated compensation with their brokers, uniform 5-6 percent commissions "would quickly disappear"); *The Realtor Racket, supra* note 8 (explaining that "in almost every other consumer industry . . . the introduction of Internet and discount sellers has been a phenomenal financial benefit to customers. Discount airlines have cut airfares by 60% or more, to the economic benefit of everyone with the exception of the incumbent competitors. Economists call this process of squeezing out transaction costs `disintermediation.' If any industry is ripe for this, it is the $70 billion-a-year real estate brokerage market."); B. Kaufman, *Why the Class Action Lawsuit Against NAR and the Big Brokers Makes Sense* (June 3, 2019), https://www.inman.com/2019/06/03/why-the-class-action-lawsuit-against-nar -and-the-big-brokers-makes sense/ (explaining that if buyers paid their agent's commission this "would immediately generate" discounted options).

broader than the geographic areas in which the twenty Covered MLSs operate.  Nearly all homes sold in these geographic areas were listed on the MLS by brokers that are subject to the MLS and NAR rules and standards.   The residential real estate business is local in nature.  Most sellers prefer to work with a broker who is familiar with local market conditions and who maintains an office or affiliated sales associates within a reasonable distance of the seller's property.  Likewise, most buyers seek to purchase property in a particular city, community, or neighborhood, and typically prefer to work with a broker who has knowledge of the area in which they have an interest.

135.    Corporate Defendants, through their coconspirator franchisees and other conspiring brokers in the areas in which the Covered MLSs operate, collectively provide the vast majority of the residential real estate broker services in these areas.

136.    Defendants and their co-conspirators collectively have market power in each relevant market through their control of the local MLS and their dominant share of the local market.

137.    Any buyer-brokers in the areas in which the Covered MLSs operate who wished to compete outside of Defendants' conspiracy would face insurmountable barriers.  Defendants' control of the Covered MLSs through their co-conspirators (*i.e.*, through their local franchisees, other local brokers, and the local realtor associations) means that non-conspiring brokers would need to establish an alternative listing service to compete with the conspiring brokers, or alternatively, attempt to compete without access to a listing service.  A seller-broker who represented a seller without using a listing service would lose access to the large majority of potential buyers, and a buyer-broker who represented a buyer without using a listing service would lose access to the

large majority of sellers. Brokers cannot compete effectively without access to a listing service.

138. For an alternative listing service to compete effectively with one of the Covered MLSs, the alternative would need to have listings as comprehensive (or at least nearly so) as the Covered MLS. Brokers and their individual realtors who currently profit from inflated buyer-broker commissions and total commissions have minimal incentive to participate on an alternative listing service that would generate lower buyer-broker commissions and lower total commissions. Further, many buyers would be very reluctant to retain a buyer broker operating on an alternative listing service that required them to pay the buyer-broker commission, when other buyer-brokers operating on the Covered MLSs are entirely compensated by home sellers. Accordingly, seller-brokers on an alternative listing service would struggle to attract buyer-brokers and their buyer clients. Moreover, many home sellers would not retain brokers using a new, unfamiliar alternative listing service that had no track record of success and had failed to attract sufficient buyers and buyer-brokers. Accordingly, a listing service attempting to compete with any of the Covered MLSs would likely fail to attract enough property listings to operate profitably and be a competitive constraint on the incumbent MLSs. The absence of listing services that compete with the Covered MLSs (or other MLSs) reflects the very substantial barriers to entry.

139. Moreover, NAR advises MLSs to enter into non-compete agreements with third-party websites, such as Zillow, so that those websites do not become competitive rivals to MLSs. NAR's checklist of "critical components" states that the consumer-facing website "must agree they will not compete with the brokerage firms

or MLS by either becoming a licensed brokerage firm or by providing offers of cooperation and compensation." The non-compete agreement requires the consumer-facing website to agree not to "use the data in a manner that is similar to a Multiple Listing Service." Thus, NAR, in furtherance of the conspiracy, has advised MLSs to take affirmative steps to prevent third-party websites from becoming competitors.

## XI. CONTINUOUS ACCRUAL

140. During the four years preceding the filing of this Complaint, Defendants, through their co-conspirator brokers in the areas in which the Covered MLSs operate, repeatedly charged and received buyer-broker commissions and total commissions that were inflated as a result of the conspiracy. These inflated commissions during the preceding four years were paid by Plaintiffs and the other class members in connection with the sale of residential real estate listed on one of the Covered MLSs. Each payment of these inflated commissions by Plaintiffs and the other class members during the last four years injured them and gave rise to a new cause of action for that injury.

141. During the last four years, Defendants and their co-conspirators have maintained, implemented, and enforced the Buyer Broker Commission Rule and other anticompetitive NAR rules nationwide, including in the areas in which the Covered MLSs operate.

## XII. CLASS ACTION ALLEGATIONS

142. Pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and the following class: all persons who paid a broker commission since March 6, 2015 in connection

with the sale of residential real estate listed on one of the Covered MLSs.

143. Excluded from the Class are Defendants and their officers and directors, the judicial officers presiding over this action and the members of their immediate families and judicial staff, and Plaintiffs' counsel and employees of their law firms.

144. The Class is readily ascertainable because records of the relevant transactions should exist.

145. Due to the nature of the trade and commerce involved, Plaintiffs believe that the Class has many thousands of members, the exact number and their identities being known to Defendants and their coconspirators.

146. Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs' interests are aligned with, and not antagonistic to, those of the other members of the Class.

147. There are questions of law and fact common to the members of the Class, including, but not limited to, the following:

> A. Whether Defendants conspired as alleged herein;
>
> B. Whether the conspiracy was implemented in the areas in which the Covered MLSs operate;
>
> C. Whether the conspiracy harmed competition as alleged herein;
>
> D. Whether the competitive harm from the conspiracy substantially outweighs any competitive benefits;
>
> E. Whether buyer-broker commissions and total commissions were inflated as a result of the conspiracy in the areas in which the Covered MLSs operate; and
>
> F. The appropriate class-wide measures of damages.

148.     Plaintiffs have retained counsel competent and experienced in the prosecution of antitrust class action litigation to represent themselves and the Class.

149.     Questions of law or fact that are common to the members of the Class predominate over any questions affecting only individual members of the Class.

150.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.    The prosecution of separate actions by individual members of the Class would impose heavy burdens on the court and Defendants and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class.  A class action, on the other hand, would achieve substantial economies of time, effort, and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.  Absent a class action, it would not be feasible for the vast majority of the members of the Class to seek redress for the violations of law alleged herein.

## XIII.   CLAIM FOR RELIEF

### Violation of Section 1 of the Sherman Act, 15 U.S.C § 1

151.     Plaintiffs repeat and incorporate by reference each of the foregoing allegations of this Complaint.

152.     Beginning more than four years before the filing of this Complaint, Defendants engaged in a continuing contract, combination, or conspiracy to unreasonably restrain interstate trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C § 1.

153.     The contract, combination, or conspiracy alleged herein has consisted

of a continuing agreement among Defendants and their co-conspirators to require home sellers to pay the buyer-broker and to pay an inflated amount.

154.     In furtherance of the contract, combination, or conspiracy, Defendants and their coconspirators have committed one or more of the following overt acts:

a)     Participated in the establishment, implementation and enforcement of the Buyer Broker Commission Rule and other anticompetitive NAR rules;

b)     Participated in the establishment, implementation and enforcement of rules by local NAR associations and MLSs that implemented the Buyer Broker Commission Rule and other anticompetitive NAR rules in the areas in which the Covered MLSs operate; and

c)     Included provisions in franchise agreements, policy manuals, and other corporate agreements with franchisees, affiliates, and realtors of Corporate Defendants that required the implementation of and adherence to the Buyer Broker Commission Rule and other anticompetitive NAR rules in the areas in which the Covered MLSs operate.

155.     In the areas in which the Covered MLSs operate, and elsewhere, Defendants' conspiracy has required sellers to pay buyer-brokers, to pay an inflated buyer-broker commission and an inflated total commission, and has restrained price competition among buyer-brokers. This harm to competition substantially outweighs any competitive benefits arising from the conspiracy.

156.     Defendants' conspiracy has caused buyer-broker commissions and total commissions in the areas in which the Covered MLSs operate (and elsewhere) to be

inflated. Plaintiffs and the other members of the Class paid these inflated commissions during (and before) the last four years in connection with the sale of residential real estate listed on one of the Covered MLSs. Absent Defendants' conspiracy, Plaintiffs and the other class members would have paid substantially lower commissions because the broker representing the buyer of their homes would have been paid by the buyer (and buyer-broker commissions would not be at supra-competitive levels).

157.    Defendants' conspiracy is a *per se* violation of Section 1 of the Sherman Act.

158.    As a direct and proximate result of Defendants' past and continuing violation of Section 1 of the Sherman Act, Plaintiffs and the other class members have been injured in their business and property and suffered damages in an amount to be proven at trial.

159.    In the alternative, Defendants' conspiracy violates section 1 of the Sherman Act under the Rule of Reason.

160.    As a direct and proximate result of Defendants' past and continuing violation of Section 1 of the Sherman Act, Plaintiffs and the other class members have been injured in their business and property and suffered damages in an amount to be proven at trial.

## XIV.   REQUESTED RELIEF

A.    Plaintiffs request relief as follows: That the Court determine that this action may be maintained as a class action under Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and direct that notice of this action, as provided

by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to members of the Class;

        B.     That the Court enter an order declaring that Defendants' actions, as set forth in this Complaint, violate the law;

        C.     That the Court award Plaintiffs and the other members of the Class damages and/or restitution in an amount to be determined at trial;

        D.     That the Court award Plaintiffs pre- and post-judgment interest;

        E.     That the Court award Plaintiffs their costs of suit, including reasonable attorneys' fees and expenses;

        F.     That the Court award Plaintiffs and the Class a permanent injunction, under Section 16 of the Clayton Act, enjoining Defendants from continuing conduct determined to be unlawful; and

        G.     That the Court award such other relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial of all issues so triable.

June 14, 2019          */s/ Carol V. Gilden*
                  Carol V. Gilden (Bar No. 6185530)
                  cgilden@cohenmilstein.com
                  COHEN MILSTEIN SELLERS & TOLL PLLC
                  190 South LaSalle Street, Suite 1705
                  Chicago, IL 60603
                  (312) 357-0370
                  Daniel A. Small
                  dsmall@cohenmilstein.com
                  Kit A. Pierson
                  kpierson@cohenmilstein.com
                  Benjamin D. Brown
                  bbrown@cohenmilstein.com

Alison Deich
adeich@cohenmilstein.com
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
(202) 408-4600
(202) 408-4699 Fax

Mark M. Seltzer
mseltzer@susmangodfrey.com
Steven G. Skaver
ssklaver@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California  90067
(310) 789-3100

Matthew R. Berry
mberry@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington  98101
(206) 516-3880

Beatrice C. Franklin
bfranklin@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, New York  10019
(212) 729-2021

Steve W. Berman
steve@hbsslaw.com
Jeff D. Friedman
jeff@hbsslaw.com
Rio S. Pierce
riop@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue ● Suite 2000
Seattle, WA 98101
(206) 623-7292
(206) 623-0594 fax

George Farah
gfarah@hfajustice.com
HANDLEY FARAH & ANDERSON PLLC
81 Prospect Street
Brooklyn, NY 11201
(212) 477-8090

William H. Anderson
wanderson@hfajustice.com
HANDLEY FARAH & ANDERSON PLLC
4730 Table Mesa Drive Suite G-200
Boulder, CO 80305
(303) 800-9109

Benjamin David Elga
belga@justicecatalyst.org
Brian Shearer
brianshearer@justicecatalyst.org
JUSTICE CATALYST LAW
25 Broadway ● Ninth Floor New York, NY
10004 (518) 732-6703

Monte Neil Stewart
monteneilstewart@gmail.com
Russell E. Marsh
rmarsh@wmlawlv.com
WRIGHT MARSH & LEVY
300 S. 4th Street ● Suite 701 Las Vegas,
NV 89101
(702) 382-4004

Vildan A. Teske
teske@tkkrlaw.com
Marisa C. Katz
katz@tkkrlaw.com
TESKE KATZ KITZER & ROCHEL PLLP
222 South Ninth Street ● Suite 4050
Minneapolis, MN 55402
(612) 746-1558

Kenneth A. Wexler
kaw@wexlerwallace.com
Mark R. Miller
mrm@wexlerwallace.com
Thomas A. Doyle
tad@wexlerwallace.com
WEXLER WALLACE LLP
55 W. Monroe Street, Suite 3300
Chicago, IL 60603
(312)346-2222
(312)346-0022 Fax

Daniel E. Gustafson
dgustafson@gustafsongluek.com
Daniel C. Heldlund
dhedlund@gustafsongluek.com
Daniel J. Nordin
dnordin@gustafsongluek.com
Kaitlyn L. Dennis
kdennis@gustafsongluek.com
GUSTAFSON GLUEK PLLC
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
(612) 333-8844
(612) 339-6622 Fax

*Attorneys for Plaintiffs*