# United States District Court
## District of Massachusetts (Boston)
## CIVIL DOCKET FOR CASE #: 1:20–cv–12244–PBS

Nosalek v. MLS Property Information Network, Inc. et al
Assigned to: Judge Patti B. Saris
Cause: 15:1 Antitrust Litigation

Date Filed: 12/17/2020
Jury Demand: Both
Nature of Suit: 410 Anti–Trust
Jurisdiction: Federal Question

**Plaintiff**

**Gary Bauman**
*individually and on behalf of all others
similarly situated*
*TERMINATED: 10/20/2021*

represented by **Douglas P. Needham**
Motley Rice LLC
20 Church Street, 17th Floor
Hartford, CT 06103
860–218–2720
Fax: 860–882–1682
Email: dneedham@motleyrice.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher M. Barrett**
Izard, Kindall & Raabe LLP
Suite 305
29 S. Main Street
West Hartford, CT 06107
860–513–2937
Email: cbarrett@ikrlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Craig A. Raabe**
Izard, Kindall & Raabe
29 South Main Street
Suite 305
West Hartford, CT 06107
(860) 493–6292
Email: craabe@ikrlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert A. Izard**
Izard, Kindall & Raabe
29 South Main Street
Suite 305
West Hartford, CT 06107
860–493–6295
Fax: 860–493–6290
Email: rizard@ikrlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Seth R. Klein**
Izard, Kindall & Raabe
29 South Main Street
Suite 305
West Hartford, CT 06107
860–493–6292
Email: sklein@ikrlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

represented by

**Mary Jane Bauman**
*individually and on behalf of all others*
*similarly situated*
*TERMINATED: 10/20/2021*

Douglas P. Needham
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher M. Barrett**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Craig A. Raabe**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert A. Izard**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Seth R. Klein**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jennifer Nosalek**
*individually and on behalf of all others*
*similarly situated*

represented by **Douglas P. Needham**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher M. Barrett**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christopher L. Lebsock**
Hausfeld LLP
44 Montgomery Street
Suite 3400
San Francisco, CA 94104
415−633−1908
Fax: 415−358−4980
Email: clebsock@hausfeldllp.com
*(Inactive)*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Craig A. Raabe**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Halli E Spraggins**
Hausfeld LLP
888 16th Street, N.W., Suite 300
Washington, DC 20006
202−540−7200
Fax: 202−540−7201
Email: hspraggins@hausfeld.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James D. Gotz**

Hausfeld
One Marina Park Drive
Suite 1410
Boston, MA 02210
617–207–0600
Email: jgotz@hausfeld.com
*ATTORNEY TO BE NOTICED*

**Jose Roman Lavergne**
Hausfeld LLP
888 16th Street NW
Washington, DC 20006
202–540–7200
Email: jlavergne@hausfeld.com
*ATTORNEY TO BE NOTICED*

**Robert A. Izard**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Seth R. Klein**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **Randy Hirschorn**<br>*Individually and on Behalf of all Others Similarly* | represented by | **Douglas P. Needham**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Seth R. Klein**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher M. Barrett**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christopher L. Lebsock**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Craig A. Raabe**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Halli E Spraggins**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James D. Gotz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jose Roman Lavergne**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert A. Izard**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Tracey Hirschorn**            represented by  **Douglas P. Needham**
*Individually and on Behalf of all Others*        (See above for address)
*Similarly*                                        *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

**Seth R. Klein**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher M. Barrett**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christopher L. Lebsock**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Craig A. Raabe**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Halli E Spraggins**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James D. Gotz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jose Roman Lavergne**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert A. Izard**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**MLS Property Information Network,**   represented by  **James Matthew Goodin**
**Inc.**                                                 Locke Lord LLP
                                                         111 South Wacker Drive
                                                         Ste 4100
                                                         Chicago, IL 60606
                                                         312–443–0472
                                                         Fax: 312–896–6472
                                                         Email: jmgoodin@lockelord.com
                                                         *LEAD ATTORNEY*
                                                         *PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Jon M. Anderson**
Brennan, Recupero, Cascione, Scungio &
McAllister, LLP
362 Broadway
Providence, RI 02909
401–453–2300
Fax: 401–453–2345
Email: janderson@brcsm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Matthew Goodin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph A. Farside , Jr.**
Locke Lord LLP
2800 Financial Plaza
Providence, RI 02903
401–274–9200
Fax: 401–276–6611
Email: joseph.farside@lockelord.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Realogy Holdings Corp.**                represented by **William S. D. Cravens**
Morgan Lewis & Bockius LLLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
202–373–6083
Email: william.cravens@morganlewis.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jason L. Chrestionson**
Morgan Lewis & Bockius LLP
110 N. Wacker Drive
Suite 2800
Chicago, IL 60606–1511
312–324–1797
Email: jason.chrestionson@morganlewis.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kenneth M. Kliebard**
Morgan Lewis
110 N. Wacker Drive
Suite 2800
Chicago, IL 60606
312–324–1774
Email: kenneth.kliebard@morganlewis.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Samuel R. Rowley**
Seyfarth Shaw LLP
Two Seaport Lane
Suite 1200
02210
Boston, MA 02210
617–946–4800
Fax: 617–946–4801

Email: srowley@seyfarth.com
*TERMINATED: 07/22/2022*
*ATTORNEY TO BE NOTICED*

**Stacey Anne Mahoney**
Morgan, Lewis & Bockius LLP
101 Park Street
New York, NY 10178–0060
(212) 309–6000
Email: stacey.mahoney@morganlewis.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**<u>Defendant</u>**

**HomeServices of America, Inc.**                    represented by    **Geoffrey Raux**
Foley & Lardner LLP
111Huntington Ave.
Boston, MA 02199
617–342–4000
Email: graux@foley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick J. Sanders**
156 E. Market Street, Suite 1200
Indianapolis, IN 46204
(317) 721–1253
Email: Patrick.Sanders@MacGillLaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Geoffrey M. Raux**
Foley & Lardner LLP
111 Huntington Avenue
Suite 2500
Boston, MA 02199
617–342–4000
Email: graux@foley.com
*ATTORNEY TO BE NOTICED*

**Jay N. Varon**
Foley & Lardner LLP
3000K Street, N.W.
Suite 600
Washington, DC 20007
202–672–5380
Email: jvaron@foley.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer M. Keas**
Foley & Lardner LLP
3000 K Street, N.W.
Suite 600
Washington, DC 20007
202–672–5436
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Matthew T. Ciulla**
MacGill PC
156 E. Market St.
Suite 1200

Indianapolis, IN 46204
317–961–5086
Email: matthew.ciulla@macgilllaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert D. MacGill**
MacGill PC
156 E. Market St.
Suite 1200
Indianapolis, IN 46204
317–961–5085
Email: robert.macgill@macgilllaw.com
*ATTORNEY TO BE NOTICED*

**Scott E. Murray**
MacGill PC
55 Monument Circle, Suite 1200C
Indianpolis, IN 46204
317–713–7711
Email: scott.murray@macgilllaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**BHH Affiliates, LLC**                   represented by   **Geoffrey Raux**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick J. Sanders**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Geoffrey M. Raux**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jay N. Varon**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer M. Keas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Matthew T. Ciulla**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert D. MacGill**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Scott E. Murray**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**HSF Affiliates, LLC**                   represented by

**Geoffrey Raux**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick J. Sanders**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Geoffrey M. Raux**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jay N. Varon**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer M. Keas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Matthew T. Ciulla**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert D. MacGill**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Scott E. Murray**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**RE/MAX, LLC**                        represented by **Kathleen Wallace**
Jones Day (Bos)
100 High Street, 21st Flr.
Boston, MA 02110
617−960−3939
Email: kwallace@jonesday.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eddie Hasdoo**
Jones Day
77 West Wacker, Suite 3500
Chicago, IL 60601
312−269−4214
Fax: 312−782−8585
Email: ehasdoo@jonesday.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eric P. Enson**
Jones Day
555 South Flower Street, Fiftieth Floor
Los Angeles, CA 90071
213−243−2304
Fax: 213−243−2539

Email: epenson@jonesday.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeffrey A. LeVee**
Jones Day
555 South Flower Street, 50th Flr.
Los Angeles, CA 90071
213–243–2572
Fax: 213–243–2539
Email: jlevee@jonesday.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeremy J. Gray**
Jones Day
77 West Wacker, Suite 3500
Chicago, IL 60601
(312) 269–1553
Email: jjgray@jonesday.com
*TERMINATED: 02/09/2022*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Keller Williams Realty, Inc.**                  represented by   **Anna P. Hayes**
Holland & Knight LLP
800 17th Street N.W.
Suite 1100
Washington, DC 20006
202–469–5441
Fax: 202–955–5564
Email: anna.hayes@hklaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David C. Kully**
Holland & Knight LLP
800 17th Street N.W.
Suite 1100
Washington, DC 20006
202–469–5415
Fax: 202–955–5564
Email: david.kully@hklaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer Lada**
Holland & Knight LLP
31 West 52nd Street
New York, NY 10019
(212) 513–3513
Email: jennifer.lada@hklaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John A. Canale**
Holland & Knight
10 St. James Avenue
11th Flr.
Boston, MA 02116
617–619–9228
Fax: 617–523–6850
Email: john.canale@hklaw.com

*TERMINATED: 08/26/2021*

**Robert M. Shaw**
Holland & Knight
10 St. James Avenue
11th Flr.
Boston, MA 02116
617−305−2018
Email: robert.shaw@hklaw.com
*ATTORNEY TO BE NOTICED*

**Timothy Ray**
Holland & Knight LLP
150 N. Riverdale Plaza
Suite 2700
Chicago, IL 60606
312−928−6042
Fax: 312−578−6666
Email: timothy.ray@hklaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Sotheby's International Realty Affiliates LLC**

represented by **Kenneth M. Kliebard**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stacey Anne Mahoney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. D. Cravens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jason L. Chrestionson**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**RE/MAX of New England, Inc.**

**Defendant**

**Better Homes and Gardens Real Estate LLC**

represented by **Kenneth M. Kliebard**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stacey Anne Mahoney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. D. Cravens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jason L. Chrestionson**

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**ERA Franchise Systems LLC**          represented by   **Kenneth M. Kliebard**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stacey Anne Mahoney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. D. Cravens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jason L. Chrestionson**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Coldwell Banker Real Estate LLC**          represented by   **Kenneth M. Kliebard**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stacey Anne Mahoney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. D. Cravens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jason L. Chrestionson**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**RE/MAX Integrated Regions, LLC**          represented by   **Kathleen Wallace**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eddie Hasdoo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eric P. Enson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jeffrey A. LeVee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **Anywhere Real Estate Inc.** | represented by | **Kenneth M. Kliebard** |

**Anywhere Real Estate Inc.**                    represented by   **Kenneth M. Kliebard**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stacey Anne Mahoney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. D. Cravens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jason L. Chrestionson**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Integra Enterprises Corporation**

**Defendant**

**Century 21 Real Estate LLC**                    represented by   **Kenneth M. Kliebard**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stacey Anne Mahoney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William S. D. Cravens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jason L. Chrestionson**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Polzler & Schneider Holdings
Corporation**

**Amicus**

**UNITED STATES OF AMERICA**                    represented by   **Jessica Leal**
DOJ–Atr
450 Fifth Street, NW
Suite 4000
Washington, DC 20530
202–341–0720
Email: jessica.leal@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Email All Attorneys
Email All Attorneys and Additional Recipients

| Date Filed | # | Docket Text |
|---|---|---|
| 12/17/2020 | 1 | COMPLAINT against All Defendants Filing fee: $ 402, receipt number 0101−8558552 (Fee Status: Filing Fee paid), filed by Gary Bauman, Mary Jane Bauman, Jennifer Nosalek. (Attachments: # 1 Civil Cover Sheet, # 2 Category Sheet)(Needham, Douglas) (Entered: 12/17/2020) |
| 12/18/2020 | 2 | ELECTRONIC NOTICE of Case Assignment. Judge Patti B. Saris assigned to case. If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge M. Page Kelley. (Danieli, Chris) (Entered: 12/18/2020) |
| 12/18/2020 | 3 | Summons Issued as to All Defendants. **Counsel receiving this notice electronically should download this summons, complete one for each defendant and serve it in accordance with Fed.R.Civ.P. 4 and LR 4.1. Summons will be mailed to plaintiff(s) not receiving notice electronically for completion of service.** (Kelly, Danielle) (Entered: 12/18/2020) |
| 01/08/2021 | 4 | NOTICE of Appearance by Robert M. Shaw on behalf of Keller Williams Realty, Inc. (Shaw, Robert) (Entered: 01/08/2021) |
| 01/08/2021 | 5 | NOTICE of Appearance by John A. Canale on behalf of Keller Williams Realty, Inc. (Canale, John) (Entered: 01/08/2021) |
| 01/26/2021 | 6 | NOTICE of Appearance by Kathleen Wallace on behalf of RE/MAX, LLC (Wallace, Kathleen) (Entered: 01/26/2021) |
| 01/28/2021 | 7 | Joint MOTION for Extension of Time to March 1, 2021 to for Defendants to Respond to Complaint and Set Anticipated Motions−to−Dismiss Briefing Schedule *as follows: Opposition Memoranda on or before April 15, 2021 and Reply Memoranda due on or before May 17, 2021* by Gary Bauman, Mary Jane Bauman, Jennifer Nosalek.(Needham, Douglas) (Entered: 01/28/2021) |
| 01/29/2021 | 8 | Judge Patti B. Saris: ELECTRONIC ORDER entered granting 7 Joint MOTION for Extension of Time to March 1, 2021 to for Defendants to Respond to Complaint and Set Anticipated Motions−to−Dismiss Briefing Schedule. All Defendant's Response to the Complaint due 3/1/2021; Oppositions to Motion to Dismiss due 4/15/2021; Reply due 5/17/2021. (Baker, Casey) (Entered: 01/29/2021) |
| 02/04/2021 | 9 | Assented to MOTION for Leave to Appear Pro Hac Vice for admission of Jeremy J. Gray, Jeffrey A. LeVee, & Odeshoo Eddie Hasdoo Filing fee: $ 300, receipt number 0101−8622983 by RE/MAX, LLC. (Attachments: # 1 Certification of Jeremy J. Gray, # 2 Certification of Jeffrey A. LeVee, # 3 Certification of Eddie Hasdoo)(Wallace, Kathleen) (Entered: 02/04/2021) |
| 02/05/2021 | 10 | Judge Patti B. Saris: ELECTRONIC ORDER entered granting 9 Motion for Leave to Appear Pro Hac Vice; Added Jeffrey LeVee, Odeshoo "Eddie" Hasdoo, and Jeremy Gray. **Attorneys admitted Pro Hac Vice must register for electronic filing if the attorney does not already have an ECF account in this district. To register go to the Court website at www.mad.uscourts.gov. Select Case Information, then Electronic Filing (CM/ECF) and go to the CM/ECF Registration Form.** (Baker, Casey) (Entered: 02/05/2021) |
| 02/05/2021 | 11 | Assented to MOTION for Leave to Appear Pro Hac Vice for admission of Robert A. Izard, Craig A. Raabe, and Christopher M. Barrett Filing fee: $ 300, receipt number 0101−8624240 by Gary Bauman, Mary Jane Bauman, Jennifer Nosalek. (Attachments: # 1 Declaration of Robert A. Izard, # 2 Declaration of Craig A. Raabe, # 3 Declaration of Christopher M. Barrett)(Needham, Douglas) (Entered: 02/05/2021) |
| 02/08/2021 | 12 | Judge Patti B. Saris: ELECTRONIC ORDER entered granting 11 Motion for Leave to Appear Pro Hac Vice; Added Robert A. Izard, Craig A. Raabe, and Christopher M. Barrett. **Attorneys admitted Pro Hac Vice must register for electronic filing if the attorney does not already have an ECF account in this district. To register go to the Court website at www.mad.uscourts.gov. Select Case Information, then Electronic Filing (CM/ECF) and go to the CM/ECF Registration Form.** (Baker, Casey) (Entered: 02/08/2021) |

| | | |
|---|---|---|
| 02/12/2021 | 13 | NOTICE of Appearance by Geoffrey Raux on behalf of BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc. (Raux, Geoffrey) (Entered: 02/12/2021) |
| 02/12/2021 | 14 | CORPORATE DISCLOSURE STATEMENT by BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc. identifying Corporate Parent Berkshire Hathaway, Inc. for BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc... (Raux, Geoffrey) (Entered: 02/12/2021) |
| 02/12/2021 | 15 | Assented to MOTION for Leave to Appear Pro Hac Vice for admission of Jay N. Varon; Jennifer M. Keas Filing fee: $ 200, receipt number 0101−8635795 by BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc.. (Attachments: # 1 Affidavit Declaration of Jay N. Varon, # 2 Affidavit Declaration of Jennifer M. Keas)(Raux, Geoffrey) (Entered: 02/12/2021) |
| 02/12/2021 | 16 | Assented to MOTION for Leave to Appear Pro Hac Vice for admission of Matthew T. Ciulla, Robert D. MacGill Filing fee: $ 200, receipt number 0101−8635818 by BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc.. (Attachments: # 1 Affidavit Declaration of Matthew T. Ciulla, # 2 Affidavit Declaration of Robert D. MacGill)(Raux, Geoffrey) (Entered: 02/12/2021) |
| 02/16/2021 | 17 | NOTICE of Appearance by Jon M. Anderson on behalf of MLS Property Information Network, Inc. (Anderson, Jon) (Entered: 02/16/2021) |
| 02/16/2021 | 18 | Judge Patti B. Saris: ELECTRONIC ORDER entered granting 15 Motion for Leave to Appear Pro Hac Vice; Added Jay N. Varon and Jennifer M. Keas. **Attorneys admitted Pro Hac Vice must register for electronic filing if the attorney does not already have an ECF account in this district. To register go to the Court website at www.mad.uscourts.gov. Select Case Information, then Electronic Filing (CM/ECF) and go to the CM/ECF Registration Form.** (Baker, Casey) (Entered: 02/16/2021) |
| 02/16/2021 | 19 | Judge Patti B. Saris: ELECTRONIC ORDER entered granting 16 Motion for Leave to Appear Pro Hac Vice; Added Matthew T. Ciulla and Robert D. MacGill. **Attorneys admitted Pro Hac Vice must register for electronic filing if the attorney does not already have an ECF account in this district. To register go to the Court website at www.mad.uscourts.gov. Select Case Information, then Electronic Filing (CM/ECF) and go to the CM/ECF Registration Form.** (Baker, Casey) (Entered: 02/16/2021) |
| 02/17/2021 | 20 | NOTICE of Appearance by Robert D. MacGill on behalf of BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc. (MacGill, Robert) (Entered: 02/17/2021) |
| 02/17/2021 | 21 | NOTICE of Appearance by Matthew T. Ciulla on behalf of BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc. (Ciulla, Matthew) (Entered: 02/17/2021) |
| 02/17/2021 | 22 | AFFIDAVIT OF SERVICE Executed by Jennifer Nosalek, Mary Jane Bauman, Gary Bauman as to All Defendants. (Barrett, Christopher) Modified text on 2/17/2021 (Baker, Casey). (Entered: 02/17/2021) |
| 02/17/2021 | 23 | NOTICE of Appearance by Jay N. Varon on behalf of BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc. (Varon, Jay) (Entered: 02/17/2021) |
| 02/18/2021 | 24 | NOTICE of Appearance by Scott E. Murray on behalf of BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc. (Murray, Scott) (Entered: 02/18/2021) |
| 02/18/2021 | 25 | CORPORATE DISCLOSURE STATEMENT by RE/MAX, LLC. (Gray, Jeremy) (Entered: 02/18/2021) |
| 02/22/2021 | 26 | Assented to MOTION for Leave to Appear Pro Hac Vice for admission of Timothy Ray Filing fee: $ 100, receipt number 0101−8646180 by Keller Williams Realty, Inc.. (Attachments: # 1 Exhibit A − Certificate of Good Standing)(Canale, John) (Entered: 02/22/2021) |
| 02/22/2021 | 27 | Assented to MOTION for Leave to Appear Pro Hac Vice for admission of David C. Kully Filing fee: $ 100, receipt number 0101−8646246 by Keller Williams Realty, Inc.. (Attachments: # 1 Exhibit A − Certificate of Good Standing)(Canale, John) |

| | | |
|---|---|---|
| | | (Entered: 02/22/2021) |
| 02/22/2021 | 28 | Assented to MOTION for Leave to Appear Pro Hac Vice for admission of Anna P. Hayes Filing fee: $ 100, receipt number 0101–8646307 by Keller Williams Realty, Inc.. (Attachments: # 1 Exhibit A – Certificate of Good Standing)(Canale, John) (Entered: 02/22/2021) |
| 02/22/2021 | 29 | Judge Patti B. Saris: ELECTRONIC ORDER entered granting 26 Motion for Leave to Appear Pro Hac Vice; Added Timothy Ray. **Attorneys admitted Pro Hac Vice must register for electronic filing if the attorney does not already have an ECF account in this district. To register go to the Court website at www.mad.uscourts.gov. Select Case Information, then Electronic Filing (CM/ECF) and go to the CM/ECF Registration Form.** (Baker, Casey) (Entered: 02/22/2021) |
| 02/22/2021 | 30 | Judge Patti B. Saris: ELECTRONIC ORDER entered granting 27 Motion for Leave to Appear Pro Hac Vice; Added David C. Kully. **Attorneys admitted Pro Hac Vice must register for electronic filing if the attorney does not already have an ECF account in this district. To register go to the Court website at www.mad.uscourts.gov. Select Case Information, then Electronic Filing (CM/ECF) and go to the CM/ECF Registration Form.** (Baker, Casey) (Entered: 02/22/2021) |
| 02/22/2021 | 31 | Judge Patti B. Saris: ELECTRONIC ORDER entered granting 28 Motion for Leave to Appear Pro Hac Vice; Added Anna P. Hayes. **Attorneys admitted Pro Hac Vice must register for electronic filing if the attorney does not already have an ECF account in this district. To register go to the Court website at www.mad.uscourts.gov. Select Case Information, then Electronic Filing (CM/ECF) and go to the CM/ECF Registration Form.** (Baker, Casey) (Entered: 02/22/2021) |
| 02/25/2021 | 32 | CORPORATE DISCLOSURE STATEMENT by MLS Property Information Network, Inc.. (Anderson, Jon) (Entered: 02/25/2021) |
| 02/25/2021 | 33 | NOTICE of Appearance by Samuel R. Rowley on behalf of Realogy Holdings Corp. (Rowley, Samuel) (Entered: 02/25/2021) |
| 02/25/2021 | 34 | Assented to MOTION for Leave to Appear Pro Hac Vice for admission of Stacey Anne Mahoney and Kenneth M. Kliebard Filing fee: $ 200, receipt number 0101–8654043 by Realogy Holdings Corp.. (Attachments: # 1 Affidavit Attachment, # 2 Affidavit Attachment)(Rowley, Samuel) (Entered: 02/25/2021) |
| 02/26/2021 | 35 | CORPORATE DISCLOSURE STATEMENT by Realogy Holdings Corp.. (Rowley, Samuel) (Entered: 02/26/2021) |
| 03/01/2021 | 36 | Judge Patti B. Saris: ELECTRONIC ORDER entered granting 34 Motion for Leave to Appear Pro Hac Vice; Added Stacey Anne Mahoney and Kenneth M. Kliebard. **Attorneys admitted Pro Hac Vice must register for electronic filing if the attorney does not already have an ECF account in this district. To register go to the Court website at www.mad.uscourts.gov. Select Case Information, then Electronic Filing (CM/ECF) and go to the CM/ECF Registration Form.** (Baker, Casey) (Entered: 03/01/2021) |
| 03/01/2021 | 37 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *BASED ON FAILURE TO PLAUSIBLY PLEAD CAUSATION* by BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., MLS Property Information Network, Inc., RE/MAX, LLC, Realogy Holdings Corp..(MacGill, Robert) (Entered: 03/01/2021) |
| 03/01/2021 | 38 | MEMORANDUM in Support re 37 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *BASED ON FAILURE TO PLAUSIBLY PLEAD CAUSATION* filed by BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., MLS Property Information Network, Inc., RE/MAX, LLC, Realogy Holdings Corp.. (MacGill, Robert) (Entered: 03/01/2021) |
| 03/01/2021 | 39 | AFFIDAVIT of LEO J. NIRO in Support re 37 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *BASED ON FAILURE TO PLAUSIBLY PLEAD CAUSATION* filed by BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., MLS Property Information Network, Inc., RE/MAX, LLC, Realogy |

| | | |
|---|---|---|
| | | Holdings Corp.. (MacGill, Robert) (Entered: 03/01/2021) |
| 03/01/2021 | 40 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *BASED ON FAILURE TO PLAUSIBLY PLEAD CONSPIRACY AS TO HOMESERVICES DEFENDANTS* by BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc..(MacGill, Robert) (Entered: 03/01/2021) |
| 03/01/2021 | 41 | MEMORANDUM in Support re 40 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *BASED ON FAILURE TO PLAUSIBLY PLEAD CONSPIRACY AS TO HOMESERVICES DEFENDANTS* filed by BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc.. (MacGill, Robert) (Entered: 03/01/2021) |
| 03/01/2021 | 42 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by RE/MAX, LLC.(LeVee, Jeffrey) (Entered: 03/01/2021) |
| 03/01/2021 | 43 | MEMORANDUM in Support re 42 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by RE/MAX, LLC. (Attachments: # 1 Exhibit Declaration of Jeffrey A. LeVee, # 2 Exhibit 2019 SEC Form 10–K)(LeVee, Jeffrey) (Entered: 03/01/2021) |
| 03/01/2021 | 44 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Keller Williams Realty, Inc..(Canale, John) (Entered: 03/01/2021) |
| 03/01/2021 | 45 | MEMORANDUM in Support re 44 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Keller Williams Realty, Inc.. (Canale, John) (Entered: 03/01/2021) |
| 03/01/2021 | 46 | CORPORATE DISCLOSURE STATEMENT by Keller Williams Realty, Inc.. (Canale, John) (Entered: 03/01/2021) |
| 04/02/2021 | 47 | Assented to MOTION for Order to Consolidate Briefing Pages for Plaintiffs' Opposition to Defendants' Motion to Dismiss by Gary Bauman, Mary Jane Bauman, Jennifer Nosalek.(Needham, Douglas) (Entered: 04/02/2021) |
| 04/02/2021 | 48 | Judge Patti B. Saris: ELECTRONIC ORDER entered granting 47 Assented to MOTION for Order to Consolidate Briefing Pages for Plaintiffs' Opposition to Defendants' Motion to Dismiss. (Baker, Casey) (Entered: 04/02/2021) |
| 04/12/2021 | 49 | NOTICE of Scheduling Conference<br><br>This hearing will be conducted by video conference ON 5/26/2021. Counsel of record will receive a video conference invite at the email registered in CM/ECF. If you have technical or compatibility issues with the technology, please notify the session's courtroom deputy as soon as possible.<br><br>Access to the hearing will be made available to the media and public. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html.<br><br>For questions regarding access to hearings, you may refer to the Court's general orders and public notices available on www.mad.uscourts.gov or contact media@mad.uscourts.gov.<br><br>Scheduling Conference set for 5/26/2021 09:00 AM in Remote Proceeding : Boston before Judge Patti B. Saris. (Molloy, Maryellen) (Entered: 04/12/2021) |
| 04/12/2021 | 50 | ELECTRONIC NOTICE Setting Hearing ON 5/26/2021 AT 9:15AM on Motion 42 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 40 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *BASED ON FAILURE TO PLAUSIBLY PLEAD CONSPIRACY AS TO HOMESERVICES DEFENDANTS*, 44 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 37 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *BASED ON FAILURE TO PLAUSIBLY PLEAD CAUSATION* :<br><br>This hearing will be conducted by video conference. Counsel of record will receive a video conference invite at the email registered in CM/ECF. If you have technical or compatibility issues with the technology, please notify the session's courtroom deputy |

|  |  | as soon as possible. |
|---|---|---|
|  |  | Access to the hearing will be made available to the media and public. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html. |
|  |  | For questions regarding access to hearings, you may refer to the Court's general orders and public notices available on www.mad.uscourts.gov or contact media@mad.uscourts.gov. |
|  |  | MOTION HEARING SET FOR 5/26/2021 09:15 AM in Remote Proceeding : Boston before Judge Patti B. Saris. (Molloy, Maryellen) (Entered: 04/12/2021) |
| 04/15/2021 | 51 | MEMORANDUM in Opposition re 44 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 37 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *BASED ON FAILURE TO PLAUSIBLY PLEAD CAUSATION*, 40 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *BASED ON FAILURE TO PLAUSIBLY PLEAD CONSPIRACY AS TO HOMESERVICES DEFENDANTS*, 42 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Gary Bauman, Mary Jane Bauman, Jennifer Nosalek. (Needham, Douglas) (Entered: 04/15/2021) |
| 04/22/2021 | 52 | ELECTRONIC NOTICE issued requesting courtesy copy for 38 Memorandum in Support of Motion, 51 Memorandum in Opposition to Motion, 44 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 37 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *BASED ON FAILURE TO PLAUSIBLY PLEAD CAUSATION*, 41 Memorandum in Support of Motion, 40 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *BASED ON FAILURE TO PLAUSIBLY PLEAD CONSPIRACY AS TO HOMESERVICES DEFENDANTS*, 42 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 39 Affidavit in Support of Motion, 43 Memorandum in Support of Motion, 45 Memorandum in Support of Motion. Counsel who filed this document are requested to submit a courtesy copy of this document (or documents) to the Clerk's Office by 5/7/2021. **These documents must be clearly marked as a Courtesy Copy and reflect the document number assigned by CM/ECF.** (Baker, Casey) (Entered: 04/22/2021) |
| 05/05/2021 | 53 | Filed in error – Document deleted (Baker, Casey). (Entered: 05/05/2021) |
| 05/05/2021 | 54 | Assented to MOTION for Leave to Appear Pro Hac Vice for admission of Seth R. Klein Filing fee: $ 100, receipt number 0101–8760509 by Gary Bauman, Mary Jane Bauman, Jennifer Nosalek. (Attachments: # 1 Declaration of Seth R. Klein in Support of Assented–To Motion to Admit Non–Resident Attorney Pro Hac Vice)(Needham, Douglas) (Entered: 05/05/2021) |
| 05/05/2021 | 55 | Judge Patti B. Saris: ELECTRONIC ORDER entered granting 54 Motion for Leave to Appear Pro Hac Vice; Added Seth R. Klein. **Attorneys admitted Pro Hac Vice must register for electronic filing if the attorney does not already have an ECF account in this district. To register go to the Court website at www.mad.uscourts.gov. Select Case Information, then Electronic Filing (CM/ECF) and go to the CM/ECF Registration Form.** (Baker, Casey) (Entered: 05/05/2021) |
| 05/17/2021 | 56 | REPLY to Response to 37 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *BASED ON FAILURE TO PLAUSIBLY PLEAD CAUSATION* filed by BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., MLS Property Information Network, Inc., RE/MAX, LLC, Realogy Holdings Corp.. (MacGill, Robert) (Entered: 05/17/2021) |
| 05/17/2021 | 57 | REPLY to Response to 40 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *BASED ON FAILURE TO PLAUSIBLY PLEAD CONSPIRACY AS TO HOMESERVICES DEFENDANTS* filed by BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc.. (MacGill, Robert) (Entered: 05/17/2021) |
| 05/17/2021 | 58 | REPLY to Response to 42 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by RE/MAX, LLC. (LeVee, Jeffrey) (Entered: 05/17/2021) |
| 05/17/2021 | 59 | REPLY to Response to 44 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Keller Williams Realty, Inc.. (Canale, John) (Entered: 05/17/2021) |

| 05/18/2021 | 60 | JOINT STATEMENT re scheduling conference *on May 26, 2021.* (Klein, Seth) (Entered: 05/18/2021) |
|---|---|---|
| 05/19/2021 | 61 | CERTIFICATION pursuant to Local Rule 16.1 *(d)(3) for Realogy Holdings Corp.* (Rowley, Samuel) (Entered: 05/19/2021) |
| 05/19/2021 | 62 | CERTIFICATION pursuant to Local Rule 16.1 by RE/MAX, LLC.(LeVee, Jeffrey) (Entered: 05/19/2021) |
| 05/19/2021 | 63 | CERTIFICATION pursuant to Local Rule 16.1 *by MLS Property Information Network, Inc..* (Anderson, Jon) (Entered: 05/19/2021) |
| 05/19/2021 | 64 | CERTIFICATION pursuant to Local Rule 16.1 by Keller Williams Realty, Inc..(Canale, John) (Entered: 05/19/2021) |
| 05/19/2021 | 65 | CERTIFICATION pursuant to Local Rule 16.1 *FILED BY DEFENDANTS HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC AND HSF AFFILIATES, LLC.* (MacGill, Robert) (Entered: 05/19/2021) |
| 05/21/2021 | 66 | Judge Patti B. Saris: ORDER entered. ORDER OF RECUSAL.(Pezzarossi, Lisa) (Entered: 05/21/2021) |
| 05/21/2021 | 67 | ELECTRONIC NOTICE Canceling Hearing scheduled for 5/26/2021. Matter to be reassigned. (Pezzarossi, Lisa) (Entered: 05/21/2021) |
| 05/24/2021 | 68 | ELECTRONIC NOTICE of Reassignment. Judge Indira Talwani added. Judge Patti B. Saris no longer assigned to case. (Finn, Mary) (Entered: 05/24/2021) |
| 05/24/2021 | 69 | ELECTRONIC NOTICE of Scheduling Conference. Scheduling Conference set for 5/26/2021 03:00 PM in Remote Proceeding : Boston before Indira Talwani. |
| | | This hearing will be conducted by video conference. Counsel of record will receive a video conference invite at the email registered in CM/ECF. If you have technical or compatibility issues with the technology, please notify the session's courtroom deputy as soon as possible. |
| | | Access to the hearing will be made available to the media and public. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html. |
| | | For questions regarding access to hearings, you may refer to the Court's general orders and public notices available on www.mad.uscourts.gov or contact media@mad.uscourts.gov. |
| | | (MacDonald, Gail) (Entered: 05/24/2021) |
| 05/26/2021 | 70 | Electronic Clerk's Notes for proceedings held before Judge Indira Talwani: Scheduling Conference held on 5/26/2021. Case called. Court had colloquy with counsel. Parties to jointly report to clerk any request for ADR. Court adopted the dates proposed in the Joint Statement but only up to the close of fact discovery when a status conference will be set. The deadline for parties to serve supplemental fact discovery limited to new facts first disclosed in any party's class certification... was not adopted but that deadline may be requested at the status conference. Plaintiff to file a restatement of the Notice of the definition of the class. The motions to dismiss were taken under advisement. Scheduling Order to follow. (Court Reporter: Robert Paschal at rwp.reporter@gmail.com.)(Attorneys present: Robert A. Izard, Seth R. Klein, Christopher M. Barrett Jon M. Anderson, David C. Kully, Timothy Ray, Robert D. MacGill, Geoffrey Raux, Jay N. Varon, Jeffrey A. LeVee, Kenneth M. Kliebard Stacey Anne Mahoney Samuel R. Rowley) (MacDonald, Gail) (Entered: 05/26/2021) |
| 05/27/2021 | 71 | NOTICE by Gary Bauman, Mary Jane Bauman, Jennifer Nosalek re 1 Complaint, *Notice of Amendment to Proposed Class Definition* (Klein, Seth) (Entered: 05/27/2021) |
| 05/27/2021 | 72 | NOTICE by Gary Bauman, Mary Jane Bauman, Jennifer Nosalek re 1 Complaint, *CORRECTED Notice of Amendment to Proposed Class Definition* (Klein, Seth) (Entered: 05/27/2021) |

| | | |
|---|---|---|
| 06/04/2021 | 73 | Judge Indira Talwani: ORDER entered. **SCHEDULING ORDER.** Please see attached. (Kelly, Danielle) (Entered: 06/04/2021) |
| 06/04/2021 | 74 | Judge Indira Talwani: ELECTRONIC ORDER: In light of Plaintiffs' Corrected Notice of Amendment to Proposed Class Definition 72 , and with the consent of Judge Saris, the court directs the clerk to reassign this case to Judge Saris pursuant to Local Rule 40.1(i)(1). (Kelly, Danielle) (Entered: 06/04/2021) |
| 06/04/2021 | 75 | ELECTRONIC NOTICE of Reassignment. Judge Patti B. Saris added. Judge Indira Talwani no longer assigned to case. (Finn, Mary) (Entered: 06/04/2021) |
| 07/30/2021 | 76 | ELECTRONIC NOTICE Setting 16.b Scheduling Conference and a hearing on Motions to Dismiss:<br><br>This hearing will be conducted by VIDEO CONFERENCE. Counsel of record will receive a video conference invite at the email registered in CM/ECF. If you have technical or compatibility issues with the technology, please notify the session's courtroom deputy as soon as possible.<br><br>Access to the hearing will be made available to the media and public. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html.<br><br>For questions regarding access to hearings, you may refer to the Court's general orders and public notices available on www.mad.uscourts.gov or contact media@mad.uscourts.gov.<br><br>**Motion Hearing/16.b Scheduling Conference set for 8/11/2021 09:30 AM in Remote Proceeding : Boston before Judge Patti B. Saris. (Molloy, Maryellen) (Entered: 07/30/2021)** |
| 08/02/2021 | 77 | Assented to MOTION to Reschedule Scheduling Conference and Oral Argument on Defendants' Motions to Dismiss from August 11, 2021 re 76 Notice of Hearing on Motion,,,, by Gary Bauman, Mary Jane Bauman, Jennifer Nosalek.(Klein, Seth) (Entered: 08/02/2021) |
| 08/03/2021 | 78 | Judge Patti B. Saris: ELECTRONIC ORDER entered granting 77 Motion to continue. Motion hearing reset from 8/11/2021 to 9/20/2021 at 9:30am by REMOTE HEARING> (Molloy, Maryellen) (Entered: 08/03/2021) |
| 08/03/2021 | 79 | ELECTRONIC NOTIC :<br><br>This hearing will be conducted by video conference. Counsel of record will receive a video conference invite at the email registered in CM/ECF. If you have technical or compatibility issues with the technology, please notify the session's courtroom deputy as soon as possible.<br><br>Access to the hearing will be made available to the media and public. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html.<br><br>For questions regarding access to hearings, you may refer to the Court's general orders and public notices available on www.mad.uscourts.gov or contact media@mad.uscourts.gov.<br><br>Motion Hearing/16.b Scheduling Conference is reset from 8/11/2021 to 9/20/2021 09:30 AM in Remote Proceeding : Boston before Judge Patti B. Saris. (Molloy, Maryellen) (Entered: 08/03/2021) |
| 08/24/2021 | 80 | Assented to MOTION for Leave to Appear Pro Hac Vice for admission of Jennifer Lada Filing fee: $ 100, receipt number 0101–8916991 by Keller Williams Realty, Inc.. (Attachments: # 1 Exhibit A – Certificate of Good Standing)(Canale, John) (Entered: 08/24/2021) |
| 08/26/2021 | 81 | NOTICE of Withdrawal of Appearance by John A. Canale (Canale, John) (Entered: 08/26/2021) |

| 08/26/2021 | 82 | Judge Patti B. Saris: ELECTRONIC ORDER entered granting <u>80</u> Motion for Leave to Appear Pro Hac Vice Added Jennifer Lada. **Attorneys admitted Pro Hac Vice must register for electronic filing if the attorney does not already have an ECF account in this district. To register go to the Court website at www.mad.uscourts.gov. Select Case Information, then Electronic Filing (CM/ECF) and go to the CM/ECF Registration Form.** (Pezzarossi, Lisa) (Entered: 08/26/2021) |
|---|---|---|
| 09/20/2021 | 83 | Electronic Clerk's Notes for proceedings held before Judge Patti B. Saris: Motion Hearing held on 9/20/2021 by VIDEO. Ordered: Motions taken under advisement.(Court Reporter: Lee Marzilli at leemarz@aol.com.) (Molloy, Maryellen) Modified on 9/21/2021 (Molloy, Maryellen). (Entered: 09/21/2021) |
| 10/05/2021 | <u>84</u> | Transcript of Motion Hearing held on September 20, 2021, before Judge Patti B. Saris. The Transcript may be purchased through the Court Reporter, viewed at the public terminal, or viewed through PACER after it is released. Court Reporter Name and Contact Information: Lee Marzilli at leemarz@aol.com. Redaction Request due 10/26/2021. Redacted Transcript Deadline set for 11/5/2021. Release of Transcript Restriction set for 1/3/2022. (Coppola, Katelyn) (Entered: 10/08/2021) |
| 10/05/2021 | 85 | NOTICE is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. Counsel are referred to the Court's Transcript Redaction Policy, available on the court website at http://www.mad.uscourts.gov/caseinfo/transcripts.htm (Coppola, Katelyn) (Entered: 10/08/2021) |
| 10/19/2021 | <u>86</u> | NOTICE by Gary Bauman, Mary Jane Bauman *Notice of Voluntary Dismissal ONLY of Claims of Gary Bauman and Mary Jane Bauman* (Klein, Seth) (Entered: 10/19/2021) |
| 10/22/2021 | <u>87</u> | Supplemental ADDENDUM re <u>44</u> MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , <u>40</u> MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *BASED ON FAILURE TO PLAUSIBLY PLEAD CONSPIRACY AS TO HOMESERVICES DEFENDANTS*, <u>42</u> MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., Keller Williams Realty, Inc., MLS Property Information Network, Inc., RE/MAX, LLC, Realogy Holdings Corp.. (LeVee, Jeffrey) (Entered: 10/22/2021) |
| 10/26/2021 | <u>88</u> | Supplemental Opposition re <u>44</u> MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , <u>40</u> MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *BASED ON FAILURE TO PLAUSIBLY PLEAD CONSPIRACY AS TO HOMESERVICES DEFENDANTS*, <u>42</u> MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Response to [ECF 87] Defendants' Supplemental Memorandum* filed by Jennifer Nosalek. (Klein, Seth) (Entered: 10/26/2021) |
| 11/09/2021 | <u>89</u> | MOTION FOR LEAVE to file Supplemental Authorities in support re <u>44</u> MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Keller Williams Realty, Inc.. (Attachments: # <u>1</u> Exhibit Exhibit A –– Supplemental Authority)(Kully, David) Modified docket event on 11/16/2021 in accordance with document filed. (Geraldino–Karasek, Clarilde). (Entered: 11/09/2021) |
| 11/10/2021 | <u>90</u> | RESPONSE to Motion re <u>44</u> MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Response to [ECF 89] Defendant Keller Williams' Notice of Supplemental Authorities* filed by Jennifer Nosalek. (Klein, Seth) (Entered: 11/10/2021) |
| 11/16/2021 | 91 | Judge Patti B. Saris: ELECTRONIC ORDER entered Allowed re <u>89</u> Motion for Leave to File Document ; Counsel using the Electronic Case Filing System should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. Counsel must include – Leave to file granted on (date of order)– in the caption of the document. (Geraldino–Karasek, Clarilde) (Entered: 11/16/2021) |
| 11/17/2021 | <u>92</u> | Notice of Supplemental Authorities re <u>44</u> MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (Attachments: # <u>1</u> Exhibit A)(Hayes, Anna) (Entered: 11/17/2021) |
| 11/17/2021 | <u>93</u> | Response by Jennifer Nosalek to <u>92</u> Notice of Supplemental Authorities . (Klein, Seth) (Entered: 11/17/2021) |

| | | |
|---|---|---|
| 12/10/2021 | 94 | Judge Patti B. Saris: MEMORANDUM AND ORDER entered.<br><br>The Court DENIES the omnibus motion to dismiss (Docket No. 37 ) on the issue of causation and the individual motions to dismiss for HomeServices, Keller Williams, and RE/MAX (Dockets No. 40 , 44 , and 42 , respectively). The parties shall confer and propose a scheduling order with specific dates on or before 1/7/2022. (Geraldino−Karasek, Clarilde) (Entered: 12/10/2021) |
| 12/14/2021 | 95 | LETTER to the Court from Dmitry Shkipin, Open Real Estate Marketplace. (Geraldino−Karasek, Clarilde) (Entered: 12/15/2021) |
| 12/22/2021 | 96 | MOTION for Extension of Time to February 1, 2022 by MLS Property Information Network, Inc..(Anderson, Jon) (Entered: 12/22/2021) |
| 12/27/2021 | 97 | Judge Patti B. Saris: ELECTRONIC ORDER entered ALLOWED re 96 Assented MOTION to Extend Deadlines. (Geraldino−Karasek, Clarilde) (Entered: 12/27/2021) |
| 12/27/2021 | 98 | RESET DEADLINES as to: Defendants' Answer and Joint Proposed Scheduling Order due by 2/1/2022. (Geraldino−Karasek, Clarilde) (Entered: 12/27/2021) |
| 02/01/2022 | 99 | ANSWER to 1 Complaint, with Jury Demand by BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc..(MacGill, Robert) (Entered: 02/01/2022) |
| 02/01/2022 | 100 | ANSWER to 1 Complaint, with Jury Demand by Realogy Holdings Corp..(Rowley, Samuel) (Entered: 02/01/2022) |
| 02/01/2022 | 101 | ANSWER to 1 Complaint, with Jury Demand by MLS Property Information Network, Inc..(Anderson, Jon) (Entered: 02/01/2022) |
| 02/01/2022 | 102 | ANSWER to 1 Complaint, with Jury Demand by Keller Williams Realty, Inc..(Hayes, Anna) (Entered: 02/01/2022) |
| 02/01/2022 | 103 | ANSWER to 1 Complaint, with Jury Demand by RE/MAX, LLC.(LeVee, Jeffrey) (Entered: 02/01/2022) |
| 02/01/2022 | 104 | JOINT PROPOSED SCHEDULE by Jennifer Nosalek. (Klein, Seth) Modified docket text on 2/16/2022 (Geraldino−Karasek, Clarilde). (Entered: 02/01/2022) |
| 02/08/2022 | 105 | NOTICE of Withdrawal of Appearance by Jenna L. LaPointe *Notice of Withdrawal of Appearance by Jeremy Gray* (LaPointe, Jenna) (Entered: 02/08/2022) |
| 02/08/2022 | 106 | MOTION for Leave to Appear Pro Hac Vice for admission of Eric P. Enson Filing fee: $ 100, receipt number AMADC−9175524 by RE/MAX, LLC. (Attachments: # 1 Affidavit Eric P. Enson Affidavit)(LaPointe, Jenna) (Entered: 02/08/2022) |
| 02/16/2022 | 107 | Judge Patti B. Saris: ELECTRONIC ORDER entered granting 106 Motion for Leave to Appear Pro Hac Vice Added Eric P. Enson.<br><br>**Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register−account.**<br><br>Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen−pro−hac−vice.htm.<br><br>A Notice of Appearance must be entered on the docket by the newly admitted attorney.<br><br>(Geraldino−Karasek, Clarilde) (Entered: 02/16/2022) |
| 02/16/2022 | 108 | Judge Patti B. Saris: ELECTRONIC ORDER entered " Approved" re 104 JOINT PROPOSED SCHEDULE.<br><br>Amended Pleadings due by 3/1/2022.<br><br>Motion for Class Certification due by 5/5/2023; |

| | | |
|---|---|---|
| | | Responses to Motion for Class Certification and Any Daubert Motions by 8/4/2023; Reply to Motion for Class Certification and Opposition to Daubert Motions due by 11/10/2023; Sur–Reply to Motion for Class Certification due by 11/22/2023.<br><br>Fact Discovery to be completed by 2/1/2024.<br><br>(Geraldino–Karasek, Clarilde) (Entered: 02/16/2022) |
| 03/01/2022 | 109 | AMENDED COMPLAINT *(Filed Pursuant to Scheduling Order [ECF No. 108])* against All Defendants, filed by Jennifer Nosalek.(Klein, Seth) (Entered: 03/01/2022) |
| 03/01/2022 | 110 | (CORRECTED ) AMENDED COMPLAINT against All Defendants adding Randy Hirschorn and Tracey Hirschorn (Plaintiffs) , filed by Jennifer Nosalek.(Klein, Seth) Modified docket text on 3/8/2022 (Geraldino–Karasek, Clarilde). (Entered: 03/01/2022) |
| 03/01/2022 | 111 | NOTICE of Filing of CORRECTED AMENDED COMPLAINT 110 and and Addition of Named Plaintiffs by Jennifer Nosalek (Klein, Seth) Modified docket text on 3/8/2022 (Geraldino–Karasek, Clarilde). (Entered: 03/01/2022) |
| 03/14/2022 | 112 | ANSWER to 110 Amended Complaint by RE/MAX, LLC.(LeVee, Jeffrey) (Entered: 03/14/2022) |
| 03/14/2022 | 113 | ANSWER to 110 Amended Complaint by Keller Williams Realty, Inc..(Hayes, Anna) (Entered: 03/14/2022) |
| 03/14/2022 | 114 | ANSWER to 110 Amended Complaint by BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc..(MacGill, Robert) (Entered: 03/14/2022) |
| 03/14/2022 | 115 | ANSWER to 110 Amended Complaint by MLS Property Information Network, Inc..(Anderson, Jon) (Entered: 03/14/2022) |
| 03/15/2022 | 116 | ANSWER to 110 Amended Complaint by Realogy Holdings Corp..(Rowley, Samuel) (Entered: 03/15/2022) |
| 07/18/2022 | 117 | NOTICE of Appearance by William S. D. Cravens on behalf of Realogy Holdings Corp. (Cravens, William) (Entered: 07/18/2022) |
| 07/21/2022 | 118 | NOTICE of Withdrawal of Appearance by Samuel R. Rowley (Rowley, Samuel) (Entered: 07/21/2022) |
| 07/26/2022 | 119 | CORPORATE DISCLOSURE STATEMENT by Realogy Holdings Corp. identifying Corporate Parent BlackRock, Inc., Corporate Parent Anywhere Real Estate Inc. for Realogy Holdings Corp... (Cravens, William) (Entered: 07/26/2022) |
| 08/01/2022 | 120 | Joint MOTION for Protective Order by Randy Hirschorn, Tracey Hirschorn, Jennifer Nosalek. (Attachments: # 1 Exhibit A)(Klein, Seth) (Entered: 08/01/2022) |
| 08/01/2022 | 121 | Joint MOTION for Order to Approve Stipulation Regarding Discovery of Electronically Stored Information by Randy Hirschorn, Tracey Hirschorn, Jennifer Nosalek. (Attachments: # 1 Exhibit A)(Klein, Seth) (Entered: 08/01/2022) |
| 08/01/2022 | 122 | Assented to MOTION to Modify Scheduling Order [ECF Nos. 104, 108] by Randy Hirschorn, Tracey Hirschorn, Jennifer Nosalek.(Klein, Seth) (Entered: 08/01/2022) |
| 08/03/2022 | 123 | Judge Patti B. Saris: ELECTRONIC ORDER entered Allowed 121 Joint Motion for Order to Approve Stipulation Regarding Discovery of Electronically Stored Information (Geraldino–Karasek, Clarilde) (Entered: 08/04/2022) |
| 08/03/2022 | 124 | Judge Patti B. Saris: STIPULATION AND ORDER entered Regarding Discovery of Electronically Stored Information.(Geraldino–Karasek, Clarilde) (Entered: 08/04/2022) |
| 08/03/2022 | 125 | Judge Patti B. Saris: ELECTRONIC ORDER entered ALLOWED re 120 Joint MOTION for Protective Order. (Geraldino–Karasek, Clarilde) (Entered: 08/04/2022) |
| 08/03/2022 | 126 | Judge Patti B. Saris: ORDER entered. PROTECTIVE ORDER.(Geraldino–Karasek, Clarilde) (Entered: 08/04/2022) |

| 08/03/2022 | 127 | Judge Patti B. Saris: ENDORSED ORDER entered ALLOWED 122 Assented to Motion to Modify Scheduling Order.(Geraldino–Karasek, Clarilde) (Entered: 08/04/2022) |
|---|---|---|
| 08/04/2022 | 128 | RESET SCHEDULING ORDER re 127 Order Modify Scheduling Order.<br><br>Motion for Class Certification due by 2/5/2024;<br><br>Response to Motion for Class Certification and Any Daubert Motions due by 5/6/2024;<br><br>Reply to Motion for Class Certification and Opposition to Daubert Motions due by 8/12/2024;<br><br>Sur–Reply to Motion for Class Certification due by 8/22/2024.<br><br>Fact Discovery to be completed by 11/1/2024. (Geraldino–Karasek, Clarilde) (Entered: 08/04/2022) |
| 08/05/2022 | 129 | MOTION to Compel *as to Defendant Realogy Holdings Corp.* by Randy Hirschorn, Tracey Hirschorn, Jennifer Nosalek.(Klein, Seth) (Entered: 08/05/2022) |
| 08/05/2022 | 130 | MEMORANDUM in Support re 129 MOTION to Compel *as to Defendant Realogy Holdings Corp.* filed by Randy Hirschorn, Tracey Hirschorn, Jennifer Nosalek. (Attachments: # 1 Exhibit A)(Klein, Seth) (Entered: 08/05/2022) |
| 08/12/2022 | 131 | MOTION for Extension of Time to August 26, 2022 to File Response/Reply as to 129 MOTION to Compel *as to Defendant Realogy Holdings Corp.* by Realogy Holdings Corp..(Cravens, William) (Entered: 08/12/2022) |
| 08/12/2022 | 132 | Judge Patti B. Saris: ELECTRONIC ORDER entered ALLOWED re 131 MOTION for Extension of Time to File Response/Reply as to 129 MOTION to Compel.<br><br>Response due by 8/26/2022. (Geraldino–Karasek, Clarilde) (Entered: 08/12/2022) |
| 08/12/2022 | 133 | Judge Patti B. Saris: ELECTRONIC ORDER entered. REFERRING CASE to Magistrate Judge M. Page Kelley Referred for : 129 MOTION to Compel *as to Defendant Realogy Holdings Corp.*. (Geraldino–Karasek, Clarilde) Motion referred to M. Page Kelley. (Entered: 08/12/2022) |
| 08/22/2022 | 134 | MOTION for Leave to Appear Pro Hac Vice for admission of Christopher L. Lebsock and Halli Spraggins Filing fee: $ 200, receipt number AMADC–9462232 by Randy Hirschorn, Tracey Hirschorn, Jennifer Nosalek. (Attachments: # 1 Declaration of Halli Spraggins, # 2 Declaration of Christopher L. Lebsock)(Needham, Douglas) (Entered: 08/22/2022) |
| 08/26/2022 | 135 | Judge Patti B. Saris: ELECTRONIC ORDER entered granting 134 Motion for Leave to Appear Pro Hac Vice Added Christopher L. Lebsock and Halli Spraggins.<br><br>**Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register–account.**<br><br>Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen–pro–hac–vice.htm.<br><br>A Notice of Appearance must be entered on the docket by the newly admitted attorney.<br><br>(Geraldino–Karasek, Clarilde) (Entered: 08/26/2022) |
| 08/26/2022 | 136 | Opposition re 129 MOTION to Compel *as to Defendant Realogy Holdings Corp.* filed by Realogy Holdings Corp.. (Attachments: # 1 Exhibit A –Pls.' 1st Set RFPs on All Defs.pdf, # 2 Exhibit B – Realogys Resp. and Objs. to Pls. 1st Set of RFPs.pdf, # 3 Exhibit C – Email re Scope of Definition of Buyer Broker Rule.pd)(Cravens, William) (Entered: 08/26/2022) |

| 09/08/2022 | 137 | ELECTRONIC NOTICE Setting Hearing on Motion <u>129</u> MOTION to Compel *as to Defendant Realogy Holdings Corp.* : |
| | | This hearing will be conducted by video conference. Counsel of record will receive a video conference invite at the email registered in CM/ECF. If you have technical or compatibility issues with the technology, please notify the session's courtroom deputy as soon as possible. |
| | | Access to the hearing will be made available to the media and public. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html. |
| | | For questions regarding access to hearings, you may refer to the Court's general orders and public notices available on www.mad.uscourts.gov or contact media@mad.uscourts.gov. |
| | | Motion Hearing set for 9/26/2022 10:00 AM in Courtroom 24 (Remote only) before Magistrate Judge M. Page Kelley. (Vieira, Leonardo) (Entered: 09/08/2022) |
| 09/19/2022 | <u>138</u> | Assented to MOTION for Leave to Appear Pro Hac Vice for admission of Jason L. Chrestionson Filing fee: $ 100, receipt number AMADC–9504070 by Realogy Holdings Corp.. (Attachments: # <u>1</u> Declaration of Jason L. Chrestionson in Support of Assented–To Motion To Admit Non–Resident Attorney Pro Hac Vice)(Cravens, William) (Entered: 09/19/2022) |
| 09/20/2022 | 139 | Judge Patti B. Saris: ELECTRONIC ORDER entered granting <u>138</u> Motion for Leave to Appear Pro Hac Vice Added Jason L. Chrestionson. |
| | | **Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register–account.** |
| | | Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen–pro–hac–vice.htm. |
| | | A Notice of Appearance must be entered on the docket by the newly admitted attorney. |
| | | (Geraldino–Karasek, Clarilde) (Entered: 09/20/2022) |
| 09/26/2022 | 140 | Electronic Clerk's Notes for proceedings held before Magistrate Judge M. Page Kelley: Motion Hearing held on 9/26/2022 by video re <u>129</u> MOTION to Compel *as to Defendant Realogy Holdings Corp.* filed by Randy Hirschorn, Jennifer Nosalek, Tracey Hirschorn. Court hears argument on motion to compel and takes the motion under advisement. (Court Reporter: Digital Recording.) To order a copy of this Digital Recording, please go to https://www.mad.uscourts.gov/caseinfo/transcripts.htm#audio–recordings . For a transcript of this proceeding, contact Katelyn Coppola by email at mad_transcripts@mad.uscourts.gov.(Attorneys present: Klein, Spraggins, Cravens, Hasdoo, Hayes, Kull, Anderson, Chrestionson, Mahoney, Ray, Keas) (Vieira, Leonardo) (Entered: 09/26/2022) |
| 09/28/2022 | <u>141</u> | NOTICE of Appearance by Christopher L. Lebsock on behalf of Randy Hirschorn, Tracey Hirschorn, Jennifer Nosalek (Lebsock, Christopher) (Entered: 09/28/2022) |
| 10/03/2022 | <u>142</u> | Magistrate Judge M. Page Kelley: ORDER entered. MEMORANDUM AND ORDER: For the above reasons, plaintiffs' motion to compel <u>129</u> is **GRANTED** in part and **DENIED** in part. In responding to plaintiffs' discovery requests, Realogy shall interpret the term"Buyer–Broker Commission Rule" to reach documents concerning (i) the specific MLS PIN Ruleon offers of compensation, and (ii) any discussion as a general matter of rules requiring listingagents to offer cooperative compensation to buyer agents (a) in MLS PIN's service area; (b)nationally; or (c) in unspecified geographies (and thus generally applicable). (Vieira, Leonardo) (Entered: 10/03/2022) |
| 10/03/2022 | <u>143</u> | NOTICE of Appearance by Halli E Spraggins on behalf of Randy Hirschorn, Tracey Hirschorn, Jennifer Nosalek (Spraggins, Halli) (Entered: 10/03/2022) |

| | | |
|---|---|---|
| 10/25/2022 | 144 | Transcript of Motion Hearing held on September 26, 2022, before Chief Magistrate Judge M. Page Kelley. The Transcript may be purchased through the Court Reporter, viewed at the public terminal, or viewed through PACER after it is released. Court Reporter Name and Contact Information: Valerie OHara at vaohara@gmail.com. Redaction Request due 11/15/2022. Redacted Transcript Deadline set for 11/25/2022. Release of Transcript Restriction set for 1/23/2023. (Coppola, Katelyn) (Entered: 11/02/2022) |
| 10/25/2022 | 145 | NOTICE is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. Counsel are referred to the Court's Transcript Redaction Policy, available on the court website at http://www.mad.uscourts.gov/caseinfo/transcripts.htm (Coppola, Katelyn) (Entered: 11/02/2022) |
| 12/14/2022 | 146 | Assented to MOTION for Leave to Appear Pro Hac Vice for admission of Patrick J. Sanders Filing fee: $ 100, receipt number AMADC–9629725 by BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc.. (Attachments: # 1 Affidavit Declaration of Patrick J. Sanders in Support of Motion for Admission Pro Hac Vice)(Raux, Geoffrey) (Entered: 12/14/2022) |
| 12/22/2022 | 147 | Judge Patti B. Saris: ELECTRONIC ORDER entered granting 146 Motion for Leave to Appear Pro Hac Vice Added Patrick J. Sanders.<br><br>**Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register–account. You must put the docket number on your form when registering or it will be rejected.**<br><br>Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen–pro–hac–vice.htm.<br><br>A Notice of Appearance must be entered on the docket by the newly admitted attorney.<br><br>(Geraldino–Karasek, Clarilde) (Entered: 12/22/2022) |
| 01/03/2023 | 148 | Assented to MOTION for Leave to File Proposed Second Amended Complaint by Randy Hirschorn, Tracey Hirschorn, Jennifer Nosalek.<br><br>(Attachments: # 1 Exhibit A (CLEAN Proposed Second Amended Complaint), # 2 Exhibit B (REDLINE Proposed Second Amended Complaint))(Klein, Seth) Modified docket event on 1/5/2023 (Geraldino–Karasek, Clarilde). (Entered: 01/03/2023) |
| 01/06/2023 | 149 | Judge Patti B. Saris: ENDORSED ORDER entered ALLOWED re 148 Assented to Motion for Leave to File Proposed Second Amended Complaint.<br><br>Counsel using the Electronic Case Filing System should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. Counsel must include – Leave to file granted on (date of order)– in the caption of the document. (Geraldino–Karasek, Clarilde) (Entered: 01/06/2023) |
| 01/09/2023 | 150 | AMENDED COMPLAINT *Second Amended Complaint (Leave to File Granted on January 6, 2023 [ECF 149])* against All Defendants, filed by Randy Hirschorn, Tracey Hirschorn, Jennifer Nosalek.(Klein, Seth) (Entered: 01/09/2023) |
| 01/23/2023 | 151 | NOTICE of Appearance by William S. D. Cravens on behalf of Anywhere Real Estate Inc., Better Homes and Gardens Real Estate LLC, Century 21 Real Estate LLC, Coldwell Banker Real Estate LLC, ERA Franchise Systems LLC, Sotheby's International Realty Affiliates LLC (Cravens, William) (Entered: 01/23/2023) |
| 01/23/2023 | 152 | ANSWER to 150 Amended Complaint by Keller Williams Realty, Inc..(Kully, David) (Entered: 01/23/2023) |
| 01/23/2023 | 153 | NOTICE of Appearance by Stacey Anne Mahoney on behalf of Anywhere Real Estate Inc., Better Homes and Gardens Real Estate LLC, Century 21 Real Estate LLC, Coldwell Banker Real Estate LLC, ERA Franchise Systems LLC, Sotheby's International Realty Affiliates LLC (Mahoney, Stacey) (Entered: 01/23/2023) |

| 01/23/2023 | 154 | Joint MOTION for Extension of Time to February 22, 2023 to File Answer re 150 Amended Complaint by Anywhere Real Estate Inc., Better Homes and Gardens Real Estate LLC, Century 21 Real Estate LLC, Coldwell Banker Real Estate LLC, ERA Franchise Systems LLC, Sotheby's International Realty Affiliates LLC. |
| --- | --- | --- |
| | | (Attachments: # 1 Exhibit A – Waiver of Service, # 2 Exhibit B – Waiver of Service, # 3 Exhibit C – Waiver of Service, # 4 Exhibit D – Waiver of Service, # 5 Exhibit E – Waiver of Service)(Cravens, William) (Entered: 01/23/2023) |
| 01/23/2023 | 155 | ANSWER to 150 Amended Complaint *ANSWER TO SECOND AMENDED COMPLAINT* by BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc..(MacGill, Robert) (Entered: 01/23/2023) |
| 01/23/2023 | 156 | ANSWER to 150 Amended Complaint by MLS Property Information Network, Inc..(Anderson, Jon) (Entered: 01/23/2023) |
| 01/23/2023 | 157 | ANSWER to 150 Amended Complaint by RE/MAX, LLC.(LeVee, Jeffrey) (Entered: 01/23/2023) |
| 01/24/2023 | 158 | NOTICE of Appearance by Jason L. Chrestionson on behalf of Anywhere Real Estate Inc., Better Homes and Gardens Real Estate LLC, Century 21 Real Estate LLC, Coldwell Banker Real Estate LLC, ERA Franchise Systems LLC, Sotheby's International Realty Affiliates LLC (Chrestionson, Jason) (Entered: 01/24/2023) |
| 01/24/2023 | 159 | NOTICE of Appearance by Kenneth M. Kliebard on behalf of Anywhere Real Estate Inc., Better Homes and Gardens Real Estate LLC, Century 21 Real Estate LLC, Coldwell Banker Real Estate LLC, ERA Franchise Systems LLC, Sotheby's International Realty Affiliates LLC (Kliebard, Kenneth) (Entered: 01/24/2023) |
| 01/24/2023 | 160 | Case no longer referred to Magistrate Judge M. Page Kelley. (Geraldino–Karasek, Clarilde) (Entered: 01/24/2023) |
| 01/25/2023 | 161 | Judge Patti B. Saris: ELECTRONIC ORDER entered ALLOWED re 154 Joint Motion for Extension of Time to File Answer re 150 Amended Complaint. |
| | | Anywhere Real Estate Inc., Better Homes and Gardens Real Estate LLC ; Century 21 Real Estate LLC ; Coldwell Banker Real Estate LLC ; ERA Franchise Systems LLC ; Sotheby's International Realty Affiliates LLC – ANSWER DUE 2/22/2023. |
| | | (Geraldino–Karasek, Clarilde) (Entered: 01/25/2023) |
| 02/17/2023 | 162 | MOTION for Leave to Appear Pro Hac Vice for admission of Jose Roman Lavergne Filing fee: $ 125, receipt number AMADC–9724149 by Randy Hirschorn, Tracey Hirschorn, Jennifer Nosalek. (Attachments: # 1 Lavergne Declaration)(Needham, Douglas) (Entered: 02/17/2023) |
| 02/21/2023 | 163 | NOTICE of Withdrawal of Appearance by Douglas P. Needham *for Halli E. Spraggins* (Needham, Douglas) (Entered: 02/21/2023) |
| 02/21/2023 | 164 | ANSWER to 150 Amended Complaint by Anywhere Real Estate Inc..(Cravens, William) (Entered: 02/21/2023) |
| 02/21/2023 | 165 | ANSWER to 150 Amended Complaint by Better Homes and Gardens Real Estate LLC.(Cravens, William) (Entered: 02/21/2023) |
| 02/21/2023 | 166 | ANSWER to 150 Amended Complaint by Century 21 Real Estate LLC.(Cravens, William) (Entered: 02/21/2023) |
| 02/21/2023 | 167 | ANSWER to 150 Amended Complaint by Coldwell Banker Real Estate LLC.(Cravens, William) (Entered: 02/21/2023) |
| 02/21/2023 | 168 | ANSWER to 150 Amended Complaint by ERA Franchise Systems LLC.(Cravens, William) (Entered: 02/21/2023) |
| 02/21/2023 | 169 | ANSWER to 150 Amended Complaint by Sotheby's International Realty Affiliates LLC.(Cravens, William) (Entered: 02/21/2023) |
| 02/21/2023 | 170 | CORPORATE DISCLOSURE STATEMENT by Better Homes and Gardens Real Estate LLC identifying Corporate Parent Anywhere Real Estate Services Group LLC, |

| | | |
|---|---|---|
| | | Corporate Parent Anywhere Real Estate Group LLC, Corporate Parent Anywhere Intermediate Holdings LLC, Corporate Parent Anywhere Real Estate Inc. ("Anywhere") for Better Homes and Gardens Real Estate LLC.. (Cravens, William) (Entered: 02/21/2023) |
| 02/21/2023 | 171 | CORPORATE DISCLOSURE STATEMENT by Century 21 Real Estate LLC identifying Corporate Parent Anywhere Real Estate Services Group LLC, Corporate Parent Anywhere Real Estate Group LLC, Corporate Parent Anywhere Intermediate Holdings LLC, Corporate Parent Anywhere Real Estate Inc. (Anywhere) for Century 21 Real Estate LLC.. (Cravens, William) (Entered: 02/21/2023) |
| 02/21/2023 | 172 | CORPORATE DISCLOSURE STATEMENT by Coldwell Banker Real Estate LLC identifying Corporate Parent Anywhere Real Estate Services Group LLC, Corporate Parent Anywhere Real Estate Group LLC, Corporate Parent Anywhere Intermediate Holdings LLC, Corporate Parent Anywhere Real Estate Inc. (Anywhere) for Coldwell Banker Real Estate LLC.. (Cravens, William) (Entered: 02/21/2023) |
| 02/21/2023 | 173 | CORPORATE DISCLOSURE STATEMENT by ERA Franchise Systems LLC identifying Corporate Parent Anywhere Real Estate Services Group LLC, Corporate Parent Anywhere Real Estate Group LLC, Corporate Parent Anywhere Intermediate Holdings LLC, Corporate Parent Anywhere Real Estate Inc. (Anywhere) for ERA Franchise Systems LLC.. (Cravens, William) (Entered: 02/21/2023) |
| 02/21/2023 | 174 | CORPORATE DISCLOSURE STATEMENT by Sotheby's International Realty Affiliates LLC identifying Corporate Parent Anywhere Real Estate Services Group LLC, Corporate Parent Anywhere Real Estate Group LLC, Corporate Parent Anywhere Intermediate Holdings LLC, Corporate Parent Anywhere Real Estate Inc. (Anywhere) for Sotheby's International Realty Affiliates LLC.. (Cravens, William) (Entered: 02/21/2023) |
| 02/23/2023 | 175 | WAIVER OF SERVICE Returned Executed by Tracey Hirschorn, Randy Hirschorn, Jennifer Nosalek. RE/MAX Integrated Regions, LLC waiver sent on 1/26/2023, answer due 3/27/2023. (Needham, Douglas) (Entered: 02/23/2023) |
| 02/23/2023 | 176 | Judge Patti B. Saris: ELECTRONIC ORDER entered granting 162 Motion for Leave to Appear Pro Hac Vice Added Jose Roman Lavergne. **Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register–account. You must put the docket number on your form when registering or it will be rejected.** Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen–pro–hac–vice.htm. A Notice of Appearance must be entered on the docket by the newly admitted attorney. (Geraldino−Karasek, Clarilde) (Entered: 02/23/2023) |
| 03/01/2023 | 177 | NOTICE of Appearance by Jose Roman Lavergne on behalf of Randy Hirschorn, Tracey Hirschorn, Jennifer Nosalek (Lavergne, Jose) (Entered: 03/01/2023) |
| 03/24/2023 | 178 | NOTICE of Appearance by Kathleen Wallace on behalf of RE/MAX Integrated Regions, LLC (Wallace, Kathleen) (Entered: 03/24/2023) |
| 03/24/2023 | 179 | NOTICE of Appearance by Eddie Hasdoo on behalf of RE/MAX Integrated Regions, LLC (Hasdoo, Eddie) (Entered: 03/24/2023) |
| 03/24/2023 | 180 | NOTICE of Appearance by Jeffrey A. LeVee on behalf of RE/MAX Integrated Regions, LLC (LeVee, Jeffrey) (Entered: 03/24/2023) |
| 03/27/2023 | 181 | CORPORATE DISCLOSURE STATEMENT by RE/MAX Integrated Regions, LLC identifying Corporate Parent RE/MAX, LLC, Corporate Parent RMCO, LLC, Corporate Parent RE/MAX Holdings, Inc. for RE/MAX Integrated Regions, LLC.. (LeVee, Jeffrey) (Entered: 03/27/2023) |

| 03/27/2023 | 182 | ANSWER to Complaint with Jury Demand by RE/MAX Integrated Regions, LLC.(LeVee, Jeffrey) (Entered: 03/27/2023) |
|---|---|---|
| 04/20/2023 | 183 | NOTICE of Appearance by Eric P. Enson on behalf of RE/MAX Integrated Regions, LLC (Enson, Eric) (Entered: 04/20/2023) |
| 05/19/2023 | 184 | MOTION to Modify Scheduling Order – *PLAINTIFFS' SECOND UNOPPOSED MOTION TO MODIFY SCHEDULING ORDER [ECF Nos. 122, 127]* by Randy Hirschorn, Tracey Hirschorn, Jennifer Nosalek.(Klein, Seth) (Entered: 05/19/2023) |
| 05/22/2023 | 185 | Judge Patti B. Saris: ENDORSED ORDER entered DENIED re 184 PLAINTIFFS' SECOND UNOPPOSED MOTION TO MODIFY SCHEDULING ORDER. (Geraldino–Karasek, Clarilde) (Entered: 05/23/2023) |
| 05/23/2023 | 186 | ELECTRONIC NOTICE OF STATUS CONFERENCE BY VIDEO:<br><br>STATUS CONFERENCE SET FOR 6/1/2023 09:30 AM BY VIDEO before Judge Patti B. Saris..<br><br>This hearing will be conducted by video conference. Counsel of record will receive a video conference invite at the email registered in CM/ECF. If you have technical or compatibility issues with the technology, please notify the courtroom deputy of the session as soon as possible.<br><br>Access to the hearing will be made available to the media and public. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html.<br><br>For questions regarding access to hearings, you may refer to the general orders and public notices of the Court available on www.mad.uscourts.gov or contact media@mad.uscourts.gov.<br><br>(Geraldino–Karasek, Clarilde) (Entered: 05/23/2023) |
| 05/26/2023 | 187 | ELECTRONIC NOTICE OF RESCHEDULING STATUS CONFERENCE BY VIDEO:<br><br>STATUS CONFERENCE RESET FROM 6/1/2023 TO 6/16/2023 03:30 PM BY VIDEO before Judge Patti B. Saris.<br><br>This hearing will be conducted by video conference. Counsel of record will receive a video conference invite at the email registered in CM/ECF. If you have technical or compatibility issues with the technology, please notify the courtroom deputy of the session as soon as possible.<br><br>Access to the hearing will be made available to the media and public. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html.<br><br>For questions regarding access to hearings, you may refer to the general orders and public notices of the Court available on www.mad.uscourts.gov or contact media@mad.uscourts.gov.<br><br>(Geraldino–Karasek, Clarilde) (Entered: 05/26/2023) |
| 06/16/2023 | 188 | Electronic Clerk's Notes for proceedings held before Judge Patti B. Saris: Status Conference held on 6/16/2023 by Video<br><br>ORDERED:<br><br>Parties shall file an Amended Joint Statement on or before 7/14/2023. (Court Reporter: Lee Marzilli at leemarz@aol.com.) (mm) (Entered: 06/16/2023) |
| 06/30/2023 | 189 | MOTION for Leave to Appear Pro Hac Vice for admission of J. Matthew Goodin by MLS Property Information Network, Inc..(Anderson, Jon) (Entered: 06/30/2023) |

| 06/30/2023 | 190 | MOTION for Order to Preliminarily Approve Settlement Agreement, Conditionally Certify Settlement Class, Approve Settlement Notice Plan, and Schedule Final Approval Hearing by Mary Jane Bauman, Randy Hirschorn, Tracey Hirschorn, Jennifer Nosalek.(Klein, Seth) (Entered: 06/30/2023) |
|---|---|---|
| 06/30/2023 | 191 | MEMORANDUM in Support re 190 MOTION for Order to Preliminarily Approve Settlement Agreement, Conditionally Certify Settlement Class, Approve Settlement Notice Plan, and Schedule Final Approval Hearing filed by Randy Hirschorn, Tracey Hirschorn, Jennifer Nosalek. (Klein, Seth) (Entered: 06/30/2023) |
| 06/30/2023 | 192 | AFFIDAVIT in Support re 190 MOTION for Order to Preliminarily Approve Settlement Agreement, Conditionally Certify Settlement Class, Approve Settlement Notice Plan, and Schedule Final Approval Hearing *Declaration of Seth R. Klein* filed by Randy Hirschorn, Tracey Hirschorn, Jennifer Nosalek. (Attachments: # 1 Exhibit A (Settlement Agreement with Exhibits), # 2 Exhibit B (IKR Firm Resume), # 3 Exhibit C (Hausfeld Firm Resume))(Klein, Seth) (Entered: 06/30/2023) |
| 06/30/2023 | 193 | AFFIDAVIT in Support re 190 MOTION for Order to Preliminarily Approve Settlement Agreement, Conditionally Certify Settlement Class, Approve Settlement Notice Plan, and Schedule Final Approval Hearing *Declaration of Jeanne C. Finegan* filed by Randy Hirschorn, Tracey Hirschorn, Jennifer Nosalek. (Klein, Seth) (Entered: 06/30/2023) |
| 06/30/2023 | 194 | Proposed Document(s) submitted by Randy Hirschorn, Tracey Hirschorn, Jennifer Nosalek. Document received: [Proposed] Order Preliminarily Approving Settlement Between Plaintiffs and MLS Property Information Network, Inc.. (Klein, Seth) (Entered: 06/30/2023) |
| 07/05/2023 | 195 | (PLEASE DISREGARD) Erroneous Docket Entry (Farside, Joseph) Modified docket text accordingly on 7/5/2023 (Geraldino−Karasek, Clarilde). (Entered: 07/05/2023) |
| 07/05/2023 | 196 | Notice of correction to docket made by Court staff. Correction: Docket No. 195 corrected because: docket entry done in error. (Geraldino−Karasek, Clarilde) (Entered: 07/05/2023) |
| 07/05/2023 | 197 | Filing fee/payment: $ 125.00, receipt number AMADC9932174 for 189 MOTION for Leave to Appear Pro Hac Vice for admission of J. Matthew Goodin (Geraldino−Karasek, Clarilde) (Entered: 07/05/2023) |
| 07/05/2023 | 198 | Judge Patti B. Saris: ELECTRONIC ORDER entered granting 189 Motion for Leave to Appear Pro Hac Vice Added J. Matthew Goodin.<br><br>**Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register−account. You must put the docket number on your form when registering or it will be rejected.**<br><br>Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen−pro−hac−vice.htm.<br><br>A Notice of Appearance must be entered on the docket by the newly admitted attorney.<br><br>(Geraldino−Karasek, Clarilde) (Entered: 07/05/2023) |
| 07/07/2023 | 199 | NOTICE of Appearance by James Matthew Goodin on behalf of MLS Property Information Network, Inc. (Goodin, James) (Entered: 07/07/2023) |
| 07/10/2023 | 200 | ELECTRONIC NOTICE Setting Hearing on 190 MOTION for Order to Preliminarily Approve Settlement Agreement, Conditionally Certify Settlement Class, Approve Settlement Notice Plan, and Schedule Final Approval Hearing :<br><br>This hearing will be conducted by video conference. Counsel of record will receive a video conference invite at the email registered in CM/ECF. If you have technical or compatibility issues with the technology, please notify the courtroom deputy of the session as soon as possible. |

| | | |
|---|---|---|
| | | Access to the hearing will be made available to the media and public. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html.<br><br>For questions regarding access to hearings, you may refer to the general orders and public notices of the Court available on www.mad.uscourts.gov or contact media@mad.uscourts.gov.<br><br>**Motion Hearing set for 7/19/2023 02:30 PM BY VIDEO before Judge Patti B. Saris. (Entered: 07/10/2023)** |
| 07/13/2023 | 201 | Assented to MOTION to Continue Preliminary Approval Hearing to after August 8, 2023 by MLS Property Information Network, Inc..(Anderson, Jon) (Entered: 07/13/2023) |
| 07/14/2023 | 202 | MOTION to Seal Document *re Select Materials Supporting the HomeServices Defendants' Motion for Summary Judgment* by BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc.. (Attachments: # 1 Affidavit Declaration of Jennifer Keas)(Raux, Geoffrey) (Entered: 07/14/2023) |
| 07/14/2023 | 203 | MOTION for Judgment as a Matter of Law *HomeServices Defendants Motion for Summary Judgment* by BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc..(Raux, Geoffrey) (Entered: 07/14/2023) |
| 07/14/2023 | 204 | MEMORANDUM in Support re 203 MOTION for Judgment as a Matter of Law *HomeServices Defendants Motion for Summary Judgment* filed by BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc.. (Attachments: # 1 Affidavit Atty. Decl. of Jennifer Keas, # 2 Affidavit Ex. A – Decl. of Dana Strandmo, # 3 Affidavit Ex. B – Decl. Rosalie Warner, # 4 Affidavit Ex. C – Decl. of George Patsio, # 5 Affidavit Ex. D – Decl. Patrick Fortin, # 6 Exhibit Ex. E – BHH Affiliates 2022 Franchise Disclosure Document, # 7 Exhibit Ex. F – BHH Operations Manual for US Franchisees, # 8 Exhibit Ex. G – (MLSPIN00000211–240 (re stakeholder shares of MLS PIN), # 9 Exhibit Ex. H – MLSPIN00003258–3272 (1998 MLS PIN Rules and Regulations), # 10 Supplement Ex. 1 to Patsio Decl. (CRG–BHH Franchise Agreement))(Raux, Geoffrey) (Additional attachment(s) added on 7/21/2023: # 11 HSD's Unredacted Memorandum ISO Motion for SJ (SEALED), # 12 Ex. A – FINAL Strandmo Dec. ISO MSJ (Unredacted–SEALED), # 13 Ex. B – FINAL Warner Decl. ISO MSJ (Unredacted–SEALED), # 14 Ex. C – FINAL Patsio Dec. ISO MSJ (Unredacted–SEALED), # 15 Ex. D – FINAL Fortin Dec. ISO MSJ (Unredacted–SEALED), # 16 Ex. E – BHH 2022 FDD (BHH–MO–0004081) (Unredacted–SEALED), # 17 Ex. F – BHHS Operations Manual (BHH–MO–0003755) (Unredacted–SEALED)) (McManus, Caetlin). (Additional attachment(s) added on 7/21/2023: # 18 Ex. G – MLSPIN00000211 (Unredacted–SEALED), # 19 Ex. H – MLSPIN00003258 (Unredacted–SEALED), # 20 Ex. I – MLS PIN Rules and Regulations (2022) (Unredacted–SEALED)) (McManus, Caetlin). (Entered: 07/14/2023) |
| 07/14/2023 | 205 | Recommendations for Scheduling Order *Parties' Joint Proposed Litigation Schedule*. (Klein, Seth) (Entered: 07/14/2023) |
| 07/18/2023 | 206 | Judge Patti B. Saris: ELECTRONIC ORDER entered GRANTING 201 Assented To Motion for a Brief Continuance oF Preliminary Approval Hearing. Hearing scheduled for 7/19/2023 is hereby canceled until further notice<br><br>Clerk to issue a Notice of Rescheduling – notice to follow<br><br>(Molloy, Maryellen) (Entered: 07/18/2023) |
| 07/19/2023 | 207 | ELECTRONIC NOTICE OF RESCHEDULING – Motion for Order to Preliminarily Approve Settlement Agreement, Conditionally Certify Settlement Class, Approve Settlement Notice Plan, and Schedule Final Approval Hearing.<br><br>This hearing will be conducted by video conference. Counsel of record will receive a video conference invite at the email registered in CM/ECF. If you have technical or compatibility issues with the technology, please notify the courtroom deputy of the session as soon as possible. |

| | | Access to the hearing will be made available to the media and public. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html.<br><br>For questions regarding access to hearings, you may refer to the general orders and public notices of the Court available on www.mad.uscourts.gov or contact media@mad.uscourts.gov.<br><br>**Settlement Hearing Reset from 7/19/2023 to 8/9/2023 at 02:30 PM in Remote Proceeding before Judge Patti B. Saris. (Molloy, Maryellen) (Entered: 07/19/2023)** |
|---|---|---|
| 07/21/2023 | 208 | JOINT Proposed Briefing Schedule for HomeServices Defendants' Motion for Summary Judgment [ECF 203]. (Klein, Seth) Modified docket text on 7/25/2023 (Geraldino−Karasek, Clarilde). (Entered: 07/21/2023) |
| 07/21/2023 | 210 | Judge Patti B. Saris: ENDORSED ORDER entered re 202 Motion to Seal Document re Select Materials Supporting the HomeServices Defendants' Motion for Summary Judgment. (Geraldino−Karasek, Clarilde) (Entered: 07/26/2023) |
| 07/24/2023 | 209 | Judge Patti B. Saris: ENDORSED ORDER entered ALLOWED re 208 JOINT Proposed Briefing Schedule for HomeServices Defendants' Motion for Summary Judgment [ECF 203].(Geraldino−Karasek, Clarilde) (Entered: 07/25/2023) |
| 08/09/2023 | 211 | Electronic Clerk's Notes for proceedings held before Judge Patti B. Saris:<br><br>Settlement Conference held on 8/9/2023 by Video.<br><br>Plaintiffs to file supplemental brief by 9/5/2023.<br><br>Motion for Order to Preliminarily Approve Settlement Agreement under advisement.<br><br>(Court Reporter: Lee Marzilli at leemarz@aol.com) (Entered: 08/10/2023) |
| 08/09/2023 | 215 | Judge Patti B. Saris: ENDORSED ORDER re 205 Parties' Joint Proposed Litigation Schedule.<br><br>" I approved the schedule. However, I do not authorize "supplemental fact discovery " unless a motion is filed. The parties shall proposed a mediation schedule."<br><br>SET SCHEDULING ORDER DEADLINES :<br><br>Motion for Class Certification due by 4/1/2024; Opposition and Any Daubert Motion due by 7/1/2024 ;<br><br>Replies to Class Certification Motion and Opposition to Any Daubert Motion due by 10/1/2024;<br><br>Sur−Reply to Class Certification Motion due by 10/11/2024.<br><br>Opposition to Plaintiffs' Daubert Motions and Replies on Defendants' Daubert Motion re Class Certification experts due by 11/1/2024;<br><br>Replies to Daubert Motions re Class Certification experts due by 11/22/2024.<br><br>Motion for Summary Judgment due by 6/13/2025; Opposition due by 7/18/2025; Replies due by 8/15/2025.<br><br>(Entered: 08/17/2023) |
| 08/15/2023 | 212 | ELECTRONIC NOTICE SETTING HEARING ON 203 MOTION for Summary Judgment as a Matter of Law filed by HomeServices Defendants:<br><br>MOTION HEARING SET FOR 10/10/2023 09:30 AM BY VIDEO before Judge Patti B. Saris. |

| | | |
|---|---|---|
| | | This hearing will be conducted by video conference. Counsel of record will receive a video conference invite at the email registered in CM/ECF. If you have technical or compatibility issues with the technology, please notify the courtroom deputy of the session as soon as possible. |
| | | Access to the hearing will be made available to the media and public. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html. |
| | | For questions regarding access to hearings, you may refer to the general orders and public notices of the Court available on www.mad.uscourts.gov or contact media@mad.uscourts.gov. |
| | | (Geraldino−Karasek, Clarilde) (Entered: 08/15/2023) |
| 08/16/2023 | 213 | Transcript of Settlement Conference held on August 9, 2023, before Judge Patti B. Saris. The Transcript may be purchased through the Court Reporter, viewed at the public terminal, or viewed through PACER after it is released. Court Reporter Name and Contact Information: Lee Marzilli at leemarz@aol.com. Redaction Request due 9/6/2023. Redacted Transcript Deadline set for 9/18/2023. Release of Transcript Restriction set for 11/14/2023. (McDonagh, Christina) (Main Document 213 replaced on 8/23/2023) (McDonagh, Christina). (Entered: 08/16/2023) |
| 08/16/2023 | 214 | NOTICE is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above−captioned matter. Counsel are referred to the Court's Transcript Redaction Policy, available on the court website at https://www.mad.uscourts.gov/caseinfo/transcripts.htm (McDonagh, Christina) (Entered: 08/16/2023) |
| 08/17/2023 | 216 | SET DEADLINES AS TO: Proposed Mediation Schedule due by 8/31/2023.<br><br>(Geraldino−Karasek, Clarilde) (Entered: 08/17/2023) |
| 08/23/2023 | 217 | Joint MOTION to Continue Oral Argument on HomeServices Defendants' Motion for Summary Judgment to December 6 or Subsequent Proposed Date by Randy Hirschorn, Tracey Hirschorn, Jennifer Nosalek.(Klein, Seth) (Entered: 08/23/2023) |
| 08/30/2023 | 218 | Judge Patti B. Saris: ELECTRONIC ORDER entered GRANTING 217 JOINT MOTION to Continue Oral Argument on HomeServices Defendants' Motion for Summary Judgment<br><br>**The Motion hearing is reset from 10/10/2023 to 12/6/2023 at 9:30 am. The hearing will be conducted by video conference before Judge Patti B. Saris**<br><br>Counsel of record will receive a video conference invite at the email registered in CM/ECF. If you have technical or compatibility issues with the technology, please notify the courtroom deputy of the session as soon as possible.<br><br>Access to the hearing will be made available to the media and public. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html.<br><br>For questions regarding access to hearings, you may refer to the general orders and public notices of the Court available on www.mad.uscourts.gov or contact media@mad.uscourts.gov.<br><br>(mm) (Entered: 08/30/2023) |
| 08/30/2023 | 219 | ELECTRONIC NOTICE Setting Motion Hearing from 10/10/2023 to 12/6/2023 on 203 MOTION for Summary Judgment as a Matter of Law filed by HomeServices Defendants:<br><br>**Summary Judgment hearing will go forward on 12/6/2023 at 09:30 AM in Remote Proceeding before Judge Patti B. Saris. (mm) (Entered: 08/30/2023)** |

| | | |
|---|---|---|
| 08/30/2023 | 220 | JOINT STATEMENT of counsel *Regarding Joint Proposed Schedule for Mediation*. (Klein, Seth) (Entered: 08/30/2023) |
| 09/05/2023 | 221 | Supplemental MEMORANDUM in Support re 190 MOTION for Order to Preliminarily Approve Settlement Agreement, Conditionally Certify Settlement Class, Approve Settlement Notice Plan, and Schedule Final Approval Hearing filed by Randy Hirschorn, Tracey Hirschorn, Jennifer Nosalek. (Klein, Seth) (Entered: 09/05/2023) |
| 09/05/2023 | 222 | Supplemental AFFIDAVIT of Seth R. Klein in Support re 190 MOTION for Order to Preliminarily Approve Settlement Agreement, Conditionally Certify Settlement Class, Approve Settlement Notice Plan, and Schedule Final Approval Hearing filed by Tracey Hirschorn, Jennifer Nosalek. (Klein, Seth) (Entered: 09/05/2023) |
| 09/05/2023 | 223 | Supplemental AFFIDAVIT of Jeanne C. Finegan in Support re 190 MOTION for Order to Preliminarily Approve Settlement Agreement, Conditionally Certify Settlement Class, Approve Settlement Notice Plan, and Schedule Final Approval Hearing filed by Randy Hirschorn, Tracey Hirschorn, Jennifer Nosalek. (Klein, Seth) (Entered: 09/05/2023) |
| 09/05/2023 | 224 | Proposed Document(s) submitted by Randy Hirschorn, Tracey Hirschorn, Jennifer Nosalek. Document received: [Proposed] Order Preliminarily Approving Settlement Between Plaintiffs and MLS Property Information Network, Inc.. (Klein, Seth) (Entered: 09/05/2023) |
| 09/05/2023 | 225 | Judge Patti B. Saris: ENDORSED ORDER entered ALLOWED re 220 Joint Proposed Schedule for Mediation. (Geraldino–Karasek, Clarilde) (Entered: 09/06/2023) |
| 09/07/2023 | 226 | SET DEADLINES AS TO MEDIATION: Name of Private Mediator and/or Propose Submission to a Magistrate Judge due by 11/15/2023. (Geraldino–Karasek, Clarilde) (Entered: 09/07/2023) |
| 09/07/2023 | 227 | Judge Patti B. Saris: ORDER entered. ORDER PRELIMINARY APPROVING SETTLEMENT Between Plaintiffs and MLS Property Information, Inc. re (Docket No. 224 ).<br><br>(Geraldino–Karasek, Clarilde) (Main Document 227 replaced on 9/13/2023 to incorporate deadlines set on Page 4.) (Geraldino–Karasek, Clarilde). (Entered: 09/11/2023) |
| 09/13/2023 | 228 | ELECTRONIC NOTICE OF FINAL SETTLEMENT APPROVAL HEARING (IN PERSON ONLY):<br><br>FINAL SETTLEMENT APPROVAL HEARING SET FOR 1/4/2024 10:30 AM in Courtroom 19 (IN PERSON ONLY) before Judge Patti B. Saris.<br><br>(Geraldino–Karasek, Clarilde) (Entered: 09/13/2023) |
| 09/28/2023 | 229 | NOTICE of Appearance by Jessica Leal on behalf of UNITED STATES OF AMERICA (Leal, Jessica) (Entered: 09/28/2023) |
| 09/28/2023 | 230 | STATEMENT of Interest of the United States and MOTION to Extend Deadlines to Review Settlement by UNITED STATES OF AMERICA.(Leal, Jessica) Modified docket text on 9/29/2023 in accordance with motion filed. (Geraldino–Karasek, Clarilde). (Entered: 09/28/2023) |
| 09/29/2023 | 231 | Opposition re 230 MOTION to Modify Deadlines re Proposed Settlement filed by Randy Hirschorn, Tracey Hirschorn, Jennifer Nosalek. (Attachments: # 1 Affidavit Declaration of Seth R. Klein in Support of Plaintiffs' Opposition to the Department of Justice's Motion to Modify Deadlines)(Klein, Seth) (Entered: 09/29/2023) |
| 10/03/2023 | 232 | Proposed Document(s) submitted by Randy Hirschorn, Tracey Hirschorn, Jennifer Nosalek. Document received: Stipulation and [Proposed] Order to Extend Settlement–Related Deadlines. (Klein, Seth) (Entered: 10/03/2023) |
| 10/03/2023 | 233 | Judge Patti B. Saris: ORDER entered. The Stipulated and Proposed Order to Extend Settlement–Related Deadlines (Dkt. 232 ) is ALLOWED and the deadlines set forth therein is ADOPTED. |

| | | |
|---|---|---|
| | | SET DEADLINES AS TO:<br><br>1. Deadline for commencement of Notice Plan (mailing of Postcard Notice, start of social media campaign, publication of first publication notice, issuance of press release, and launch of Settlement website DUE BY 12/15/2023.<br><br>2. Motion(s) for, and memoranda in support of, (i) Final Approval of Settlement and (ii) Fee and Expense Application DUE BY 12/21/2023.<br><br>3. Objections to the Settlement DUE BY 2/5/2024.<br><br>4. Parties file responses to any filed objections and any other reply briefs in support of Final Approval and Fee and Expense Application DUE BY 2/20/2024.<br><br>(Geraldino−Karasek, Clarilde) (Entered: 10/03/2023) |
| 10/03/2023 | 234 | NOTICE RESETTING FINAL SETTLEMENT APPROVAL HEARING (IN PERSON ONLY):<br><br>FINAL SETTLEMENT APPROVAL HEARING RESET FROM 1/4/2024 TO 3/7/2024 02:30 PM in Courtroom 19, 7TH FLOOR (IN PERSON ONLY) before Judge Patti B. Saris.<br><br>(Geraldino−Karasek, Clarilde) (Entered: 10/03/2023) |
| 10/23/2023 | 235 | Joint MOTION to Stay *Notice of Pending Settlement and Joint Motion to Stay Case as to the Anywhere Defendants only* by Randy Hirschorn, Tracey Hirschorn, Jennifer Nosalek.(Izard, Robert) (Entered: 10/23/2023) |
| 10/24/2023 | 236 | JOINT MOTION to STAY CASE and NOTICE OF PENDING SETTLEMENT AS TO THE RE/MAX DEFENDANTS by Randy Hirschorn, Tracey Hirschorn, Jennifer Nosalek (Izard, Robert) (Entered: 10/24/2023) |
| 10/26/2023 | 237 | Judge Patti B. Saris: ENDORSED ORDER entered ALLOWED re 235 Joint Motion to Stay Notice of Pending Settlement and Joint Motion to Stay Case AS TO ANYWHERE DEFENDANTS ONLY.<br><br>(Geraldino−Karasek, Clarilde) (Entered: 10/27/2023) |
| 10/30/2023 | 238 | NOTICE of Appearance by James D. Gotz on behalf of Randy Hirschorn, Tracey Hirschorn, Jennifer Nosalek (Gotz, James) (Entered: 10/30/2023) |
| 10/30/2023 | 240 | Judge Patti B. Saris: ENDORSED ORDER entered ALLOWED re 236 JOINT Motion TO STAY CASE and NOTICE OF PENDING SETTLEMENT AS TO THE RE/MAX DEFENDANTS. (Geraldino−Karasek, Clarilde) (Entered: 10/31/2023) |
| 10/31/2023 | 239 | Consent MOTION to Seal Document *Plaintiffs' Unopposed Motion to File Under Seal Plaintiffs' Entire Opposition to HomeServices Defendants' Motion for Summary Judgment, Pending Filing of Redacted Version Consistent with Standing Procedural Order Re: Sealing Court Documents* by Randy Hirschorn, Tracey Hirschorn, Jennifer Nosalek.(Klein, Seth) (Entered: 10/31/2023) |
| 11/13/2023 | 241 | Judge Patti B. Saris: ELECTRONIC ORDER entered ALLOWED re 239 Consent Motion to Seal Plaintiffs' Unopposed Motion to File Under Seal Plaintiffs' Entire Opposition to HomeServices Defendants' Motion for Summary Judgment, Pending Filing of Redacted Version Consistent with Standing Procedural Order Re: Sealing Court Documents.<br><br>Counsel will receive an email within twenty−four (24) hours of this order with instructions for submitting sealed documents for which leave has been granted in accordance with the Local Rules of the U.S. District Court of Massachusetts. Counsel must include − Leave to file granted on (date of order)− in the caption of the document.<br><br>(Geraldino−Karasek, Clarilde) (Entered: 11/13/2023) |

| | | |
|---|---|---|
| 11/14/2023 | 242 | Joint MOTION re 225 Order *Parties' Status Update re Mediator and Unopposed Defs. Mot. to Extend Mediation Date Until After Summary Judgment Decision* by BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., Keller Williams Realty, Inc..(Raux, Geoffrey) (Entered: 11/14/2023) |
| 11/16/2023 | 243 | Opposition re 203 MOTION for Judgment as a Matter of Law *HomeServices Defendants Motion for Summary Judgment (Redacted Version; permission granted 11/13/23)* filed by Randy Hirschorn, Tracey Hirschorn, Jennifer Nosalek. (Klein, Seth) (Additional attachment(s) added on 11/17/2023: # 1 ( Sealed ) Opposition) (Geraldino–Karasek, Clarilde). (Entered: 11/16/2023) |
| 11/16/2023 | 244 | AFFIDAVIT in Opposition re 203 MOTION for Judgment as a Matter of Law *HomeServices Defendants Motion for Summary Judgment Declaration of Seth R. Klein in Support of 243 Opposition to Motion for Summary Judgment (Redacted Version; permission granted 11/13/23)* filed by Randy Hirschorn, Tracey Hirschorn, Jennifer Nosalek. (Attachments: # 1 Exhibit 1 (Filed Under Seal), # 2 Exhibit 2 (Filed Under Seal), # 3 Exhibit 3 (Filed Under Seal), # 4 Exhibit 4 (Filed Under Seal), # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7 (Filed Under Seal), # 8 Exhibit 8, # 9 Exhibit 9 (Filed Under Seal), # 10 Exhibit 10 (Filed Under Seal), # 11 Exhibit 11 (Filed Under Seal), # 12 Exhibit 12 (Filed Under Seal), # 13 Exhibit 13, # 14 Exhibit 14 (Filed Under Seal), # 15 Exhibit 15 (Filed Under Seal), # 16 Exhibit 16 (Filed Under Seal), # 17 Exhibit 17 (Filed Under Seal))(Klein, Seth) (Additional attachment(s) added on 12/27/2023: # 18 ( Sealed Exhibits 1–17)) (Geraldino–Karasek, Clarilde). (Entered: 11/16/2023) |
| 11/20/2023 | 245 | Judge Patti B. Saris: ENDORSED ORDER entered ALLOWED re 242 Defendants' Motion to Extend Mediation Date Until After Summary Judgment Decision filed by BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc., Keller Williams Realty, Inc.<br><br>(Geraldino–Karasek, Clarilde) (Entered: 11/21/2023) |
| 11/27/2023 | 246 | Judge Patti B. Saris: ELECTRONIC ORDER: Reply, if any, to Plaintiffs' Opposition to the Homeservices Defendants' Motion for Summary Judgment [Dkt. 243] shall be filed no later than December 1, 2023 by 2:00 p.m.<br><br>(Geraldino–Karasek, Clarilde) (Entered: 11/27/2023) |
| 11/28/2023 | 247 | MOTION to Seal Document *re Select Materials Supporting the HomeServices Defendants' Reply in Support of Their Motion for Summary Judgment* by BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc.. (Attachments: # 1 Affidavit Declaration of Jennifer Keas)(Raux, Geoffrey) (Entered: 11/28/2023) |
| 11/28/2023 | 248 | REPLY to Response to 203 MOTION for Judgment as a Matter of Law *HomeServices Defendants Motion for Summary Judgment* filed by BHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc.. (Attachments: # 1 Affidavit Declaration of Jennifer Keas, # 2 Affidavit Exhibit J – Supp. Warner Dec., # 3 Exhibit K – Realtor.com Article, # 4 Exhibit L – 30(b)(6) Dep. Tr., # 5 Exhibit M – Average Mass. Commission Article, # 6 Exhibit N – Hirschorn Transaction Documents, # 7 Exhibit O – Nosalek Transaction Document, # 8 Exhibit P – Burnett Trial Tr. Excerpt, # 9 Exhibit Q – NAR MLS Handbook, # 10 Exhibit R – Warner Dep. Tr.)(Raux, Geoffrey) (Additional attachment(s) added on 12/27/2023: # 11 ( SEALED REPLY)) (Geraldino–Karasek, Clarilde). (Additional attachment(s) added on 12/27/2023: # 12 ( SEALED EXH J, L, N, O, R )) (Geraldino–Karasek, Clarilde). (Entered: 11/28/2023) |
| 11/29/2023 | 249 | Judge Patti B. Saris: ELECTRONIC ORDER entered Allowed re 247 Motion to Seal Select Materials Supporting the HomeServices Defendants' Reply in Support of Their Motion for Summary Judgment. (Geraldino–Karasek, Clarilde) (Entered: 11/29/2023) |
| 11/30/2023 | 250 | MOTION for Order to Stay Argument and Consideration of the HomeServices Defendants' Motion for Summary Judgment Pursuant to FRCP 56(d) by Randy Hirschorn, Tracey Hirschorn, Jennifer Nosalek. (Attachments: # 1 Affidavit Rule 56(d) Declaration of Seth R. Klein)(Klein, Seth) (Entered: 11/30/2023) |
| 11/30/2023 | 251 | MOTION for Order to Extend Notice and Settlement–Related Deadlines *Relating to MLS PIN Settlement* by Randy Hirschorn, Tracey Hirschorn, Jennifer Nosalek.(Klein, Seth) (Entered: 11/30/2023) |

| 11/30/2023 | 252 | Judge Patti B. Saris: ENDORSED ORDER entered ALLOWED re 251 Motion for Order to Extend Notice and Settlement–Related Deadlines Relating to MLS PIN Settlement. (Geraldino−Karasek, Clarilde) (Entered: 11/30/2023) |
|---|---|---|
| 11/30/2023 | 253 | RESET SCHEDULING ORDER DEADLINES re ( Docket No. 233 ) in accordance with Order entered, Docket No. 252 .<br><br>SET DEADLINES AS TO:<br><br>1. Deadline for commencement of Notice Plan (mailing of Postcard Notice, start of social media campaign, publication of first publication notice, issuance of press release, and launch of Settlement website ) DUE BY 1/19/2024.<br><br>2.Motion(s) for, and memoranda in support of, (i) Final Approval of Settlement and (ii) Fee and Expense Application DUE BY 1/26/2024.<br><br>3. Objections to the Settlement DUE BY 3/8/2024.<br><br>4. Parties file responses to any filed objections and any other reply briefs in support of Final Approval and Fee and Expense Application DUE BY 3/22/2024.<br><br>(Geraldino−Karasek, Clarilde) (Entered: 11/30/2023) |
| 11/30/2023 | 254 | Judge Patti B. Saris: ELECTRONIC ORDER entered. The Motion for Order to Stay Argument (Dkt. 250 ) is denied without prejudice. The arguments presented in the Motion will be discussed at the previously scheduled oral argument on December 6.<br><br>(Geraldino−Karasek, Clarilde) (Entered: 11/30/2023) |
| 12/01/2023 | 255 | NOTICE RESETTING FINAL SETTLEMENT APPROVAL HEARING (IN PERSON ONLY):<br><br>FINAL SETTLEMENT APPROVAL HEARING RESET FROM 3/7/2024 TO 4/10/2024 09:30 AM in Courtroom 19, 7th FLOOR (IN PERSON ONLY) before Judge Patti B. Saris.<br><br>(Geraldino−Karasek, Clarilde) (Entered: 12/01/2023) |
| 12/05/2023 | 256 | NOTICE by Randy Hirschorn, Tracey Hirschorn, Jennifer Nosalek re 203 MOTION for Judgment as a Matter of Law *HomeServices Defendants Motion for Summary Judgment Notice of Additional Cases to Address New Arguments* (Klein, Seth) (Entered: 12/05/2023) |
| 12/06/2023 | 257 | Electronic Clerk's Notes for proceedings held before Judge Patti B. Saris:<br><br>Motion Hearing held on 12/6/2023 by Video.<br><br>Motion taken under advisement, court adjourned.<br><br>(Court Reporter: Lee Marzilli at leemarz@aol.com.) (mm) (Entered: 12/06/2023) |
| 12/06/2023 | 258 | NOTICE by Randy Hirschorn, Tracey Hirschorn, Jennifer Nosalek re 257 Motion Hearing −− *Plaintiffs' Submission of HomeServices Defendants' RFP Responses* (Attachments: # 1 Exhibit A (Objections and Responses of the HomeServices Defendants to Plaintiffs' Second Set of RFPs))(Klein, Seth) (Entered: 12/06/2023) |
| 12/11/2023 | 259 | Transcript of Motion Hearing held on December 6, 2023, before Judge Patti B. Saris. The Transcript may be purchased through the Court Reporter, viewed at the public terminal, or viewed through PACER after it is released. Court Reporter Name and Contact Information: Lee Marzilli at leemarz@aol.com. Redaction Request due 1/2/2024. Redacted Transcript Deadline set for 1/11/2024. Release of Transcript Restriction set for 3/11/2024. (McDonagh, Christina) (Entered: 12/11/2023) |
| 12/11/2023 | 260 | NOTICE is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above−captioned matter. Counsel are referred to the Court's Transcript Redaction Policy, available on the court website at https://www.mad.uscourts.gov/caseinfo/transcripts.htm (McDonagh, Christina) |

| | | |
|---|---|---|
| | | (Entered: 12/11/2023) |
| 12/18/2023 | 261 | LETTER to the Court as to proposed settlement from United States of America . (Leal, Jessica) Modified docket text on 12/19/2023 in accordance with document filed. (Geraldino–Karasek, Clarilde). (Entered: 12/18/2023) |
| 12/19/2023 | 262 | Joint MOTION to Stay *to Continue Stay as to the Anywhere and Re/Max Defendants* by Anywhere Real Estate Inc., Better Homes and Gardens Real Estate LLC, Century 21 Real Estate LLC, Coldwell Banker Real Estate LLC, ERA Franchise Systems LLC, Sotheby's International Realty Affiliates LLC.(Cravens, William) (Entered: 12/19/2023) |
| 12/19/2023 | 263 | Judge Patti B. Saris: ELECTRONIC ORDER entered ALLOWED re 261 LETTER to the Court as to proposed settlement filed by United States of America. United States of America Statement of Interest due by 2/15/2024. (Geraldino–Karasek, Clarilde) (Entered: 12/19/2023) |
| 12/20/2023 | 264 | Judge Patti B. Saris: ENDORSED ORDER entered ALLOWED re 262 Joint Motion to Continue Stay as to the Anywhere and Re/Max Defendants. (Geraldino–Karasek, Clarilde) (Entered: 12/21/2023) |
| 12/22/2023 | 265 | Joint MOTION to Stay *JOINT MOTION TO CONTINUE STAY AS TO THE RE/MAX DEFENDANTS* by Randy Hirschorn, Tracey Hirschorn, Jennifer Nosalek.(Izard, Robert) (Entered: 12/22/2023) |
| 01/02/2024 | 266 | REDACTION to 204 Memorandum in Support of Motion for Summary Judgment byBHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc.. (Attachments: # 1 Exhibit B – Warner Dec. (unredacted), # 2 Exhibit C – Patsio Dec. (unredacted), # 3 Exhibit D – Fortin Dec. (unredacted), # 4 Exhibit E – BHH 2022 FDD (unredacted), # 5 Exhibit F – BHH Operations Manual (unredacted), # 6 Exhibit G – MLS PIN Shares, # 7 Exhibit H – MLS PIN Rules (unredacted), # 8 Exhibit 1 to Patsio Dec.)(Raux, Geoffrey) (Entered: 01/02/2024) |
| 01/02/2024 | 267 | REDACTION to 248 Reply to Response to Motion for Summary Judgment byBHH Affiliates, LLC, HSF Affiliates, LLC, HomeServices of America, Inc.. (Attachments: # 1 Exhibit J – Warner Supp. Dec. (unredacted), # 2 Exhibit L – Warner Dep. Excerpts (unredacted), # 3 Exhibit N – Hirschorn Transaction Documents (unredacted), # 4 Exhibit O – Nosalek Closing Disclosure (unredacted), # 5 Exhibit R – Warner Dep. Excerpts (unredacted))(Raux, Geoffrey) (Entered: 01/02/2024) |
| 01/05/2024 | 268 | Consent MOTION to Stay Notice and Settlement– Related Deadlines in light of pending Department of Justice Statement of Interest by Randy Hirschorn, Tracey Hirschorn, Jennifer Nosalek. (Attachments: # 1 Exhibit A (Second Amended Settlement Agreement))(Klein, Seth) Modified docket text on 1/5/2024 (Geraldino–Karasek, Clarilde). (Entered: 01/05/2024) |
| 01/05/2024 | 269 | Judge Patti B. Saris: ELECTRONIC ORDER entered Granting 265 JOINT MOTION TO CONTINUE STAY AS TO THE RE/MAX DEFENDANTS by Randy Hirschorn, Tracey Hirschorn, Jennifer Nosalek. (Geraldino–Karasek, Clarilde) (Entered: 01/05/2024) |
| 01/09/2024 | 270 | Judge Patti B. Saris: ENDORSED ORDER entered Allowed 268 Consent Motion to Stay Notice and Settlement– Related Deadlines in light of pending Department of Justice Statement of Interest.(Geraldino–Karasek, Clarilde) (Entered: 01/10/2024) |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JENNIFER NOSALEK,<br>RANDY HIRSCHORN, and<br>TRACEY HIRSCHORN, individually and on<br>behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>    vs.<br><br>MLS PROPERTY INFORMATION<br>    NETWORK, INC.,<br>ANYWHERE REAL ESTATE INC. (F/K/A<br>    REALOGY HOLDINGS CORP.),<br>CENTURY 21 REAL ESTATE LLC,<br>COLDWELL BANKER REAL ESTATE<br>    LLC,<br>SOTHEBY'S INTERNATIONAL REALTY<br>    AFFILIATES LLC,<br>BETTER HOMES AND GARDENS REAL<br>    ESTATE LLC,<br>ERA FRANCHISE SYSTEMS LLC,<br>HOMESERVICES OF AMERICA, INC.,<br>BHH AFFILIATES, LLC,<br>HSF AFFILIATES, LLC,<br>RE/MAX LLC,<br>POLZLER & SCHNEIDER HOLDINGS<br>    CORPORATION,<br>INTEGRA ENTERPRISES CORPORATION,<br>RE/MAX OF NEW ENGLAND, INC.,<br>RE/MAX INTEGRATED REGIONS, LLC<br>    and<br>KELLER WILLIAMS REALTY, INC.,<br><br>                Defendants. | No. 1:20-cv-12244-PBS<br><br>CLASS ACTION<br><br>**SECOND AMENDED COMPLAINT**<br><br>**(LEAVE TO FILE GRANTED ON<br>JANUARY 6, 2023 [ECF 149])**<br><br>DEMAND FOR JURY TRIAL<br><br>January 9, 2023 |

      Plaintiffs Jennifer Nosalek, Randy Hirschorn and Tracey Hirschorn ("Plaintiffs"), by

their undersigned attorneys, allege the following based upon their knowledge as set forth herein

and upon information and belief.  Further additional evidence supporting the claims set forth

herein can be obtained after a reasonable opportunity for discovery.

## I.     INTRODUCTION

1.      Plaintiffs are individuals who sold their home in Massachusetts using the local

multiple listing service ("MLS") Pinergy. As a condition of listing their home on this MLS,

Plaintiffs had to include in their listing a single, set offer of compensation to any broker who

found a buyer for their home (the "Buyer-Broker Commission Rule").

2.      Plaintiffs then paid that offer amount as a commission in connection with the sale

of their home. This requirement that a seller must offer a set commission to the successful buyer-

broker in order for their property to be listed on Pinergy is anticompetitive and causes sellers to

pay artificially inflated, supra-competitive commission rates.

3.      For that reason, Plaintiffs bring this antitrust class action against defendants:

(a) the owner of Pinergy, MLS Property Information Network, Inc. ("MLS
    PIN"), a Realtor-controlled entity, which has adopted and enforced the
    anticompetitive agreements and rules alleged herein;

And the following Realtors:

(b) Anywhere Real Estate Inc. (f/ka/ Realogy Holdings Corp,) and its wholly
    owned subsidiaries Century 21 Real Estate LLC, Coldwell Banker Real
    Estate LLC, Sotheby's International Realty Affiliates LLC, Better Homes
    and Gardens Real Estate LLC, and ERA Franchise Systems LLC;

(c) HomeServices of America, Inc., and its wholly owned subsidiaries, HSF
    Affiliates, LLC and BHH Affiliates, LLC;

(d) RE/MAX LLC and its wholly owned subsidiaries Polzler & Schneider
    Holdings Corporation, Integra Enterprises Corporation, RE/MAX of New

- 2 -

England, Inc., and RE/MAX Integrated Regions, LLC (and any other

successor entities); and

(e)  Keller Williams Realty, Inc.

As alleged herein, these Defendants made agreements and engaged in a conspiracy in

restraint of trade in violation of § 1 of the Sherman Act, 15 U.S.C. § 1.

## II.   JURISDICTION

4.     This Court has subject matter jurisdiction under 28 U.S.C. §1332(d)(2), because

the Class contains more than 100 persons, the aggregate amount in controversy exceeds

$5,000,000, and at least one member of the Class is a citizen of a State different from

Defendants. The Court also has subject matter jurisdiction over this action pursuant to 15 U.S.C.

§§ 4, 16 and 28 U.S.C. §§ 1331, 1337.

5.     This Court has personal jurisdiction over Defendants. Defendant MLS PIN

resides in this District and has its headquarters in Shrewsbury. In addition, Defendants: (1)

transact substantial business in this District; (2) transacted with members of the Class throughout

the District; and (3) committed substantial acts in furtherance of the unlawful scheme in this

District.

6.     Venue is proper in this District under 15 U.S.C. § 22 and 28 U.S.C. §1391(b), (c),

and (d). Each Defendant transacted business, was found, and/or resided in this District; a

substantial part of the events giving rise to Plaintiffs' claims arose in this District; and a

substantial portion of the affected interstate trade and commerce described herein has been

carried out in this District.

- 3 -

### III.    PARTIES AND NON-PARTIES

#### A.    Plaintiffs

7.      Randy Hirschorn is a resident of Stoughton, Massachusetts. Tracey Hirschorn is a resident of Sharon, Massachusetts. On July 10, 2020, they sold real property located in Sharon, Massachusetts. The home was listed on MLS PIN's Pinergy. In that sales transaction, they were represented by Keller Williams Realty and the buyer was represented by William Raevis Real Estate. As part of the sales transaction, Randy Hirschorn and Tracey Hirschorn paid a substantial, supracompetitive buyer-broker commission.

8.      Jennifer Nosalek is a resident of Easton, Massachusetts. On January 19, 2018, she sold real property located in the Easton, Massachusetts. The home was listed on MLS PIN's Pinergy. In that sales transaction, she was represented by Success! Real Estate and the buyer was represented by Keller Williams Realty. As part of the sales transaction, Ms. Nosalek paid a substantial, supracompetitive buyer-broker commission.

#### B.    Defendants

9.      Defendant MLS Property Information Network, Inc. (with its predecessors, successors, and wholly-owned or controlled subsidiaries or affiliates are collectively referred to herein as "**MLS PIN**") is (according to t360.com, the website of a management consultancy specializing in the real estate industry), the seventh largest MLS in the country with over 41,000 members. Participation in MLS PIN is open to brokers and salespersons licensed in any of the six New England states (Massachusetts, New Hampshire, Connecticut, Rhode Island, Maine, Vermont) and New York. According to MLS PIN, "250,000 active buyers currently receive automatic nightly emails with property matches that meet their criteria set by their real estate professional through Pinergy." MLS PIN describes itself as "one of the largest Realtor-owned

- 4 -

multiple listing services in the nation . . . offer[ing] a database of approximately 29,000 properties for sale and more than 3.7 million off-market listings and full public records for all of Massachusetts and Rhode Island and much of New Hampshire." MLS PIN is governed by a Board comprised of 15 Directors. Eight of these directors are Realtors for franchises owned by Broker Defendants, BHH (which is controlled by HSA), RE/MAX Defendants, and Anywhere Defendants (terms defined below).

10.      Defendant Anywhere Real Estate Inc. ("**Anywhere RE**") (formerly known as Realogy Holdings Corp.) is the nation's largest real estate brokerage company. It is headquartered in Madison, NJ. It is a publicly traded corporation with a market value in excess of $4 billion. It owns, operates, and franchises many real estate brokerage firms, including Century 21, Coldwell Banker, Sotheby's International Realty, The Corcoran Group, Better Homes and Garden Real Estate, ZipRealty, ERA Real Estate Citi Habitats, and Climb Real Estate.

11.      Defendants Century 21 Real Estate LLC ("**Century 21**"), Coldwell Banker Real Estate LLC ("**Coldwell Banker**"), Sotheby's International Realty Affiliates LLC ("**Sotheby's**"), Better Homes and Gardens Real Estate LLC ("**Better Homes & Gardens**"), and ERA Franchise Systems LLC ("**ERA**") are the wholly owned subsidiaries of Anywhere RE that entered into franchise agreements with the broker franchisees providing services in the Covered Area. Anywhere RE, Century 21, Coldwell Banker, Sotheby's, Better Homes & Gardens, ERA, their predecessors, successors, and wholly-owned or controlled subsidiaries or affiliates are collectively referred to herein as the "**Anywhere Defendants**."

12.      Defendant HomeServices of America, Inc. ("**HSA**") is "the second largest residential real estate brokerage firm in the United States." HSA is a majority owner of

- 5 -

Defendant HSF Affiliates, LLC ("**HSF Affiliates**"). HSF Affiliates operates many real estate franchise networks, including HomeServices, Prudential Real Estate and Real Living. **BHH Affiliates, LLC** is a subsidiary of HSF Affiliates LLC and offers real estate brokerage services. HSA, HSF Affiliates, BHH Affiliates, LLC, their predecessors, successors, and wholly-owned or controlled subsidiaries or affiliates are collectively referred to herein as the "**HomeServices Defendants**."

13.     Defendant RE/MAX, LLC ("**RE/MAX**") franchises local RE/MAX brokers around the country, which have approximately 6,800 offices and more than 100,000 sales associates.

14.     Defendants Polzler & Schneider Holdings Corporation ("**P&S Holdings**"), Integra Enterprises Corporation ("**Integra Enterprises**"), and RE/MAX of New England, Inc. ("**RE/MAX New England**") are the wholly owned subsidiaries of RE/MAX who, for at least part of the relevant period, had the authority to enter into franchise agreements with the RE/MAX broker franchisees providing services in the Covered Area. In July 2021, RE/MAX through its wholly owned subsidiary A La Carte U.S., LLC finalized its purchase of P&S Holdings. P&S Holdings wholly owns Integra Enterprises, which wholly owns RE/MAX New England. Based upon information and belief, RE/MAX New England entered into the franchise agreements with RE/MAX franchisees within the Covered Area. In or around July 2021, RE/MAX New England and Integra Enterprises merged with RE/MAX Integrated Regions, LLC ("**RE/MAX Integrated**") with RE/MAX Integrated being the surviving entity. RE/MAX, P&S Holdings, Integra Enterprises, RE/MAX New England, and RE/MAX Integrated, their predecessors, successors, and wholly-owned or controlled subsidiaries or affiliates are collectively referred to herein as the "**RE/MAX Defendants**."

- 6 -

15. Defendant Keller Williams Realty, Inc. (with its predecessors, successors, and wholly-owned or controlled subsidiaries or affiliates are collectively referred to herein as "**Keller Williams**") is one of the nation's largest real estate brokerages. It is headquartered in Austin, Texas. It is a privately-held company. It franchises local Keller Williams brokers around the country, which have approximately 700 offices and more than 120,000 sales associates.

16. Anywhere Defendants, HomeServices Defendants, RE/MAX Defendants, and Keller Williams are collectively referred to herein as the "**Broker Defendants**."

### C.    Co-Conspirators

17. Multiple state and local Realtor associations ("local Realtor associations" or "Realtor associations") not named as Defendants participated as co-conspirators in the violations alleged herein and performed acts and made statements in furtherance thereof. Specifically, each of the local realtor associations that own and operate Pinergy agreed to, complied with, and implemented the Buyer-Broker Commission Rule.

18. Multiple franchisees and brokers of Broker Defendants participated as co-conspirators in the violations alleged herein and performed acts and made statements in furtherance thereof. Specifically, each complied with and implemented the Buyer-Broker Commission Rule in the geographic areas in which Pinergy operates. In addition, other brokers in these areas have participated as co-conspirators in the violations alleged herein and performed acts and made statements in furtherance thereof. These other brokers complied with and implemented the Buyer-Broker Commission Rule in these geographic areas.

19. Defendants are jointly and severally liable for the acts of their coconspirators whether named or not named as defendants in this Complaint.

- 7 -

## IV.    INTERSTATE TRADE AND COMMERCE

20.    The violations of federal antitrust laws alleged herein had impact on a substantial amount of interstate trade and commerce.

21.    Defendants' conduct alleged herein has inflated buyer-broker commissions within the areas in Massachusetts in which Pinergy operates and has injured home sellers in those areas ("Covered Area").

22.    The Buyer-Broker Commission Rule and other anticompetitive rules apply and have been implemented and enforced by Defendants and co-conspirators located throughout Massachusetts.

23.    These rules govern the conduct of local associations, local brokers, and local realtors throughout the Covered Area.

24.    Defendant MLS PIN, through its members and other co-conspirators, and Broker Defendants, through their franchisees, brokers and other co-conspirators, are engaged in interstate commerce, and are engaged in activities affecting interstate commerce, in the Covered Area.

## V.    SUBSTANTIVE ALLEGATIONS

### A.    The Real Estate Industry

25.    Only licensed real estate brokers and salespersons can assist buyers and sellers with the purchase, sale, lease or exchange of real property.

26.    To become licensed, an applicant generally must satisfactorily complete the agent curriculum in real estate education and pass a written examination.

27.     A real estate broker negotiates agreements to sell, exchange, purchase, rent or lease interests in real property for a fee, commission or other valuable consideration for another person.

28.     A salesperson must be affiliated with a broker, either as an employee or as an independent contractor, and work under the supervision of the broker. A salesperson cannot operate his own real estate business.

29.     According to 2020 Report of the National Association of Realtors ("NAR"), 89% of sellers sold their homes with the assistance of a real estate broker, and 88% of buyers purchased their homes with the assistance of a real estate broker. Upon information and belief, similar percentages apply to sales throughout the Covered Area.

30.     The standard practice in the residential real estate industry is to compensate brokers and agents with commissions that are calculated as a percentage of a home's sale price. Commissions are paid by the seller when the home sells.

31.     Brokers or their individual salespersons may act as the agent for either the buyer or the seller, and in some cases both, in connection with home sales.

32.     The broker's compensation is specified in the listing agreement between the seller of the property and his or her broker (*i.e.*, the seller-broker or listing broker). In addition to setting the commission, the listing agreement also typically includes terms granting the broker the exclusive right to market and sell; setting the length of time the broker is given to sell the real property; setting the listing price; and other listing terms.

33.     When the buyer is represented by a broker, the seller or the seller-broker pays the buyer-broker a commission out of the total commission paid by the seller. Accordingly, the

- 9 -

buyer-brokers — who are agents of the buyer and adversarial to the sellers — receive their compensation from sellers, not from buyers they represent.

34. The listing agreement typically states that a portion of the commission paid by the seller will be paid to the broker representing a buyer if the buyer has a broker.

35. The online Pinergy listing states the amount of commission the seller will pay the buyer's broker. It is typically expressed as a percentage of the sales price such as, for example, 3 percent.

36. With this arrangement, the seller sets the total commission to be paid to the seller-broker with the expectation that a portion of the commission will be paid to a buyer-broker. If there were no Buyer-Broker Commission Rule, (1) buyers would pay their own brokers, (2) sellers would only pay a commission to compensate the seller-brokers as they have no incentive to compensate the buyers' agents negotiating against their interests; and (3) the amount paid by sellers to compensate the seller-brokers would be substantially less than the amount that sellers have to pay to compensate both the buyer-broker and the seller-broker.

37. According to NAR, there are 25,515 Realtors in Massachusetts, 5,227 in Rhode Island, and 6,472 in New Hampshire.

**B.** **Multiple Listing Services and "Pinergy"**

38. State and local Realtor associations own and operate in their markets a centralized database of properties listed for sale in the region known as a Multiple Listing Service or "MLS." The MLS that is the subject of this action is Pinergy, which is owned and administered by MLS PIN.

39. Pinergy is a joint venture among the competing Broker Defendants to facilitate the publishing and sharing of information about homes for sale in Pinergy 's geographic area.

The membership in Pinergy is generally comprised of nearly all residential real estate brokers and their affiliated agents in Pinergy's service area. Listing a property for sale on Pinergy is essential to marketing a property effectively to prospective buyers.

40.     Pinergy will include or "list" the vast majority of homes that are for sale through a residential real estate broker in that area. Pinergy provides the most up-to-date, accurate and comprehensive compilation of the area's home listings. Listing brokers will use Pinergy to market sellers' properties to other broker and agent participants and, through those other brokers and agents, to potential home buyers.

41.     By virtue of nearly industry-wide participation and control over important data, brokers and broker-controlled entities offering Pinergy possess and exercise market power in the markets for the provision of real estate brokerage services to home buyers and sellers within Pinergy's service area.

42.     According to t360.com, as of December 5, 2020, Pinergy was the seventh largest MLS in the country with 41,537 members.

43.     As alleged herein, the use of Pinergy is governed by rules and regulations. Defendants enforce Pinergy's rules, policies and practices.

44.     The website for MLS PIN has a page on which complaints can be filed. The webpage instructs that the form can be used "to report a listing that does not appear in MLS or an existing listing that you believe violates MLS PIN Rules."

45.     The website also touts the MLS PIN's enforcement efforts to enforce its rules and regulations. According to the "Audits, Warnings & Fines" webpage, in September 2020 alone, there were 14 audits, 18 fines, and 54 warnings.

- 11 -

C. **The Buyer-Broker Commission Rule in MLS PIN's Rules and Regulations**

46.    MLS PIN promulgates its Rules and Regulations governing the use of Pinergy

("MLS PIN Rules").

47.    Section 5 of the MLS PIN Rules requires all seller brokers to offer compensation

to buyer brokers.  After specifying that brokers are "not obligated to offer compensation in

connection with lease or rental properties," as to property sales, Section 5 states, in relevant part:

> **a Listing Broker shall specify, on each Listing Filed with the Service, the
> compensation offered to other Participants** for their services as Cooperating
> Brokers in the sale, lease or rental of the Listed Property. Such offers shall be
> unconditional, except that entitlement to compensation shall be conditioned on the
> Cooperating Broker's performance as the procuring cause of the sale, lease or
> rental. (Emphasis added.)

48.    Additionally, Note 1 to Section 5 of the MLS PIN Rules further states, in relevant

part:

> In Filing a Listing with the Service, **a Participant is deemed to be making blanket
> unilateral offers of compensation to the other Participants in the Service**. The
> Participant therefore shall specify on each Listing Filed with the Service the
> compensation being offered to the other Participants. (Emphasis added.)

49.    Section 5 warns that the seller broker may not change the offered commission as

the result of any negotiation or cooperation with a buyer broker. Section 5 states, in relevant part,

that the Listing Broker may only offer a Participant compensation different from the

compensation indicated on any Listing if:

> (1) the Listing Broker informs the Participant in writing of such proposed change
> in compensation in advance of the Participant's producing an offer to purchase or,
> in the case of an Auction Listing, in advance of the Participant's registering a
> prospective bidder for participation in the Auction, and (2) **the change in the listed
> compensation is not the result of any agreement or other cooperative activity
> between the Listing Broker and any one or more of the other Participants or
> Subscribers**. (Emphasis added.)

50.    The rules described in Section 5 of the MLS PIN Rules shall be referred to herein

as the "Buyer-Broker Commission Rule."

51.     A "Listing Broker" means "the Individual Participant or Participant Firm who or which Files a Listing with the Service."

52.     A "Participant" means, in relevant part, "any individual or sole proprietorship and any partnership, corporation, limited liability company or other legal entity which Participates in the Service . . . ." "Participation" is available only to real estate brokers licensed by the one or more of the Subscription States that "abide[] fully by these Rules and Regulations and the policies of the Service."

53.     A "Cooperating Broker" means:

the licensed broker who or which is (i) a Participant and (ii) either a subagent of a Listing Broker, **a buyer's agent** or other appropriately licensed facilitator in the process of selling a Listed Property. Wherever the context so requires, reference in these Rules and Regulations to a Cooperating Broker shall include the Participant through which any individual Cooperating Broker is acting. (Emphasis added.)

54.     All participants of MLS PIN agree to be bound by the MLS PIN Rules. The MLS PIN Participant Agreement/Application states, in relevant part:

PARTICIPANT'S AGREEMENT TO BE BOUND: -- **Participant agrees that Participant and all members of Participant's firm who utilize the multiple listing service (the "Service") of MLS Property Information Network, Inc. (the "Company") in any manner will comply with the Rules and Regulations** and the policies of the Company and the Service as established or as amended from time to time, copies of which have been made available to Participant and are available at all times to Participant on the company's website (www.mlspin.com). (Emphasis added.)

55.     Participants also agree to pay all compensation offered to cooperating brokers.

The MLS PIN Participant Agreement/Application states, in relevant part:

PAYMENT OF FEES TO COOPERATING BROKERS: -- Participant hereby agrees, on Participant's own behalf and on behalf of Participant's firm, to pay, or cause to be paid, in a complete and timely manner, as provided in the Company's Rules and Regulations, any and all compensation offered to cooperating brokers in connection with a listing made with the Service by Participant or by any agent or member of Participant's firm or any of Participant's offices. **If full payment to a cooperating broker is not made in a timely manner, the Company may impose sanctions on Participant and/or on the listing agent or member of Participant's**

- 13 -

**firm or any of Participant's offices**. The sanctions may include suspension of access to the Service. (Emphasis added.)

56.     The MLS PIN Rules are enforced by the local Realtors and Realtor associations that own and manage MLS PIN.

57.     Given the commercial necessity of having access to an MLS, real estate brokers and individual realtors must comply with MLS PIN Rules.

58.     When a buyer retains a broker, the buyer enters into a contract with that broker. The contract typically discloses that the buyer-broker will be compensated by receiving a commission from the seller-broker.

59.     Seller-brokers list their client's property on Pinergy as required by the MLS PIN Rules and to ensure that buyer-brokers and prospective buyers are aware of the property. If a seller-broker does not list a client's property on Pinergy, buyer-brokers will not show that property to prospective buyers. Pinergy also acts as the main source of listings for online websites, such as Zillow, through which many prospective homebuyers find homes. A home that is not listed on an MLS is very hard to find for prospective homebuyers.

60.     The Buyer-Broker Commission Rule obligates a seller-broker, on behalf of the seller, to make blanket, unilateral offers of compensation to buyer-brokers when listing a home on Pinergy. If a buyer represented by a broker purchases the home, the buyer-broker receives the offered compensation.

61.     The following example illustrates how this process typically works: (a) a homeowner enters into a contract with a seller-broker, in which the seller agrees to pay the seller-broker six percent in total commissions in exchange for marketing and facilitating the sale of the home; (b) the seller-broker then makes a blanket, unilateral offer of a three percent commission to every buyer-broker when it lists the home on Pinergy; (c) a buyer-broker shows

- 14 -

the property to a buyer client, who buys the home for $500,000; (d) the seller-broker receives six percent of the sales price ($30,000) from the seller; and (e) the seller-broker then pays three percent of the sales price ($15,000) to the buyer-broker.

### D.   THE ANTICOMPETITIVE AGREEMENT

62.     Before the Buyer-Broker Commission Rule was adopted, all brokers involved in residential home sales represented the seller's interests. Until the early 1990s, there was "an almost universal sub agency system" where the brokers "were legally obligated to represent the interests of sellers."[1]

63.     "For most of the last century, the legal relationships between brokers and their clients were simple: Listing brokers represented sellers, and agents who worked with buyers did so as 'subagents' of the listing broker."[2] Accordingly, "[a]ll of the agents involved in a transaction owed their allegiance to the seller, and buyers were unrepresented."[3]

64.     "[T]he ability to represent sellers on an exclusive basis and offer compensation to cooperating brokers acting as subagents was the foundation upon which the MLS system was built."[4] Indeed, "[a]s a rule, MLS's required that offers of compensation be contingent on the cooperating broker acting as a subagent of the listing broker, rather than an agent of the buyer.

---

[1]   Brobeck and Woodall, *How the Real Estate Cartel Harms Consumers and How Consumers Can Protect Themselves*, Consumer Fed'n of Am. at * 3 (June 2006), https://consumerfed.org/pdfs/Real_Estate_Cartel_Study061906.pdf.

[2]   Carter, *From Subagency to Non-Agency: A History*, INMAN (Feb. 17, 2012), https://www.inman.com/2012/02/17/from-subagency-non-agency-a-history.

[3]   *Id.*

[4]   *Id.*

Subagency allowed cooperating brokers who worked with buyers to collect a share of the commissions paid by sellers without actually representing buyers in an agency capacity."[5]

65.     During this time, most homebuyers mistakenly believed that the subagent broker was representing their interests — even though the buyer-broker actually owed a fiduciary obligation *to the seller*. "When this sub agency system, in which brokers working with buyers were legally obligated to pass on information disadvantageous to their clients to sellers, was exposed through press coverage, it collapsed almost overnight."[6]

66.     The late 1980s and early 1990s saw the arrival of exclusive buyer agents, who represent the buyer in the transaction rather than the seller or seller's broker. "In light of these changes, most listing brokers moved away from subagency, preferring to compensate other brokers as buyers' agents and non-agents."[7]

67.     Given that such buyers agents were representing the buyer, there was no reasonable basis for requiring sellers to pay these commissions. "With the demise of subagency, there is little reason to keep inter-broker compensation. There are also affirmative reasons to get rid of it."[8]

68.     But Defendants, rather than adjusting to the introduction of exclusive buyers' agents, sought to enforce a scheme designed to maintain supra-competitive commissions and impede lower-priced competition.

69.     The Buyer-Broker Commission Rule in the MLS PIN Rules is one of the ways MLS PIN enforces this scheme to maintain supra-competitive commissions.

---

[5]  *Id.*

[6]  Brobeck & Woodall, *supra* note 1.

[7]  Larson, The End of MLS as We Know It, INMAN (Aug. 15, 2006), https://www.inman.com/2006/08/15/end-mls-we-know-it.

[8]  *Id.*

70. MLS PIN is empowered to modify the rules in the MLS PIN Rules. MLS PIN consistently and repeatedly retained the Buyer-Broker Commission Rule.

71. In setting forth the rules and requirements, MLS PIN has successfully invited the Defendants and other coconspirators to participate in the following agreement, combination and conspiracy: They can participate in the use of Pinergy, and gain the benefits provided by the MLS, but only if they agree to adhere to and enforce the anticompetitive restraints set forth in the MLS PIN Rules.

72. The Buyer-Broker Commission Rule shifts a cost to the seller that would be paid by the buyer in a competitive market. As the Consumer Federation of America explained, ""[i]n a rational pricing system, home sellers and buyers would each pay for real estate brokerage services they receive" and "there would be no hidden commission splits that propped up rates."[9]

73. The Rule, however, causes home sellers to pay supra-competitive fees by requiring them to make a blanket unilateral offer of compensation to the buyer-broker as a condition of participating on the MLS.

74. Simply put, there is no pro-competitive justification for imposing this overcharge on home sellers. The setting of the fees by sellers-brokers is, at least, an attempt to fix market prices. If inter-broker compensation were eliminated, it would diminish the ability of traditional brokers to obstruct vigorous price competition, and thus lead to a dramatic decrease in broker revenues.

75. Additionally, because the Rule requires a blanket offer, the Rule compels home sellers to make this financial offer without regard to the experience of the buyer-broker or the

---

[9] Brobeck, *Residential Real Estate Brokerage Services: A Cockamamie System That Restricts Competition and Consumer Choice*, Consumer Fed'n of Am., 4 (2006), http://archives-financialservices.house.gov/media/pdf/072506sb.pdf.

services or value they are providing — in other words, the Rule treats *all* buying brokers and their services the same. The seller is required to offer the same fee to a buyer-broker with little or no experience as that offered to a buyer-broker with twenty years of valuable experience. Accordingly, there is a significant level of uniformity in the payments that sellers must pay to buyer-brokers.

76.     As a result, there is little relationship between the commission and quality of the service. "Skilled, experienced agents and brokers charge about the same price as agents with little experience and limited knowledge of how to best serve the consumer clients."[10]  In a price-competitive market, less experienced and less skilled brokers and salespersons would be offering consumers lower commission rates, but they have no incentive to do so because of the Rule.[11]

77.     The Rule creates tremendous pressure on sellers to offer the "standard" supra-competitive commission that has long been maintained in this industry. Seller-brokers know that if the published, blanket offer is less than the "standard" commission, many buyer-brokers will "steer" home buyers to the residential properties that provide the higher standard commission.

78.     The prevalence of such steering has been widely reported in government reports, economic research and the trade press and is well understood by MLS PIN, the Broker Defendants, and their co-conspirators. Indeed, Keller Williams University's own course materials admit that offering less than three percent in buyer-broker commission on an MLS "will reduce the number of willing and qualified buyers that will see your home."

79.     The Buyer-Broker Commission Rule's blanket offers to buyer-brokers are overwhelmingly made at or near the supra-competitive commission rates that prevail in the

---

[10]  *Id.* at 3.

[11]  *See id.*

industry. "Typically, on either a 5% or 6% commission, 3% will be offered to brokers with buyer clients, and that commission split is disclosed to brokers on real estate firm and multiple listing service databases."[12] A blanket offer of 3% "then acts as a powerful force to discourage lower splits of 2% or even 1% because listing brokers, and their sellers, fear that properties carrying these lower splits will not be shown."[13]

80.     Accordingly, "a listing broker lists a split below" the standard industry level "at their, and their clients', peril because of the risk that traditional brokers working with buyers will avoid this property. . . . This informal discrimination against price competitors is the most important factor that allows dominant brokers to maintain high and uniform prices."[14]

81.     The Buyer-Broker Commission Rule facilitates anticompetitive steering away from brokers who deviate materially from "the standard real estate commission" by enabling buyer-brokers to identify and compare the buyer-broker compensation offered by every seller in the MLS and then steer clients to homes offering the standard, higher commission.

82.     "The effects of steering, and its efficiency in curtailing price competition because of the importance of cooperating in the residential real estate industry, have been widely discussed. Brokers are able to engage in steering because 'an MLS listing gives brokers information on the commission that will be paid to the broker who brings the buyer to that property.'"[15]

83.     By facilitating steering, the Buyer-Broker Commission Rule prevents rates from falling to competitive levels and enables brokers to avoid doing business with or otherwise

---

[12] Brobeck and Woodall, *supra* note 1 at 4.

[13] *Id*.

[14] Brobeck, *supra* note 9, at 3-4.

[15] Bradford W. Muller, *Encouraging Price Competition Among New Jersey's Residential Real Estate Brokers*, 39 Seton Hall L. Rev. 665, 682-683, 683 n.100 (2009).

- 19 -

retaliate against brokers who attempt to offer materially lower rates. The founder of a discount broker, while speaking at a FTC/DOJ workshop, disclosed that after his company began offering a lower commission on the MLS, "[w]e've had bricks thrown through car windows. We've had our cars egged. We've had hate mail sent to our sellers."[16] He estimated that "40% of agents will go out of their way, above and beyond, and push hard not to show or sell your home if you don't offer a 2.8% or 3% commission."

84.     Another commentator explained that "the MLS listing acts as a tool which competing brokers can use to help enforce a near-uniform commission rate and drive out discounters."[17]

85.     Indeed, during a 2016 presentation by Defendant Keller William's CEO to competing brokerages and other participants at a major industry event, he reported that his firm had found that "[l]imited service, discount broker, market share in the United States, is at an all-time low," and he enthusiastically reported that efforts to gain business by offering discounted commissions had become "irrelevant."

86.     Additionally, the Broker Defendants' franchisees and brokers, among other co-conspirators, have used technology to facilitate steering based on MLS commission data and to impede buyers from learning about properties that offer discount buyer-broker commissions.

87.     The Buyer-Broker Commission Rule's facilitation of steering is bolstered (1) by the Rule's requirement that the compensation that home sellers offer to buyer-brokers on Pinergy

---

[16] Statement of Joshua Hunt, *What's New in Residential Real Estate Brokerage Competition – An FTC-DOJ Workshop (Segment 2)*, FTC, 7 (2018), https://www.ftc.gov/system/files/documents/videos/whats-new-residential-real-estate-brokerage-competition-part-2/ftc-doj_residential_re_brokerage_competition_workshop_transcript_segment_2.pdf.

[17] Muller, Encouraging Price Competition Among New Jersey's Residential Real Estate Brokers, 39 Seton Hall L. Rev. 683 n.100 (2009).

must be offered as a percentage of the gross selling price or a definite dollar amount and (2) MLS PIN Rules' prohibition on negotiating a change to the commission.

88.     By requiring that offers of compensation be expressed in specific dollar or percentage terms, the Rule ensures that buyer-brokers can easily compare the financial compensation offered to them by home sellers and steer buyers away from properties offering materially less than the standard real estate commission.

89.     The Buyer-Broker Commission Rule deters downward departures from the standard commission and enables brokers to avoid doing business with or otherwise retaliate against brokers who try to compete by offering significant discounts.

90.     The anticompetitive effects of the Buyer-Broker Commission Rule are further bolstered because neither buyer nor seller are permitted to view the universe of broker commission terms and thus are unlikely to know whether the buyer-broker is engaged in steering to higher commission properties. Pinergy utilizes fields concerning compensation to buyer-brokers that only participants (*i.e.*, brokers and salespersons) are able to view.

91.     Potential sellers and buyers cannot access the hidden fields and are not permitted to view the universe of buyer-broker commissions and other financial incentives being offered on Pinergy. MLS PIN Rules state, in relevant part:

> CONFIDENTIALITY OF SERVICE INFORMATION: Any and all data and information contained in any Service Compilation shall be the proprietary data and information of the Service. . . .  No Participant or Subscriber shall cause or permit any data or information contained in any Service Compilation to be transmitted, retransmitted or otherwise provided or made available in any manner to any individual or entity, other than to an individual or entity who or which is a Participant or Subscriber and other than as provided in Article X of these Rules and Regulations.

92.     MLS PIN has also ensured that commission offers and private remarks are not disclosed to the public through third-party websites or other MLS syndication services (for example, Zillow and Trulia).

93.     MLS PIN also requires price information sharing among brokers. This type of information exchange agreement prevents price competition that benefits consumers while allowing brokers to put upward pressure on pricing and to punish brokers who deviate downwards. Moreover, because home sellers and homebuyers, unlike brokers, do *not* have access to the universe of "blanket unilateral offers of compensation" being made to buyer-brokers, their ability to detect steering by buyer-brokers is significantly impeded. As one commentator has explained, "Buyers are never aware they are being steered. The buyer agent makes a selection of homes to show, and since the public sources of homes never shows the commission offered, buyers are never aware when their agents select out the homes with lower priced commission offerings."[18]

94.     The Defendants' anticompetitive restraints have had their intended effect of diminishing price competition and stabilizing and fixing the buyer-broker charges imposed on home sellers at or near the "standard real state commission" level. Moreover, because the actual dollar charge is generally calculated as a percentage of *rising* home prices, Defendants have *substantially* elevated the actual overcharge.

---

[18] Magura, *How Rebate Bans, Discriminatory MLS Listing Policies, and Minimum Service Requirements Can Reduce Price Competition For Real Estate Brokerage Services and Why It Matters*, at n.21, available at https://www.justice.gov/atr/how-rebate-bans-discriminatory-mls-listing-policies-and-minimum-service-requirements-can-reduce.

95.    Although real estate brokers widely claim that commissions are "negotiable," this claim disregards the adverse impact of the conspiracy's anticompetitive restraints that impede effective negotiation within the market.

96.    First, the actions in furtherance of the conspiracy have the purpose and effect of elevating the baseline for any negotiations that could follow. Accordingly, in the same way that an unlawful agreement to fix list prices (or an agreement to increase price announcement terms) is potentially subject to negotiation by some purchasers, the conspiracy's actions are anticompetitive and unlawful because they elevate the base-line for negotiations.

97.    Second, the Buyer-Broker Commission Rule — by requiring sellers to make unilateral blanket offers of buyer-broker compensation as a *precondition* for listing properties on Pinergy — compels sellers to offer high buyer-broker commissions to attract potential buyers. Sellers who attempt to negotiate down the amount of buyer-broker commission to be offered on Pinergy are customarily informed by seller-brokers that reducing that amount will result in materially fewer potential buyers learning about or viewing the property for sale.

98.    Indeed, seller-brokers are in fact *trained* to dissuade home sellers from reducing the buyer-broker commission. For example, Defendant Keller Williams provides courses to its Realtors through "Keller Williams University," some of which are mandatory. One of the course materials provided to enrollees is a "Script Catalog" for "Working with Sellers," which consists of a collection of recommended scripts for listing brokers to use when communicating with sellers. The "Script Catalog" includes the following recommended script:

- 23 -

| Explaining How Commission Is Used: Script #4 | |
|---|---|
| SELLER: | *Can you reduce your commission?* |
| AGENT: | Of course. As you know, commissions are negotiable. But let me ask you—what are you trying to accomplish by getting me to reduce the commission? |
| SELLER: | *I'm trying to save money.* |
| AGENT: | I understand. Do you know how a commission structure works? |
| SELLER: | *Not really. I just know that I have to pay you a certain amount of what I receive for my house, and that means I get to keep less.* |
| AGENT: | Let me explain what happens when you reduce a commission. First of all, half of the commission usually goes to a cooperating agent. When you reduce the commission, you reduce the incentive for that agent to bring a buyer to your house. If an agent has ten different houses, nine of which come with a 3 percent commission, one of which comes with 2.5 percent commission, which houses do you think they're going to show? |
| SELLER: | *The ones with the larger commission.* |
| AGENT: | Absolutely. You're putting yourself at a disadvantage competitively when you reduce your commission, wouldn't you agree? |
| SELLER: | *I guess that's true.* |

99.     Third, because MLS PIN requires the seller-broker to make a financial offer to the buyer-broker, sellers will build this cost into the total commission they charge the seller.

100.    Although a seller-broker may offer a buyer-broker a lesser commission than was offered on Pinergy, it may only do so if (a) the seller-broker informs the buyer-broker in writing of such proposed change in compensation before the buyer-broker produces an offer to purchase; and (b) the change in the listed compensation is not the result of any agreement or other cooperative activity between the seller broker and the buyer-broker.

101.    As a result, a seller cannot respond to a purchase offer with a counteroffer that is conditioned on reducing the buyer-broker commission. Nor can the seller, after receiving purchase offers, decide to unilaterally reduce the buyer-broker commission offered on Pinergy.

102.    Due to these restraints, the downward negotiation of the buyer-broker commissions is effectively prohibited and the buyer-broker commission has been maintained at a supra-competitive level — and substantially increased in actual dollars charged — for many years. Indeed, seller-brokers who initially list property with a buyer-broker commission at 2.5% or above almost always stay at a high commission rate; and if a seller-broker who initially offers a lower buyer-broker commission decides to change the amount, the change ordinarily involves imposition of an *increased* buyer-broker commission.

103.    In sum, the Buyer-Broker Commission Rule adopted, implemented and enforced by the conspiracy has achieved exactly what it is designed to do: it has imposed significant overcharges on home sellers, it has maintained — and even increased — those overcharges over time notwithstanding technology changes that should have substantially reduced commissions, and it has significantly impeded the ability of lower-cost alternatives to create a more competitive marketplace.

### E.    All participants in Pinergy agree to these anticompetitive restraints

104.    Pinergy users, including Realtor brokers and salespersons and non-Realtor brokers and salespersons operating in the Covered Area must agree to these restraints and fully comply with the above anticompetitive rules, and with other rules contained in the MLS PIN Rules.

105.    The MLS PIN Rules, including the Buyer-Broker Commission Rule, are enforced by the local Realtors and Realtor associations that own and manage MLS PIN.

106.    Brokers owns MLS PIN, and those brokers are required by MLS PIN to ensure that their participants adhere to the MLS PIN Rules. Thus, each local Realtor association agrees

to the anticompetitive restraints challenged herein and plays a central role in implementation and enforcement of those restraints.

107.    Because access to Pinergy is a commercial necessity, all brokers and individual salespersons must comply with the MLS PIN Rules. Without access to Pinergy, a broker or agent would be unable to list properties for sale in the centralized database or receive offers of compensation for finding a buyer for a listed property.

### F.    Broker Defendants participate in, facilitate, and implement the conspiracy

108.    The Broker Defendants have agreed to adopt, promote, implement, and enforce the Buyer-Broker Commission Rule through their involvement MLS PIN governance and imposition of MLS PIN Rules on local brokers, Realtors, and Realtor associations, including the Broker Defendants' affiliated franchisees, brokers and employees. By participating in such organizations which prevent members from allowing their associates to compete with each other for commissions — and agreeing to follow and enforce their anticompetitive rules — the Broker Defendants have joined the conspiracy and have played a central role in its implementation and enforcement.

109.    The Broker Defendants participate in, implement, and facilitate the conspiracy by requiring their franchisees and realtors to join MLS PIN and comply with the MLS PIN Rules, including the Buyer-Broker Commission Rule.

110.    Defendant HomeServices, for example, has explained its own role as follows: "As an industry leader, we have a responsibility to actively participate in shaping our industry and its current and future business model. The HomeServices executive leadership and CEOs of our operating companies drive these important discussions as leaders within the National Association of Realtors . . . and at the regional and local levels of the MLS organizations."

- 26 -

111.    By virtue of their leadership positions in MLS PIN, these and other representatives from the Broker Defendants are responsible for formulating, reviewing, and approving rules like the Buyer-Broker Commission Rule.

112.    Second, each Broker Defendant assists MLS PIN with ensuring compliance with the MLS PIN Rules. MLS PIN Participants and owners are responsible for the enforcement of the MLS PIN Rules.

113.    Third, in each of the areas in which Pinergy operates, the Broker Defendants collaborate with local brokers and Realtor associations to implement and enforce the MLS PIN Rules, including the Buyer-Broker Commission Rule, in furtherance of the combination and conspiracy alleged herein. Given the number of brokers and agents working for the Broker Defendants' franchisees in the Covered Area, the Broker Defendants and their policies have influenced the governance of MLS PIN.

114.    Finally, each Broker Defendant has also agreed to participate in, implement, and/or facilitate the conspiracy by imposing the MLS PIN Rules, including the Buyer-Broker Commission Rule, on its franchisees, affiliates, and realtors. Each Broker Defendant requires its franchisees, affiliates, and realtors to join and/or participant in MLS PIN and follow the MLS PIN Rules. Each Broker Defendant requires its Realtors and franchisees to join the local MLS, including MLS PIN, and abide by such MLS's rules, including the MLS PIN Rules, as a condition of doing business with the Broker Defendants, and to secure the benefits of the Broker Defendants' brands, infrastructure, and other resources that support their brokerage operations.

115.    Anywhere Defendants require their franchisees and realtors to comply with the MLS PIN Rules, including the Buyer-Broker Commission Rule. For example, the Century 21

Alton Clark and Coldwell Banker Traditions Policies and Procedures Manuals formally require MLS membership and compliance with MLS rules.

116.    The HomeServices Defendants also require their franchisees and Realtors to join MLS and follow MLS rules. For example, the Real Living Franchise Disclosure Document makes clear that MLS membership and access is required for franchisees, and the agreement requires the franchisee to provide Real Living with access to the franchisee's MLS data.

117.    The Keller Williams Policies and Guidelines Manual requires all associates to "become members of their local Board/Association of Realtors and MLS" unless granted an exemption by their team leader. A 2018 Keller Williams Franchise Disclosure Document shows that MLS membership is expected by franchisees, because it includes the MLS-fees as part of the estimated initial investment for a Keller Williams market center. And the Keller Williams training manual, which provides sample broker scenarios for realtors, shows that listing brokers are taught to tell home sellers that the sellers have to pay the buyer-broker's fee and that fee is non-negotiable.

118.    2016 RE/MAX Independent Contractor Agreement prescribes that the contractor shall join the local realtor's association and "shall abide by . . . the rules and regulations of each local or regional [MLS]."

119.    Accordingly, by developing and reissuing the Buyer-Broker Commission Rule, enforcing the rule through local realtor association leadership, imposing the rule on local realtor associations and MLSs, and requiring franchisees, realtors, and other affiliates to join local realtor associations and MLSs (including MLS PIN), and comply with their rules (including the MLS PIN Rules), each Broker Defendant has agreed to participate in and implemented and/or facilitated the conspiracy.

- 28 -

### G.    Effects of the conspiracy

120.    Defendants' conspiracy has had the following anticompetitive effects, among others, in the areas covered by Pinergy:

- Home sellers have been forced to pay the commissions of the buyer-brokers — who represent the interests of the buyers in negotiations to buy their homes — thereby substantially inflating the cost of selling their homes.

- Home sellers have been compelled to set a high buyer-broker commission to induce buyer-brokers to show their homes to prospective home buyers.

- Home sellers have paid inflated buyer-broker commissions and inflated total commissions.

- The retention of a buyer-broker has been severed from the setting of the broker's commission; the home buyer retains the buyer-broker, while the home seller sets the buyer-broker's compensation.

- Competition among home buyers has been restrained by their inability to compete for the purchase of a home by lowering the buyer-broker commission.

- Broker Defendants and their franchisees have increased their profits substantially by receiving inflated, supracompetitive buyer-broker commissions and inflated, supracompetitive total commissions.

121.    Plaintiffs are not aware of any pro-competitive effects of Defendants' conspiracy. Even assuming *arguendo*, that there was any justification for requiring such payments during the sub-agency period much earlier, "[t]here is no longer any reason to permit listing brokers to set

- 29 -

the default prices that these competing buyers' brokers charge to serve their own customers."[19] Indeed, none of the purposes of MLS PIN "has anything to do with interbroker compensation. In fact, MLS PIN could continue providing every service of significance it provides without addressing compensation at all."[20] Even if there was a plausible pro-competitive effect, it would be substantially outweighed by the conspiracy's anticompetitive effects.

122.    There is substantial economic evidence that Defendants' conspiracy has resulted in buyer-broker commissions and total commissions paid by home sellers that are inflated well above a competitive level in the Covered Area.

123.    Total average broker commissions (*i.e.*, the aggregate commission paid to the seller-broker and buyer-broker) in the in the Covered Area is approximately between five and six percent.

124.    This figure is substantially higher than in countries with competitive markets for residential real estate brokerage services. In a 2002 study titled "International Residential Real Estate Brokerage Fees and Implications for the US," economists Natalya Delcoure and Norm Miller compared real estate commissions around the world with those in the United States. They concluded: "Globally, we see much lower residential commission rates in most of the other highly industrialized nations, including the United Kingdom (UK), Hong Kong, Ireland, Singapore, Australia, and New Zealand. . . . In the UK, the [total] commission rates average less than 2%. . . . In New Zealand and South Africa, [total] commission rates average 3.14%. In Singapore, the [total] commission rates also tend to run around 3%." They also found variation within countries; in the United Kingdom, for example, Delcoure and Miller found that "1%-2%

---

[19]  Nadel, *A Critical Assessment of the Traditional Residential Real Estate Broker Commission Rate Structure*, 5 Cornell Real Estate R. 1, 64-65 (2007).

[20]  Larson, *supra* note 7.

is typical; in very competitive areas 0.50.75%; in low priced areas [for homes] as high as 3.5%." Ultimately, the economists concluded that, "based on global data, the [total] US residential brokerage fees should run closer to 3.0%."[21]

125.     For years, buyer-broker commissions have remained steady in the United States, including in the Covered Area, despite both an increase in home prices (increasing the dollar amount of the commission) and the diminishing role of buyer-brokers described above. The United States General Accounting Office review of the residential real estate market reported that "commission rates have remained relatively uniform – regardless of market conditions, home prices, or the efforts required to sell a home."[22] This remains true today. In fact, over the past two decades, the average total commission on an annual basis has always been maintained between 5.02 percent and 5.4 percent. It was at virtually the same level in 2017, as it was at the time of the GAO's analysis. Similarly, in Defendant Keller Williams' presentation to competitors and other industry participants in 2016, Keller Williams reported that its average buyer-broker commission in 2015 (2.71%) was virtually the same level that was charged in 2002 (2.8%).

126.     While the commission rates have been stable, the dollar value of commissions has increased significantly in step with rising housing prices. Since 2000, home prices have approximately doubled, while the total rate of inflation has been below 50%. As Dr. Barwick, an economist at Cornell University, recently stated at the DOJ/FTC workshop on competition in the

---

[21] Delcoure and Miller, *International Residential Real Estate Brokerage Fees and Implications for the US Brokerage Industry*, 5 Int'l Real Estate Rev. 12, 13-14, 17 (2002).

[22] U.S. Gov't Accountability Office, GAO-05-947, *Real Estate Brokerage: Factors That May Affect Price Competition*, Report to the Committee on Financial Services, House of Representatives 1, 1 (2005)

residential real estate brokerage industry, "if you look at the commission the consumers are paying today relative to 20 years ago, they're nearly paying twice as much."[23]

127.    While "competitive pressures in an industry ordinarily force competitors to adopt fee structures that reflect their costs, this has not occurred for real estate broker fees" — "broker fees are usually set without regard to either the quantity or quality of service rendered."[24]

128.    The stability of broker commissions stands in stark contrast to the experience in other industries which have been significantly affected by the internet. "One would have expected that an information and communication-based industry like real estate brokerage, would enjoy tremendous cost efficiencies from the development of the Internet, Databases, and other communication technologies. Yet it appears that traditional brokers generally have not passed on their cost savings to consumers in the form of lower fees."[25]

129.    The adverse economic impact of the conspiracy's restraints on price competition have been severe. The Consumer Federation of America, which has reviewed and criticized the brokerage industry's practices for many years, has indicated that "[i]f sellers and buyers each separately negotiated compensation with their brokers, uniform 5-6% commissions would quickly disappear."[26]

130.    An attorney who has represented many MLSs observed that "[w]ith the demise of subagency, there is little reason to keep interbroker compensation"; and that "[g]etting rid of interbroker compensation" [i.e., payments from seller-brokers to buyer-brokers] would improve the market in several areas, including:

---

[23]  Barwick, et al., *Conflicts of Interest and the Realtor Commission Puzzle*, Nat'l Bureau of Econ. Research, 10 (2015).

[24]  Nadel, *supra* note 19*, at 4.

[25]  Nadel, *supra* note 19, at 7.

[26]  Brobeck & Woodall, *supra* note 1, at 4.

- 32 -

- "Buyer-broker fees can be commensurate with the skill and experience of the broker and with the buyer's needs."

- "The market benefits from price competition for buyer broker-services."

- "The dangers of price fixing, and the claims by industry watchdogs that it exists now, will largely be addressed. Brokers will really be unable to tell what their competitors are charging for services, and there will be no incentive for commissions to be 'standard.'"[27]

131.    The economic cost to the plaintiff class and other consumers is enormous. Economists Hsieh and Moretti have suggested that "*more than half of current commissions* might be eliminated by competition."[28] Natalya Delcourse and Norm Miller "found that U.S. broker fees should equal something closer to three percent."[29]

## VI.    MARKET POWER

132.    Defendants have the power to control prices and exclude competition in the Covered Area.

133.    The relevant service market for the claims asserted herein is the bundle of services provided to homebuyers and sellers by residential real estate brokers with Pinergy access. Defendants' control of Pinergy gives them the ability to impose the Buyer-Broker Commission Rule and other anticompetitive MLS PIN rules on class members and other market participants. Access to Pinergy is critical for brokers to compete and to assist home buyers and sellers in the areas in the Covered Area.

---

[27] Larson, *supra* note 7.

[28] *Id.* at 8 n.28.

[29] *Id.* at 9 n.28.

134.    The relevant geographic markets for the claims asserted herein are no broader than the Covered Area. Nearly all homes sold in the Covered Area were listed on Pinergy by brokers that are subject to MLS PIN Rules and standards. The residential real estate business is local in nature. Most sellers prefer to work with a broker who is familiar with local market conditions and who maintains an office or affiliated sales associates within a reasonable distance of the seller's property. Likewise, most buyers seek to purchase property in a particular city, community, or neighborhood, and typically prefer to work with a broker who has knowledge of the area in which they have an interest.

135.    Broker Defendants, through their coconspirator franchisees and other conspiring brokers in the Covered Area, collectively provide the vast majority of the residential real estate broker services in these areas.

136.    Defendants and their co-conspirators collectively have market power in the Covered Area through their control of Pinergy and their dominant share of the local market.

137.    Any buyer-brokers who wish to compete outside of Defendants' conspiracy would face insurmountable barriers. Defendants' control of Pinergy through their co-conspirators (*i.e.*, their local franchisees, other local brokers, and the local realtor associations) means that non-conspiring brokers would need to establish an alternative listing service to compete with the conspiring brokers, or alternatively, attempt to compete without access to a listing service. A seller-broker who represented a seller without using a listing service would lose access to the large majority of potential buyers, and a buyer-broker who represented a buyer without using a listing service would lose access to the large majority of sellers. Brokers cannot compete effectively without access to a listing service.

138.    For an alternative listing service to compete effectively with Pinergy, the alternative would need to have listings as comprehensive (or at least nearly so) as Pinergy. Brokers and their individual salespersons who currently profit from inflated, supra-competitive buyer-broker commissions and total commissions have little incentive to participate on an alternative listing service that would generate lower buyer-broker commissions and lower total commissions. Further, many buyers would be very reluctant to retain a buyer-broker operating on an alternative listing service that required them to pay the buyer-broker commission, when other buyer-brokers operating on Pinergy are entirely compensated by home sellers.

139.    Accordingly, seller-brokers on an alternative listing service would struggle to attract buyer-brokers and their buyer clients. Moreover, many home sellers would not retain brokers using a new, unfamiliar alternative listing service that had no track record of success and had failed to attract sufficient buyers and buyer-brokers. Thus, a listing service attempting to compete with Pinergy would likely fail to attract enough property listings to operate profitably and be a competitive constraint on Pinergy. The absence of listing services that compete with Pinergy reflects the very substantial barriers to entry.

## VII.    THE CONSPIRACY

140.    MLS PIN conspired with the Broker Defendants, each of the local Realtors and Realtor associations that own and operate MLS PIN, and multiple franchisees and brokers of the Broker Defendants to agree to, comply with, and implement the anticompetitive Buyer-Broker Commission Rules. The conspirators had a conscious commitment to a common scheme designed to achieve the unlawful objective of maintaining supra-competitive commissions.

141.    Broker Defendants participated in MLS PIN's conspiracy by participating in, facilitating, and implementing the Buyer-Broker Commission Rules. Each of the Broker Defendants required its franchisees, affiliates, and realtors to comply with MLS PIN's allegedly

anticompetitive restraints to secure the benefits of their brands, infrastructure and resources. They did this by requiring their franchisees and realtors to join MLS PIN and follow the MLS PIN Rules, including the Buyer-Broker Commission Rules. In addition, Broker Defendants require their franchisees and salespersons to join a local Realtor association and MLS PIN.

142.    Given the number of brokers and agents working for the Broker Defendants' franchisees, these franchises had influence over the governance of MLS PIN and the promulgation and enforcement of the MLS PIN Rules.

143.    Here, the Broker Defendants constitute the largest real estate brokers in the Covered Area. It is reasonable to infer from the fact that each Broker Defendant required its franchisees and realtors to join MLS PIN and local Realtor associations that the Broker Defendants supplied those organizations with the membership base that gives them the power to impose the MLS PIN Rules upon the industry in the Covered Area. In short, each Broker Defendant has participated in an agreement that centralizes control over how real estate brokers are compensated with MLS PIN. Thus, Broker Defendants' actions satisfy the conspiracy element because their actions deprived the marketplace of independent centers of decision-making, at least with respect to buyer-broker commissions.

144.    Thus, the Broker Defendants' conduct has empowered Pinergy such that access to Pinergy is commercially necessary for real estate brokers. Without the Broker Defendants' conscious assent to the system, Pinergy would be unlikely to have the power to exclude brokerages and realtors that did not abide by MLS PIN's Buyer-Broker Commission Rules.

145.    The Broker Defendants have control over their franchisees and salespersons insofar as the Broker Defendants require them to join MLS PIN and local Realtor associations,

the entities responsible for implementing and enforcing the alleged anticompetitive restraints here.

146.   It is reasonable to infer that the Broker Defendants are involved in the maintenance of the existing pricing system. That inference is bolstered by the CEO of Broker Defendant Keller Williams Realty, Inc. informing attendees at an industry event with its competitors that offering a lower buyer-broker commission rate than the industry average amounted to "giving away money" and that "limited service, discount broker, market share in the United States is at an all-time low."

147.   Thus, the operation of the Buyer-Broker Commission Rule was clearly a topic of considerable interest and was an issue discussed among competitors.

148.   In sum, the Broker Defendants' conduct deprived the real estate market of independent centers of decision-making by effectively concentrating power in the hands of MLS PIN to set the rules for buyer-broker commissions in the Covered Area. Moreover, the Broker Defendants played a key role in maintaining that system by requiring its franchisees and salespersons to join MLS PIN and local Realtor associations and abide by their rules. And representatives from the Broker Defendants implemented and enforced those rules through their leadership roles with local Realtor associations

## VIII.   THE UNREASONABLE RESTRAINT OF TRADE

149.   The relevant service market is the bundle of services provided to homebuyers and sellers by residential real estate brokers with MLS access in the Covered Area.

150.   The relevant geographic market is the Covered Area.

151.   The Buyer-Broker Commission Rule causes an anticompetitive effect in the form of artificially inflated buyer-broker commissions. Specifically, while the Buyer-Broker Commission Rule has been in effect, total commissions for United States residential real estate

sales have held steady between 5.0 and 5.4 percent with 2.5 to 3.0 commissions going to buyer-brokers.

152.    Those rates are sufficiently higher than in comparable international markets.

153.    The commission rates held steady even as housing prices increased during that time (outpacing the rate of inflation), meaning that actual dollar commissions on home sales rose during that period. Such sustained increasing pricing is not expected in a competitive market in the absence of comparable increases in the cost of delivering the relevant services. Because stable, percentage-based commissions are directly correlated with the price of housing, and the cost of housing has substantially increased relative to the rate of inflation, increases in the cost of providing realtor services do not account for the dramatic increase in the value of commissions.

154.    As recognized by least some Defendants, brokers who try to gain business by offering discounted commissions have become almost "irrelevant."

155.    When viewing the Buyer-Broker Commission Rules as a whole, it is easy to understand how they could plausibly result in inflated commission rates.

156.    First, under the Buyer-Broker Commission Rule, the seller-broker must list the property with a blanket offer of some compensation to the buyer-broker. That requirement, by itself, raises antitrust concerns given that the offer is the same regardless of the buyer-broker's experience or the value of services provided by the buyer-broker.

157.    A buyer-broker is highly unlikely to show their client a home when the seller is offering a relatively low commission.

158.    Nor would a prospective homebuyer necessarily be able to detect that their broker is screening out homes offering insufficient commissions because only brokers and realtors that subscribe to the MLS can view buyer-broker commission offers. That also means a home seller

- 38 -

is unable to view the universe of buyer-broker commission offers before agreeing to a commission rate in the listing agreement, thereby putting the seller-broker in a substantial position of influence with respect to that decision.

159.    Such an arrangement restrains trade because it substantially deprives the customer of the ability to utilize and compare prices in selecting brokers.

160.    At the same time, MLS PIN Rules require that brokers share price information.

161.    Once a home seller has agreed to a commission rate, they are effectively locked in to paying that amount.

162.    Conversely, the seller has contractually agreed to pay a total commission.  Thus, even if the seller were able to negotiate down the buyer-broker's commission, the seller would not be entitled to the benefit as the seller-broker would be contractually entitled to retain any discount.

163.    But even if the seller or buyer were inclined to negotiate the buyer-broker commission, MLS PIN Rules expressly limit this conduct. According to the MLS PIN Rules, the only time a buyer-broker can negotiate the listed commission amount is prior submitting an offer from a potential buyer. Nor can the buyer-broker circumvent the rule by urging the buyer to negotiate with the seller directly.

164.    Conversely, once a seller-broker has received an offer on a property, they are prohibited from attempting to modify the buyer-broker commission unilaterally. Moreover, it is difficult to imagine how such negotiation could occur. Indeed, upon information and belief, seller-brokers who list a property with a buyer-broker commission offer of 2.5 percent or above will rarely subsequently decrease the offer below that threshold.

- 39 -

165.     This results in a pricing system in which the seller is essentially locked into a buyer-broker commission rate upfront that neither the buyer nor the seller have the ability to negotiate.

166.     In sum, the Buyer-Broker Commission Rules prevent effective negotiation over commission rates and cause an artificial inflation of buyer-broker commission rates in the markets served by Pinergy.

**IX.     Injury**

167.     Plaintiffs have suffered an antitrust injury from Defendants' conspiracy. Plaintiffs were home sellers required to pay a commission to the buyer-broker of the person who purchased their home. But-for Defendants' conspiracy, Plaintiffs would have paid "substantially lower commissions." Such an injury is assuredly of a type that the Sherman Act was designed to prevent.

168.     Nor is the alleged injury one particular to Plaintiffs but instead it would be felt by all home sellers who list their property on Pinergy.

**CLASS ACTION ALLEGATIONS**

169.     Plaintiffs bring this lawsuit as a class action on behalf of home sellers who paid a broker commission in connection with the sale of residential real estate listed on Pinergy. Specifically excluded from this Class are: the Defendants; the officers, directors and employees of any Defendant; any entity in which any Defendant has a controlling interest; any affiliate, legal representative of any Defendant; the judge to whom this case is assigned and any member of the judge's immediate family; the clerks and staff of the judge to whom this case is assigned and any member of their immediate family; and any heirs, assigns and successors of any of the above persons or organizations in their capacity as such.

170.    The members of the Class are so numerous that joinder of all members is impractical. Upon information and belief, there are thousands of members in the Class.

171.    Plaintiffs' claims are typical of the claims of the members of the Class because Plaintiffs' claims, and the claims of all Class members, arise out of the same conduct, policies and practices of Defendants as alleged herein, and all members of the Class are similarly affected by Defendant's wrongful conduct.

172.    There are questions of law and fact common to the Class and these questions predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

A.    Whether Defendants conspired as alleged herein;

B.    Whether the conspiracy was implemented in the areas in which Pinergy operates;

C.    Whether the conspiracy harmed competition as alleged herein;

D.    Whether the competitive harm from the conspiracy substantially outweighs any competitive benefits;

E.    Whether buyer-broker commissions and total commissions were inflated as a result of the conspiracy in the areas in which Pinergy operates; and

F.    The appropriate class-wide measures of damages.

173.    Plaintiffs will fairly and adequately represent the Class and has retained counsel experienced and competent in the prosecution of class action litigation. Plaintiffs have no interests antagonistic to those of other members of the Class. Plaintiffs are committed to the vigorous prosecution of this action and anticipates no difficulty in the management of this litigation as a class action.

- 41 -

174.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class and/or Subclass to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

175.     Class action status in this action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendant.

176.     In the alternative, certification under Rule 23(b)(2) is warranted because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to each Class as a whole.

177.     In the alternative, certification under Rule 23(b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only individual members, and class action treatment is superior to the other available methods for the fair and efficient adjudication of this controversy.

## COUNT I
## Violation of Section 1 of the Sherman Act, 15 U.S.C § 1

178.     Plaintiffs repeat and incorporate by reference each of the foregoing allegations of this Complaint.

179.     Defendants have engaged in a continuing contract, combination, or conspiracy to unreasonably restrain trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C § 1.

180.     The contract, combination, or conspiracy alleged herein has consisted of a continuing agreement among Defendants and their co-conspirators to require home sellers to pay the buyer-broker and to pay an inflated amount.

181.     In furtherance of the contract, combination, or conspiracy, Defendants and their coconspirators have committed one or more of the following overt acts:

- Participated in the establishment, implementation and enforcement of the Buyer-Broker Commission Rule and other anticompetitive MLS PIN rules;

- Participated in the establishment, implementation and enforcement of rules by MLS PIN, local Realtor associations and Pinergy that implemented the Buyer-Broker Commission Rule and other anticompetitive rules in the Covered Area; and

- Included provisions in franchise agreements, policy manuals, and other corporate agreements with franchisees, affiliates, and realtors of Broker Defendants that required the implementation of and adherence to the Buyer-Broker Commission Rule and other anticompetitive MLS PIN rules in the Covered Area.

182.     Defendants' conspiracy has required sellers in the Covered Area to pay buyer-brokers who represent interests antagonist to their own, to pay an inflated buyer-broker commission and an inflated total commission and has restrained price competition among buyer-brokers. This harm to competition substantially outweighs any competitive benefits arising from the conspiracy.

183.     Defendants' conspiracy has caused buyer-broker commissions and total commissions in the Covered Area to be inflated. Plaintiffs and the other members of the Class

paid these inflated commissions in connection with the sale of residential real estate listed on Pinergy. Absent Defendants' conspiracy, Plaintiffs and the other class members would have paid substantially lower commissions because the broker representing the buyer of their homes would have been paid by the buyer and buyer-broker commissions would not be at supra-competitive levels.

184.    Defendants' conspiracy is a *per se* violation of Section 1 of the Sherman Act.

185.    As a direct and proximate result of Defendants' past and continuing violation of Section 1 of the Sherman Act, Plaintiffs and the other class members have been injured in their business and property and suffered damages in an amount to be proven at trial.

186.    In the alternative, Defendants' conspiracy violates section 1 of the Sherman Act under the Rule of Reason.

187.    As a direct and proximate result of Defendants' past and continuing violation of Section 1 of the Sherman Act, Plaintiffs and the other class members have been injured in their business and property and suffered damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

188.    WHEREFORE, Plaintiff, individually and on behalf of the Class, pray for relief as follows as applicable for the particular claim:

(a)    That the Court determine that this action may be maintained as a class action under Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and direct that notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to members of the Class;

(b)    That the Court enter an order declaring that Defendants' actions, as set forth in this Complaint, violate the law;

(c)      That the Court award Plaintiffs and the other members of the Class damages and/or restitution in an amount to be determined at trial;

(d)      That the Court award Plaintiffs and the Class pre- and post-judgment interest;

(e)      That the Court award Plaintiffs and the Class their costs of suit, including reasonable attorneys' fees and expenses;

(f)      That the Court award Plaintiffs and the Class a permanent injunction, under Section 16 of the Clayton Act, enjoining Defendants from continuing conduct determined to be unlawful; and

(g)      That the Court award such other relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated: January 9, 2023                Respectfully submitted,

                                   */s/ Seth R. Klein*

Douglas P. Needham, BBO No. 67101
Robert A. Izard (*pro hac vice*)
Craig A. Raabe (*pro hac vice*)
Seth R. Klein (*pro hac vice*)
Christopher M. Barrett (*pro hac vice*)

IZARD, KINDALL & RAABE, LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
(860) 493-6292
(860) 493-6290 fax

dneedham@ikrlaw.com
rizard@ikrlaw.com
craabe@ikrlaw.com
sklein@ikrlaw.com
cbarrett@ikrlaw.com

Christopher L. Lebsock (*pro hac vice*)

- 45 -

HAUSFELD LLP
600 Montgomery Street
Suite 3200
San Francisco, CA 94111
(415) 633-1908
clebsock@hausfeld.com

Halli Spraggins (*pro hac vice*)
HAUSFELD LLP
888 16th Street, N.W.
Suite 300
Washington, DC 20006
(202) 540-7200
hspraggins@hausfeld.com

**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I, Seth R. Klein, hereby certify that a true copy of the foregoing document filed through the ECF system will be electronically sent to the registered participants as identified on the Notice of Electronic Filing on January 9, 2023.

*/s/  Seth R. Klein*
Seth R. Klein