**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

_____

**In Re: Real Estate Commission Litigation**         **MDL No. 3100**

This document relates to: March v. REBNY et al.,
Case No. 1: 23- cv-09995-JGLC-RWL, In the United States
District Court for the Southern District of New York

_____
_____

**THE REAL ESTATE BOARD OF NEW YORK, INC.'S ("REBNY") AND
THE REBNY RESIDENTIAL LISTING SERVICE'S ("RLS") BRIEF IN
OPPOSITION TO PLAINTIFFS' MOTION FOR TRANSFER TO THE
WESTERN DISTRICT OF MISSOURI PURSUANT TO 28 U.S.C. § 1407
FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

**TABLE OF CONTENTS**

                                                                                               **Page**

I.     PRELIMINARY STATEMENT ................................................................................... 1

II.    BACKGROUND ......................................................................................................... 3

III.   ARGUMENT............................................................................................................... 5

        A.     Consolidation of *March* in a Multi District Litigation is Not Appropriate............. 5

                1.     The NAR Cases and March Do Not Involve Common Questions of Fact, and Common Legal Questions Fail to Justify Transfer and Consolidation ................................................................................................ 5

                2.     Transfer of March Will Significantly Inconvenience the Parties and Witnesses ............................................................................................... 9

                3.     The Efficiencies to be gained from Transferring March to an MDL are Extremely Limited, if any .................................................................... 9

IV.   CONCLUSION........................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re: Bank of Am. Fraudulent Account Litig.*,
  MDL No. 3088, 2023 WL 8538726 (J.P.M.L. Dec. 6, 2023)..........................................2, 5, 10

*In re: Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*,
  804 F. Supp. 2d 1376 (J.P.M.L. 2011)................................................................................2, 3

*In re CVS Caremark Corp. Wage & Hour Emp. Pracs. Litig.*,
  684 F. Supp. 2d 1377 (J.P.M.L. 2010)......................................................................................6

*In re Gerber Probiotic Products Marketing and Sales Practices Litigation*,
  899 F. Supp. 2d 1378 (J.P.M.L. 2012)....................................................................................10

*In re: Nat'l Ass'n for Advancement of Multijurisdictional Prac. Litig.*,
  52 F. Supp. 3d 1377 (J.P.M.L. 2014)...................................................................................2, 6

*In Re: Oral Phenylephrine Marketing and Sales Practices Litigation*,
  MDL No. 3089, 2023 WL 8538831 (J.P.M.L. Dec. 6, 2023)....................................................8

**Statutes**

28 U.S.C. § 1407................................................................................................................ *passim*

The Real Estate Board of New York, Inc. ("REBNY") and the REBNY Residential Listing Service ("RLS") respectfully submit this Response in Opposition to Plaintiffs' Motion for Transfer to the Western District of Missouri pursuant to 28 U.S.C. § 1407 for coordinated or consolidated pretrial proceedings ("Movants' Br.").[1] Unlike each of the other Defendants named in the cases Movants seek to consolidate,[2] REBNY and RLS have no affiliation with the National Association of Realtors ("NAR"), and do not use the NAR Rules, the NAR Handbook on Listing Policy (the "NAR Handbook") or the NAR Code of Ethics. Tellingly, NAR is not named as a Defendant in *March*, which is premised solely upon REBNY's and RLS's own rules, *and does not implicate any NAR Rules*. Accordingly, REBNY and RLS respectfully submit that *March* is factually distinct from the other cases Movants seek to consolidate, and that Movants' motion should be denied with respect to *March*, *Friedman v. REBNY et al.*,[3] and any later-filed cases against REBNY and/or RLS.[4]

## I. PRELIMINARY STATEMENT

Notwithstanding that REBNY and RLS are not affiliated with NAR, and do not use NAR's Rules or its Code of Ethics, Movants seek to group a case filed against REBNY, a not-for-profit real estate trade association with approximately 15,000 members that operates only in the five boroughs of New York City, and RLS, a non-traditional listing service operated by REBNY that

---

[1] REBNY and RLS are Defendants in *March v. REBNY et al.*, 1:23-cv-09995-JGLC-RWL, in the United States District Court for the Southern District of New York ("*March*"). REBNY and RLS are not named as Defendants in any other cases listed on the Schedule of Actions filed by Movants (MDL No. 3100 ECF No. 2).
[2] Each of the cases listed on Schedule A, with the exception of *March*, are collectively referred to herein as the "NAR Cases."
[3] *Friedman v. REBNY, Inc., et al.*, No. 1:24-cv-00405 (S.D.N.Y. Jan. 18, 2024) ("*Friedman*"). Plaintiff in *Friedman* originally filed his complaint in the Eastern District of New York on December 23, 2023, but he re-filed his case in the Southern District of New York on January 18, 2024. *See Friedman v. REBNY, Inc., et al.*, No. 1:23-cv-09601 (E.D.N.Y. Dec. 23, 2023). The primary distinction between *March* and *Friedman* is the relevant New York City geographic market alleged in each case. *Friedman* was identified to the Panel as a potentially related action on January 23, 2024 (ECF Nos. 204, 204-1).
[4] REBNY and RLS do not take a position on whether it is appropriate to consolidate the cases brought against NAR or the real estate trade associations/multiple listing services that have adopted NAR's Rules or Code of Ethics.

1

covers only New York City, with cases that have been filed across the country against NAR, NAR-affiliated trade associations, NAR-affiliated multiple listing services ("MLSs"), and NAR-affiliated brokerage firms (the "NAR Cases"). But the differences between the cases alleged against REBNY and the NAR Cases cannot be overstated, and the common facts required to support centralization pursuant to 28 U.S.C. § 1407 simply do not exist.

The NAR Cases, including the *Burnett* and *Moehrl* cases referenced throughout Movants' Br., are premised entirely upon NAR's Rules, the NAR Handbook and NAR's Code of Ethics – all of which REBNY and RLS deliberately never adopted and do not follow. The mere fact that there are allegations of violations of Sherman Act Section 1 against NAR and NAR-affiliated groups, as well as against REBNY and RLS, does not warrant consolidation for pretrial purposes. *See In re: Nat'l Ass'n for Advancement of Multijurisdictional Prac. Litig.*, 52 F. Supp. 3d 1377, 1378 (J.P.M.L. 2014) (denying a motion for centralization and finding that "[w]hile each action focuses on the constitutionality of restrictions on attorney admission contained in each court's local rules, these common legal questions are insufficient to satisfy Section 1407's requirement of common factual questions").

There are other mechanisms to ensure that litigation against REBNY and RLS proceeds justly and efficiently short of consolidation with the factually and legally distinct NAR Cases. For example, the parties in *Friedman* recently re-filed their case to proceed in a coordinated fashion in a single district, the SDNY, with *March*, where that case will now be heard by the same judge hearing *March*. These steps are consistent with the Panel's repeated guidance that "'centralization under Section 1407 should be the last solution after considered review of all other options.'" *In re: Bank of Am. Fraudulent Account Litig.*, MDL No. 3088, 2023 WL 8538726, at *2 (J.P.M.L. Dec. 6, 2023) (*quoting In re: Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F.

2

Supp. 2d 1376, 1378 (J.P.M.L. 2011)).  Pretrial coordination of *March*, *Friedman* and any later-filed cases brought against REBNY and/or RLS, and other RLS participating brokerage firms, with the NAR Cases would only inconvenience the parties and witnesses, decrease efficiencies, and increase costs significantly.

**II.    BACKGROUND**

*March* was filed on November 8, 2023 in the United States District Court for the Southern District of New York, naming REBNY, RLS and approximately 25 REBNY member brokerage firms as Defendants.  Szyfer Dec. ¶ 7.  REBNY is a not-for-profit, real estate trade association comprised of approximately 15,000 New York City real estate professionals, 810 brokerage firms and 240 building owners, developers and management firms.  Szyfer Dec. ¶ 2.  Unlike the other associations named in the other actions, REBNY's membership includes more than just licensed real estate brokers and agents.  Szyfer Dec. ¶ 2.  RLS is a listing service used by *REBNY member and non-member* brokerage firms for properties for sale or rent in New York City; it is not a traditional multiple listing service.  Szyfer Dec. ¶ 4.  For example, the RLS does not mandate the use of a standard form exclusive listing agreement, thus allowing each participating brokerage firm to negotiate the terms of each of their exclusive listing agreements.  Szyfer Dec. ¶ 6.  In addition, RLS has never maintained the "Buyer Broker Compensation Rules"—at the heart of the NAR Cases—which require a listing broker to make a mandatory blanket offer of compensation to buy-side brokers in order to list a property on the RLS.  Szyfer Dec. ¶ 5.

More than half of the Defendants in *March*, including REBNY and RLS, do not conduct business outside of New York.  Szyfer Dec. ¶¶ 3-5.  *March* does not even allege a geographic market that encompasses all of New York, or even all of New York City; instead, *March* alleges a limited relevant geographic market for his claims: Manhattan.  Szyfer Dec. ¶ 7. (*March* Compl., ECF No. 1 ¶ 102).  Moreover, the overwhelming majority of properties sold in New York City

3

involve co-operative and condominium apartments, not single family homes. Thus, the types of transactions over the RLS differ significantly from those on traditional MLSs outside of New York City, which involve single family homes.

REBNY and RLS have no affiliation with NAR, and they have not adopted NAR's Rules, the NAR Handbook or NAR's Code of Ethics. Szyfer Dec. ¶¶ 3, 5. To the contrary, REBNY and RLS maintain their own rules (which *March* attached to his Complaint) and their own code of ethics. Szyfer Dec. ¶ 3. As discussed *infra* p. 7, *March* is premised upon a specific REBNY rule that materially differs from the NAR Rules, NAR Handbook and Code of Ethics at issue in the other cases Movants seek to consolidate.

Critically, counsel for *March* did not sign the instant motion to transfer pursuant to 28 U.S.C. § 1407. In fact, we have been advised by them that they similarly oppose centralization with the NAR Cases,[5] and believe that consolidation of *March* in the Western District of Missouri is inappropriate.

In addition, a potentially related action[6] which was recently filed in the Eastern District of New York, titled *Friedman*, has now been voluntarily withdrawn, and refiled in the Southern District of New York as a "related case," and shall be coordinated with the *March* matter. The *Friedman* matter makes similar arguments under only the REBNY rules, makes clear that REBNY and the RLS are not in any way affiliated with NAR (see *Friedman* Complaint, at ¶¶ 48, 51, and 52), and its substantive allegations against REBNY and the other REBNY member defendants do not rely on any NAR rule. The *Friedman* matter alleges only a relevant market in Brooklyn, New York, and even that is circumscribed to "REBNY Brooklyn." (*Friedman* Compl. ¶ 102).

---

[5] We have likewise been advised that counsel for *Friedman* similarly oppose centralization with the NAR Cases.
[6] ECF Nos. 204 and 204-1.

Accordingly, both *March* and *Friedman* involve only New York City sale transactions, on a listing service with absolutely no connection to NAR or the NAR Rules.

## III.   ARGUMENT

### A. Consolidation of *March* in a Multi District Litigation is Not Appropriate.

Under 28 U.S.C. § 1407, the transfer of pending federal district court cases for coordinated pretrial proceedings is authorized only where: (1) the "actions involve[] one or more common questions of fact;" (2) transfer will further "the convenience of the parties and witnesses;" and (3) transfer "will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Each of these factors weighs heavily against consolidation of *March* with the NAR Cases. Because "centralization under Section 1407 should be the last solution after considered review of all other options," and the parties in *March* and *Friedman* have already taken steps to create efficiencies by re-filing the *Friedman* case in the Southern District of New York, where it has now been assigned to the same District Judge and Magistrate Judge handling the *March* case, *March, Friedman* and any later-filed actions against REBNY and/or RLS should be excluded from consolidation should the Panel decide to consolidate the NAR Cases. *In re: Bank of Am. Fraudulent Account Litig.*, 2023 WL 8538726, at *2 (quotations omitted).

   1. The NAR Cases and *March* Do Not Involve Common Questions of Fact, and Common Legal Questions Fail to Justify Transfer and Consolidation

Section 1407 and JPML precedent make clear that only common questions of *fact*, not common questions of *law*, warrant centralization; "common legal questions are insufficient to satisfy Section 1407's requirement of common factual questions." *In re: Nat'l Ass'n for Advancement of Multijurisdictional Prac. Litig.*, 52 F. Supp. at 1378. While Movants list five purported common questions of fact across each of the cases they seek to consolidate (Movants' Br. at 7-8), they fail to acknowledge that the claims in *March* and *Friedman* are premised upon an

5

entirely different rule than the NAR Cases, which necessitates separate and distinct factual discovery. Discovery obtained from NAR, or even from NAR-affiliated associations, NAR-affiliated MLSs, and/or NAR-affiliated brokerage defendants related to jurisdictions in which such entities operate, will have absolutely no bearing whatsoever on the claims against REBNY or RLS. The inverse is also true; discovery obtained from REBNY and RLS will only relate to New York City and to the RLS in particular, which is the only listing service in the country which utilizes its rules and regulations, and thus will not create any efficiencies in the NAR Cases, which do not involve New York City, REBNY or RLS. *See In re CVS Caremark Corp. Wage & Hour Emp. Pracs. Litig.*, 684 F. Supp. 2d 1377, 1379 (J.P.M.L. 2010) (where "discovery in each action is likely to involve individualized, location-specific examination of things," the "potential for significant individual discovery tilts the balance against centralization"). Indeed, because they are not affiliated with NAR, neither REBNY nor the RLS subscribe to or abide by the NAR Handbook or the NAR Code of Ethics—REBNY and RLS actually utilize their own rules and regulations and an unrelated Code of Ethics and Professional Practices.

Movants contend that "plaintiffs in each related action allege that these rules (collectively referred to as 'Buyer Broker Compensation Rules') require home sellers to make blanket unilateral offers of compensation to cooperating brokers when listing a residential property for sale on an MLS and restrict the negotiation of such offers." (Movants' Br. at 1). But the REBNY rule at issue in *March* is substantively different from the rule at issue in the NAR Cases, as it expressly acknowledges that offers of compensation to buyer's brokers may be negotiated amongst the parties to an Exclusive Listing Agreement or in a separate written agreement between an owner of real estate and their Exclusive Broker. Article IV, Section 1 of the RLS Universal Co-Brokerage Agreement Rules & Regulations states "With respect to the sale an Exclusive Property, if a sale is

6

consummated with a Buyer procured by a Co-Broker, ***unless the Exclusive Listing specifies otherwise or absent some other written agreement between an Owner and their Exclusive Broker(s)***, the Exclusive Broker and the Co-Broker shall each be paid an equal share of the commission as specified in the Exclusive Listing." *March* Compl. ¶ 59 (emphasis added and emphasis omitted) ("REBNY Rule").  Moreover, unlike the NAR "Buyer Broker Compensation Rules," nothing in the REBNY Rule requires that any offer of compensation (either as a percentage or whole number) be made by the Listing Broker in order to list on the RLS.

Beyond the text of the rule itself, how REBNY effectuated the REBNY Rule is entirely different from how the NAR Rules came to fruition, and given REBNY's lack of any affiliation or relationship with NAR, clearly involves different witnesses and documents.  Additionally, the enforcement of the REBNY rule is entirely different than how NAR, or any NAR-affiliated MLSs enforces the "Buyer Broker Compensation Rules" at issue in the NAR Cases.  The differences between the REBNY Rule and the NAR Rule are thus consequential, and weigh heavily against consolidation.  Accordingly, given these key differences, and contrary to Movants' hollow concerns, there is no risk of inconsistent decisions, and lumping the REBNY cases together with the NAR cases may actually cause improper confusion or having the NAR Rules imputed to the *March* and *Friedman* matters.

In addition, even the papers filed by Movants demonstrate the key differences between the *March* and *Friedman* cases, on the one hand, and the NAR Cases, on the other.  First, except for one Complaint, the Complaints attached by Movants to their motion fail to make any mention of REBNY, RLS, or the RLS Rule at issue in the *March* and *Friedman* cases.  The one complaint that makes a fleeting reference to the RLS (*Umpa*) actually highlights the differences between the REBNY Rule at issue, and the Buyer Broker Compensation Rules, and indeed, never states that in

7

order to list on the RLS, a seller is required to make a blanket offer of compensation –the central requirement at issue in the NAR Cases. Notwithstanding the fact that the *Umpa* Plaintiffs misinterpret the REBNY Rule at issue, their Complaint never states that the RLS "adopted rules mandating offers of compensation," and they even concede that the RLS is not a traditional MLS, calling it an "MLS-like" service. (*Umpa* Compl., ECF No. 1-7 at 48).

The Panel's recent decision in *In Re: Oral Phenylephrine Marketing and Sales Practices Litigation*, MDL No. 3089, 2023 WL 8538831 (J.P.M.L. Dec. 6, 2023) is instructive. There, the movants sought to consolidate cases claiming that over-the-counter cold and cough medications with phenylephrine do not relieve nasal congestion as advertised. Five of the actions sought to be consolidated "intend[ed] to focus exclusively on the 'Maximum Strength' labeling of the products, in contrast to the efficacy of oral phenylephrine." *Id*. at *1. Citing to statements made during oral arguments concerning the focus of those cases, the Panel concluded that "the factual overlap between the Maximum Strength actions and the actions in the MDL is likely to be minimal," and "decline[d] to include the Maximum Strength actions in the MDL." *Id.* at *2. Like the "Maximum Strength" actions in *In re: Oral Phenylephrine Marketing and Sales Practices Litigation*, the cases brought against REBNY and RLS will involve entirely different listing services, with entirely different key rules at issue, with entirely different facts and witnesses, and entirely different types of real estate properties (single family homes v. co-operatives and condominium apartments) than those raised by the NAR Cases.

Thus, because the *March* and *Friedman* cases both only involve facts specific to just the REBNY rules and the New York City real estate market, which are not at issue in any of the NAR Cases, this factor weighs heavily against consolidating these two cases in an MDL proceeding outside New York City.

2.  Transfer of *March* Will Significantly Inconvenience the Parties and Witnesses

Requiring REBNY and RLS to litigate in the Western District of Missouri, or any another district outside of New York, will significantly inconvenience the parties and witnesses in the *March* and *Friedman* matters. Unlike NAR and many of the other defendants in the NAR Cases, both REBNY and RLS, and more than half of the Defendants in *March*, do not conduct business outside of New York.[7] Szyfer Dec. ¶ 7. The center of gravity for both *March* and *Friedman* is New York: all of REBNY's employees and Board members are based in New York; and all of the allegedly wrongful conduct detailed in the complaints took place only in New York City. Szyfer Dec. ¶ 3. All of the fact witnesses required to defend or prosecute *March* and *Friedman* are based in the New York City area, as is the overwhelming majority of evidence relevant to these actions. Transfer to the Western District of Missouri will severely inconvenience all those the witnesses and parties, and significantly increase litigation costs (*particularly for REBNY, a not-for-profit entity*), given that most are solely New York-based and not affiliated with NAR. Accordingly, this factor weighs heavily against moving the *March* and *Friedman* actions from New York City.

3.  The Efficiencies to be gained from Transferring *March* to an MDL are Extremely Limited, if any.

In light of the critical distinctions between *March* (and *Friedman*) and the NAR Cases, there are minimal, if any, efficiencies to be gained from consolidating *March* in an MDL. First, as discussed *supra*, p. 6, discovery obtained from NAR and NAR-affiliated Defendants is not relevant to REBNY and RLS, and discovery obtained from REBNY and RLS is not relevant to NAR or to Defendants in cases where the NAR Rules, NAR Handbook, or NAR Code of Ethics, apply. To date, there are only two cases against REBNY and RLS, and they have already been

---

[7] REBNY and RLS expressly reserve the right to raise jurisdictional arguments and other grounds for dismissal in any transferee forum.

coordinated in the same district before the same District Judge and Magistrate Judge, so the efficiencies of pretrial coordination have already been achieved; indeed, counsel for March, counsel for Friedman and counsel for Defendants in those two cases have, for weeks, been addressing how best to coordinate those cases, which ultimately led to the re-filing of *Friedman* in the Southern District of New York. Moreover, the parties have already worked cooperatively to coordinate scheduling in both cases without any need of intervention by this Panel.

The Panel "ha[s] emphasized that 'centralization under Section 1407 should be the last solution after considered review of all other options,'" including "agreement by plaintiffs to voluntarily dismiss their actions in favor of one district," which is exactly what transpired here with respect to *March* and *Friedman*. *In re: Bank of Am. Fraudulent Account Litig.*, 2023 WL 8538726, at *2 (citation omitted), citing *In re Gerber Probiotic Products Marketing and Sales Practices Litigation*, 899 F. Supp. 2d 1378, 1380 (J.P.M.L. 2012)). The parties took it upon themselves to coordinate the cases against REBNY in the Southern District of New York; transfer to the Western District of Missouri pursuant to 28 U.S.C. § 1407 would not offer any additional efficiencies. To the contrary, consolidation would significantly inconvenience the parties who are solely situated in New York City, operate solely in New York City, and whose costs of litigation would only increase unnecessarily in connection with a consolidation to the Western District of Missouri.

One final point also bears mention: the Anywhere and Re/Max defendants named in the *March* action have agreed with counsel for March to a stay of the claims against them pending resolution of the class settlement fairness hearing in Missouri. Accordingly, having the *March* action stay in New York City will not in any way affect the administration and oversight of that

settlement, and thus the issue of the Anywhere and Re/Max settlements is irrelevant to the question of consolidation for the *March* matter. Szyfer Dec. at Exhibit 2.

### IV.    CONCLUSION

For the foregoing reasons, REBNY and RLS respectfully request that Movants' motion to transfer pursuant to 28 U.S.C. § 1407 be denied with respect to *March, Friedman*, and any later-filed litigation involving REBNY and RLS, and that the Panel grant such other and further relief as may be just and proper.

Dated: January 26, 2024

Respectfully submitted,

HOGAN LOVELLS US LLP

*/s/ Claude G. Szyfer*
Claude G. Szyfer
Julie G. Matos
390 Madison Avenue
New York, New York 10017
Phone: (212) 918-3000
Fax: (212) 918-3100
claude.szyfer@hoganlovells.com
julie.matos@hoganlovells.com

Liam E. Phibbs
555 13th Street NW
Washington, DC 20004
Phone: (202) 637-5600
Fax: (202) 637-5910
liam.phibbs@hoganlovells.com

*Attorneys for REBNY and RLS*