**BEFORE THE UNITED STATES JUDICIAL PANEL ON**
**MULTIDISTRICT LITIGATION**

| | |
|---|---|
| In re: Real Estate Commission Litigation | MDL-3100 |

**GEORGIA PLAINTIFFS 1925 HOOPER, LLC, ROBERT J. ARKO, AND ANDREW M. MOORE'S RESPONSE IN SUPPORT OF MOTION OF PLAINTIFFS FOR TRANSFER OF ACTIONS TO THE WESTERN DISTRICT OF MISSOURI PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

## I.   INTRODUCTION

Plaintiffs 1925 Hooper, LLC, Robert J. Arko, Andrew M. Moore (the "Georgia Plaintiffs") in the case-styled *1925 Hooper, LLC et al. v. The National Association of Realtors, et al.*, Case No. 1:23-cv-05392-SEG, Northern District of Georgia (the "Georgia Action"),[1] support the Motion of Plaintiffs for Transfer of Actions to the Western District of Missouri Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings [D.E. 1] (the "Motion"). The Georgia Action, which is still in its infancy, should be consolidated with *Gibson v. The National Association of Realtors, et al.* and *Umpa v. The National Association of Realtors* because the cases involve common questions of law and fact. That is, each of these three cases assert claims under Section 1 of the Sherman Act on behalf of a nationwide class of home sellers who listed their homes on Multiple Listing Services ("MLS") against The National Association of Realtors ("NAR") and its associated brokerages. They allege that the defendants orchestrated a conspiracy to increase broker compensation at the expense of home sellers by implementing and enforcing a

---

[1] The Georgia Action was initially styled *Phillips et al. v National Association of Realtors, et al.*, as referenced in the Motion. An amended complaint was filed on December 6, 2023 and the case re-styled *1925 Hooper, LLC et al. v. The National Association of Realtors, et al.*

1

mandatory NAR rule that requires home sellers to shoulder both the commission of their listing agents and the commission of the buyer's agent as a condition of being listed on an MLS.

All three actions arise out of a common factual core and involve common legal issues. Consolidation and transfer under 28 U.S.C. § 1407 to the Western District of Missouri will serve the convenience of the parties and witnesses, promote the just and efficient conduct of the litigation, eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve judicial resources. Furthermore, the Georgia Action should be transferred to the Western District of Missouri because Judge Stephen R. Bough, presided over the bellwether case, *Burnett v. Nat'l Ass'n of Realtors,* Case No. 19-cv-00332-SRB (W.D. Mo.), through a jury verdict and presides over *Gibson*, the first filed nationwide class action. Judge Bough is therefore intimately familiar with the legal and factual issues and best equipped to coordinate and manage the pre-trial proceedings. Moreover, the Western District of Missouri is centrally located and will minimize any inconvenience to the parties and counsel.

Accordingly, the Georgia Plaintiffs respectfully request that the Judicial Panel on Multidistrict Litigation (the "Panel") consolidate the cases, transfer the Georgia Action to the Western District of Missouri, and assign the multidistrict litigation to Judge Bough.

## II.   BACKGROUND

### A. The Missouri Actions.

On October 31, 2022, Judge Stephen R. Bough presided over a jury trial in the Western District of Missouri, after which a jury returned a $1.8 billion verdict against NAR and several seller brokerages in favor of a class of home sellers who paid inflated broker commissions in connection with the sale of residential real estate on four MLSs in Missouri. *See Burnett*, Case No. 4:19-cv-332-SRB. The jury concluded that the seller brokerages engaged in an illegal

anticompetitive agreement involving the NAR's Mandatory Broker Compensation Rule and related policies and practices.

Following the jury verdict, counsel for the *Burnett* plaintiffs filed a nationwide class action against NAR and several seller brokerages, alleging similar claims on behalf of a nationwide class of home sellers who paid a buyer broker commission after using listing services associated with the seller broker defendants.[2] *See Gibson v. Nat'l Ass'n of Realtors*, *et al.*, Case No. 4:23-cv-00788-SRB (W.D. Mo.). Similarly, on December 27, 2023, another group of Plaintiffs filed a lawsuit alleging similar claims in the Western District of Missouri against NAR and thirteen brokerage firms.[3] *Umpa et al. v. Nat'l Ass'n of Realtors*, *et al.*, Case No. 4:23-cv-00945-SRB (W.D. Mo.) The Missouri cases have been consolidated before Judge Stephen R. Bough.

**B. The Georgia Action.**

On November 22, 2023, a group of Georgia plaintiffs filed a Class Action Complaint in the Northern District of Georgia against the NAR and several national real estate broker franchisors with a substantial presence in Georgia.[4] [Georgia Action, D.E. 1 ("Georgia Compl.").] The Georgia Complaint alleges:

---

[2] The Defendants in *Gibson* are: National Association of Realtors, Compass, Inc., eXp World Holdings, Inc. Redfin Corporation, Weichert Realtors, United Real Estate, Howard Hanna Real Estate Services, and Douglas Elliman, Inc.

[3] The Defendants in *Umpa* are: National Association of Realtors, At World Properties, LLC, BHH Affiliates, LLC, Compass, Inc., Douglas Elliman Realty, LLC, Douglas Elliman, Inc., HSF Affiliates, LLC, Hanna Holdings, Inc., HomeServices of America, Inc., HomeSmart International, LLC, Keller Williams Realty, Inc., Real Broker, LLC, Realty ONE Group, Inc., Redfin Corporation, The Long & Foster Companies, Inc., United Real Estate, Weichert Realtors, eXp Realty, LLC, and eXp World Holdings, Inc.

[4] The Defendants in the Georgia Action are: The National Association of Realtors, Higher Tech Realty, LLC d/b/a Mark Spain Real Estate, Christie's International Real Estate, LLC, Engel and Völkers Americas, Inc., Engel and Völkers Atlanta, Weichert of North America, Inc., ERA Franchise Systems LLC, EXP World Holdings, Inc., Redfin Corporation, Homesmart Holdings, Inc., Solid Source Realty, Palmerhouse Properties, LLC, Hamilton Dorsey Alston Company, Inc.,

> [A] nationwide conspiracy by and between the National Association of Realtors ("NAR") and residential real estate brokerages orchestrated to increase broker compensation at the expense of home sellers, including the Plaintiffs in this action, by requiring home sellers to shoulder both the commission of their listing agents and the commission of the buyer's agent when properties are listed on the ubiquitous MLSs.

[*Id.* ¶ 1.]

On December 22, 2023, the Georgia Plaintiffs filed an Amended Class Action Complaint ("Amended Complaint"), substituting new Plaintiffs and adding and dropping the defendants to the Georgia Complaint. [*See* Georgia Action, D.E. 6.] The Georgia Action alleges claims for violations of Section 1 of the Sherman Act, the Georgia Antitrust Act, the Georgia Uniform Deceptive Trade Practices Act ("GUDTPA"), and Georgia Fair Business Practices Act ("GFPBA"). [*Id.* ¶¶ 173-202.] The Amended Complaint asserts that NAR's Compensation Rule compels home sellers to set the commission of the buyer's agent and that, by enforcing this mandate, the NAR establishes an anticompetitive market where sellers are coerced into subsidizing the buyer's costs. [*Id.* ¶¶ 4.] This system, with its veiled commission scheme, "illegally warps" the real estate market. [*Id.* ¶¶ 6.]

The Amended Complaint asserts its Sherman Act claim on behalf of the following nationwide class:

---

Ansley Atlanta Real Estate, LLC, Beacham & Company, LLC, Tracey Cousineau Real Estate, LLC, Sanders Realty Holdings, LLC, Bolst, Inc. d/b/a The Justin Landis Group, Chapman Hall Realtors, Inc., Signature Properties Group, Inc., Method Real Estate Group, LLC d/b/a Method Real Estate Advisors, Path & Post, LLC d/b/a Path & Post Real Estate, Duckworth Properties, LLC, AF Realty Group, LLC, Greater Atlanta Real Estate Group, LLC d/b/a Maximum One Realty, Greater Atlanta Realty Holdings Corporation d/b/a Maximum One Realty, and Atlanta Communities Real Estate Brokerage, LLC. Anywhere Real Estate, Inc. and ERA Franchise Systems LLC, have since been dismissed from the Georgia Action. The Georgia Action also includes claims against a non-NAR MLS, First Multiple Listing Service, Inc., which also participates in and benefits from the anticompetitive practices of NAR and the other Georgia defendants.

> All persons who, for the period December 6, 2019 through the present, engaged a listing broker affiliated with any Defendant in the sale of a residential property listed anywhere in the United States of America and incurred a commission payment to the buyer's broker in connection therewith.

[*Id.* ¶ 156.] The Amended Complaint also asserts Georgia GUDTPA and GFPBA claims on behalf of the following two overlapping subclasses:

> All persons who, for the period November 22, 2019 [or 2021, for the GFBPA claims] through the present, engaged a listing broker affiliated with any Defendant in the sale of a residential property listed in Georgia on an MLS and incurred a commission payment to the buyer's broker in connection therewith.

[*Id.* ¶ 157.] The Georgia Plaintiffs are in the process of serving the defendants in the Georgia Action and no answers have been filed.

Meanwhile, the *Gibson* and *Umpa* Plaintiffs filed the instant Motion before the Panel seeking consolidation and transfer of numerous similar actions across the country, including the Georgia Action, to the Western District of Missouri. [*See generally* D.E. 1-1.] For the reasons set forth below, the Georgia Plaintiffs support the Motion.

### III.  MEMORANDUM OF LAW

**A. Standard for Transfer Under Section 1407.**

Section 1407 authorizes the Panel to transfer "civil actions involving one or more common questions of fact [that] are pending in different districts to any district for coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a). "Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." *Id.* The purpose of Section 1407 is "to provide centralized management of pretrial proceedings and to ensure their 'just and efficient' conduct." *U.S. ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.*, 238 F. Supp. 2d 270, 273

5

(D.D.C. 2002) (quoting *In re New York City Municipal Securities Litig.*, 572 F.2d 49, 51 (2d Cir. 1978). "Transfer under Section 1407 does not require a complete identity of common factual issues or parties as a prerequisite to transfer, and the presence of additional facts or differing legal theories is not significant where . . . the actions still arise from a common factual core." *In re Auto Body Shop Antitrust Litig.,* 37 F. Supp. 3d 1388, 1390 (J.P.M.L. 2014) (citing *In re Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d 1373, 1375-76 (J.P.M.L. 2012)).

As shown below, the Panel should transfer the Georgia Action to the Western District of Missouri and consolidate it with *Gibson* and *Umpa* because transfer will serve the convenience of the parties and witnesses, promote just and efficient conduct of the litigation, eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve judicial resources.

**B. The Georgia Action Should Be Transferred and Consolidated with *Gibson* and *Umpa* Because the Cases Involve Common Questions of Fact.**

    *a.* <u>The Georgia Action Features Almost Identical Claims, Parties, and Classes as Gibson *and* Umpa.</u>

The Georgia Action should be consolidated with *Gibson* and *Umpa* because all three cases share almost identical questions of law and fact under the Sherman Act on behalf of substantially similar nationwide classes of plaintiffs. Each case alleges an antitrust conspiracy between NAR and residential seller real estate brokerages to increase broker compensation at the expense of home sellers by requiring home sellers to shoulder both the commissions of the listing and buying agents when listing properties on MLSs, including, in the Georgia Action, at least one non-NAR MLS. [*Compare* Georgia Compl. ¶ 1 *with Gibson* Compl. ¶ 1 *and Umpa* Compl. ¶ 1.] The cases all challenge the same "Mandatory Offer of Compensation Rule" in the NAR handbook, which all brokerages must enforce to list residential properties on the various MLSs at issue in each case. [*Compare* Georgia Compl. ¶ 3 *with Gibson* Compl. ¶ 3 *and Umpa* Compl. ¶ 3.] The Georgia Action, *Gibson*, and *Umpa* share at least four defendants: NAR, eXp World Holdings, Inc., Redfin

Corporation, and Weichert of North America, Inc. (or Weichert Realtors).[5] [*See* Georgia Compl., *Gibson* Compl., *Umpa* Compl.]

Furthermore, the main class definitions in each of three cases are almost identical:

| **Georgia Action** | *Gibson* | *Umpa* |
|---|---|---|
| All persons who, for the period December 6, 2019 through the present, engaged a listing broker affiliated with any Defendant in the sale of a residential property listed anywhere in the United States of America and incurred a commission payment to the buyer's broker in connection therewith.<br><br>[Georgia Compl. ¶ 163.] | All persons in the United States who, from October 31, 2019, through the present, used a listing broker affiliated with any Corporate Defendant in the sale of a home listed on an MLS, and who paid a commission to the buyer's broker in connection with the sale of the home.<br><br>[*Gibson*, Compl. ¶ 151.] | All persons in the United States who, from December 27, 2019, through the present, used a listing broker affiliated with any Corporate Defendant in the sale of a home listed on an MLS, and who paid a commission to a cooperating broker in connection with the sale of the home . . .<br><br>[*Umpa*, Compl. ¶ 161.] |

Further confirming the common core of facts, the questions of law and fact presented in each of three Complaints are substantially similar:

| **Georgia Action** | *Gibson* | *Umpa* |
|---|---|---|
| a. Whether Defendants, or any of them, engaged in the conspiracy;<br>b. Whether the conduct of Defendants and their co-conspirators caused injury to the business or property of Plaintiffs and the other members of the Classes;<br>c. Whether the effect of Defendants' conspiracy was to inflate both total commissions and buyer broker commissions in | a. Whether Defendants engaged in the alleged conspiracy;<br>b. Whether the conduct of Defendants' and their co-conspirators caused injury to the business or property of Plaintiffs and the other members of the Class;<br>c. Whether the effect of Defendants' conspiracy was to inflate both total commissions and buyer broker commissions; | a. Whether Defendants conspired as alleged herein;<br>b. Whether the conspiracy harmed competition as alleged herein;<br>c. Whether the competitive harm from the conspiracy substantially outweighs any competitive benefits;<br>d. Whether buyer-broker commissions and total commissions were |

---

[5] The Georgia Action and *Gibson* also both name Homesmart International, LLC or Homesmart Holdings, Inc.

7

| | | |
|---|---|---|
| the geographic areas where the Defendants operate;<br>d. Whether the competitive harm from the conspiracy substantially outweighs any competitive benefits thereof;<br>e. Whether Plaintiffs and the other members of the Classes are entitled to, among other things, injunctive relief, and, if so, the nature and extent of such injunctive relief;<br>f. Whether Defendants' conduct is unlawful; and<br>g. The appropriate class-wide measures of damages.<br><br>[Georgia Compl. ¶ 163.] | d. Whether the competitive harm from the conspiracy substantially outweighs any competitive benefits;<br>e. Whether Plaintiffs and the other members of the Class are entitled to, among other things, injunctive relief, and, if so, the nature and extent of such injunctive relief;<br>f. Whether Defendants' conduct is unlawful; and<br>g. The appropriate class-wide measures of damages.<br><br>[*Gibson* Compl. ¶ 156.] | inflated as a result of the conspiracy; and<br>e. The appropriate class-wide measures of damages.<br><br>[*Umpa* Compl. ¶ 166.] |

Because each of these cases presents these (and more) common issues of law and fact, centralization "will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation." *See In re Digital Advert. Antitrust Litig.,* 555 F. Supp. 3d 1372, 1375 (J.P.M.L. 2021) (centralizing actions that presented common factual questions concerning antitrust violations).

That the Georgia Action also includes causes of action under the Georgia antitrust statutes (the GFPBA and GUTPA) and includes Georgia-specific defendants does not defeat consolidation because all of these claims arise from the same common factual core—that the NAR and its constituent brokerages deceptively concealed their conspiracy and inflated commissions charged to consumers. *See In re Auto Body Shop Antitrust Litig.,* 37 F. Supp. 3d at 1390 (state-specific issues and non-overlapping defendants do not preclude consolidation of antitrust claims); *In re FTX Cryptocurrency*

*Exch. Collapse Litig.*, 2023 WL 3829242, at *2 (J.P.M.L. June 5, 2023) (published) (common factual core warrants centralization despite involvement of different defendants).

      b. <u>Consolidation Will Reduce Duplicative Discovery and Conserve Judicial Resources.</u>

These similarities in the law and facts at issue in all three cases warrant centralization for another reason. That is, the scope of discovery in each case will involve many of the same policy documents, training materials, agreements, witnesses, and other information. Consolidation, therefore, will eliminate the need for duplicative written discovery, ensure that common witnesses are not subject to duplicative discovery demands and depositions, and conserve judicial and party resources during discovery. *See In re Auto Body Shop Antitrust Litig.,* 37 F. Supp. 3d 1388, 1390 (J.P.M.L. 2014) ("Transfer under Section 1407 will offer the benefit of placing all related actions before a single judge who can structure pretrial proceedings to accommodate all parties' legitimate discovery needs while ensuring that common witnesses are not subjected to duplicative discovery demands."); *see also In re Sensipar (Cinacalcet Hydrochloride Tablets) Antitrust Litigation*, 412 F.Supp.3d 1344, 1346 (J.P.M.L. 2019) "(centralization will eliminate duplicative discovery . . . and conserve judicial and part resources"); *In re First Nat. Bank, Heavener, Okl. (First Mortg. Revenue Bonds) Sec. Litig.,* 451 F. Supp. 995, 997 (J.P.M.L. 1978) ("Because these actions have been brought on behalf of the same plaintiff class, we emphasize that it is desirable to have a single judge oversee the class action issues in both actions to avoid duplicative efforts in this area.")

The Georgia Action has not progressed beyond the filing of an Amended Class Action Complaint. None of the defendants in the Georgia Action has filed an answer, and the district court has not entered a scheduling order. Indeed, as of the filing of this pleading, none of the defendants has even been served, with only one defendant agreeing to waive service. Thus, transfer is especially appropriate at this juncture to promote the efficiency of the upcoming pretrial

proceedings and discovery, which has not yet opened. *See In re Elec. Books Antitrust Litig.*, 846 F. Supp. 2d 1378, 1379 (J.P.M.L 2011) (consolidating actions alleging violations of federal and various state antitrust laws to inflate prices where the actions had not progressed beyond the filings of the complaints). Accordingly, the Georgia Action should be consolidated with *Gibson* and *Umpa* before discovery commences.

      c.   <u>*Transfer Will Avoid the Risk of Inconsistent Pre-Trial Rulings.*</u>

Further, because all three actions were brought on behalf of similar, overlapping classes and seek recovery for injuries sustained by the same Sherman Act conspiracy by seller brokerages to inflate commissions, centralization before a single judge will reduce the risk of inconsistent rulings, particularly with respect to class determinations. *See In re Polychloroprene Rubber (CR) Antitrust Litig.*, 360 F. Supp. 2d 1348, 1350–51 (J.P.M.L. 2005) (consolidating Sherman Act actions to recover for injuries sustained from an alleged price fixing conspiracy by overlapping defendants to "eliminate duplicative discovery, prevent inconsistent pretrial rulings (especially with respect to class certification matters), and conserve the resources of the parties, their counsel and the judiciary."); *see also In re Res. Expl., Inc., Sec. Litig.*, 483 F. Supp. 817, 821 (J.P.M.L. 1980) ("It is desirable to have a single judge oversee the class action issues in these actions to avoid duplicative efforts and inconsistent rulings in this area.") In addition, given the many common questions of law and fact, failure to consolidate increases the risk of inconsistent rulings on other fronts, such as *Daubert* motions and expert discovery. *See In re Natrol, Inc. Glucosamine/Chondroitin Mktg. & Sales Pracs. Litig.*, 26 F. Supp. 3d 1392, 1393 (J.P.M.L. 2014) (risk of inconsistent rulings on *Daubert* motions and expert discovery favors consolidation).

In fact, the Panel has consistently held that the risk of inconsistent rulings, especially on class issues, is a ***compelling*** reason for consolidation. *See In re Equity Funding Corp. of Am. Sec. Litig.*, 375 F. Supp. 1378, 1385–86 (J.P.M.L. 1973) (the threat of inconsistent class determination

10

is a "persuasive if not compelling reason for transfer of all actions to a single judge."); *In re Nat'l Airlines, Inc. Maternity Leave Pracs. & Flight Attendant Weight Program Litig.,* 399 F. Supp. 1405, 1407 (J.P.M.L. 1975) ("[Tt]he need to eliminate the possibility of overlapping class determinations presents another compelling reason to bring these actions together for pretrial in a single jurisdiction.").

Indeed, the Panel routinely centralizes class-action litigation to recover injuries sustained as a result of violations of the Sherman Act. *See, e.g. In re Polychloroprene Rubber (CR) Antitrust Litig.,* 360 F. Supp. 2d at 1350–51*; In re Rubber Chemicals Antitrust Litig.*, 350 F. Supp. 2d 1366, 1367 (J.P.M.L. 2004) (centralizing Sherman Acts claims because the actions involved common questions of fact, and centralization would serve the convenience of the parties and witnesses and promote just and efficient conduct of the litigation, and was necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary."); *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 277 F. Supp. 2d 1373, 1374 (J.P.M.L. 2003) (same). Thus, the Panel should do the same here and consolidate the Georgia Action with *Gibson* and *Umpa.*

**C. The Georgia Action Should be Transferred to the Western District of Missouri.**

The Georgia Plaintiffs also request that the Panel transfer the Georgia Action to the Western District of Missouri, where the *Burnett* action was fully litigated to a jury verdict and where *Gibson*, the first-filed nationwide class action, is pending. *In re Broiler Chicken Grower Antitrust Litig.*, 509 F. Supp. 3d 1359, 1362 (J.P.M.L 2020) (noting judge in first-filed action's "familiarity with the subject matter of [the] litigation, having already ruled upon multiple dismissal motions"); *In re Wholesale Grocery Prod. Antitrust Litig.,* 663 F. Supp. 2d 1380, 1381 (J.P.M.L 2009) (transfer to district where the first-filed action was pending).

11

In the *Burnett* action, Judge Stephen R. Bough ruled on motions to dismiss, a motion for class certification, motions for summary judgment, *Daubert* motions, discovery motions, and pretrial motions. *See Burnett v. Nat'l Ass'n of Realtors,* Case No. 19-cv-00332-SRB (W.D. Mo.) Thus, Judge Bough's intimate familiarity with the similar legal issues that will undoubtedly present themselves as the Georgia Action moves through discovery to trial weighs compellingly in favor selecting him as the transferee judge. *See In re McKinsey & Co., Inc., Nat'l Prescription Opiate Consultant Litig.*, 543 F. Supp. 3d 1377, 1380 (J.P.M.L. 2021) (selected judge's "granular insight" into the substantive issues would benefit the parties and the courts). This familiarity is especially important here, where the preliminary approval and oversight of a nationwide settlement against any common defendant will impact the Georgia proceedings.[6] *See In re Insulin Pricing Litig.*, No. MDL 3080, 2023 WL 5065090, at *3 (J.P.M.L. Aug. 3, 2023) (judge's familiarity particularly important where he "presides over a proposed nationwide settlement with one of the defendants that allegedly will impact plaintiffs' claims in this MDL.")

Judge Bough has also demonstrated skill in the efficient resolution of these complex disputes, having already handled the *Burnett* action from complaint to verdict in a reasonable timeframe. As this Panel has previously noted, Judge Bough "is an experienced jurist with the ability and willingness to manage . . . litigation efficiently. We are confident he will steer this matter on a prudent course." *In re Smitty's/CAM2 303 Tractor Hydraulic Fluid Mktg., Sales Pracs. & Prod. Liab. Litig.*, 466 F. Supp. 3d 1380, 1382 (J.P.M.L. 2020). By contrast, *Moehrl*, a similar action filed before *Burnett* in the Northern District of Illinois has not even set a trial date, and

---

[6] After the preliminary settlement of claims against Anywhere Real Estate, Inc. and Re/Max, LLC in the *Burnett* action, the Georgia Plaintiffs dismissed these two entities from the Georgia Action.

12

summary judgment motions are just now being briefed. *See Moehrl v. National Association of Realtors*, Case No. 19-cv-01610-ARW (N.D. Ill.) (Wood, J.).

NAR argues that the Northern District of Illinois is the preferred jurisdiction for consolidation. But consolidating these actions in that court would cause unnecessary and inefficient delay in these important matters. [D.E. 196 at 2.] The Northern District of Illinois is one of the busiest federal district courts in the country. *See* U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (September 30, 2023); *United States v. Radley*, 558 F. Supp. 2d 865, 883 (N.D. Ill. 2008) ("[T]he Northern District of Illinois is also a busy District.").[7] Recently, the Seventh Circuit criticized certain Northern District of Illinois judges for long delays. *See Ass'n of Am. Physicians and Surgeons, Inc. v. Am. Bd. of Medical Specialties*, 15 F.4th 831, 835 (7th Cir. 2021) ("Our review of the proceedings in the district court shows that the Board moved to dismiss AAPS's initial complaint in May of 2014. The original district judge granted that motion, but not until September 30, 2017—more than three years later—and then only for 'the reasons stated in the Memorandum Opinion to follow.' That opinion did not follow until December 13, 2017."). And, as NAR points out, the Northern District is already assigned to seventeen pending multidistrict litigations, further adding to its workload. [D.E. 196 at 15.] Consolidation in the Western District of Missouri would better serve the efficient resolution of these national disputes.

Finally, as the Panel has previously observed, "[t]he Western District of Missouri presents a geographically central and accessible venue for this nationwide litigation." *In re T-Mobile*

---

[7] The median time from filing to trial in the Western District of Missouri is merely 25.2 months; by contrast, the median time from filing to trial in the Northern District of Illinois is 49 months. *See* U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (September 30, 2023).

13

*Customer Data Sec. Breach Litig.*, 576 F. Supp. 3d 1373, 1375 (J.P.M.L. 2021). Thus, transfer to the Western District of Missouri will minimize the inconvenience of litigation in an out-of-town venue on parties, putative class members, and counsel. Accordingly, the Georgia Plaintiffs request that the Georgia Action be consolidated, transferred to the Western District of Missouri, and assigned to Judge Stephen R. Bough.[8]

## IV. CONCLUSION

For the reasons set forth herein, the Georgia Plaintiffs support the *Gibson* and *Umpa* Plaintiffs Motion and request that the Georgia Action be consolidated and transferred to Judge Stephen R. Bough of the Western District of Missouri.

DATED: January 26, 2024

/s/ Nathan D. Chapman
Nathan D. Chapman
Georgia Bar No. 244954
Joshua Y. Joel
Georgia Bar No. 230547

**KABAT, CHAPMAN, & OZMER LLP**
171 17th Street NW, Suite 1550
Atlanta, GA 30363
Direct: (404) 400-7303
Main: (404) 400-7300
nchapman@kcozlaw.com

Bryan M. Knight
Georgia Bar No. 142401
Jonathan M. Palmer
Georgia Bar No.
Nicholas Sears
Georgia Bar No.

---

[8] NAR also asserts that, in the alternative, the multi-district litigation should be transferred to the Eastern District of Texas but gives ***no*** reason why a judge in that venue who has little experience with the underlying substantive issues would be better suited than the experienced hand of Judge Bough to handle this multi-district litigation. [*See* D.E. 196 at 18.] The Georgia Plaintiffs object to transfer to the Eastern District of Texas.

14

W. Lawton Jordan
Georgia Bar No. 119651

**KNIGHT PALMER, LLC**
One Midtown Plaza
1360 Peachtree Street, Suite 1201
Atlanta, Georgia 30309
P: (404) 228-4822
F: (404) 228-4821
bknight@knightpalmerlaw.com
jpalmer@knightpalmerlaw.com
nsears@knightpalmerlaw.com
ljordan@knightpalmerlaw.com

*Counsel for Plaintiffs 1925 Hooper, LLC, Robert J. Arko, and Andrew M. Moore*