**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

|  |  |  |
|---|---|---|
|  | § |  |
| In re: Real Estate Commission Antitrust | § | MDL No. 3100 |
| Litigation | § |  |
|  | § |  |

**TEXAS DEFENDANTS' RESPONSE IN OPPOSITION TO**
**MISSOURI PLAINTIFFS' MOTION FOR TRANSFER OF ACTIONS**
**TO THE WESTERN DISTRICT OF MISSOURI PURSUANT TO 28 U.S.C. § 1407**
**<u>FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS</u>**

# TABLE OF CONTENTS

Introduction.................................................................................................................................1

Argument ...................................................................................................................................3

I.      The Panel Should Deny the Motion for Transfer...................................................................3

      A.      The Variance in Named Defendants Virtually Ensures That Most Discovery Will Be Defendant-Specific. .................................................3

      B.      Individual Fact Issues Will Dwarf Any Common Issues.........................................6

      C.      There are Better Alternatives Than Centralization. .................................................9

II.      If the Panel Grants the Motion, It Should Exclude the Two Texas Cases from the MDL...................................................................................................................................11

III.      If the Panel Grants the Motion and Consolidates All Nine Cases, the Cases Should Be Transferred to the Eastern District of Texas...............................................................12

      A.      The Eastern District of Texas is Best Positioned to Preside Over the MDL. ........13

      B.      Alternatively, the Western District of Pennsylvania is a Viable Venue. ...............16

      C.      The Panel Should Not Transfer the Cases to the Western District of Missouri or the Northern District of Illinois. .........................................................16

Conclusion ................................................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Batton, et al. v. Nat'l Ass'n of Realtors, et al.*,
No. 1:21-cv-00430 (N.D. Ill.) ...............................................................10

*Burnett, et al. v. Nat'l Ass'n of Realtors, et al.*,
No. 4:19-cv-00332 (W.D. Mo.) .................................................7, 8, 10, 17

*Fierro, et al. v. Nat'l Ass'n of Realtors, et al.*,
No. 2:24-cv-00449 (C.D. Cal.) ...............................................................4

*Friedman v. Real Est. Bd. of N.Y., et al.*,
No. 1:24-cv-00405 (S.D.N.Y.) ...............................................................4

*In re ABA Law Sch. Accreditation Litig.*,
325 F. Supp. 3d 1377 (J.P.M.L. 2018) .....................................................8

*In re Am. Home Realty Network, Inc., Multiple Listing Serv. Copyright
Infringement Litig.*,
939 F. Supp. 2d 1372 (J.P.M.L. 2013) ....................................................10

*In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*,
804 F. Supp. 2d 1376 (J.P.M.L. 2011) .....................................................9

*In re Cordarone (Amiodarone Hydrochloride) Mktg., Sales Pracs. and Prods.
Liab. Litig.*,
190 F. Supp. 3d 1346 (J.P.M.L. 2016) ...................................................5, 6

*In re Corn Derivative Antitrust Litig.*,
486 F. Supp. 929 (J.P.M.L. 1980) ..........................................................14

*In re COVID-19 Bus. Interruption Prot. Ins. Litig.*,
482 F. Supp. 3d 1360 (J.P.M.L. 2020) ...................................................5, 8

*In re Credit Suisse VelocityShares Daily Inverse VIX Short Term Exch. Traded
Notes Sec. Litig.*,
326 F. Supp. 3d 1379 (J.P.M.L. 2018) .....................................................9

*In re Eli Lilly & Co. (Cephalexin Monohydrate) Pat. Litig.*,
446 F. Supp. 242 (J.P.M.L. 1978) ...........................................................9

*In re Gasoline Lessee Dealers Antitrust Litig.*,
479 F. Supp. 578 (J.P.M.L. 1979) ...........................................................6

*In re Gator Corp. Software Trademark & Copyright Litig.*,
   259 F. Supp. 2d 1378 (J.P.M.L. 2003)..............................................................13

*In re Gerber Probiotic Prods. Mktg. & Sales Pracs. Litig.*,
   899 F. Supp. 2d 1378 (J.P.M.L. 2012).................................................................9

*In re Hotel Indus. Sex Trafficking Litig.*,
   433 F. Supp. 3d 1353 (J.P.M.L. 2020).................................................................9

*In re IBM Antitrust Litig.*,
   328 F. Supp. 509 (J.P.M.L. 1971).......................................................................12

*In re Interest Rate Swaps Antitrust Litig.*,
   190 F. Supp. 3d 1364 (J.P.M.L. 2016)...............................................................15

*In re Invokana (Canaglifozin) Prods. Liab. Litig.*,
   223 F. Supp. 3d 1345 (J.P.M.L. 2016)............................................................3, 8

*In re Lithium Ion Batteries Antitrust Litig.*,
   923 F. Supp. 2d 1370 (J.P.M.L. 2013)...............................................................15

*In re Nelnet Servicing, LLC, Customer Data Sec. Breach Litig.*,
   648 F. Supp. 3d 1377 (J.P.M.L. 2022).................................................................3

*In re Nexium (Esomeprazole) Antitrust Litig.*,
   908 F. Supp. 2d 1360 (J.P.M.L. 2012)...............................................................16

*In re Pilepro Antitrust & Pat. Litig.*,
   140 F. Supp. 3d 1350 (J.P.M.L. 2015)...............................................................18

*In re Proton-Pump Inhibitor Prods. Liab. Litig.*,
   273 F. Supp. 3d 1360 (J.P.M.L. 2017)............................................................3, 5

*In re SFPP, L.P., R.R. Prop. Rts. Litig.*,
   121 F. Supp. 3d 1360 (J.P.M.L. 2015)............................................................8, 9

*In re Shoulder Pain Pump-Chrondrolysis Prods. Liab. Litig.*,
   571 F. Supp. 2d 1367 (J.P.M.L. 2008).................................................................5

*In re Starbucks Corp. Access for Individuals with Disabilities Litig.*,
   326 F. Supp. 3d 1370 (J.P.M.L. 2018)...............................................................18

*In re Yellow Brass Plumbing Component Prods. Liab. Litig.*,
   844 F. Supp. 2d 1377 (J.P.M.L. 2012).................................................................8

*Martin, et al. v. Tex. Ass'n of Realtors, Inc., et al.*,
   No. 4:23-cv-01104 (E.D. Tex.)....................................................... *passim*

*Masiello v. Ariz. Ass'n of Realtors, et al.*,
   No. 2:24-cv-00045 (D. Ariz.) ..................................................................................4

*Nosalek, et al. v. MLS Prop. Info Network, Inc., et al.*,
   No. 1:20-cv-12244 (D. Mass.) ...............................................................................10

*Oneok, Inc. v. Learjet, Inc.*,
   135 S. Ct. 1591 (2015) .............................................................................................15

*QJ Team, LLC, et al. v. Tex. Ass'n of Realtors, Inc., et al.*,
   No. 4:23-cv-01013 (E.D. Tex.) .......................................................................*passim*

*M.D. ex rel. Stukenberg v. Perry*,
   675 F.3d 832 (5th Cir. 2012) ...................................................................................15

*Whaley v. Nat'l Ass'n of Realtors, et al.*,
   No. 2:24-cv-00105 (D. Nev.) .....................................................................................4

*Willsim Latham, LLC v. MetroList Servs., Inc., et al.*,
   No. 2:24-cv-00244 (E.D. Cal.) ...................................................................................4

## Statutes

28 U.S.C. § 1407(a) .............................................................................................*passim*

Every defendant named in the *QJ Team* and *Martin* cases pending in the Eastern District of Texas opposes the request to transfer and centralize actions in the Western District of Missouri. The vast majority of these defendants (hereinafter, the "Texas Defendants")[1] respectfully submit this Response in opposition to the Motion for Transfer of Actions to the Western District of Missouri Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings (the "Motion") filed by Plaintiffs Don Gibson, Lauren Criss, John Meiners, and Daniel Umpa (hereinafter, the "Missouri Plaintiffs") and request that the Judicial Panel on Multidistrict Litigation ("the Panel") deny the transfer sought by the Motion.[2]  In support, the Texas Defendants state as follows:

## INTRODUCTION

The Missouri Plaintiffs cherry pick facts and pending actions in an attempt to persuade the Panel to centralize just nine cases, which name 131 unique defendants and involve few common fact issues, so that they can proceed before a judge who has issued rulings favorable to their legal

---

[1] The Texas Defendants joining in this Response include, in alphabetical order, ATX WIR LLC; Austin Board of Realtors®; Austin/Central Texas Realty Information Service; Central Texas Multiple Listing Service, Inc.; CitiQuest Properties, Inc.; DMTX, LLC; DSJMM, LLC; Fathom Realty, LLC; Fort Hood Area Association of Realtors®, Inc.; Four Rivers Association of Realtors®, Inc.; Greater El Paso Association of Realtors®; Greater Fort Worth Association of Realtors®, Inc.; Greenwood King Properties II, Inc.; Hexagon Group, LLC; Heyl Group Holdings LLC; Houston Association of Realtors®, Inc.; Houston Realtors® Information Service, Inc.; JP Piccinini Real Estate Services, LLC d/b/a JPA; Keller Willis San Antonio, Inc.; Mark Anthony Dimas; MetroTex Association of Realtors®, Inc.; MJHM LLC; Moreland Properties, Inc.; North Texas Real Estate Information Systems, Inc.; PenFed Realty, LLC; Real Agent LLC; Realty Austin, LLC; RFT Enterprises, Inc.; San Antonio Board of Realtors®, Inc.; San Antonio Legacy Group, LLC; Side, Inc.; Square MB, LLC; Team Burns, LLC d/b/a Monument Realty; Temple-Belton Board of Realtors®, Inc.; Texas Association of Realtors®, Inc.; The Loken Group, Inc.; Turner Mangum LLC; Victoria Area Association of Realtors®, Inc.; and Williamson County Association of Realtors®, Inc.

[2] In addition to the Texas Defendants joining in this Response, the other defendants in the *QJ Team* and *Martin* cases also oppose transfer and centralization but are filing separate responses in opposition to the Motion.

position in an action that was filed over four years ago and has already been tried.  An unabridged review of the relevant cases and facts reveals, however, that centralization would be inefficient and unduly burdensome.

28 U.S.C. § 1407 ("Section 1407") authorizes centralization only if the Panel determines "that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions."  28 U.S.C. § 1407(a).  Here, at least three reasons preclude the Panel from making that determination.  *First*, great variance in the named defendants virtually ensures that a significant amount of discovery will be specific to individual defendants and cases.  *Second*, individual fact issues will dwarf any common issues.  *Third*, there are better alternatives than centralization that the Missouri Plaintiffs have not adequately considered.  Because centralization will not promote convenience and efficiency for the parties and witnesses, the Panel should deny the Motion.

Alternatively, if the Panel decides to transfer and centralize some of the pending cases into a Multi-District Litigation ("MDL") action, the Texas Defendants ask that the Panel exclude the *QJ Team* and *Martin* cases currently pending in the Eastern District of Texas from the transfer order, as more than 96% of the parties in those Texas cases do not appear in any other case pending before the Panel.

In the further alternative, if the Panel instead decides to transfer and centralize all cases into an MDL action, then the Texas Defendants request that the cases be transferred and centralized in the Eastern District of Texas or the Western District of Pennsylvania, either of which would be far better situated to manage this MDL than the Western District of Missouri or the Northern District of Illinois.

**ARGUMENT**

I.     **The Panel Should Deny the Motion for Transfer.**

    A.     **The Variance in Named Defendants Virtually Ensures That Most Discovery Will Be Defendant-Specific.**

"Where only a minimal number of actions are involved, the proponent of centralization bears a heavier burden to demonstrate that centralization is appropriate." *In re Nelnet Servicing, LLC, Customer Data Sec. Breach Litig.*, 648 F. Supp. 3d 1377, 1378 (J.P.M.L. 2022). The Missouri Plaintiffs cannot meet that burden due to the large number of diverse defendants named across the nine actions they seek to centralize. As a threshold matter, nine pending actions is "a minimal number of actions" under Panel precedent. *See In re Proton-Pump Inhibitor Prods. Liab. Litig.*, 273 F. Supp. 3d 1360, 1362 (J.P.M.L. 2017) ("[A]lthough plaintiffs almost guarantee that the number of involved actions will increase by the hundreds if not thousands, the Section 1407 motion presently encompasses *just* fifteen cases and 24 tag-alongs.") (emphasis added); *see also In re Invokana (Canaglifozin) Prods. Liab. Litig.*, 223 F. Supp. 3d 1345, 1348 (J.P.M.L. 2016) ("Here, especially given the relatively small number of Farxiga-only cases (fifteen), Jardiance-only cases (three), and 'combination cases' (three), we conclude that class-wide centralization is not warranted at the present time.").

Worse, the nine actions that the Missouri Plaintiffs seek to consolidate name a total of 131 unique defendants.[3] Of these 131 defendants, 93 (71%) are named in only one case. And if the two Texas cases (*QJ Team* and *Martin*) are combined in Texas, as the Texas Defendants anticipate they will be,[4] 121 defendants (92.4%) will then be named in only one case. Specifically, only

---

[3] *See* Exhibit 1, which reflects the defendants that are named in each of these nine actions.

[4] The plaintiffs and defendants in the two Texas cases have agreed on deadlines for a stipulated briefing schedule that would involve the plaintiffs filing a consolidated complaint. *See* Defendants' Reply in Support of Motion to Suspend Deadlines at 2, *QJ Team, LLC, et al. v. Tex.*

seven defendants—a mere 5.3% of the total defendants—are named in more than two cases, and

no defendant is named in more than five of the nine cases.[5]



The 131 defendants are not alike in kind either: they include real estate brokerages, a

national trade association, state-wide trade associations, local trade associations, multiple listing

services, and individual defendants.  So, the factual distinctions between the different defendants—

---


*Ass'n of Realtors, Inc., et al.*, No. 4:23-cv-01013 (E.D. Tex. Jan. 19, 2024), Dkt. No. 185.  As a result, the court has ordered the parties to finalize and submit an agreed briefing schedule by January 29, 2024.  *See* Order, *QJ Team, LLC, et al. v. Tex. Ass'n of Realtors, Inc., et al.*, No. 4:23-cv-01013 (E.D. Tex. Jan. 20, 2024), Dkt. No. 186.

[5] In addition to the nine actions referenced in the Motion, five additional actions have recently been filed that the Missouri Plaintiffs could characterize as being similar enough for consolidation.  *See Friedman v. Real Est. Bd. of N.Y., et al.*, No. 1:24-cv-00405 (S.D.N.Y.); *Masiello v. Ariz. Ass'n of Realtors, et al.*, No. 2:24-cv-00045 (D. Ariz.); *Whaley v. Nat'l Ass'n of Realtors, et al.*, No. 2:24-cv-00105 (D. Nev.); *Fierro, et al. v. Nat'l Ass'n of Realtors, et al.*, No. 2:24-cv-00449 (C.D. Cal.); *Willsim Latham, LLC v. MetroList Servs., Inc., et al.*, No. 2:24-cv-00244 (E.D. Cal.).  If one considers all 14 actions together, the number of actions is still low but the variance in defendants—and therefore one of many reasons to decline centralization—remains just as pronounced:  there are 229 total defendants, of which 212 (92.6%) are in only one case or only in *QJ Team* and *Martin*, only nine (3.94%) are in three or more cases, and none are in more than half of the cases.  *See* <u>Exhibit 2</u>, which reflects the defendants that are named in each of these 14 cases.


what they do within the real estate industry, what involvement they have in home sales, if any, their relationships with other defendants and alleged unnamed co-conspirators, and where they operate, among others—will necessarily mean different inquiries for the multitude of unique parties.  Unsurprisingly, the Panel repeatedly declines centralization where, like here, "[t]he variance in named defendants virtually ensures that a significant amount of the discovery will be defendant-specific."  *In re Cordarone (Amiodarone Hydrochloride) Mktg., Sales Pracs. and Prods. Liab. Litig.*, 190 F. Supp. 3d 1346, 1347 (J.P.M.L. 2016); *see also In re COVID-19 Bus. Interruption Prot. Ins. Litig.*, 482 F. Supp. 3d 1360, 1361–63 (J.P.M.L. 2020) (denying centralization of actions pending in 48 districts with more than 100 unique defendants, emphasizing that "the proposed MDL raises significant managerial and efficiency concerns. A transferee court would have to establish a pretrial structure to manage the hundreds of plaintiffs— many with disparate views of the litigation—and more than one hundred [defendants]. . . . To say this litigation would result in a complicated MDL seems an understatement"); *In re Shoulder Pain Pump-Chrondrolysis Prods. Liab. Litig.*, 571 F. Supp. 2d 1367, 1368 (J.P.M.L. 2008) (denying centralization of 13 cases pending in seven districts where not all actions involved the same type of defendants and many of the defendants were sued only in a minority of the actions); *Proton-Pump*, 273 F. Supp. 3d at 1361–62 ("Although AstraZeneca is sued in most of the actions (14 constituent actions and 23 tag-alongs), P & G is sued in only eight, Takeda in four, and Pfizer in two.  Centralization thus appears unlikely to serve the convenience of most, if not all, defendants and their witnesses.").

    *Cordarone,* in particular, is analogous and instructive.  As here, the motion for transfer and centralization in that case implicated nine actions pending in seven districts, the named defendants "var[ied] widely" among the cases, and the pending actions each involved similar allegations.  *See*

*Cordarone*, 190 F. Supp. 3d at 1346–47.  Nonetheless, the Panel concluded that "[g]iven the different defendants sued in these actions, centralization appear[ed] unlikely to serve the convenience of a substantial number of parties and their witnesses."  *Id* at 1347.  The same is true here.

**B.    Individual Fact Issues Will Dwarf Any Common Issues.**

Similarly, the Panel denies centralization—including centralization of antitrust cases—when, as here, "discovery and other pretrial proceedings concerning the common factual questions would clearly be dwarfed by matters of no interest to the [other parties]."  *See In re Gasoline Lessee Dealers Antitrust Litig*., 479 F. Supp. 578, 580 (J.P.M.L. 1979).

The Missouri Plaintiffs repeatedly inflate the similarity of the nine actions.  They claim that "each action pleads an identical or similar course of conduct in which residential real estate associations, including [the National Association of Realtors ("NAR")], and various residential real estate brokerage companies agreed to promulgate, follow, and enforce Buyer Broker Compensation Rules," which they allege caused sellers to pay inflated real estate broker commission rates.  *See* Dkt. No. 1-1 at 1–2.  They also claim that "the actions share overlapping class definitions, common defendants, and virtually identical claims under the Sherman Act" *Id.* at 5.  According to the Missouri Plaintiffs, "each complaint makes the same core allegations about anticompetitive conduct and its effects on the market."  *Id.*  In reality, individual fact issues will dwarf any factual commonalities.  It would be more accurate to say that each complaint makes *similar* high-level allegations about *different defendants'* conduct and its alleged effects on *different* markets.

Although the plaintiffs in the various cases may recite similar antitrust theories, the individual cases focus on different alleged conspiracies, each of which involves primarily local actors and alleged local agreements largely disconnected from actors and agreements in other

places.  The individual cases also focus on different proposed classes and different geographic regions, which dictate that the scope and breadth of discovery in each case will be substantially different.  For instance, *Gibson*, *1925 Hooper*, and *Umpa* propose classes spanning the entire country; *Burton, Spring Way*, *QJ Team*, and *Martin* propose classes confined to different individual states; and *March* and *Grace* propose classes confined to smaller regions (Manhattan, New York and the Bay Area, California, respectively).  Correspondingly, the definition of the relevant product and geographic markets, analysis of defendants' market power, and the comparison of alleged anticompetitive effects with defendants' procompetitive justifications will be unique for almost every action.  Also, *March*, *1925 Hooper*, *Grace*, *QJ Team*, and *Martin* include claims based on violations of various state statutes—each one of which would have no bearing on or application to any of the other cases.  Section 1407 does not allow plaintiffs to turn a blind eye to such differences merely because they assert similar overarching allegations against a large number of defendants.  Even the Missouri Plaintiffs' contention that centralization will avoid inconsistent rulings on *Daubert* motions is mistaken.  *See* Dkt. No. 1-1 at 9.  Because the relevant markets, as well as the services offered by different types of defendants, will vary from case to case, there will almost certainly be a need for individual and differing expert reports and discovery.

The Missouri Plaintiffs' ulterior motive is to consolidate the recently filed actions before Judge Bough, who the Missouri Plaintiffs believe—based on his rulings in *Burnett, et al. v. Nat'l Ass'n of Realtors, et al.*, No. 4:19-cv-00332 (W.D. Mo.) (hereinafter, "*Burnett*")—will decide *legal* issues in their favor.  As the Missouri Plaintiffs state, "Judge Bough ruled on motions to dismiss, a motion for class certification, motions for summary judgment and *Daubert*, and dozens of discovery and pretrial motions" in *Burnett*.  Dkt. No. 1-1 at 10.  But each and every one of those

rulings favored the plaintiffs.  *See Burnett*, Dkt. No. 131 (denying defendants' motions to dismiss); *id.*, Dkt. No. 741 (granting plaintiffs' motion for class certification); *id.*, Dkt. Nos. 1017, 1018 (denying defendants' motions to exclude the merits testimony of plaintiffs' retained experts); *id.*, Dkt. No. 1019 (denying defendants' motions for summary judgment).  "Seeking a uniform *legal* determination, though, generally is not a sufficient basis for centralization." *In re SFPP, L.P., R.R. Prop. Rts. Litig.*, 121 F. Supp. 3d 1360, 1361 (J.P.M.L. 2015).  "Common legal questions are insufficient to satisfy Section 1407's requirement of common *factual* questions." *In re ABA Law Sch. Accreditation Litig.*, 325 F. Supp. 3d 1377, 1378–79 (J.P.M.L. 2018) (emphasis added) ("Although plaintiffs seek efficiencies through centralized treatment of disputed legal questions, '[m]erely to avoid [different] federal courts having to decide the same issue is, by itself, usually not sufficient to justify Section 1407 centralization.'").

Given the great variation of factual issues, no single discovery plan will suffice as "significant localized intervening causation issues are expected to be at play." *In re Yellow Brass Plumbing Component Prods. Liab. Litig.*, 844 F. Supp. 2d 1377, 1379 (J.P.M.L. 2012).  So, instead of Section 1407's stated purpose of promoting convenience and efficiency, "a multi-defendant MDL may prolong pretrial proceedings, because of, *inter alia*, the possible need for separate discovery and motion tracks." *Invokana*, 223 F. Supp. 3d at 1348; *COVID-19 Bus. Interruption Prot. Ins. Litig.*, 482 F. Supp. 3d at 1363 ("Any efficiencies with respect to common discovery and motion practice would be outweighed by the unique discovery and motion practice as to each [defendant].").  In short, it would be incredibly inefficient to consolidate multiple actions in one court when most of the actions and their discovery will have no relevance for the vast majority of the defendants.

### C.      There are Better Alternatives Than Centralization.

The Panel has instructed time and again that "centralization under Section 1407 should be the last solution after considered review of all other options."  *In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011); *In re Gerber Probiotic Prods. Mktg. & Sales Pracs. Litig.*, 899 F. Supp. 2d 1378, 1379 (J.P.M.L. 2012) ("The Panel has often stated that centralization under Section 1407 'should be the last solution after considered review of all other options.'").  Yet the Motion is devoid of any explanation for why other options are not preferred or even plausible.

Informal coordination is one such alternative.  "For example, notices for a particular deposition could be filed in all actions, thereby making the deposition applicable in each action; the parties could seek to agree upon a stipulation that any discovery relevant to more than one action may be used in all those actions; and any party could seek orders from the three courts directing the parties to coordinate their pretrial efforts."  *In re Eli Lilly & Co. (Cephalexin Monohydrate) Pat. Litig.*, 446 F. Supp. 242, 244 (J.P.M.L. 1978).  Such coordination is practicable when, as here, the actions are few and in their infancy; several defendants support informal coordination; and some counsel overlap between the actions.  *See SFPP, L.P. R.R. Prop. Rts. Litig.*, 121 F. Supp. 3d at 1361 ("Additionally, all actions are in their infancy, which will further facilitate coordinated pretrial proceedings."); *In re Hotel Indus. Sex Trafficking Litig.*, 433 F. Supp. 3d 1353, 1356–57 (J.P.M.L. 2020) ("The record before us indicates such coordination [of 21 cases in 12 districts] is practicable. For example . . . [s]everal of the brand defendants support informal coordination, suggesting that the parties could stipulate that discovery in one action may be used in other actions where the same brand is involved.  Additionally, there are a limited number of overlapping plaintiffs' counsel in the majority of actions before the Panel, making them well-positioned to facilitate informal coordination."); *In re Credit Suisse VelocityShares Daily Inverse*

*VIX Short Term Exch. Traded Notes Sec. Litig.*, 326 F. Supp. 3d 1379, 1381 (J.P.M.L. 2018) ("Given the minimal number of involved counsel and actions, informal coordination of discovery and pretrial motions is practicable and preferable to centralization.").

For instance, the *Gibson* plaintiffs' counsel also represent the *Burnett* plaintiffs, and the *Umpa* plaintiffs' counsel also represent the *Moehrl* plaintiffs.  Considering that the Missouri Plaintiffs' counsel have already substantially litigated *Burnett* and *Moehrl* at the same time, they seem well-positioned to coordinate informally.  The Motion is silent on this issue, but the filing of the Motion itself demonstrates their ability to coordinate with one another.

*Burnett* and *Moehrl* are also not even the only other similar pending cases.  The Missouri Plaintiffs exclude from their Motion at least two cases alleging antitrust violations premised on similar allegations that were filed after the initiation of *Burnett* and *Moehrl* but before the jury verdict in *Burnett*.  *See Nosalek, et al. v. MLS Prop. Info Network, Inc., et al.*, No. 1:20-cv-12244 (D. Mass. Dec. 17, 2020); *Batton, et al. v. Nat'l Ass'n of Realtors, et al.*, No. 1:21-cv-00430 (N.D. Ill. Jan. 25, 2021).  So even if the Panel grants the Motion and centralizes the nine actions cited by the Missouri Plaintiffs, informal coordination will nonetheless be required between the parties in the MDL action and the parties in the older cases excluded from the MDL action (which are at different procedural postures), or the risk of duplicative discovery and inconsistent rulings will persist. *See also In re Am. Home Realty Network, Inc., Multiple Listing Serv. Copyright Infringement Litig.*, 939 F. Supp. 2d 1372, 1373 (J.P.M.L. 2013) (concluding that efforts to coordinate discovery were likely to be successful, and that "informal cooperation among counsel and coordination among the involved courts are, in our judgment, preferable to formal centralization").

The cases can also be consolidated through other means.  The two cases pending in the Eastern District of Texas, *QJ Team* and *Martin*, are before the same judge, propose virtually identical classes, allege identical causes of action, name 30 of the same defendants, and are brought by the same counsel.  Indeed, as cited above, the *QJ Team*/*Martin* plaintiffs' attorneys indicated a willingness to consolidate the two actions.[6]  Likewise, *Umpa* and *Gibson*—which are both pending in the Western District of Missouri—are before the same judge and include almost identical proposed nationwide classes and allegations.

Additionally, the *QJ Team*/*Martin* plaintiffs' claims against the Texas Defendants should be dismissed as a matter of law, and the Texas Defendants are prepared to file motions seeking such relief.  Granting centralization before the Texas Defendants have the opportunity to seek such relief—without any discovery—is premature, inefficient, and disregards a plausible alternative to centralization.

## II.     If the Panel Grants the Motion, It Should Exclude the Two Texas Cases from the MDL.

Even if the Panel grants transfer and centralization, it should not include the *QJ Team* and *Martin* cases, which only involve plaintiffs that sold houses in Texas, primarily involve defendants organized under the laws of the state of Texas and headquartered in Texas, and do not name NAR as a defendant.  These are the only cases filed in Texas that the Missouri Plaintiffs seek to centralize, and the two cases are anticipated to be consolidated into one in the coming weeks.[7] Requiring the parties in *QJ Team*/*Martin* to litigate outside of Texas when the parties and fact issues are almost exclusively Texas-centric is inefficient and unduly burdensome.

---

[6] *See supra* note 4.

[7] *See supra* note 4.

Of the five plaintiffs and 47 defendants named in *QJ Team/Martin*, only two defendants—Keller Williams Realty, Inc. and HomeServices of America, Inc.—are named in any of the other cases listed on the Missouri Plaintiffs' schedule of actions.[8]  And the proposed classes comprise only Texas residents who press claims under a Texas statute and federal law.  In other words, *QJ Team/Martin* presents a fight almost exclusively between Texas-based parties regarding conduct in Texas and the alleged effect of said conduct on the localized markets in Texas.  Likewise, the witnesses and evidence are primarily in Texas, as are a significant portion of the parties' counsel.

Taking this local dispute to a national stage to litigate alongside nationwide entities that are named in multiple lawsuits would only increase costs and prolong resolution.  *See In re IBM Antitrust Litig.*, 328 F. Supp. 509, 510 (J.P.M.L. 1971) ("The IBM Litigation being processed in Minnesota is extremely complex.  It has been said that hundreds of millions of documents will be produced and that discovery may take several years.  We would be reluctant to require any party whose necessary discovery is much more limited to take part in this massive discovery program.").  The Panel would be justified in excluding *QJ Team/Martin* from the MDL if it grants the Motion.

### III.    If the Panel Grants the Motion and Consolidates All Nine Cases, the Cases Should Be Transferred to the Eastern District of Texas.

To select a transferee district, the Panel considers several factors, including "where the largest number of cases is pending, where discovery has occurred, where cases have progressed furthest, the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges."  Manual for Complex Litig., Fourth, § 20.131 (Updated May 2023).  Given these factors, if the Panel decides to grant the Motion and centralize all cases including *QJ Team/Martin* (which the Texas Defendants

---

[8] Though not joining this Response, these two defendants are also opposing centralization.

oppose for the reasons discussed above), the Eastern District of Texas would be the most appropriate venue among the venues where the cases are currently pending. The Western District of Pennsylvania is alternatively a viable venue. The Panel should, however, deny the Missouri Plaintiffs' request to transfer the cases to the Western District of Missouri, and the Northern District of Illinois is likewise ill-suited for centralization.

**A.      The Eastern District of Texas is Best Positioned to Preside Over the MDL.**

The Eastern District of Texas, and specifically Hon. Sean Jordan who currently presides over *QJ Team*/*Martin*, is uniquely positioned to handle this MDL due to docket statistics, accessibility and amenities, and proximity to the relevant facts and witnesses.

First, despite a higher-than-average caseload, the Eastern District of Texas has the second shortest average filing-to-trial rate in the entire country (19 months), making it one of the most efficient districts. *See United States District Courts – National Judicial Caseload Profile*, United States Courts 35 (Sept. 30, 2023).[9] It has eight judges and only one currently pending MDL, which is not before Judge Jordan. *See MDL Statistics Report*, United States Judicial Panel on Multidistrict Litigation (Nov. 16, 2023).[10] Therefore, it has the capacity to manage another MDL of this size and scope. *See In re Gator Corp. Software Trademark & Copyright Litig*., 259 F. Supp. 2d 1378, 1380 (J.P.M.L. 2003) ("[C]entralization in the Georgia forum permits the Panel to effect the Section 1407 assignment to an accessible metropolitan court that i) is not currently overtaxed with other multidistrict dockets, and ii) possesses the necessary resources and expertise to be able to devote the time and effort to pretrial matters that this docket is likely to require."); *In re Corn*

---

[9] Available at https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0930.2023.pdf.

[10] Available at https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-November-16-2023.pdf.

*Derivative Antitrust Litig.*, 486 F. Supp. 929, 932 (J.P.M.L. 1980) (selecting transferee district because it had had relatively few multidistrict litigations).

Second, the nine actions cited by the Missouri Plaintiffs span from California to Pennsylvania and down to Georgia, which makes Texas's central and convenient geographic location a boon for an MDL. Judge Jordan presides at the federal district courthouse in Plano, a suburb of Dallas that is a mere 21 miles from both Dallas Love Field Airport and Dallas/Fort Worth International Airport. These airports are Southwest Airlines' and American Airlines' hubs, respectively, and both have frequent nonstop flights across the country. In fact, every major city in the continental United States can be accessed by a flight of four hours or less from the Dallas/Fort Worth International Airport. *DFW Airport by the Numbers*, DFW Airport (Sept. 30, 2022).[11] Dallas and Plano also both have more than sufficient hotel accommodations for the large number of parties that would be part of an MDL.

Third, over one third of the defendants named across the nine cases are *only* named in *QJ Team/Martin*. In other words, there is a higher concentration of defendants named in the Eastern District of Texas than any other district involved. Texas is also home to many of the defendants— even those not named in *QJ Team/Martin*, such as United Real Estate, which is named in *Gibson* and *Umpa* and is headquartered in Dallas, and Keller Williams Realty, Inc., which is named in five cases subject to this Motion and is headquartered in Austin, Texas. Additionally, many of the law firms involved in these actions have offices in or near Dallas, which makes nearby Plano a convenient and cost-effective location for litigation. For these reasons, the Eastern District of Texas would be the venue best positioned to handle the MDL. *See, e.g.*, *In re Interest Rate Swaps*

---

[11] Available at
https://images.ctfassets.net/m2p70vmwc019/4AFBva7qYoee9qr6QDRIgh/79e2cc4ec0605fd123 91310b185885da/Fast_Facts_Infographic_October_2023_2_.png.

*Antitrust Litig.*, 190 F. Supp. 3d 1364, 1366 (J.P.M.L. 2016) (selecting the Southern District of New York as the MDL location in part because it had "a strong factual connection to this litigation, given that most defendants are based there," and "numerous events giving rise to the litigation are alleged to have occurred there"); *In re Lithium Ion Batteries Antitrust Litig.*, 923 F. Supp. 2d 1370, 1371 (J.P.M.L. 2013) ("[R]elevant documents and witnesses may be found in the Northern District of California, inasmuch as several defendants have major facilities or lithium ion battery business in or near the district.").

Finally, Judge Jordan's legal career before he became a federal judge provides him with the necessary knowledge and experience to preside over a complex antitrust class action matter. For eight years (2004–2012), he served in the Solicitor General's Office for the Attorney General of Texas, where he represented the State of Texas in appellate courts, including appeals involving complex class action and antitrust issues. *See Questionnaire for Judicial Nominees, Nominee: Sean Daniel Godwin Jordan*, United States Senate Committee on the Judiciary 2, 10, 12, 14, 17 (documenting involvement with *Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591 (2015) (involving antitrust preemption issues); *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832 (5th Cir. 2012) (involving issues related to an injunctive class under Rule 23(b)(2))).[12]  He also practiced law for many years in private firms, where he represented both plaintiffs and defendants—including large corporations, government entities, and individuals—in commercial litigation and class action matters, among others. *See id.* at 12.

---

[12] Available at https://www.judiciary.senate.gov/imo/media/doc/Sean%20Jordan%20SJQ%20-%20PUBLIC.pdf (last visited on Jan. 25, 2024).

### B.     Alternatively, the Western District of Pennsylvania is a Viable Venue.

An alternative viable location for the MDL is the Western District of Pennsylvania, where the *Spring Way Center* case is currently pending before Hon. Christy Criswell Wiegand.  Judge Wiegand started her legal career as an antitrust attorney and thus has familiarity with the complex legal issues present in these cases.  *See Questionnaire for Judicial Nominees, Nominee: Christy Criswell Wiegand*, United States Senate Committee on the Judiciary 2, 12.[13]  The Western District of Pennsylvania also has a below-average number of pending cases and weighted filings, and is ranked ninth fastest for average time from filing to disposition.  *See supra* note 9, at 18.  So, if the Panel decides to grant the Motion and centralize all cases including *QJ Team*/*Martin*, but does not transfer the cases to the Eastern District of Texas, the Western District of Pennsylvania is a viable alternative.  *See In re Nexium (Esomeprazole) Antitrust Litig.*, 908 F. Supp. 2d 1360, 1361 (J.P.M.L. 2012) (noting that the transferee district, "compared to the others proposed by the parties, is a relatively underutilized district in which three of the eleven related actions are pending").

### C.     The Panel Should Not Transfer the Cases to the Western District of Missouri or the Northern District of Illinois.

In arguing that the Western District of Missouri is the appropriate transferee district, the Missouri Plaintiffs cite *Gibson* before Judge Bough in the Western District of Missouri as the "first-filed action proposed for consolidation."  *See* Dkt. No. 1-1 at 12.  But the Missouri Plaintiffs cherry-picked the cases that they propose for consolidation to avoid exposing the problems inherent in their request.  Had they included all pending pre-trial cases alleging antitrust violations relating to NAR rules, the first-filed action would actually be *Moehrl* before Hon. Andrea Wood

---

[13] Available at
https://www.judiciary.senate.gov/imo/media/doc/Christy%20Wiegand%20SJQ%20-%20PUBLIC.pdf (last visited on Jan. 25, 2024).

in the Northern District of Illinois.  But neither the Western District of Missouri nor the Northern District of Illinois is a suitable location for centralization for the reasons discussed below.

The Western District of Missouri, which has eight judges, already has four pending MDLs—including one before Judge Bough.  Unlike the Eastern District of Texas, a significant portion of the parties, witnesses, and evidence are <u>not</u> located in or near Kansas City, where Judge Bough sits.  Further, Judge Bough issued several rulings in *Burnett* on legal issues likely to be similar to those in dispute in the currently pending cases.  Given the likelihood that he would rule consistently with his previous decisions, transferring the cases to Judge Bough would prejudice the Texas Defendants as they did not have the opportunity to brief or argue these issues on a clean slate.

The Northern District of Illinois's caseload and speed of case resolution also make it a less-than-desirable location for centralization.  It already has 17 pending MDLs between 22 judges, and it has the highest weighted filings per judge of any of the venues under consideration.  *See supra* note 9, at 47.  In addition, it has a median time from filing-to-trial in civil cases of 57.7 months (compared to 19.0 months for the Eastern District of Texas), which is the third longest of any federal district in the country.  *Id.*  And unlike the Eastern District of Texas and the Western District of Pennsylvania, the Northern District of Illinois has a vacant judgeship, making it even less suited for the increased caseload. *Current Judicial Vacancies*, United States Courts (Jan. 19, 2024).[14]

Further, none of the nine actions the Missouri Plaintiffs seek to consolidate is filed in the Northern District of Illinois.  If *Moehrl* is included to address that flaw, it would only make matters

---

[14] Available at https://www.uscourts.gov/judges-judgeships/judicial-vacancies/current-judicial-vacancies (last visited on Jan. 25, 2024).

worse given *Moehrl*'s drastically different procedural posture as compared to the other actions discussed herein—that is, *Moehrl* has been pending for nearly five years, Judge Wood has already ruled on motions to dismiss, a motion for class certification, and various discovery issues, and the parties are in the process of briefing motions for summary judgment and *Daubert* motions.  The Panel has repeatedly refused to consolidate cases in one court under such circumstances.  *See, e.g.*, *In re Starbucks Corp. Access for Individuals with Disabilities Litig.*, 326 F. Supp. 3d 1370, 1371 (J.P.M.L. 2018) ("The significantly varying procedural posture of the cases also weighs against centralization."); *In re Pilepro Antitrust & Pat. Litig.*, 140 F. Supp. 3d 1350, 1350–51 (J.P.M.L. 2015) (denying centralization because, among other reasons, the actions were "in vastly different procedural postures," and each action "involve[d] a multitude of other issues and claims not involved in the other action").

## CONCLUSION

For the reasons stated above, the Panel should deny the Motion for Transfer of Actions to the Western District of Missouri Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings filed by Plaintiffs Don Gibson, Lauren Criss, John Meiners, and Daniel Umpa. In the alternative, if the Panel grants the Motion, the Panel should exclude the *QJ Team*/*Martin* cases from the MDL action or centralize all of the cases before Judge Sean Jordan in the Eastern District of Texas, Sherman Division at Plano.

*[Signature blocks on following page]*

Respectfully submitted,

/s/ George W. Morrison
George W. Morrison (a/k/a Bill Morrison)
Texas Bar No. 24007710
bill.morrison@haynesboone.com
Neil Issar
Texas Bar No. 24102704
neil.issar@haynesboone.com
Greta Gieseke
Texas Bar No. 24132925
greta.gieseke@haynesboone.com
HAYNES AND BOONE, LLP
2801 N. Harwood Street, Suite 2300
Dallas, Texas 75201-2747
Tel: (214) 651-5000
Fax: (214) 651-5940

**Attorneys for Defendants MetroTex
Association of Realtors®, Inc. and North
Texas Real Estate Information Systems,
Inc.**


/s/ Bradley C. Weber
Bradley C. Weber
Texas Bar No. 21042470
bweber@lockelord.com
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Tel: (214) 740-8497
Fax: (214) 756-8497

Grant P. Harpold
Texas Bar No. 09034300
gharpold@buckkeenan.com
BUCK KEENAN LLP
2229 San Felipe Street, Suite 1000
Houston, Texas 77019
Tel: 713-225-4500
Fax: 713-225-3719

**Attorneys for Defendants Houston
Association of Realtors®, Inc. and**

*Houston Realtors® Information Service, Inc.*


*/s/ Richard A. Illmer*
Richard A. Illmer
Texas Bar No. 10388350
rick.illmer@huschblackwell.com
Chalon Clark
Texas Bar No. 24050045
chalon.clark@huschblackwell.com
HUSCH BLACKWELL, LLP
1900 N. Pearl St., Suite 1800
Dallas, Texas 75201
Tel: (214) 999-6100
Fax: (214) 999-6170

Christopher A. Smith (Pro Hac Vice)
chris.smith@huschblackwell.com
HUSCH BLACKWELL, LLP
8001 Forsyth Blvd., Suite 1500
St. Louis, Missouri 63105
Tel: (314) 480-1500
Fax: (314) 480-1505

A. James Spung (Pro Hac Vice)
james.spung@huschblackwell.com
1801 Wewatta St., Suite 1000
Denver, Colorado 80202
Tel: (303) 749-7200
Fax: (303) 749-7272

*Attorneys for Defendant Texas Association of Realtors®, Inc.*


*/s/ A. Boone Almanza*
A. Boone Almanza
Texas Bar No. 01579001
balmanza@abdmlaw.com
Rachel L. McKenna
Texas Bar No. 24102183
rmckenna@abdmlaw.com
Ethan Ranis
Texas Bar No. 24098303
eranis@abdmlaw.com

ALMANZA, BLACKBURN, DICKIE &
MITCHELL, LLP
2301 S. Capital of Texas Highway, Bldg. H
Austin, Texas 78746
Tel: (512) 474-9486
Fax: (512) 478-7151

***Attorneys for Defendant ATX WIR LLC***


*/s/ Jay Dewald*
Jay Dewald
Texas Bar No. 24001990
jay.dewald@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
111 W. Houston Street, Suite 1800
San Antonio, Texas 78205
Tel: (210) 224-5575
Fax: (210) 270-7205

Ellen Sessions
Texas Bar No. 00796282
ellen.sessions@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201-7932
Tel: (214) 855-8180
Fax: (214) 855-8200

Layne E. Kruse
Texas Bar No. 11742550
layne.kruse@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
1301 McKinney Street, Suite 5100
Houston, Texas 77010-3095
Tel: (713) 651-5100
Fax: (713) 651-5246

***Attorneys for Defendants Austin Board of
Realtors® and Austin/Central Texas Realty
Information Service***


*/s/ Joseph S. Babb*
Joseph S. Babb
Texas Bar No. 01478700

jbabb@brltexaslaw.com
BABB, REED & LEAK, PLLC
4131 Spicewood Springs Rd., Bldg. G-2
Austin, Texas 78759
Tel: (512) 580-5010

*Attorney for Defendants Central Texas*
*Multiple Listing Service, Inc., Fort Hood*
*Area Association of Realtors®, Inc., Four*
*Rivers Association of Realtors®, Inc.,*
*Greater Fort Worth Association of*
*Realtors®, Inc., Temple-Belton Board of*
*Realtors®, Inc., Victoria Area Association*
*of Realtors®, Inc., and Williamson County*
*Association of Realtors®, Inc.*


/s/ C. Alan Carillo
C. Alan Carrillo
Texas Bar No. 24109693
alan@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Tel: (214) 327-5000
Fax: (214) 327-5001

*Attorney for Defendant CitiQuest*
*Properties, Inc.*


/s/ Nicole L. Williams
Nicole L. Williams
Texas Bar No. 24041784
nwilliams@thompsoncoburn.com
Mackenzie S. Wallace
Texas Bar No. 24079535
mwallace@thompsoncoburn.com
THOMPSON COBURN LLP
2100 Ross Avenue, Suite 3200
Dallas, Texas 75201
Tel: (972) 629-7100
Fax: (972) 629-7171

*Attorneys for Defendants DMTX, LLC,*
*DSJMM, LLC, Hexagon Group, LLC,*

*Keller Willis San Antonio, Inc., and San Antonio Legacy Group, LLC*


/s/ Emilee L. Hargis
James D. Lawrence (admitted pro hac vice)
jim.lawrence@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
1200 Main St., Suite 3800
Kansas City, Missouri 64105
Tel: (816) 374-3200

Timothy R. Beyer (admitted pro hac vice)
tim.beyer@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
1700 Lincoln Street, #4100
Denver, Colorado 80203
Tel: (303) 866-7000

Elaine Drodge Koch
Texas Bar No. 06133300
elaine.koch@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
JP Morgan Chase Tower
2200 Ross Avenue, Suite 4200W
Dallas, Texas 75201
Tel: (214) 721-8000

Lindsay Sklar Johnson (admitted pro hac vice)
lindsay.johnson@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
1201 W. Peachtree St., N.W., 14th Floor
Atlanta, Georgia 30309-3471
Tel: (404) 572-6600

Emilee L. Hargis (admitted pro hac vice)
emilee.hargis@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
211 N. Broadway, Suite 3600
St. Louis, Missouri 63102
Tel: (314) 259-2028

*Attorneys for Defendant Fathom Realty, LLC*

*/s/ Jason M. Powers*
Jason M. Powers
Texas Bar No. 24007867
jpowers@velaw.com
VINSON & ELKINS L.L.P.
1001 Fannin St., Suite 2300
Houston, Texas 77002-6760
Tel: (713) 758-2522
Fax: (713) 615-5809

Megan Cloud
Texas Bar No. 24116207
mcloud@velaw.com
VINSON & ELKINS L.L.P.
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Tel: (214) 220-7949
Fax: (214) 220-7716

**Attorneys for Defendant Greater El Paso Association of Realtors®**

*/s/ Edwin Buffmire*
Edwin Buffmire
Texas Bar No. 24078283
ebuffmire@jw.com
JACKSON WALKER LLP
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
Tel: (214) 953-6000

**Attorney for Defendant Greenwood King Properties II, Inc.**

*/s/ James C. Bookhout*
James C. Bookhout
Texas Bar No. 24087187
James.bookhout@us.dlapiper.com
DLA PIPER LLP (US)
1900 N. Pearl Street, Suite 2200
Dallas, Texas 75201
Tel: (214) 743-4500
Fax: (214) 743-4545

Brett Ingerman (admitted pro hac vice)
Brett.ingerman@us.dlapiper.com
David B. Hamilton (admitted pro hac vice)
David.hamilton@us.dlapiper.com
Wes Reichart (admitted pro hac vice)
West.reichart@us.dlapiper.com
DLA PIPER LLP (US)
650 S. Exeter Street, Suite 1100
Baltimore, Maryland 2202
Tel: (410) 580-4177
Fax: (410) 580-3000

**Attorneys for Defendant Heyl Group
Holdings LLC**


/s/ Carl S. Burkhalter
Carl S. Burkhalter
cburkhalter@maynardnexsen.com
MAYNARD NEXSEN PC
1901 Sixth Avenue North, Suite 1700
Birmingham, Alabama 35203
Tel: (205) 254-1000
Fax: (205) 254-1999

Marcus A. Manos
mmanos@maynardnexsen.com
MAYNARD NEXSEN PC
1230 Main Street, Suite 700
Columbia, South Carolina 29201
Tel: (803) 771-8900
Fax: (803) 253-8277

Carlos Soltero
Texas Bar No. 00791702
csoltero@maynardnexsen.com
MAYNARD NEXSEN PC
Sterling Plaza
5949 Sherry Lane, Suite 820
Dallas, Texas 75225
Tel: (214) 239-2360
Fax: (214) 239-2377

**Attorneys for Defendant JP Piccinini Real
Estate Services, LLC**

/s/ K. Annette Disch
K. Annette Disch
Texas Bar No. 00785822
Annette.disch@gkbklaw.com
GAUNTT, KOEN, BINNEY & KIDD, LLP
25700 I-45 North, Ste. 130
Spring, Texas 77386
Tel: (281) 367-6555
Fax: (281) 367-3705

**Attorney for Defendants Mark Anthony Dimas and The Loken Group, Inc.**


/s/ Samuel Harris Johnson
Aaron Benjamin Gottlieb
Texas Bar No. 24069815
aaron@jfbusinesslaw.com
Samuel Harris Johnson
Texas Bar No. 24065507
sam@jfbusinesslaw.com
JOHNSON FRIEDMAN LAW GROUP PLLC
16803 Dallas Parkway, Ste. 320
Addison, Texas 75001
Tel: (214) 382-0300
Fax: (214) 466-2481

**Attorneys for Defendant MJHM LLC**


/s/ Gary Neal Schumann
Gary Neal Schumann
Texas Bar No. 17851930
gary@ssjmlaw.com
SAVRICK SCHUMANN JOHNSON MCGARR KAMINSKI & SHIRLEY, LLP
The Overlook at Gaines Ranch
4330 Gains Ranch Loop, Suite 150
Austin, Texas 78735
Tel: (512) 347-1604
Fax: (512) 347-1676

**Attorney for Defendant Moreland Properties, Inc.**

*/s/ Stephanie C. Sparks*
Stephanie C. Sparks
Texas Bar No. 24042900
ssparks@vedderprice.com
VEDDER PRICE P.C.
300 Crescent Court, Suite 400
Dallas, Texas 75201
Tel: (469) 895-4800
Tel: (469) 895-4802

Mitchell D. Cohen (pro hac vice)
mcohen@vedderprice.com
VEDDER PRICE P.C.
1633 Broadway 31st Floor
New York, New York 10019
Tel: (212) 407-7700
Fax: (212) 407 7799

Thomas P. Cimino
tcimino@vedderprice.com
Gregory G. Wrobel (pro hac vice)
gwrobel@vedderprice.com
VEDDER PRICE P.C.
222 North LaSalle Street
Chicago, Illinois 60601
Tel: (312) 609-7500
Fax: (312) 609-5005

***Attorneys for Defendant PenFed Realty,
LLC***

*/s/ David E. Dunham*
David E. Dunham
Texas Bar No. 06227700
david@dunhamllp.com
DUNHAM LLP
919 Congress Avenue, Suite 910
Austin, Texas 78701
Tel: (512) 615-1255
Fax: (512) 615-1256

***Attorneys for Defendant Real Agent LLC***

*/s/ Chahira Solh*

Chahira Solh (Lead attorney; admitted pro hac vice)
csolh@crowell.com
Daniel A. Sasse (admitted pro hac vice)
dsasse@crowell.com
Eric Fanchiang (admitted pro hac vice)
efanchiang@crowell.com
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, California 92614
Tel: (949) 263-8400
Fax: (949) 263-8414

**Attorneys for Defendant Realty Austin, LLC**


*/s/ Brenda T. Cubbage*

Brenda T. Cubbage
Texas Bar No. 05201300
bcubbage@cbsattorneys.com
Mary Madden Melle
Texas Bar No. 24051789
mmelle@cbsattorneys.com
CALHOUN, BHELLA & SECHREST, LLP
325 N. Saint Paul Street, Suite 2300
Dallas, Texas 75201
Tel: (214) 981-9200
Fax: (214) 981-9203

**Attorneys for Defendant RFT Enterprises, Inc.**


*/s/ Brian D. Schneider*

Brian D. Schneider
brian.schneider@afslaw.com
ARENTFOX SCHIFF LLP
1717 K Street NW
Washington, DC 20006
Tel: (202) 857-6000
Fax: (202) 857-6395

Jessica Sprovtsoff

jessica.sprovtsoff@afslaw.com
ARENTFOX SCHIFF LLP
350 South Main Street, Suite 210
Ann Arbor, Michigan 48104
Tel: (734) 222-1500
 Fax: (734) 222-1501

Michael E. Jones
Texas Bar No. 10929400
mikejones@potterminton.com
POTTER MINTON, PC
102 North College, Suite 900
Tyler, Texas 75702
Tel: (903) 597-8311
Fax: (903) 593-0846

**Attorneys for Defendant San Antonio
Board of Realtors®, Inc.**

/s/ Gregory J. Casas
Gregory J. Casas, Lead Counsel
Texas Bar No. 00787213
casasg@gtlaw.com
GREENBERG TRAURIG, LLP
300 West 6th Street, Suite 2050
Austin, Texas 78701
Tel: (512) 320-7200
Fax: (512) 320-7210

Christopher S. Dodrill
Texas Bar No. 24110696
dodrillc@gtlaw.com
GREENBERG TRAURIG, LLP
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
Tel: (214) 665-3600
Fax: (214) 665-3601

Becky Leigh Caruso
Texas Bar No. 24123942
Becky.Caruso@gtlaw.com
GREENBERG TRAURIG, LLP
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
Tel: (973) 443-3252

Fax: (973) 301-8410

**Attorneys for Defendant Square MB, LLC**

_/s/ Brian E. Robison_
Brian E. Robison
Texas Bar No. 00794547
brian@brownfoxlaw.com
BROWN FOX PLLC
6303 Cowboys Way, Suite 450
Frisco, Texas 75034
Tel: (972) 707-1860
Fax: (214) 327-5001

**Attorney for Defendant Side, Inc.**

_/s/ Bradley J. Purcell_
Keith M. Aurzada
Texas Bar No. 24009880
kaurzada@reedsmith.com
Bradley J. Purcell
Texas Bar No. 24063965
bpurcell@reedsmith.com
REED SMITH, LLP
2850 N. Harwood Street, Suite 1500
Dallas, Texas 75201
Tel: (469) 680-4200
Fax: (469) 680-4299

**Attorneys for Defendant Team Burns, LLC
d/b/a Monument Realty**

_/s/ Frederick T. Johnson_
Frederick T. Johnson
Texas Bar No. 00785429
Fjohnson@SpencerFane.com
SPENCER FANE LLP
3040 Post Oak Boulevard, Suite 1400
Houston, Texas 77056
Tel: (713) 212-2635
Fax: (713) 963-0859

Sean Whyte

Texas Bar No. 24047100
SWhyte@SpencerFane.com
Shelby Menard
Texas Bar No. 24106581
Smenard@SpencerFane.com
Mavish Bana
Texas Bar No. 24096653
Mbana@spencerfane.com
SPENCER FANE LLP
5700 Granite Parkway, Suite 650
Plano, Texas 75024
Tel: (972) 324-0300
Fax: (972) 324-0301

Thomas W. Hayde
(Pro Hac Vice Pending)
Thayde@SpencerFane.com
SPENCER FANE LLP
1 N. Brentwood Blvd., Suite 1000
St. Louis, Missouri 63105
Tel: (972) 324-0300
Fax: (972) 324-0301

***Attorneys for Defendant Turner Mangum
LLC***