**UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| *IN RE: REAL ESTATE COMMISSION ANTITRUST LITIGATION* | MDL No. 3100 |
|---|---|

**TEXAS PLAINTIFFS' OPPOSITION TO THE *GIBSON* AND *UMPA* PLAINTIFFS' MOTION FOR TRANSFER AND CENTRALIZATION PURSUANT TO 28 U.S.C. § 1407**

Plaintiffs in *Martin, et al. v. Texas Association of Realtors, et al.*, Case No. 4:23-cv-01104-SDJ and *QJ Team, LLC, et al. v. Texas Association of Realtors, Inc., et al.*, Case No. 4:23-cv-001013-SDJ, both currently pending before Judge Sean D. Jordan in the United States District Court for the Eastern District of Texas (the "Texas Plaintiffs") oppose the *Gibson* and *Umpa* Plaintiffs' (the "*Gibson/Umpa* Plaintiffs") motion to transfer and centralize the cases listed on the motion's Schedule of Actions (ECF No. 1-2) (which for simplicity's sake are called the "Related Actions," even though, as explained below, they are only superficially related to each other).

The Related Actions should not be centralized, but stay in the courts where they are currently pending. The MDL structure proposed by the *Gibson/Umpa* Plaintiffs risks overwhelming any one court, no matter how competent the judge, or well-resourced the district. If the Panel does centralize the Related Actions, the Texas Plaintiffs' cases should be excluded from the Panel's centralization order, and should remain in the Eastern District of Texas.

**A. The Related Actions Do Not Satisfy the Statutory Requirements for Centralization**

The Panel should deny the *Gibson/Umpa* Plaintiffs' motion because the Related Actions do not satisfy 28 U.S.C. § 1407 for at least three reasons. First, they lack an appreciable set of

genuinely "common questions of fact." Second, centralization will not serve "the convenience of parties and witnesses." Third, centralizing them will not "promote the just and efficient conduct" of these cases.

1. The Related Actions Do Not Share Truly Common Questions of Fact

The *Gibson/Umpa* Plaintiffs overstate what little factual commonality actually exists among the Related Actions. A prime example of this kind of misleading overstatement is their assertion that "whether defendants possess market power in the relevant markets" is a factual question common to the Related Actions. ECF No. 1-1, at 8. This is untrue.

The Related Actions each involve allegations of conspiracies, defendants, and proposed classes limited to distinct states,[1] only one part of one state,[2] different parts of the same state,[3] or even different parts of the same city.[4] Assessing a given defendant's market power in an alleged relevant market is a fact-intensive exercise that turns on the marketplace realities in each case. While commonly-used methodology and economics are relevant, market definition remains a factual finding entirely focused on the specific characteristics of a particular market. *See Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997) ("proper market definition can be determined only after a factual inquiry into the commercial realities faced by consumers.") (citing *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 482 (1992)).

[1] *See, e.g.*, the Texas Plaintiffs' cases.

[2] *See, e.g.*, *Spring Way Center, LLC et al. v. West-Penn Multi-List, Inc. et al.*, 23-cv-2061 (W.D. Pa.) (Western Pennsylvania).

[3] *See, e.g. Grace v. N.A.R. et al.*, 23-cv-6352 (N.D. Cal.) and *Fierro et al. v. N.A.R. et al.*, 24-cv-449 (C.D. Cal.) (the San Francisco Bay Area, and Madera-Fresno-Los Angeles Counties, respectively).

[4] *See, e.g.*, *March v. Brown Harris Stevens, LLC et al.*, 23-cv-9995 (S.D.N.Y.) and *Friedman v. REBNY et al.*, 24-cv-405 (S.D.N.Y.) (Manhattan and Brooklyn, respectively).

The facts needed to prove market power will therefore be different in each of the Related Actions, which is why the courts where plaintiffs chose to file their cases are best suited to analyze each of those actions, and furthermore why centralization would be inappropriate. *See In re: Uber Techs., Inc., Wage and Hour Emp. Pracs.*, MDL No. 2686, 158 F. Supp. 3d 1372, 1373 (J.P.M.L. 2016) (denying motion for centralization when the claims at issue "rest on state-specific legal and factual inquiries that are not suitable for centralized pretrial proceedings").

In the context of all these disparate and factually-distinct cases, that each of the Related Actions allege that their case's defendants adopted the same standard set of National Association of Realtors ("NAR") rules should have little or no bearing on the Panel's decision. Common reliance on the NAR rules does not negate the fact-specific inquiries as to how those particular defendants in that particular region used those rules in furtherance of that particular conspiracy, or the impact those specific defendants' application of the NAR rules had in that particular market. Those case-specific issues make centralization inappropriate.

For example, in *In re: COVID-19 Bus. Interruption Prot. Ins. Litig.*, MDL No. 2942, 482 F. Supp. 3d 1360, 1362-63 (J.P.M.L. 2020), the court denied the creation of a proposed industry-wide MDL of numerous different insurers where the MDL motion relied, in part, on industry-wide use of standardized policy forms to support centralization. The court held that "[w]hile the policy language for business income and civil authority coverages may be very similar among the policies, seemingly minor differences in policy language could have significant impact on the scope of coverage." *Id.* Because the cases "involve[d] different insurance policies with different coverages, conditions, exclusions, and policy language, purchased by different businesses in different industries located in different states," the court concluded that centralization was

inappropriate because "[t]hese differences [would] overwhelm any common factual questions." *Id.*

Contrary to the *Gibson/Umpa* Plaintiffs' contention, the factual questions in the Related Actions "share only a superficial commonality." *Id.*, at 1362. Accordingly, the Panel should deny their centralization motion.

2. Centralizing the Related Actions Will Not Serve the Convenience of the Parties and Witnesses

The overwhelming majority of the defendants in each of the Related Actions are entities that operate in only a single state, or a region of a single state, or a single part of a single region of a single state. Indeed, if the Panel were to put into a hat all of the defendants named in the Related Actions, it would as of today have just a one-in-six chance of drawing a defendant named in more than one district. The Related Actions do not meet the statutory requirement that centralization serve the "convenience of the parties and witnesses" because there are so few common defendants.

So, while the Related Actions share superficial factual commonality, and some discovery might be common, the significant variance in named defendants "virtually ensures that a significant amount of the discovery will be defendant-specific" and "fatally undermine[s] the case for centralization," as it would be "unlikely to serve the convenience of a substantial number of parties and their witnesses." *In re: Cordarone (Amiodarone Hydrochloride) Mktg., Sales Pracs. and Prods. Liab. Litig.*, MDL No. 2706, 190 F. Supp. 3d 1346, 1347-1348 (J.P.M.L. 2016). Discovery in each action will be chiefly, and possibly entirely, unique to that case. Whatever limited discovery there may be amongst any of the few common defendants, like document productions and deposition transcripts, can be cooperatively produced and shared among the various cases to reduce or eliminate any duplication of effort.

Centralizing the Related Actions risks overwhelming the scores of non-common defendants with unique factual issues concerning the various individual broker and association defendants named in each case, and the particulars of the state- or region-specific conspiracies alleged by each proposed class of plaintiffs. *See In re: Varsity Spirit Athlete Abuse Litig.*, MDL No. 3077, 2023 WL 3828645, at *1 (J.P.M.L. June 5, 2023) ("While the eight common defendants are named in all actions, there are approximately 30 individual coaches, gyms, and choreographers named as defendants in these actions. Most are named in just one action, and none are named in more than one district. Discovery regarding each individual defendant's conduct and their relationship to and interactions with the common defendants will not overlap. Therefore, any efficiencies to be gained by centralization may be diminished by unique factual issues."); *In re: JPMorgan Chase Paycheck Prot. Program Litig.*, MDL No. 2944, 481 F. Supp. 3d 1342, 1344 (J.P.M.L. 2020) ("Although these actions share factual questions arising out of allegations that Chase failed to implement and follow federal regulations . . .we conclude that centralization will not serve the convenience of the parties and witnesses or further the just and efficient conduct of the litigation" because individualized factual issues "will significantly diminish the potential efficiencies from centralization.").

3. Centralization Will Not Promote the Just and Efficient Conduct of the Related Actions

To satisfy 28 U.S.C. § 1407, centralization must promote the just and efficient conduct of the Related Actions. Here, it would not. The *Gibson/Umpa* Plaintiffs effectively propose an industry-wide MDL. Their proposed structure raises significant managerial and efficiency concerns. A transferee court would have to establish a pretrial structure to manage multiple classes of plaintiffs and dozens of defendants operating in different parts of the country. "To say this litigation would result in a complicated MDL seems an understatement. Managing such a litigation

would be an ambitious undertaking for any jurist, and implementing a pretrial structure that yields efficiencies will take time . . . An industry-wide MDL in this instance will not promote a quick resolution of these matters." *In re: COVID-19*, 482 F. Supp. 3d at 1362-63.

Texas Plaintiffs do not dispute Judge Bough's competence, nor his familiarity with the Missouri-specific facts and issues of the *Burnett* case.[5] But the industry-wide MDL proposed by the *Gibson/Umpa* Plaintiffs promises to be the kind of sprawling, unwieldly behemoth that should not be imposed on any one judge, his or her staff, and the resourceful but chronically overburdened clerical and technical personnel of any one district court. "Put simply, the MDL that movants request entails very few common questions of fact, which are outweighed by the substantial convenience and efficiency challenges posed by managing a litigation involving the entire . . . industry." *Id.* at 1363.

Moreover, because the Related Actions must be remanded back to their original venues for trial – the MDL process being solely for pre-trial proceedings – those transferor courts would face a huge burden getting up to speed on a massive record of class certification, expert and fact discovery, and summary judgment. Those courts would, if the Panel centralizes the Related Actions, essentially lack the degree of familiarity that served Judge Bough so well in seeing Missouri's *Burnett* case through trial.

[5] The *Gibson/Umpa* Plaintiffs also argue that Judge Bough's recent preliminary approval of proposed nationwide settlements is a factor supporting transfer of the Related Actions to his court. ECF No. 1-1, at 11. The Texas Plaintiffs disagree. The deadline for objections to, and exclusions from, the proposed nationwide settlements has not passed, and no fairness hearing has yet been held. There may be significant and substantive objections to the scope of the nationwide settlement-only class in a case that was tried by a certified litigation class of Missouri plaintiffs pursuing claims related solely to the Missouri market. Judge Bough's decision on whether to finally approve those settlements must, pursuant to Fed. R. Civ. P. 23, be informed by any objections lodged and what happens at the fairness hearing. Thus, the preliminary approval of that settlement should have no impact on the Panel's decision.

**B. If the Panel Centralizes the Related Actions, the Texas Plaintiffs' Cases Should Be Excluded from Any Centralization Order**

The Panel should not centralize the Related Actions. But if the Panel does so, the Texas Plaintiffs respectfully request that their cases be excluded from the Panel's centralization and transfer order, and remain before Judge Jordan in the Eastern District of Texas.

The Texas Plaintiffs bring claims on behalf of a Texas-based class. In addition to Sherman Act claims, the Texas Plaintiffs have alleged a unique Texas-only cause of action under Texas law (the state's Deceptive Trade Practices Act) against defendants based and operating (with limited exceptions) only in Texas, seeking damages for wrongdoing committed in Texas and affecting the Texas market (and only the Texas market, as it as alleged in the Texas Plaintiffs' complaints). The Texas Plaintiffs' cases will involve unique document and deposition discovery of people and entities in Texas concerning the alleged conduct in Texas that is distinct from the conduct and discovery in any of the other Related Actions.[6]

The parties in the Texas Plaintiffs' cases have already negotiated, and are currently working on filing, an agreed-upon scheduling order establishing timing for consolidation of their cases, filing of a consolidated complaint, and filing of answers, motions to dismiss, and other responsive pleadings. So, while the Panel considers the *Gibson/Umpa* Plaintiffs' centralization motion, the Texas Plaintiffs' cases will proceed and continue to be developed. In fact, several defendants in the Texas Plaintiffs' cases have offered to begin informal discovery. Including the Texas Plaintiffs' cases in any centralization order would be a setback to the efficient development of these cases in

[6] What (if any) overlapping discovery involving the few defendants the Texas Plaintiffs' cases share with the other Related Actions can be dealt with through informal cooperation and coordination among the different parties. *See, e.g., In re: OSF Healthcare Sys. Emp. Ret. Income Sec. Act (ERISA) Litig.*, MDL No. 2749, 223 F. Supp. 3d 1343, 1345 (J.P.M.L. 2016) (denying centralization, holding that "informal coordination of discovery and pretrial motions is preferable to centralization").

the Eastern District of Texas, where the parties are ready and willing to proceed. The Texas Plaintiffs' cases should therefore be excluded from any centralization order issued, or MDL created, by the Panel.

Notwithstanding the above, if the Panel both grants the centralization motion and includes the Texas Plaintiffs' cases in its centralization order, the Panel should centralize the Related Actions in the Western District of Missouri.

**C. Conclusion**

The Related Actions should not be centralized for the reasons explained above. In the alternative, if the Panel orders centralization, the Texas Plaintiffs' cases should be excluded from any such order, and stay in the Eastern District of Texas. If, however the Panel centralizes the Related Actions and includes the Texas Plaintiffs' cases in its centralization order, the Related Actions should be centralized in the Western District of Missouri.

January 26, 2024

Respectfully submitted,

*/s/ Julie Pettit*
Julie Pettit
jpettit@pettitfirm.com
David B. Urteago
durteago@pettitfirm.com
**THE PETTIT LAW FIRM**
2101 Cedar Springs, Suite 1540
Dallas, Texas 75201
Telephone: (214) 329-0151
Facsimile: (214) 329-4076

*/s/ Michael K. Hurst*
Michael K. Hurst
mhurst@lynnllp.com
Chris Schwegmann
cschwegmann@lynnllp.com
Yaman Dasai
ydesai@lynnllp.com
Jessica Cox
jcox@lynnllp.com

**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

*/s/ Laurence D. King*
Laurence D. King
Matthew B. George
Blair E. Reed
**KAPLAN FOX & KILSHEIMER LLP**
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: (415) 772-4700
Facsimile: (415) 772-4707
lking@kaplanfox.com
mgeorge@kaplanfox.com
breed@kaplanfox.com

*/s/ Frederic S. Fox*
Frederic S. Fox
Jeffrey P. Campisi
Matthew P. McCahill
**KAPLAN FOX & KILSHEIMER LLP**
800 Third Avenue, 38th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714
ffox@kaplanfox.com
jcampisi@kaplanfox.com
mmccahill@kaplanfox.com

***Attorneys for the Texas Plaintiffs***