BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| In re: Real Estate Commission Antitrust Litigation | § § § § § | MDL No. 3100 |

# THE OPPOSITION OF BAY AREA REAL ESTATE INFORMATION SYSTEM, INC. (BAREIS) TO THE GIBSON AND UMPA PLAINTIFFS' MOTION FOR <u>CENTRALIZATION UNDER 28 U.S.C. § 1407</u>

PATRICK M. RYAN
pryan@bartkolaw.com
JOHN F. MCLEAN
jmclean@bartkolaw.com
One Embarcadero Center, Suite 800
San Francisco, California 94111
Telephone:  (415) 956-1900
Facsimile:  (415) 956-1152

JASON A. ZWEIG
jzweig@bartkolaw.com
BARTKO LLP
One South Wacker Drive, 36th Floor
Chicago, IL 60606
Telephone:  (415) 291-4505

*Attorneys for BAREIS*

DATED:  January 26, 2024

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................2

    A.    The origins of these cases—*Moehrl*, *Burnett*, and *Nosalek*. .....................................2

    B.    The *Burnett* jury verdict spawns additional class actions and this centralization motion. ................................................................................................4

ARGUMENT .........................................................................................................................6

    A.    Each of the related cases are unique and local in character and make poor choices for centralization. .......................................................................................7

    B.    There is almost no overlap among the over 200 defendants in these cases. ............9

    C.    Other alternatives to centralization exist and would be more appropriate given the disparate nature of these cases. ..............................................................11

    D.    To the extent there is some overlap in classes, under the circumstances, that should not provide a basis for centralization. ................................................12

    E.    If the Panel determines that centralization is appropriate, the Panel should centralize these cases in the Eastern District of Texas. .........................................13

CONCLUSION ....................................................................................................................15

**The Opposition of Bay Area Real Estate Information System, Inc.
(BAREIS) to the Gibson and Umpa Plaintiffs' Motion for Centralization
Under 28 U.S.C. § 140**       **Page | i**
3108.000/1952863.2

## INTRODUCTION

The Panel may, under 28 U.S.C. § 1407, centralize litigation pending in multiple judicial districts when it determines that the transfer of such proceedings serve "the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." As defendant BAREIS[1] further explains below, centralization of the cases at issue will not achieve convenience for the parties and witnesses, and, therefore, the Gibson and Umpa plaintiffs' centralization motion should be denied generally. Alternatively, if the Panel decides that centralization is warranted, defendant BAREIS submits that the Eastern District of Texas is a more appropriate transferee forum for these cases than the Western District of Missouri.

The Gibson and Umpa plaintiffs' motion includes a gerrymandered compilation of related cases which seeks to exclude certain cases (including cases in which their counsel is also involved) from their centralization motion. The reality is, as reflected in the chart attached as exhibit 1, there appear to be 18 cases pending in United States federal courts which allege anti-competitive behavior with respect to real estate commissions.[2] And, with the exception of Gibson and Umpa's cases:

- The related 16 cases allege localized conduct specific to a unique metropolitan area of the United States.

---

[1] BAREIS is a defendant in only *Grace v. Bay Area Real Estate Information Services, Inc., et al.*, Case No. 4:23-cv-06352 (N.D. Cal.). Originally, plaintiff Grace named NAR as a defendant. However, on January 12, 2024, plaintiff filed an amended complaint which omitted NAR as a defendant.

[2] Movants Gibson and Umpa included a Schedule of Actions as Exhibit 1 to their motion. Exhibit 1 listed nine related cases. Since the motion was filed, BAREIS is aware of an additional six related cases. In addition, there are three existing related cases which predated the motion of Gibson and Umpa: *Burnett*, *Moehrl*, and *Nosalek*. In total, including the *Moehrl*, *Burnett*, and *Nosalek* cases, BAREIS is aware of 18 cases.

- Because of the localized conduct, as illustrated in exhibit 2, these cases comprise over 200 unique defendants (primarily local real estate associations, real estate firms, and their members who are licensed by their respective states), the vast majority of which are named in only one of the pending cases. In fact, *there is not a single party*, plaintiff or defendant, common to all actions.

- Because of the lack of commonality of parties and their conduct, and the local nature of the rules and regulations at issue in each case, the discovery, motion practice, and rulings in each case are largely inapplicable to every other case. As a result, there is little risk of duplicative discovery, inconsistent rulings, or inefficiency.

- As further described below, three of these 18 cases (*Moehrl*, *Burnett*, and *Nosalek*) have been pending for nearly four years and have proceeded in parallel, apparently without issue. This strongly suggests that these new cases can also proceed in parallel and that, if necessary, other strategies short of centralization can be employed.

The Panel has often said that "centralization under Section 1407 should be the last solution after considered review of all other options." *In re Bank of America Fraudulent Account Litig.*, 2023 WL 8538726, *2 (J.P.M.L. 2023). For these reasons, and the reasons further set forth below, defendant BAREIS respectfully requests that the Panel not resort to the "last solution" of centralization and deny the motion of plaintiffs-movants Gibson and Umpa to centralize these cases.

## BACKGROUND

A.  **The origins of these cases—*Moehrl*, *Burnett*, and *Nosalek*.**

In March 2019, plaintiffs **Moehrl**, Cole, Darnell, Nager, Ramey, Sawbill Strategic, Inc., Ruh, and Daniel Umpa (one of the movants *here*) filed what appears to be the first antitrust class action against the National Association of Realtors® (*NAR*), including several large national real estate brokerages, alleging that NAR and the real estate brokerages conspired to raise real estate

broker commissions when listing a property on certain multiple listing services (*MLS*).[3] The alleged conspiracy was based on the NAR rule that when a broker lists a property on a MLS, the listing must contain an amount of the seller's broker commission that the seller's broker is willing to pay to the buyer's broker—and that amount is non-negotiable (the *Buyer-Broker Commission Rule*). *Moehrl* was limited to 20 specific MLSs operating in several metropolitan areas throughout the U.S. The case was filed in the Northern District of Illinois and is proceeding before Judge Andrea Wood. Plaintiffs' counsel in *Moehrl* is the same as counsel for movants Gibson and Umpa.

Shortly thereafter, in April 2019, plaintiffs Sitzer, Winger, **Burnett** and Hendrickson filed a second antitrust class action in the Western District of Missouri against NAR and several large national real estate brokerages.[4] The case was assigned to Judge Stephen R. Bough. Like in *Moehrl*, these plaintiffs alleged that NAR and the real estate brokerages conspired to raise real estate broker commissions when listing a property on certain MLSs. However, *Burnett* was confined to certain MLSs in Missouri: The Kansas City MLS, the St. Louis MLS, the Springfield MLS, and the Columbia MLS. The plaintiffs' alleged claims under the Sherman Act, the Missouri Antitrust Act, and the Missouri Merchandising Practices Act.[5]

Although movants Gibson and Umpa failed to mention it in their motion, there is yet a third related action that has been pending for years and is proceeding in parallel with *Moehrl* and

---

[3] *Moehrl, et al. v. The Nat'l Assoc. of Realtors, et al.*, 1:19-cv-01610 (N.D. Ill.) (*Moehrl*).

[4] *Sitzer, et al. v. The Nat'l Assoc. of Realtors, et al.*, 4:19-cv-00332 (W.D. Mo.) (*Burnett*).

[5] The same counsel that represents Gibson and Umpa also represent the *Burnett* plaintiffs. These plaintiffs' counsel only recently appeared for plaintiffs in *Burnett*, and the reasons for their appearing now are not clear.

*Burnett*. In December 2020, plaintiffs **Nosalek** and Hirschorn filed an antitrust class action in the District of Massachusetts.[6] The Nosalek plaintiffs, like the *Moehrl* and *Burnett* plaintiffs, alleged that local Realtor® associations and various local real estate brokerages conspired to inflate real estate broker commissions for properties listed on a certain single MLS. The MLS at issue in *Nosalek* is run by MLS Property Information Network, Inc, which owns and operates a MLS that lists homes in certain New England states though *Nosalek* appears confined to only certain areas of Massachusetts.

The *Moehrl, Burnett*, and *Nosalek* cases involved largely the same defendants, and contained largely similar allegations, but each related to specific and unique MLSs in different parts of the country. And although there were common defendants and similar allegations, to the best of BAREIS's knowledge, no one in any of these cases requested the formation of an MDL during the years these cases have been pending. These three cases have proceeded separately without any apparent issue.

**B.    The *Burnett* jury verdict spawns additional class actions and this centralization motion.**

On October 31, 2023, a jury in *Burnett* rendered a verdict against NAR, HomeServices of America, Inc., BHH Affiliates, LLC, HSF Affiliates LLC, Keller Williams Realty, Inc., Anywhere Real Estate, Inc., and Re/Max LLC.[7] The verdict was in favor of a class of persons who listed their home for sale on the MLSs for Kansas City, St. Louis, Springfield, and Columbia, Missouri and paid a broker commission.

---

[6] *Nosalek, et al. v. MLS Property Information Network, Inc., et al.*, 1:20-cv-12244 (D. Mass) (*Nosalek*).

[7] *See* ECF No. 1294 in 4:19-cv-00332 (W.D. Mo.).

On the day of the verdict, plaintiff-movant Gibson, represented by the *Moehrl* and *Burnett* plaintiffs' counsel, filed a class action also in the Western District of Missouri.[8] The *Gibson* complaint is nearly identical in all respects to *Burnett*. The only meaningful difference between *Gibson* and *Burnett* is *Gibson* sought a *nationwide class* of sellers who used, and paid a commission to, a listing broker affiliated with one of seven named corporate defendants. In contrast, *Burnett* sought a substantially more geographically circumscribed class.

On December 27, 2023, plaintiff-movant Umpa, also represented by the same plaintiffs' counsel for *Burnett*, *Moehrl*, and *Gibson*, filed a nearly identical class action which also sought a nationwide class of those who listed a home for sale with, and paid a broker commission to, one of the enumerated corporate defendants.[9] Although Umpa alleged a nationwide class, Umpa's alleged class carved out those in the class in *Burnett*, *Moehrl*, and *Nosalek*.

Following the October 31 jury verdict in *Burnett*, including *Gibson* and *Umpa*, there have also been an additional 15 class actions filed.[10] One of those cases is *Grace v. Bay Area Real Estate Information Services, Inc., et al.*, Case No. 4:23-cv-06352 (N.D. Cal.) in which BAREIS is named as a defendant. BAREIS is an MLS which, since 1997, lists properties exclusively in the California counties of Marin, Sonoma, Napa, Solano, and Mendocino. BAREIS is a 501(c)(6) non-profit corporation, which has members, but no owners, and no part of its net earnings may be distributed to a member. Unlike the vast majority of MLSs, BAREIS is not owned or

---

[8] *Gibson, et al. v. The Nat'l Assoc. of Realtors, et al.*, 4:23-cv-00788 (W.D. Mo.).

[9] *Umpa v. The Nat'l Assoc. of Realtors, et al.*, 4:23-cv-00945 (W.D. Mo.).

[10] There are over 500 MLSs in the United States, each of which operates in a certain geographic locale. The local focus of the operations of MLSs and real estate brokerages they serve is an industry reality. This reality makes it a practicable impossibility to establish a national litigation class for plaintiffs claims.

controlled by NAR or local NAR associations, and is not otherwise affiliated with NAR. Further, BAREIS's rules differ materially from most MLSs and do not adhere to the rules of NAR or local NAR affiliates. For example, BAREIS's rules permit the seller's broker to offer the buyer's broker no commission split; in contrast, NAR's rules require that some monetary compensation be offered. Further, BAREIS does not permit buyer-brokers to search its database for houses that its buyer may be interested in purchasing, and then filter the results given to its buyer based on the commission split offered by the seller's broker. There are other distinctions, and each MLS named as a defendant likewise has their own rules and practices which differ from one MLS to the next.

## ARGUMENT

When there are civil actions involving one or more common questions of fact and that are pending in different districts, 28 U.S.C. § 1407 provides that such actions may be transferred to any district for coordinated or consolidated proceedings. "Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407. No party is entitled to centralization as a matter of right. *In re Uber Technologies, Inc. Passenger Sexual Assault Litig.*, 2024 WL 41889, *1 (J.P.M.L. 2024). The Panel determines whether centralization is appropriate on a case by case basis. *Id.* And just because there may be some common factual issues, that does not necessarily mean centralization is appropriate. The Panel has recognized that despite the existence of some common issues, centralization may not be warranted where there are other considerations that make centralization inappropriate. *In re Belviq (Lorcaserin HCl) Products Liability Litig.*, 555 F. Supp. 3d 1369, 1370 (J.P.M.L. 2021); *In Re: Boehringer Ingelheim*

*Pharmaceuticals, Inc., Fair Labor Standards Act (FLSA) Litig.*, 763 F. Supp. 2d 1377, 1378 (J.P.M.L. 2011).

As further explained below, centralization is particularly inappropriate here and the Panel should deny Gibson and Umpa's motion.

**A.     Each of the related cases are unique and local in character and make poor choices for centralization.**

These cases make poor candidates for centralization. All but the movants' two national-class cases are geographically circumscribed. Each related case alleges a conspiracy that is confined to a unique, specific, and confined geographic area in the United States. Most cases allege a conspiracy among local Realtor® associations and regional MLSs. These local Realtor® associations and MLSs have their own rules and procedures regarding broker compensation and the other issues in the various suits. The proof in those cases will then revolve around the question of whether these local associations and the MLSs formed the agreement alleged in the complaints. Further, these cases do not just allege a federal Sherman Act claim, but also allege that the conduct violates the law of the state in which the case was brought. The alleged conduct will need to be evaluated to determine whether it violated such state law.

A good example is the *Grace* case in which BAREIS is a defendant and which focuses on five of California's 58 counties. The alleged class in Grace is "[a]ll persons and entities in the United States who, from December 8, 2019, paid a buyer broker commission in connection with the sale of residential real estate listed on BAREIS MLS." The causes of action alleged were violations of the Sherman Act, California's Cartwright Act, and California Business & Professions Code § 17200 et seq. BAREIS is an MLS that lists homes for sale in only Marin, Mendocino, Napa, Solano, and Sonoma counties. Many of the cases allege that the NAR-

affiliated MLSs follow NAR's Buyer-Broker Commission Rule and, therefore, are part of the alleged conspiracy operated by NAR through its NAR-affiliated MLSs. However, BAREIS is not NAR affiliated and its rules expressly permit the seller's broker to offer no compensation to the buyer's broker. In *Grace*, plaintiff named the Marin Association of *Realtors*®, North Bay Association of Realtors®, Solano Association of Realtors®, and the Northern Solano County Association of Realtors® as defendants. These associations are local; the question in *Grace* is whether they conspired with BAREIS in its local service area—not nationally.

Because BAREIS only lists properties in five North Bay counties, the class will necessarily be limited to those sellers who listed homes for sale on the BAREIS MLS, and, therefore, will generally be sellers who reside in the San Francisco area. Thus, proof in the *Grace* case will relate to BAREIS's rules and the rules of the local Realtor® associations, and relate to homes listed for sale on BAREIS's five North Bay counties. None of this has anything to do with, for example, whether the Real Estate Board of New York entered into an illegal agreement with local real estate brokerages in Manhattan as alleged in *March v. Real Estate Board of New York, et al.*, 1:23-cv-09995 (S.D.N.Y.). Rulings on a motion to dismiss in *Grace* will be confined to the *Grace* case since the four Realtor® association defendants, or BAREIS, will not be defendants in a case alleging misconduct in Nevada or Texas. Further, rulings such as class certification also won't be portable from one case to the next. Since these cases involve transactions in local markets, the economic evidence presented at class certification will be specific and unique to the local market at issue.

In the past, where movants sought to centralize cases which are local in character, the Panel has not hesitated to deny the motion for centralization, even if there are some common issues. *See, e.g., In re Spray Polyurethane Foam Insulation Products Liability Litig.*, 949

F. Supp. 2d 1364 (J.P.M.L. 2013); *In re DirectTV Inc. Fair Labor Standards Act (FLSA) and Wage and Hour Litig.*, 84 F .Supp. 3d 1373, 1374 (J.P.M.L. 2015); *In Re: Boehringer Ingelheim Pharmaceuticals, Inc. Fair Labor Standards Act (FLSA) Litig.*, 763 F. Supp. 2d 1377, 1378 (J.P.M.L. 2011); *In re Trucking Industry Employment Practices Litig.*, 384 F. Supp. 614 (J.P.M.L. 1974).

Because the cases here are local in nature, centralization is likewise inappropriate.

**B.      There is almost no overlap among the over 200 defendants in these cases.**

There is almost no commonality among the parties in the cases sought to be centralized:

- Across all the cases on file as of January 19, 2024, there are approximately 210 unique defendants.[11]

- Despite the large number of defendants, **not a single defendant** (or plaintiff) is common to all cases.

- There are approximately 156 defendants (or nearly 75% of defendants) which are named in *only one* of the 18 cases.

- The most cases a single defendant is named in is nine or only half of the 18 cases (Keller Williams Realty, Inc.).

- There are just three defendants named in seven cases—NAR, Anywhere Real Estate, and Homeservices of America, Inc.

- The vast majority of the remainder of the defendants are named as defendants in only two of the cases.

- And of course, with the exception of one plaintiff, Umpa, who is named as a plaintiff in two cases, all of the plaintiffs are unique to their individual case.

Because the vast majority of defendants in these cases are unique to only one case, centralization would bring inefficiency and would prejudice these defendants by forcing together an amalgam of disparate *defendants* and cases which bear little relationship to each other. It

---

[11] *See* attached list of defendants attached as exhibit 2.

would be the MDL equivalent of Frankenstein's monster. Where the vast majority of defendants are unique to a single case, and there is little overlap of defendants across cases, the Panel has generally declined to centralize. *In re Varsity Spirit Athlete Abuse Litig.*, 2023 WL 3828645, *1 (J.P.M.L. 2023) is instructive:

> While the eight common defendants are named in all actions, there are approximately 30 individual coaches, gyms, and choreographers named as defendants in these actions. Most are named in just one action, and none are named in more than one district. Discovery regarding each individual defendant's conduct and their relationship to and interactions with the common defendants will not overlap. Therefore, any efficiencies to be gained by centralization may be diminished by unique factual issues.

*See also In re Cardarone (Amiodaraone Hydrochloride) Marketing, Sales Practices and Products Liability Litig.*, 190 F. Supp. 3d 1346, 1347 (J.P.M.L. 2016) ("Given the different defendants sued in these actions, centralization appears unlikely to serve the convenience of a substantial number of partis and their witnesses"). Even in *Varsity Spirit*, there were eight common defendants and the Panel decided against centralization. In contrast, here, there are no common defendants.

Further, many of the defendants are smaller local Realtor® associations which are not deep pockets and are native to the forum in which the case is pending. To sweep these entities into an MDL, far from their home base of operations to face varying legal and factual issues, does not serve the convenience of the parties or witnesses and would impose an undue financial burden upon them—for example, BAREIS, which is a non-profit 501(c)(6) corporation. By centralizing these cases in a distant forum would not only fail to achieve any efficiencies, it would impose an undue additional expense upon entities like BAREIS.

C. **Other alternatives to centralization exist and would be more appropriate given the disparate nature of these cases.**

When the Panel issued its January 5, 2024 Notice of Filing and Publication of Briefing Schedule (ECF No. 4), it specifically instructed the parties to "address what steps they have taken to pursue alternatives to centralization (including, but not limited to, engaging in informal coordination of discovery and scheduling, and seeking Section 1404 transfer of one or more of the cases)." Since BAREIS is named as a defendant in only one action, it has no reason to seek—and has not sought—a Section 1404 transfer or engage in other alternatives to centralization. But, for those defendants which are common to the cases, BAREIS believes alternatives to centralization are more appropriate than centralization under 28 U.S.C. § 1407.

The Panel has repeatedly said that "centralization under Section 1407 should be the last solution after considered review of all other options." *In re Bank of America Fraudulent Account Litig.*, 2023 WL 8538726, *2 (J.P.M.L. 2023). *See also In re Geico Customer Data Security Breach Litig.*, 568 F. Supp. 3d 1406, 1407 (J.P.M.L. 2021) (same); *In re Kronos Customer Data Security Breach Litig.*, 619 F. Supp. 3d 1354, 1355 (J.P.M.L. 2022). The Panel has recognized various alternatives to centralization including "cooperation among the parties and the various transferor courts." *Id. See also In re General Motors LLC Chevrolet Bolt EV Batter Products Liability Litig.*, 532 F. Supp. 3d 1413, 1415 (J.P.M.L. 2021) (voluntary cooperation and coordination among the parties and the involved courts to avoid duplicative discovery or inconsistent pretrial rulings is among the alternatives to centralization). Other options short of centralization include cross-noticing depositions and stipulating that discovery relevant to more than one action can be used in other actions. *In re Litigation Practice Group, PC, Credit Repair Organizations Act (CROA) Contract Litig.*, 658 F. Supp. 3d 1379, 1380 (J.P.M.L. 2023) (citing

*In re Belviq (Lorcaserin HCl) Products Liability Litig.*, 555 F. Supp. 3d 1369, 1370 (J.P.M.L. 2021).

Given that the vast majority of parties in these cases are unique to a single case, the vast majority of cases likely would need little coordination with others. Further, a Section 1404 transfer makes little sense for the parties to these cases for the same reasons that centralization makes little sense. However, for those parties who are involved in more than one case, coordination among the cases is something they may wish to, and can, engage in. They likely will be represented by the same counsel, and they can coordinate discovery across the different cases such that the burden on them is minimized. And, finally, since a large number of the cases are newly filed, they are in the same procedural posture, making coordination more likely to be fruitful.

**D.     To the extent there is some overlap in classes, under the circumstances, that should not provide a basis for centralization.**

Perhaps the only potentially plausible reason to centralize these cases is a potential overlap of classes caused solely by the filing of the *Gibson* and *Umpa* cases which seek nationwide classes. In theory, the classes in the other complaints relating to specific geographic areas would partially (but not entirely) overlap with the alleged classes in *Gibson* and *Umpa*. However, the Panel should look carefully at the circumstances leading up to the filing of the *Gibson* and *Umpa* cases and, given those circumstances, put very little weight, if any, into the fact there is some overlap among the classes.

As discussed above, counsel for *Gibson* and *Umpa* are also counsel in *Moehrl* and *Burnett*. Those cases are limited to a class of home sellers who sold their homes listed on an MLS in a specific geographic area (significantly narrower than nationwide). On the same day

that the jury returned its verdict in *Burnett*, *Gibson* was filed purporting to seek relief on behalf of a nationwide class. Less than two months later, *Umpa* was also filed by these same counsel, and also alleging a nationwide class. Like counsel for *Burnett* and *Moehrl* did in those two cases, all other related cases allege geographically circumscribed cases which do not overlap at all. Had counsel for *Moehrl* and *Burnett* believed that these cases lend themselves to a nationwide class, they surely would have alleged or sought a nationwide class in *Burnett* and/or *Moehrl*. That they did not suggests that the nationwide classes alleged in *Gibson* and *Umpa* were asserted merely for tactical reasons, and they should not be credited. Rather, the allegations regarding a nationwide class and the concomitant motion to centralize, which seek to centralize in a district where counsel just achieved a significant trial victory, seems to be based more on the interests of plaintiffs' counsel than for the convenience of the parties and witnesses. "[W]here a Section 1407 motion appears intended to further the interests of particular counsel more than those of the statute, we would certainly find less favor with it." *In re New York Area Employee Retirement Income Security Act (ERISA) and Employment Practices Litig.*, 555 F. Supp. 3d 1367, 1368 (J.P.M.L. 2021).

Thus, the Panel should not credit the fact that there is some overlap in the putative classes alleged in the *Gibson* and *Umpa* complaints, with the other complaints.

### E.   If the Panel determines that centralization is appropriate, the Panel should centralize these cases in the Eastern District of Texas.

BAREIS opposes centralization. However, to the extent that the Panel decides that centralization is appropriate, BAREIS respectfully submits that although Judge Stephen R. Bough is eminently qualified, the Panel should decline to send these cases to the *Gibson* and *Umpa* plaintiffs' hand picked forum in which they have obtained several favorable rulings.

Instead, BAREIS submits that the Eastern District of Texas is a more appropriate transferee forum for these cases. The Eastern District of Texas, and specifically Judge Sean Jordan who currently presides over *QJ Team*/*Martin* cases, is uniquely positioned to handle this MDL due to docket statistics, accessibility and amenities, and proximity to the relevant facts and witnesses.

First, despite a higher-than-average caseload, the Eastern District of Texas has the second shortest average filing-to-trial rate in the entire country (19 months), making it one of the most efficient districts.[12] It has eight judges and only one currently pending MDL, which is not before Judge Jordan.[13] Therefore, it has the capacity to manage another MDL of this size and scope. *See In re Gator Corp. Software Trademark & Copyright Litig.*, 259 F. Supp. 2d 1378, 1380 (J.P.M.L. 2003) ("[C]entralization in the Georgia forum permits the Panel to effect the Section 1407 assignment to an accessible metropolitan court that i) is not currently overtaxed with other multidistrict dockets, and ii) possesses the necessary resources and expertise to be able to devote the time and effort to pretrial matters that this docket is likely to require."); *In re Corn Derivative Antitrust Litig.*, 486 F. Supp. 929, 932 (J.P.M.L. 1980) (selecting transferee district because it had had relatively few multidistrict litigations).

Second, Texas's central and convenient geographic location make the Eastern District of Texas an appropriate transferee forum for an MDL. Judge Jordan presides at the federal district courthouse in Plano, a suburb of Dallas that is a mere 21 miles from both Dallas Love Field Airport and Dallas/Fort Worth International Airport. Both airports have frequent direct flights

---

[12] United States District Courts – National Judicial Caseload Profile, United States Courts (Sept. 30, 2023), https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0930.2023.pdf.

[13] *See MDL Statistics Report*, United States Judicial Panel on Multidistrict Litigation (Nov. 16, 2023), https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-November-16-2023.pdf.

across the country. Dallas and Plano also both have more than sufficient hotel accommodations for the large number of parties that would be part of an MDL.

Texas is also home to several of the larger national brokerage defendants—even those not named in *QJ Team*/*Martin*, such as United Real Estate, which is named in *Gibson* and *Umpa* and is headquartered in Dallas, and Keller Williams, LLC, which is named in *Burton* and is headquartered in Austin, Texas. For these reasons, the Eastern District of Texas would be the venue best positioned to handle the MDL. *See, e.g.*, *In re Interest Rate Swaps Antitrust Litig.*, 190 F. Supp. 3d 1364, 1366 (J.P.M.L. 2016) (selecting the Southern District of New York as the MDL location in part because it had "a strong factual connection to this litigation, given that most defendants are based there," and "numerous events giving rise to the litigation are alleged to have occurred there"); *In re Lithium Ion Batteries Antitrust Litig.*, 923 F. Supp. 2d 1370, 1371 (J.P.M.L. 2013) ("[R]elevant documents and witnesses may be found in the Northern District of California, inasmuch as several defendants have major facilities or lithium ion battery business in or near the district.").

## CONCLUSION

Defendant BAREIS respectfully requests that the Panel deny the Gibson and Umpa's motion to centralize in the Western District of Missouri. In the alternative, should the Panel determine that centralization is warranted, BAREIS respectfully submits that the Eastern District of Texas is a more appropriate transferee forum.

DATED:  January 26, 2024                                   Respectfully submitted,

BARTKO LLP

By:  _____/s/ Patrick M. Ryan_____
PATRICK M. RYAN
*pryan@bartkolaw.com*
JOHN F. MCLEAN
*jmclean@bartkolaw.com*
One Embarcadero Center, Suite 800
San Francisco, California 94111
Telephone:  (415) 956-1900
Facsimile:  (415) 956-1152

JASON A. ZWEIG
*jzweig@bartkolaw.com*
BARTKO LLP
One South Wacker Drive, 36th Floor
Chicago, IL 60606
Telephone:  (415) 291-4505

*Attorneys for BAREIS*