BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|   |   |   |
|---|---|---|
| In re: Real Estate Commission Litigation | ) ) ) ) ) ) ) ) | MDL. No. 3100 |

**RESPONSE OF DEFENDANT HANNA HOLDINGS, INC. TO PLAINTIFFS' MOTION FOR TRANSFER AND CENTRALIZATION PURSUANT TO 28 U.S.C. § 1407**

Defendant Hanna Holdings, Inc. supports the centralization under 28 U.S.C. § 1407 of the actions identified in Movants' motion.

But Hanna Holdings submits that the most appropriate venue for centralization is the Western District of Pennsylvania, not Movants' proposed forum of the Western District of Missouri. *See* Motion for Transfer and Centralization, ECF No. 1-1. The Western District of Pennsylvania is a more central forum, with judges with both the capacity and relevant experience to handle these complex cases. Hanna Holdings would also not oppose transfer to the Northern District of Illinois or the Eastern District of Texas, though neither forum has the same broad set of advantages as the Western District of Pennsylvania.

**I.      The Western District Of Pennsylvania Is The Most Appropriate Transferee Court**

The Western District of Pennsylvania is the most appropriate choice for the transferee district. One of the actions that Plaintiffs have moved to consolidate, *Spring Way Center, LLC v. West Penn Multi-List, Inc.*, No. 23-cv-2061 (W.D. Pa.), is currently pending before Judge Christy C. Wiegand in Pittsburgh. Both Judge Wiegand and the Western District of Pennsylvania more broadly have the capacity and experience to handle a complex antitrust MDL expeditiously and skillfully. Judge Wiegand is an able judge who has a caseload that will allow her to reasonably handle this sprawling matter, significant antitrust (and other complex civil) experience, and has

not yet had an opportunity to preside over an MDL. The District and Circuit in which she sits have considerable experience with large antitrust MDLs and a record of resolving cases quickly. Moreover, given the districts in which the listed actions were filed and the locations where Defendants are headquartered and incorporated, Pittsburgh is a convenient forum.

> A. Judge Wiegand And The Western District Of Pennsylvania Have The Capacity To Handle MDL Proceedings Expeditiously

Judge Wiegand's number of pending civil cases is in the bottom thirteen percent of all federal district court judges. As a result, she would be able to give this sprawling MDL the necessary attention. *See Civil Cases in District Court (through June 2023)*, Judge Information Center, http://tracfed.syr.edu/judges/interp/civjdglist.html?tracdecor=1. As of June 2023, Judge Wiegand had 71 pending civil cases, tied for number 817 out of 938 federal district court judges. *See id.* The judges handling the other actions identified in Movants' motion had at least double Judge Wiegand's civil caseload, *see id.*, as shown in the table below.[1]

| Judge | Pending Civil Cases (June 2023) | Percentile |
|---|---|---|
| Hon. Christy Wiegand (W.D. Pa.) | 71 | 12th |
| Hon. Haywood S. Gilliam, Jr. (N.D. Cal.) | 200 | 59th |
| Hon. Sarah Geraghty (N.D. Ga.) | 299 | 80th |
| Hon. Stephen R. Bough (W.D. Mo.) | 152 | 43rd |
| Hon. Sean Jordan (E.D. Tex.) | 498 | 96th |
| Hon. Joseph Dawson, III (D.S.C.) | 328 | 85th |

While publicly available data on judicial caseloads includes only civil cases up to June 2023, data from Lex Machina, a proprietary litigation analytics research platform, confirms that Judge

---

[1] The Judge Information Center does not contain data on Hon. Jessica G.L. Clarke, the assigned judge for *March v. Real Estate Board of N.Y.*, 23-cv-9995 (S.D.N.Y.), because it only provides caseload information on federal judges who handled at least 50 civil cases during the past 12 months and Judge Clarke joined the bench in late April 2023. According to Lex Machina, as shown below, Judge Clarke had 314 total open cases as of January 19, 2024.

Wiegand's total current caseload is relatively low compared to the other judges handling the actions identified in Movants' motion. The table below illustrates this point.

| Judge | Open Cases (Jan. 19, 2024) |
|---|---|
| Hon. Christy Wiegand (W.D. Pa.) | 93 |
| Hon. Haywood S. Gilliam, Jr. (N.D. Cal.) | 291 |
| Hon. Sarah Geraghty (N.D. Ga.) | 335 |
| Hon. Stephen R. Bough (W.D. Mo.) | 141 |
| Hon. Jessica G.L. Clarke (S.D.N.Y.) | 314 |
| Hon. Sean Jordan (E.D. Tex.) | 527 |
| Hon. Joseph Dawson, III (D.S.C.) | 254 |

Thus, Judge Wiegand has the capacity to devote the necessary time and attention to this MDL. As the Panel has recognized, caseload is an important consideration in choosing the transferee judge. *See In re Vonage Marketing & Sales Practices Litigation.*, 505 F. Supp. 2d 1375, 1377 (J.P.M.L. 2007) (noting that the transferee judge "has the time" to efficiently manage the litigation); *In re Silica Products Liability Litigation*, 280 F. Supp. 2d 1381 (J.P.M.L. 2003) (transferring to a judge "with a relatively low civil caseload"); *In re Progressive Corp. Insurance Underwriting & Rating Practices Litigation*, 259 F. Supp. 2d 1370, 1371 (J.P.M.L. 2003) (transferring to judge who "has a caseload favorable to receiving the assignment").

More broadly, the Western District of Pennsylvania has the capacity to handle this MDL expeditiously. Although the average number of pending cases per judgeship among federal district courts is 1,099, the Western District of Pennsylvania has only 402 pending cases per judgeship. *See United States District Courts – National Judicial Caseload Profile*, https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0930.2023.pdf. Likewise, the average number of "weighted filings" per judgeship—which is calculated by accounting for the average time required to resolve different types of cases—is 549 nationwide, but that number is only 356 in the Western District of Pennsylvania. *See id.* The Western District of Pennsylvania also resolves cases quickly. The median amount of time from filing to disposition of a civil case

is 8.7 months nationwide, but only 5.9 months in the Western District of Pennsylvania. *See id.* The Western District of Pennsylvania also compares favorably on other relevant metrics to the districts in which the actions at issue are pending, as shown in the table below.

| Court | Pending cases per judge | Weighted filings per judge | Median months from filing to disposition (civil) |
|---|---|---|---|
| W.D. Pa. | 402 | 356 | 5.9 |
| N.D. Cal. | 1,001 | 568 | 7 |
| N.D. Ga. | 531 | 588 | 13.7 |
| W.D. Mo. | 461 | 428 | 6.2 |
| S.D.N.Y. | 631 | 534 | 5.6 |
| E.D. Tex. | 808 | 660 | 8.4 |
| D.S.C. | 1,035 | 552 | 8.5 |

Additionally, all but two individual judges within the Western District of Pennsylvania have civil caseloads in the bottom half of federal district court judges. *See Civil Cases in District Court*, *supra* p. 2. And most of them are in the bottom third. *See id.* For instance, Chief Judge Mark R. Hornak had 95 pending civil cases as of June 2023, placing him in the 22nd percentile of federal district court judges. *See id.* Other non-senior judges with notably low caseloads include Judge William S. Stickman IV (97 cases, 23rd percentile) and Judge Nicholas Ranjan (107 cases, 27th percentile). *See id.* Several other well-qualified judges in the district also have reasonable caseloads, including Senior Judge Nora B. Fischer (58 cases, 8th percentile), Senior Judge Arthur J. Schwab (43 cases, 5th percentile), Judge Robert J. Colville (147 cases, 42nd percentile), and Judge William S. Hardy (159 cases, 46th percentile). *See id.*

Both Judge Wiegand and the Western District of Pennsylvania more broadly are thus remarkably well-positioned to take on the significant burden of managing proceedings in a complex antitrust MDL.

### B. Judge Wiegand And The Western District Of Pennsylvania Have Considerable Relevant Experience

In addition to ample capacity, both Judge Wiegand and other judges in the Western District of Pennsylvania have the requisite antitrust experience to handle this MDL. *See, e.g., In re Insurance Brokerage Antitrust Litigation*, 360 F. Supp. 2d 1371, 1373 (J.P.M.L. 2005) (finding transferee district appropriate because the "district is equipped with the resources that this complex antitrust docket is likely to require"). That is particularly important where, as here, the cases involve extremely complex issues of antitrust law, the answers to which will have important nationwide ramifications for the economy. Judge Wiegand previously practiced antitrust law as a member of the antitrust and trade regulation group at Arnold & Porter, which has one of the nation's premier antitrust practices—currently headed by Debbie Feinstein who is the former Director of the FTC Bureau of Competition and formerly headed by Bill Baer who is both the former Director of the FTC Bureau of Competition and the former Assistant Attorney General for Antitrust at DOJ. Judge Wiegand also clerked for Judge D. Brooks Smith on the Third Circuit and served as an Assistant United States Attorney for the Western District of Pennsylvania, where she served as Deputy Chief of the Civil Division and in the Criminal Division's Major Crimes Unit. During that time, she litigated hundreds of civil cases to judgment as sole or lead counsel, including highly complex cases. For example, as lead counsel, she prosecuted the second-largest for-profit college group in the United States under the False Claims Act, which involved supervising the most comprehensive document preservation and collection effort in the Department of Education's litigation history and resulted in a $95.5 million settlement. *See* United States Senate Committee on the Judiciary, *Questionnaire for Judicial Nominees*, www.judiciary.senate.gov/imo/media/doc/Christy%20Wiegand%20SJQ%20-%20PUBLIC.pdf.

Judge Wiegand has not yet presided over an MDL so this presents a prime opportunity for her to do so. The Panel often selects transferee judges who are well-qualified but have not yet handled MDL proceedings. *See, e.g.*, *In re Erie COVID-19 Business Interruption Protection Insurance Litigation*, 509 F. Supp. 3d 1370, 1374 (J.P.M.L. 2020) (transferring case to the Western District of Pennsylvania and reasoning that "[w]e are confident that the Honorable Mark R. Hornak, who has not yet had the opportunity to preside over an MDL, will steer this litigation on a prudent and expeditious course"); *In re Domestic Airline Travel Antitrust Litigation*, 140 F. Supp. 3d 1344, 1346 (J.P.M.L. 2015) ("[C]entralization in this district provides us the opportunity to assign the litigation to the Honorable Colleen Kollar-Kotelly, an able and experienced jurist who has not yet had the opportunity to preside over a multidistrict litigation.").

More broadly, the Western District of Pennsylvania and the Third Circuit have considerable experience with large MDLs—particularly antitrust MDLs—spanning decades. This has resulted in a body of well-developed case law not found in the Eighth Circuit, where Movants seek to place the cases. For example, *In re Insurance Brokerage Antitrust Litigation*, MDL No. 1663 (D.N.J.)—a significant antitrust MDL—was within the Third Circuit, which issued an important and oft-cited decision there, *see* 618 F.3d 300 (3d Cir. 2010). One of the largest and longest-lasting MDLs in history, *In re Asbestos Products Liability Litigation*, MDL No. 875 (E.D. Pa.), was also within the Third Circuit. The largest current antitrust MDL in the country is being handled within the Third Circuit. *See In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.). Judge Hardy in the Western District of Pennsylvania is currently handling an antitrust MDL, *In re Diisocyanates Antitrust Litigation*, MDL No. 2862. And Judge Conti in the Western District of Pennsylvania is handling the largest current sales practices MDL

in the country, *In re: SoClean, Inc., Marketing, Sales Practices and Products Liability Litigation*, MDL No. 3021.

Even apart from MDLs, other judges in the Western District of Pennsylvania have relevant experience adjudicating significant antitrust cases. For example, according to Lex Machina data, Chief Judge Hornak has overseen three antitrust cases. Other judges with judicial antitrust experience include Judge Fischer (5 cases), Judge Hardy (13 cases, which include individual MDL actions), Judge Ranjan (3 cases), and Judge Stickman (4 cases).

## C. Pittsburgh Is A Convenient Venue For The MDL

Pittsburgh, where Judge Wiegand and most other judges on the Western District of Pennsylvania are located, is a central and convenient venue for the MDL. Several Defendants, including Hanna Holdings, Pirain Enterprises, Inc., MHDM LLC, SF, LLC, and Realty One Group Horizon, LLC are headquartered in the Pittsburgh area and incorporated in Pennsylvania. Others are headquartered or incorporated relatively nearby, including in neighboring states Delaware, New Jersey, and New York. For example, Anywhere Real Estate, Inc. and Weichert Realtors are headquartered in New Jersey (also in the Third Circuit). Compass, Inc., Christie's International Real Estate Group, LLC, and Sotheby's International Realty, Inc. are headquartered in New York. And many of the Defendants are incorporated in Delaware (again, in the Third Circuit), including RE/MAX Holdings, Inc., Anywhere Real Estate, Inc., Compass, Inc., eXp World Holdings, Inc., HomeServices of America, Inc., and Redfin Corporation. The Panel has previously transferred a case to the Western District of Pennsylvania for this very reason, explaining that "[o]ne defendant has its U.S. headquarters in this district, and five other defendants have their headquarters in adjacent or nearby districts. Relevant documents and witnesses therefore are likely to be located in or close to this area." *In re Diisocyanates Antitrust Litigation*, 341 F. Supp. 3d 1376, 1378 (J.P.M.L. 2018). Pittsburgh is also reasonably central to the seven districts that are home to the

actions at issue, four of which are in the Eastern portion of the country (Western District of Pennsylvania, Northern District of Georgia, Southern District of New York, and District of South Carolina). Finally, Pittsburgh is easily accessible. It has an international airport located 20 minutes from the courthouse with 60 nonstop destinations and 135 daily departures. *See* Pittsburgh International Airport, https://flypittsburgh.com/new-and-resumed-flights.

## II. The Western District Of Missouri Would Not Be An Appropriate Transferee Court

Hanna Holdings opposes transfer to the Western District of Missouri, for several reasons. First, the assigned judge in that district, Judge Stephen R. Bough, has comparatively little antitrust experience. He does not appear to have practiced antitrust law before joining the bench and, before he was assigned to *Burnett v. National Association of Realtors*, No. 19-cv-332 (W.D. Mo.)—which raised similar allegations to those at issue here—had issued only two substantive orders in antitrust cases, both short orders on motions to dismiss. *See New Prime, Inc. v. Eaton Corp.*, No. 16-3407-CV-S-SRB, 2017 WL 5992466 (W.D. Mo. Mar. 16, 2017); *New Prime Inc. v. Espar, Inc.*, No. 16-3305-CV-S-SRB, 2016 WL 10644516 (W.D. Mo. Oct. 27, 2016). Relevant antitrust experience is particularly important here because these are not run-of-the mill cases and are not even run-of-the-mill antitrust cases. For example, these cases raise extremely challenging questions about whether the Plaintiff home sellers should be considered direct purchasers of home buyer-broker services, even though they do not pay those brokers directly. There are complicated issues involving two-sided markets; in fact, there are classes of home buyers who also claim that they are injured by the challenged conduct—advancing theories seemingly at odds with those of the home sellers. The law of trade associations in the antitrust context is a challenging subject. Both the product and geographic markets in these cases are extremely complex as real estate markets are inherently local, and each market at issue has different competitive and other dynamics. And there will likely be complicated questions of antitrust injury as many home sellers and buyers may have

benefitted substantially from the challenged conduct. Dealing with these questions in even a single case would be a tall order. Resolving them across many cases necessitates a judge with deep familiarity with the underlying case law and the experience necessary to grapple with these and other questions as they emerge.

Judge Bough's previous rulings in *Burnett*, which Movants rely upon to justify choosing him as the transferee court, do not support transfer to the Western District of Missouri. For example, Judge Bough failed to decide the question of whether Plaintiffs were direct or indirect purchasers, leaving that complex question for the jury to decide, even though the Supreme Court has squarely held that whether a Plaintiff is a direct purchaser is a question of law. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 726 (1977); *Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1520 (2019). Judge Bough also held, as a matter of law, at summary judgment, that the challenged guidelines were *per se* unlawful. *Burnett*, 2022 WL 17741708, at *10 (W.D. Mo. Dec. 16, 2022). But numerous courts had previously held that other, similar NAR rules were to be evaluated under the rule of reason. *See, e.g.*, *United States v. Realty Multi-List, Inc.*, 629 F.2d 1351, 1370 (5th Cir. 1980); *United States v. National Association of Realtors*, 2006 WL 3434263, at *13 (N.D. Ill. Nov. 27, 2006); *Venture Resources Group, Inc. v. Greater New Jersey Regional Multiple Listing Service, Inc.*, 1995 WL 866841, at *2 (D.N.J. Aug. 24, 1995); *O'Riordan v. Long Island Board of Realtors, Inc.*, 707 F. Supp. 111, 115 (E.D.N.Y. 1988). And there are obvious procompetitive benefits to the guideline at issue, including that the home seller is receiving a large payment for their home whereas the buyer is already almost certainly financing their purchase. In applying *per se* treatment on summary judgment, Judge Bough disregarded the Supreme Court's holding that condemning an agreement as per se unlawful "is a rare exception" for which "a restraint must have manifestly anticompetitive effects and lack . . . any redeeming virtue," *Leegin Creative Leather*

*Products, Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007) (quotation marks omitted), and that courts "take special care not to deploy" per se liability unless they "have amassed 'considerable experience with the type of restraint at issue' and 'can predict with confidence that it would be invalidated in all or almost all instances,'" *NCAA v. Alston*, 141 S. Ct. 2141, 2156 (2021) (citations omitted).

Judge Bough's management of the two cases already assigned to him—*Gibson v. National Association of Realtors*, No. 23-cv-788 (W.D. Mo.) and *Umpa v. National Association of Realtors*, No. 23-cv-945 (W.D. Mo.)—also do not support him serving as the transferee judge. Judge Bough did not stay *Gibson* and *Umpa* pending the JPML's decision here. *See Gibson*, ECF No. 78 (order denying motion for stay). As courts have previously recognized, where a JPML decision on a motion to transfer is pending, "the potential for duplicative motion practice and discovery proceedings demonstrate that judicial economy and prejudice to the defendants weigh *heavily* in favor of a stay." *Emerson v. Lincoln Electric Holdings, Inc.*, No. 09-cv-6004, 2009 WL 690181, at *1 (W.D. Mo. Mar. 12, 2009) (cleaned up) (emphasis added); *see also Witherspoon v. Bayer Healthcare Pharmaceuticals Inc.*, No. 13CV01912, 2013 WL 6069011, at *2 (E.D. Mo. Nov. 18, 2013) (granting stay were JMPL decision to transfer is pending because "judicial economy weighs heavily in favor of granting the requested stay" and a stay would "allow consistent pretrial rulings and conserve the resources of the parties, counsel, and the judiciary," while any prejudice to plaintiffs would be "greatly outweighed by the judicial economy interests" of a stay). He also took no affirmative steps to set a coordinated case schedule in *Gibson* and *Umpa*, which resulted in varying case deadlines, leaving the parties to scramble to negotiate deadlines among themselves and eventually file a joint motion for a coordinated scheduling order, which the Court entered on

the date three Defendants' responses to the *Umpa* complaint were due. *See Gibson*, ECF No. 85; *Umpa*, ECF Nos. 40, 42, 43.

Moreover, for the reasons NAR gives in its response brief, neither the fact that *Burnett* already proceeded to a jury verdict before Judge Bough nor the fact that Judge Bough preliminarily approved settlements with two Defendants are relevant to the question of the appropriate transferee judge. In addition, the Panel should give no weight to the fact that two of the cases identified are pending before Judge Bough. Plaintiffs' counsel filed the second case, *Umpa*, the same day that they filed a coordinated transfer motion with Plaintiffs' counsel in the first case, *Gibson*. *Umpa* itself is largely a copy of the *Gibson* case, and the sole plaintiff, Daniel Umpa, is also a plaintiff in another case, *Moehrl v. National Association of Realtors*, No. 19-cv-1610 (N.D. Ill.). There was therefore no reason for filing *Umpa* other than to create a second case that Plaintiffs' counsel could then cite as a reason to transfer to Judge Bough.

## **CONCLUSION**

If the Panel should choose to centralize the actions here, it should transfer them to the Western District of Pennsylvania, which is a convenient forum, with a well-qualified judge with ample capacity to hear these significant cases.

Dated: January 26, 2024

Respectfully submitted,

/s/ David Z. Gringer
David Z. Gringer
Emily Barnet
Wilmer Cutler Pickering
  Hale and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
david.gringer@wilmerhale.com
emily.barnet@wilmerhale.com

Seth P. Waxman
Karin Dryhurst
Wilmer Cutler Pickering
  Hale and Dorr LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000
seth.waxman@wilmerhale.com
karin.dryhurst@wilmerhale.com

*Attorneys for Hanna Holdings, Inc.*