**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

IN RE: REAL ESTATE COMMISSION ANTITRUST LITIGATION ) MDL No. 3100

**RESPONSE OF DEFENDANT WEST PENN MULTI-LIST, INC. OPPOSING PLAINTIFFS' MOTION FOR TRANSFER AND CENTRALIZATION PURSUANT TO 28 U.S.C. § 1407**

# TABLE OF CONTENTS


Page

INTRODUCTION ..... 1

ARGUMENT ..... 2

I. CENTRALIZATION IS NOT WARRANTED OR NECESSARY ..... 2

A. Numerous disparate facts and defendants would create inefficiency and weighs against consolidation. ..... 2

B. If the Panel decides to centralize and transfer some cases, the *Spring Way* case should not be included in that order. ..... 5

C. Coordination is a better solution than centralization. ..... 7

II. IF THE PANEL CHOOSES TO CENTRALIZE IT SHOULD SEND THE CONSOLIDATED CASES TO THE WESTERN DISTRICT OF PENNSYLVANIA. ..... 8

A. The Western District of Pennsylvania is best positioned to handle the MDL. ..... 9

1. The Western District of Pennsylvania has ample capacity. ..... 9

2. The Western District of Pennsylvania has the requisite experience. ..... 10

3. Pittsburgh is a convenient venue for witnesses and parties. ..... 11

B. The Panel should not transfer the cases to the Western District of Missouri. ..... 12

CONCLUSION ..... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re ABA Law Sch. Accreditation Litig.*,
325 F. Supp. 3d 1377 (J.P.M.L. 2018)....................12

*In Re Asbestos Products Liability Litigation*,
MDL No. 875 (E.D. Pa.)....................10

*In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*,
804 F. Supp. 2d 1376 (J.P.M.L. 2011)....................7

*In re Cordarone (Amiodarone Hydrochloride) Mktg., Sales Pracs. and Prods. Liability Litig.*,
190 F. Supp. 3d 1346 (J.P.M.L. 2016)....................3

*In re Credit Suisse VelocityShares Daily Inverse VIX Short Term Exch. Traded Notes Sec. Litig.*,
326 F. Supp. 3d 1379 (J.P.M.L. Aug. 1, 2018)....................7

*In re Diisocyanates Antitrust Litig.*,
341 F. Supp. 3d 1376 (J.P.M.L. 2018)....................11

*In re Diisocyanates Antitrust Litigation*,
MDL No. 2862....................10

*In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.*,
446 F. Supp. 242 (J.P.M.L. 1978)....................7

*In re Erie COVID-19 Bus. Interruption Prot. Ins. Litig.*,
509 F. Supp. 3d 1370 (J.P.M.L. 2020)....................11

*In re Gasoline Lessee Dealers Antitrust Litig.*,
479 F. Supp. 578 (J.P.M.L. 1979)....................4

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*,
MDL No. 2724 (E.D. Pa.)....................10

*In re Gerber Probiotic Prods. Mktg. & Sales Pracs. Litig.*,
899 F. Supp. 2d 1378 (J.P.M.L. 2012)....................7

*In re Hotel Indus. Sex Trafficking Litig.*,
433 F. Supp. 3d 1353 (J.P.M.L. 2020)....................7

*In re Insurance Brokerage Antitrust Litigation*,
360 F. Supp. 2d 1371 (J.P.M.L. 2005)....................10

*In re Invokana (Canaglifozin) Prods. Liability Litig.*, 233 F. Supp. 3d 1345 (J.P.M.L. 2016) ... 3, 5

*In re Nelnet Servicing, LLC, Customer Data Security Breach Litig.*, 684 F. Supp. 3d 1377 (J.P.M.L. 2022) ... 2

*In re Proton-Pump Inhibitor Prods. Liability Litig.*, 273 F. Supp. 3d 1360 (J.P.M.L. 2017) ... 2, 3

*In re SFPP, L.P. R.R. Prop. Rights Litig.*, 121 F. Supp. 3d 1360 (J.P.M.L. 2015) ... 7, 12

*In re Shoulder Pain Pump-Chrondrolysis Prod. Liability Litig.*, 571 F. Supp. 2d 1367 (J.P.M.L. 2008) ... 3

*SPRING WAY CENTER, LLC et al v. WEST PENN MULTI-LIST, INC. et al*, Docket No. 2:23-cv-02061 (W.D. Pa., Dec 4, 2023) ... 1

*In re Vonage Mktg. & Sales Practices Litig.*, 505 F. Supp. 2d 1375 (J.P.M.L. 2007) ... 9

*In the Matter of West Penn Multi-List, Inc.*, https://www.ftc.gov/legal-library/browse/cases-proceedings/081-0167-west-penn-multi-list-inc-corporation-matter ... 6

*In re Yellow Brass Plumbing Component Prods. Liab. Litig.*, 844 F. Supp. 2d 1377 (J.P.M.L. 2012) ... 4

**Statutes**

28 U.S.C. § 1407 ... 1, 2, 7, 12

**Other Authorities**

https://cdn.nar.realtor/sites/default/files/documents/pdf-hmlp-handbook-on-multiple-listing-policy-2024.pdf?_gl=1*syh0sz*_gcl_au*MTQwODkxMDEzLjE3MDYxMzg1OTA ... 6

https://www.mow.uscourts.gov/district/judges ... 9

https://www.pawd.uscourts.gov/judges-information ... 9

Judge Information Center, http://tracfed.syr.edu/judges/interp/civjdglist.html?tracdecor=1 ... 9

*Judicial Nominees*, United States Senate Committee on the Judiciary, https://www.judiciary.senate.gov/imo/media/doc/Christy%20Wiegand%20SJQ%20-%20PUBLIC.pdf ... 10

Pittsburgh International Airport, https://flypittsburgh.com/new-and-resumed-flights ....12

United States District Courts – National Judicial Caseload Profile, https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0930.2023.pdf....9

West Penn Multi-List, Inc. Rules and Regulations, https://www.westpennmls.com/wp-content/uploads/RR-Cover-Page-TOC-2-23-2022.pdf....5

Defendant West Penn Multi-List, Inc. ("WPML"), one of five remaining defendants[1] in the *Spring Way* lawsuit pending in the Western District of Pennsylvania,[2] opposes the Motion for Transfer of Actions to the Western District of Missouri pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings (the "Motion") filed by Plaintiffs Don Gibson, Lauren Criss, John Meiners and Daniel Umpa (the "Missouri Plaintiffs"). WPML requests that the Judicial Panel on Multidistrict Litigation ("the Panel") deny the Motion because the Missouri Plaintiffs have not met their heavy burden of showing that these cases, and especially not *Spring Way*, should be centralized, let alone transferred to the Western District of Missouri.

**INTRODUCTION**

As an initial matter, the Missouri Plaintiffs have not shown that centralization is necessary or that transfer is appropriate when considering "that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407 ("Section 1407"). Because there are few overlapping defendants and many individual issues of fact, among the cases at issue here, there are far better alternatives than centralization. And, the *Spring Way* case is especially uniquely situated because (i) none of the remaining five defendants operate outside of Western Pennsylvania or are named defendants in any other lawsuit, (ii) WPML is a member of the small minority of non-NAR controlled MLSs[3] and does not adopt NAR rules including the broker-buyer rule at issue here and had no role

---

[1] Two of the named defendants, NRT Philadelphia LLC (d/b/a Coldwell Banker Realty) and PPSIR (d/b/a Piatt Sotheby's International Realty) were voluntarily dismissed by plaintiffs.

[2] *SPRING WAY CENTER, LLC et al v. WEST PENN MULTI-LIST, INC. et al,* Docket No. 2:23-cv-02061 (W.D. Pa., Dec 4, 2023).

[3] For example, in its opposition to the Missouri Plaintiffs' motion, NAR discusses communications sent to its members regarding the pending antitrust cases. WPML, as an MLS not affiliated with NAR, did not receive this communication.

whatsoever in drafting that rule, and (iii) WPML maintains its own rules that are materially distinct in the context of plaintiffs' claims.

Because centralization will not ultimately promote convenience and efficiency for the court, parties and witnesses, the Panel should deny the Missouri Plaintiffs' bid to centralize and transfer the nine cases they have tagged for inclusion here. Those nine cases, and especially *Spring Way*, concern more than 100 unique defendants and a wide range of disparate facts, and none of the cases filed outside of Missouri have any nexus to that venue. Alternatively, if the Panel decides to transfer and centralize some of the pending cases into a Multi-District Litigation ("MDL") action, WPML requests that the Panel centralize those actions in the Western District of Pennsylvania.

## ARGUMENT

### I. CENTRALIZATION IS NOT WARRANTED OR NECESSARY.

#### A. Numerous disparate facts and defendants would create inefficiency and weighs against consolidation.

The Missouri Plaintiffs request for consolidation of nine cases is unwarranted, particularly where, as here, there are a large number of diverse defendants named in these nine actions. "Where only a minimal number of actions are involved, the proponent of centralization bears a heavier burden to demonstrate that centralization is appropriate." *In re Nelnet Servicing, LLC, Customer Data Security Breach Litig.*, 684 F. Supp. 3d 1377, 1378 (J.P.M.L. 2022). Nine pending actions is considered "a minimal number of actions." *See In re Proton-Pump Inhibitor Prods. Liability Litig.*, 273 F. Supp. 3d 1360, 1362 (J.P.M.L. 2017) ("[A]lthough plaintiffs almost guarantee that the number of involved actions will increase by the hundreds if not thousands, the Section 1407 motion presently encompasses *just* fifteen cases and 24 tag-alongs.") (emphasis added); *see also*

*In re Invokana (Canaglifozin) Prods. Liability Litig.*, 233 F. Supp. 3d 1345, 1348 (J.P.M.L. 2016) (finding that 18 related cases did not require consolidation).

Moreover, the cases the Missouri Plaintiffs seek to consolidate name more than 100 unique defendants, the majority of which are not named in more than one case and only a handful of which are named in more than two cases. The defendants are not substantially similar in function or structure either: they include real estate brokerages, trade associations, multiple listing services and individual defendants. These parties' relationships with the plaintiffs and proposed classes, and other defendants and alleged unnamed co-conspirators, will necessitate individualized fact intensive inquiries, schedules and discovery plans.

In circumstances like these, the Panel regularly declines to centralize because "[t]he variance in named defendants virtually ensures that a significant amount of the discovery will be defendant-specific." *In re Cordarone (Amiodarone Hydrochloride) Mktg., Sales Pracs. and Prods. Liability Litig.*, 190 F. Supp. 3d 1346, 1347 (J.P.M.L. 2016).[4] *Cordarone* is analogous and instructive. There, as here, the motion for transfer and centralization implicated nine actions pending in seven districts, the named defendants "var[ied] widely" among the cases, and the pending actions each involved similar allegations. *See Cordarone*, 190 F. Supp. 3d at 1346–47. The Panel concluded that "[g]iven the different defendants sued in these actions, centralization appear[ed] unlikely to serve the convenience of a substantial number of parties and their witnesses." *Id.* Similarly, the Panel routinely denies centralization—including of antitrust cases—

[4] *See also In re Shoulder Pain Pump-Chrondrolysis Prod. Liability Litig.*, 571 F. Supp. 2d 1367, 1368 (J.P.M.L. 2008) (denying centralization of thirteen cases pending in seven districts where not all actions involved the same type of defendants and many of the defendants were sued only in a minority of the actions); *In re Proton-Pump*, 273 F. Supp. 3d at 1361–62 ("Although AstraZeneca is sued in most of the actions (14 constituent actions and 23 tag-alongs), P & G is sued in only eight, Takeda in four, and Pfizer in two. Centralization thus appears unlikely to serve the convenience of most, if not all, defendants and their witnesses.").

when, as here, "discovery and other pretrial proceedings concerning the common factual questions would clearly be dwarfed by matters of no interest to the [other parties]." *See In re Gasoline Lessee Dealers Antitrust Litig.*, 479 F. Supp. 578, 580 (J.P.M.L. 1979).

The Missouri Plaintiffs claim that:

1. "each action pleads an identical or similar course of conduct in which residential real estate associations, including [the National Association of Realtors ('NAR')], and various residential real estate brokerage companies agreed to promulgate, follow, and enforce Buyer Broker Compensation Rules," which they allege caused sellers to pay inflated real estate broker commission rates, *see* Dkt. No. 1-1 at 1–2;

2. "the actions share overlapping class definitions, common defendants, and virtually identical claims under the Sherman Act," *id.* at 5, and

3. "each complaint makes the same core allegations about anticompetitive conduct and its effects on the market." *Id.*

But ultimately, these individual cases will focus on different issues, different parties, different proposed classes, different sets of rules between NAR-controlled and non-NAR controlled MLSs (like WPML), different legal claims and different geographic markets. For example, *Gibson*, *Phillips*, and *Umpa* propose nationwide classes, whereas *Spring Way* (the only case in which WPML and the other remaining defendants are named) proposes a class limited to Pennsylvania plaintiffs and defendants. *QJ Team* and *Martin* also propose classes confined to different individual states; and *March* and *Grace* propose classes confined to even smaller regions (Manhattan and the Bay Area). *March*, *Phillips*, *Grace*, *QJ Team* and *Martin* also include state law claims that cannot be applied to parties in any of the other cases. Because the relevant markets, as well as the services offered different types of defendants, vary from case to case, there will almost certainly be a need for individual and differing expert reports and discovery between cases here. And, given the diverse factual issues and allegations, a single discovery plan would be near impossible to negotiate and administer because "significant localized intervening causation issues are expected to be at play." *In re Yellow Brass Plumbing Component Prods. Liab. Litig.*, 844 F.

Supp. 2d 1377, 1378–79 (J.P.M.L. 2012). This is especially true where factual distinctions implicate key issues, such as whether defendants were involved in drafting or have adopted NAR rules (which WPML was not and has not).

In circumstances like these, centralization will only prolong pretrial proceedings through the inevitable need for separate discovery tracks. *See In re Invokana*, 233 F. Supp. 3d at 1348. There is simply no compelling reason to consolidate multiple actions in one court when discovery in one case is largely irrelevant to the majority of parties in others.

**B. If the Panel decides to centralize and transfer some cases, the *Spring Way* case should not be included in that order.**

In the event the Panel does decide to consolidate and transfer certain cases, that order should not include *Spring Way*, the only case in which WPML and the other Pennsylvania defendants are named. As a threshold matter, the *Spring Way* dispute is one between Pennsylvania-based parties and about conduct that took place in Pennsylvania and affected only localized markets.

There are numerous other facts and circumstances that distinguish the *Spring Way* case from other pending cases and warrant separate adjudication as well. For example, WPML has *an entirely different set of broker-buyer compensation rules* than NAR. *See* West Penn Multi-List, Inc. Rules and Regulations ("WPML Rules"), available at https://www.westpennmls.com/wp-content/uploads/RR-Cover-Page-TOC-2-23-2022.pdf. WPML is not affiliated with NAR whatsoever and had no role in drafting the buyer-broker compensation rule at the heart of the majority of underlying complaints (and plaintiffs do not allege otherwise). While the *Spring Way* plaintiffs do suggest in passing that WPML's rules "flow from" or are "similar to" the NAR rules, they provide no examples of those supposed similarities. In fact, there are numerous differences between WPML's rules and policies and NAR's. For example:

- NAR-controlled MLSs must conform their governing documents to the mandatory MLS policies established by the NAR Board of Directors to ensure continued status as member boards and to ensure coverage under the master professional liability insurance program. *See* NAR Model MLS Rules ("NAR Rules")[5] at iii. As an independent MLS, WPML is not required to conform to those governing documents and is not covered under the master insurance program. *See generally* WPML Rules.

- The right to participate in NAR-controlled MLSs is available only to RealtoRs® or firms comprised of RealtoRs® subject to their agreement to abide by the MLS rules or regulations, agreement to arbitrate, and payment of any MLS dues, fees and charges. *See* NAR Rules at 5. WPML has no such rule. *See generally* WPML Rules.

- NAR-controlled associations and MLSs must adopt amendments to NAR rules and policies within 60 days from their effective date. *See* NAR Rules at page 5. WPML is not affiliated with NAR and does not adopt NAR amendments. *See generally* WPML Rules.

- The model NAR rules state that NAR MLSs "establish a means of extending blanket unilateral offer[s] of compensation;" NAR Rules at 162, whereas WPML Rules do not address blanket unilateral compensation and allow zero compensation to the broker, WPML Rule 3.5.

Moreover, as the *Spring Way* Plaintiffs recognize in their Complaint, WPML is prohibited from adopting or enforcing rules that (1) require brokers to comply with the MLS form contract and submit copies of their listing contracts to the MLS, (2) discourage brokers and home sellers from contracting for services for terms of less than a year or (3) deny, restrict or interfere with the ability of [WPML] Subscribers to enter into Exclusive Agency Listings or other lawful listing agreements with the sellers of properties, or "collecting and retaining Subscriber listing agreements." *See In the Matter of West Penn Multi-List, Inc.,* https://www.ftc.gov/legal-library/browse/cases-proceedings/081-0167-west-penn-multi-list-inc-corporation-matter; Spring Way Complaint ¶ 56.

---

[5] Available at https://cdn.nar.realtor/sites/default/files/documents/pdf-hmlp-handbook-on-multiple-listing-policy-2024.pdf?_gl=1*syh0sz*_gcl_au*MTQwODkxMDEzLjE3MDYxMzg1OTA.

Accordingly, WPML accepts its listing agreement, the Pennsylvania Association of Realtors agreement or any other listing agreement a broker wants to use. WPML's listing agreement does not insist on the payment of the buyer's commission; brokers are free to negotiate that between them. WPML cannot and does not track or keep that data or even see the listing agreement after it is completed. *Id.;* WPML Rule 3.5. And, unlike the NAR controlled MLSs, WPML does not get involved in any commission disputes. *See* WPML Rule 9.2. For all of these reasons, *Spring Way* should not be consolidated with other cases that do not concern similar facts, rules, policies and circumstances because it would create inefficiency, and individualized factual inquiries would overwhelm common ones.

**C. Coordination is a better solution than centralization.**

It is well-settled that "centralization under Section 1407 should be the last solution after considered review of all other options." *In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011); *In re Gerber Probiotic Prods. Mktg. & Sales Pracs. Litig.*, 899 F. Supp. 2d 1378, 1379 (J.P.M.L. 2012) ("The Panel has often stated that centralization under Section 1407 'should be the last solution after considered review of all other options.'").

For example, the Panel regularly denies motions to centralize in favor of ordering informal coordination. *See, e.g., In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.*, 446 F. Supp. 242 (J.P.M.L. 1978). Such coordination is especially reasonable when, as here, there are a relatively small number of actions, several parties support informal coordination and counsel overlap between the actions. *See In re SFPP, L.P. R.R. Prop. Rights Litig.*, 121 F. Supp. 3d 1360, 1361 (J.P.M.L. 2015); *In re Hotel Indus. Sex Trafficking Litig.*, 433 F. Supp. 3d 1353, 1356–57 (J.P.M.L. 2020) (finding that coordination of 21 cases in 12 districts is practicable where defendants support informal coordination); *In re Credit Suisse VelocityShares Daily Inverse VIX*

*Short Term Exch. Traded Notes Sec. Litig.*, 326 F. Supp. 3d 1379, 1381 (J.P.M.L. Aug. 1, 2018) ("Given the minimal number of involved counsel and actions, informal coordination of discovery and pretrial motions is practicable and preferable to centralization."). Here, there are several overlapping plaintiffs' counsel, making coordination quite feasible. The *Gibson* plaintiffs' counsel also represent the *Burnett* plaintiffs, and the *Umpa* plaintiffs' counsel also represent the *Moehrl* plaintiffs. They are well-positioned to coordinate informally.

These cases can also be consolidated on a more localized basis. For example, the two cases pending in the Eastern District of Texas are before the same judge, propose virtually identical classes, allege the same causes of action, name 30 of the same defendants and are brought by the same counsel. Likewise, *Umpa* and *Gibson* are both pending in the Western District of Missouri before the same judge and include almost identical proposed nationwide classes and allegations. Each of those actions can be consolidated with the others in the same district without sweeping in localized disputes from other parts of the country that include state law claims and different sets of facts.

## II. IF THE PANEL CHOOSES TO CENTRALIZE IT SHOULD SEND THE CONSOLIDATED CASES TO THE WESTERN DISTRICT OF PENNSYLVANIA.

When selecting a transferee district, the Panel considers several factors, including caseload, experience and convenience of the parties, witnesses and counsel. If the Panel decides to grant the Motion and centralize all cases, the Western District of Pennsylvania would be the most appropriate venue among the venues where the cases are currently pending. The Panel should, however, deny the Missouri Plaintiffs' request to transfer the cases to the Western District of Missouri.

**A. The Western District of Pennsylvania is best positioned to handle the MDL.**

***1. The Western District of Pennsylvania has ample capacity.***

The Western District of Pennsylvania and Judge Christy Criswell Wiegand, before whom the *Spring Way* case is pending, are uniquely positioned to handle this MDL due to docket statistics, accessibility and amenities and proximity to the relevant facts and witnesses. The Western District of Pennsylvania also has a below-average number of pending cases and weighted filings and is ranked the ninth fastest for average time from filing to disposition.

Judge Wiegand is currently not handling any other MDL actions and has a light civil caseload, and is therefore well positioned to give a large, complex and widely varied MDL the necessary attention. *See* Civil Cases in District Court (through June 2023), Judge Information Center, http://tracfed.syr.edu/judges/interp/civjdglist.html?tracdecor=1. Caseload is an important consideration in choosing the transferee judge. *See In re Vonage Mktg. & Sales Practices Litig.*, 505 F. Supp. 2d 1375, 1377 (J.P.M.L. 2007) (noting that the transferee judge "has the time" to efficiently manage the litigation).

And even if the Panel does not choose to assign this matter to Judge Wiegand, the Western District of Pennsylvania has the capacity to handle this MDL expeditiously. The Western District of Pennsylvania has only 402 pending cases per judge, compared to the national average of more than 1,000.[6] The Western District of Pennsylvania also has ten judges[7]—as opposed to just six in the Western District of Missouri.[8] The Western District of Pennsylvania also resolves cases quickly: only 5.9 months on average as opposed to the national mean of more than 8. *See id.*

---

[6] *See* United States District Courts – National Judicial Caseload Profile, https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0930.2023.pdf.

[7] https://www.pawd.uscourts.gov/judges-information.

[8] https://www.mow.uscourts.gov/district/judges.

### *2. The Western District of Pennsylvania has the requisite experience.*

In addition to ample capacity, the Western District of Pennsylvania judges have the requisite antitrust experience to handle a complex MDL like this one. *See, e.g., In re Insurance Brokerage Antitrust Litigation*, 360 F. Supp. 2d 1371, 1373 (J.P.M.L. 2005) (finding transferee district appropriate because the "district is equipped with the resources that this complex antitrust docket is likely to require"). That is particularly important where, as here, the cases involve extremely complex issues of antitrust law, the answers to which will have important nationwide ramifications for the economy.

More broadly, the Western District of Pennsylvania and the Third Circuit have longstanding and considerable experience with large and complex antitrust MDLs, resulting in a body of well-developed case law. For example, *In Re Asbestos Products Liability Litigation*, MDL No. 875 (E.D. Pa.), was within the Third Circuit, and the largest current antitrust MDL in the country is being handled within the Third Circuit. *See In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.). Judge Hardy in the Western District of Pennsylvania is currently handling an antitrust MDL as well, *In re Diisocyanates Antitrust Litigation*, MDL No. 2862, and the Western District of Pennsylvania has handled major MDLs in the past, such as *In Re Flat Glass Antitrust Litigation*, MDL No. 1200.

Judge Wiegand started her legal career as an antitrust attorney and thus has familiarity with the complex legal issues present in these cases.[9] She previously practiced antitrust law and clerked in the Third Circuit. She also served as an Assistant United States Attorney for the Western District of Pennsylvania, where she was Deputy Chief of the Civil Division and in the Criminal Division's

[9] *Questionnaire for Judicial Nominees*, United States Senate Committee on the Judiciary, https://www.judiciary.senate.gov/imo/media/doc/Christy%20Wiegand%20SJQ%20-%20PUBLIC.pdf.

Major Crimes Unit and litigated hundreds of civil cases, including highly complex cases. Judge Wiegand has not yet presided over an MDL, and the Panel often selects transferee judges who are well-qualified but have not yet handled MDL proceedings. *See, e.g.*, *In re Erie COVID-19 Bus. Interruption Prot. Ins. Litig.*, 509 F. Supp. 3d 1370, 1374 (J.P.M.L. 2020) (transferring case to the Western District of Pennsylvania and reasoning that "[w]e are confident that the Honorable Mark R. Hornak, who has not yet had the opportunity to preside over an MDL, will steer this litigation on a prudent and expeditious course"). These considerations make the Western District of Pennsylvania an especially strong choice for a transferee district.

***3. Pittsburgh is a convenient venue for witnesses and parties.***

Finally, Pittsburgh, where Judge Wiegand and the Western District of Pennsylvania are located, is a central and convenient venue for the MDL. Several defendants, including WPML, Hanna Holdings, Pirain Enterprises, Inc., MHDM LLC, SF, LLC and Realty One Group Horizon, LLC are headquartered in the Pittsburgh area and incorporated in Pennsylvania. Several other defendants are headquartered or incorporated nearby, including in Delaware, New Jersey and New York. For example, Weichert Realtors is headquartered in New Jersey (also in the Third Circuit), and Compass, Inc., and Christie's International Real Estate Group, LLC are headquartered in New York. And many of the defendants are incorporated in Delaware, including RE/MAX Holdings, Inc., Compass, Inc., eXp World Holdings, Inc., HomeServices of America, Inc. and Redfin Corporation.

The Panel has previously transferred MDL cases to the Western District of Pennsylvania for this precise reason. *In re Diisocyanates Antitrust Litig.*, 341 F. Supp. 3d 1376, 1378 (J.P.M.L. 2018) ("[o]ne defendant has its U.S. headquarters in this district, and five other defendants have their headquarters in adjacent or nearby districts. Relevant documents and witnesses therefore are likely to be located in or close to this area."). Pittsburgh is also central to the seven districts in

which the cases tagged for transfer here were filed, most of which are in the mid-east coast (Western District of Pennsylvania, Northern District of Georgia, Southern District of New York and District of South Carolina). Finally, Pittsburgh is easily accessible for witnesses, counsel and parties alike. It has an international airport located 20 minutes from the courthouse with 60 nonstop destinations and 135 daily departures.[10] Therefore, if the Panel decides to grant the Motion and centralize all cases, the Western District of Pennsylvania is a reasonable location.

**B. The Panel should not transfer the cases to the Western District of Missouri.**

As the Missouri Plaintiffs state, "Judge Bough ruled on motions to dismiss, a motion for class certification, motions for summary judgment and *Daubert*, and dozens of discovery and pretrial motions" in *Burnett*. Dkt. No. 1-1 at 10. Each of those rulings favored the plaintiffs.[11] It is no wonder they now characterize Missouri as the best suited venue for this MDL; but in fact, it is not.

The Missouri Plaintiffs also characterize *Gibson,* currently before Judge Bough in the Western District of Missouri, as the "first-filed action proposed for consolidation." *See* Dkt. No. 1-1 at 2. But the nine cases they tagged for consolidation were cherry-picked. If the Missouri

[10] *See* Pittsburgh International Airport, https://flypittsburgh.com/new-and-resumed-flights.

[11] *See Burnett*, Dkt. No. 131 (denying defendants' motions to dismiss); *id*., Dkt. No. 741 (granting plaintiffs' motion for class certification); *id*., Dkt. Nos. 1017, 1018 (denying defendants' motions to exclude the merits testimony of plaintiffs' retained experts); *id*., Dkt. No. 1019 (denying defendants' motions for summary judgment). "Seeking a uniform legal determination, though, generally is not a sufficient basis for centralization." *In re SFPP, L.P., R.R. Prop. Rights Litig.*, 121 F. Supp. 3d 1360, 1361 (J.P.M.L. 2015). "Common legal questions are insufficient to satisfy Section 1407's requirement of common *factual* questions." *In re ABA Law Sch. Accreditation Litig.*, 325 F. Supp. 3d 1377, 1378 (J.P.M.L. 2018) ("Although plaintiffs seek efficiencies through centralized treatment of disputed legal questions, '[m]erely to avoid [different] federal courts having to decide the same issue is, by itself, usually not sufficient to justify Section 1407 centralization.'").

Plaintiffs had included all pending pre-trial cases alleging antitrust violations relating to NAR rules, *Gibson* is not the first-filed action.

The Western District of Missouri already has four pending MDLs across its eight judges, including one before Judge Bough. Most of the parties, witnesses and evidence are not located in or near the Western District of Missouri. And, given the likelihood that that court would rule consistently with its previous decisions, transferring the cases there would prejudice the dozens of other defendants, including WPML, who have had no opportunity to brief or argue the issues already decided in *Burnett*.

## CONCLUSION

For all of the reasons stated herein, WPML requests ask that the Panel exclude the *Spring Way* case from any consolidation or transfer order, because it is a local dispute concerning a separate set of rules. Consolidation would only lead to unnecessary administrative burden and delay for all parties, but especially those in *Spring Way,* which is substantially dissimilar to other pending cases. If the Panel nonetheless decides to centralize and transfer some of the pending cases, the transferee district should be the Western District of Pennsylvania.

Dated: January 26, 2024

*/s/ Wendelynne J. Newton*
Wendelynne J. Newton
Buchanan Ingersoll & Rooney PC
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219-4413
Telephone (412)-562-8932
Facsimile (412) 562-1041
wendelynne.newton@bipc.com