BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| **IN RE: REAL ESTATE COMMISSION ANTITRUST LITIGATION** | MDL No. 3100 |

**DEFENDANT REDFIN CORPORATION'S RESPONSE TO MOTION
FOR TRANSFER AND CENTRALIZATION PURSUANT TO 28 U.S.C. § 1407**

Defendant Redfin Corporation ("Redfin") agrees that consolidation is appropriate. Plaintiffs' motion, however, does not go far enough. To achieve maximum efficiency, all related cases, including those not raised in Plaintiffs' Motion, should be centralized for pretrial proceedings and transferred to the Northern District of Illinois.

Plaintiffs' Motion seeks centralization of nine cases brought by home sellers challenging buyer-broker commissions, including three nationwide classes alleging violations of Section 1 of the Sherman Act. But Plaintiffs' motion is underinclusive. There are several additional cases involving overlapping claims and questions of fact for which centralization is not presently being sought. Critically, Plaintiffs' Motion does not seek centralization of two cases brought on behalf of nationwide classes of home buyers alleging violations of Section 1 of the Sherman Act as well as various state-law claims. Permitting a subset of similar cases to proceed in parallel undermines the efficiencies and benefits of an MDL. Absent complete centralization, Redfin, for example, would still be subject to duplicative discovery, and the risk of inconsistent pretrial rulings would remain. Centralization is the only feasible way to ensure that these cases proceed efficiently.

Complete centralization highlights that the Northern District of Illinois is the most appropriate transferee district. The Northern District of Illinois is the only court with experience presiding over both the home seller and home buyer cases. Judge Andrea Wood, for example,

currently presides over both the first-filed home seller case (*Moehrl*) *and* home buyer case (*Batton I*). The Northern District of Illinois is also a more convenient location for the parties and for discovery.

Accordingly, all related cases should be centralized and transferred to the Northern District of Illinois for pretrial proceedings.

## BACKGROUND

On December 27, 2023, the *Gibson and Umpa* Plaintiffs[1] jointly moved under 28 U.S.C. § 1407 to consolidate nine related actions (collectively, "home seller cases"). Those actions "all allege antitrust violations relating to rules adopted by the NAR and Multiple Listing Services (MLSs) that govern the conduct of residential real estate brokers and agents nationwide." ECF No. 1-1 at 1. The plaintiffs in each related action "allege that these rules (collectively referred to as 'Buyer Broker Compensation Rules') require home sellers to make blanket unilateral offers of compensation to cooperating brokers when listing a residential property for sale on an MLS and restrict the negotiation of such offers." *Id.*

Plaintiffs' Motion, however, only seeks consolidation of a subset of cases brought by home sellers and omits any mention of the home buyer cases. Specifically, the Motion omits two lawsuits pending in the Northern District of Illinois that were brought by home buyers: *Batton et al.* v. *Nat'l Ass'n of Realtors et al.*, No. 1:21-cv-430-ARW (N.D. Ill.) ("*Batton I*") and *Batton et al.* v. *Compass et al.*, No. 1:23-cv-15618-EEC (N.D. Ill.) ("*Batton II*") (collectively, the "*Batton*" or "home buyer" cases).[2] The *Batton* plaintiffs are "home buyers who purchased their homes on

---

[1] Plaintiffs in *Gibson* v. *Nat'l Ass'n of Realtors*, Case No. 4:23-cv-788-SRB (W.D. Mo.) and *Umpa* v. *Nat'l Ass'n of Realtors*, Case No. 4:23-cv-945 (W.D. Mo.).

[2] After Plaintiffs filed their motion, another home buyer case was filed in the Northern District of Illinois. *Tuccori* v. *At World Props., Inc.*, No. 24-cv-150. The matter is currently pending before Judge Lindsay C. Jenkins. Redfin is not a defendant in *Tuccori*.

2

MLSs affiliated with and governed by NAR." *Batton I* Compl. ¶ 4; *Batton II* Compl. ¶ 4. Those plaintiffs challenge nearly the same rules and practices as the plaintiffs in the home seller cases. *Compare*, *e.g.*, *Batton II* Compl. ¶¶ 8-12, *with Gibson* Compl. ¶¶ 3, 7-12 and *Umpa* Compl. ¶¶ 3, 6. The complaints also share many of the same core allegations, including defendants' participation in a conspiracy. *Compare*, *e.g.*, *Batton II* Compl. ¶¶ 66-85, 110-16, *with Umpa* Compl. ¶¶ 67-100, 111-39. Therefore, centralization is warranted not only because of the significant overlap between claims, as explained below, but also to reduce duplicative discovery, conserve the parties' and courts' resources, and eliminate the risk of inconsistent rulings across the country.

## DISCUSSION

**I.     The Panel Should Centralize All Related Cases.**

Under 28 U.S.C. § 1407(a), the Panel can transfer actions "involving one or more common questions of fact that are pending in different districts . . . for coordinated or consolidated pretrial proceedings." Such consolidation is appropriate when the Panel determines that the transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." *Id.* Redfin agrees with Plaintiffs that these factors are satisfied here, making centralization of all cases brought by home sellers appropriate.[3] In addition, centralization should include *Batton I and Batton II*.

---

[3]     While Redfin agrees that the cases in Plaintiffs' Motion should be centralized, it also contends that centralization should include all cases brought by home sellers. This includes all related cases brought by home sellers before and subsequent to Plaintiffs' Motion. For example, *Fierro et al.* v. *Nat'l Ass'n of Realtors et al.*, No. 2:24-cv-00449 (C.D. Cal. Jan. 17, 2024); *Whaley* v. *Nat'l Ass'n of Realtors et al.*, No. 2:24-cv-00105 (D. Nev. Jan. 15, 2024); *Nosalek et al.* v. *MLS Prop. Info. Network, Inc. et al.*, No. 1:20-cv-12244-PBS (D. Mass. Mar. 1, 2022); *Masiello* v. *Arizona Ass'n of Realtors*, No. 2:24-cv-00045-JZB (D. Ariz. Jan. 5, 2024); *Moehrl et al.* v. *Nat'l Ass'n of Realtors et al.*, No. 1:19-cv-01610 and No. 1:19-cv-2544 (N.D. Ill. June 14, 2019); *Friedman* v. *The Real Estate Board of N.Y. et al.*, No. 1:24-cv-00405 (S.D.N.Y. Jan. 18, 2024); and *Willsim Latham, LLC* v. *MetroList Servs., Inc. et al.*, No. 2:24-cv-00224 (E.D. Cal. Jan. 18, 2024). While Redfin is not a defendant in these cases, it supports consolidation for the reasons articulated in Plaintiffs' Motion.

A. **The Home-Buyer Cases Involve Common Questions of Fact, Claims, and Defendants.**

The Home-Buyer cases should be consolidated with the home seller cases because they involve common questions of fact, claims, and defendants.

The *Batton* cases share common questions of fact with the home seller cases. For example, both the home seller and *Batton* cases involve the question of "whether defendants entered into an agreement or conspiracy based on the Buyer Broker Commission Rules." ECF No. 1-1 at 7; *Batton I* Compl. ¶ 141; *Batton II* Compl. ¶ 144. Additionally, the home seller and *Batton* cases involve questions of fact regarding "whether defendants engage in or promote steering." ECF No. 1-1 at 8; *Batton I*, Compl. ¶¶ 71, 76; *Batton II* Compl. ¶¶ 74, 76, 79, and "whether the effect of the agreement was to inflate total commissions and buyer broker commissions." ECF No. 1-1 at 8; *Batton I*, Compl. ¶ 141; *Batton II* Compl. ¶ 144.

The *Batton* cases and home seller cases all allege a Section 1 conspiracy among brokerages and real state associations to inflate buyer broker commissions. *Compare Batton I* Compl. ¶¶ 12, 14 (stating "Defendants' conspiracy enables brokers to raise, fix, and maintain buyer-agent compensation at artificially high levels" and "Defendants' agreements individually and collectively unreasonably restrain trade in violation of Section 1 of the Sherman Act") and *Batton II* Compl. ¶¶ 12, 14 (same), *with Gibson* Compl. ¶¶ 166-174 ("Defendants engaged in a continuing contract, combination, or conspiracy to unreasonably restrain interstate trade and commerce in violation of Section 1 of the Sherman Act . . . the conspiracy . . . consists of a continuing agreement among Defendants and Defendants' co-conspirators to require sellers of residential property to make inflated payments to the buyer broker.") and *Umpa* Compl. ¶ 16 ("Despite their diminishing role, buyer-brokers continue to receive the same artificially elevated percentage of the sales price due to Defendants' conspiracy."); *see also* ECF No. 1-1 at 6 ("[e]ach

4

action asserts claims under the Sherman Act based on an agreement among brokerages and real estate associations requiring home sellers to pay buyer broker commissions.").

There is also substantial overlap between the defendants in the *Batton* cases and home seller cases. For instance, NAR, which is a named defendant in *Batton I*, is also a named defendant in approximately 8 home seller actions.[4] ECF No. 1-1 at 6. Keller Williams Realty, Inc., another named defendant in *Batton I*, is also a named defendant in *Nosalek*, *Moehrl*, and *Burton*. HomeServices of America, Inc., BHH Affiliates, LLC, the Long & Foster Companies, Inc., and HSF Affiliates, LLC, named defendants in *Batton I*, are defendants in *Umpa* as well. Additionally, Compass, Redfin, eXp World Holdings, Weichert Realtors, United Real Estate, Howard Hanna Real Estate, and Douglas Elliman—all of the defendants named in *Batton II*—are named as defendants in *Gibson* and *Umpa*.[5]

Given the overlapping claims, questions of fact, and defendants, the *Batton* cases should be centralized with the home seller cases. Cases asserting "substantially identical claims under the Sherman Act" are properly centralized and transferred pursuant to section 1407. *See In re Deere & Co. Repair Servs. Antitrust Litig.*, 607 F. Supp. 3d 1350, 1351 (J.P.M.L. 2022); *see also In re Generic Drug Pricing Antitrust Litig.*, 227 F. Supp. 3d 1402, 1403 (J.P.M.L. 2016) (centralizing antitrust cases involving common questions of fact where plaintiffs "uniformly" alleged effectuation of conspiracy "through joint activities undertaken through trade associations").

---

[4] In addition to *Gibson* and *Umpa*, NAR is a named defendant in *Grace* v. *Nat'l Ass'n of Realtors et al.*, No. 4:23-cv-06352 (N.D. Cal. Dec. 8, 2023), *March* v. *The Real Estate Board of N.Y. et al.*, 1:23-cv-09995 (S.D.N.Y. Nov. 13, 2023), *1925 Hooper LLC* v. *Nat'l Ass'n of Realtors et al.*, No. 1:23-cv-05392 (N.D. Ga. Dec. 6, 2023), *Burton* v. *Nat'l Ass'n of Realtors et al.*, No. 7:23-cv-05666 (D.S.C. Nov. 6, 2023), *Whaley* v. *Nat'l Ass'n of Realtors et al.*, No. 2:24-cv-00105 (D. Nev. Jan. 15, 2024), and *Fierro et al.* v. *Nat'l Ass'n of Realtors et al.*, No. 2:24-cv-00449 (C.D. Cal. Jan. 17, 2024).

[5] The *Batton II* defendants are also named in other various home seller cases. For example, Redfin and eXp World Holdings are defendants in *1925 Hooper*, and eXp World Holdings and Compass are defendants in *Grace* and *Fierro*.

That the *Batton* cases are brought on behalf of home buyers does not weigh against centralization. "Transfer under Section 1407 does not require a complete identity of common factual issues as a prerequisite to transfer, and the presence of additional facts or differing legal theories is not significant when the actions arise from a common factual core." *In re Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d 1373, 1376 (J.P.M.L. 2012); *In re Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d 1388, 1390 (J.P.M.L. 2014) (same). Where, as here, the actions were brought by different groups of plaintiffs but "arise from a common factual core," specifically NAR's rules and their effect on home buyers and sellers, centralization is appropriate. *In re Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d at 1376.

Nor does the fact that the *Batton* claims may raise issues pertaining to "indirect purchasers" weigh against centralization. "The Panel has frequently centralized antitrust cases involving direct and indirect purchaser claims that arise from common factual allegations, particularly where multiple related actions are pending." *In re Skelaxin (Metaxalone) Antitrust Litig.*, 856 F. Supp. 2d 1350, 1351 (J.P.M.L. 2012); *see also In re Ranbaxy Generic Drug Application Antitrust Litig.*, 355 F. Supp. 3d 1382, 1383 (J.P.M.L. 2019) ("we often centralize the claims of direct and indirect purchasers in a single MDL, so long as they arise from a common factual core, as the claims in these actions clearly do.").

**B.     Centralization Would Be Efficient and Would Reduce the Risk of Inconsistent Rulings.**

Centralization is warranted when it "will promote the just and efficient conduct of the litigation." *In re Digital Advertising Antitrust Litig.*, 555 F. Supp. 3d 1372, 1375 (J.P.M.L. 2021). Centralization is appropriate, for example, when the cases will "require common discovery" from defendants. *See id.* Because the discovery requests in the related actions here will be substantially "common," coordinating discovery schedules would allow parties to reduce duplicative discovery

6

and to preserve their own—as well as judicial—resources. *Id.* at 1375-76; *In re Deere & Co. Repair Servs. Antitrust Litig.*, 607 F. Supp. 3d at 1351.

Moreover, Redfin agrees with Plaintiffs that centralization would reduce the risk of inconsistent rulings across all the actions. ECF No. 1-1 at 9; *In re Digital Advertising Antitrust Litig.*, 555 F. Supp. 3d at 1375 ("Centralization will promote the just and efficient conduct of the litigation by eliminating duplicative discovery and avoiding the risk of inconsistent rulings on pretrial matters, particularly on discovery disputes, *Daubert* issues, and dispositive motions."). Given the number of cases and parties involved here, the actions are subject to a heightened risk of inconsistent rulings.

## II. The Panel Should Transfer the Cases to the Northern District of Illinois.

Transferring the actions to the Northern District of Illinois will "serve the convenience of the parties and witnesses and promotes the just and efficient conduct of the litigation." *In re Deere & Co. Repair Servs. Antitrust Litig.*, 607 F. Supp. 3d at 1351. The highest percentage of cases are already pending in the Northern District of Illinois, including both the first-filed home seller and home buyer cases. Furthermore, Chicago's centrality—both in terms of its proximity to key parties such as NAR and overall accessibility—makes it the most convenient transferee district for this litigation.

**The presence of two first-filed actions in the Northern District of Illinois supports transfer to that district.** This Panel has previously transferred actions to the district of the "first-filed" action. *In re Broiler Chicken Grower Antitrust Litig.*, 509 F. Supp. 3d 1359, 1362 (J.P.M.L. 2020); *In re Wholesale Grocery Prods. Antitrust Litig.*, 663 F. Supp. 2d 1380, 1381 (J.P.M.L. 2009). Here, the Northern District of Illinois is home to two first-filed actions: *Batton I* (home buyer) and *Moehrl* (home seller). *Moehrl* is also the most procedurally advanced of the home seller cases and Judge Wood has already ruled on a motion to dismiss in *Batton I*. *See In re Ranbaxy*

*Generic Drug Application Antitrust Litig.*, 355 F. Supp. 3d at 1383 (district where the "first-filed and most advanced action" was pending served as the "appropriate transferee district"); *In re Midland Nat'l Life Ins. Co. Annuity Sales Pracs. Litig.*, 484 F. Supp. 2d 1355, 1356 (J.P.M.L. 2007) (transferring to the district with the "more procedurally advanced" action); *In re Plastics Additives Antitrust Litig.*, 374 F. Supp. 2d 1351, 1352 (J.P.M.L. 2005) (transferring to the district where the "first filed and most advanced actions are pending").

**The number of cases already pending in the Northern District of Illinois weighs in favor of transfer.** There are currently four related cases, *Moehrl, Batton I, Batton II*, and *Tuccori* pending in the district—double the number of actions pending in any other single district. *In re Deere & Co. Repair Servs. Antitrust Litig.*, 607 F. Supp. 3d at 1351 (determining that the Northern District of Illinois was the appropriate forum because six of the twelve involved actions were pending in the district); *In re Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d at 1376 (selecting the Northern District of Alabama as the transferee district because seven of the nine related actions were pending there).

**The Northern District of Illinois is also the more convenient transferee court because of its proximity to several defendants.** Several defendants' headquarters, including those of NAR (the central figure in the alleged conspiracies), are located in Chicago. *See, e.g.*, *In re Dealer Mgmt. Sys. Antitrust Litig.*, 291 F. Supp. 3d 1367, 1369 (J.P.M.L. 2018) (selecting "the Northern District of Illinois as transferee district" because one of the defendants was "headquartered in the district, and relevant documents and witnesses thus will be found there"); *In re Diisocyanates Antitrust Litig.*, 341 F. Supp. 3d 1376, 1378 (J.P.M.L. 2018) (basing its determination of the transferee forum on the location of one defendant's U.S. headquarters and the proximity of the remaining defendants' headquarters). In addition to NAR, *Gibson* Compl. ¶ 43; *Batton I* Compl. ¶ 28,

defendant At World Properties, LLC is "incorporated in Illinois with its headquarters in Chicago." *Umpa* Compl. ¶ 39. Close to Chicago is the Minnesota headquarters of defendant HomeServices of America, Inc., *Batton I* Compl. ¶ 30; *Umpa* Compl. ¶ 30, and the Ohio headquarters of defendant ERA Franchise Systems. *1925 Hooper* Compl. ¶ 40. The "essential role NAR has played" in the litigation, ECF No. 1-1 at 5, and the proximity of other defendants favor a transfer to the Northern District of Illinois.

**The Northern District of Illinois in Chicago is the most centrally located district, making it the most convenient for all parties.** Another factor that the Panel considers is whether the proposed transferee district would be convenient for all parties. *See In re Digital Advertising Antitrust Litig.*, 555 F. Supp. 3d at 1375; *In re Deere & Co. Repair Servs. Antitrust Litig.*, 607 F. Supp. 3d at 1351. Again, the facts weigh in favor of transferring the actions to the Northern District of Illinois for convenience. Many relevant "witnesses and documents will be found at" NAR's headquarters in Chicago, including NAR's policies. *In re Deere & Co. Repair Servs. Antitrust Litig.*, 607 F. Supp. 3d at 1351. Additionally, the Northern District of Illinois is accessible to all parties around the country. *In re Dealer Mgmt. Sys. Antitrust Litig.*, 291 F. Supp. 3d at 1369 (selecting "the Northern District of Illinois as transferee district" because it "is a central, readily accessible venue for all parties"); *In re Butterfield Patent Infringement*, 328 F. Supp. 513, 515 (J.P.M.L. 1970) (noting that Chicago is "geographically central"). Two major airports serve the Chicago metropolitan area—O'Hare International and Midway Airport—with O'Hare serving as a national hub that has frequent daily flights to multiple cities across the country.

**The Northern District of Illinois and Judge Wood can ably preside over the centralized action.** [6] The Panel considers the ability of the proposed district and the presiding judge to handle the consolidated cases. *See In re Deere & Co. Repair Servs. Antitrust Litig.*, 607 F. Supp. 3d at 1351. The Northern District of Illinois has experience with multidistrict litigations and, as of January 2024, is handling sixteen such matters. *See MDL Statistics Report – Distribution of Pending MDL Dockets by District*, Jud. Panel on Multidistrict Litig. (Jan. 2, 2024), https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-January-2-2024.pdf.

Centralizing and transferring the actions to Judge Andrea Wood would "ensure streamlined resolution of this litigation to the overall benefit of the parties and the judiciary" because of her familiarity with the "factual and legal issues raised by this litigation," having presided over *Moehrl* and *Batton I*. *In re Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d at 1376; *In re Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d at 1391. Judge Wood does not appear to have had the opportunity to oversee a multidistrict litigation yet, and, because she has ruled on class certification in *Moehrl* and defendants' motion to dismiss in *Batton I*, she is familiar with the facts and law of both the home sellers' and home buyers' cases. Indeed, having presided over both *Moehrl* and *Batton I* means that Judge Wood is the only judge in this litigation who has experience overseeing an action brought by a home buyer and an action brought by a home seller.

Plaintiffs contend that the related actions in this litigation should be centralized before Judge Bough in the Western District of Missouri on account of his experience presiding over the trial in *Burnett* v. *Nat'l Ass'n of Realtors*, No. 19-cv-332 (W.D. Mo.). But that case involved a

---

[6] If, for any reason, Judge Wood is unavailable, the Panel should transfer the case to another judge in the Northern District of Illinois.

discrete Missouri-wide class and the allegations in *Moehrl* with multiple classes including a nationwide settlement class more closely mirror that of this litigation, making Judge Wood better situated to handle this case. In *Moehrl*, the alleged class included home sellers who listed properties on twenty-five MLSs across the country, including in Houston, Tampa, Phoenix, Colorado Springs, Denver, Fort Myers, Baltimore, and Raleigh. *Moehrl* Compl. ¶ 18. In contrast, *Burnett* involved claims related to four MLSs in Missouri. *Burnett* Third Amended Compl. ¶ 29, Dkt. 759.

## CONCLUSION

For the reasons set forth above, Defendant Redfin respectfully requests that the Panel order complete centralization of all of the related actions and transfer them to the Northern District of Illinois.

DATED: January 26, 2024

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By: */s/ William A. Isaacson*
   **WILLIAM A. ISAACSON**

2001 K Street NW
Washington, D.C. 20006-1047
Telephone: (202) 223-7313
Facsimile: (202) 379-4937
wisaacson@paulweiss.com

*Counsel for Defendant Redfin Corporation*