BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| IN RE: Real Estate Commission Antitrust Litigation ) ) ) ) ) ) ) ) | MDL No. 3100 |

### THE *GRACE* AND *WILLSIM* PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION FOR TRANSFER AND CENTRALIZATION PURSUANT TO 28 U.S.C. § 1407

Plaintiffs Christina Grace[1] and Willsim Latham, LLC[2] jointly oppose the Motion for Transfer and Centralization Pursuant to 28 U.S.C. §1407 filed by the *Gibson* and *Umpa* Plaintiffs on December 27, 2023 (Dkt. 1-1) ("Movants"). The *Grace* and *Willsim* cases challenge the legality of rules promulgated by two Multiple Listing Services that operate exclusively in Northern California, are controlled by local realtors and brokers, and are not affiliated with the National Association of Realtors ("NAR"). The NAR is not named as a defendant in either case[3] and the BAREIS MLS and MetroList MLS at issue promulgated their own rules, which are the subject of those cases and are challenged under both federal and state law claims, including the California Cartwright Act and the California Unfair Competition Law.

Given the local nature of the claims, rules, and home sales at issue in the *Grace* and *Willsim* actions, the fact that most of the named parties are located within the Northern and Eastern Districts

---

[1] *Grace v. Bay Area Real Estate Information Services, Inc., et al.*, Case No. 4:23-cv-06352-HSG (N.D. Cal.) (filed Dec. 8, 2023) ("*Grace/BAREIS*").

[2] *Willsim Latham, LLC v. MetroList Services, Inc., et al.*, Case No. 2:24-cv-00244-DB (E.D. Cal.) (filed Jan. 18, 2024) ("*Willsim/MetroList*").

[3] *See Grace*, Dkt. 33 (First Amended Class Action Complaint, listing the NAR as an unnamed co-conspirator) (attached hereto as Exhibit A).

of California, and the undisputed differences among regional MLSs, transfer and centralization of these cases would frustrate, not achieve, the purpose of Section 1407 by inconveniencing the parties and witnesses, creating inefficiencies, and causing unnecessary delay. For the reasons set forth herein, the motion should be denied as to the *Grace* and *Willsim* actions.

## FACTUAL AND PROCEDURAL HISTORY

The history of litigation challenging real estate commissions demonstrates that transfer and centralization of the *Grace* and *Willsim* cases is not necessary or appropriate. The "Background" section of the *Gibson/Umpa* Motion glosses over the procedural and factual history of the *Moehrl* and *Burnett* actions filed by the same counsel in 2019. While Movants discuss those cases briefly (Dkt. 1-1 at 3-4), they do not address the undisputed differences among regional MLSs, especially those that are not that are not exclusively owned by realtor associations affiliated with the NAR, like BAREIS and MetroList. Instead, in describing the actions they seek to centralize, Movants simply state that "[s]ome complaints involve NAR-controlled MLSs, and some involve so-called non-NAR MLSs—though even these complaints discuss the essential role NAR has played in the conspiracy." *Id*. at 5.

In fact, the differences among NAR-controlled MLSs and MLSs such as BAREIS and MetroList was deemed significant enough by counsel for Movants that the claims in the *Moehrl* and *Burnett* cases were limited exclusively to home sales that occurred within certain MLSs (20 "Covered MLSs" in *Moehrl* and four Missouri MLSs in *Burnett*) "controlled by local NAR associations, [with] access to such MLSs [] conditioned on [agreement by brokers] to follow all mandatory rules set forth in NAR's Handbook on Multiple Listing Policy."[4] The universal

---

[4] This same language appeared nearly *verbatim* in both the *Moehrl* and Burnett *complaints*. *See* Consolidated Amended Class Action Complaint (Dkt. 324-6) *Moehrl v. Nat'l Ass'n of Realtors,*

application of the the NAR Rules were the glue that held together these cases involving multiple local and geographically distinct MLSs, allowing them to be adjudicated as multi-MLS class actions.[5] Even when dealing exclusively with multiple NAR-controlled MLSs, there was a concession and understanding in *Moehrl* that "each of the the 20 Covered MLSs is a separate geographic market." *See* "Expert Class Certification Report of Professor Einer Elhauge," Feb. 23, 2022 [corrected Mar. 8, 2022] *Moehrl v. National Ass'n of Realtors, et al.*, Case No. 1:19-cv-01610 (Dkt. 324-6) ("Elhauge Report"), at ¶ 101; *Moehrl v. National Ass'n of Realtors, et al.*, 2023 WL 2683199, **5-7 (Mar. 29, 2023) (class certification order crediting Professor Elhauge's opinion as to market definition, market power, liability, and impact).

The Elhauge Report and the *UMPA* Complaint recognize that there are relatively few non-NAR MLSs in the United States, including BAREIS and MetroList. *See Elhauge Report* at Appx. C; *UMPA* Compl., ¶ 110. Because these MLSs are not bound by the rules of the NAR determining the extent to which the rules adopted and implemented by the BAREIS and MetroList MLSs violate federal and California state antitrust and unfair competition laws will depend on evidence adduced from parties and witnesses predominantly located within those MLS regions.

///

///

///

///

---

1:19-cv-01610-ARW (N.D. Ill. June 6, 2019), ¶ 2; First Amended Class Action Complaint (Dkt. 38), *Burnett v. Nat'l Assn of Realtors*, 4:19-cv-00332-SRB (W.D. Mo. June 21, 2019), ¶ 5.

[5] *Moerhl*, 2023 WL 2683199, *13 (noting that case involves "standardized rules promulgated by the NAR and then adopted by Corporate Defendants, which, in turn, enforce those rules against their affiliated brokers throughout the nation. Plaintiffs' evidence includes Defendants' own policies and representations that reflect how the NAR and Corporate Defendants work together to implement and enforce the MLS Rules, Code of Ethics, and Case Interpretations.").

The local focus of the *Grace* and *Willsim* complaints is clear from the named defendants and the factual allegations, as partially illustrated here:

| *Grace* | *Willsim* |
|---|---|
| Named Defendants:<br><br>Bay Area Real Estate Information Services, Inc.; Marin Association of Realtors; North Bay Association of Realtors; Northern Solano County Association of Realtors, Inc.; Solano Association of Realtors, Inc.; RE/MAX Holdings, Inc.; Anywhere Real Estate Inc.; Vanguard Properties, Inc.; Twin Oaks Real Estate Inc.; Windermere Real Estate Services Company Inc.; Rapisarda & Fox, Inc.; Realty ONE Group, Inc.; Keller Williams Realty, Inc.; Compass, Inc.; and eXp World Holdings, Inc. | Named Defendants:<br><br>MetroList Services, Inc.; Sacramento Association of Realtors, Inc.; Placer County Association of Realtors, Inc.; El Dorado County Association of Realtors; Lodi Association of Realtors; Yolo County Association of Realtors; Central Valley Association of Realtors; Amador County Association of Realtors; Nevada County Association of Realtors, Inc.; Sutter-Yuba Association of Realtors, Inc.; RE/MAX Holdings, Inc.; Anywhere Real Estate Inc.; Keller Williams Realty, Inc.; eXp World Holdings, Inc.; Norcal Gold Inc.; Century 21 Select Real Estate, Inc.; William L. Lyon & Associates, Inc.; Paul M. Zagaris, Inc.; and Guide Real Estate, Inc. |
| Defendant BAREIS MLS is a broker-controlled multiple listing service serving real estate professionals throughout Marin, Sonoma, Napa, Solano and Mendocino counties in Northern California. First Amended Complaint ("FAC"), ¶ 35 | Defendant MetroList Services, Inc. is the second-largest MLS in the State of California. MetroList is headquartered in Sacramento, California and serves the counties of Amador, Butte, Colusa, El Dorado, Merced County, Placer, Nevada, Sacramento, San Joaquin, Stanislaus, Sutter, Yolo, and Yuba. Complaint, ¶ 34 |
| Unlike most MLSs in the United States, BAREIS MLS is not exclusively owned or operated by realtor associations affiliated with the National Association of Realtors ("NAR"). Rather, the Realtor Association Defendants share control of BAREIS MLS with its broker members, who are responsible for the adoption, implementation, and enforcement of the BAREIS MLS rules. FAC, ¶ 6 | Unlike most MLSs in the United States, MetroList is not exclusively owned or operated by realtor associations affiliated with the National Association of Realtors ("NAR"); rather, it is owned by local realtor associations, and California Real Estate Brokers, Inc. Complaint, ¶ 6 |
| The Brokerage Defendants effectuated the conspiracy through their control of the | The Brokerage Defendants' local franchisees and their agents participate in and |

| | |
|---|---|
| BAREIS Board of Directors and the Realtor Association Defendants. The Brokerage Defendants had numerous representatives on the BAREIS Board of Directors, the BAREIS committees, and the boards and executive teams of the Realtor Association Defendants. FAC, ¶ 23 | implement the conspiracy by serving on the MetroList Board of Directors, MetroList committees, and boards of the Realtor Association Defendants which adopt, implement, and enforce compliance with the Anticompetitive Broker Rules. Complaint, ¶ 23 |

## ARGUMENT

The Panel has "emphasized that 'centralization under Section 1407 should be the last solution after considered review of all other options.'" *In re: Alteryx, Inc., Customer Data Sec. Breach Litig.*, 291 F. Supp. 3d 1377, 1378 (J.P.M.L. 2018) (quoting *In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1377-78 (J.P.M.L. 2011)). Where informal coordination and cooperation between the parties is available, those options should be favored over § 1407 centralization. *See*, *e.g.*, *In re Hudson's Bay Co. Customer Data Sec. Breach Litig.*, 326 F. Supp. 3d 1372, 1373 (J.P.M.L. 2018); *In re Chiropractic Antitrust Litigation*, 483 F. Supp. 811, 813 (1980) (denying motion to transfer where "the parties may request from the appropriate district courts that discovery completed in any action and relevant to one or more of the other actions be made applicable to those actions; or the parties could seek to agree upon a stipulation that any discovery relevant to more than one action may be used in all those actions"); *In re Ecuadorian Oil Concession Litigation*, 487 F. Supp. 1364, 1368 (J.P.M.L. 1980) (denying motion to transfer where "any party could seek to make discovery completed in the Delaware action applicable to the Florida action by requesting the Florida court to order all parties to show cause why that discovery should not be made applicable"); *In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.*, 446 F. Supp. 242, 244 (J.P.M.L. 1978) (denying motion to transfer and noting that parties could cross-notice depositions, stipulate that discovery relevant to more

than one action be usable in all those actions, and seek orders from the involved courts directing coordination of pretrial efforts).

Here, in the interest of efficiency, the undersigned counsel are willing to coordinate and cooperate with all parties in other regional MLS cases on any common discovery or other pre-trial issues that may arise. *See, e.g., In re [24]7.AI, Inc. v. Customer Data Security Breach Litig.*, 338 F.Supp.3d 1345, 1347 (J.P.M.L. 2018) (denying motion to transfer where "voluntary cooperation and coordination among the small number of parties and involved courts appears eminently feasible."). For the reasons set forth herein, such coordination on discovery issues is best handled without consolidation and transfer.

### A. The *Gibson/Umpa* Motion Does Not Met the "Strong Burden" Of Demonstrating That Centralization Is Warranted.

The Panel determines whether centralization is appropriate on a case-by-case basis considering the statutory criteria. *See, e.g., In re Bear Creek Techs., Inc., ('722) Patent Litig.*, 858 F. Supp. 2d 1375, 1379 (J.P.M.L. 2012) ("Centralization of any litigation ... is not automatic, and will necessarily depend on the facts, parties, procedural history and other circumstances in a given litigation."). "Indeed, in exercising the wide discretion granted to it by Section 1407, the Panel denies a large portion of the motions for centralization it considers." *In re Uber Technologies, Inc., Passenger Sexual Assault Litig.*, 2024 WO 41889, *1 (J.P.M.L. Jan. 4, 2024). And where, as here, "only a minimal number of actions are under consideration for transfer under Section 1407, . . . the moving party bears *a strong burden* to show that the common questions of fact are so complex and the accompanying discovery so time-consuming as to serve the overall convenience of the parties and witnesses and promote the just and efficient conduct of the litigation." *In re Com. Lighting Prods., Inc. Contract Litig.,* 415 F. Supp. 392, 393 (J.P.M.L. 1976) (emphasis added); *In re Belviq (Lorcaserin HCl) Product Liability Litig.*, 555 F. Supp.3d 1369, 1370 (J.P.M.L. 2021)

(denying motion where there were "at most, twenty actions" and noting that the panel is "disinclined to take into account the mere possibility of future filings in our centralization calculus."). The *Gibson/Umpa* Motion fails to meet this strong burden, and the Panel should deny centralization.

### B. The *Gibson/Umpa* Motion Does Not Demonstrate That Transfer and Centralization of the *Grace* and *Willsim* Actions Is Warranted.

While Movants contend that there is substantial overlap among the various cases in terms of class definitions, common defendants, and virtually identical claims under the Sherman Act (Dkt. 1-1 at 5-8), none of these arguments apply to the *Grace* and *Willsim* cases, where: (1) the proposed classes include only sales of residential real estate listed on the BAREIS or MetroList MLSs, neither of which is owned by or affiliated with the NAR, (2) the only overlapping defendants are certain national brokerage firms, and any common discovery from those entities can efficiently be coordinated informally by the parties as appropriate, and (3) both cases assert claims under the Cartwright Act, California Business and Professions Code §§ 16720 *et. seq*. and California's Unfair Competition Law, California Business and Professions Code §§ 17200 *et. seq*.—claims that, in the interest of justice, are more appropriately adjudicated by judges within the State of California.

In addition to the *Moehrl* and *Burnett* cases discussed above, a third pending case not specifically mentioned in the *Gibson/Umpa* motion is *Nosalek v. MLS Property Information Network, Inc., et al.*, Case No. 1:20-cv-12244-PBS (D. Mass.) ("*Nosalek*"). The *Nosalek* case, filed in 2020, challenges a Massachusetts MLS. Those three cases proceeded on parallel tracks for years, without centralization and transfer, and a combination of the three have: a) completed discovery; b) obtained class certification; c) survived summary judgment; d) achieved preliminary settlements; and e) gone to trial. The fact that those cases have been and are being litigated in

separate jurisdictions weighs strongly against transfer and centralization of more recently filed cases challenging local MLSs. Indeed, it was only after the *Burnett* case resulted in a large jury verdict for plaintiffs that counsel for the *Burnett* and *Moehrl* Plaintiffs filed the *Gibson* and *Umpa* cases, now seeking to minimize the clear differences among MLSs and bring claims on behalf of nationwide classes. That change in strategy is not a sufficient basis for creating a centralized proceeding here. *See, e.g.*, *In re CVS Caremark Corp. Wage & Hour Emp't Practices Litig.*, 684 F. Supp. 2d 1377, 1379 (J.P.M.L. 2010) ("where a Section 1407 motion appears intended to further the interests of particular counsel more than those of the statute, we would certainly find less favor with it"); *In re Equinox Fitness Wage & Hour Emp't Practices Litig.*, 764 F. Supp. 2d 1347, 1348 (J.P.M.L. 2011) (denying unopposed motion for centralization because "the Panel has an institutional responsibility that goes beyond simply accommodating the particular wishes of the parties").

**C. Centralization Would Not Promote Efficiency and Would Inconvenience the Parties and Witnesses.**

Under 28 U.S.C. § 1407, cases should be centralized into an MDL when "necessary for the convenience of the parties and witnesses or to further the just and efficient conduct of th[e] litigation." *In re: Alteryx, Inc., Customer Data Sec. Breach Litig.*, 291 F. Supp. 3d 1377, 1377-78 (J.P.M.L. 2018). None of these goals would be accomplished by transferring and centralizing the *Grace* and *Willsim* cases to the Western District of Missouri. The assigned judges in the Northern and Eastern Districts of California are more than capable and better situated to adjudicate the claims at issue, which involve local MLS rules adopted and implemented by the BAREIS MLS and MetroList MLS (both of which are not affiliated with the NAR), claims under California law, transactions that took place exclusively within the BAREIS and MetroList MLS geographic regions, and parties/witnesses (including affiliates of certain real estate brokerages) located or

8

doing business in the districts where the cases were filed. Transferring the *Grace* and *Willsim* actions to the Western District of Missouri would impose an unnecessary hardship for all parties involved with little to no apparent upside.

Relatedly, transfer and centralization of the *Grace* and *Willsim* cases to a district court in Missouri or Illinois would potentially foreclose the ability of class members to exercise their right of access to court proceedings which is "vital to the functioning of the courts." *In the Matter of Continental Illinois Securities Litig.,* 732 F.2d 1302, 1314 (7th Cir. 1982); *Brown & Williamson Tobacco Corp. v. Fed. Trade Comm'n*, 710 F.2d 1165, 1177-78 (2d Cir. 1983) ("throughout our history, the open courtroom has been a fundamental feature of the American judicial system" and "creates a critical audience and hence encourages truthful exposition of facts, an essential function of a trial."). Although these cases focus on the right to an open courtroom, transfer of the cases will effectively close the courthouse to class members in the *Grace* and *Willsim* cases. It will be massively inconvenient for class members in Northern California to travel to Missouri to witness the proceedings that are being prosecuted on their behalf related to their sales of homes located in Northern California. These cases have garnered substantial interest in local news[6] and class members should have the opportunity to observe the court proceedings in their local courthouses.

**D. Granting the Motion Would Cause Significant Unwarranted Delay in the Prosecution of Cases Challenging Local MLS Rules**

The real estate industry has been profiting from inflated broker commissions for years due to anticompetitive buyer-broker rules. The ongoing anticompetitive conduct has caused the United

---

[6] https://www.sccaor.com/christina-grace-v-nar-antitrust-lawsuit-update/; https://www.marinij.com/2023/12/22/california-realtor-groups-hit-with-copycat-commission-rates-lawsuit/; https://www.realestatenews.com/2023/12/11/bay-area-mls-national-brokerages-hit-with-new-commissions-suit; https://www.reuters.com/legal/litigation/california-home-sellers-sue-brokerages-trade-groups-over-commissions-2023-12-11/.

States Department of Justice to, among other actions, file a "Statement of Interest" in the *Nosalek* case with respect to a proposed settlement. See *Nosalek v. MLS Property Information Network, Inc., et al.*, Case No. 1:20-cv-12244-PBS, Dkt. No. 230 (D. Mass. Sept. 28, 2023). The Department of Justice stated that these buyer broker rules:

> may "curtail price competition among buyer-brokers" by "effectively affording sellers' brokers control over what buyers pay their brokers." "Potentially exacerbating these effects, buyer-brokers could steer customers to higher-commission listings—or discourage sellers' agents from offering lower commissions." Inflated real-estate commissions harm both home sellers and homebuyers, which is particularly concerning given that buying a house is often the most expensive transaction of many Americans' lives.

*Id*. at p. 3 [Citations omitted]. It is critically important that these practices are remedied immediately. The transfer and consolidation of the actions will disrupt the orderly progression of the cases and cause delay that will inure to the benefit of the perpetrators of the wrongful conduct and further injure the victims by denying them the right to prosecute their cases in a timely manner. *See, e.g., In re Chiropractic Antitrust Litigation*, 483 F. Supp. 811, 813 (J.P.M.L. 1980); *In re Qwest Communicational International, Inc., Securities and "ERISA" Litigation*, 395 F. Supp. 2d 1360, 1361 (J.P.M.L. 2005) (denying motion to transfer where "centralization would not necessarily … further the just and efficient conduct" of the litigation). Indeed, some cases already have been stayed pending these proceedings,[7] and defendants in the *Grace* case intend to file a motion to stay. Taking account of all relevant factors, centralization is not the preferable course for these cases.

///

///

///

---

[7] *Nosalek*, Dkt. No. 272.

**CONCLUSION**

"The most pressing question" before this Panel "is whether centralization presents the most efficient means of advancing these actions towards resolution." *In re Hartford COVID-19 Bus. Interruption Prot. Ins. Litig.*, 493 F. Supp. 1360, 1361 (J.P.M.L. 2000). Based on the foregoing, the answer to that question here is a resounding no. The Panel should therefore deny the *Gibson/Umpa* Motion to transfer and centralize the *Grace* and *Willsim* cases.

Dated: January 26, 2024

Respectfully submitted,

*/s/ Jill M. Manning*
JILL M. MANNING (Bar No. 178849)
jmanning@pwfirm.com
PEARSON WARSHAW, LLP
555 Montgomery St., Suite 1205
San Francisco, California 94111
Telephone: (415) 433-9000

DANIEL L. WARSHAW (Bar No. 185365)
dwarshaw@pwfirm.com
BOBBY POUYA (Bar No. 245527)
bpouya@pwfirm.com
NAVEED ABAIE (Bar No. 323338)
nabaie@pwfirm.com
ERIC J. MONT (Bar No. 319592)
emont@pwfirm.com
PEARSON WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: (818) 788-8300

DOUGLAS MILLEN (Pro Hac Vice Forthcoming)
dmillen@fklmlaw.com
ROBERT WOZNIAK (Pro Hac Vice Forthcoming)
rwozniak@fklmlaw.com
MATTHEW RUAN (Bar No. 264409)
mruan@fklmlaw.com
FREED KANNER LONDON & MILLEN LLC
100 Tri-State International, Suite 128
Lincolnshire, IL 60069
Telephone: (224) 632-4500

*Attorneys for Plaintiffs Christina Grace and Willsim Latham, LLC*