BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: REAL ESTATE COMMISSION ANTITRUST LITIGATION<br><br>Related proceeding: *March v. REBNY et al.*, Case No. 1: 23- cv-09995-JGLC-RWL, U.S. District Court for the Southern District of New York | MDL DOCKET NO. 3100 |

**KELLER WILLIAMS, NYC LLC'S ("KWNYC") BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR TRANSFER TO THE WESTERN DISTRICT OF MISSOURI PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

**MEDINA LAW FIRM LLC**
641 Lexington Avenue
Thirteenth Floor
New York, NY 10022
Tel.  (212) 404-1742
Fax.(888) 833-9534
www.medinafirm.com

*Attorneys for Defendant Keller Williams, NYC LLC*

# TABLE OF CONTENTS

**INTRODUCTION** .................................................................................................................. 1

**PRELIMINARY STATEMENT** ........................................................................................... 2

**BACKGROUND** ................................................................................................................... 3

**LEGAL ARGUMENT** .......................................................................................................... 4

    A.   Consolidation of *March* is Not Appropriate. ........................................................ 5

    B.   The NAR Cases and *March* Do Not Involve Common Questions of Fact ........................... 5

and Common Legal Questions Fail to Justify Transfer and Centralization ............................... 5

    C.   Transfer of *March* Will Significantly Inconvenience the Parties and Witnesses ................ 8

    D.   The Efficiencies to be gained from Transferring *March* to an MDL are Nonexistent ........ 9

**CONCLUSION** ..................................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**
*Friedman v. REBNY, Inc., et al.*, C.A. No. 1:23-cv-09601 (E.D.N.Y. Dec. 23, 2023) .................. 3
*In re 21st Century Prods., Inc.* "*Thrilsphere*" *Contract Litig.*, 448 F. Supp. 271, 273 (J.P.M.L. 1978) ............................................................................................................................................. 5
*In re Comcast Corp. Emp. Wage & Hour Emp. Pracs*. Litig., 190 F. Supp. 3d 1344, 1345 (J.P.M.L. 2016) ........................................................................................................................... 5
*In re CP4 Fuel Pump Mktg., Sales Pract., and Prods. Liab. Litig.*, 412 F. Supp. 3d 1365, 1367 (J.P.M.L. 2019) ........................................................................................................................... 8
*In re CVS Caremark Corp. Wage & Hour Emp. Pracs. Litig.*, 684 F. Supp. 2d 1377, 1379 (J.P.M.L. 2010) ........................................................................................................................... 6
*In re Express Scripts Holding Co. Sec., Derivative & Employee Ret. Income Sec. Act (ERISA) Litig.*, 273 F. Supp. 3d 1369, 1370-71 (J.P.M.L. Apr. 5, 2017) .................................................. 6
*In re Genetic Techs. Ltd. ('179) Patent Litig.*, 883 F. Supp. 2d 1337, 1338 (J.P.M.L. 2012) ........ 8
*In re Multidistrict Patent Litig. Involving the Kaehni Patent*, 311 F. Supp. 1342, 1344 (J.P.M.L. 1970) ............................................................................................................................................. 8
*In re: Bank of America Fraudulent Account Litig.*, MDL No. 3088, 2023 WL 8538726, at *2 (J.P.M.L. Dec. 6, 2023) .............................................................................................................. 3
*In re: Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011) ........................................................................................................................... 3
*In re: National Ass'n for Advancement of Multijurisdictional Practice Litig.*, 52 F. Supp. 3d 1377, 1378 (J.P.M.L. 2014) ....................................................................................................... 2
*In re: National Ass'n for Advancement of Multijurisdictional Practice Litig.*, 52 F. Supp. at 1378 ..................................................................................................................................................... 5
*In re: Pharmacy Ben. Plan Administrators Pricing Litig.*, 206 F. Supp. 2d 1362, 1363 (J.P.M.L. 2002) ............................................................................................................................................. 6
*March v. REBNY et al.*, Case No. 1:23-cv-09995-JGLC-RWL, ..................................................... 1
**Statutes**
28 U.S.C. § 1407 ............................................................................................................................. 1, 2
28 U.S.C. § 1407(a) ............................................................................................................................ 4

## INTRODUCTION

Tribeca Market Center, LLC d/b/a Keller Williams NYC, LLC ("KWNYC") respectfully submits its Response in Opposition to the motion ("Motion") filed by Plaintiffs'[1] for Transfer to the Western District of Missouri pursuant to 28 U.S.C. § 1407 for coordinated or consolidated pretrial proceedings.[2] Unlike other Defendants in Plaintiffs list of consolidated actions,[3] KWNYC has *no* affiliation with other defendants who have adopted the standards employed by the National Association of Realtors ("NAR"), nor does KWNYC use the NAR rules, nor the NAR Handbook on Listing Policy (the "NAR Handbook") or is it subject to the NAR Code of Ethics. This is because the claims asserted against KWNYC in the *March*[4] case *do not* predicate liability upon any NAR rule, but rather, upon liability for rules promulgated by New York's Real Estate Board of New York ("REBNY") and REBNY's Real Estate Listing Service ("RLS"). As set forth in REBNY's opposition to the Motion [Doc. No. 266],[5] REBNY's rules do not implicate the same operative facts upon which Plaintiff predicates liability in the NAR Cases. Accordingly, KWYNC

---

[1] Identified as plaintiffs in each of the following matters: *Gibson et al. v. National Association of Realtors et al.*, 4:23-cv-7822-SRB (W.D. Mo.) ("Gibson") and *Umpa v. Nat'l Ass'n of Realtors*, 4:23-cv-945 (W.D. Mo.) ("Umpa," and together with Gibson, referred to collectively as "Plaintiffs").

[2] KWNYC is a defendant in the proceeding captioned *March v. REBNY et al.*, Case No. 1:23-cv-09995-JGLC-RWL, in the United States District Court for the Southern District of New York ("*March*"). KWNYC is *not* named as Defendant in any other cases listed on the Schedule of Actions filed by Plaintiffs nor does it anticipate being so named. (MDL No. 3100 ECF Doc. 2).

[3] Each of the actions listed on Schedule A, to Plaintiffs' Motion with the exception of *March*, are collectively referred to herein as the "NAR Cases."

[4] The sole case in which any claim is asserted against KWNYC in the United States.

[5] Which briefing is hereby joined and adopted by KWNYC.

respectfully submits that as regards the *March* case, none of the underlying benefits conferred by transfer and centralization of pretrial proceedings are present in the Motion.[6]

## PRELIMINARY STATEMENT

KWNYC is not affiliated with NAR, does not use NAR Rules or NAR's Code of Ethics. KWNYC does not do business outside of the State of New York and has no connection to the State of Missouri. Rather, KWNYC adheres to REBNY's rules and the RLS from where it operates-in New York City- from its Madison Avenue headquarters and not elsewhere. KWNYC further uses its own form of exclusive listing agreements in connection with its business. The differences between *March* and those for which Plaintiffs seek consolidation cannot be overstated, and the common facts required to support centralization pursuant to 28 U.S.C. § 1407 are notably absent.

Plaintiffs' litigation against NAR, including *Burnett* and *Moehrl* referenced in Plaintiffs' Br., are premised upon NAR's Rules, the NAR Handbook and NAR's Code of Ethics subjects that do not require KWNYC's knowledge or adherence. That Plaintiffs allege violations of Sherman Act Section 1 against NAR and NAR-affiliated groups, as well as against those like KWNYC who adhere to the REBNY and RLS standards, but an allegation alone does not merit centralization for pretrial purposes. *See In re: National Ass'n for Advancement of Multijurisdictional Practice Litig.*, 52 F. Supp. 3d 1377, 1378 (J.P.M.L. 2014) (denying a motion for centralization and finding that "[w]hile each action focuses on the constitutionality of restrictions on attorney admission

---

[6] KWNYC does not take a position on whether it is appropriate to consolidate the cases brought against any other defendants which use the NAR Rules or Code of Ethics. Notwithstanding, KWNYC joins in briefing asserted by REBNY and other defendants opposing centralization of *March* with the Plaintiffs' cases in so much as KWNYC asserts that defendants adhering to the REBNY standards are factually and legally distinct.

contained in each court's local rules, these common legal questions are insufficient to satisfy Section 1407's requirement of common factual questions.").

Indeed, the Panel frequently looks to other mechanisms to ensure litigation against possible defendants who adhere to different models can proceed justly and efficiently. For example, the parties in *March*, coordinated the consolidation of a related case captioned *Friedman v. REBNY, Inc., et al.*, C.A. No. 1:24-cv-00405 (S.D.N.Y. Jan. 18, 2024) ("*Friedman*"). Although Friedman does not name KWNYC, KWNYC did not oppose their re-filing of that case in the Southern District of New York to proceed in a coordinated manner in a single district with *March*.[7] These steps are consistent with the Panel's well settled guidance that "'centralization under Section 1407 should be *the last* solution after considering review of all other options.'" *In re: Bank of America Fraudulent Account Litig.*, MDL No. 3088, 2023 WL 8538726, at *2 (J.P.M.L. Dec. 6, 2023) (*quoting In re: Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011)). Pretrial coordination of *March*, and any later-filed cases brought against REBNY and/or RLS adherents like KWYNC (e.g. *Friedman*) will only inconvenience the parties and witnesses and decrease efficiencies.

## BACKGROUND

*March* was filed on November 8, 2023, in the United States District Court for the Southern District of New York, naming REBNY, RLS, KWNYC, and approximately 24 other REBNY member brokerage firms as defendants. *See* Declaration of Claude G. Szyfer dated January 26,

---

[7] Plaintiff in *Friedman* originally filed a complaint in the Eastern District of New York on December 23, 2023, but he re-filed his case in the Southern District of New York on January 18, 2024. *See Friedman v. REBNY, Inc., et al.*, C.A. No. 1:23-cv-09601 (E.D.N.Y. Dec. 23, 2023). The primary distinction between *March* and *Friedman* is the relevant geographic market alleged in each case.

2024 filed herein ("Szyfer Dec.")[8] [Doc. No. 266]. KWNYC is a REBNY adherent but is not required to, nor does it employ any "form" of exclusive listing agreement. *See Id*. The RLS *does not* mandate the use of a form exclusive listing agreement, thus allowing each participating firm, like KWNYC to negotiate the terms of each of their exclusive listing agreements. *Id*. KWNYC has no physical presence outside of New York City and KWNYC understands that other defendants in *March* have no presence outside of the five boroughs.

The *March* case does not allege a geographic market that encompasses all of New York, or even all of New York City; instead, *March* alleges a limited relevant geographic market for his claims: Manhattan. *Id*.

KWNYC has no relationship with NAR, but rather relationships with REBNY and RLS. As discussed in REBNY's opposition brief, *March* is premised upon a specific REBNY rule that is entirely different from the NAR Rules, NAR Handbook and NAR Code of Ethics at issue in the other cases Plaintiffs' seek to consolidate. KWNYC is also dissimilar to other cases which Plaintiff seek to centralize as KWNYC along with other REBNY defendants are party to a coordinated briefing stipulation that has been entered in the *March* case which reflects the informal yet purposeful efforts of the litigants to eliminate duplication of effort and facilitate coordinated dismissal briefing relating to *March*.

Neither KWNYC, REBNY, or numerous other defendants in *March* support the transfer sought by the Motion. In fact, KWNYC understands that *March* similarly opposes centralization and believes that consolidation of *March* in the Western District of Missouri is improper.

**LEGAL ARGUMENT**

---

[8] *In re Real Estate Commission Antitrust Litigation,* MDL-3100

4

A. Consolidation of *March* is Not Appropriate.

Federal civil actions may be transferred for coordinated or consolidated pretrial proceedings pursuant to Section 1407 only when there are "one or more common questions of fact" such that transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." *See* 28 U.S.C. § 1407(a). A party moving to centralize cases into a muti-district litigation bears "a heavy burden to show that [the] common questions of fact are sufficiently complex, and that the accompanying discovery will be so time-consuming as to justify transfer under Section 1407." *In re 21st Century Prods., Inc.* "*Thrilsphere*" *Contract Litig.*, 448 F. Supp. 271, 273 (J.P.M.L. 1978). "Factual commonality" among actions is not sufficient to *require* centralization. *See In re Comcast Corp. Emp. Wage & Hour Emp. Pracs*. Litig., 190 F. Supp. 3d 1344, 1345 (J.P.M.L. 2016). Rather, centralization is the "last solution" to be considered after review of all other options, including change of venue and "voluntary cooperation and coordination among the parties and the involved courts to avoid duplicative discovery or inconsistent pretrial rulings." *See id*. (*citation omitted*). In *March* the parties have already taken steps to create efficiencies by stipulating to consolidated briefing schedules and by coordinating the re-filing of *Friedman* in the Southern District of New York..

B. The NAR Cases and *March* Do Not Involve Common Questions of Fact
   and Common Legal Questions Fail to Justify Transfer and Centralization

Section 1407 and JPML precedent make clear common questions of fact, not common questions of law, warrant centralization; "common legal questions are insufficient to satisfy Section 1407's requirement of common factual questions." *In re: National Ass'n for Advancement of Multijurisdictional Practice Litig.*, 52 F. Supp. at 1378. Plaintiffs' discovery will focus upon

5

the "Buyer Broker Commission"[9] rules promulgated under NAR which are completely absent in the case of REBNY adherent defendants like KWNYC in the *March* case. Notably, the lack of this *sine qua non* factual-predicate in *March* squarely places the case on a different footing from those with which Plaintiff seeks centralization. The inverse is also true; discovery obtained from KWNYC will only relate to KWNYC's New York City activities in a highly specialized market that utilizes its own rules and regulations. This fact alone undercuts the notion that any efficiencies can be created with the NAR Cases. *See In re CVS Caremark Corp. Wage & Hour Emp. Pracs. Litig.*, 684 F. Supp. 2d 1377, 1379 (J.P.M.L. 2010) (where "discovery in each action is likely to involve individualized, location-specific examination of things," the "potential for significant individual discovery tilts the balance against centralization"). Indeed, the Panel routinely denies transfer where common questions of fact are outweighed by individualized factual and legal questions like in *March*. *See In re Express Scripts Holding Co. Sec., Derivative & Employee Ret. Income Sec. Act (ERISA) Litig.*, 273 F. Supp. 3d 1369, 1370-71 (J.P.M.L. Apr. 5, 2017) (denying centralization despite "unquestionably . . . common factual allegations" because "case-specific issues [were] likely to undermine the alleged efficiencies"); *In re: Pharmacy Ben. Plan Administrators Pricing Litig.*, 206 F. Supp. 2d 1362, 1363 (J.P.M.L. 2002) (denying centralization where "unique questions of fact predominate[d] over any common questions of fact").

While Plaintiffs claim that "plaintiffs in each related action allege that these rules (collectively referred to as 'Buyer Broker Compensation Rules') require home sellers to make blanket unilateral offers of compensation to cooperating brokers when listing a residential property for sale on an MLS and restrict the negotiation of such offers" (Pl.'s Br. p. 1), KWNYC does no such thing as a member of REBNY. Rather, KWYNC expressly acknowledges that offers of

---

[9] *See* Pl's Br. pp. 7-8.

compensation may be negotiated amongst the parties to its Exclusive Listing Agreement or in a separate written agreement between an owner of real estate or a proprietary lessee in the case of cooperatives and their Exclusive Broker in every KWNYC agreement.  As set forth by REBNY in its opposition to the Motion, Article IV, Section 1 of the RLS Universal Co-Brokerage Agreement Rules & Regulations states:

> With respect to the sale an Exclusive Property, if a sale is consummated with a Buyer procured by a Co-Broker, *unless the Exclusive Listing specifies otherwise or absent some other written agreement between an Owner and their Exclusive Broker(s)*, the Exclusive Broker and the Co-Broker shall each be paid an equal share of the commission as specified in the Exclusive Listing.

Compl. ¶ 59 (Szyfer Dec. Ex. 1 ) (emphasis added) ("REBNY Rule").  Moreover, unlike the NAR "Buyer Broker Compensation Rules," nothing in the REBNY Rule requires that an offer of compensation (either as a percentage or whole number) be made by the Listing Broker in order to list on the RLS.  These distinctions clearly involve different witnesses and documents.  Additionally, the enforcement of the REBNY rule is entirely different than how NAR, or any NAR-affiliated MLSs enforces the "Buyer Broker Compensation Rules" at issue in the NAR Cases.  The differences between the REBNY Rule and the NAR Rule are consequential, and weigh against centralization.  Accordingly, given these key differences, and contrary to Plaintiffs' specified concerns, there is simply no risk of inconsistent decision, and lumping the REBNY cases together with the NAR, will cause more harm than good depriving KWNYC of the procedural protections having to defend itself outside of its one and only forum-its headquarters in New York City.

KWNYC similarly believes that, as alluded to in REBNY's opposition to the Motion, that Plaintiffs' complaints fail to make any mention of the REBNY adherents' governing rules which differ drastically from those underpinning the NAR cases.  More specifically, only *Umpa* actually

7

mentions the REBNY Rule at issue in comparison to the Buyer Broker Compensation Rules, and does not allege that a seller is *required* to make an offer of compensation –the central rule in the NAR Cases.  *See Umpa* Complaint, at p. 48.

    C. <u>Transfer of *March* Will Significantly Inconvenience the Parties and Witnesses</u>

Requiring KWNYC to litigate in the Western District of Missouri, or any another district outside of New York City, will significantly inconvenience the parties and witnesses in *March*. Unlike NAR and many of the other defendants in the NAR Cases, KWNYC is based solely in New York City and does not have a physical presence outside of New York City.  *See* Szyfer Dec. Ex. 1.  All of the allegedly wrongful conduct detailed in the complaint against KWNYC by *March* is alleged to have taken place only in New York City.  *See Id*.  All of the witnesses required to defend *March*[10] are based in the New York City area, as is the overwhelming majority of evidence relevant to the action.  For this reason alone, the Panel is usually "reluctan[t] to centralize actions against different defendants in one MDL," as "a multi-defendant MDL may prolong pretrial proceedings, because of, *inter alia*, the possible need for separate discovery and motion tracks."  *In re CP4 Fuel Pump Mktg., Sales Pract., and Prods. Liab. Litig*., 412 F. Supp. 3d 1365, 1367 (J.P.M.L. 2019) (citation omitted).  Transfer to the Western District of Missouri will severely inconvenience the witnesses and parties, on all sides, and significantly increase litigation costs (particularly for KWNYC) who is simply a franchisee of a larger organization.  This particular factor has been found dispositive in cases like this one where in light of REBNY's mandates, discovery and legal questions arising on account of the differing Exclusive Listing Agreements will likely be *highly* idiosyncratic.  *See In re Genetic Techs. Ltd. ('179) Patent Litig*., 883 F. Supp. 2d 1337, 1338

---

[10] As they pertain to KWNYC.

(J.P.M.L. 2012) (denying centralization where certain defendants like KWNYC had "idiosyncratic potentially dispositive defenses" that would "implicate significant unique facts"); *see also In re Multidistrict Patent Litig. Involving the Kaehni Patent*, 311 F. Supp. 1342, 1344 (J.P.M.L. 1970) (staying transfer of action pending resolution of motion to dismiss presently pending in transferor court). Because *March* is the *only* action that is pending against KWNYC and further because March is the *only* action in the State of New York against KWYNC, it would be improper to centralize *March* with the Plaintiffs' cases. Accordingly, this factor weighs heavily against moving *March* from New York City.

D. <u>The Efficiencies to be gained from Transferring *March* to an MDL are Nonexistent</u>

KWNYC adopts the positions and authorities cited by REBNY with respect to the efficacy of centralization and agrees there is little or no benefit to doing so here. KWNYC acknowledges the uniqueness of the New York City residential market and notes the high concentration of residential cooperatives, which involve proprietary leases, and necessitate vastly different transactional details and requirement which necessarily warrant specialized discovery and third-party witnesses far removed from the crux of the disputes venued in the Western district of Missouri.

**CONCLUSION**

For the foregoing reasons, KWNYC respectfully request that Plaintiffs' Motion be denied with respect to *March* and joins the oppositions filed by REBNY and other REBNY defendants to consolidation including but not limited to any later-filed litigation involving REBNY and RLS members, and that the Panel grant such other and further relief as may be just and proper.

4865-2189-3791, v. 3

Dated: New York, New York
January 26, 2024

By: **MEDINA LAW FIRM LLC**

Eric S. Medina, Esq.
Matthew J. Press, Esq.
MEDINA LAW FIRM LLC
641 Lexington Avenue
Thirteenth Floor
New York, NY 10022
Tel. (212) 404-1742
Fax.(888) 833-9534
emedina@medinafirm.com

*Attorneys for Keller Williams, NYC LLC*