**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| In re:  **Real Estate Commission Antitrust** | ) | **MDL No. 3100** |
| **Litigation** | ) | |
| | ) | |
| | ) | |

**THE *SPRING WAY CENTER* PLAINTIFFS' BRIEF IN OPPOSITION TO THE
MOTION TO TRANSFER FOR COORDINATED OR CONSOLIDATED PRETRIAL
PROCEEDINGS**

Plaintiffs in *Spring Way Center,, et al. v. West Penn Multi-List, Inc., et al.*, 2:23-cv-02061-CCW (W.D. Pa.), respectfully submit this response in opposition to the Motion to Transfer, under 28 U.S.C. § 1407, for coordinated or consolidated pretrial proceedings filed by Plaintiffs in *Gibson, et al. v. National Association of Realtors et al. Umpa v. National Association of Realtors et al.*

**I.     Introduction**

Residential real estate is an inherently local business. The lawsuits at issue in the *Gibson* and *Umpa* plaintiffs' Motion for Transfer under 28 U.S.C. § 1407 for coordinated or consolidated pretrial proceedings will likewise be driven by factual issues specific to each case's local real estate market. Seeking to avoid this fundamental reality, which has charted the course of several pending actions for over four years, Movants instead point to a handful of similarities among the cases, all of which, on closer inspection, will require case-specific discovery to resolve. Furthermore, Section 1407 is a measure of last resort—yet Movants fail to address available options for less formal coordination that have been successfully employed in earlier filed real estate commissions lawsuits. In short, because any common issues here are overshadowed by case-specific ones, and because informal coordination is a viable means of reducing or eliminating duplicative discovery, Movants cannot meet their burden here. The Motion for Transfer should be denied.

## II.    Background

The history of antitrust real estate litigation challenging the lawfulness of broker compensation is protracted, and actions challenging the lawfulness of broker compensation rules adopted by local multi-listing services ("MLS") have, until very recently, been focused on "sales in a particular geographic region." ECF No. 1-1 at 3. The *Moehrl* action was filed in March 2019 in the Northern District of Illinois challenging buyer broker commission rules adopted and enforced by brokers serving 20 local MLSs.[1] The *Burnett/Sitzer* action was filed in April 2019 in the Western District of Missouri challenging buyer broker commission rules adopted and enforced by brokers serving local MLSs in Kansas City, St. Louis, Springfield, and Columbia, Missouri.[2] The *Nosalek* action was filed in December 2020 in the District of Massachusetts challenging buyer broker commission rules adopted and enforced by brokers utilizing the Pinergy, MLS Property Information Network, Inc. covering several New England states.[3] Plaintiffs in each of those actions alleged that "[t]he residential real estate business is local in nature." *Moehrl* Compl. (1:19cv1610 ECF 1) ¶ 66; *Burnett/Sitzer* Compl. (4:19cv332 ECF 1) ¶ 80; *Nosalek* Compl. (1:20cv12244 ECF 1) ¶ 131.

Plaintiffs in those actions have successfully and efficiently litigated their localized disputes in their respective jurisdictions for years. The *Moehrl* action has advanced through class certification and summary judgment motions are now pending. In the *Nosalek* action, summary judgment briefs have been filed, a motion for approval of a settlement with one defendant is pending, and class certification briefing is due later this year. The *Burnett/Snitzer* action has already completed trial, resulting in a much-heralded plaintiffs' verdict with post-trial briefing

---

[1] *Moehrl et al. v. Nat'l Ass'n of Realtors et al.,* No. 1:19cv1610 (N.D. Ill.).
[2] *Sitzer et al v. Nat'l Ass'n of Realtors et al.,* No. 4:19cv332 (W.D. Mo.).
[3] *Nosalek et al. v. MLS Property Information Network, Inc. et al.*, No. 1:20cv12244 (D. Mass.).

underway. For years, these cases were litigated in different courts, without the need for any formal centralization under § 1407.

In the wake of the notable verdict in the *Burnett/Sitzer* action, home sellers who were not covered by the earlier cases began to examine whether they had been harmed by brokers adopting and enforcing buyer broker commission rules in their communities as well. This resulted in several lawsuits being filed in different jurisdictions to protect the interests of home sellers in those locales. These newer lawsuits also sought to hold accountable brokers who had not been named as defendants in prior lawsuits (in part, because different brokers service different local geographic markets). The *Spring Way Center* action,[4] which was filed on December 4, 2023, in the Western District of Pennsylvania, is one of these cases.

The *Spring Way Center* action asserts claims against the West Penn Multi-List, which covers Allegheny, Armstrong, Beaver, Butler, Washington, Westmoreland, Clarion, Crawford, Fayette, Greene, Indiana, Lawrence, Mercer, Somerset, Venango and Erie counties in Western Pennsylvania. The West Penn Multi-List is an independent MLS whose board is comprised of local executives within the geographic area that the MLS encompasses, which promulgates and enforces its own rules and policies. The *Spring Way Center* action also named several brokerage firms serving that Western Pennsylvania market as defendants, including brokers named in a recently filed amended complaint. Notably, the defendants named in *Spring Way Center* share no overlap with defendants named in the other cases.

Although most of the recently filed actions have maintained the localized focus that has pervaded actions challenging buyer broker commission rules to date, Movants have sought to

---

[4] *Spring Way Center, LLC et al. v. West Penn Multi-List, Inc. et al.*, No. 2:23-cv-2061 (W.D. Pa.).

greatly broaden the geographic reach of these disputes. Specifically, the *Gibson* action[5] and the *Umpa* action[6] were filed in the Western District of Missouri in October and December 2023, respectively. The *Gibson* and *Umpa* actions named several brokerages who had not been named in earlier suits, expanded the time period covered by those earlier suits, and most significantly sought to pursue claims based on a nationwide market for brokerage services notwithstanding the fact that the *Gibson* action was brought by counsel in the *Burnett/Snitzer* action and the *Umpa* action was brought by counsel in the *Moehrl* action, both of whom have repeatedly alleged and argued in those prior cases that the real estate brokerage markets were local in scope.[7] This attempt to expand the regional scope of real estate brokerage markets is not only a departure from the positions previously advanced in litigation, but it is also inconsistent with the practices of the FTC and Department of Justice, which have long recognized that competition in the market for real estate brokerage services is inherently local.[8] Indeed, the expert retained by *Moehrl* considered the FTC's and Department of Justice's recognition of real estate brokerage markets as regional, along

---

[5] *Gibson et al. v. Nat'l Ass'n of Realtors et al.*, No. 4:23-cv-00788 (W.D. Mo.).

[6] *Umpa v. Nat'l Ass'n of Realtors et al.*, No. 4:23-cv-00945 (W.D. Mo.).

[7] *See, e.g., Burnett v. Nat'l Ass'n of Realtors*, 19-cv-332 (W.D. Mo. Apr. 29, 2019), ECF No. 66 at 14:

> Because of these distinct markets, the discovery [in each case] will focus on the implementation of the Adversary Commission Rule in each market, the impact of the Adversary Commission Rule on market forces in each market, the degree and effect of any "steering" that takes place in each market . . . , and the damages arising out of the enactment of the Adversary Commission Rule in each market. These important topics of discovery will be localized and specific to each lawsuit, and this case will involve entirely separate non-party co-conspirator witnesses located in [the Western District of Missouri], and for such witnesses it will be a significant inconvenience to become involved in litigation pending in Illinois compared to here.

[8] *See* U.S. Dep't of Justice & Fed. Trade Comm'n, *Competition in the Real Estate Brokerage Industry* at 30-32 (Apr. 2007), *available at* https://www.ftc.gov/sites/default/files/documents/reports/competition-real-estate-brokerage-industry-report-federal-trade-commission-and-u.s.department-justice/v050015.pdf.

with the extensive evidence he examined in that case, in confirming that the markets for real estate brokerage services are local.[9]

## III.   Argument

### A.   Section 1407 transfer requires more than surface-level similarities among cases.

Section 1407 permits—but does not require—the Judicial Panel on Multidistrict Litigation to centralize, for pre-trial proceedings only, cases featuring similar factual issues but pending in different districts. *See* 28 U.S.C. § 1407(a). The party seeking to have such actions coordinated or consolidated bears the burden of demonstrating that centralization is appropriate; this burden increases where only a few cases are involved. *See In re Hyundai & KIA GDI Engine Mktg., Sales, Practices, & Prods. Liab. Litig.*, 412 F. Supp. 3d 1341, 1342 (J.P.M.L. 2019). That heavier burden should apply here, as Movants' application seeks centralization of only 14 cases pending in 11 districts. *See In re Covidien Hernia Mesh Prods. Liab. Litig.*, 481 F.Supp.3d 1348 (J.P.M.L. 2020) (denying centralization and applying heightened standard to 12 actions pending in nine districts). Moreover, the Panel has repeatedly stressed in its prior decisions that centralization "should be the last solution after considered review of all other options." *In re Gerber Probiotics Prods. Mktg. & Sales Practices Litig.*, 899 F. Supp. 2d 1378, 1379 (J.P.M.L. 2012). As such, the Panel has denied transfer—even where Section 1407 would seem to apply—when alternatives like Section 1404 transfer or informal coordination and cooperation among the parties and the courts are feasible. *See, e.g., In re Six Flags Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 289 F. Supp. 3d 1343, 1344 (J.P.M.L. 2018); *In re Insulin Mfg. Antitrust Litig.*, 487 F. Supp. 1359 (J.P.M.L. 1980).

---

[9] Expert Class Certification Report of Professor Einer Elhauge ¶¶ 77-107 (Corrected March 8, 2022), *Moehrl et al. v. Nat'l Ass'n of Realtors et al.,* No. 1:19cv1610 (N.D. Ill.) (ECF 324-6).

To meet their burden here, Movants must demonstrate that each of the cases they identify as candidates for consolidation share "one or more common questions of fact." 28 U.S.C. § 1407(a). They must also persuade the Panel that centralization "will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of" the transferred cases. *Id.* Importantly, the alleged common issues of fact must be more than just surface-level similarities or broadly similar theories of the respective cases. *In re Unilever Aerosol Prods. Mktg., Sales Practices, & Prods. Liab. Litig.*, No. MDL No. 3068, 2023 U.S. Dist. LEXIS 62789 (J.P.M.L. Apr. 7, 2023) (looking beyond "surface" level similarities). Instead, the common questions must be "sufficiently complex and/or numerous" to warrant transfer. *In re PPG Indus.*, 701 F. Supp. 2d 1379 (J.P.M.L. 2010). Relevant, too, is the number and diversity of defendants among the cases. *See In re Varsity Spirit Athlete Abuse Litig.*, No. MDL No. 3077, 2023 U.S. Dist. LEXIS 97733 (J.P.M.L. June 5, 2023) (diversity of defendants weighs heavily against centralization).

These considerations have previously led the Panel to be skeptical of requests to centralize industry-wide litigation, especially where the cases present unique factual circumstances. *See In re Baby Food Mktg., Sales Practices & Prods. Liab. Litig.,* 544 F. Supp. 3d 1375, 1377 (J.P.M.L. 2021) ("We have been cautious when considering industry-wide centralization…Given the relatively minimal number of common factual questions, the potential for a multi-defendant MDL to introduce added complexity to this litigation, and the strong opposition of numerous plaintiffs and defendants, we are not persuaded that industry-wide centralization is appropriate."). The Panel should view Movants' request here with similar skepticism, with respect to both *Spring Way Center* and the array of cases identified by Movants for centralization as a whole, and deny the Motion.

6

**B.**     ***Spring Way Center* is not an appropriate case for centralization under Section 1407.**

The *Spring Way Center* case does not fit the requirements for transfer under Section 1407 because the "common" factual issues identified by Movants ignore the unique, localized factual circumstances presented by *Spring Way Center* and the other cases. Moreover, to the extent there are any similar factual issues, transfer would not make conducting the *Spring Way Center* litigation more convenient for the parties and witnesses nor would it promote judicial efficiency.

      i.     *The purportedly "common" fact issues do not significantly tie Spring Way Center to the other cases.*

Movants identify five supposedly "common" factual issues warranting transfer under Section 1407: (1) "[w]hether defendants entered into an agreement or conspiracy based on the Buyer Broker Commission Rules;" (2) "[w]hether defendants possess market power in the relevant markets;" (3) "[w]hether defendants engage in or promote steering;" (4) "whether the effect of the agreement was to inflate total commissions and buyer broker commissions;" and (5) "[w]hether the competitive harm from the conspiracy substantially outweighs any competitive benefits." ECF No. 1-1 at 7-8. Movants' listing of "common" issues, however, depends on some sleight of hand—lumping all "defendants" together—and amounts to little more than restating the elements of the antitrust claims alleged in each case. Indeed, on careful examination, these supposedly "common" fact issues melt away to reveal pronounced differences.

The problem with Movants conflating general factual elements plaintiffs in each case will need to address with the kinds of "common questions of fact" that make cases appropriate for centralization under Section 1407 becomes obvious when considering the threshold issue of defining the relevant market. *See Coronavirus Reporter; CALID, Inc. v. Apple, Inc.,* 85 F.4th 948, 955 (9th Cir. 2023) ("Market definition is essential to any antitrust case because '[w]ithout a definition of [the] market there is no way to measure [the defendant's] ability to lessen or destroy

7

competition.'") (quoting *Ohio v. Am. Express Co*., 138 S. Ct. 2274, 2285 (2018)). As noted above, plaintiffs in the *Moehrl*, *Burnett/Sitzer* and *Nosalek* cases all alleged in their complaints that "[t]he residential real estate business is local in nature." *Moehrl* Compl. (1:19cv1610 ECF 1) ¶ 66; *Burnett/Snitzer* Compl. (4:19cv332 ECF 1) ¶ 80; *Nosalek* Compl. (1:20cv12244 ECF 1) ¶ 131. They did so for good reason: "Courts generally measure a market's geographic scope, the 'area of effective competition,' by determining the areas in which the seller operates and where consumers can turn, as a practical matter, for supply of the relevant product." *Heerwagen v. Clear Channel Commc'ns*, 435 F.3d 219, 227 (2d Cir. 2006) (citation omitted), *overruled on other grounds by Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc*., 546 F.3d 196, 201 (2d Cir. 2008). And, because of the localized nature of the residential real estate industry, home sellers— the "consumers" in these cases—cannot, "as a practical matter," easily turn to brokers outside of the geographic area covered by their local MLS. As a result, even if there are some common factual issues, they will be overshadowed by localized issues.

Spring Way Center is representative here. First, as noted above, *Spring Way Center* involves a unique slate of defendants. It also involves, as Movants acknowledge, an MLS that is not controlled by NAR. *See* ECF No. 1-1 at 5. As such, although the highly generalized "common" factual issues identified by Movants will need to be resolved in *Spring Way Center*, that process will hinge on evidence related to a specific group of defendants in a particular, localized market. *See In re Unilever Aerosol Prods. Mktg., Sales Practices, & Prods. Liab. Litig.*, No. MDL No. 3068, 2023 U.S. Dist. LEXIS 62789 (J.P.M.L. Apr. 7, 2023). To be sure, the national conspiracy alleged by Movants in *Gibson/Umpa* may sit in the background of *Spring Way Center*. However, even if the anticompetitive practices alleged in *Spring Way Center* are similar to those developed by NAR and those used by defendants in the other actions, proving the *Spring Way Center*

plaintiffs' claims will require particularized discovery regarding localized actors operating within the residential real estate market in western Pennsylvania. *In re Varsity Spirit Athlete Abuse Litig.*, No. MDL No. 3077, 2023 U.S. Dist. LEXIS 97733 (J.P.M.L. June 5, 2023) (individualized fact issues weighs heavily against centralization).

Consequently, any overlap between the factual issues at play in *Spring Way Center* and the other cases is eclipsed by factual issues unique to *Spring Way Center*. That alone warrants the Panel declining to transfer *Spring Way Center*.

        ii.        *Centralization of Spring Way Center will inconvenience the parties and witnesses and will not promote the just and efficient resolution of the case.*

With respect to *Spring Way Center*, centralization is unlikely to produce the kind of increased convenience or gains to judicial efficiency that are the touchstone of Section 1407 transfer. First, as amply explained in the opposition submitted by the HomeServices Defendants, much (if not all) of the discovery related to NAR and its policies has already been completed— and has been efficiently shared among the litigants in the *Moehrl, Burnett/Sitzer,* and *Nozalek* cases. *See*, ECF No. 81 at 14-15. As a result, far from increasing convenience and efficiency, centralization of *Spring Way Center* would unnecessarily burden its parties. Second, because of the limited overlap between ono the additional issues raised by *Spring Way Center* and other cases, it is unlikely that consolidation would do much to avoid duplicative discovery, as common discovery is likely to be limited.

### C.    Movants have not met their burden to demonstrate that transfer is appropriate.

The factors making centralization inappropriate in the case of *Spring Way Center* extend to many, if not all, of the other cases at issue here. First, like *Spring Way Center*, a number of the other cases Movants identify as candidates for centralization involve MLSs not subject to NAR's mandatory MLS rules. And, again like *Spring Way Center*, all of the cases brought on behalf of

home sellers (besides *Gibson/Umpa*) plead claims related to geographically distinct residential real estate markets. Each will require locality-specific discovery regarding the practices of the defendants in each case and the effect those practices have on the local residential real estate market. Finally, many of the cases here also involve state law claims, including some, like *Spring Way Center*, that are based in state consumer protection law rather than antitrust.

These factors strongly suggest that centralization will only increase—rather than streamline—the complexity of pretrial proceedings. As noted above, significant common discovery has already been conducted in the *Moehrl, Burnett*, and *Nosalek* cases. Furthermore, each of those cases (which appear to have been strategically left out here) are at advanced procedural postures. Far from supporting Movants' purported concerns about inconsistent rulings on potentially similar issues, the history of these cases—which includes well-reasoned decisions on, for example, motions to dismiss, motions for class certification, and summary judgment—provides the courts in the later-filed cases with a substantial body of judicial experience on which to draw when similar issues arise in their cases. Moreover, because *Moehrl, Burnett,* and *Nosalek*, along with *Batton I* and *Batton II* (which pursue similar antitrust claims, but on behalf of homebuyers) will not be transferred if this Motion is granted, the requested centralization will do little to diminish the risk of inconsistent rulings.

**D.    Movants fail to address options other than centralization which may be viable here.**

Next, as noted above, centralization under Section 1407 is a final resort. *See In re Gerber Probiotics Prods. Mktg. & Sales Practices Litig.*, 899 F. Supp. 2d 1378, 1379 (J.P.M.L. 2012) (centralization "should be the last solution after considered review of all other options."). Here, Movants do not even attempt to address other available options. To be sure, transfer under Section 1404(a) is not a viable alternative, given the localized nature of the claims and defendants in these

actions and the actions' geographic dispersion. *See* 28 U.S.C. § 1404(a) (permitting transfer only to a district where an action "might have been brought or to any district or division to which all parties have consented"). On the other hand, less formal means of coordination are available, as demonstrated by the sharing and coordination of discovery that has already been accomplished in the *Moehrl*, *Burnett/Sitzer*, and *Nozalek* cases. To the extent that any additional common discovery will need to be taken, there is no reason to think the parties will be unable to effectively coordinate to avoid duplication and unnecessary expense. *See In re Crest Sensitivity Treatment & Prot. Toothpaste Mktg. & Sales Practices Litig.*, 867 F. Supp. 2d 1348 (J.P.M.L. 2012) ("Various mechanisms are available to minimize or eliminate the possibility of duplicative discovery even without an MDL. Notices of deposition can be filed in all related actions; the parties can stipulate that any discovery relevant to more than one action can be used in all those actions; or the involved courts may direct the parties to coordinate their pretrial activities.").

**E.    The *Spring Way Center* plaintiffs join the HomeServices Defendants' request for oral argument.**

Finally, the *Spring Way Center* plaintiffs believe oral argument would assist the Panel in deciding the present Motion and so join the oral argument statement filed by the HomeServices Defendants.

**IV.    Conclusion**

For the foregoing reasons, the Plaintiffs in the *Spring Way Center* case respectfully request that the Panel deny the Motion for Transfer.

DATED: January 26, 2024                    Respectfully Submitted,

                                           /s/ *Bruce C. Fox*

                                           Bruce C. Fox, Esq. (PA ID 42576)
                                           OBERMAYER REBMANN

MAXWELL & HIPPEL LLP
525 William Penn Place, Suite 1710
Pittsburgh, PA 15219
(412) 566-1500
bruce.fox@obermayer.com
*Counsel for Spring Way Center Plaintiffs*

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

**In re: Real Estate Commission Antitrust**            )                          **MDL No. 3100**
    **Litigation**                                                      )
                                           )
                                           )

## <u>CERTIFICATE OF SERVICE</u>

In compliance with Rule 4.1(a) of the Rules of Procedure for the United States Judicial

Panel on Multidistrict Litigation, I hereby certify that a copy of the foregoing Brief in Opposition

to the Motion to Transfer for Coordinated or Consolidated Pretrial Proceedings was served on all

parties on January 26, 2024, electronically through the CM/ECF system, which sent notification

of said filing to all counsel of record who are registered as CM/ECF users and have entered an

appearance.

I further certify that on January 29, 2024, copies of the for the foregoing Brief in

Opposition to the Motion to Transfer for Coordinated or Consolidated Pretrial Proceedings were

mailed by first class mail to the following:

At World Properties, LLC
2356 North Elston
Chicago, IL 60614

ABRE Capital LLC
10601 Clarence Dr., Ste. 250
Frisco, TX 75033

AF Realty Group, LLC
760 Commerce St.
Perry, GA 31069

Ansley Atlanta Real Estate, LLC
3035 Peachtree Rd NE Ste 202
Atlanta, Georgia, 30305

Anywhere Real Estate Inc.
175 Park Ave

Madison, NJ 07940
ATC Metro Properties, Inc.
26 S Coria St Ste C2
Brownsville, Texas, 78520

Atlanta Communities Real Estate Brokerage, LLC
3113 Roswell Rd Ste 101
Marietta, Georgia, 30062

ATX Wir LLC
3307 NORTHLAND DR
Austin, TX 78731-8946

Austin Board of Realtors
4800 Spicewood Springs Rd
Austin, TX 78759

Austin/Central Texas Realty Information Service
936 Gruene Road
New Braunfels, TX  78130

Bay Area Real Estate Information Services, Inc.
153 Stony Circle, Suite 200
Santa Rosa, CA 95401

Beacham & Company, LLC
3060 Peachtree Rd NW Ste 100
Atlanta, Georgia, 30305

BHH Affiliates, LLC
18500 Von Karman Avenue, Suite 400
Irvine, California 92612

Bolst, Inc. d/b/a The Justin Landis Group
581 Grant St SE # B7
Atlanta, Georgia, 30312

Central Texas Multiple Listing Service, Inc.
14150 Pebble Hills Blvd Ste B
El Paso, Texas, 79938

Chapman Hall Realtors, Inc.
6100 Lake Forrest Drive Suite 120
Atlanta, GA 30328

Christie's International Real Estate LLC

20 Rockefeller Plaza
New York, New York, 10020

Citiquest Properties, Inc.
6807 Wynnwood Ln
Houston, Texas, 77008

Compass, Inc.
503 Westlake Avenue N
Seattle WA 98109

DMTX, LLC
1617 West 6th Street, Suite C
Austin, Texas 78703

Douglas Elliman Realty LLC
575 Madison Avenue, Suite 400
New York, NY 10022

DSJMM, LLC
8344 Spring Cypress Rd Ste B
Spring, Texas, 77379

Duckworth Properties, LLC
3441 Cypress Mill Rd Ste 203
Brunswick, Georgia, 31520

Elegran Real Estate, d/b/a Elegran LLC
1407 Broadway
New York, NY 10018

Engel & Volkers Americas, Inc.
430 Park Ave 11TH Fl
New York City, New York, 10022

Engel & Volkers Atlanta
1745 Peachtree Street NE, Suite T
Atlanta, GA 30309

Engel & Volkers LLC
430 Park Avenue, 11th Floor
New York, NY 10022

ERA Franchise Systems, LLC
75 Park Ave
Madison, New Jersey, 07940

Erin Lawrence
1600 Genessee Street
Kansas City, MO 64102

EVEREST CONSULTING GROUP LP d/b/a Berkshire Hathaway
HomeServices The Preferred Realty
1002 E Pittsburgh St
Greensburg, PA, 15601

eXp Realty LLC
2219 Rimland Dr Ste 301
Bellingham, Washington, 98226-8759

eXp World Holdings, Inc.
2219 Rimland Dr Ste 301
Bellingham, Washington, 98226-8759

Fathom Realty, LLC
2000 Regency Pkwy Ste 300
Cary, North Carolina, 27518

Fort Hood Area Association of Realtors, Inc.
306 W Mary Jane Dr.
Killeen, TX 76541

Four Rivers Association of Realtors, Inc.
936 Gruene Rd
New Braunfels, TX 78130

Grace Realty Group LLC
6841 Virginia Pkwy Ste 103
McKinney, Texas, 75071

Greater Atlanta Real Estate Group, LLC d/b/a Maximum One Realty
5041 Dallas Hwy Bldg 7-700
Powder Springs, GA 30127-6462

Greater Atlanta Realty Holdings Corporation d/b/a Maximum One Realty
1355 Terrell Mill Rd, Bldg 1464
Marietta, GA 30067

Greater El Paso Association of Realtors
6400 Gateway East
El Paso, TX 79905

Greater Fort Worth Association of Realtors, Inc.
2650 Parkview Drive
Fort Worth, TX 76102

Greenwood King Properties II, Inc.
1616 S Voss Rd Ste 900
Houston, Texas, 77057

Hamilton Dorsey Alston Company, Inc.
4401 NORTHSIDE PKWY STE 400
ATLANTA, GA, 30327

Hanna Holdings, Inc.
1090 Freeport Rd Ste lA
Pittsburgh, PA, 15238-3166

Hexagon Group, LLC
501 W George Bush Frwy Ste 125
Richardson, Texas, 75080

Heyl Group Holdings LLC
1001 S Capital of Texas I Hwy Bldg Ste 100
Austin, Texas, 78746

Higher Tech Realty, LLC d/b/a Mark Spain Real Estate
12600 Deerfield Pkwy Ste 450
Alpharetta, Georgia, 30004

HomeServices of America, Inc.
6800 France Avenue, Suite 610
Edina, Minnesota 55435

Homesmart Holdings
8388 E Hartford Dr Suite 100
Scottsdale, AZ 85255

HomeSmart International, LLC
8388 East Hartford Drive, Suite 100
Scottsdale, AZ 85255

Homesnap Inc.
7200 Wisconsin Ave #200
Bethesda, MD 20814

Houston Association of Realtors, Inc.
3693 Southwest Fwy

Houston, Texas, 77027
Greater El Paso Association of Realtors

Houston Realtors Information Service, Inc.
26511 Oak Ridge Dr
The Woodlands, Texas, 77380

HSF Affiliates, LLC
18500 Von Karman Avenue, Suite 400
Irvine, California 92612

JP PICCININI REAL ESTATE SERVICES, LLC
11891 Frg Dr
Frisco, Texas, 75035

Keller Williams Realty, Inc.
1221 South Mopac Expy, Suite 400
Austin, TX 78746

Keller Willis San Antonio, Inc.
10999 W Ih 10 Ste 175
San Antonio, TX 78230-1349

Long & Foster Companies, Inc.
3975 Fair Ridge Dr.
Fairfax, Virginia 22033

Marin Association of Realtors
40 Mitchell Blvd
San Rafael, CA 94903

Mark Anthony Dimas
16700 Huffmeister Rd
Cypress, TX 77429

Method Real Estate Group, LLC d/b/a Method Real Estate Advisors
1792 Woodstock Rd Ste 100
Roswell, Georgia, 30075

Metrotex Association of Realtors, Inc.
1701 Kinwest Parkway
Irving, TX 75063

MDHM, LLC
19315 FM 2252 Suite 155
Garden Ridge, TX 78266

MJHM LLC
19315 FM 2252 Suite 155
Garden Ridge, TX 78266

Modern Spaces LLC
1027 46th Ave 410
Long Island City, New York, 11101

Moreland Properties, Inc.
3825 Lake Austin Blvd #501
Austin, TX 78703

National Association of Realtors
430 N. Michigan Ave
Chicago, IL 60611-4087

Nest Seekers International LLC
505 Park Ave
New York, NY 10022

North Bay Association of Realtors
475 Aviation Blvd., Suite 220
Santa Rosa, CA 95403

North Texas Real Estate Information Systems, Inc.
1950 N Stemmons Fwy Ste 3018
Dallas, Texas, 75207

Northern Solano County Association of Realtors, Inc.
3690 Hilborn Rd
Fairfield, CA 94534

NRT PHILADELPHIA LLC d/b/a Coldwell Banker Realty
175 Park Ave
Madison, New Jersey, 07940

Palmerhouse Properties, LLC
2911 Piedmont Rd NE Ste B
Atlanta, Georgia, 30305
Path & Post, LLC d/b/a Path & Post Real Estate
214 River Park N Drive
Woodstock, GA 30188

Penfed Realty, LLC
2930 Eisenhower Ave

Alexandria, VA 22314

PIRAIN ENTERPRISES, INC. d/b/a NextHome PPM Realty
1308 Peermont Avenue
Pittsburgh, PA, 15216

PPSIR, LLC d/b/a Piatt Sothebys International Realty
9101 Foxhunt Rd 9101 Foxhunt Rd
Pittsburgh, Pennsylvania, 15237

RE/MAX Holdings, Inc.
5075 S Syracuse St
Denver, CO, 80237-2712

Real Agent LLC
13785 Research Blvd. Suite 125
Austin, TX 78750

Real Broker, LLC
100 King Street West, Suite 1600
Toronto, A6 M5X 1G5
Ontario, Canada

Real Brokerage, Inc.
100 King Street West, Suite 1600
Toronto, A6 M5X 1G5
Ontario, Canada

Realty Austin, LLC
3801 N Capital of Texas Hwy
Austin, TX 78746

REALTY ONE GROUP HORIZON, LLC
3731 William Penn Hwy Suite 200
Murrysville, PA 15668

Realty ONE Group, Inc.
23811 Aliso Creek Rd., Suite 168
Laguna Niguel, California 92677

Redfin Corporation
1099 Stewart St Ste 600
Seattle, WA 98101

RFT Enterprises, Inc.
640 N CARROLL AVE STE 100
Southlake, TX 76092

San Antonio Board of Realtors, Inc.
9110 IH-10 W
San Antonio, TX 78230

San Antonio Legacy Group, LLC
1102 E SONTERRA BLVD STE 106
San Antonio, TX 78258

Sanders Realty Holdings, LLC
625 Molly Ln
Woodstock, Georgia 30189

SF LLC
427 Cochran Rd
Pittsburgh, PA 15228

Side, Inc.
580 4th Street
San Francisco, CA 94107

Signature Properties Group, Inc.
600 Sea Island Rd. ST.
SIMONS ISLAND, Georgia 31522

Solano Association of Realtors, Inc.
1302 Springs Rd
Vallejo, CA 94591

Solid Source Realty
10900 Crabapple Rd
Roswell, Georgia, 30075

Square MB, LLC
6400 IMPERIAL DR
Waco, Texas 76712

Team Burns, LLC
1 COWBOYS WAY STE 571
Frisco, Texas, 75034

Temple-Belton Board of Realtors, Inc.
2703 Exchange Plz

Temple, Texas, 76504

Texas Association of Realtors, Inc.
1115 San Jacinto Blvd Ste 200
Austin, Texas, 78701

The Agency LLC
88 University PI 3rd Floor
New York, NY 10003

The Loken Group, Inc.
11037 Fm 1960 Rd W Ste Al
Houston, Texas, 77065

The Michael Group LLC
10300 N Central Expy 220
Dallas, Texas, 75231

The Modlin Group LLC
152 WEST 57TH STREET, 18TH FLOOR
NEW YORK, NY, 10019

Tracey Cousineau Real Estate, LLC
1755 N Brown Rd Ste 110
Lawrenceville, Georgia, 30043

Turner Mangum LLC
15010 FM 2100 Rd
Crosby, TX, 77532-9132

United Real Estate
5430 Lyndon B. Johnson Freeway, Suite 270
Dallas, Texas 75240

Victoria Area Association of Realtors, Inc.
2906 E Airline Rd.
Victoria, Tx 77901

Weichert of North America, Inc.
225 Littleton Rd, Morris
Plains, NJ, 07950

Weichert Realtors
1625 Route 10 East
Morris Plains, New Jersey 07950

WEST PENN MULTI-LIST, INC
8980 Perry Highway
Pittsburgh, Pennsylvania 15237

Williamson County Association of Realtors, Inc.
123 E Old Settlers Blvd.
Round Rock, TX 78664

      I further certify that, in accordance with Rule 3.2(d), I caused a courtesy copy of the

foregoing, marked "Courtesy Copy – Do Not File", to be sent to:

Clerk of the Panel
United States Judicial Panel on Multidistrict Litigation
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, NE, Room G-255, North Lobby
Washington, DC 20544

DATED: January 26, 2024                  /s/ *Bruce C. Fox*