BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE REAL ESTATE COMMISSION LITIGATION | MDL No. 3100 |

**PLAINTIFF MONTY MARCH'S OPPOSITION TO TRANSFER TO THE WESTERN DISTRICT OF MISSOURI PURSUANT TO 28 U.S.C. §1407**

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ...................................................................................................................... 5

    A.  Centralization Is Neither Necessary Nor Appropriate Since the REBNY and NAR Actions Do Not Involve Common Questions of Fact ................................................................. 6

    B.  The REBNY Actions Belong in New York Where REBNY, the Documents, and Witnesses Are Located ................................................................................................. 9

    C.  The Southern District of New York is the Most Convenient Forum for the REBNY Actions ........................................................................................................................ 11

    D.  Informal Cooperation Is Preferable to Formal Centralization .................................... 13

    E.  The Southern District of New York Is the Most Suitable Forum Because It Has the Necessary Experience and Resources to Adjudicate the REBNY Actions, as Well as Expertise in Antitrust Cases ........................................................................................ 13

III. CONCLUSION ................................................................................................................. 15

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re Aggrenox Antitrust Litig.*,
   11 F. Supp. 3d 1342 (J.P.M.L. 2014)...........................................................................................9

*In re Amerada Hess Corp. Antitrust Litig.*,
   395 F. Supp. 1404 (J.P.M.L. 1975).............................................................................................12

*In re: Am. Express Co. Anti-Steering Rules Antitrust Litig.*,
   657 F. Supp. 2d 1365 (J.P.M.L. 2009)....................................................................................6, 13

*In re Amtrak Train Derailment in Philadelphia, Pennsylvania*,
   140 F. Supp. 3d 1347 (J.P.M.L. 2015).......................................................................................10

*In re Baby Food Mtg. Sales Pracs & Prod. Liab. Litig.*,
   544 F. Supp. 3d 1375 (J.P.M.L. 2021).........................................................................................4

*In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*,
   804 F. Supp. 2d 1376 (J.P.M.L. 2011).........................................................................................5

*In re Credit Card Payment Prot. Plan Mtkg., & Sales Pracs. Litig.*,
   753 F. Supp. 2d 1375 (J.P.M.L. 2010).........................................................................................4

*In re Cuisinart Food Processor Antitrust Litig.*,
   506 F. Supp. 651 (J.P.M.L. 1981)................................................................................................9

*In re Dep't of Veterans Affairs (VA) Data Theft Litig.*,
   461 F. Supp. 2d 1367 (J.P.M.L. 2006).......................................................................................10

*In re Elevator & Escalator Antitrust Litig.*,
   350 F. Supp. 2d 1351 (J.P.M.L. 2004).......................................................................................14

*In re Eli Lilly & Co. Oraflex Prods. Liab. Litig.*,
   578 F. Supp. 422 (J.P.M.L. 1984)................................................................................................7

*In re: Fenofibrate Patent Litig.*,
   787 F. Supp. 2d 1352 (J.P.M.L. 2011).......................................................................................14

*In re: Forcefield Energy, Inc., Sec & Derivative Litig.*,
   154 F. Supp. 3d 1351 (J.P.M.L. 2015).........................................................................................6

*In re Gen. Motors Corp. Dex-Cool Prods. Liab. Litig.*,
   293 F. Supp. 2d 1381 (J.P.M.L. 2003).......................................................................................11

*In re: Hotel Indus. Sex Trafficking Litig.*,
    433 F. Supp. 3d 1353 (J.P.M.L. 2020)......................................................................................6

*In re Iowa Beef Packers, Inc.*,
    309 F. Supp. 1259 (J.P.M.L. 1970)............................................................................................6

*In re: Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
    24 F. Supp. 3d 1361 (J.P.M.L. 2014)......................................................................................14

*In re: Kind LLC (All Nat.) Litig.*,
    118 F. Supp. 3d 1380 (J.P.M.L. 2015)....................................................................................13

*In re Live Concert Antitrust Litig.*,
    429 F. Supp. 2d 1363 (J.P.M.L. 2006)....................................................................................10

*In re: Merrill Lynch & Co., Inc., Auction Rate Sec. (ARS) Mktg. Litig.*,
    626 F. Supp. 2d 1331 (J.P.M.L. 2009)....................................................................................13

*In re Municipal Derivatives Antitrust Litig.*,
    560 F. Supp. 2d 1386 (J.P.M.L. 2008)....................................................................................10

*In re Namenda Direct Purchaser Antitrust Litigation*,
    1:15-cv-07488-CM (S.D.N.Y. 2015)......................................................................................14

*In re Narconon Drug Rehabilitation Mktg., Sales Pracs. & Prods Liab Litig.*,
    84 F. Supp. 3d (J.P.M.L. 2015)..................................................................................................8

*In re Nine West LBO Sec. Litig.*,
    464 F. Supp. 3d 1383 (J.P.M.L. 2020)....................................................................................10

*Nosalek v. MLS Prop. Info. Network, Inc.*,
    No. 20-12244 (D. Mass.) ....................................................................................................3, 4

*Ohio Carpenters' Pension Fund et. Al v. Deutsche Bank AG et. al.*,
    No. 1:22-cv-10462 (S.D.N.Y)................................................................................................14

*In re Oxycontin Antitrust Litig.*,
    314 F. Supp. 2d 1388 (J.P.M.L. 2004)....................................................................................14

*In re Publication Paper Antitrust Litig.*,
    346 F. Supp. 2d 1370 (J.P.M.L. 2004)......................................................................................9

*In re Royal Am. Indus, Inc., Sec., Litig.*,
    407 F. Supp. 242 (J.P.M.L. 1976)..............................................................................................6

*In re Sears, Roebuck & Co. Emp. Pracs. Litig.*,
    487 F. Supp. 1362 (J.P.M.L. 1980)............................................................................................7

*In re Secondary Ticket Mkt., Refund Litig.*,
    481 F. Supp. 3d 1345 (J.P.M.L. 2020) ................................................................................7

*In re: Set-Top Cable Television Box Antitrust Litig.*,
    589 F. Supp. 2d 1379 (J.P.M.L. 2008) ..............................................................................14

*In re Sierra Wireless, Inc., Sec. Litig.*,
    387 F. Supp. 2d 1363 (J.P.M.L. 2005) ..............................................................................12

*SFPP, LP, R.R. Prop. Rights Litig.*, 121 F. Supp. 3d 1360, 1361 (J.P.M.L. 2015) .........................8

*In re Supervalu, Inc., Customer Data Sec. Breach Litig.*,
    67 F. Supp. 3d 1377 (J.P.M.L. 2014) ................................................................................11

*In re Trilegiant Membership Program Mktg. & Sales Pracs. Litig.*,
    828 F. Supp. 2d 1362 (J.P.M.L. 2011) ..............................................................................13

*In re Varsity Spirit Athlete Abuse Litig.*,
    MDL No. 3077 (J.P.M.L. June, 5, 2023) .............................................................................7

*In re Worldcom, Inc. Sec. & "ERISA" Litig.*,
    226 F. Supp. 2d 1352 (J.P.M.L. 2002) ..............................................................................12

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
    254 F. Supp. 2d 1368 (J.P.M.L. 2003) ..............................................................................11

*In re Xyrem (Sodium Oxybate) Antitrust Litig.*,
    509 F. Supp. 3d 1375 (J.P.M.L. 2020) ................................................................................9

**Statutes**

28 U.S.C. §1407 ............................................................................................................. *passim*

28 U.S.C. §1407(a) .................................................................................................................6

Plaintiff Monty March, in the *March v. Real Estate Board of New York, et al.*, No. 1:23-cv-09995-JGLC-RWL (S.D.N.Y.) action pending in the United States District Court for the Southern District of New York, respectfully submits this opposition to Plaintiffs Don Gibson, Lauren Criss, John Meiners,[1] and Daniel Umpa's[2] ("Movants") motion to transfer nine actions listed in their motion to the Western District of Missouri pursuant to 28 U.S.C. §1407.  For the reasons set forth below, with regard to the two pending REBNY actions (*March* and *Friedman*),[3] Movants' motion should be denied on the grounds that it is unnecessary and inappropriate.

I.  INTRODUCTION

The REBNY actions are brought on behalf of all persons who listed and sold residential real estate in Manhattan and Brooklyn beginning November 2019 to the present, pursuant to REBNY and the REBNY Listing Service ("RLS") Universal Co-Brokerage Agreement/Rules and Regulations ("Rules").[4]  REBNY and RLS are not named as Defendants in any other case listed on the Schedule of Actions filed by Movants (MDL No. 3100, ECF 2).  The *March* and *Friedman* actions assert a Sherman Act §1 antitrust claim and a New York State Donnelly Act antitrust claim,

---

[1] Plaintiffs in *Gibson, et al. v. Nat'l Ass'n of Realtors et al.*, No. 4:23-cv-00788-SRB (W.D. Mo.), filed October 31, 2023.

[2] Plaintiff in *Umpa v. Nat'l Ass'n of Realtors et al.*, No. 4:23-cv-00945 (W.D. Mo.), filed December 27, 2023.

[3] The motion initially did not identify an action entitled *Robert Friedman v. Real Estate Board of New York, et al.*, No. 1:23-cv-09601 (E.D.N.Y.), which was initially filed in the Eastern District of New York, but has subsequently been voluntarily dismissed without prejudice and refiled in the Southern District of New York (No. 1:24-cv-00405), as a related matter to the *March* action. This refiling is a product of an agreement between counsel in the *March* and *Friedman* actions to coordinate their related (Real Estate Board of New York and Real Estate Board of New York Listing Service (collectively "REBNY")) actions for all pretrial purposes (the "REBNY actions").  The parties are presently in the process of seeking coordination of the REBNY actions in SDNY.

[4] The REBNY RLS provides coverage only for residential real estate in parts of New York City's five boroughs—Manhattan, Brooklyn, the Bronx, Queens, and Staten Island.

1

alleging violations concerning REBNY's unique and egregious compensation Rules which govern respectively, Manhattan and Brooklyn residential real estate listed on the RLS.  The REBNY Plaintiffs allege that REBNY/REBNY Listing Service residential real estate brokerage firms agreed in writing "to abide by the terms and conditions set forth in the RLS Universal Co-Brokerage Agreement/Rules and Regulations" including the compensation provisions contained in Article IV.  The brokerage firm Defendants agreed "the Exclusive Broker and the Co-Broker shall each be paid an ***equal share*** of the commission as specified in the Exclusive Listing."  *Id.* (emphasis added).  This equal split is quite different from the National Association of Realtors ("NAR") rule, which is the subject of Movants' underlying actions (collectively, the "NAR actions").

Further, unlike the NAR actions, the REBNY actions involve: (i) a different and more egregious compensation rule; (ii) largely different regional defendants; (iii) a different region of the country; (iv) a different time period; (v) different witnesses and evidence, largely confined to Manhattan and Brooklyn; and (vi) a different set of state real estate licensing laws and state regulatory scheme. These facts make the *March* and *Friedman* REBNY actions undeniably distinguishable from and unrelated to the NAR actions.

Movants ignore these significant differences, which make centralization inappropriate, yet seek transfer of this Manhattan action to Missouri which has no nexus whatsoever.

With respect to the NAR actions, beginning in 2019, the first of at least three antitrust class actions was filed against the NAR, and a common group of regional residential real estate brokerage firms, alleging NAR's residential real estate commission rule violates Section 1 of the

Sherman Act, 15 U.S.C. §1.[5]  For years, these lawsuits brought on behalf of local home sellers have individually proceeded in at least three different federal courts. *Id*. Notably, it appears that Plaintiffs' counsel in the *Burnett*/*Sitzer*, *Moehrl* and *Nosalek* actions, many of whom also represent Movants, *did not* file a 28 U.S.C. §1407 transfer motion seeking to consolidate or coordinate the actions before a single court until now, nearly five years later.  Their failure to file a §1407 transfer motion is telling and reflects an informed decision by seasoned MDL counsel that those cases involved localized issues concerning different regions of the country, thereby making centralization neither appropriate nor necessary under §1407.

Between 2019 and November of 2023, Movants' counsel has never alleged an antitrust claim involving REBNY, nor represented a New York client pursuing a New York claim.  But now they seek to sweep REBNY's annual $21 billion Manhattan residential real estate market and *March's* Manhattan and *Friedman's* Brooklyn-based antitrust claims into the Western District of Missouri.  This begs the question: if it was not necessary or appropriate to centralize the *Burnett*/*Sitzer*, *Moehrl* and *Nosalek* actions before now, why is it appropriate to centralize the *March* and *Friedman* actions which do not allege a claim against NAR and do not involve the NAR compensation rule?  This is a fair question since the Western District of Missouri has no meaningful nexus to either REBNY case. Moreover, New York has its own unique licensing and regulatory regimes that govern the sale of residential real estate.

Uprooting the unrelated *March* and *Friedman* actions and then subsuming them within the sprawling "industry wide MDL" finds no support in MDL jurisprudence since: (i) REBNY is

---

[5]     *Moehrl v. Nat'l Ass'n of Realtors et al.*, No. 1:19-cv-01610 (N.D. Ill.), filed March 6, 2019; *Burnett*/*Sitzer v. Nat'l Ass'n of Realtors et al.,* No. 4:19-cv-00332 (W.D. Mo.), filed April 29, 2019; *Nosalek v. MLS Prop. Info. Network, Inc*., No. 20-12244 (D. Mass.), filed December 17, 2020, collectively the "NAR actions."

headquartered in Manhattan; (ii) the underlying anticompetitive conduct occurred in Manhattan and Brooklyn; (iii) virtually all the named regional residential real estate brokerage firms are located in or around Manhattan; and (iv) likely relevant documents, witnesses and evidence are centrally located in Manhattan. *See, e.g.*, *In re Baby Food Mtg. Sales Pracs & Prod. Liab. Litig.*, 544 F. Supp. 3d 1375, 1376-77 (J.P.M.L. 2021) (declining to create industry wide MDL against baby food manufacturers because "each defendant manufactures, markets, and distributes its own baby products subject to different manufacturing processes"); *In re Credit Card Payment Prot. Plan Mtkg., & Sales Pracs. Litig.*, 753 F. Supp. 2d 1375, 1375-76 (J.P.M.L. 2010) (declining to centralize industry wide litigation involving defendants selling different products marketed in different ways, involving different suppliers and because specific facts would predominate over common factual questions).

The only connection Movants assert as a basis for their motion seeking transfer of the *March* action is that REBNY involves a Section 1 antitrust claim concerning artificially inflated residential real estate commissions. Movant's Brief In Support of Gibson and Umpa Plaintiffs' Motion For Transfer And Centralization Pursuant To 28 U.S.C. §1407 ("Mov. Mem.") at 7. That is not a *common issue of fact* required for transfer under §1407. It is, at best, a legal question which is not complex and cannot serve as a basis for transfer. To suggest to the Panel that efficiencies can be achieved by centralizing the *March* and *Friedman* actions, with distinct regional antitrust claims involving a very different compensation rule, different Defendants, and an entirely different regional market with its own unique regulatory scheme, is illogical.

The fact that Movants' counsel previously informally coordinated the *Burnett*/*Sitzer*, *Moehrl*, and *Nosalek* NAR actions and now endeavor to sweep in the *March* and *Friedman* REBNY actions, which are in the process of being coordinated themselves, undermines Movants'

motion. This motion inexplicably deviates from Movants' counsel's prior decision in *Burnett/Sitzer*, *Moehrl*, and *Nosalek not to seek centralization of a small number of cases in favor of coordination*. There is no sound basis to include the *March* and *Friedman* actions in the NAR actions (even if there were a sound basis to centralize the later filed NAR actions).

Centralization under 28 U.S.C. §1407 "should be the last solution after considered review of all other options."[6] Accordingly, Plaintiff March respectfully requests that the Judicial Panel on Multidistrict Litigation deny centralization as to both, the *March* and *Friedman* actions in order to allow for continued coordination and prosecution of these two actions in the Southern District of New York, which is the most convenient forum for the REBNY parties and witnesses. Counsel for Plaintiff Friedman has informed that while their response to Movants' motion is not due to the Panel until February 13, 2024, *Friedman* intends to oppose centralization for substantially similar reasons as those set forth herein.[7] Finally, Movants will sustain no prejudice if the Panel denied this motion as to the *March* and *Friedman* actions as Movants can always re-petition the Panel, in the future, if a genuine basis for transfer arises.

**II.    ARGUMENT**

The statutory framework under 28 U.S.C. §1407, as Movants concede, requires the Panel to determine whether "civil actions involving one or more *common questions of fact* are pending

---

[6]    *In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011).

[7]    *Friedman* was first identified as a related action in this MDL on January 23, 2024 (MDL No. 3100, ECF Nos. 204, 204-1), triggering the 21-day period to respond which extends to February 13, 2024.
In addition to *Friedman's* forthcoming response, the March Plaintiff understands that most of the Defendants named in *March*, including Defendant REBNY, either already have, or intend to oppose Movants' motion. *See e.g.,* MDL No. 3100, ECF Nos. 257, 266, 270, 272, 276, 279 283, 289, 291.

in different districts," and whether transfer will serve the convenience of the parties and witnesses, while promoting the just and efficient conduct of the actions. *See* 28 U.S.C. §1407(a); Mov. Mem. at 5 (emphasis added). Based upon a review of these factors, Plaintiff March opposes transfer to the Western District of Missouri, and respectfully submits that transfer and consolidation is neither necessary nor appropriate.

### A. Centralization Is Neither Necessary Nor Appropriate Since the REBNY and NAR Actions Do Not Involve Common Questions of Fact

Movants bear the burden of showing that centralization of the REBNY actions with the NAR actions, is appropriate under 28 U.S.C. §1407. *In re Royal Am. Indus, Inc., Sec., Litig.*, 407 F. Supp. 242, 243 (J.P.M.L. 1976) (denying centralization of two actions). "Where only a minimal number of actions are involved, the proponents of centralization bear a *heavier burden* to demonstrate that centralization is appropriate." *In re: Forcefield Energy, Inc., Sec & Derivative Litig.*, 154 F. Supp. 3d 1351, 1352 (J.P.M.L. 2015) (emphasis added); *In re Iowa Beef Packers, Inc.*, 309 F. Supp. 1259, 1260 (J.P.M.L. 1970) (denying centralization); *In re: Am. Express Co. Anti-Steering Rules Antitrust Litig.*, 657 F. Supp. 2d 1365, 1366 (J.P.M.L. 2009) (denying centralization of six actions pending in adjacent districts, noting that the involved courts can "coordinate their efforts in order to avoid as much as practicable inconsistent pretrial rulings"). Movants have not and cannot meet their heavy burden to show that centralization of the REBNY actions in the Western District of Missouri is appropriate. For centralization to be appropriate under 28 U.S.C. §1407, civil actions must involve "one or more common questions of fact." *Id*. When common questions of fact do not predominate, centralization is inappropriate. *In re: Hotel Indus. Sex Trafficking Litig.*, 433 F. Supp. 3d 1353, 1356 (J.P.M.L. 2020). Movants assert all the cases "will involve common discovery." Mov. Mem. at 2. That is incorrect.

Movants ignore that centralization is inappropriate when fundamentally distinct factual differences exist, as here, between the REBNY and NAR actions. To be sure, the REBNY and NAR actions concern: (i) different compensation rules; (ii) largely different regional defendants; (iii) different regions of the country; (iv) different time periods; (v) different witnesses and evidence; and (vi) different state licensing and regulatory schemes. *See In re Varsity Spirit Athlete Abuse Litig.*, MDL No. 3077 (J.P.M.L. June, 5, 2023) (denying centralization involving different factual issues). Here, differences abound, thereby making *uncommon* questions of fact predominate.[8] *In re Eli Lilly & Co. Oraflex Prods. Liab. Litig.*, 578 F. Supp. 422, 423 (J.P.M.L. 1984) (denying centralization because common questions of fact did not predominate); *In re Sears, Roebuck & Co. Emp. Pracs. Litig.*, 487 F. Supp. 1362, 1364 (J.P.M.L. 1980) (denying centralization of five actions concerning discrimination at different Sears locations).

Few efficiencies can be achieved when "factual commonality across the actions appear[] to be superficial at best." *In re Secondary Ticket Mkt., Refund Litig.*, 481 F. Supp. 3d 1345, 1346 (J.P.M.L. 2020). Given the regional nature of these actions, the different rules, evidence, and defendants, there is little to no efficiency to be gained here by transferring the two REBNY actions under §1407 to the Western District of Missouri for consolidation with the dissimilar NAR actions.

In support of this motion, Movants mistakenly assert that five common factual questions make centralization appropriate. *See* Mov. Mem. at 7-8. Movants confuse *legal* questions for *factual* questions. Four of the asserted questions are not common questions of fact, but rather questions of law such as: (i) whether the defendants entered into an "agreement" or "conspiracy"

---

[8] One fundamental factual difference between the REBNY and NAR cases is that Defendant REBNY itself operates, manages, and has sole control over REBNY's Residential Listing Service. REBNY promulgates and implements its own rules. In contrast, the listing services that implement the NAR rules are typically managed and operated by local Realtor Associations, and not NAR itself.

7

under Section 1 of the Sherman Act; (ii) whether the defendants possess "market power" under the Sherman Act; (iii) whether Defendants engaged in "steering" in violation of the antitrust laws; and (iv) whether "competitive harm" substantially outweighs any "competitive benefits" under the Sherman Act. It bears mentioning that the *March* action *does not* allege a "steering" claim so that *cannot* serve as either a common legal question nor a mistaken common factual question.

On reply, Movants will likely concede, as they must, that these are indeed legal issues, but contend they are complex in nature, warranting centralization. Movants would be wrong. *In re Narconon Drug Rehabilitation Mktg., Sales Pracs. & Prods Liab Litig.*, 84 F. Supp. 3d at 1367-68 (J.P.M.L. 2015) ("[w]e are not convinced, though, that these common issues are sufficiently or complex or numerous to warrant the creation of an MDL," noting the actions "will involve significant case-specific facts, such as the specific representations . . . made to each plaintiff"). These are straightforward legal issues juries address at trial in antitrust cases all the time. But more importantly, the legal determinations will be based upon *different* underlying facts between the REBNY and NAR cases. Accordingly, common factual issues do not exist, thereby making centralization inappropriate.

It is well recognized that seeking uniform legal determinations alone is generally not a sufficient basis for seeking centralization. *SFPP, LP, R.R. Prop. Rights Litig.*, 121 F. Supp. 3d 1360, 1361 (J.P.M.L. 2015) (denying centralization based upon questions which are "legal in nature").

Moreover, Movants assert the class definition in the *March* and *Friedman* actions overlap with the NAR actions, but that is patently false. Mov. Mem. at 5 ("overlapping class definitions"). The *March* and *Friedman* actions involve REBNY rules concerning the Manhattan and Brooklyn residential real estate markets which are unrelated to any NAR action. Movants also assert there

are "numerous overlapping defendants." Mov. Mem at 8. Movants do not identify the "numerous overlapping defendants" between the REBNY and NAR actions and have not satisfied their heavy burden. There are approximately 27 Defendants in the *March* action. Of these, only four are named in limited NAR actions: (1) Defendant Compass, Inc. (named in four NAR actions); (2) Douglas Elliman, Inc. (in two NAR actions); (3) Christie's International Real Estate LLC (in one NAR action); and (4) Sotheby's International Realty Affiliates LLC (in one NAR action). This is because the *March* and *Friedman* actions largely name specific regional companies, most of which are not named in any NAR action. That two entities may be related or operate under the same corporate umbrella does not equate the entities, nor the liability that attaches to each.

Where issues are different or unique there can be no efficiency gained by centralizing unrelated cases since there will be little duplicative discovery or conflicting pretrial rulings concerning different rules and witnesses and evidence. Thus, the REBNY cases simply do not "fit the §1407 mold" nor do they present an opportunity to promote efficiency or avoid wasting resources for both the parties and the Court because the facts and evidence are simply not the same.

**B.     The REBNY Actions Belong in New York Where REBNY, the Documents, and Witnesses Are Located**

One important factor considered by the Panel is where the Defendants are headquartered and/or where offices, documents, witnesses, and other evidence relevant to the actions can be found. *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, 509 F. Supp. 3d 1375, 1376 (J.P.M.L. 2020) (transferring actions to the Northern District of California where brand name Defendant Jazz Pharmaceuticals maintains offices); *In re Aggrenox Antitrust Litig.*, 11 F. Supp. 3d 1342 (J.P.M.L. 2014) (finding Connecticut most appropriate because Defendant Boehringer Ingelheim is headquartered in Ridgefield, Connecticut); *In re Publication Paper Antitrust Litig.*, 346 F. Supp. 2d 1370, 1372 (J.P.M.L. 2004) (selecting Connecticut because the largest domestic defendant was

9

located there); *In re Cuisinart Food Processor Antitrust Litig.*, 506 F. Supp. 651, 655 (J.P.M.L. 1981) (selecting Connecticut because the corporate offices of Cuisinart were located in Greenwich, Connecticut); *In re Municipal Derivatives Antitrust Litig.*, 560 F. Supp. 2d 1386, 1387 (J.P.M.L. 2008) (selecting the Southern District of New York because "relevant documents and witnesses are likely to be found there"); *In re Live Concert Antitrust Litig.*, 429 F. Supp. 2d 1363, 1364 (J.P.M.L. 2006) (noting the location of defendant Clear Channel's headquarters as a relevant factor in the selection of transferee district).

Here, not only are REBNY and REBNY RLS headquartered in Manhattan, but virtually all the other REBNY regional Defendants maintain headquarters or offices in Manhattan, making the Southern District of New York the "center of gravity" and the singularly logical place for the REBNY actions to proceed. *In re Nine West LBO Sec. Litig.*, 464 F. Supp. 3d 1383 (J.P.M.L. 2020) (finding "center of gravity" where two defendants were headquartered and many other entities involved in the underlying conduct are located); *In re Amtrak Train Derailment in Philadelphia, Pennsylvania*, 140 F. Supp. 3d 1347 (J.P.M.L. 2015) (finding "center of gravity" where underlying conduct occurred).

Another important factor considered by the Panel relates to where the alleged conduct occurred. S*ee, e.g., In re Dep't of Veterans Affairs (VA) Data Theft Litig.*, 461 F. Supp. 2d 1367, 1369 (J.P.M.L. 2006) (selecting the District of Columbia as the transferee district because, *inter alia*, "the theft [of data] occurred in the Washington, D.C., metropolitan area"). As detailed *supra*, the REBNY RLS is limited at most to the five boroughs of New York City—Manhattan, Brooklyn, Queens, the Bronx, and Staten Island—as that is where the underlying conduct in the REBNY actions occurred.

Another factor the Panel considers in situations where consolidation and transfer are appropriate, is the proximity of the proposed transferee district to the documents and witnesses. *See e.g., In re Gen. Motors Corp. Dex-Cool Prods. Liab. Litig.*, 293 F. Supp. 2d 1381, 1382 (J.P.M.L. 2003) (noting the proximity of the transferee district to documents and witnesses); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 254 F. Supp. 2d 1368, 1370 (J.P.M.L. 2003) (reasoning that the transferee district was "conveniently located for many . . . witnesses"). Manhattan, where Defendants' headquarters/offices are located and where the underlying conduct occurred, is very likely to be where key documents, witnesses and other evidence are located and why both the *March* and *Friedman* actions were filed in federal courts sitting in Manhattan and Brooklyn. For the foregoing reasons, allowing the REBNY actions to proceed in the Southern District of New York on a coordinated basis will promote efficiency.

    C.    **The Southern District of New York is the Most Convenient Forum for the REBNY Actions**

REBNY and REBNY RLS are headquartered in New York. The underlying conduct in the *March* and *Friedman* actions occurred in Manhattan and the parties and nearly all counsel of record in the REBNY actions are located in the greater New York metropolitan area.[9] The regional residential real estate brokerage Defendants that allegedly agreed to abide by the REBNY RLS compensation rule are nearly all in Manhattan. They do not follow NAR rules in their brokerage activities in the REBNY RLS. The Southern District of New York offers a much more convenient and accessible forum for the parties, counsel and witnesses than the Western District of Missouri. Moreover, the Western District of Missouri has no connection with the evidence or witnesses in the *March* and *Friedman* actions. Transferring these cases to the Western District of Missouri,

---

[9]     *See In re Supervalu, Inc., Customer Data Sec. Breach Litig.*, 67 F. Supp. 3d 1377, 1378 (J.P.M.L. 2014) (noting the close proximity of the plaintiffs in deciding that a district was both convenient and accessible for the majority of the parties).

11

which has no real nexus with these actions, would prejudice the parties and counsel by forcing them to litigate their claims away from the headquarters of REBNY and most other Defendants, where documents are likely maintained and witnesses relevant to this case are located.

For the handful of counsel of record in the REBNY action with offices outside the greater New York metropolitan area, Manhattan is a far more accessible forum. The Southern District of New York is serviced by three international airports. In addition, there are a multitude of rail and rapid transit systems in the vicinity coupled with a plethora of hotel, taxi, and car rental agencies. These options make the Southern District of New York significantly more accessible and convenient than the Western District of Missouri. *See In re Worldcom, Inc. Sec. & "ERISA" Litig.*, 226 F. Supp. 2d 1352, 1355 (J.P.M.L. 2002) ("a litigation of this scope will benefit from coordination in a major metropolitan center that is well served by major airlines, provides ample hotel and office accommodations, and offers a well-developed support system for legal services"). Moreover, the presence of ample convenience has similarly been noted by the Panel and been given substantial weight. *See In re Sierra Wireless, Inc., Sec. Litig.*, 387 F. Supp. 2d 1363, 1364 (J.P.M.L. 2005) (transfer to the "Southern District of New York will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation"); *In re Amerada Hess Corp. Antitrust Litig.*, 395 F. Supp. 1404, 1405 (J.P.M.L. 1975) (same). Transferring the *March* and *Friedman* actions to the Western District of Missouri would not only be inconvenient, but it would significantly increase the litigation costs to nearly all REBNY action parties by requiring the parties, counsel, and witnesses in the REBNY actions to travel to Missouri away from their Manhattan offices for the adjudication of this matter. For these reasons, the Southern District of New York is the most convenient forum for the *March* and *Friedman* actions.

### D. Informal Cooperation Is Preferable to Formal Centralization

As the Movants must recognize, where there are only a few cases pending which involve separate localized issues, cooperative efforts by the parties is superior to formal centralization. *In re Am. Express Co. Anti-Steering Rules Antitrust Litig.*, 657 F. Supp. 2d 1365 (J.P.M.L. 2009) (denying centralization when courts can "coordinate their efforts in order to avoid as much as practicable inconsistent pretrial rulings"); *In re Trilegiant Membership Program Mktg. & Sales Pracs. Litig.*, 828 F. Supp. 2d 1362, 1362 (J.P.M.L. 2011) (denying centralization). Here, the *Friedman* action was initially filed in the Eastern District of New York. But the REBNY Plaintiffs have reached agreement that the *Friedman* action should be voluntarily dismissed without prejudice and refiled in the Southern District as a related matter to the *March* action. That re-filing has occurred and the *Friedman* action has been recognized as a related matter to the *March* action. *Friedman*, No. 1:24-cv-00405 (S.D.N.Y.), ECF 4. The parties in the *March* and *Friedman* actions have agreed to jointly move to coordinate the actions in the Southern District of New York. Given the process of coordination, which is already underway, the REBNY actions should be allowed to proceed on a coordinated basis in REBNY's home forum in accordance with prior Panel rulings.

### E. The Southern District of New York Is the Most Suitable Forum Because It Has the Necessary Experience and Resources to Adjudicate the REBNY Actions, as Well as Expertise in Antitrust Cases

The Panel also typically considers the experience of a potential transferee forum. *See In re: Merrill Lynch & Co., Inc., Auction Rate Sec. (ARS) Mktg. Litig.*, 626 F. Supp. 2d 1331, 1333 (J.P.M.L. 2009) (assigning case to a district with the "experience necessary to steer this litigation on a prudent course"); *In re: Kind LLC (All Nat.) Litig.*, 118 F. Supp. 3d 1380, 1381 (J.P.M.L. 2015) (transferring to district that "has the necessary judicial resources and expertise to efficiently manage this litigation"). The Southern District of New York has extensive experience handling complex MDL and non-MDL actions. It has significant experience with antitrust class actions like

13

this case. *See, e.g.*, *In re Oxycontin Antitrust Litig.*, 314 F. Supp. 2d 1388 (J.P.M.L. 2004) (class action alleging anticompetitive scheme by defendant to extend its monopoly over its brand drug and the generic equivalents); *In re: Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 24 F. Supp. 3d 1361 (J.P.M.L. 2014) (individual and class action plaintiffs alleging anticompetitive conduct with respect to the Keurig single-serve brewer and single-serve coffee packs utilized in the Keurig brewer); *In re: Fenofibrate Patent Litig.*, 787 F. Supp. 2d 1352 (J.P.M.L. 2011); *In re: Set-Top Cable Television Box Antitrust Litig.*, 589 F. Supp. 2d 1379 (J.P.M.L. 2008); *In re Namenda Direct Purchaser Antitrust Litigation*, 1:15-cv-07488-CM (S.D.N.Y. 2015) (class action alleging anticompetitive pay-for-delay scheme and product hop).

The antitrust cases that the Panel has transferred to the Southern District of New York demonstrate that the Panel has confidence that the Southern District of New York has the necessary and substantial experience in effectively managing antitrust litigation. *See e.g., In Re SSA Bonds Antirust Litigation*, No 1:16-cv-03711 (S.D.N.Y), filed May 18, 2016; *In Re: European Government Bonds Antitrust Litigation*, No 1:19-cv-02601 (S.D.N.Y), filed March 22, 2019; *In Re GSE Bonds Antitrust Litigation*, No 1:19-cv-01704 (S.D.N.Y), filed February 22, 2019; *In Re Foreign Exchange Benchmark Rates Antitrust Litigation*, 1:13-cv-07789 (S.D.N.Y.), filed November 1, 2013; *Ohio Carpenters' Pension Fund et. Al v. Deutsche Bank AG et. al.*, No. 1:22-cv-10462 (S.D.N.Y), filed December 9, 2022. Moreover, the Southern District of New York, as the Panel has already recognized, has the requisite resources to efficiently and expertly handle the *March* and *Friedman* actions. *See In re Elevator & Escalator Antitrust Litig.*, 350 F. Supp. 2d 1351, 1353 (J.P.M.L. 2004) (the Southern District of New York "is equipped with the resources that this complex antitrust docket is likely to require"). Accordingly, the Southern District of New York is well suited to manage the *March* and *Friedman* actions.

## III. CONCLUSION

For the reasons set forth above, Plaintiff Monty March respectfully requests that the Panel deny Movant's motion with respect to the *March* and *Friedman* REBNY actions.

DATED: January 26, 2024

**MOTLEY RICE LLC**

/s/ *Michael M. Buchman*
MICHAEL M. BUCHMAN
777 Third Avenue, 27th Floor
New York, NY 10017
Telephone: 212-577-0050
mbuchman@motleyrice.com

PATRICK COUGHLIN
CARMEN MEDICI (*pro hac vice* forthcoming)
FATIMA BRIZUELA
JONATHAN SMALLWOOD (*pro hac vice*)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508
pcoughlin@scott-scott.com
cmedici@scott-scott.com
fbrizuela@scott-scott.com
jsmallwood@scott-scott.com
PATRICK MCGAHAN
ISABELLA DE LISI (*pro hac vice* forthcoming)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: 860-537-5537
pmcghan@scott-scott.com
idelisi@scott-scott.com

*Counsel for Plaintiff Monty March*