BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| In re: Real Estate Commission Antitrust Litigation | § § § § | MDL No. 3100 |

**DEFENDANT MLS PROPERTY INFORMATION NETWORK'S
INTERESTED PARTY RESPONSE TO MOTION FOR TRANSFER AND
CENTRALIZATION PURSUANT TO 28 U.S.C. § 1407**

MLS Property Information Network, Inc. (MLS PIN) respectfully submits this statement of interest opposing transfer and consolidation. *See* J.P.M.L. Rule 6.2(e). This statement is offered in direct response to the position advocated by the National Association of Realtors (NAR) that the scope of consolidation requested in the original consolidation motion, (Dkt. #1), should be expanded to include *Nosalek v. MLS Property Information Network, Inc.*, No. 20-CV-12244 (D. Mass. Dec. 17, 2020). *See* (Dkt. #196 at 1–3, 9–10). MLS PIN urges that the Panel deny the consolidation motion and, in any event, exclude *Nosalek* from any consolidated proceeding.

## INTRODUCTION

Many parties, both plaintiffs and defendants alike, have already explained why transfer and consolidation of the various real-estate commission cases would be neither necessary nor helpful. Informal coordination could achieve the same efficiencies without the need to lump over two hundred defendants[1] into the same proceeding. Consolidation, by contrast, would require merging cases not only with radically different procedural postures, but also with profound practical distinctions overwhelming any superficial similarities.

---

[1] *See* (Dkt. #251 at 8–9 & n.9) (HomeServices Defendants calculating the number of Defendants implicated by the consolidation motion).

1

MLS PIN writes separately to present the *Nosalek* action, pending in the District of Massachusetts, as a case-in-point for the drawbacks to consolidation. *Nosalek* was not included in the original consolidation motion and for good reason. Unlike almost all other multiple listing services implicated in this motion, MLS PIN does not in any way "roll up" to the NAR or its state and local affiliates. Consequently, the real-estate commission rules promulgated and enforced by NAR—the alleged "common theme" supporting centralization, *see* (Dkt. #196 at 16) (NAR brief supporting consolidation)—are not at issue in *Nosalek*. Nor are the NAR's ethical rules and handbook, which are front and center in other cases. In fact, NAR is not even a party to *Nosalek*. Moreover, procedurally, *Nosalek* is light-years beyond many of the other actions with fact discovery set to close on March 1st, less than a month away, and a settlement preliminarily approved in *Nosalek* as to MLS PIN.

MLS PIN was, therefore, surprised to learn that NAR not only supports consolidation but also wants the scope of consolidation expanded to ensnare *Nosalek*. *See* (Dkt. #196 at 1–3, 9–10) ("Additionally, the Panel should also centralize the *Nosalek* case . . . ."). Inclusion of *Nosalek* in the consolidation will inevitably delay proceedings and the final approval of MLS PIN's settlement. MLS PIN, therefore, joins the chorus of other parties in urging that the consolidation motion be denied. It requests alternatively that *Nosalek* be excluded from any consolidated proceeding if one is created given the distinctions as to its fact issues, scope of discovery, and procedural posture.

## DISCUSSION

**A.     Because MLS PIN Promulgates and Enforces Its Own Rules Without Regard to NAR, Common Questions of Fact Are Absent.**

The JPML has consistently recognized that consolidation is an option of last resort, reserved for circumstances when no better alternatives can efficiently resolve "common questions

of fact" across a substantial number of cases. *See* 28 U.S.C. § 1407; *In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011) ("[C]entralization under Section 1407 should be the last solution after considered review of all other options."); *In re Invokana (Canagliflozin) Prods. Liab. Litig.*, 223 F. Supp. 3d 1345, 1348 (J.P.M.L. 2016) (centralization was unwarranted as to a group of twenty-one cases—a "relatively small number" for MDL purposes). The movant must establish that the factual issues overlap to such a degree that to litigate them by any alternative method would be unwieldy. *See* 28 U.S.C. § 1407; *Best Buy*, 804 F. Supp. 2d at 1378.

For that reason, centralization is not appropriate based on similarity of some abstract legal issues. *See In re Medi-Cal Reimbursement Rate Reduction Litig.*, 652 F. Supp. 2d 1378, 1378 (J.P.M.L. 2009) ("Merely to avoid two federal courts having to decide the same issue is, by itself, usually not sufficient to justify Section 1407 centralization."). Thus, cases seemingly revolving around the same legal theory should not be consolidated when they implicate different defendants, allegations, or class definitions. *See In re Lead Contaminated Fruit Juice Prods. Mktg. & Sales Practices Litig.*, MDL No. 2231, at *1–2 (J.P.M.L. June 8, 2012) (refusing to transfer cases with "similar allegations" to those in pending MDL proceeding because they nonetheless involved "unique parties, alleged classes, products, and claims" and could be "more efficiently and fairly resolved in their original jurisdictions").

NAR is nothing more than an interloper in *Nosalek*.[2] MLS PIN does not "roll up" to the NAR through any state or local real estate association affiliated with the NAR. The fact that MLS PIN and NAR are both accused of promulgating and enforcing illegal commission rules does not

---

[2] NAR's statement that the *Nosalek* also names NAR, Compass, Keller, Williams and/or HomeServices of America as overlapping defendants, *see* (Dkt. #196 at 7, 9) (NAR's Mem.), is misleading. NAR is not a party in *Nosalek*.

mean that their cases should be litigated together any more than someone accused of speeding in California should be included in the same proceeding as someone accused of drunk driving in New York.  The fact that both cases involve traffic codes is not enough.  Nobody alleges that MLS PIN and NAR coordinated in the separate misconduct alleged against each, that NAR promulgated or enforced the rules central to *Nosalek*, that MLS PIN and NAR have a relationship with each other, or that NAR's ethical guidelines and handbook are implicated in *Nosalek*.  Instead, *Nosalek* focuses entirely on an alleged Massachusetts conspiracy involving Massachusetts real estate and Massachusetts commission rules.  In this way, the complaint's allegations in *Nosalek* stand in stark contrast to other real estate commission cases throughout the country.  *E.g.*, Cons. Am. Class Action Compl., *Moehrl*, No. 19-CV-1610 ¶¶ 50–51, 53, 57–61, 64, 78–79, 82, 86–91, 94–109, 116–121, 134, 139, 141 (ECF No. 84) (grounding Plaintiffs' claims in the NAR rules, its associated policies and handbook, and the relationship between NAR and other defendants in the action).

These distinctions as to the market for the alleged conspiracy and the defendants involved in the alleged conspiracy mirror other cases where consolidation was found to be inappropriate. *See, e.g.*, *In re Google Antitrust Litig.*, 521 F. Supp. 3d 1358, 1359–60 (J.P.M.L. 2021) (excluding a case from the scope of consolidation because, among other things, it "plainly involv[ed] different relevant markets"); *In re Baby Food Mktg., Sales Pracs. & Prods. Liab. Litig.*, 544 F. Supp. 3d 1375, 1376–77 (J.P.M.L. 2021) (denying consolidation as to cases similar to each other at a "general level" because the discovery and pretrial practice would nonetheless be "defendant-specific"); *In re Secondary Ticket Mkt. Refund Litig.*, 481 F. Supp. 3d 1345, 1346 (J.P.M.L. 2020) ("Creating an industry-wide MDL for all three defendants [who did not conspire with each other

and "employed different terms of use"] would seem to complicate pretrial proceedings more than it would streamline them, so we deny this request.").

B. **Because Common Questions of Fact Are Absent and Discovery Is Localized, Consolidation Would Not Produce Any Efficiencies.**

It follows from these stark factual differences that *Nosalek*'s discovery is distinct, too. NAR has failed to identify any significant overlap between the documents and witnesses at issue in *Nosalek* and those cases involving the NAR's rules. This is unsurprising given the localized nature of the conspiracy alleged in the *Nosalek* case. Since the point of consolidation is to promote efficiencies and avoid duplication of discovery and pre-trial efforts, it is hard to see what good would come from consolidating proceedings involving separate parties, separate alleged wrongdoing, separate states, and separate alleged rules. In any event, informal coordination has effectively avoided any duplicative discovery between *Nosalek* and the other actions. *See* (Dkt. #251 at 14–15) ("The *Nosalek* plaintiffs and the defendants in that case have been able to proceed very efficiently by sharing much of the *Burnett* and *Moehrl* document productions and deposition transcripts/videos.").

In sum, there is nothing to be gained, and much to be lost in terms of efficient discovery and pre-trial efforts, by consolidating *Nosalek* given its focus on events in Massachusetts.

C. **Consolidation Makes Little Sense for a Case as Procedurally Advanced as *Nosalek*.**

Common questions of fact and the discovery that sheds light on those questions are not the only considerations before this Panel. The underlying concern for efficiency also cuts against consolidating cases with "significantly varying procedural posture[s]," *In re Starbucks Corp. Access for Individuals with Disabilities Litig.*, 326 F. Supp. 3d 1370, 1371 (J.P.M.L. 2018), because to do so would "disrupt[] the pending actions," causing more harm than good. *In re Covidien Hernia Mesh Prods. Liab. Litig.*, 481 F. Supp. 3d 1348, 1348–49 (J.P.M.L. 2020). The

5

JPML has therefore refused to consolidate cases—even cases otherwise substantially similar to other pending actions—when they have already "been pending in federal court for two or three years." *Id.* at 1348; *see also In re Cymbalta (Duloxetine) Prods. Liab. Litig.*, 65 F. Supp. 3d 1393, 1393–94 (J.P.M.L. 2014) (refusing to centralize "highly similar" cases involving withdrawal symptoms to the same prescription drug largely because the "procedural posture of the actions varie[d] significantly"). Consolidation is uniquely counterproductive when discovery has substantially progressed or substantive motions have been filed. *E.g.*, *Cymbalta*, 65 F. Supp. 3d at 1393–94 (noting that the discovery cutoff was approaching for the advanced cases, whereas the newly filed cases were "still in their infancy"); *In re Wells Fargo Mortg. Modification Litig.*, 437 F. Supp. 3d 1379, 1379–80 (J.P.M.L. 2020) (refusing to centralize cases arising from the same alleged mortgage modification software errors largely because one action was "more advanced than any other" with "discovery largely complete" and a "partial motion for summary judgment pending," among other things).

NAR attempts to brush aside these fundamental principles with a cherry-picked quotation for the proposition that "it is frequently the case . . . that actions transferred to an MDL are in somewhat varying procedural postures." (Dkt. #196 at 12) (quoting *In re Inclusive Access Course Materials Antitrust Litig.*, 482 F. Supp. 3d 1358, 1359 (J.P.M.L. 2020)). Missing from that quotation is the beginning of the sentence in which the JPML emphasized that the relevant case was only "marginally more advanced than the other actions." *Inclusive Access*, 482 F. Supp. 3d at 1359. NAR has not provided any authorities to support consolidating cases of such radically different procedural postures as those at issue here.[3]

---

[3] Besides *Inclusive Access*, NAR cites two additional Panel decisions: *In re Insulin Pricing Litig.*, --- F. Supp. 3d ----, No. MDL 3080, 2023 WL 5065090 (J.P.M.L Aug. 3, 2023),

Compared to the actions listed in the original consolidation motion, (Dkt. #1), *Nosalek* is considerably more advanced. Those actions were filed in the past several months and remain at the pleadings stage. *Nosalek* has been pending for over three years. It has moved well beyond the pleadings stage with large volumes of discovery exchanged and substantive motions filed, including a motion for summary judgment that is itself older than all of the cases at issue in this motion. *See* HomeServices Defendants' Mot. for Summ. Judgm., *Nosalek*, No. 1:20-CV-1244 (ECF No. 203).[4] Fact discovery is set to close on March 1st of this year, less than a month away. *Nosalek*, No. 1:20-CV-12244 (ECF No. 215).

If that were not enough, Judge Patti B. Saris of the United States District Court for the District of Massachusetts has preliminarily approved a class settlement as to MLS PIN, *Nosalek*, No. 1:20-CV-12244 (ECF No. 227), further evidence of the advanced posture of *Nosalek* and the disruption that would be caused by centralization. *See In re Hyundai & Kia GDI Engine Mktg., Sales Pracs., & Prods. Liab. Litig.*, 412 F. Supp. 3d 1341, 1344 (J.P.M.L 2019) ("Centralization at this time is premature and could delay the class-wide settlement with little or no benefit to the

---

and *In re Future Motion, Inc. Prods. Liab. Litig.*, No. MDL 3087, 2023 WL 8539210 (J.P.M.L. Dec. 8, 2023).

*Insulin Pricing* involved a situation where newly filed cases were sent to the district court where more advanced cases were already pending. 2023 WL 5065090, at *1, *3 & n.9. It was left to the district court whether to consolidate the new and advanced cases. *Id.* The decision neither supports consolidating proceedings at radically different stages as a general rule, nor speaks to the situation presented here where advanced cases are pending in multiple district courts. That's especially true since the subject cases involved "the same alleged participants," not distinct parties and markets. *Id.* at 3.

In *Future Motion,* the Panel centralized cases with different procedural postures. But it did so only after emphasizing that "all parties" in the advanced cases supported centralization because of the unique circumstances of those actions. 2023 WL 8539210, at *2.

[4] Thus, NAR's statement that Nosalek "remains in discovery, with summary judgment motions not due until June 2025," is misleading where HomeServices' summary-judgment motion was argued on December 6, 2023. *Compare* (Dkt. #196 at 7) (NAR's Mem.), *with Nosalek*, No. 20-CV-12244, ECF No. 257.

7

parties or putative class members."); *In re Patriot Nat'l, Inc., Sec. Litig.*, 349 F. Supp. 3d 1379, 1380 (J.P.M.L. 2018) (refusing centralization where litigation had reached an "advanced stage" and the parties anticipated "filing a motion for preliminary approval" of a settlement); *Wells Fargo*, 437 F. Supp. 3d at 1380 ("Centralization at this time could delay a class settlement in the most advanced action in this litigation and result in little or no benefit to the class members and other parties.").

Given *Nosalek's* advanced posture, consolidation would yield no efficiencies; it would only disrupt a proceeding arcing to completion. In particular, the drawbacks to consolidation between *Nosalek* and the many recently filed copy-cat cases stick out like a sore thumb. *Nosalek* is proceeding smoothly, along settled tracks, with no benefit to be gained from merging actions where discovery is substantially complete and dispositive motions pending or ruled on. *See, e.g.*, (Dkt. #251 at 15–16 & n.12) (HomeServices Defendants persuasively explaining why *Moehrl* and other actions are too procedurally advanced for centralization); (Dkt. #268 at 16–17) (same from the Texas Defendants herein).

\* \* \*

In the ways that matter for an MDL proceeding, *Nosalek* is distinct from the other real-estate commission cases. The Panel should deny the motion to consolidate. In the alternative, it should exclude *Nosalek* from any consolidated action.[5]

---

[5] To the extent that the Court does consolidate *Nosalek* with any other cases, MLS PIN requests a "more tailored solution," that approval of its settlement remains with Judge Saris in the District of Massachusetts. *Cf. In re: Disposable Contact Lens Antitrust Litig.*, MDL No. 2626, at 2 (J.P.M.L. June 5, 2019) (ECF No. 256) (transferring only part of a case to an MDL court).

Dated: February 2, 2024

        */s/ J. Matthew Goodin* _____
J. Matthew Goodin
jmgoodin@lockelord.com
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois 60606
Tel: 312-443-0472
Fax: 312-443-0336

*Attorney for MLS Property Information Network, Inc.*