BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re: Real Estate Commission Antitrust Litigation | MDL No. 3100 |

**INTERESTED PARTY STATEMENT OF BUYER-PLAINTIFFS
SUPPORTING CENTRALIZATION IN THE NORTHERN DISTRICT OF ILLINOIS**

Plaintiffs in *Batton v. National Association of Realtors*, No. 21-cv-430 (N.D. Ill.) ("*Batton I*"), and *Batton v. Compass, Inc.*, No. 23-cv-15618 (N.D. Ill.) ("*Batton II*"), (collectively the "Buyer-Plaintiffs")[1] support centralization in the Northern District of Illinois before Judge Andrea R. Wood. The Northern District of Illinois is the most appropriate venue because it is the locus of the National Association of Realtors ("NAR"), which acts as the hub at the center of the hub-and-spoke conspiracy allegations underlying the antitrust allegations in all cases implicated in this centralization motion. Judge Wood is best suited to oversee these actions because she

---

[1] A different buyer filed a lawsuit containing virtually identical factual allegations against an additional defendant in Illinois state court on December 8, 2023. That case was removed to the Northern District of Illinois in January 2024. *See Tuccori v. At World Properties, LLC*, No. 24-cv-150 Dkt. 1, Ex. B. The Buyer-Plaintiffs here do not speak for the plaintiff in *Tuccori*.

1

has years' more experience overseeing the first-filed *and* the two most advanced of the lawsuits at issue brought by both home sellers (*Moehrl*) and Buyer-Plaintiffs.

## BACKGROUND ON BUYER-PLAINTIFFS' ACTIONS

The Buyer-Plaintiffs' first antitrust lawsuit against NAR and seven brokerage firms was filed in the Northern District of Illinois on January 25, 2021. *Batton I*, Dkt. 1. Though many of their claims resemble those alleged in home seller lawsuits like the first-filed home seller action in *Moehrl*, Buyer-Plaintiffs alleged additional unlawful NAR rules that harmed only homebuyers. By restricting the supply of housing and buyer-agent services available to homebuyers, these rules create artificially higher prices that injure them.

Judge Wood dismissed the Buyer-Plaintiffs' first complaint in a detailed opinion after extensive briefing largely based on her finding that Buyer-Plaintiffs are indirect purchasers under *Illinois Brick. See Batton I*, Dkt. 81. Buyer-Plaintiffs then asserted various state-law antitrust violations and other claims in an amended complaint. *Id.*, Dkt. 84. Since the filing of the amended complaint, the Buyer-Plaintiffs, NAR, and seven broker-defendants have fully briefed another motion to dismiss. *Id.*, Dkt. 92, 97, 99. The district court has indicated that a ruling on this motion is imminent and that some, if not all, claims will survive the motion by requiring the parties to confer on responsive pleading deadlines. Ex. A, January 23, 2024 Transcript, at 6:6-7.

The Buyer-Plaintiffs also filed a separate action against seven additional broker-defendants on November 2, 2023. Judge Wood granted the Buyer-Plaintiffs' motion to reassign the case to her calendar, and the district's executive committee reassigned the case to her calendar on January 24, 2024. *Batton I*, Dkt. 123; *Batton II*, Dkt. 83.

## ARGUMENT

Although their lawsuits involve additional, separate allegations related to NAR rules that do not harm seller-plaintiffs, Buyer-Plaintiffs' claims involve sufficient common facts about NAR's rules to justify centralization with the seller-plaintiff cases under 28 U.S.C. § 1407. Buyer-Plaintiffs write separately to emphasize that the Northern District of Illinois is the only proper venue for any centralization order that encompasses their actions.

In centralization decisions involving both direct and indirect purchaser claims, this panel has weighed three primary factors that examine (1) whether the district court has actions involving direct and indirect claims; (2) the district encompassing the headquarters of the common defendant; and/or (3) the district with the most advanced litigation implicated by centralization.[2] Here, all of those factors support centralization only in the Northern District of Illinois.

---

[2] *See In re Direct Purchaser Plaintiff Beef Antitrust Litig.*, 609 F. Supp. 3d 1412, 1414 (U.S. Jud. Pan. Mult. Lit. 2022) (centralization to district with most advanced cases involving direct and indirect purchasers); *In re: Loestrin 24 Fe Antitrust Litig.*, 978 F. Supp. 2d 1371, 1372 (U.S. Jud. Pan. Mult. Lit. 2013) (centralization to alternative district because its "actions include claims by both direct and indirect purchasers" and the chosen "experienced and capable jurist . . . had not yet presided over an MDL."); *In re: Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 949

3

In *In re: Skelaxin (Metaxalone) Antitrust Litig.*, 856 F. Supp. 2d 1350 (U.S. Jud. Pan. Mult. Lit. 2012), for example, this panel centralized the litigation in Tennessee over the movant's preferred location in Pennsylvania because the Tennessee district contained the common defendant's headquarters and because the Tennessee court had both direct and indirect purchaser claims. *Id.* at 1352. Similarly, *In re Pork Direct & Indirect Purchaser Antitrust Litig.*, 544 F. Supp. 3d 1379 (U.S. Jud. Pan. Mult. Lit. 2021), centralized litigation in Minnesota over the movants' preferred Texas district where the Minnesota district had cases involving direct and indirect claims because that court had already "decided two rounds of dismissal motions." *Id.* at 1381.

Here, the Northern District of Illinois is the only district that has both direct and indirect actions, and the only district where the court has experience substantively evaluating claims by certified and alleged classes of both home sellers and homebuyers. Transferring the indirect purchaser claims to another district court would create substantial inefficiencies, requiring the transferee court to become familiar with eighteen state statutes and the relationship between the seller claims and those brought by Buyer-Plaintiffs. While some of these statutes have overlapping requirements, purported substantive differences between these statutes have been a focus of briefing

---

F. Supp. 2d 1365, 1366 (U.S. Jud. Pan. Mult. Lit. 2013) (centralization in district with actions "including claims by both direct and indirect purchasers"); *In re Pineapple Antitrust Litig.*, 342 F. Supp. 2d 1348, 1349 (J.P.M.L. 2004) (centralizing in S.D.N.Y. because its actions "include claims of both direct and indirect purchasers").

on the motion to dismiss currently before Judge Wood. *See, e.g.*, *Batton I*, Dkt. 98 at 16-19.

Additionally, NAR is either a named defendant or a co-conspirator in all cases, and its headquarters is in the Northern District of Illinois. Although plaintiffs in several of the identified cases did not name NAR as a defendant, NAR and the rules it propagated remain at the heart of all of the related actions because they serve as the central hub in the hub-and-spoke conspiracies alleged in every case. Accordingly, NAR and its conduct are part of the common factual issues at the center of the § 1407 inquiry and will be the focus of centralized discovery in all cases. Moreover, even in those cases that do not name NAR as a defendant, the parties will require information and documents from NAR. *See In re Tepezza Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. MDL 3079, 2023 WL 3829248, at *2 (U.S. Jud. Pan. Mult. Lit. June 2, 2023) ("We are persuaded that the Northern District of Illinois is the appropriate transferee district for these cases. Defendant Horizon is based in this convenient and readily accessible district, where likely relevant documents and witnesses may be found.")

Even if the presence of direct and indirect claims and the location of NAR's headquarters merited little weight, the Northern District of Illinois would still be the proper venue because it is where the first filed and most advanced actions are currently pending. In cases where indirect purchaser claims were centralized and transferred outside of their original district, this panel chose the transferee court that had the "first

filed and most advanced . . . action." *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 355 F. Supp. 3d 1382, 1383 (U.S. Jud. Pan. Mult. Lit. 2019). Here, *Moehrl* is far more advanced than many of the cases implicated in this motion, having already been certified with summary judgment and *Daubert* motions nearly fully briefed.

Additionally, Judge Wood in the Northern District of Illinois has no pending MDLs, Chicago is a centralized location for lawsuits that have been filed from California to Massachusetts, and Judge Wood has already indicated the Court's opinion that "it makes sense having them within this district, to the extent possible, in front of the same judge given the very overlapping and similar issues." Ex. A, January 23, 2024 Transcript, at 9:11-14; *see In re Seresto Flea & Tick Collar Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. MDL 3009, 2021 WL 3854901, at *2 (U.S. Jud. Pan. Mult. Lit. Aug. 11, 2021) ("The Northern District of Illinois is an appropriate transferee district for this litigation. This district presents an accessible and geographically central venue for this litigation. The Northern District of Illinois is reasonably close to both the Kansas City and Indianapolis metro areas, where the parties assert that relevant documents and witnesses are located. Furthermore, the Northern District of Illinois has the resources and the capacity to efficiently handle this nationwide litigation.").

The other proposed districts are all inferior to the Northern District of Illinois. The Texas defendants have argued that the Eastern District of Texas is an appropriate venue, Dkt. 268 at 13, but the Northern District of Illinois is far superior. Perhaps

6

because these defendants view centralization as inappropriate, they fail to consider the practical goals of centralization. Their argument against centralization ignores the central role that NAR played as the key coconspirator unifying the common facts across the actions, instead emphasizing the number of named defendants across those actions that followed those rules. However, if their centralization argument is wrong and common facts do merit centralization, then the superior venue would be the one bearing the closest relationship to those common facts, the most advanced actions at issue, and the one with experience evaluating both home seller claims and Buyer-Plaintiffs claims. Here, that is the Northern District of Illinois.

Other factors that the Texas defendants identify similarly yield no centralization benefits. While it may or may not be true that a plurality of the defendants have some connection to Texas, that is an artifact only of the plaintiffs' pleading strategy and not reflective of the factual center of the case. By placing too much emphasis on this argument, the panel would risk inviting artful pleading whereby late-arriving plaintiffs hoping to control the MDL venue would overload named defendants in the hope of swaying this panel's venue determination. Indeed, nothing is stopping Buyer-Plaintiffs or other plaintiffs from joining every real estate firm and regional realtor association in or near their preferred venue to skew the numbers as well.

The remaining arguments in favor of the Eastern District of Texas largely rest on disaggregated statistics about the current caseload of the entire Northern District of

Illinois. But these arguments obscure the more relevant question: whether a particular judge will be overburdened by an MDL assignment. In this case, the statistics pointed to by various briefs do not suggest that either Judge Jordan or Judge Wood will be overburdened by an MDL. Accordingly, these arguments are at best neutral.

However, as noted in NAR's brief, Judge Wood has no pending MDL and has significant experience examining the precise issues that will be the focus of coordinated discovery after centralization and assignment. While both Judge Jordan and Judge Wood are undoubtedly qualified jurists for any MDL, Judge Wood in the Northern District of Illinois is the proper jurist for managing this MDL.

## CONCLUSION

If this panel chooses to centralize Buyer-Plaintiffs' claims with those brought by home sellers, it should do so before Judge Wood in the Northern District of Illinois.

Dated: February 14, 2024

/s/ *Randall P. Ewing, Jr.*
George A. Zelcs
Randall P. Ewing, Jr.
Ryan Z. Cortazar
**KOREIN TILLERY, LLC**
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Telephone: 312-641-9750
gzelcs@koreintillery.com
rewing@koreintillery.com
rcortazar@koreintillery.com

Michael E. Klenov
Carol O'Keefe
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: 314-241-4844
mklenov@koreintillery.com
cokeefe@koreintillery.com

Vincent Briganti
Christian Levis
Noelle Forde
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
vbriganti@lowey.com
clevis@lowey.com
nforde@lowey.com