**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

|  |  |  |
|---|---|---|
| | ) | MDL No. 3100 |
| | ) | |
| | ) | |
| | ) | |
| In re: Real Estate Commission Antitrust | ) | This document relates to: *Masiello v.* |
| Litigation | ) | *Arizona Association of Realtors*, et |
| | ) | al., No. 2:24-cv-00045-MTL (Ariz.) |
| | ) | |
| | ) | |

**DEFENDANTS ARIZONA ASSOCIATION OF REALTORS, THE PHOENIX BOARD
OF REALTORS, SCOTTSDALE AREA ASSOCIATION OF REALTORS, WEST AND
SOUTHEAST REALTORS OF THE VALLEY INCORPORATED, BORTLOCK LLC,
RETSY LLC, AND REALTY EXECUTIVES LLC'S
INTERESTED PARTY RESPONSE IN OPPOSITION TO
MOTION FOR TRANSFER AND CENTRALIZATION PURSUANT TO 28 U.S.C. § 1407**

**WEIL, GOTSHAL & MANGES LLP**
Adam C. Hemlock
767 Fifth Avenue
New York, NY 10153
T: (212) 310-8281
F: (212) 310-8007
Adam.Hemlock@weil.com

*Counsel for Arizona Association of Realtors*

Defendants Arizona Association of Realtors ("AAR"), The Phoenix Board of Realtors, Scottsdale Area Association of Realtors, West and Southeast Realtors of the Valley Incorporated, Bortlock LLC, Retsy LLC, and Realty Executives LLC respectfully submit this interested party response in opposition to the Motion for Transfer and Centralization (ECF No. 2, the "Motion"), pursuant to J.P.M.L. Rule 6.2(e). The Panel should deny the Motion as to *Masiello v. Arizona Association of Realtors, et al.*, No. 2:24-cv-00045-MTL (D. Ariz.) (the "Arizona Action"), and exclude the Arizona Action from any consolidated proceedings. Alternatively, if the Panel determines that transfer and centralization is warranted, the most appropriate transferee forum would be the Northern District of Illinois.

## BACKGROUND

Based on prior filings, we understand that the Court is familiar with the basic facts and the actions filed against the National Association of Realtors ("NAR") along with certain regional realtor associations, multiple listing services ("MLS"), and realtors across the country. *See, e.g.*, Response of Defendant National Association of Realtors in Support of Transfer of Actions, ECF No. 295 at 5-9.  The Arizona Action is one of many putative antitrust class actions that were filed in the wake of the jury verdict in the Western District of Missouri. *See* Jury Verdict, *Burnett v. Nat'l Ass'n of Realtors*, 19-cv-332 (W.D. Mo. Oct. 31, 2023), ECF 1294. The Arizona Action was not included in the Motion, but was one of nine actions listed in a Notice of Related Action filed by NAR on January 23, 2024. *See* ECF No. 204.  NAR is not a party to the Arizona Action. Despite having agreed previously to litigate his claims in Arizona, Mr. Masiello, the plaintiff in the Arizona Action (the "Arizona Plaintiff"), filed an Interested Party Response in Support of Transfer and Consolidation on January 26, 2024. *See* ECF No. 286. The Arizona Plaintiff alleges generally that AAR, certain regional trade associations, and certain Arizona

realtors implemented and enforced certain rules in connection with the listing of homes for sale in Arizona, and he alleges that these rules unlawfully caused Arizona home sellers to pay higher commissions. *See generally* Compl., ECF No. 1, No. 2:24-cv-00045-MTL (D. Ariz.) (the "Arizona Complaint").

AAR is a nonprofit trade association representing realtors exclusively in Arizona. Other defendants in the Arizona Action include Arizona-based regional realtor associations, such as The Phoenix Board of Realtors, Scottsdale Area Association of Realtors, and West and Southeast Realtors of the Valley Incorporated, that operate exclusively in Arizona, and local real estate brokerages, such as, Bortlock LLC, Retsy LLC, and Realty Executives LLC, that operate almost exclusively in Arizona. Indeed, the Arizona Plaintiff alleges that he is an Arizona resident, and that all defendants in the Arizona Action maintain their headquarters and/or principal places of business in the District of Arizona. *See* Arizona Compl. ¶¶ 15, 17. As noted, NAR is not a named defendant in the Arizona Action, and the Arizona Action is the only action in which AAR and the Arizona regional associations have been named.[1] The Arizona Complaint alleges anticompetitive conduct exclusively within the Arizona real estate marketplace, and the proposed class in the Arizona Action includes only persons who listed a home on an Arizona MLS. *See* Arizona Compl. ¶ 92. The Arizona Plaintiff agreed to litigate in Arizona under Arizona law all disputes relating to the sale of his home. *See* Ex. A at 6. The Arizona Plaintiff's listing agreement also contains a mandatory alternative dispute resolution provision governed by Arizona law, as do potentially all or almost all of the other listing agreements at issue in the Arizona Action during most of the relevant time period. *See id.*

---

[1] Of the more than 20 identified Related Actions, only two of the 20 defendants named in the Arizona Complaint are named in a Related Action. *See* ECF No. 251-2.

As of March 5, 2024, the majority of both plaintiffs and defendants who have taken a position on the Motion have opposed centralization. 69 of approximately 90 defendants oppose consolidation. 13 of the defendants opposing consolidation are local associations similar to AAR, along with the Phoenix Board of Realtors, Scottsdale Area Association of Realtors, and West and Southeast Realtors of the Valley Incorporated. Only two local associations have supported consolidation.  Furthermore, seven of the 11 plaintiffs who have taken a position as of March 5 oppose centralization as well.

Given the inherently local nature of all aspects of the Arizona Action, the Panel should deny the Motion with respect to the Arizona Action. Alternatively, if the Panel decides that consolidation is appropriate, the Panel should centralize the actions in the Northern District of Illinois.[2]

## **ARGUMENT**

### I.    **Legal Standard**

Under 28 U.S.C. § 1407, civil actions pending in multiple districts involving one or more common questions of fact may be consolidated to a single district for coordinated proceedings "for the convenience of parties and witnesses" and if it "will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407. However, while Section 1407 allows for consolidation, no party is entitled to centralization as a matter of right. *In re Uber Technologies, Inc. Passenger Sexual Assault Litig.*, 2024 WL 41889, *1 (J.P.M.L. 2024).  The Panel has repeatedly stressed that centralization under Section 1407 "should be the last solution after

---

[2] Pursuant to Section 18 of the Settlement Agreement entered into on March 15, 2024 by the National Association of REALTORS®, it is the signed defendants' position that REALTOR® Member Boards as defined within the Settlement Agreement and real estate brokerages with a calendar year 2022 Total Transaction Volume for residential home sales of $2 billion or less are released from any and all manner of claims relating to claims alleged in the Action named above.

considered review of all other options." *See In re Gerber Probiotic Prods. Mktg. & Sales Pracs. Litig.*, 899 F. Supp. 2d 1378, 1379 (J.P.M.L. 2012).

In order to determine whether a transfer is warranted under Section 1407, the Panel will consider many factors, including, but not limited to: convenience of counsel, convenience of witnesses, minimizing duplicative discovery, and minimizing risk of conflicting rulings. *See Manual for Complex Litigation*, § 20.131 (4th ed. 2004). Only if several factors weigh in favor of consolidation is centralization appropriate. *In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011). Indeed, the Panel has recognized that even when common issues may exist, centralization still may not be warranted where there are other considerations that make centralization inappropriate. *In re Belviq (Lorcaserin HCl) Products Liability Litig.*, 555 F. Supp. 3d 1369, 1370 (J.P.M.L. 2021); *In Re: Boehringer Ingelheim Pharmaceuticals, Inc., Fair Labor Standards Act (FLSA) Litig.*, 763 F. Supp. 2d 1377, 1378 (J.P.M.L. 2011). The Panel has recognized various alternatives to centralization including "cooperation among the parties and the various transferor courts." *Id.*; *see also In re General Motors LLC Chevrolet Bolt EV Batter Products Liability Litig.*, 532 F. Supp. 3d 1413, 1415 (J.P.M.L. 2021).

Here, common issues of fact do not predominate, transfer and centralization of the Arizona Action will not serve the convenience of the parties or witnesses, and consolidation will not promote efficiency or justice. Accordingly, the Motion should be denied with respect to the Arizona Action.

## II.    Centralization of the Arizona Action is Not Appropriate Under 28 U.S.C. § 1407

For a transfer under Section 1407 to be appropriate, the actions must share one or more "common questions of fact . . . ." *See* 28 U.S.C. § 1407(a). Where significant questions of fact

vary from case to case, centralization is unlikely to promote fairness or efficiency. *In re Varsity Spirit Athlete Abuse Litig.*, No. MDL 3077, 2023 WL 3828645, at *1 (J.P.M.L. June 5, 2023). Here, all the salient facts are Arizona-specific.[3]

*First*, the Arizona Action is inappropriate for consolidation given the unique nature of the markets at issue. Residential real estate markets are highly localized and vary greatly from market to market. *See Realcomp II, Ltd. v. F.T.C.*, 635 F.3d 815, 828–29 (6th Cir. 2011) (affirming the FTC's finding that counties in southeastern Michigan were an appropriate market by themselves because "of the local nature of real-estate markets"). Properties in different geographic locations vary greatly by average home price, supply and demand features, regulatory and legal issues, local home-purchasing customs and procedures, the role, if any, of a multiple listing service, and a host of other traits. As unique markets with unique features, each geographic market across the twenty-plus cases noticed for potential consolidation will present individual questions of fact that must be analyzed separately.

The Arizona Action involves only homes allegedly listed for sale in Arizona—the only real estate marketplace at issue in the Arizona Action. *See* Arizona Compl. ¶ 81 ("The relevant geographic market for the claims is Arizona."). Accordingly, the definitions of the relevant antitrust markets, analysis of defendants' market power, and the alleged anticompetitive impact and procompetitive effects will be unique to the Arizona Action. These individual fact issues weigh strongly against transfer and centralization. *See In re Gasoline Lessee Dealers Antitrust Litig.*, 479 F. Supp. 578, 580 (J.P.M.L. 1979) (denying motion to transfer where "discovery and

---

[3] While the Arizona Plaintiff has alleged that the rules AAR and the other trade association defendants enforce in Arizona are identical to NAR's rules, AAR's promulgation and alleged enforcement of those rules, and all other alleged conduct giving rise to the Arizona Complaint, allegedly occurred in Arizona and are specific to the alleged Arizona real estate market.

other pretrial proceedings concerning the common factual questions would clearly be dwarfed by matters of no interest" to the other parties).

**Second**, in addition to the Arizona Action's markets and alleged conduct being highly localized and specific to Arizona, the relevant parties and witnesses, including the defendants, are also local to Arizona. Indeed, the Arizona Plaintiff alleges that he is an Arizona resident, *see* Arizona Compl. ¶ 17, and that all defendants maintain their headquarters and/or principal places of business in Arizona. *Id.* ¶ 15.

Defendants are local associations and brokerages that operate exclusively or almost exclusively in Arizona.[4] NAR is not a named defendant in the Arizona Action. The trade association defendants in the Arizona Action, including AAR, are all exclusively local to Arizona. These associations, including The Phoenix Association of Realtors, the Scottsdale Area Association of Realtors, the West and Southeast Realtors of the Valley, Inc., and the Tucson Association of Realtors, Inc., are not named in any other action that has been noticed for potential consolidation. The majority of the defendant brokerages in the Arizona Action are also local brokerages that operate only in Arizona, are not named in any other actions, and are unique to the Arizona Action. *See* ECF No. 251-2.

Since the defendants and other relevant parties and witnesses in the Arizona Action are local to Arizona, consolidation would not be appropriate. *See In re Proton-Pump Inhibitor Prod. Liab. Litig.*, 273 F. Supp. 3d 1360, 1361 (J.P.M.L 2017) (denying centralization where "the named defendants vary from action to action" and centralization would thus be "unlikely to serve the convenience of most, if not all, defendants and their witnesses"). Indeed, transfer and

---

[4] Although five broker defendants have affiliated entities operating outside of Arizona, the named defendants operate exclusively in Arizona.

centralization would be inefficient and prejudicial to the defendants in the Arizona Action and their witnesses, as it would force them to litigate their case in a foreign forum with unrelated defendants from other unique cases. Where, as here, the vast majority of defendants are unique to a single case, and there is little overlap of defendants across cases, the Panel has declined to centralize. *See In re Varsity Spirit Athlete Abuse Litig.*, 2023 WL 3828645, *1 (J.P.M.L. 2023); *see also In re Cardarone (Amiodaraone Hydrochloride) Marketing, Sales Practices and Products Liability Litig.*, 190 F. Supp. 3d 1346, 1347 (J.P.M.L. 2016) ("Given the different defendants sued in these actions, centralization appears unlikely to serve the convenience of a substantial number of parties and their witnesses").

***Third***, unique issues of Arizona law also weigh against transferring and centralizing the Arizona Action. For instance, some of the alleged actions or omissions giving rise to the Arizona Complaint are mandated by Arizona law. Under Arizona law, real estate licensees owe "a fiduciary duty to the client and shall protect and promote the client's interests," which prohibits licensees from negotiating a commission with another licensee if it "jeopardizes, delays or interferes" with the purchase and sale transaction. *See* Ariz. Admin. Code § 4-28-1101(A)-(D); *Lombardo v. Albu*, 199 Ariz. 97, 99, 14 P.3d 288, 290 (2000). This fiduciary duty includes "a duty of utmost good faith and loyalty to the principal" and a legal obligation to "effect a sale to the best advantage of the principal - that is on the best terms and best price possible." *Vivian Arnold Realty Co. v. McCormick*, 19 Ariz. App. 289, 293-294 (Ariz. App. 1973); *Marmis v. Solot Co*., 117 Ariz. 499, 501 (Ariz. App. 1977). To avoid potential breaches of the fiduciary duty mandated by Arizona law, any commission must be established before the negotiation of the purchase and sale contract between the buyer and seller because negotiating commissions at the time of purchase would lead to inevitable conflicts. An Arizona court would be best situated

to interpret these and other Arizona regulations and precedent, and apply them in the Arizona Action. *See In re: Bank of New York Mellon Sec. Lending Litig.*, 716 F. Supp. 2d 1361, 1361-62 (J.P.M.L. 2010) (denying centralization where an action may involve "unique legal issues … not present in the other actions"); *In re Xytex Corp. Sperm Donor Prod. Liab. Litig.*, 223 F. Supp. 3d 1351, 1352 (J.P.M.L. 2016) (denying centralization where common factual questions will not "predominate over the plaintiff-specific factual and legal questions" including "differing state law claims"); *In re Travelers COVID-19 Bus. Interruption Prot. Ins. Litig.*, 492 F. Supp. 3d 1341 (J.P.M.L 2020) (denying centralization where efficiency was "best obtained outside of an MDL" because courts would need to interpret insurance policy language under applicable state laws).

*Fourth*, the Arizona Action should not be consolidated because the signed defendants believe that almost all of the putative plaintiff class members that signed agreements during most of the relevant period have agreed to resolve their disputes in Arizona and to mandatory arbitration and/or mediation provisions. The listing agreement signed by the Arizona Plaintiff contains a forum selection clause stating that "jurisdiction is exclusively conferred on the State of Arizona." *See* Ex. A at 6. The Arizona Plaintiff has therefore agreed to litigate in Arizona, and he has breached that commitment by seeking to transfer his case to another district.  *See* ECF No. 286.  Further, potentially all or almost all of the listing agreements at issue in the Arizona Action during most of the relevant time period, including the one that the Arizona Plaintiff signed, include mandatory arbitration and/or mediation provisions typically governed by Arizona law. *See* Ex. A at 6. The interpretation and application of the agreements, and the impact of these agreements on the Arizona Plaintiff's claims, class certification, and other issues, will be unique to the Arizona Action and decidedly weigh against centralization. *See In re: Bank of New York*

*Mellon Sec. Lending Litig.*, 716 F. Supp. 2d at 1361-62; *In re Xytex Corp. Sperm Donor Prod. Liab. Litig.*, 223 F. Supp. 3d at 1352.

## III.     Informal Coordination is Preferable to Transfer and Centralization

The panel has counseled that "centralization under Section 1407 should be the last solution after considered review of all other options." *See In re: Best Buy Co., Inc., California Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011). Here, there are superior alternatives to centralization, including informal coordination. *See In re: Am. Home Realty Network, Inc., Multiple Listing Serv. Copyright Infringement Litig.*, 939 F. Supp. 2d 1372, 1373 (J.P.M.L. 2013) (denying motion to centralize where "the record indicates that efforts to coordinate discovery voluntarily are likely to be successful").

Here, the signed defendants are willing to engage in informal coordination of pretrial proceedings and discovery as an alternative to transfer and centralization, to the extent such informal coordination would promote efficiencies and serve the convenience of parties and witnesses. *In re Hotel Indus. Sex Trafficking Litig.*, 433 F. Supp. 3d 1353, 1356–57 (J.P.M.L. 2020) (holding that "informal coordination [was] preferable to address any overlapping pretrial proceedings" where several defendants "support[ed] informal coordination, suggesting that the parties could stipulate that discovery in one action may be used in other actions where the same brand is involved").

## IV.     If the Panel Establishes an MDL, the Northern District of Illinois is a More Appropriate Venue

For the foregoing reasons, the Motion should be denied with respect to the Arizona Action. However, if the Panel does determine that transfer and centralization of the Arizona Action are appropriate, the most appropriate venue is the Northern District of Illinois, for the reasons that NAR has articulated in its Response in Support of Consolidation. *See* ECF No. 196.

**<u>CONCLUSION</u>**

For the foregoing reasons, AAR, The Phoenix Board of Realtors, Scottsdale Area Association of Realtors, West and Southeast Realtors of the Valley Incorporated, Bortlock LLC, Retsy LLC, and Realty Executives LLC respectfully request that the Panel deny Plaintiffs' Motion for Transfer and Centralization Pursuant to 28 U.S.C. § 1407, with respect to *Masiello v. Arizona Association of Realtors, et al*., Case No. 2:24-cv-00045-MTL (D. Ariz.), or alternatively, that the Panel transfer and centralize in the Northern District of Illinois.

.

Respectfully submitted,

Dated: March 21, 2024

**WEIL, GOTSHAL & MANGES LLP**

By: */s/ Adam C. Hemlock*
Adam C. Hemlock
767 5th Ave
New York, NY 10153
(212) 310-8281
(212) 310-8007
adam.hemlock@weil.com

**ZELMS ERLICH & MACK**
Richard V. Mack
11811 N Tatum Blvd., Ste. 3031
Phoenix, AZ 85028
(480) 573-3841
rmack@zelmserlich.com

*Attorneys for Defendant Arizona Association
of Realtors*

**COHEN DOWD QUIGLEY P.C.**

By: */s/ Daniel G. Dowd*
Daniel G. Dowd
(602) 252-8140
ddowd@cdqlaw.com
Besty Jean Lamm
(602) 252-8191
blamm@cdqlaw.com
2425 East Camelback Road, Suite 1100
Phoenix, AZ 85016

*Attorneys for Defendants The Phoenix
Board of Realtors, Inc., d/b/a The Phoenix
Association of Realtors, Scottsdale Area
Association of Realtors, and West
and Southeast Realtors of the Valley
Incorporated*

**JONES SKELTON & HOCHULI PLC**

By: */s/ John David Lierman*
John David Lierman
(602) 263-1750
jlierman@jshfirm.com
Michael E Hensley
(602) 263-1775
mhensley@jhsfirm.com
40 North Central Ave, Suite 2700
Phoenix, AZ 85004

*Attorney for Defendant Bortlock, LLC*


**GREENBERG     TRAURIG     LLP     -
PHOENIX**

By: */s/ Nicole Maroulakos Goodwin*
Nicole Maroulakos Goodwin
Nicole.goodwin@gtlaw.com
(602) 445-8454
Matthew Paul Hoxsie
(602) 445-8000
hoxsiem@gtlaw.com
2375 East Camelback Road, Suite 800
Phoenix, AZ 85016

*Attorneys for Defendant Retsy LLC*


**DICKINSON WRIGHT PLLC**

By: */s/ Vail Choji Bryant Cloar*
Vail Choji Bryant Cloar
vclaor@dickinson-wright.com
(602) 285-5092
Stephen E Richman
(602) 285-5017
srichman@dickinson-wright.com
1850 North Central Avenue, Suite 1400
Phoenix, AZ 85004

*Attorneys for Defendant Realty Executives
LLC*

EXHIBIT A



# Sold / Change Form
## COMPLETE THIS SECTION FOR ALL CHANGES

R Listing Number _____ **6284849** _____ R Listing Member ID ___**LN099**___ R Listing Office Code__**cabr01**___

R House/Street # ___**Balmoral**___ R Compass Pt _____ R Street Name **29702**_____

R St. Suffix _____     Building Number _____ Unit Number_____

Have the changes on this form been entered into the MLS system? ___ ___

By whom?_____**Laurie Ann Neal**_____ Date_____**09/07/2021**_____

---

### COMPLETE THIS SECTION TO REPORT STATUS, EXPIRATION AND PRICE CHANGES
(See Page 2 for entry of Pending, Sold and Leased information)

R Back on the Market Date _____   R Temporarily Off-Market Date_____

R Cancellation (Off-Market Date) _____   F. Extend Expiration Date (New Exp. Date) _____

R Reduce List Price _____   R Raise List Price_____ **410,000.00**_____

(Enter whole dollars, no commas, no dollar signs)   (Enter whole dollars, no commas, no dollar signs)

THIS DOCUMENT, WHEN SIGNED, BECOMES AN EXTENSION OF, OR ADDITION TO, THE ORIGINAL LISTING AGREEMENT BETWEEN OWNER AND LISTING BROKER

Owner's Signature [ _signature_ ]    _signature_    Date **09/07/ 2021**_____

(Broker's signature required at bottom of this page 9/7/2021 10:52:04 AM MST

---

## COMPLETE THIS SECTION TO CHANGE FEATURE INFORMATION

Under Feature Name, enter the Field Name, from the profile sheet, for each field that needs to be changed. Under New Information, enter the complete corrected information. For example, assume that taxes and fireplace information is incorrect for a residential (Class 1) listing. To correct the taxes to $1,500.00 enter Taxes as the feature name and enter 1500 as the New Information. If the correct fireplace information should be one fireplace in the living room, then enter Fireplace as the Feature Name and Fireplace Living Room as the New Information.

**Feature Name**               **New Information**

_____   _____

_____   _____

_____   _____

_____   _____

_____   _____

---

### COMPLETE THIS SECTION TO CHANGE DIRECTIONS

Cross Street (Starting point for directions—Max 50 characters) _____

Directions (Max 200 characters) _____

---

Broker's Signature [ _signature_ ]    Date **09/07 /021**_____

InstanetFORMS

| COMPLETE THIS SECTION TO MAKE CHANGES TO REMARKS LINES |
|---|

**Public Remarks**
(Max 800 characters)




**Semi-Private Remarks**
(Max 400 characters)


**Private Remarks  DND2**
(Max 400 characters)


| COMPLETE THIS SECTION TO CHANGE THE STATUS OF THE LISTING TO: PENDING, UNDER CONTRACT - BACKUPS, CONTRACT CONTINGENT ON BUYER SALE OR SOLD |
|---|

R Status _____ R Selling Member ID _____ Co-selling Member ID _____

R Contract Date _____ R Close of Escrow Date _____ R Sales Price _____
(Whole dollars)

R Loan Type _____ R Loan Years _____ R Payment Type _____

R Closing Cost Split _____ R Buyer Concess to Seller _____ R %/$ ____

R Seller Concess to Buyer _____ R %/$ ____

| COMPLETE THIS SECTION TO CHANGE THE STATUS OF A RENTAL OR LEASE LISTING TO CLOSED |
|---|

R Selling Member ID _____ R Co-selling Member ID _____

R Lease Sign Date _____ R Lease Start Date _____ R Lease Price _____

Revision date: 1/31/17

**Laurie Ann Neal | HomeSmart Lifestyles 01 |**          Instanet FORMS

# RESIDENTIAL LISTING CONTRACT
# EXCLUSIVE RIGHT TO SELL/RENT

Document:
February 2021



*The pre-printed portion of this form has been drafted by the Arizona Association of REALTORS®.
Any change in the pre-printed language of this form must be made in a prominent manner.
No representations are made as to the legal validity, adequacy and/or effects of any provision,
including tax consequences thereof. If you desire legal, tax or other professional advice, please
consult your attorney, tax advisor or professional consultant.*



## 1. PARTIES

1. OWNER/SELLER: _____ Joseph and Patricia L. Masiello _____

2. _____ Patricia L Masiello _____ ("Owner")

3. BROKER: _____ HomeSmart Lifestyles _____ acting through
   FIRM NAME

4. _____ Laurie Ann Neal _____, _____ Tony Neal _____ ("Broker")
   AGENT'S NAME                                              AGENT'S NAME

## 2. PROPERTY

5. **Premises:** Owner agrees to sell or rent the real property with all improvements, fixtures, and appurtenances thereon or incidental
6. thereto, plus the personal property described herein (collectively the "Premises").

7. Premises Address: __3749   W NAOMI Lane__ Assessor's #: __509-12-751__

8. City: __Queen Creek__ County: __Pinal__ AZ, Zip Code: __85242__

9. Legal Description: __SAN TAN HEIGHTS PARCEL K LOT 100 SEC 11-3S-7E 4950 SQ FT 0.11 AC__

10.

11.

12.

13.

## 3. LISTING PRICE AND TERMS

14. **Agreement:** This Residential Listing Contract - Exclusive Right to Sell/Rent ("Agreement") is between Owner and Broker.
15. In consideration of Broker's agreement to find a ready, willing, and able purchaser or tenant, Owner gives Broker the exclusive
16. and irrevocable right to: ☒ **Sell** ☐ **Rent** ☐ **Sell and Rent** the Premises described above.

17. Owner acknowledges that signing more than one Exclusive Right to Sell/Rent or other form of listing contract for the same Term
18. could expose the Owner to liability for additional commissions.

19. **Price:** The listing price shall be: **Sale** $__400,000.00__ and **Rent** $_____ per month, plus (in the case of a rental)
20. all applicable lease or rental (transaction privilege) taxes or such other price and terms as are accepted by Owner.

21. **Term:** This Agreement shall commence on __08/26/2021__ and shall expire at 11:59 p.m. Mountain Standard Time on __11/19/2021__
22. ("Expiration Date"). Upon full execution of a contract for sale or lease of the Premises, all rights and obligations of this Agreement will
23. automatically extend through the date of the actual closing of the sale or lease agreement.

24. **Capacity:** Owner or any party that Owner designates to act on their behalf warrants that they have the legal capacity, full power and
25. authority to enter into this Agreement, deliver marketable title to the Premises, and consummate the transaction contemplated hereby.

26. **Modification:** This Agreement may be modified only in writing signed by Owner and Broker.

27. **Equal Housing Opportunity:** Broker and Owner shall comply with all federal, state and local fair housing laws and regulations,
28. including, but not limited to, non-discrimination based on race, color, religion, sex, handicap, familial status, national origin, sexual
29. orientation, or gender identity.

\>\>



*Residential Listing Contract - Exclusive Right to Sell/Rent >>*

## 4. COMPENSATION

30. **Compensation for the sale or rental of the Premises is not set by any Association/Board of REALTORS® or any Multiple**
31. **Listing Service. The compensation payable for the sale or rental of the Premises is negotiated between Broker and Owner.**
32. **All funds are to be in U.S. currency.**

33. Owner agrees to compensate Broker and Cooperating Broker(s), if any, as follows:

34. **Retainer:** Broker shall be paid within five (5) days of execution of this Agreement, a non-refundable retainer fee in the amount of
35. $ _____ payable to Broker for initial consultation, research and other services.

36. **Commissions:** If Broker produces a ready, willing and able purchaser or tenant in accordance with this Agreement, or if a sale or
37. rental of the Premises is made by Owner or through any other broker, or otherwise, during the Term of this Agreement, Owner agrees
38. to pay Broker a TOTAL COMMISSION of:

39. ☒ **Sale:** _____ **4.5** _____ % of the gross sales price **OR** $ _____; and

40. Additional Broker commission(s): _____.

41. **Cooperating Brokers (SALE):** Broker intends to cooperate with all other brokers except when not in Owner's best interest, and
42. to offer compensation in the amount of _____ **2.5** _____ % of the gross purchase price **OR** $_____ to a buyer's broker, who
43. represents the interest of the buyer(s), and not the interest of Owner, in a transaction. Any such cooperation shall not increase the
44. total commission payable by Owner.

45. ☐ **Rental:** _____ % of the gross rental amount as calculated for the entire term of the initial lease **OR** $ _____,
46. upon execution of lease agreement.

47. **Cooperating Brokers (RENTAL):** Broker intends to cooperate with all other brokers except when not in Owner's best interest, and to
48. offer compensation in the amount of _____ % of the gross rental amount as calculated for the entire term of the initial lease,
49. **OR** $_____ to a tenant's broker who represents the interest of the tenant(s), and not the interest of Owner, in a transaction.
50. Any such cooperation shall not increase the total commission payable by Owner.

51. **Rental Renewal or Extension:** Regardless of whether this Agreement has expired, Owner agrees to pay a commission of
52. _____ % **OR** $_____ of the gross rental amount within (five) 5-days of rental renewal or extension.

53. **Purchase by Tenant:** If during the terms of any rental of the Premises, including any renewals or holdovers, or within **45** days
54. after the rental's termination, any tenant, or his heirs, executors, or assigns shall buy the Premises from Owner, the sale commission
55. described in Section 4 shall be deemed earned by and payable to Broker.

56. **Cooperating Broker (dispute):** In the event a dispute arises between Broker and any Cooperating Broker(s) regarding payment of
57. commission, Owner shall not revoke or seek to amend compensation previously offered. Any compensation dispute between Brokers
58. shall be resolved after the close of escrow in accordance with the REALTORS® Dispute Resolution System, or as otherwise agreed.

59. **Withdrawn/Cancelled Listings:** The same amount of sale or rental commission shall be due and payable to Broker if, without the
60. consent of Broker, the Premises is withdrawn from this Agreement, otherwise withdrawn from sale or rental, or is rented, transferred,
61. or conveyed by Owner through any other broker or otherwise.

62. **Payment from Escrow or Rent:** Owner instructs the escrow company, if any, to pay all such compensation to Broker by check,
63. wire transfer, or certified funds as a condition to closing or upon cancellation of the escrow, and irrevocably assigns to Broker, to the
64. extent necessary, money payable to Owner at the closing or cancellation of escrow. Broker is authorized to deduct compensation
65. owed to Broker from any rent or other monies received by Broker on Owner's behalf.

66. **After Expiration:** After the expiration of this Agreement, the same commissions, as appropriate, shall be payable if a sale or rental is
67. made by Owner to any person to whom the Premises has been shown or with whom Owner or any broker has negotiated concerning
68. the Premises during the term of this Agreement: (i) within _____ days after the expiration of this Agreement, unless the Premises
69. has been listed on an exclusive basis with another broker; (ii) during the pendency, including the closing, of any purchase contract or
70. escrow relating to the Premises that was executed or opened during the term of this Agreement; or (iii) as contemplated by Section 4.

71. **Failure to Complete:** If completion of a sale or rental is prevented by default of Owner, or with the consent of Owner, the entire sale
72. or rental commission, as appropriate, shall be paid to Broker by Owner. If any earnest deposit is forfeited for any other reason, Owner
73. shall pay a brokerage fee equal to the lesser of one-half of the earnest deposit or the full amount of the commission.

>>

Residential Listing Contract - Exclusive Right to Sell/Rent • February 2021
Copyright © 2021 Arizona Association of REALTORS®. All rights reserved.   Initials>

Page 2 of 7

OWNER   OWNER

Laurie Ann Neal | HomeSmart Lifestyles 01 |

TRANSACTIONS
TransactionDesk Edition

*Residential Listing Contract - Exclusive Right to Sell/Rent >>*

74. **Construction:** To the maximum extent permitted by applicable law, this Agreement shall be construed as limiting applicable
75. provisions of law relating to when commissions are earned or payable. In the event of any express disagreement between any
76. provision of this Agreement and the requirements of applicable law, the applicable provision of this Agreement shall be deemed as
77. modified to the minimum extent necessary to ensure compliance with applicable law.

## 5. FIXTURES & PERSONAL PROPERTY

78. **Fixtures and Personal Property:** For purposes of this Agreement, fixtures shall mean property attached/affixed to the Premises.
79. Owner agrees that all existing: fixtures on the Premises, personal property specified herein, and means to operate fixtures and
80. property (i.e., remote controls) shall convey in this sale or rental. Including the following:

81. • built-in appliances, ceiling fans and remotes
82. • central vacuum, hose, and attachments
83. • draperies and other window coverings
84. • fireplace equipment (affixed)
85. • floor coverings (affixed)
86. • free-standing range/oven
87. • garage door openers and remotes
88. • light fixtures
89. • mailbox

• media antennas/satellite dishes (affixed)
• outdoor fountains and lighting
• outdoor landscaping (i.e., shrubbery, trees and unpotted plants)
• shutters and awnings
• smart home devices, access to which shall be transferred (i.e., video doorbell, automated thermostat)
• speakers (flush-mounted)

• storage sheds
• storm windows and doors
• stoves: gas-log, pellet, wood-burning
• timers (affixed)
• towel, curtain and drapery rods
• wall mounted TV brackets and hardware (excluding TVs)
• water-misting systems
• window and door screens, sun shades

90. If owned by Owner, the following items also are included in this sale or rental:

91. • affixed alternate power systems serving
92. the Premises (i.e., solar)
93.

• in-ground pool and spa/hot tub equipment and covers (including any mechanical or other cleaning systems)

• security and/or fire systems and/or alarms
• water purification systems
• water softeners

94. **Additional Existing Personal Property Which may be Included in this Sale (if checked):**
95. ☒ refrigerator(s) (description): _____
96. ☐ washer(s) (description): _____
97. ☐ dryer(s) (description): _____
98. ☐ above-ground spa/hot tub including equipment, covers, and any mechanical or other cleaning systems (description): _____
99. _____
100. ☐ other: _____

101. Additional items of personal property which may be included in the sale or rental: _____
102. _____

103. **Leased or Not Owned Items:** The following items are leased or not owned by Owner (if checked):
104. ☐ solar system          ☐ alarm system          ☐ propane tank          ☐ water softener

105. Other leased or lien items not included in the sale or rental: _____
106. _____
107. _____

108. Fixtures not included in the sale or rental: _____
109. _____

## 6. AGENCY

110. **Owner Representation:** Broker shall represent Owner in any resulting transaction during the term of this Agreement, except
111. as specified in Section 4. Unless otherwise agreed, Broker acts as Owner's agent only and has the duties of loyalty, obedience,
112. disclosure, confidentiality, and accounting (Fiduciary Duties) as well as other duties imposed by the Arizona Department of Real
113. Estate. Owner acknowledges that Broker may show prospective buyers the Premises and this shall not constitute a conflict of interest.

114. **Conduct of Brokers:** Regardless of whom they represent, Broker has the obligation to: (i) treat all parties to a transaction fairly;
115. (ii) disclose, in writing, all facts known to the licensee that may materially and adversely affect the consideration to be paid for the
116. Premises; and (iii) disclose that Owner or buyer(s) may be unable to perform. REALTORS® are further obligated by the National
117. Association of REALTORS® Code of Ethics to treat all parties honestly.

118. **Limited Representation:** A limited agency may occur when Broker procures a buyer(s) for the Premises. In this situation, the same
119. real estate company may represent the Owner's interest and the buyer's interest but not to the detriment of the other party.
120. Broker can legally represent both parties with the knowledge and prior written consent of both parties.

>>



Laurie Ann Neal | HomeSmart Lifestyles 01 |

OWNER    OWNER

TRANSACTIONS

*Residential Listing Contract - Exclusive Right to Sell/Rent >>*

121. **What Broker Cannot Disclose to Clients Under Limited Representation:** (i) confidential information the Broker may know about
122. a client, without the client's express consent; (ii) the price or terms the Owner will take other than the Price without permission of the
123. Owner; (iii) the price or terms the buyer(s) is willing to pay without permission of the buyer(s); (iv) a recommended or suggested price
124. or terms the buyer(s) should offer; and (v) a recommended or suggested price or terms the Owner should counter with or accept.

125. **Competing Owners**: Owner understands that Broker may have or obtain listings on other properties, and that potential buyer(s)
126. may consider, make offers on, or purchase through Broker, property the same as or similar to Owner's Premises. Owner consents
127. to Broker's representation of Owners and buyer(s) of other properties before, during, and upon expiration of this Agreement.

## 7. BROKER AUTHORITY

128. **Broker's Role:** Broker is not responsible for the custody or condition of the Premises or its management (except under separate
129. contract), upkeep, or repair.

130. **Advertising:** Owner agrees to not advertise or market the Premises in any manner without the prior written permission of Broker.

131. **Multiple Listing Service (MLS):** Broker is authorized to provide any and all information regarding the Premises to any MLS of
132. which Broker is a participant and to publish and disseminate such information in print or electronic form to MLS participants and
133. the general public, including dissemination of the information through Internet Data Exchanges (IDX) and Virtual Office Websites
134. (VOWs). Broker is authorized to report the sale or rental of the Premises and its price, terms and financing for dissemination
135. through the MLS to MLS participants and the general public.

136. All terms of the transaction, including sale price and financing, if applicable, (i) will be provided to the MLS(s); and (ii) may be
137. provided to the MLS even if the Premises is not listed with the MLS(s).

138. **Signs:** Broker ☒ **IS** ☐ **IS NOT** allowed to place Broker's "For Sale" sign or "For Rent" sign in conjunction with any customary
139. sign rider on the Premises, and in the event of a sale, a "Sold" or "Pending" sign, or lease, a "Rented" sign (at Broker's discretion)
140. on the Premises. Seller acknowledges that any public marketing of the premises will require submission to the MLS within one
141. business day.

142. **Photos/Video:** Owner ☒ **DOES** ☐ **DOES NOT** authorize Broker to place photos, video images/virtual tours of the Premises on
143. the internet and other electronic and on-line media platforms. If authorized by Owner to do so, such marketing will be performed at
144. the sole discretion of Broker. Owner is cautioned to protect items in view.

145. Owner acknowledges that once images are placed on the internet, neither Broker nor Owner has control over who can view
146. such images and what use viewers may make of the images, or how long such images may remain available on the internet.
147. Owner further assigns any rights in all images, if owned, to the Broker and agrees that such images are the property of Broker
148. and that Broker may use such images for advertising, including post sale and for Broker's business in the future.

149. **Lockbox/Keysafe:** Broker ☒ **IS** ☐ **IS NOT** authorized to install a lockbox/keysafe. A lockbox/keysafe is designed to hold a key
150. to the Premises to permit access to the Premises by Broker, cooperating brokers, MLS participants, their authorized licensees
151. and representatives, authorized inspectors, and prospective buyers. Broker, cooperating brokers, MLS and Associations/Boards
152. of REALTORS® are not insurers against injury, theft, loss, vandalism or damage attributed to the use of a lockbox/keysafe. If
153. Premises is rented, Owner must comply with providing proper notice to tenant(s) pursuant to Arizona law.

154. **Offers:** Broker ☒ **IS** ☐ **IS NOT** authorized to disclose the existence of offers, which includes the sales price and terms of sale or
155. rent price and terms of lease, on the Premises.

156. **Subsequent Purchase or Lease Offers:** Broker acknowledges that Owner has the right to accept subsequent offers until the close
157. of escrow in the case of a sale or until occupancy by a tenant in the case of a rental. Owner understands that any subsequent offers
158. accepted by Owner must be backup offers, namely, contingent on the cancellation or other nullification of any contracts arising from
159. the acceptance of earlier offers.

160. (Check if applicable) ☒ **Accept backup offers** ☐ **Withhold verbal offers** ☐ **Withhold all offers** once Owner accepts a purchase
161. contract or lease agreement for the Premises.

162. Broker will change or maintain the correct MLS Listing status in accordance with the MLS Rules and Regulations and any
163. associated policies.

164. **Cancellation:** Broker reserves the right to cancel this Agreement unilaterally for cause, which shall include, but is not limited to,
165. Broker's good faith belief that any service requested of Broker or any action undertaken by anyone other than Broker is (or could
166. be determined to be) in violation of any applicable law.

>>

Residential Listing Contract - Exclusive Right to Sell/Rent • February 2021
Copyright © 2021 Arizona Association of REALTORS®. All rights reserved.     Initials>

Page 4 of 7

OWNER     OWNER

Laurie Ann Neal | HomeSmart Lifestyles 01 |

TRANSACTIONS
TransactionDesk Edition

*Residential Listing Contract - Exclusive Right to Sell/Rent >>*

## 8. OWNER OBLIGATION

167. **Premises Access**: Owner shall provide access to the Premises at reasonable times and upon reasonable notice to allow for showing
168. the Premises to prospective buyers and cooperating brokers.

169. **Security, Insurance, Showings, Audio and Video:** Broker(s) is not responsible for loss of or damage to personal or real property
170. or person, whether attributable to use of a keysafe/lockbox, a showing of the Premises, or otherwise. Third parties, including,
171. but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs
172. of the interior of the Premises. Owner agrees to: (i) take reasonable precautions to safeguard and protect valuables that might
173. be accessible during showings of the Premises; and (ii) obtain insurance to protect against these risks. Broker does not maintain
174. insurance for the Owner's benefit.  Persons visiting the Premises may not be aware that they could be recorded by audio or visual
175. devices installed by Owner (such as "nanny cams" and hidden security cameras).

176. Owner is advised to post notice disclosing the existence of security devices on the Premises, if any.

177. **Adverse Information:** Owner has disclosed to Broker all material latent defects and information concerning the Premises known
178. to Owner, including all material information relating to: (i) connection to a public sewer system, septic tank or other sanitation
179. system; (ii) the existence of any tax, judgment or other type of lien; (iii) past or present infestation by or treatment for wood-
180. destroying pests or organisms; and (iv) past or present repair of the Premises for damage resulting from wood destroying pests
181. or organisms. During the term of this Agreement, Owner agrees to continue disclosing to Broker all additional information of the
182. type required by the preceding sentence promptly after Owner becomes aware of any such information by updating the Seller's
183. Property Disclosure Statement, Residential Lease Owner's Property Disclosure Statement or other written notice.

184. **Disclosures:** Owner shall provide Broker with accurate information about the Premises. Owner acknowledges that Arizona law
185. requires Owner to disclose material (important) facts about the Premises, even if Owner is not asked by the buyer(s) or a real
186. estate agent. Owner agrees to provide the following disclosures, if applicable:

187. 1. **Affidavit of Disclosure:** If the Premises is located in an unincorporated area of the county, and five (5) or fewer parcels of
188.    property other than subdivided property are being transferred, Owner shall deliver a completed Affidavit of Disclosure in
189.    the form required by law to buyer within five (5) days after purchase contract acceptance.

190. 2. **Disclosure of Lead-Based Paint and Lead-Based Paint Hazards (Sale or Rental):** If the Premises structure was built
191.    before 1978, federal law requires that Owner provide the buyer or tenant with a lead-based paint disclosure form.

192. 3. **Domestic Water Well Addendum Seller's Property Disclosure Statement:** If the Premises is served by a domestic water
193.    well, Owner shall deliver a completed Domestic Water Well Addendum to buyer within three (3) days of contract acceptance.

194. 4. **Foreign Investment in Real Property Tax Act certificate:** The Foreign Investment in Real Property Tax Act ("FIRPTA") is
195.    applicable if Owner is a non-resident alien individual, foreign corporation, foreign partnership, foreign trust, or foreign estate
196.    ("Foreign Person"). Owner agrees to complete, sign, and deliver to Escrow Company a certificate indicating whether Owner
197.    is a Foreign Person. FIRPTA requires that a foreign seller may have federal income taxes up to 15% of the purchase price
198.    withheld, unless an exception applies. Owner is responsible for obtaining independent legal and tax advice.

199. 5. **H.O.A. Condominium / Planned Community Addendum**: If the Premises is in a residential HOA/Condominium or Planned
200.    Unit Development, Owner shall complete and return to Broker page 1 of the HOA Addendum.

201. 6. **Insurance Claims History:** Owner shall deliver to buyer a written five (5) year insurance claims history regarding the
202.    Premises (or a claims history for the length of time Owner has owned the Premises if less than five (5) years) from Owner's
203.    insurance company or an insurance support organization or consumer reporting agency, or if unavailable from these
204.    sources, from Owner, within five (5) days after purchase contract acceptance.

205. 7. **Residential Lease Agreement (Lease):** If the Premises is to be sold while subject to a Lease, Owner shall provide a copy
206.    of the Lease to the Broker.

207. 8. **Residential Lease Owner's Property Disclosure Statement (RLOPDS):** The RLOPDS is designed to protect the Owner
208.    by disclosing pertinent information regarding the Premises.

209. 9. **Seller's Property Disclosure Statement (SPDS):** The SPDS is designed to protect the Owner by disclosing pertinent
210.    information regarding the Premises. Owner shall complete and return the SPDS to Broker.

211. 10. **Solar Lease / Solar Loan Assumption Addendum:** If a solar photovoltaic panel system ("Solar System") has been installed
212.     on the Premises that is subject to a lease or unpaid loan, Owner shall complete and return the Solar Lease / Solar Loan
213.     Assumption Addendum to Broker.

>>



Residential Listing Contract - Exclusive Right to Sell/Rent >>

214. **Recommendations:** If Broker recommends a builder, contractor, escrow company, title company, pest control service, appraiser,
215. lender, home inspection company or home warranty company or any other person or entity to Owner for any purpose, such
216. recommendations shall be independently investigated and evaluated by Owner, who hereby acknowledges that any decision to
217. enter into any contractual arrangement with any such person or entity recommended by Broker will be based solely upon such
218. independent investigation and evaluation. Owner understands that said contractual arrangement may result in Compensation
219. or fee to Broker. Owner agrees it will not allow mechanic's liens to be recorded against the Premises during the term of this
220. Agreement or at any time prior to close of escrow.

221. **Indemnification:** Owner hereby expressly releases, holds harmless and indemnifies Broker, all Boards or Associations of
222. REALTORS®, MLS, and all other brokers from any and all liability and responsibility regarding damage or loss arising from any
223. misrepresentation or breach of warranty by Owner in this Agreement, any incorrect information supplied by Owner and any facts
224. concerning the Premises not disclosed or withheld by Owner, including without limitation, any facts known to Owner relating to
225. Adverse Information or latent defects.
226.                                                                 **(OWNER'S INITIALS REQUIRED)** _____  _____

## 9. REMEDIES

227. **Alternative Dispute Resolution:** Owner and Broker agree to mediate any dispute or claim arising out of or relating to this
228. Agreement. All mediation costs shall be paid equally by the parties. In the event that mediation does not resolve all disputes or
229. claims, the unresolved disputes or claims shall be submitted for binding arbitration. In such event, the parties shall agree upon an
230. arbitrator and cooperate in the scheduling of an arbitration hearing. If the parties are unable to agree on an arbitrator, the dispute
231. shall be submitted to the American Arbitration Association ("AAA") in accordance with the AAA Arbitration Rules for the Real Estate
232. Industry. The decision of the arbitrator shall be final and nonappealable. Judgment on the award rendered by the arbitrator may be
233. entered in any court of competent jurisdiction. Notwithstanding the foregoing, either party may opt out of binding arbitration within
234. thirty (30) days after the conclusion of the mediation conference by notice to the other and in such event either party shall have
235. the right to resort to court action.

236. **Attorney Fees and Costs**: The prevailing party in any dispute or claim arising out of or relating to this Agreement shall be
237. awarded their reasonable attorney fees and costs. Costs shall include, without limitation: expert witness fees, fees paid to
238. investigators, and arbitration costs.

## 10. ADDITIONAL TERMS AND CONDITIONS

239. Plants and pots do not convey.

240.
241. Cabinet in kitchen hall pantry does not convey.

242. Refrigerator as is.
243.

244. ~~Hot tub for sale outside escrow for $1,000.00.~~

245.
246. Pocket door for den can be added back only need to remove wood enclosure.

247.

248.

249.

250.

251.

252.

253.

254. **Assignment**: Neither Broker nor Owner may assign any rights or obligations pursuant to this Agreement without the prior written
255. consent of the other, and any attempted assignment without consent shall be void and of no effect.

256. **Arizona Law:** This Agreement shall be governed by Arizona law and jurisdiction is exclusively conferred on the State of Arizona.

257. **Notice**: Unless otherwise provided, delivery of all notices and documentation required or permitted shall be in writing addressed
258. to Owner or Broker as indicated in Sections 11 and 12 and deemed delivered and received when: (i) hand-delivered; (ii) sent
259. via facsimile transmission; (iii) sent via electronic mail, if email addresses are provided herein; (iv) sent by recognized overnight
260. courier service, or (v) sent by U.S. mail, in which case the Notice shall be deemed received when actually received or five (5) days
261. after the notice is mailed, whichever occurs first.

>>

Laurie Ann Neal | HomeSmart Lifestyles 01 |



Residential Listing Contract - Exclusive Right to Sell/Rent

262. **Days:** All references to days shall be deemed to be calendar days unless otherwise provided.

263. **Copies and Counterparts:** This Agreement may be executed by facsimile or other electronic means and in any number of
264. counterparts. A fully executed facsimile or electronic copy of the Agreement shall be treated as an original Agreement.

265. **Entire Agreement:** This Agreement and any addenda and attachments shall constitute the entire Agreement between Owner and
266. Broker and shall supersede any other written or oral agreements. Invalidity or unenforceability of one or more provisions of this
267. Agreement shall not affect any other provisions of this Agreement. The failure to initial any page of this Agreement shall not affect
268. the validity or terms of this Agreement.

269. **Acceptance:** The undersigned agree to the terms and conditions set forth herein and acknowledge receipt of a copy of this Agreement.

## 11. OWNER

270.
_Joe Masiello_    08/26/2021    _Patricia Masiello_    08/26/2021
^ OWNER OR AUTHORIZED REPRESENTATIVE'S SIGNATURE   MO/DA/YR   ^ OWNER OR AUTHORIZED REPRESENTATIVE'S SIGNATURE   MO/DA/YR

271.    Joseph Masiello     Patricia L Masiello
^ OWNER OR AUTHORIZED REPRESENTATIVE'S PRINTED NAME   ^ OWNER OR AUTHORIZED REPRESENTATIVE'S PRINTED NAME

272.
^ ADDRESS    ^ ADDRESS

273.
^ CITY, STATE, ZIP CODE    ^ CITY, STATE, ZIP CODE

274.
^ TELEPHONE    ^ TELEPHONE

275.
^ EMAIL    ^ EMAIL

## 12. BROKER

276. Agent is a member of the    **Weserv**    Association/Board of REALTORS® and subscribes to the
277. REALTOR® Code of Ethics.

278.
_Laurie Ann Neal_    08/27/2021
^ AGENT'S SIGNATURE    MO/DA/YR    ^ AGENT'S SIGNATURE    MO/DA/YR

279.    Laurie Ann Neal     Tony Neal
^ AGENT'S PRINTED NAME    ^ AGENT'S PRINTED NAME

280.    HomeSmart Lifestyles
^ PRINT FIRM NAME    ^ PRINT FIRM NAME

281.    480-828-8289
^ TELEPHONE    ^ TELEPHONE

282.    nealrealtyteam@gmail.com
^ EMAIL    ^ EMAIL

**For Broker Use Only:**
Brokerage File/Log No. _____ Manager's Initials _____ Broker's Initials _____ Date _____
   MO/DA/YR

Laurie Ann Neal | HomeSmart Lifestyles 01 |


TRANSACTIONS
TransactionDesk Edition